IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WOODHULL FREEDOM FOUNDATION, HUMAN RIGHTS WATCH, ERIC KOSZYK, JESSE MALEY, a/k/a ALEX ANDREWS, and THE INTERNET ARCHIVE,<br><br>    Plaintiffs,<br><br>    v.<br><br>THE UNITED STATES OF AMERICA and JEFFERSON B. SESSIONS, in his official capacity as ATTORNEY GENERAL OF THE UNITED STATES,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DECLARATION OF JESSE MALEY**

Pursuant to 28 U.S.C. § 1746, I, JESSE MALEY, hereby declare as follows:

1. I am the co-founder, organizer, and board member of several organizations and a website that advocate for or support sex workers' health, safety, and human rights who resides in Altamonte Springs, Florida. I have personal knowledge of the matters stated in this declaration. If called upon to do so, I am competent to testify to all matters set forth herein.

2. For roughly 8 years, I have worked as a community organizer and advocate for sex workers, including acting as the co-founder, director, employee, or volunteer for organizations that provide direct services to sex workers and advocate on broader issues impacting sex workers. In my work, I identify myself as Alex Andrews.

/ / /

/ / /

3.     I am currently a member of the board of directors and serve as the treasurer of the Sex Workers Outreach Project USA ("SWOP USA"). SWOP USA is a national social justice network dedicated to the fundamental human rights of people involved in the sex trade and their communities, focusing on ending violence and stigma through education and advocacy.

4.     SWOP USA was founded in 2003 and promotes decriminalization as the best means of decreasing harm and promoting agency among people in the sex trade. SWOP adopts the principles and practices of nonviolent action in order to reduce violence and achieve dignity and rights for sex workers. SWOP is committed to the respect, safety, and autonomy of all sex workers, and seeks to amplify the voices of those who are often left out of discourse around the issues we address collectively as a social justice movement.

5.     SWOP USA operates a volunteer-staffed hotline where current and former sex workers, as well as activists and other seeking peer support, can access direct support.

6.     SWOP USA also assists advocates throughout the country in creating local SWOP chapters that provide public education, awareness, advocacy, peer support, empowerment, and leadership development for sex workers and their allies. SWOP USA sometimes provides financial support to these chapters.

7.     In addition to my role with SWOP USA, I founded the local chapter SWOP Orlando, which provides a range of direct services to sex workers in the region and also advocates on behalf of them. In my role as founder of SWOP Orlando, I have regularly met with local and state elected officials to advocate for sex workers' rights and their basic dignity.

8.     I also co-founded another chapter affiliated with SWOP USA, called SWOP Behind Bars, in May 2016. SWOP Behind Bars was created to provide support and services to sex works in prisons and jails throughout the United States. SWOP Behind Bars operates a

support line that connects sex workers with national and local resources they need, including local SWOP chapters or other sex worker advocacy or support organizations.

9. SWOP Behind Bars provides an electronic newsletter to incarcerated sex workers, a pen pal service, and also allows individuals to request necessities that other members or supporters can purchase for them. The goal of all of these services is to provide individuals in prison with a community and support network. This is essential because sex work and imprisonment are extremely isolating.

10. SWOP Behind Bars also publishes a re-entry guide for individuals being released from prison with the goal helping people transition back to their community and not re-offend.

11. Before moving to Florida in 1991, I operated an escort service in San Antonio, Texas that closed the same year. All of my employees were at least 21 years old. In 1993, I was convicted of one count of aggravated promotion of prostitution in violation of Texas law. I was sentenced to 10 years of probation, and the probation was terminated three years early in 2001. I no longer operate the escort service and have not since my conviction. Rather, I have been an advocate and ally for sex workers as described above and have also owned a business in Florida with my husband.

12. In addition to my advocacy for sex workers described above, in 2015 I collaborated with other advocates and sex workers to create an online resource for sex workers to learn more about the various organizations that provide services to them.

13. The website, Rate That Rescue (www.ratethatrescue.org), is a sex worker-led, public, free, community effort to help everyone share information about both the organizations they can rely on, and those they should avoid.

14. Rate That Rescue was created in response to the rapid growth of organizations that have publicly stated missions to assist or rescue sex workers. The site works as a ratings and review website of these various organizations, hosting content created by both organizations and the sex worker community.

15. We created the website because we were concerned that many of the organizations were often failing to help sex workers and sometimes were harming them. This concern was based on experiences by the organizers of the website and others in the sex worker community who either had sought help from or had been provided services by these organizations. To read more about the beginnings of Rate That Rescue, visit https://www.ratethatrescue.org/wp/about/how-rate-that-rescue-got-started/.

16. Some rescue organizations, for example, fail to distinguish between adult sex workers who choose their work and those who are coerced into sex work. Because those organizations treat all sex workers as victims, the services and support they provide often do not match the needs of sex workers who do not view themselves as victims. This discrepancy can frustrate and harm sex workers using the organization's services.

17. Based on my experience from working directly with a variety of sex workers for more than 25 years, I have observed that sex workers have a variety of needs that often are unrelated to their sex work. Those needs can include help with substance abuse and addiction, intimate partner violence, and healthcare. Given the diversity of needs among sex workers, I believe it is essential that sex workers have the opportunity to understand the services organizations provide before seeking their help.

18. We created Rate That Rescue so that sex workers seeking help or who are contacted by various organizations can get information about those organizations based on the

experiences of other sex workers. We believe that sex workers who have received services from the various organizations are in the best position to describe their experiences and provide feedback.

19. Rate That Rescue works by allowing any user to create a listing for a particular organization or to post a review of any organization. Users can post anonymously or create an account. After creating an account, a user can receive notifications when another user responds to their reviews or comments.

20. Rate That Rescue also allows the organizations being reviewed to take control of their listing, to edit it, and to respond to reviewers.

21. Each review listing on Rate That Rescue provides basic information about the organization, including a brief description of the service, contact information, and the type of services that the organization offers, such as legal, educational, and healthcare. Organizations can further self-identify based on various categories, including whether they are religious based, led by sex workers, or led by women.

22. Users can rate the organization on a scale of 1-5 for an overall rating and can also rate the organization's provision of various services, such as housing, childcare, counseling, education, and outreach. Users can also post comments describing their experiences and other users and the rescue organizations can reply to those comments.

23. Although Rate That Rescue was originally designed to provide information about sex worker support and rescue organizations, it has expanded to share information about all types of organizations that provide services that sex workers use, be they public, private, non-profit, or commercial. This includes organizations that do not focus on sex workers, but have products or services that sex workers commonly use – like Twitter, Wix, or PayPal.

24. Because Rate That Rescue is designed to host the speech of its users, it relies on 47 U.S.C. § 230 ("Section 230"), a provision of the Communications Decency Act that provides immunity from suit to online platforms based on the content of user-generated speech on the site. Rate That Rescue makes clear on its site that it is not the publisher or speaker of its users' content. *See* https://www.ratethatrescue.org/wp/about/.

25. Without Section 230's protections, Rate That Rescue would not be able to function and would face incredible liability for the content of users' speech. The website makes no revenue and is run by volunteers, and we are unable to actively or comprehensively review, edit, or moderate user-generated content.

26. Since passage of the Allow States and Victims to Fight Online Sex Trafficking Act, ("FOSTA") I have been extremely worried that Rate That Rescue is potentially criminally liable for the speech of our users. SESTA created several new exceptions to Section 230's immunity that create liability based on the content of user-generated speech about sex work.

27. For example, SESTA created a new exception to Section 230 that makes websites such as Rate That Rescue criminally liable under both federal and state laws for hosting user-generated speech that intends "to promote or facilitate the prostitution of another person" under the criminal anti-prostitution provisions of 18 U.S.C. § 2421A(a). 47 U.S.C. § 230(e)(5)(C).

28. SESTA does not define what "promote" or "facilitate" means. The terms could be interpreted broadly to include a variety of speech hosted on Rate That Rescue, such as speech about how to increase sex workers' safety, which could be interpreted as promoting prostitution. Similarly, user-generated content on Rate That Rescue listing the organizations that provide free services to sex workers, including healthcare, housing, and childcare, could be seen as helping or assisting sex workers and thus be construed as facilitating prostitution.

29. Because this user-generate speech could be viewed as helping or assisting sex workers or expressing positive views about sex work, I am concerned that a court could find that the user-generated content on Rate That Rescue promotes or facilitates prostitution and that Section 230's immunity shield is inapplicable. Rate That Rescue would then be criminally liable for the content of its users' speech.

30. I am also extremely concerned that Rate That Rescue may also be directly liable under SESTA's new criminal provisions that prohibit anyone from owning, managing, or operating a website with the intent to promote or facilitate prostitution, or to attempt or conspire to do so. 18 U.S.C. § 2421A(a). Because Rate That Rescue was established by sex workers and their advocates to improve the lives, health, safety, and wellbeing of sex workers, it is not unreasonable to think that law enforcement may interpret the website and its founders speech as promoting or facilitating prostitution.

31. SESTA also contains a criminal enhancement for Section 2421A(a) if the individuals who own, manage, or operate the website with the intent to promote or facilitate prostitution do so to five or more people. 18 U.S.C. § 2421A(b)(1). Because Rate That Rescue has thousands of users, it is not difficult to imagine law enforcement arguing that Rate That Rescue should be subject to SESTA's criminal enhancement penalty for promoting or facilitating the prostitution of five or more individuals.

32. Recently, in my role as treasurer and board member of SWOP USA, I helped lead an effort to purchase an in-development mobile application and website dedicated to increasing sex worker safety. Initially, SWOP USA intended to purchase the application and make it available for free. Though, as explained below, on my recommendation SWOP USA has held off on purchasing the application because we are concerned that it may be illegal under FOSTA.

33.     Although the application is still being developed, its main features would allow sex workers to use the app to report violence, harassment, and other harmful behavior against them. The app would maintain a database of these reports so that other sex workers could query to avoid bad actors and to decrease violence against them.

34.     Additionally, the application would send out notifications to others near the location of the sex worker who reported an incident, alerting them about violent or otherwise harmful individuals.

35.     Sex workers and their allies have long maintained similar "bad date" lists in both paper and digital form as a way to reduce violence against sex workers and increase their safety. SWOP USA was particularly interested in purchasing this app because it would provide similar benefits to sex workers throughout the United States vie a readily accessible and easy to use online platform.

36.     Prior to SESTA passing, I understood that Section 230 would provide immunity to SWOP USA for any harmful speech that would be hosted on the application and corresponding website. But as I described above regarding Rate That Rescue, SESTA created new exceptions to Section 230's immunity when the user-generated speech concerns sex work.

37.     Because the application would host speech from sex workers that intends to help others work safely and avoid violence and harassment, that speech could be construed as promoting or facilitating prostitution. The application, and by extension, SWOP USA, could thus be ineligible for Section 230's immunity and could face liability for its users' speech under Section 2421A(a).

38.     Additionally, it is reasonable to believe that law enforcement may perceive the application itself as an online platform that intends to promote or facilitate prostitution, or at least

attempts or conspires to do so. SWOP USA, as its owner, operator, and manager, could thus be directly liable under Section 2421A for the same reasons that Rate That Rescue would be as described above. Similarly, the app could likely face criminal enhancement penalties created by SESTA because the application and website could easily be seen as promoting or facilitating the prostitution of five or more people.

39.     I cannot in good conscience recommend that SWOP USA take on such expansive criminal liability, despite the fact that the application would help thousands of sex workers keep themselves safe. As a result, I have recommended that SWOP USA not purchase the application, even though it would directly support our mission to support and advocate for sex workers.

40.     I declare under penalty of perjury of the laws of the State of Florida that the foregoing is true and correct to the best of my knowledge

Executed on this _27_ th day of June 2018 at Altamonte Springs, Florida.

*Jesse Maley*

Verified by PDFfiller
06/27/2018

_____
Jesse Maley