**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

WOODHULL FREEDOM FOUNDATION,  )
et al.,                                                          )
                                                                    )
                   Plaintiffs,                              )
                                                                    )
             vs.                                               )               Civil Action No. 18-01552 (RJL)
                                                                    )
UNITED STATES OF AMERICA and        )
JEFFERSON B. SESSIONS, in his official  )
capacity as ATTORNEY GENERAL OF THE )
UNITED STATES,                                    )
                                                                    )
                   Defendants.                           )
_____ )

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendants, by and through undersigned counsel, respectfully oppose Plaintiffs' Motion

for Preliminary Injunction (ECF No. 5) and move to dismiss Plaintiffs' Complaint (ECF No. 1)

pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, for the reasons

set forth in the accompanying Memorandum of Points and Authorities.

Dated:  July 12, 2018                              Respectfully submitted,

                                                                  JESSIE K. LIU, D.C. Bar #472845
                                                                  United States Attorney

                                                                  DANIEL F. VAN HORN, D.C. Bar #924092
                                                                  Chief, Civil Division

                                       By:      */s/ Jason T. Cohen*
                                                                  JASON T. COHEN, ME Bar #004465
                                                                  Assistant United States Attorney
                                                                  Civil Division
                                                                  555 Fourth St., N.W.
                                                                  Washington, D.C. 20530
                                                                  Phone: (202) 252-2523
                                                                  Fax: (202) 252-2599
                                                                  Email: jason.cohen@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WOODHULL FREEDOM FOUNDATION, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) Civil Action No. 18-01552 (RJL) |
| UNITED STATES OF AMERICA and JEFFERSON B. SESSIONS, in his official capacity as ATTORNEY GENERAL OF THE UNITED STATES, | ) ) ) ) ) |
| Defendants. | ) ) ) |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

## I.    <u>Introduction</u>

In this case, Plaintiffs Woodhull Freedom Foundation, Human Rights Watch, Eric Koszyk, Jesse Maley a/k/a Alex Andrews, and The Internet Archive bring a pre-enforcement challenge to the Allow States and Victims to Fight Online Sex Trafficking Act of 2017 ("FOSTA" or "Act"), seeking to have the Act declared unconstitutional facially and as applied under the First and Fifth Amendments of the United States Constitution. Concurrent with the filing of the Complaint (ECF No. 1), Plaintiffs moved for a Preliminary Injunction (ECF No. 5).

The extraordinary remedy of a preliminary injunction is unwarranted here because this Court lacks jurisdiction. All five named Plaintiffs lack standing to bring this pre-enforcement challenge because the assertions in Plaintiffs' Complaint fail to establish a credible threat of prosecution based on constitutionally protected activity. Simply put, the case or controversy requirement of Article III is not met. Further, even if Plaintiffs could establish standing, they

cannot demonstrate a substantial likelihood of success because they have failed to set forth any claims upon which relief can be granted. Therefore, this is not a case that allows the Court to award the equitable remedy Plaintiffs demand and dismissal is appropriate.

## II.    **Statutory Background**

The Allow States and Victims to Fight Online Sex Trafficking Act of 2017 ("FOSTA"), Pub. L. No. 115-164, 132 Stat. 1253 (Apr. 11, 2018), primarily effected three changes in the law.

First, Section 3 of the Act amended Chapter 117 of title 18, United States Code, to add § 2421A, a new crime prohibiting individuals from owning, managing, or operating a website or other technology platform with the intent to promote or facilitate the prostitution of another person, punishable by up to 10 years in prison.[1] 18 U.S.C. § 2421A(a). Section 2421A includes an aggravated felony if five or more individuals were prostituted or if the defendant recklessly disregarded that his or her conduct contributed to sex trafficking, punishable by up to 25 years in prison. 18 U.S.C. § 2421A(b). Section 2421A also criminalizes conspiring or attempting to commit the offense, and provides for mandatory restitution for any sex trafficking victims. And it specifies that it shall be an affirmative defense where the defendant proves by a preponderance of the evidence that promoting or facilitating the prostitution is legal in the jurisdiction where the conduct was targeted. 18 U.S.C. § 2421A(e). Section 2421A permits any person injured by an aggravated violation of the statute to recover civilly. 18 U.S.C. § 2421A(c).

Second, FOSTA allows state and local authorities to bring criminal actions against websites and other tech platforms for conduct that would constitute a violation of 18 U.S.C.

---

[1] 18 U.S.C. § 2421A is substantially similar to 18 U.S.C. § 1952 ("Interstate and foreign travel or transportation in aid of racketeering enterprises"), which makes it illegal to use any facility in interstate commerce with intent to "otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity." 18 U.S.C. § 1952(a)(3). "Unlawful activity" under Section 1952 includes prostitution offenses in violation of the laws of the State in which they are committed or of the United States. *Id*. § 1952(b).

§ 1591 or 18 U.S.C. § 2421 if the "promotion or facilitation of prostitution is illegal in the

jurisdiction where the defendant's promotion or facilitation of prostitution was targeted." *See*

Section 4 of the Act. Section 1591 criminalizes sex trafficking, specifically, recruiting, enticing,

harboring, transporting, providing, obtaining, advertising, maintaining, patronizing, or soliciting

by any means a person, knowing or recklessly disregarding that they would be caused to engage

in a commercial sex act. 18 U.S.C. § 1591(a). For adult victims, the government must also prove

that the defendant knew or recklessly disregarded that force, fraud, or coercion would be used to

cause the victim to engage in a commercial sex act. *Id*. § 1591(a)(2). For child victims, the

government must prove that the defendant knew or recklessly disregarded that the victim was

under the age of 18, or that the defendant had a reasonable opportunity to observe the victim. *Id*.

§ 1591(c).[2]  A commercial sex act is any sex act, on account of which anything of value is given

to or received by any person. 18 U.S.C. § 1591(e)(3). Section 1591 also criminalizes

participation in a venture that engages in the conduct described above, as well as obstructing or

attempting to obstruct enforcement of the provision.

Third, FOSTA permits sex trafficking victims to bring civil suits against websites and

other tech platforms pursuant to 18 U.S.C. § 1595. *See* Section 4 of the Act. State Attorneys

General may also bring such civil suits as *parens patriae*. *See* Section 6 of the Act.

## III.   Standard of Review

### A.   Dismissal Pursuant to Rule 12(b)(1) for Lack of Jurisdiction

Pursuant to Rule 12(b)(1), a court must dismiss a claim when it lacks subject matter

jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion to dismiss under Rule 12(b)(1) "presents a

threshold challenge to the Court's jurisdiction," and thus "the Court is obligated to determine

---

[2] For advertising only, prosecutors must prove the defendant knew the victim was a minor or that force, fraud, or coercion was used against an adult. 18 U.S.C. § 1591(a).

3

whether it has subject-matter jurisdiction in the first instance." *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009) (internal citation and quotation marks omitted). "[I]t is presumed that a cause lies outside [the federal courts'] limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), unless the plaintiff can establish by a preponderance of the evidence that the Court possesses jurisdiction. *See, e.g.*, *U.S. ex rel. Digital Healthcare, Inc. v. Affiliated Computer*, 778 F. Supp. 2d 37, 43 (D.D.C. 2011); *Peter B. v. United States*, 579 F. Supp. 2d 78, 80 (D.D.C. 2008) (plaintiff bears the burden of establishing that the court has subject matter jurisdiction). When reviewing a Rule 12(b)(1) motion to dismiss, "the court must accept the complaint's well-pled factual allegations as true and draw all reasonable inference in the plaintiff's favor." *Id*. At the same time, "[t]he court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001), *aff'd*, 346 F.3d 192 (D.C. Cir. 2003); *see also Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (noting that the "plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim"). "[T]he District Court may in appropriate cases dispose of a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) on the complaint standing alone." *Herbert v. Nat'l Acad. of Sciences,* 974 F.2d 192, 197 (D.C. Cir. 1992). The Court also, however, may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting

evidence. *Id.*; *see also Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

### B.   Dismissal Pursuant to Rule 12(b)(6) for Failure to State a Claim

Under Rule 12(b)(6), dismissal is appropriate if the plaintiff fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). In order to survive a Rule 12(b)(6) motions, the plaintiff's allegations, when read in a light most favorable to the plaintiff, must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Natl. Ins. Co. v. Fed. Deposit Ins. Corp.,* 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks omitted). But a court need not accept "factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint," nor must a court give credence to "plaintiff's legal conclusions." *Disner v. United States,* 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (internal quotation marks omitted).

### C.   Standard of Review for Preliminary Injunction

A party seeking a preliminary injunction must show: (1) a substantial likelihood of success on the merits, (2) that it will suffer irreparable injury if the injunction is not granted, (3) that the balance of equities tips in the movant's favor; and (4) that the public interest would be furthered by the injunction. *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). The third and fourth factors "merge when the Government is the opposing party." *Colo. Wild Horse v. Jewell*, 130 F. Supp. 3d 205, 220–21 (D.D.C. 2015) (internal quotation marks omitted). Because the relief plaintiffs seek is "an extraordinary remedy," a preliminary injunction "should be granted only [if they carry] the burden of persuasion." *Chaplaincy of Full Gospel Churches v.*

*England*, 454 F.3d 290, 297 (D.C. Cir. 2006); *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997);

*see also Dorfmann v. Boozer,* 414 F.2d 1168, 1173 (D.C. Cir. 1969) ("The power to issue a

preliminary injunction, especially a mandatory one, should be sparingly exercised." (internal

quotation marks omitted)).

The D.C. Circuit has traditionally applied a "sliding scale" approach to these four factors,

*Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291 (D.C. Cir. 2009), under which "a

strong showing on one factor could make up for a weaker showing on another." *Sherley v.*

*Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011). Following the Supreme Court's decision in *Winter*

*v. NRDC, Inc.*, 555 U.S. 7 (2008), however, the D.C. Circuit Court "has suggested, without

deciding, that *Winter* should be read to abandon the sliding-scale analysis in favor of a 'more

demanding burden' requiring Plaintiffs to independently demonstrate both a likelihood of

success on the merits and irreparable harm." *Smith v. Henderson*, 944 F. Supp. 2d 89, 95–96

(D.D.C. 2013) (citing *Sherley*, 644 F.3d at 392).

**IV.**     **Argument**

**A.**     **Plaintiffs Lack Standing**

"The first component of the likelihood of success on the merits prong usually examines

whether the plaintiffs have standing in a given case." *Kingman Park Civic Ass'n v. Gray*, 956 F.

Supp. 2d 230, 241 (D.D.C. 2013). Here, Plaintiffs fail to establish their standing to assert the

claims alleged in their Complaint, and this case should accordingly be dismissed for lack of

subject matter jurisdiction.

"The judicial power of the United States" is limited by Article III of the Constitution "to

the resolution of 'cases' and 'controversies,'" *Valley Forge Christian Coll. v. Americans United*

*for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982), and the demonstration of a

plaintiff's standing to sue "is an essential and unchanging part of the case-or-controversy requirement," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The standing inquiry must be "especially rigorous" when reaching the merits of a claim would force a court to decide the constitutionality of actions taken by a coordinate Branch of the Federal Government. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). A plaintiff "'must demonstrate standing for each claim he seeks to press.'" *Del. Dep't of Nat. Res. & Envtl. Control v. EPA*, 785 F.3d 1, 10 (D.C. Cir. 2015), *as amended* (July 21, 2015) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). Thus, to establish standing for its claims here, for which Plaintiffs seek only injunctive and declaratory relief, Plaintiffs must identify for each Plaintiff an injury in fact, fairly traceable to the statutory language at issue in the specific claim, and redressable by a favorable ruling, that is "concrete, particularized, and actual or imminent." *See id.*

The injury-in-fact requirement "helps to ensure that the plaintiff has a 'personal stake in the outcome of the controversy.'" *Susan B. Anthony List v. Driehaus*, 134 S.Ct. 2334, 2341 (2014) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "An injury sufficient to satisfy Article III must be concrete and particularized and actual or imminent, not conjectural or hypothetical. An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Id.* (citations and quotations omitted). Where a plaintiff brings a pre-enforcement First Amendment challenge to a statute, "[s]ubjective chill alone will not suffice to confer standing." *Johnson v. Dist. of Columbia.*, 71 F. Supp. 3d 155, 159 (D.D.C. 2014) (quoting *Act Now to Stop War & End Racism Coal. v. Dist. of Columbia*, 589 F.3d 433, 435 (D.C. Cir. 2009)) (internal quotations omitted). Rather, in order to establish that threatened enforcement is "sufficiently imminent," a plaintiff must "allege[] an intention to engage in a course of conduct arguably affected with a constitutional interest, but

proscribed by a statute, and there [must] exist[] a credible threat of prosecution thereunder."
*Susan B. Anthony List*, 134 S. Ct. at 2342 (quoting *Babbitt v. United Farm Workers Nat'l Union*,
442 U.S. 289, 298 (1979)); *see also Clapper*, 568 U.S. at 409 (the threatened injury cited by the
pre-enforcement plaintiff must be "certainly impending"); *Blum v. Holder*, 744 F.3d 790, 798
(1st Cir.), *cert. denied*, 135 S. Ct. 477 (2014) (applying *Clapper* to a pre-enforcement First
Amendment challenge); *Johnson*, 71 F. Supp. 3d at 160 ("Where there is no expectation of
enforcement, there is unlikely to be a 'credible threat' of prosecution."). A credible threat of
prosecution exists when "the [challenged] law is aimed directly at plaintiffs, who, if their
interpretation of the statute is correct, will have to take significant and costly compliance
measures or risk criminal prosecution." *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383,
392 (1988) (citations omitted).

The Supreme Court's analysis in *Susan B. Anthony List v. Driehaus*, 134 S.Ct. 2334
(2014), is instructive. In *Susan B. Anthony*, the Court held that the plaintiffs had standing to
challenge an Ohio statute that prohibited dissemination of false statements about candidates,
knowing that, or with reckless disregard of whether, the statements were false. *Susan B. Anthony
List*, 134 S. Ct. at 2338, 2343. The Court reasoned that the plaintiffs had sufficiently alleged an
intent to engage in a course of conduct arguably affected with a constitutional interest because
they had "pleaded specific statements they intend to make in future election cycles." *Susan B.
Anthony List*, 134 S. Ct. at 2343. These statements qualified as "political speech" and thus were
"certainly 'affected with a constitutional interest.'" *Id.* at 2344 (quoting *Babbitt*, 442 U.S. at
298). The Court also concluded that these statements were "arguably . . . proscribed by" the Ohio
law. *Id.* at 2344. The Court rejected the notion that one plaintiff's fear of enforcement was
"misplaced" because it had not alleged an intent to lie or recklessly disregard the veracity of its

8

speech. *Id.* at 2345. However, in doing so, the Court pointed out that this plaintiff had already been the subject of complaints in past election cycles, and that complaints could be submitted by "any person" with knowledge of the purported violation. *Id.*

This case presents quite a different situation. The courses of conduct alleged to be planned by the Plaintiffs are not "'proscribed by [the] statute' they wish to challenge." *Susan B. Anthony List*, 134 S.Ct. at 2344 (quoting *Babbitt*, 442 U.S. at 298). Plaintiff Woodhull Freedom Foundation ("Woodhull") is a nonprofit organization "working full time toward affirming and protecting the fundamental human right to sexual freedom." Compl. ¶ 15. Woodhull intends to hold its ninth-annual Sexual Freedom Summit in August, 2018, "to protect the members of its diverse communities and their right to information, health, and pleasure," and part of the conference "involve[s] workshops devoted to issues affecting sex workers, such as harm reductions, disability, age, health and personal safety." *Id.* ¶¶ 66-67. By its own admission, Woodhull is proceeding with its Summit, including online advertising. *Id.* ¶¶ 80. As described by Plaintiffs, none of these activities would subject someone to liability under 18 U.S.C. § 2421A, or any provision of FOSTA. Only actions taken with the intent to promote or facilitate the prostitution of another person in a jurisdiction where prostitution is illegal, per Section 2421A and Section 4(a) of FOSTA, or knowing sex trafficking under Section 1591, fall within the specifications of the ActSimilarly, while Plaintiff Human Rights Watch ("HRW") "produces and publishes . . . research and advocacy on behalf of the rights of sex workers," it has an established policy that "'[f]orced prostitution and trafficking in human beings are among the most serious violations of human rights' and that '[a]ll states have an obligation to take necessary measures to prevent and combat such criminal activities." Compl. ¶¶ 88, 90. While HRW states that it is "concerned" that its human rights advocacy work, in particular its advocacy

for the decriminalization of sex work, could be seen by "US litigants" as "in some way assisting sex trafficking," such concerns have no realistic basis and are not sufficient to confer standing. Compl. ¶ 91. Likewise, Plaintiff The Internet Archive ("Archive"), which indiscriminately captures and preserves internet content, including 80 million web pages per day, also does not allege an intention to engage in a course of conduct proscribed by the statute at issue or for which there exists a credible threat of prosecution. Compl. ¶ 124. Plaintiff Eric Koszyk is a massage therapist who claims that Craigslist has blocked his advertisements in its "Therapeutic Services" section, despite the fact that Koszyk is a licensed professional providing massage therapy that is professional and therapeutic. Compl. ¶¶ 93-98. As alleged, there can be no question that Koszyk's actions do not fall within those proscribed by the Act (nor does Craigslist.org have a credible fear of prosecution if they ran his ad). Plaintiff Jesse Maley a/k/a Alex Andrews' claims focus on a website called Rate That Rescue that allows members of the sex worker community to rate rescue or service provider organizations on a scale and to post comments describing their experiences. Compl. ¶ 105-109. She is also currently affiliated with Sex Workers Outreach Project USA ("SWOP USA"), which is "dedicated to the fundamental human rights of people involved in the sex trade and their communities, focusing on ending violence and stigma through education and advocacy." *Id.* ¶ 102. Again, nothing in the Complaint sets forth any intention by Andrews to engage in conduct proscribed by the Act for which there exists any credible threat of prosecution.

Plaintiffs' argument that the terms "promote" and "facilitate" are overbroad and likely to encompass their advocacy for the legalization of prostitution or the health and safety of sex workers is unavailing and contrary to the enforcement history of substantially similar crimes. In particular, a violation of 18 U.S.C. § 1952, often called the "Travel Act," consists of: (1) use of

the mails or interstate facilities; (2) with the intent to promote or facilitate the promotion of; (3) any unlawful activity; and (4) thereafter performs or attempts to perform an act to facilitate the unlawful activity. *See* 18 U.S.C. § 1952; *United States v. Bennett*, No. 95-30252, 1996 WL 477048, at *5-6 (9th Cir. Aug. 21, 1996)).  "Any unlawful activity" is defined in relevant part as "any business enterprise involving . . . prostitution offenses in violation of the laws of the State in which they are committed." 18 U.S.C. § 1952(b).

As used in the Travel Act, the term "promote" or "facilitate the promotion" of any illegal activity means to do any act that would cause the unlawful activity to be accomplished or to assist in the unlawful activity in any way. *Bennett*, 1996 WL 477048 at *5; *see also, e.g., United States v. Reiner*, 500 F.3d 10, 12-19 (1st Cir. 2007) (defendant convicted of Travel Act violation was responsible for all personnel decisions concerning the massage parlor that served as a front for prostitution and the content of the advertisements posted in newspapers' adult sections, and handled the financial aspects of the business).  Several recent prosecutions underscore this point.  In *United States v. Seals,* 5:10–CR–50127, 2014 WL 3847916, at *10 (W.D. Ark. Aug. 5, 2014), the defendant was convicted of a Travel Act violation after admitting in plea agreement to opening bank and credit card accounts for the prostitution enterprise, hiring sex workers, answering telephone lines, and placing advertisements for the prostitution enterprise.  In *United States v. Omuro*, N.D. Cal. No. CR 14-CR-336, the owner and operator of a website pleaded guilty to a Travel Act violation and admitted in his plea agreement that "[t]he website hosted advertisements, the vast majority of which were posted by prostitutes containing their picture[s], and in most instances, the sexual services they offered, and their rates. . . .  The website also allowed site users to submit, search, and read reviews of the services offered by particular prostitutes. . . .  As such, the website promoted and facilitated the carrying on of prostitution

11

throughout California, elsewhere in the United States, and Canada."  Similarly, in *United States v. Hurant*, E.D.N.Y No. CR 16-45, a website operator pleaded guilty to a Travel Act violation and admitted in court pleadings that he "was well aware . . . that the escort ads he posted . . . were thinly-veiled proposals of sexual services in exchange for money").  Finally, in *United States vs. Lacey, et al.*, 18-cr-422 (D. Ariz.), Docket 3 ¶¶ 31-114, the indictment alleges that backpage.com and its officers and employees earned in excess of $500 million over several years by hosting ads that backpage.com employees edited to conceal that they were actually for prostitution.  *Cf. Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003) (skeptically posing as rhetorical question in dicta, "Does a newspaper that carries an advertisement for 'escort services' or 'massage parlors' aid and abet the crime of prostitution, <u>if it turns out</u> that some (or many) of the advertisers make money from that activity?") (emphasis added).  Section 1952 was first enacted in 1961.  Pub.L. 87-228 § 1(a), Sept. 13, 1961, 75 Stat. 498.  The fact that none of the Plaintiffs (nor anyone like them) has ever been prosecuted under Section 1952, and the substantial similarity between Section 1952 and 2421A, shows that the Plaintiffs do not have a credible fear of prosecution.

Case law concerning 18 USC § 1956, the federal money laundering statute, similarly demonstrates that the term "promote" does not apply to Plaintiffs' professed activities. The "specific intent to promote requirement" has been called the "gravamen" of a § 1956(a)(1)(A)(i) violation. *United States v. Carcione,* 272 F.3d 1297, 1303 (11th Cir. 2001). To prove it, the government must satisfy a stringent *mens rea* requirement. *United States v. Brown,* 186 F.3d 661, 670 (5th Cir. 1999). Essentially, the government must show the transaction at issue was conducted with the intent to promote the carrying on of a specified unlawful activity. *Id.* It is not enough to show that a money launderer's actions *resulted* in promoting the carrying on of

specified unlawful activity. *Id.* Nor may the government rest on proof that the defendant engaged in "knowing promotion" of the unlawful activity. *Id.* Instead, there must be evidence of *intentional* promotion. *Id.* In other words, the evidence must show that the defendant's conduct not only promoted a specified unlawful activity but that he engaged in it *with the intent* to further the progress of that activity. *Brown,* 186 F.3d at 670.

These examples illustrate the inapplicability of FOSTA to these Plaintiffs. Advocating for the legalization of sex work, for example, is the opposite of the intentional facilitation of illegal prostitution. Helping sex workers find appropriate service providers no more facilitates prostitution than rehabilitation services facilitate drug trafficking.  Discussing "harm reductions, disability, age, health and personal safety" is not promoting or facilitating prostitution.

The facts of this case are more aligned with those in *American Library Ass'n v. Barr*, 956 F.2d 1178 (D.C. Cir. 1992) and *Backpage.com, LLC v. Lynch,* 216 F. Supp. 3d 96 (D.D.C. 2016). In *Barr*, the plaintiffs "sought an injunction and a judgment declaring [the Child Protection and Obscenity Act of 1988's] recordkeeping and forfeiture provisions to be unconstitutional, in violation of the First Amendment." 956 F.2d at 1181. Because the plaintiffs represented that "they [would] not knowingly . . . produce child pornography or obscenity," and even if they did, "they could not contend that their speech would be 'arguably affected with a constitutional interest,'" *id*. at 1193 (citations omitted), the D.C. Circuit held that "a litigant must demonstrate a credible threat of prosecution under a statute that appears to render the litigant's arguably protected speech illegal [and the p]laintiffs in th[at] case ha[d] not met that essential requirement and therefore ha[d] failed to assert an injury in fact with respect to their challenge,'" *id*. at 1194 ("Here, as [the] plaintiffs admit, the forfeiture provisions are not 'aimed' at them. They are aimed instead at those who [knowingly] produce and distribute child pornography and obscene

material."). Like the plaintiffs in *Barr*, none of the Plaintiffs here argue that they will operate a computer service with the intent to promote or facilitate the prostitution of another person or knowingly engage in sex trafficking.

Even if they did, they could not argue that such speech to facilitate illegal acts is entitled to First Amendment protection. *See United States v. Williams*, 553 U.S. 285, 297 (2008) (recognizing that "offers to engage in illegal transactions are categorically excluded from First Amendment protection"); *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 388-89 (1973) ("We have no doubt that a newspaper constitutionally could be forbidden to publish a want ad proposing a sale of narcotics or soliciting prostitutes."). Importantly, FOSTA only applies to knowing sex trafficking, which is prohibited under federal law and most state laws, and to the illegal promotion or facilitation of prostitution.[3] Thus, to the extent plaintiffs were engaging in conduct proscribed by FOSTA, they would not be engaging in constitutionally protected speech.

Moreover, in *Backpage.com*, the district court considered a First Amendment challenge to the Stop Advertising Victims of Exploitation Act of 2015 ("SAVE Act"), which amended 18 U.S.C. § 1591. The plaintiff, an online classified advertising service, asserted a pre-enforcement challenge to the SAVE Act, alleging, as Plaintiffs do here, that the provisions of the Act are unconstitutionally vague, overbroad, and infringe its First Amendment rights. *Backpage.com*, 216 F. Supp. 3d at 100. In dismissing the action for lack of standing, the Court held that although Backpage.com alleged an intention to continue to host third party advertisements that are adult-

---

[3] As noted above, Section 2421A includes an affirmative defense where the defendant proves by a preponderance of the evidence that promoting or facilitating the prostitution is legal in the jurisdiction where the conduct was targeted. 18 U.S.C. § 2421A(e).  State criminal actions permitted by FOSTA can only occur in jurisdictions which criminalize the promotion or facilitation of prostitution. A summary of state child sex trafficking laws is available at https://sharedhope.org/wp-content/uploads/2017/11/2017-PIC-Toolkit.pdf.

oriented and concern escort services, such activities are not proscribed by the SAVE Act, and

advertisements that actually promoted sex trafficking would not be afforded First Amendment

protection. *Id*. at 103. And like the Plaintiffs here, Backpage.com could not show a credible

threat of prosecution because it did not allege the requisite *mens rea* to subject itself to the

statute's reach. *Id*. at 108-109.  Similarly, here, plaintiffs fail to show a credible threat of

prosecution because they do not allege that they have the intent to further specific acts of

prostitution.  (Even more, as discussed in more detail below, plaintiffs mischaracterize the

scienter requirements set forth in FOSTA.)

**B.**     **Plaintiffs Are Unlikely to Succeed on the Merits of Their Claims**

In addition to their lack of standing, Plaintiffs are also unlikely to prevail on merits of

their claims and have failed to state any claims on which relief can be granted. As discussed

above, Plaintiffs' claims all rely on an incorrect interpretation of FOSTA that is not supported by

the text of the law.

**1.   Plaintiffs Are Unlikely to Succeed on Their First Amendment Claims**

As an initial matter, Plaintiffs' First Amendment claims are unlikely to succeed because

FOSTA does not criminalize protected speech. For First Amendment protections to trigger, a

challenged statute must infringe on protected speech.  *See Cornelius v. NAACP Legal Def. &*

*Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985) (holding that if the allegedly restricted conduct is not

protected speech activity, "[the court] need go no further"). As explained, however, FOSTA only

applies to promotion or facilitation of illegal conduct. As such, no speech subject to FOSTA

qualifies as protected by the First Amendment. *Williams*, 553 U.S. at 297; *Pittsburgh Press Co.*,

413 U.S. at 388-89; *Backpage.com*, 216 F. Supp. 3d at 103. Plaintiffs' overbreadth, strict

scrutiny, and mens rea challenges accordingly fail on that basis alone.

Plaintiffs' overbreadth claim is also particularly unlikely to succeed because even if FOSTA reached some protected speech, its plainly legitimate sweep is vast, and it therefore could not be deemed substantially overbroad. Under the overbreadth doctrine "[a] defendant being prosecuted for speech or expressive conduct may challenge the law on its face if it reaches protected expression, even when that person's activities are not protected by the First Amendment." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 411–12 (1992).  The doctrine is grounded in the idea that "the possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973).   The Supreme Court has admonished, however, that the overbreadth doctrine is "strong medicine" that should be administered "only as a last resort." *L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999). "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003).

To assert a facial overbreadth claim, Plaintiffs must demonstrate that the challenged provision of FOSTA (1) "could never be applied in a valid manner," or (2) that even though it may be validly applied to some, "it nevertheless is so broad that it 'may inhibit constitutionally protected speech of third parties.'"[4] *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 11 (1988).  "[T]he first kind of facial challenge will not succeed unless the court finds that every application of the statute created an impermissible risk of suppression of ideas." *Id.* "[T]he second kind of facial challenge will not succeed unless the statute is 'substantially'

---

[4] The Supreme Court has noted that this latter kind of facial challenge is properly thought of as "an exception to ordinary standing requirements." *New York State Club Ass'n, Inc.*, 487 U.S. at 11.

overbroad, which requires the court to find a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Id.* The overbreadth claimant bears the burden of demonstrating, from the text of [the law] and from actual fact, that substantial overbreadth exists." *Virginia,* 539 U.S. at 122.

Plaintiffs cannot prevail in either type of overbreadth challenge, and in their Complaint they make no claim whatsoever that FOSTA reaches more protected speech than unprotected speech. Certainly, FOSTA can be validly applied to a broad sweep of conduct involving knowing sex trafficking or where there is intent to promote or facilitate illegal prostitution, and the First Amendment would not be implicated at all. It cannot be said, therefore, that there are no valid applications, nor that there is substantial overbreadth sufficient to require facial invalidation. "The 'mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.'" *Williams*, 553 U.S. at 303 (quoting *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984)). Rather, FOSTA is not "susceptible to an overbreadth challenge," *Williams*, 553 U.S. at 303, and any First Amendment deficiencies that may spring from the breadth of the statute must be cured not by facial invalidation, but "through case-by-case analysis." *Broadrick*, 413 U.S. at 622.

With respect to Plaintiffs' claims that FOSTA fails to meet strict scrutiny, they again fail to state a claim on which relief can be granted.  Plaintiffs argue that "FOSTA fails strict scrutiny because the law does not directly advance the government's objective," and "has made it more difficult for law enforcement to investigate trafficking, and hindered operations of antitrafficking organizations." Compl. ¶ 142.  In support of this, they cite to a single article written prior to the passage of FOSTA.  Contrary to Plaintiffs' allegations, FOSTA advances an important

government interest.  According to the Human Trafficking Institute, almost 85% of federal sex

trafficking prosecutions in FY 2016 and 2017 involved online advertising.  *See*

https://www.traffickingmatters.com/wp-content/uploads/2018/05/2017-Federal-Human-

Trafficking-Report-WEB-Low-Res.pdf, page 3. And the allegations in the prosecution of the

officers and employees of backpage.com illustrate the extensive criminal conduct that can take

place when websites intentionally facilitate prostitution. *United States v. Lacey, et al.*, 18-cr-422

(D. Ariz.), Docket 3 (Indictment). In short, FOSTA addresses a clearly established criminal

problem.

Plaintiffs' claims that FOSTA is not narrowly tailored also are baseless.  For example,

Plaintiffs state that FOSTA "prohibits both commercial and non-commercial speech about sex

work that does not involve sex trafficking." Compl. ¶ 143.  But sex work, by definition, is a

commercial activity, and for the most part in the United States, is an illegal activity.  As

discussed above, the First Amendment does not protect speech promoting illegal acts.  For the

reasons discussed above, Plaintiffs are also wrong that FOSTA "criminalizes speech that furthers

public health and welfare goals such as provision of health and educational resources to

consensual, adult sex workers, as well as advocacy for the decriminalization of sex

work." *Id*.  Finally, Plaintiffs' complaints about the criminal provisions in FOSTA are

circular.  According to them, the criminal provisions are not narrowly tailored because federal

law already prohibits sex trafficking.  *Id*. at ¶ 145.  Plaintiffs fail to state a claim when they argue

that FOSTA's criminal laws are infirm because there are already criminal laws in place.

It is worth underscoring that FOSTA does very little to broaden the scope of possible

criminal liability. As discussed above, all FOSTA did with respect to criminal law was create a

new federal offense that mirrors one that already exists, and defined a term used in a statute that

has been on the books for almost 18 years, and it allows the states to bring comparable actions. Thus, Plaintiffs are simply wrong when they characterize FOSTA as "expand[ing] the scope of the law." Compl. ¶ 145. What FOSTA does is broaden the scope of <u>who</u> may initiate criminal activity. The key innovation in FOSTA is to allow states to bring prosecutions for two types of crimes: sex trafficking, as prohibited by 18 USC § 1591, and intentional facilitation or promotion of illegal prostitution. But before FOSTA was enacted, websites could have been prosecuted in federal court for those same or substantially similar crimes (albeit under 18 USC § 1952), as websites never were immune from federal prosecution. To the extent FOSTA permits civil suits to proceed, it is only for conduct related to sex trafficking, where children are sold for sex, and adults are compelled to engage in commercial sex through force, fraud, or coercion. Contrary to Plaintiffs' contentions, FOSTA uses a scalpel, not a butcher's knife.

Plaintiffs also fail to state a claim that FOSTA is a content-based regulation of protected speech that fails strict scrutiny. The various provisions of FOSTA are a far cry from the content-based signage regulation at issue in *Reed v. Town of Gilbert*, 135 S.Ct. 2218, 2227 (2015), or the posted notice requirement at issue in *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S.Ct. 2361, 2371 (2018)).  Again, to the extent FOSTA regulates speech at all, it does so only with respect to illegal activity that is entitled to no First Amendment protection at all.

Count V, asserting a First Amendment claim based on an allegedly defective scienter requirement, also necessarily fails because Plaintiffs misstate the law. *See* Compl. ¶¶ 164-167. FOSTA changed nothing about Section 1591's scienter standard. All it did was define a term in the statute, while repeating the scienter element. Pre-FOSTA, Section 1591 referred to the scienter standard twice (and in all instances, it required the defendant acted knowingly if the conduct was advertising). *See Backpage.com*, 216 F. Supp. 3d at 109 (noting that the statute

contains two separate *mens rea* elements).[5] After FOSTA, Section 1591 adds to the existing

scienter elements by defining "participation in a venture" as "*knowingly* assisting, supporting, or

facilitating a violation of subsection (a)(1)." (emphasis added).  *See* Section 5 of the Act.

Contrary to Plaintiffs' assertions, FOSTA does not "seek[] to evade constitutional requirements

for scienter." Compl. ¶ 165.  Plaintiffs' concerns about criminal "liability based on mere

generalized knowledge of another's conduct," *id.*, is not based on any fair reading of the statutes.

Plaintiffs also misstate the law when they say "FOSTA's 'aggravated' offense under 18

U.S.C. § 2421A(b)(2) further dispenses with scienter by imposing liability based on 'reckless

disregard' of the fact that conduct 'contributed to sex trafficking.'" Compl. ¶ 167. To the

contrary, the "reckless disregard" language is relevant only to the defendant's maximum

---

[5] 18 U.S.C. § 1591 provides (emphasis added):

> (a) Whoever <u>knowingly</u>—
>> (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1), <u>knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact</u>, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).
>
> ***
>
> (c) In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, or solicited, the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years.

Notably, "advertising" is not included in Section 1591(c).

sentence, not to his underlying criminal liability. The criminal act prohibited in

Section 2421A(b)(2) is the same as that in Section 2421A(a), namely, the intentional promotion

or facilitation of prostitution. Critically, proof of intent is a higher *mens rea* than knowledge.

*United States v. Bailey*, 444 U.S. 394, 403-08 (1980). Plaintiffs are unlikely to succeed in any

First Amendment claim based on their misreading of these provisions.

Nor can Plaintiffs demonstrate injury-in-fact with respect to Count VI of the Complaint,

which argues that FOSTA contains a constitutionally infirm *ex post facto* provision. *See* Compl.

¶¶ 168-174. "The Ex Post Facto Clause of the United States Constitution prohibits retroactive

increases in punishment for a crime after its commission." *Sellmon v. Reilly,* 551 F. Supp. 2d 66,

84 (D.D.C. 2008) (citing U.S. Const. art. I, § 9, cl. 3; *Collins v. Youngblood,* 497 U.S. 37, 42–43

(1990)). When evaluating an *ex post facto* claim, "[t]he controlling inquiry is one of practical

effect," rather than facial difference. *Fletcher v. Reilly*, 433 F.3d 867, 879 (D.C. Cir.2006). Here,

as the Department of Justice noted in its March 23, 2018, letter to the Office of Management and

Budget, prosecutors can avoid any *ex post facto* problems by pursuing only newly prosecutable

criminal conduct that takes place after the bill was enacted. *See* March 23, 2018, letter, attached.

Plaintiffs have not alleged that FOSTA has been applied retroactively to them or shown that they

engaged in conduct prior to April 11, 2018, that was proscribed by 18 U.S.C. § 1951 or 2421A

and for which they now face a credible threat of prosecution.

### 2.  Plaintiffs Are Unlikely to Succeed in Their Vagueness Challenge

Plaintiffs are similarly unlikely to succeed in their vagueness challenge. "Vagueness

doctrine is an outgrowth of the Due Process Clause of the Fifth Amendment, not the First

Amendment." *United States v. Bronstein*, 151 F. Supp. 3d 31, 37  (D.D.C. 2015) (citing

*Williams*, 553 U.S. at 304). "A criminal law is unconstitutionally vague if it is written so

imprecisely 'that it fails to give ordinary people fair notice of the conduct it prohibits,' or is 'so standardless that it invites arbitrary enforcement' by police, prosecutors, and juries." *Id.* (quoting *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015)); *see also Hodge v. Talkin*, 799 F.3d 1145, 1171-72 (D.C. Cir. 2015). These concerns "are heightened in the First Amendment context." *Bronstein*, 2015 WL 9412106, at *3. Here, of course, as explained above, heightened scrutiny is not warranted because any activities that could lead to prosecution under § 1591 or 2421A relate to the illegal activity of prostitution or sex trafficking. Such activities are afforded no First Amendment protection. *Williams*, 553 U.S. at 297; *Cent. Hudson Gas & Elec. Corp.*, 447 U.S. at 561-62. However, even if Plaintiff's vagueness challenge were related to First Amendment interests, "'perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.'" *Bronstein*, 151 F. Supp. 3d at 37 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)). Moreover, while "'[c]lose cases can be imagined under virtually any statute,'" it is "a 'mistake' to 'belie[ve] that the mere fact that close cases can be envisioned renders a statute vague.'" *Hodge*, 799 F.3d at 1173 (quoting *Williams*, 553 U.S. at 305-06).

A vagueness challenge may be made on either an as-applied or a facial basis. An as-applied challenge does not claim that statutory terms are vague "'in all their applications,'" but that the law is invalid "insofar as [it] prohibits 'engaging in certain specified activities.'" *Id.* (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 14 (2010)). When considering an as-applied vagueness claim, a court must determine whether the challenged law is vague as applied to the plaintiff's own conduct. *See id.* (citing *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 495 (1982)). In contrast, a facial challenge alleges that a law is "vague in all its applications.'" *Id.* (quoting *Johnson*, 135 S. Ct. at 2561). Under either analysis, before striking

down a statute as unconstitutionally vague, a court "must consider whether [it] is fairly 'amenable to a limiting construction'" that would remove any constitutional infirmity. *Id.* at *5 (quoting *Skilling v. United States*, 561 U.S. 358, 405 (2010)).

Here, Plaintiffs do not specify in their Complaint whether their vagueness challenge to FOSTA is facial or as applied. Given that Plaintiffs raise this claim in a pre-enforcement context, it is appropriate to construe their claim solely as a facial challenge.[6] *See, e.g., N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 265-66 (2d Cir. 2015) ("Because plaintiffs pursue this 'pre-enforcement' appeal before they have been charged with any violation of law, it constitutes a 'facial,' rather than "as-applied," challenge."). In either case, however, Plaintiff's claim fails.

As noted above, Plaintiff's vagueness challenge focuses on the alleged ambiguity of the terms "facilitate" and "promote" in FOSTA. While the statute does not define "facilitate" or "promote," the absence of a definition does not render these terms vague when they have a readily understood ordinary meaning. As the Supreme Court has confirmed, "criminal statutes, like other statutes, [must be interpreted] in a manner consistent with ordinary English usage."

---

[6] It is well established that "'[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" *Flytenow, Inc. v. FAA*, 808 F.3d 882, 895 (D.C. Cir. 2015) (quoting *Humanitarian Law Project*, 561 U.S. at 18–19); *Hodge*, 799 F.3d at 1172 (recognizing that this limitation applies even where a statute implicates First Amendment interests). Here, that question itself is somewhat abstract since, as discussed above, Plaintiffs have not alleged intended actions in their Complaint that pose a credible threat of prosecution under FOSTA. However, to the extent Plaintiffs assert that their conduct is subject to prosecution, their vagueness challenge is premature. *See United States v. Mazuri*e, 419 U.S. 544, 550 (1975) ("It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand."); *Socialist Labor Party v. Gilligan*, 406 U.S. 583, 589 (1972) (declining to consider vagueness challenge to oath requirement because "the law's future effect [on the plaintiff] remains wholly speculative"); *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 546-47 (5th Cir. 2008) (considering a facial vagueness challenge only because there was a factual record of charges against the plaintiffs); *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 292 (6th Cir. 1997) (citing *Mazurie* in holding a facial vagueness challenge premature). In any event, however, as discussed herein, Plaintiffs' vagueness claim fails on the merits.

*Nichols v. United States*, 136 S.Ct. 1113, 1119 (U.S. 2016). Indeed, as discussed in Section A above, similar wording and use of the terms promote and facilitate have been present in the Travel Act and money laundering statutes for decades, and those terms have not been held unconstitutionally vague on those contexts. To the contrary, "[t]he likelihood that anyone would not understand any of those common words seems quite remote." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). Section 2421A is limited to those who own, manage, or operate an interactive computer service "with the intent to promote or facilitate the prostitution of another person," thus giving ordinary people "fair notice of the conduct it prohibits," and it is not "so standardless that it invites arbitrary enforcement by police, prosecutors, and juries." *See Bronstein*, 151 F. Supp. 3d at 37 (quoting *Johnson*, 135 S. Ct. at 2556). These term bear no resemblance to words and phrases—like "in a manner annoying to persons walking by"—that courts have found result in facial vagueness because of their "fundamental subjectivity." *See id.* at 38; *see also Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010) (identifying terms "annoying," "indecent," "vagrants" as terms that the Supreme Court has held vague because they require "untethered, subjective judgments").

### 3.   Plaintiffs Are Unlikely to Succeed on Their Statutory Immunity Argument

Count IV of Plaintiffs' Complaint, alleging that FOSTA's "selective removal of statutory immunity" violates the First Amendment, fails to state a claim upon which relief can be granted.

In essence, Plaintiffs argue that the First Amendment requires Section 230 of the Communications Act of 1934 to exist in full, without exceptions. This is obviously incorrect, as the First Amendment is self-executing, and does not need Congress to enact a statute in order to offer protections. Further, this is contrary to the wording of Section 230 prior to the enactment of

FOSTA, which already set forth several exceptions to Section 230's applicability.[7] Section 230 is a policy choice made by Congress to provide more protections than that offered in the First Amendment, *see, e.g.*, *Klayman v. Zuckerberg*, 753 F.3d 1354, 1355-56 (D.C.C. 2014), and Congress can amend that policy.  In other words, Plaintiffs have no relief if Congress decides that websites should no longer have more protections than the First Amendment already provides. And, as previously set forth above, nothing in FOSTA actually restricts rights protected by the First Amendment.

In sum, Plaintiffs have not alleged an intention to engage in a course of conduct arguably affected with a constitutional interest but proscribed by FOSTA, and have not demonstrated that a credible threat of prosecution under the Act actually exists. *See Susan B. Anthony List*, 134 S.Ct. at 2334. Furthermore, they are unlikely to prevail on the merits given that they have

---

[7] Prior to the enactment of FOSTA, Section 230(e) provided for the following exceptions:

> (e) Effect on other laws
> > (1) No effect on criminal law
> > Nothing in this section shall be construed to impair the enforcement of section 223 or 231 of this title, chapter 71 (relating to obscenity) or 110 (relating to sexual exploitation of children) of title 18, or any other Federal criminal statute.
> > (2) No effect on intellectual property law
> > Nothing in this section shall be construed to limit or expand any law pertaining to intellectual property.
> > (3) State law
> > Nothing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section. No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.
> > (4) No effect on communications privacy law
> > Nothing in this section shall be construed to limit the application of the Electronic Communications Privacy Act of 1986 or any of the amendments made by such Act, or any similar State law.

47 U.S.C. § 230(e).

misstated the law and failed to allege claims upon which relief can be granted. Accordingly, denial of Plaintiffs' Motion for Preliminary Injunction and dismissal of this action is appropriate.

### C.     The Other Preliminary Injunction Factors Weigh Against Emergency Relief

Plaintiffs also fail to establish that the other three preliminary injunction factors support their motion for emergency relief. First, Plaintiffs fail to demonstrate, as they are required to do, "that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22. As the Supreme Court emphasized in *Winter*, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that plaintiff is entitled to such relief." *Id.* (citation omitted).

The D.C. Circuit "has set a high standard for irreparable injury." *In re Navy Chaplaincy*, 534 F.3d 756, 766 (D.C. Cir. 2008) (citing *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)). To qualify as irreparable, in injury must be "certain and great, actual and not theoretical, beyond remediation, and also of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* (quotation omitted). Petitioner's speculative fears, therefore, cannot constitute an irreparable injury sufficient to obtain injunctive relief. *See Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam) (It is a "well known and indisputable principle[]" that "[i]njunctive relief will not be granted against something merely feared as liable to occur at some indefinite time." (quotation omitted)). "The movant must provide proof . . . indicating that the harm *is certain to occur in the near future* . . . [and] that the alleged *harm will directly result from* the action which the movant seeks to enjoin." *Id.* (emphasis added).

Here, in claiming entitlement to emergency relief, Plaintiffs primarily rely on the oft-quoted statement, by a three-Justice plurality in *Elrod v. Burns*, 427 U.S. 347, 353 (1976), that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." However, as the D.C. Circuit has recognized, "there is no *per se* rule that a violation of freedom of expression *automatically* constitutes irreparable harm." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 301 (D.C. Cir. 2006). This is not a case where FOSTA, by its own terms, prohibits Plaintiffs' constitutionally-protected speech. To the contrary, as explained above, Plaintiffs misconstrue the statutory provisions at issue and, in fact, the promotion or facilitation of illegal prostitution would not qualify as protected speech. Plaintiffs' claims that their present activities are chilled thus are nothing more than self-inflicted injury and fail to establish irreparable harm for the same reasons they are insufficient to establish an injury-in-fact.

A party seeking a preliminary injunction also must demonstrate "that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "These factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009); *see also Pursuing Am.'s Greatness v. Fed. Elec. Comm'n*, 831 F.3d 500, 511 (D.C. Cir. 2016) (balance of harms and public interest merge "because the government's interest *is* the public interest" (emphasis in original)). Here, they weigh decidedly against a preliminary injunction, particularly given that Plaintiffs seek to enjoin an Act of Congress that was "intended to serve the public interest." *Newdow*, 355 F. Supp. 2d at 293 (citing *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312–13 (1982)).

27

## V.     <u>Conclusion</u>

For all of the various reasons discussed above, Defendants respectfully submit that Plaintiffs' Motion should be denied and this case should be dismissed.

Dated:  July 12, 2018                                  Respectfully submitted,

JESSIE K. LIU, D.C. Bar #472845
United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By:     <u>*/s/ Jason T. Cohen*</u>
JASON T. COHEN, ME Bar #004465
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C. 20530
Phone: (202) 252-2523
Fax: (202) 252-2599
Email: jason.cohen@usdoj.gov