**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| WOODHULL FREEDOM FOUNDATION, HUMAN RIGHTS WATCH, ERIC KOSZYK, JESSE MALEY, a/k/a ALEX ANDREWS, and THE INTERNET ARCHIVE, | ) ) ) ) ) | |
| | ) | Case No. 1:18-cv-1552-RJL |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| THE UNITED STATES OF AMERICA and JEFFERSON B. SESSIONS, in his official capacity as ATTORNEY GENERAL OF THE UNITED STATES, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' REPLY TO OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ........................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ............................................................................................................................... 2

I.      PLAINTIFFS HAVE STANDING TO CHALLENGE FOSTA ...................................... 2

     A.      Plaintiffs Have Alleged Sufficient Facts to Demonstrate a Credible Threat
        of Prosecution and Other Harms to Their First Amendment Rights ...................... 3

     B.      The Government Misreads the Law Governing Standing ...................................... 7

II.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ................................... 12

     A.      FOSTA is Overbroad ........................................................................................... 12

     B.      FOSTA Fails Strict Scrutiny ............................................................................... 15

     C.      FOSTA is Unconstitutionally Vague ................................................................... 17

     D.      FOSTA Applies a Relaxed Scienter Standard Based on Diffuse Terms .............. 20

     E.      Modification of Section 230 Immunity ................................................................ 21

     F.      *Ex Post Facto* Law .............................................................................................. 23

III.    PLAINTIFFS' LIKELIHOOD OF PREVAILING ON THE MERITS MEANS THE
       REMAINING FACTORS FAVOR GRANT OF A PRELIMINARY INJUNCTION .... 23

CONCLUSION ......................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*ACLU v. Johnson*,
  194 F.3d 1149 (10th Cir. 1999) ............................................................................2

*ACLU v. Reno*,
  31 F. Supp. 2d 473 (E.D. Pa. 1999) ............................................... *passim*

*ACLU v. Reno*,
  929 F. Supp. 824 (E.D. Pa. 1996) ............................................2, 8, 11, 23

*Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*,
  570 U.S. 205 (2013)..........................................................................................22

*American Booksellers Found. for Free Expression v. Dean*,
  342 F.3d 96 (2d Cir. 2003).............................................................................2

*American Library Association v. Barr*,
  956 F.2d 1178 (D.C. Cir. 1992) ...................................................................9

*Amusement Devices Ass'n v. Ohio*,
  443 F. Supp. 1040 (S.D. Ohio 1977) ......................................................18

*Ashcroft v. ACLU*,
  542 U.S. 656 (2004)...................................................................................9, 17

*Ashcroft v. Free Speech Coalition*,
  535 U.S. 234 (2002)................................................................................11, 12

*Babbitt v. United Farm Workers*,
  442 U.S. 289 (1979).........................................................................................8

*Backpage.com, LLC v. Cooper*,
  939 F. Supp. 2d 805 (M.D. Tenn. 2013)...................................10, 14, 22

*Backpage.com, LLC v. Dart*,
  807 F.3d 229 (7th Cir. 2015), *cert. denied*, 137 S. Ct. 46 (2017)...........10

*Backpage.com, LLC v. Hoffman*,
  2013 WL 4502097 (D.N.J. Aug. 20, 2013) ...............................10, 14, 22

*Backpage.com, LLC v. Lynch*,
  216 F. Supp. 3d 96 (D.D.C. 2016) .............................................................9

*Backpage.com, LLC v. McKenna,*
  881 F. Supp. 2d 1262 (W.D. Wash. 2012)................................................10, 14, 22

*Baggett v. Bullitt,*
  377 U.S. 360 (1964).............................................................................................1

*Batzel v. Smith,*
  333 F.3d 1018 (9th Cir. 2003) ...........................................................................21

*Bays v. City of Fairborn,*
  668 F.3d 814 (6th Cir. 2012) .............................................................................25

*Big Mama Rag, Inc. v. United States,*
  631 F.2d 1030 (D.C. Cir. 1980) ...........................................................................1

*Bookfriends, Inc. v. Taft,*
  223 F. Supp. 2d 932 (S.D. Ohio 2002) ................................................................2

*Brandenburg v. Ohio,*
  395 U.S. 444 (1969)...........................................................................................13

*Brown v. Entertainment Merchs. Ass'n,*
  564 U.S. 786 (2011)...........................................................................................16

*CDT v. Pappert,*
  337 F. Supp. 2d 606 (E.D. Pa. 2004) ................................................................10

*Chaplaincy of Full Gospel Churches v. England,*
  454 F.3d 290 (D.C. Cir. 2006)...........................................................................24

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013).............................................................................................7

*Cyberspace Commc'ns, Inc. v. Engler,*
  55 F. Supp. 2d 737 (E.D. Mich. 1999)................................................................2

*Dart v. Craigslist, Inc.,*
  665 F. Supp. 2d 961 (N.D. Ill. 2009) ................................................................10

*De Jonge v. Oregon,*
  299 U.S. 353 (1937)...........................................................................................12

*Déjà vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty.,*
  274 F.3d 377 (6th Cir. 2001) .............................................................................25

*Doe v. Bolton,*
  410 U.S. 179 (1973)........................................................................................2, 3

iii

*Doe v. MySpace, Inc.*,
    474 F. Supp. 2d 843 (W.D. Tex. 2007), *aff'd*, 528 F.3d 413 (5th Cir. 2008) ........................10

*Doe v. SexSearch.com*,
    502 F. Supp. 2d 719, 727 (N.D. Ohio 2007), *aff'd on other grounds*,
    551 F.3d 42 (6th Cir. 2008) ........................................................................10

*Elrod v. Burns*,
    427 U.S. 347 (1976) ............................................................................24, 25

*e-ventures Worldwide, LLC v. Google, Inc.*,
    2017 WL 2210029 (M.D. Fla. Feb. 8, 2017) ......................................................22

*Fabulous Assocs. v. Pennsylvania Pub. Util. Comm'n*,
    896 F.2d 780 (3d Cir. 1990)..........................................................................9

*Google, Inc. v. Hood*,
    96 F. Supp. 3d 584 (S.D. Miss. 2015), *rev'd on procedural grounds*,
    822 F.3d 212 (5th Cir. 2016) ..................................................................10, 21

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010) ................................................................................18

*In re Navy Chaplaincy*,
    534 F.3d 756 (D.C. Cir. 2008) ....................................................................24

*Jian Zhang v. Baidu.com Inc.*,
    10 F. Supp. 3d 433 (S.D.N.Y. 2014)..............................................................22

*La'Tiejira v. Facebook, Inc.*,
    272 F. Supp. 3d 981 (S.D. Tex. 2017) ............................................................22

*Matal v. Tam*,
    137 S. Ct. 1744 (2017)............................................................................22

*Mills v. D.C.*,
    571 F.3d 1304 (D.C. Cir. 2009) ..............................................................24, 25

*NAACP v. Claiborne Hardware Co.*,
    458 U.S. 886 (1982)..............................................................................13

*Nat'l Inst. of Family & Life Advocates v. Becerra*,
    138 S. Ct. 2361 (2018).............................................................................15

*New Hampshire Right to Life Political Action Comm. v. Gardner*,
    99 F.3d 8 (1st Cir. 1996)............................................................................8

*New York State Club Ass'n. v. City of New York*,
    487 U.S. 1 (1998) ........................................................................................................12

*Nken v. Holder*,
    556 U.S. 418 (2009) ...................................................................................................25

*Pacific Gas & Elec. Co. v. Public Utils. Comm'n of Cal.*,
    475 U.S. 1 (1986) .........................................................................................................6

*Pursuing America's Greatness v. FEC*,
    831 F.3d 500 (D.C. Cir. 2016) .............................................................................24, 25

*R.A.V. v. City of St. Paul*,
    505 U.S. 377 (1992) ...................................................................................................15

*R.J. Reynolds Co. v. FDA*,
    823 F. Supp. 2d 36, 52 (D.D.C. 2011), *aff'd*, 696 F.3d 1205 (D.C. Cir. 2012),
    *overruled on other grounds*, *American Meat Inst. v. USDA*, 760 F.3d 18 (D.C.
    Cir. 2014) (*en banc*) ..................................................................................................25

*Reed v. Town of Gilbert*,
    135 S. Ct. 2218 (2015) ...............................................................................................15

*Reno v. ACLU*,
    521 U.S. 844 (1997) ..............................................................................8, 9, 17, 19, 21

*Saponaro v. Grindr, LLC*,
    93 F. Supp. 3d 319 (D.N.J. 2015) ..............................................................................10

*Seeger v. DOD*,
    306 F. Supp. 3d 265 (D.D.C. 2018) ...........................................................................24

*Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*,
    502 U.S. 105 (1991) ...................................................................................................11

*Smith v. California*,
    361 U.S. 147 (1959) ...................................................................................................22

*Southeast Booksellers Ass'n v. McMaster*,
    371 F. Supp. 2d 773 (D.S.C. 2005) ..............................................................................2

*Steffel v. Thompson*,
    415 U.S. 452 (1974) .................................................................................................2, 8

*Susan B. Anthony List v. Driehaus*,
    134 S. Ct. 2334 (2014) .............................................................................................8, 9

*United States v. Bennett*,
  1996 WL 477048 (9th Cir. 1996) ........................................................................19

*United States v. Hurant*,
  No. CR 16-45 (E.D.N.Y.) ...................................................................................19

*United States v. Lacey, et al.*,
  18-CR-422 (D. Ariz.) ..........................................................................................19

*United States v. Omuro*,
  No. CR-14-CR-336 (N.D. Cal.) ..........................................................................19

*United States v. Playboy Entm't Grp., Inc.*,
  529 U.S. 803 (2000)................................................................................15, 16, 17

*United States v. Stevens*,
  559 U.S. 460 (2010)................................................................................12, 13, 23

*United States v. Williams*,
  553 U.S. 285 (2008)......................................................................................14, 17

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*,
  478 F.3d 413 (1st Cir. 2007) ...............................................................................21

*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*,
  425 U.S. 748 (1976)...............................................................................................6

*Virginia v. American Booksellers Ass'n*,
  484 U.S. 383 (1988)...............................................................................................2

*Watt v. Energy Action Educ. Found.*,
  454 U.S. 151 (1981)...............................................................................................2

*Zeran v. Am. Online, Inc.*,
  129 F.3d 327 (4th Cir. 1997) ..........................................................................21, 22

**State Cases**

*Delfino v. Agilent Techs., Inc.*,
  145 Cal. App. 4th 790 (2006) ..............................................................................21

*People v. Ferrer*,
  2016 WL 7237305 (Cal. Super. Ct. Dec. 9, 2016).................................................21

*People v. Ferrer*,
  No. 16FE024013, slip op. (Cal. Super. Ct. Aug. 23, 2017) ...................................21

**Constitutional Provisions**

U.S. Const. amend. I .............................................................................................. *passim*

**Federal Statutes**

Allow States and Victims to Fight Online Sex Trafficking Act of 2017,
    Pub. L. No. 115-164, 132 Stat. 1253 (2018)................................................... *passim*

18 U.S.C.
    § 1591....................................................................................................................7, 20
    § 1591(a)...............................................................................................................1, 20
    § 1591(a)(1)-(2) .........................................................................................................20
    § 1591(e)(4) ...................................................................................................1, 14, 20
    § 1952........................................................................................................................19
    § 2252A(a)(3)(B) .......................................................................................................14
    § 2421A(a)...........................................................................................................1, 3, 14
    § 2421A(b)...........................................................................................................1, 3, 20
    § 2421A(b)(2)......................................................................................................14, 20

47 U.S.C.
    § 230............................................................................................................... *passim*
    § 230(e) .....................................................................................................................21

**Legislative Material**

H.R. Rep. No. 115-572 (Feb. 20, 2018)....................................................................7, 21

**Rules**

Local R. 7.1(b) ..............................................................................................................1

**Other Authorities**

Eric Goldman, *Indianapolis Police Have Been "Blinded Lately Because
    They Shut Backpage Down,"* Tech. & Mktg. L. Blog, July 11, 2018,
    https://blog.ericgoldman.org/archives/2018/ 07/indianapolis-police-have-
    been-blinded-lately-because-they-shut-backpage-down.htm ...................................16

U.S. DEPT. OF JUSTICE OFFICE OF LEGISLATIVE AFFAIRS, *Memorandum to Hon. Robert
    Goodlatte, Chairman, U.S. House of Representatives Committee of the Judiciary*
    (Feb. 27, 2018).......................................................................................................23

# INTRODUCTION

The Government urges the Court to deny a preliminary injunction (and to dismiss the Complaint) based on a narrow reading of the Allow States and Victims to Fight Online Sex Trafficking Act of 2017.  Pub. L. No. 115-164, 132 Stat. 1253 (2018) ("FOSTA" or "the Act").[1] But DOJ's assertions that Plaintiffs need not fear application of FOSTA's open-ended terms and draconian penalties utterly ignores a history of Internet regulation that includes overly broad and unconstitutional efforts to regulate speech.  FOSTA is even more extreme, imposing more severe criminal penalties than ever, and piling on redundant layers of potential civil liability while simultaneously stripping away immunities.  Although the Government suggests (repeatedly) that FOSTA reaches only speech that advertises illegal activity, Opp. 14, 15, 16, 18, 22, 25, 27, the Act by its plain terms extends far more broadly to any online speech that may be said to "promote" or "facilitate" prostitution, or to "assist," "support" or "facilitate" sex trafficking. 18 U.S.C. §§ 1591(a), (e)(4); § 2421A(a)-(b).  It is small wonder Plaintiffs and many others have been deterred from posting anything close to "the unlawful zone."  *E.g.*, *Big Mama Rag, Inc. v. United States*, 631 F.2d 1030, 1035 (D.C. Cir. 1980) (quoting *Baggett v. Bullitt*, 377 U.S. 360, 372 (1964)).  FOSTA has had an entirely predictable chilling effect, and as such it causes both injury-in-fact that gives Plaintiffs standing to challenge it, and First Amendment violations that constitute irreparable harm.  The Act must therefore be preliminarily enjoined.

---

[1]   The Government has styled its Opposition to the Motion for a Preliminary Injunction (Opp.) as also constituting its Motion to Dismiss the Complaint.  The Court's rules allow more time for an opposition to a motion to dismiss than has been allowed for briefing and hearing the preliminary injunction motion.  *See* Local R. 7.1(b).  Plaintiffs will oppose the Motion to Dismiss in due course, if necessary, in the wake of the Court's ruling on the preliminary injunction.

**ARGUMENT**

## I.    PLAINTIFFS HAVE STANDING TO CHALLENGE FOSTA

Plaintiffs have standing to challenge FOSTA because the law proscribes online speech in ways that directly threaten Plaintiffs' expressive activities.[2]  All this is set forth in Plaintiffs' declarations, which describe myriad ways in which their speech has already been dampened by the law, and which have gone unchallenged by the Government.[3]  It is well established that a credible threat of present or future criminal prosecution will confer standing. *See, e.g.*, *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 392-93 (1988) (noting Court was "not troubled by the pre-enforcement nature of th[e] suit" and holding the injury-in-fact requirement was met, in part because "plaintiffs [] alleged an actual and well-founded fear that the law will be enforced against them"); *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("It is not necessary that [a party] first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights."); *Doe v. Bolton*, 410 U.S. 179, 188-89

---

[2]  In a facial challenge with multiple parties, only one plaintiff need demonstrate standing. Once a plaintiff has done so, the District Court need not consider whether the others also have standing.  *See, e.g.*, *Watt v. Energy Action Educ. Found.*, 454 U.S. 151, 160 (1981); *Bookfriends, Inc. v. Taft*, 223 F. Supp. 2d 932, 939 n.6 (S.D. Ohio 2002).

[3]  This is similar to the previous regulations of Internet speech, all of which resulted in pre-enforcement injunctions barring enforcement. *See, e.g.*, *ACLU v. Reno*, 929 F. Supp. 824 (E.D. Pa. 1996) ("*Reno I*") (subsequent history omitted); *ACLU v. Reno*, 31 F. Supp. 2d 473 (E.D. Pa. 1999) ("*Reno II*") (subsequent history omitted).  *See also ACLU v. Johnson*, 194 F.3d 1149, 1154 (10th Cir. 1999) ("No one should have to go through being arrested for a felony, public[ly] shamed, and pay for a defense only to have a court find [a] newly enacted statute is unconstitutional.") (citation omitted); *Cyberspace Commc'ns, Inc. v. Engler*, 55 F. Supp. 2d 737, 745-46 (E.D. Mich. 1999) ("[P]laintiffs have standing, because an alleged injury is '*certainly* impending', if the statute takes effect and the material they disseminate is deemed 'sexually explicit.'"), *aff'd*, 238 F.3d 420 (6th Cir. 2000); *American Booksellers Found. for Free Expression v. Dean*, 342 F.3d 96, 100-01 (2d Cir. 2003) (law "presents plaintiffs with the choice of risking prosecution or censoring the content of their sites"); *Bookfriends*, 223 F. Supp. 2d at 941 (plaintiffs had standing to challenge internet censorship law where government "did not present 'compelling contrary evidence' which could cause this Court to conclude that a credible threat of prosecution does not exist"); *Southeast Booksellers Ass'n v. McMaster*, 371 F. Supp. 2d 773 (D.S.C. 2005).

(1973). The rationale underlying this rule is that a credible threat of present or future prosecution is itself an injury that suffices to confer standing, even if there is no history of past enforcement. *Bolton*, 410 U.S. at 188. This recognizes that a speaker who fears prosecution may engage in self-censorship, which is itself an injury.

### A. Plaintiffs Have Alleged Sufficient Facts to Demonstrate a Credible Threat of Prosecution and Other Harms to Their First Amendment Rights

FOSTA reaches anyone who owns, manages, or operates an interactive computer service so as to "promote" or "facilitate" the prostitution of another person," 18 U.S.C. § 2421A(a), and exposes to even greater liability one who "acts in reckless disregard" of the fact that his conduct "contributed to sex trafficking." *Id.* § 2421A(b). The Government acknowledges these terms are undefined (and unrestricted) in the Act and that their "sweep is vast." Opp. 16, 23. FOSTA can easily be read to encompass Plaintiffs' advocacy for sex workers, provision of health-related information, and harm reduction activities; as a result, it is at best uncertain whether they have the requisite intent to "facilitate" prostitution. Plaintiffs cite numerous examples where speech has been driven from the Internet, and show by declaration how their own speech has already been dampened or silenced and how they are uncertain how to proceed in the immediate future.

**Woodhull Freedom Foundation:** Woodhull has a credible fear it may be prosecuted for "promoting" or "facilitating" prostitution given the broad, vague, and undefined prohibitions contained in FOSTA and Woodhull's intention to make sex work safer and thus easier. Decl. of Ricci Levy, Dkt. 5-2 ("Levy Decl."), ¶¶ 17, 42. Woodhull's Sexual Freedom Summit ("Summit") workshops have included information and advice for sex workers that goes beyond advocacy for "harm reductions, disability, age, health and personal safety." Opp. 9 (quoting Compl. ¶¶ 66-67). For example, past workshops have included advice on client screening for sex workers, human rights to engage in prostitution, and efforts to legitimize the sex work industry.

Levy Decl. ¶¶ 19-20.[4]   Woodhull needs to know if FOSTA can be enforced against online services such as a Facebook Live feed and live tweets on Twitter, where sex workers identify themselves as such and may provide contact information.   It is unclear whether, by giving specific sex workers this online platform, Woodhull will be seen as "promoting the prostitution of another person."   It is also uncertain whether its promotion of the upcoming sex worker workshops on its own website and social media violate FOSTA for the same reason.

   **Alex Andrews:**   Ms. Andrews has alleged a credible fear of legal penalties for both the creation and maintenance of Rate that Rescue, and also put on hold her acquisition of an in-development reporting application.   Andrews intends that both the website and the app will make sex work safer and thus easier.   The website, Rate that Rescue, exists to "share information about all types of organizations that provide services that sex workers use."   Decl. of Jesse Maley, Dkt. 5-5 ("Maley Decl."), ¶¶ 12, 23.   The organizations listed on Rate That Rescue provide services including "housing, childcare, counseling, education, and outreach."   *Id.* ¶ 21.   Providing housing services to sex workers makes sex work easier by giving sex workers a place to live and safely engage in sex work.   Providing childcare to sex workers makes sex work easier during the time that sex workers' children would not be otherwise cared for.   Evaluating "rescue services" that identify organizations that move a sex worker out of trafficking and into consensual sex work, rather than out of sex work altogether, also makes sex work safer and easier.[5]

---

[4]   The 2018 Summit will include workshops that provide information on "better practices for sex workers," how to engage in supportive relationships with sex workers, how to balance sex work with personal time, how to safely write online profiles, and how to reduce the risk of prosecution when seeking aid from the police by calling 911.   Dkt. 11, pp.5-7.   Woodhull publishes contact information for sex workers on its own website, and promotes this information on various third party social media platforms.   Levy Decl. ¶¶ 23-24.

[5]   Likewise, the in-development mobile application Andrews decided not to purchase because of FOSTA was designed to make sex work easier by reducing the dangers that sex workers face from their clients and lessening the precautions that sex workers must take before

Given that both the website and app were comprised mostly of user-generated content, Andrews relied on immunity under 47 U.S.C. § 230 ("Section 230") to reduce her risk of liability should a user supply offending content.  But with passage of FOSTA, she can no longer do so. Andrews reasonably fears that she will be seen as recklessly disregarding the risk that by making sex work easier, she can be accused of "contributing to sex trafficking," because of the way Congress has conflated trafficking with sex work.  And as long as her own or user-generated content is not advertising, and she does not intend that it will be, she need not have the intent to be assisting sex trafficking, or even specific knowledge that she is doing so.

**Human Rights Watch:**  FOSTA reasonably could be interpreted to apply to HRW's human rights advocacy because HRW seeks to make sex work safer and thus easier.  Opp. 10. HRW makes sex work easier by advocating on behalf of sex workers' rights and safety in the U.S. and internationally, and by documenting "abuses against sex workers in the United States, Lebanon, and South Africa."  Decl. of Dinah Pokempner, Dkt. 5-3 ("Pokempner Decl."), ¶ 5. Documenting abuse suffered in connection with sex work has the goal of ending such abuse and making sex work less dangerous.  Also, HRW reports on "police searches of women for condoms as evidence of prostitution in four US cities."  *Id*.  These reports forewarn sex workers about methods police use to discover and shut down sex work, thus making it easier for sex workers to avoid detection by law enforcement.

**Internet Archive**: The Internet Archive reasonably fears prosecution not only for its pre-servation of web pages, but also for material it hosts that third parties upload.  The Government's

---

engaging in sex work.  The application in question "would allow sex workers to use the app to report violence, harassment, and other harmful behavior against them," Maley Decl. ¶ 33, and would "maintain a database of these reports so that other sex workers could query to avoid bad actors and to decrease violence against them."  *Id*.  This function, like other "bad date lists," are designed to help sex workers safely be sex workers, thus making sex work easier.

claim that the Archive "does not allege an intention to engage in a course of conduct proscribed by the statute at issue or for which there exists a credible threat of prosecution," Opp. 10, is not supported by the facts.[6]   Although the Archive does not intend to promote sex trafficking or prostitution, it intentionally stores and displays a vast amount of both historical website data and third-party content that is has "no practical ability to evaluate the legality of."  Decl. of Brewster Kahle, Dkt. 5-6 ("Kahle Decl."), ¶ 14.  And given the ambiguity of FOSTA, it is unclear whether the Internet Archive will be required to have specific knowledge that hosted content somehow "supports or assists sex trafficking or promotes or facilitates prostitution."  Kahle Decl. ¶¶ 14, 21.  Prior to FOSTA, the Archive relied on the immunity granted by Section 230 to operate without fear of liability.  It can no longer do so.  *Id.* ¶¶ 15, 21.  Even if the Internet Archive had the resources and ability to screen for content made illegal by FOSTA, the law's ambiguity as to what is actually illegal would make this an impossible task.

   **Eric Koszyk**:  Mr. Koszyk was injured when Craigslist eliminated its Therapeutic Services section as a direct response to FOSTA.  That Koszyk's actions "do not fall within those proscribed by the Act," is irrelevant.  Opp. at 10.  As Craigslist is critical to Koszyk's ability to conduct his business, its removal of his ads due to its fear of prosecution or litigation under FOSTA causes him injury.  Decl. of Eric Koszyk, Dkt. 5-4 ("Koszyk Decl."), ¶¶ 25, 27.  Mr. Koszyk's injury can thus be redressed by the Court voiding FOSTA, by eliminating Craigslist's

---

[6]   Even if the Archive did not fear potential prosecution, it would have standing based on FOSTA's impact in dampening Internet speech that affects its mission of preserving access to online information for the general public.  *See Reno II*, 31 F. Supp. 2d at 480-81 n.2.  This is because the First Amendment protects the right to "receive information and ideas."  *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 757 (1976) (citation omitted); *see also Pacific Gas & Elec. Co. v. Public Utils. Comm'n of Cal.*, 475 U.S. 1, 7 (1986) (noting First Amendment protects public's interest in receiving information).

credible fear of prosecution, and leading them to re-open their platform to his ads.  *See* Compl. ¶ 101; Decl. of Kate D'Adamo, Dkt. 5-1 ("D'Adamo Decl."), ¶ 13.

The Government does not address these specific claims, but merely asserts that Plaintiffs' fears are ill-founded because it believes Plaintiffs lack the requisite intent "to promote or facilitate prostitution."  But this disregards the pleaded facts that Plaintiffs Woodhull, HRW, and Andrews intend to make sex work safer, and thus easier, raising the legitimate concern they will be found to have intended to "facilitate" prostitution as that term is used in FOSTA.  The Government ignores the fact that Section 1591 requires no such intent, creating the fear of liability for Andrews, the Internet Archive, and non-party Craigslist, which has resulted in injury to plaintiff Koszyk; all previously relied on Section 230 immunity.

The credible threat of prosecution is manifest in FOSTA's purpose to facilitate prosecution by broadening existing law in both scope and number of enforcers.  FOSTA followed active campaigns by state officials and local law enforcement to police the Internet, numerous civil claims, and exhortations to action by federal officials.  Its stated purpose is to allow enforcement in cases that previously were barred by law, and it went even further to create a new federal offense.  As the House Report put it, "H.R. 1865 will allow vigorous criminal enforcement against all bad-actor websites, not just Backpage.com, through the creation of a new federal law and by explicitly permitting states to enforce criminal laws that mirror this new federal law and current federal sex trafficking law."  H.R. Rep. No. 115-572, at 6 (Feb. 20, 2018).

### B.       The Government Misreads the Law Governing Standing

The Government not only ignores these facts, it misreads the law.  Its claim that the standing inquiry must be "especially rigorous" fails to recognize the First Amendment context of this case.  Opp. 7 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)).  The inquiry is different where the government adopts a law, the very existence of which inhibits

speech, because the "risk of criminal sanctions 'hovers over each content provider, like the proverbial sword of Damocles.'"  *Reno v. ACLU*, 521 U.S. 844, 882 (1997) (quoting *Reno I*, 929 F. Supp. at 855-56).   As the U.S. District Court for the Eastern District of Pennsylvania explained when it enjoined the Child Online Protection Act ("COPA"), the standard encapsulated in the phrase "'credible threat of prosecution' is quite forgiving."  *Reno II*, 31 F. Supp. 2d at 479-80 (quoting *New Hampshire Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 14 (1st Cir. 1996)).   When dealing with pre-enforcement challenges "to recently enacted (or, at least non-moribund) statutes that facially restrict expressive activity by the class to which the plaintiff belongs, the court will assume a credible threat of prosecution in the absence of compelling contrary evidence."  *Id*. at 480 (quoting *Gardner*, 99 F.3d at 15).

The Government obscures the central holdings of *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334 (2014) ("*SBA List*"), Opp. 7-8, which held that (1) "it is not necessary that [a person] first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights," *SBA List*, 134 S. Ct. at 2342 (quoting *Steffel*, 415 U.S. at 459); (2) a plaintiff can bring a pre-enforcement suit when he "has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder," *id*. (quoting *Babbitt v. United Farm Workers*, 442 U.S. 289, 298 (1979)); and (3) a plaintiff who wishes to challenge the constitutionality of a law regulating speech is not required "to confess that he will in fact violate that law" in order to have standing.  *Id*. at 2344-45.  *See also Babbitt*, 442 U.S. at 301 (case was justiciable even though plaintiffs disavowed any intent to "propagate untruths").[7]

---

[7]   One factor that strongly supported standing in *SBA List* was that the Ohio false statement statute allowed "any person" with knowledge of the purported violation to file a complaint.  134 S. Ct. at 2345.  FOSTA is even more threatening in this regard because anyone may target online

Applying these principles, the Court rejected an argument like the Government's claim here, that Plaintiffs need not fear prosecution or civil suits because of a supposed lack of intent. *Id.* at 2344-45 (holding credible threat of enforcement exists even where a law prohibits only "knowingly false" statements and the plaintiff has not expressed any intention to lie).[8]

There is no authority for the Government's proposition that Plaintiffs' speech has not been chilled because they have not gone completely silent. Opp. 9 ("By its own admission, Woodhull is proceeding with its Summit, including online advertising."). The law is clear that "[a] statute which has the effect of deterring speech, even if not totally suppressing speech, is a restraint on free expression." *Reno II*, 31 F. Supp. 2d at 493. *See Fabulous Assocs. v. Pennsylvania Pub. Util. Comm'n*, 896 F.2d 780, 785 (3d Cir. 1990).

The Government suggests Plaintiffs need not fear FOSTA's use of open-ended terms like "promote" or "facilitate" could lead to overzealous application based on "enforcement history." Opp. 10-12. But Plaintiffs' fear is based on a more pertinent historical context—repeated attempts to regulate the Internet. These have included overly broad and unconstitutional efforts to regulate speech,[9] charging websites with aiding and abetting prostitution for merely providing

_____

speech by purporting to notify a hosting service (like Plaintiff Internet Archive) that a given post facilitates prostitution or trafficking.

[8] There can be no well-founded argument that *American Library Association v. Barr*, 956 F.2d 1178 (D.C. Cir. 1992), or *Backpage.com, LLC v. Lynch*, 216 F. Supp. 3d 96 (D.D.C. 2016), are controlling or support finding lack of standing here. Opp. 13-15. In both cases, plaintiffs not only disavowed engaging in speech falling within the statutes at issue, *see* Opp. 13 (citing *ALA*, 956 F.2d at 1193-94); *id.* 15 (citing *Lynch*, 216 F. Supp. 3d at 103, 108-09), but attested to taking steps to avoid doing so. *E.g.*, *Lynch*, 216 F. Supp. 3d at 104, 107 (citing "numerous steps" taken to eliminate illegal content). Here, conversely, Plaintiffs have averred they knowingly engage in speech—and wish to continue to do so—that could easily fall within FOSTA's broad, undefined prohibitions against, *e.g.*, "promoting" or "facilitating" prostitution. *See infra* 12-14, 17-20.

[9] *Reno*, 521 U.S. at 882 (Communications Decency Act ("CDA") "threatens to torch a large segment of the Internet community"); *Ashcroft v. ACLU*, 542 U.S. 656, 674 (2004) ("even full compliance with COPA cannot guarantee freedom from prosecution") (Stevens, J., concurring).

a neutral platform for advertising,[10] subjecting such sites to informal prior restraints,[11] engaging in abusive investigations of search engines,[12] targeting websites with unconstitutional legislation,[13] and peppering online sites with contrived civil suits.[14]  FOSTA's *raison d'être* is to make such claims and enforcement actions viable, and it is absurd to think its expansive terms will not be used by politically ambitious prosecutors to target speech they dislike, or by avaricious plaintiffs' lawyers (particularly given FOSTA's fee-shifting and mandatory reparations provisions).

The Government in this case advances the same argument it made in opposing preliminary injunctions of both the CDA and COPA—that concerns about potential liability

---

[10]  *E.g.*, *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 968 (N.D. Ill. 2009) ("We disagree … that the 'adult services' section is a special case.  The phrase 'adult,' even in conjunction with 'services,' is not unlawful in itself nor does it necessarily call for unlawful content.").

[11]  *Backpage.com, LLC v. Dart*, 807 F.3d 229, 234 (7th Cir. 2015) ("not all advertisements for sex are advertisements for illegal sex"), *cert. denied*, 137 S. Ct. 46 (2017); *CDT v. Pappert*, 337 F. Supp. 2d 606 (E.D. Pa. 2004).

[12]  *Google, Inc. v. Hood*, 96 F. Supp. 3d 584, 598 (S.D. Miss. 2015) (overbroad subpoena to Google violated First Amendment), *rev'd on procedural grounds*, 822 F.3d 212 (5th Cir. 2016).

[13]  *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1282 (W.D. Wash. 2012) (escort ads have long been permitted and escort services are licensed and regulated in many states); *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805, 833-34 (M.D. Tenn. 2013) (ads for escorts and adult services are protected speech under the First Amendment); *Backpage.com, LLC v. Hoffman*, 2013 WL 4502097, at *9-11 (D.N.J. Aug. 20, 2013) (rejecting argument that escort ads are unprotected speech).

[14]  *See, e.g.*, *Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 323 (D.N.J. 2015) (claim that service provider "fail[ed] to properly supervise its site," such that "a thirteen-year-old was allowed to use its services and [] hold himself out as an adult, which … led to Plaintiff's arrest," treated Grindr as publisher of others' content); *Doe v. MySpace, Inc.*, 474 F. Supp. 2d 843, 849 (W.D. Tex. 2007) ("No matter how artfully Plaintiffs seek to plead th[em], the Court views Plaintiff's claims [that the service provider failed to implement sufficient safeguards to protect minors from sexual assault] as directed toward MySpace in its publishing, editorial, and/or screening capacities."), *aff'd*, 528 F.3d 413 (5th Cir. 2008); *Doe v. SexSearch.com*, 502 F. Supp. 2d 719, 727 (N.D. Ohio 2007) ("Plaintiff attempts to do the same [] as the plaintiffs in *Doe v. MySpace* and, in fact, comes right out and tells the Court his Complaint is artfully pled to avoid the CDA."), *aff'd on other grounds*, 551 F.3d 412 (6th Cir. 2008).

under Internet censorship laws are overblown.   Reviewing courts emphatically rejected those arguments, finding "plaintiffs' fear of prosecution … legitimate, even though they are not the pornographers Congress had in mind when it passed the CDA."   *Reno I*, 929 F. Supp. at 872 (Dalzell, J.).   Where laws that regulate speech threaten heavy criminal penalties or civil sanctions, courts typically find standing for a facial challenge rather than trusting prosecutors to show good sense or exercise restraint.   *Id*. at 857.   *See Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002) ("this case [is] a textbook example of why we permit facial challenges to statutes that burden expression").

The *Reno I* court said it must consider whether "a content-based law '*can* produce such an outcome'" regardless whether the Government considers plaintiffs' concerns "hyperbolic." 929 F. Supp. at 870 (Dalzell, J.) (quoting *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 123 (1991)).[15]   The court rejected the government's identical argument and denied its motion to dismiss the pre-enforcement challenge to COPA despite the claim that plaintiffs' concerns were "wholly speculative" because they were "not 'engaged in the business' of distributing harmful to minors materials."   *Reno II*, 31 F. Supp. 2d at 480.   But the

---

[15]   The CDA plaintiffs demonstrated a "likelihood" of prosecution even though the court considered it "unlikely that the Carnegie Library will ever stand in the dock for putting its card catalogue online, or that the Government will hale the ACLU into court for its online quiz of the seven dirty words."  *Reno I*, 929 F. Supp. at 871 (Dalzell, J.)  The court observed "we cannot ignore that the Act *could* reach these activities," or others, such as the Critical Path AIDS Project's Web site, "which includes safer sex instructions written in street language for easy comprehension" as well as descriptions of "the risk of HIV transmission for particular sexual practices."  *Id*. (emphasis added).  It also found that Stop Prisoner Rape, Inc. had shown a likelihood of prosecution because it had created chat rooms "in which members can discuss their experiences," and it pointed to other websites "dedicated to survivors of rape, incest, and other sexual abuse" that similarly were at risk.  *Id*. at 872.  Notwithstanding the clear merit of such speech, the court found "[t]he operators of these sites, and their participants, could legitimately fear prosecution under the CDA."  *Id*.

court found "nothing in the text of the COPA … limits its applicability to so-called commercial pornographers only." *Id.*  The same considerations apply here.

## II.      PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

### A.      FOSTA is Overbroad

The Government misstates the First Amendment standard for constitutional overbreadth and then misapplies the law to the facts of this case.  Contrary to the claim that overbreadth applies only if a law "could never be applied in a valid manner" or may "inhibit constitutionally-protected speech of third parties," Opp. 16 (citing *New York State Club Ass'n. v. City of New York*, 487 U.S. 1, 11 (1998)), more recent precedent provides the correct test for overbreadth: whether the law would restrict or chill a substantial amount of speech relative to the law's legitimate sweep.  *United States v. Stevens*, 559 U.S. 460, 473 (2010).  The Government's statement that the overbreadth claim fails unless Plaintiffs can show "FOSTA reaches more protected speech than unprotected speech," Opp. 17, finds no support in the law.

Citing cases to suggest that advertisements for illegal acts (including prostitution) are not protected by the First Amendment, Opp. 15, the Government erroneously extrapolates this to mean that any speech or advocacy with any connection to illegal conduct is *per se* unprotected speech.  *Id.* 15-19.  But the Supreme Court has explained that "[t]he prospect of crime … by itself does not justify laws suppressing protected speech," and that "[e]ven where there is an underlying crime … the Court has not allowed suppression of speech in all cases."  *Free Speech Coalition*, 535 U.S. at 245, 254.  This principle emerged from some of the Court's earliest First Amendment cases.  *De Jonge v. Oregon*, 299 U.S. 353, 362-63 (1937) (invalidating Oregon anti-syndicalism statute because it went beyond criminalizing incitement to include advocacy "to effect revolutionary changes in government" and other peaceful political activity).  It has been

reaffirmed in various contexts ever since.[16]  Specifically with respect to statutory overbreadth, the Court has held that a law must satisfy First Amendment scrutiny even when the speech relates to conduct that violates state and federal laws.  *Stevens*, 559 U.S. at 466 ("The acts depicted in crush videos are typically prohibited by the animal cruelty laws enacted by all 50 states and the District of Columbia.").

Starting with the erroneous premise that the First Amendment permits prohibiting any speech that may be linked to criminal activity, the Government then incorrectly concludes that FOSTA's "plainly legitimate sweep" is "vast" because it assumes the state can broadly prohibit online speech relating to "sex work" because it "by definition, is a commercial activity, and for the most part in the United States is an illegal activity."  Opp. 18.  This, in a nutshell, is FOSTA's overbreadth problem: FOSTA's sweep is indeed "vast," but the government's constitutional latitude for imposing restrictions on speech is far more constrained.  As Plaintiffs showed in their Motion, this simplistic conclusion has been rejected by every court that has considered it, yet the Government does not mention this body of law.  Mot. 21-22 & n.7 (collecting cases).  FOSTA reaches beyond solicitation of prostitution to potentially criminalize any online speech that may help make sex workers' lives easier or "promote" sex work by advocating for its decriminalization or publicly identifying a person as a sex worker.[17]

---

[16]  *E.g.*, *Brandenburg v. Ohio*, 395 U.S. 444, 447-48 (1969) (invalidating Ohio's anti-syndicalism law on its face and making clear a speaker may liable for inciting illegal activity only if the speech is "directed to inciting or producing imminent lawless action and is likely to incite or produce such action"); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 928-29 (1982) (holding the First Amendment does not permit a state to impose civil liability on expressive activity without distinguishing between advocacy and the conduct of the illegal action).

[17]  The Government's opposition is largely founded on the erroneous belief that FOSTA only restricts online advertising for prostitution.  Opp. 3, 9, 14, 18-20.  This is an obvious misreading of the law, which contains no such limitation.  But even if the Government were correct, and FOSTA could be read to apply only to online advertising, it would not free the government from First Amendment scrutiny.  Three states adopted statutes to prohibit the knowing publication,

The Government cannot salvage FOSTA's overly broad reach through its heavy reliance on *United States v. Williams*, 553 U.S. 285 (2008).  Opp. 15.  In *Williams*, the Court read the multiple verbs in 18 U.S.C. § 2252A(a)(3)(B)—advertises, promotes, presents, distributes, or solicits—as prohibiting "offers to provide and requests to obtain child pornography." *Id.* at 293. It reasoned that three of the operative verbs—advertises, distributes, and solicits—have well-defined meanings and clearly prohibited transactions of child pornography that would not be protected by the First Amendment.  *Id.* at 294.  The Court recognized the statute's two other verbs— promotes and presents—"are susceptible of multiple and wide-ranging meanings" but found that their inclusion with other terms narrowed their reach to include only unprotected speech. *Id.*

FOSTA, by contrast, contains no such limiting language.  The operative verbs in Section 2421A(a)—"promotes" and "facilitates"—are, as the Court found in *Williams*, susceptible to "multiple and wide-ranging meanings."  Unlike the statute at issue in *Williams*, however, they are not linked to other well-defined verbs that might cabin them to only proscribe unprotected speech.  *Williams*, 553 U.S. at 294; *see* Mot. 19-22.  Section 1591(e)(4)'s operative verbs— assisting, supporting, and facilitating—also are not presented in a context that narrows their meanings to avoid broad application to speech protected by the First Amendment.  Section 2421A(b)(2)'s "contribute to sex trafficking" is likewise not defined or cabined in at all.

---

display, or dissemination of advertisements for commercial sex acts that include depictions of minors, and in each case, courts enjoined enforcement in pre-enforcement challenges and held the laws were facially invalid.  *McKenna*, 881 F. Supp. 2d 1282; *Cooper*, 939 F. Supp. 2d 805; *Hoffman*, 2013 WL 4502097, all *supra* note 13.  The laws were struck down on several First Amendment bases, but of pertinence here, the courts held they were overbroad because, like FOSTA, the law "encompasse[d] more than offers to engage in illegal transactions" and "pertain[ed] to both commercial and non-commercial speech."  *McKenna*, 881 F. Supp. 2d at 1280-81.  *See Cooper*, 939 F. Supp. 2d at 831-32; *Hoffman*, 2013 WL 4502097, at *8-10.

### B.      FOSTA Fails Strict Scrutiny

Because FOSTA clearly defines the speech it targets and criminalizes by its content—online speech related to prostitution or sex trafficking—it is subject to strict scrutiny, which it cannot satisfy.  Despite the Government's unexplained contention that "the various provisions of FOSTA are a far cry from the content-based signage restrictions at issue in *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015), or the posted notice requirement at issue in *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371 (2018))," the statute easily satisfies the definitions of "content-based" laws set out in *Reed*:  "those that target speech based on its communicative content," 135 S. Ct. at 2226; laws that apply "to particular speech because of the topic discussed or the idea or message expressed," *id.* at 2227; and "laws that cannot be justified without reference to the content of the regulated speech."  *Id.*

Any contention that the law is not content-based because it regulates speech "only with respect to illegal activity" is wrong.  Opp. 20.  But even if FOSTA restricted only a subset of unprotected speech, it would still fail strict scrutiny.  As the Supreme Court held in *R.A.V. v. City of St. Paul*, 505 U.S. 377, 384 (1992):  "Our cases surely do not establish the proposition that the First Amendment imposes no obstacle whatsoever to regulation of particular instances of such proscribable expression, so that the government 'may regulate [them] freely.'  * * * *  Such a simplistic, all-or-nothing … approach to First Amendment protection is at odds with common sense and with our jurisprudence[.]"  *See also id.* at 387 (holding that First Amendment imposes a "'content discrimination' limitation upon a State's prohibition of proscribable speech").

The Government does not seriously attempt to fulfill its burden to show FOSTA actually serves a compelling interest and is the least restrictive means of doing so.  *See United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 818 (2000) ("When First Amendment compliance is the point to be proved, the risk of nonpersuasion … must rest with the Government, not with the

15

citizen."). First, the Government cannot prove FOSTA directly advances an asserted interest. *See Brown v. Entertainment Merchs. Ass'n*, 564 U.S. 786, 799 (2011). Instead, it merely asserts that "[c]ontrary to Plaintiffs' allegations, FOSTA advances an important government interest," Opp. 19, without identifying the specific interest to be served or responding to Plaintiffs' expert declarations stating that FOSTA will not serve the objectives of law enforcement and instead will be counterproductive.[18] Overlooking these declarations and its burden of proof, DOJ incorrectly claims that Plaintiffs "cite to a single article written prior to the passage of FOSTA." Opp. 17. The Government's reference to a study indicating that "almost 85% of federal sex trafficking prosecutions in FY 2016 and 2017 involved online advertising," *id.* 18, says nothing about the need for FOSTA, or its efficacy.[19]

Second, FOSTA does not employ the least restrictive means of addressing the government's asserted interest. DOJ proves this point when it states "before FOSTA was enacted, websites could have been prosecuted in federal court for those same or substantially similar crimes." Opp. 19. This is analogous to the situation in *Playboy Entertainment Group*, where the Supreme Court, applying strict scrutiny, struck down a provision of the Telecommunications Act that was substantially duplicative (and more restrictive) than another provision directed at the

---

[18]   *See* Decl. of Alexandra Frell Levy, Dkt. 5-8 ("Dr. Levy Decl.") ¶ 7 ("If FOSTA succeeds in shutting down high-traffic, high-visibility websites, it will suppress a key means of detecting and reporting sex trafficking, thus decreasing trafficking victims' chances of being recovered."); Decl. of Dr. Kimberly Mehlman-Orozco, Dkt. 5-9 ("Mehlman-Orozco Decl."), ¶¶ 21-31 ("There is absolutely no rigorous quantitative data to suggest that FOSTA has had or will have any significant impact in reducing the prevalence of sex trafficking," and "FOSTA has made the already clandestine crime of sex trafficking even more hidden from law enforcement."). *See also* Eric Goldman, *Indianapolis Police Have Been "Blinded Lately Because They Shut Backpage Down,"* Tech. & Mktg. L. Blog, July 11, 2018, https://blog.ericgoldman.org/archives/2018/07/indianapolis-police-have-been-blinded-lately-because-they-shut-backpage-down.htm.

[19]   If anything, this statistic undercuts the Government. In suggesting it is already bringing prosecutions against "advertising," DOJ indicated—at best—that FOSTA was unnecessary. And it entirely undermines the need for legislation with FOSTA's more expansive terms.

16

same problem because the government failed to prove the necessity of the more restrictive provision.  529 U.S. at 817-27.  *See Ashcroft v. ACLU*, 542 U.S. at 660-61.  The same analysis applies here, and the Court should enjoin FOSTA on this basis alone.

### C.  FOSTA is Unconstitutionally Vague

FOSTA's vague terms violate the First Amendment.[20]  Specifically, the undefined terms "promote," facilitate," "assist," "support," and "contribute to sex trafficking" "fail[] to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."  *Williams*, 553 U.S. at 304.[21]  A vague law that affects speech is subject to heightened scrutiny, *Reno*, 521 U.S. at 871-72, 874, but the Government erroneously asserts it does not apply when the speech is related to illegal activities.   In *Williams*, for example, the Supreme Court engaged in a First Amendment vagueness analysis even though the statute at issue prohibited speech related to illegal activity, the distribution of child pornography.  553 U.S. at 304.  Vagueness voids a statute when there is an "indeterminacy of precisely what" the incriminating fact is, such as when criminal culpability is tied to wholly subjective judgments without statutory definitions, narrowing context, or settled legal meaning.  *Id.* at 306.

FOSTA suffers from such indeterminacy.  This problem is perhaps best demonstrated by comparing the Government's own mistaken belief that FOSTA applies only to online advertising and to no other speech, to the vast censorial effects FOSTA is having on Internet platforms in general, and sex work advocacy in particular.  *See* Plaintiffs' Declarations and D'Adamo and

---

[20]  To answer the question posed by the Government in its Opposition, *see* Opp. 24, for purposes of the Preliminary Injunction, Plaintiffs' challenge FOSTA as being vague on its face.

[21]  The Government's assertion that Plaintiff's vagueness challenge is confined to the terms "facilitate" and "promote" is incorrect.  *See* Opp. 24.

Lutnick Declarations.   Although the Government asserts the likelihood that anyone would misunderstand these words is "remote," Opp. 25, the factual record before this Court shows actual considerable confusion.  *See* Mot. 10-17, 39-42.

Most tellingly, the Government never explains what it thinks the statutory terms mean in the context of FOSTA, but instead simply asserts summarily that they do not apply to Plaintiffs' speech.  Opp. 10-25.  The closest it gets to defining any term is to assert that "promote" broadly means "to do any act that would cause the unlawful activity to be accomplished or to assist in the unlawful activity in any way" and that it is bound by a specific intent requirement rather than mere causation.  Opp. 12-13.  But adding an intent requirement to a vague law begs the question: intent to do what?  *See Amusement Devices Ass'n v. Ohio*, 443 F. Supp. 1040, 1051 (S.D. Ohio 1977) ("[T]he Supreme Court has never to our knowledge held that the imposition of a scienter element upon a statute necessarily renders the statute's prohibitions sufficiently precise to withstand a vagueness challenge.").   The Government makes no attempt to explain how the terms "facilitate," "assist," "support," or "contribute to sex trafficking" are to be defined or applied in the context of FOSTA.

*None* of the circumstances present in *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), relied on by the Government, apply to FOSTA.  Opp. 24.  The law at issue there was not focused just on speech, applied only to "material support" for a limited number groups that had been specifically designated by the government as terrorist organizations, had been expressly narrowed by Congress to exclude medical and religious materials, and had been subject to a narrowing construction of its key terms.  *Humanitarian Law Project*, 561 U.S. at 35-36.   In contrast, FOSTA was expressly adopted to <u>broaden</u> the existing law's reach over online speech.

Nor can the Government rely on a few examples of prosecutions under the Travel Act, 18 U.S.C. § 1952, to cure FOSTA's vagueness.  First, the Travel Act includes only one of the terms used vaguely in FOSTA, "promote."  Though it uses the term "facilitate," it does so only as integrally connected to promotion, "facilitate the promotion of."  *Id.*  The Travel Act also does not use the accumulation of other verbs, "assist," "support," or "contribute to," which manifest FOSTA's intended far broader application.[22]  If anything, the Government's discussion of enforcement of the Travel Act and of the federal money laundering statute only illustrates how the terms "promote" and "facilitate" are boundless, and can be applied to anything that may "assist in the unlawful activity in any way."  Opp. 11 (quoting *United States v. Bennett*, 1996 WL 477048, at *5-6 (9th Cir. 1996)).[23]

Finally, the threats that ordinarily accompany vagueness are exponentially greater here, because FOSTA vastly multiplies the number of the law's enforcers.  State attorneys general and private civil litigants each will likely have their own definition of the terms "promote," "facilitate," "assist," "support" and "contribute to sex trafficking," and may not be as studied in the supposedly limited applications of the Travel Act as the Department of Justice.  Even the prospect of defending a meritless lawsuit brought by a state attorney general or private litigant

---

[22] Moreover, the Supreme Court has recognized that in the First Amendment context, simply borrowing language from one law does not necessarily cure vagueness created when the terms are planted into a new statute. *Reno*, 521 U.S. at 873-74 (rejecting government's argument to the contrary both factually and in its reasoning).

[23] The Government's references to more recent Travel Act prosecutions involving websites are not to the contrary. *See* Opp. 11-12.  None involve court decisions resolving constitutional issues but are only references to two plea agreements and an ongoing case. *See United States v. Omuro*, No. CR-14-CR-336 (N.D. Cal.); *United States v. Hurant*, No. CR 16-45 (E.D.N.Y.). The Government cites the ongoing prosecution in *United States v. Lacey, et al.*, 18-CR-422 (D. Ariz.) that has not yet resulted in a ruling.  Opp. 12.  For purposes of this case, however, it is uncertain how that indictment should be taken as reassuring, as the prosecutor does not allege the level of scienter for each illegal ad that DOJ says here is a prerequisite to charges.

creates a powerful disincentive to speak anywhere close to FOSTA's blurry lines.  Even if a Plaintiff were confident that DOJ would not find that its speech "facilitates" prostitution, the undefined term "contribute to sex trafficking" raises the possibility of suits by other actors, and the condition that the speaker facilitate the prostitution of five or more persons interposes no significant barrier when one disseminates information broadly, as do most online platforms.

### D.   FOSTA Applies a Relaxed Scienter Standard Based on Diffuse Terms

The Government's defense of FOSTA's scienter standards fails because simply putting the word "knowingly" or "intent" before a list of indefinite verbs that do not make clear when one has transgressed cannot satisfy constitutional *mens rea* requirements.  Opp. 20.  DOJ claims "FOSTA changed nothing about Section 1591's scienter standard," while admitting it newly "defined a term" of operative import.  *Id*. 19.  Where Section 1591 pre-FOSTA made it unlawful to benefit financially or receive anything of value "from participation in a venture" of sex trafficking, either of children or by force, fraud, or coercion, 18 U.S.C. § 1591(a)(1)-(2), FOSTA makes now such "participation" not just "knowing," active involvement, it *expands* the crime to "assisting, supporting or facilitating" any violation.  *Id*. § 1591(e)(4).  The lack of clarity discussed above, on when one "assists" or "supports" or "facilitates" trafficking, undercuts the need to do so "knowingly." The aggravated offense in Section 2421A(b) heightens penalties for "reckless disregard" that conduct "contributed to sex trafficking."  DOJ attempts to excuse this as "relevant only to the [] maximum sentence, not … criminal liability."  Opp. 20-21 (discussing 18 U.S.C. § 2421A(b)(2)).  But this merely layers multiple scienter failings on top of each other.

As set forth in Plaintiffs' opening memorandum, the legislative history illustrates that this loosening of the *mens rea* in the pre-FOSTA Section 1591 is *exactly* what FOSTA intended.  The House Report explains that Congress enacted FOSTA because "prosecutors usually cannot demonstrate beyond a reasonable doubt that the website operators knew that the advertisements

involved sex trafficking," and "general knowledge that sex trafficking occurs on a website will not suffice" under the prior "knowledge element."   H.R. Rep. No. 115-572, pt. 1, at 5.   The loosening of scienter standards outlined by Plaintiffs is far from imagined, or "misstated."

### E.   Modification of Section 230 Immunity

The Government mischaracterizes Plaintiffs' Section 230 arguments as a simple conten-tion that the First Amendment prohibits Congress from making any exceptions to Section 230. Opp. 24-26.   Contrary to this characterization, Plaintiffs agree that Congress may amend Section 230, but must do so consistently with the First Amendment.   As the Motion explained, FOSTA's carve-out to Section 230 creates a content-based exception that promotes over-censorship, and creates incentives for a heckler's veto.   Mot. 20-22, 24.   The Government's unremarkable obser-vation that Section 230(e) already provided certain exceptions to statutory immunity, Opp. 25, does not support its assumption that Congress can make any changes it likes without running afoul of the First Amendment.   Particularly in the wake of *Reno*, it is the government's burden to justify changes in Section 230 that strip away any statutory immunities grounded in First Amendment principles.   *See, e.g.*, *Batzel v. Smith*, 333 F.3d 1018, 1027-29 (9th Cir. 2003) (Section 230 was added to Exon's original bill "to further First Amendment and e-commerce interests on the Internet while also promoting the protection of minors").   Numerous courts have acknowledged this First Amendment predicate for Section 230.[24]

---

[24]   *E.g.*, *Google, Inc. v. Hood*, 822 F.3d at 220 ("First Amendment values [] drive the CDA"); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997); *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 418-19 (1st Cir. 2007); *Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 790, 802-03 (2006) (Section 230 was intended to "avoid the chilling effect upon Internet free speech" that would arise from imposing liability on intermediaries); *People v. Ferrer*, 2016 WL 7237305, at *3 (Cal. Super. Ct. Dec. 9, 2016) ("the relevant question in this case is whether, and to what extent, Defendants' activities entitle them to protection of their First Amendment rights through the immunity provision of the CDA"); *People v. Ferrer*, No. 16FE024013, slip op. 11 (Cal. Super. Ct. Aug. 23, 2017) ("[T]he protections afforded by the First Amendment were the motivating factors behind … the CDA.").

Well-established First Amendment jurisprudence precludes imposing either criminal or civil liability on purveyors of third-party content where it is not feasible to review all of the content disseminated. *See*, *e.g.*, *Smith v. California*, 361 U.S. 147 (1959) (holding that imposing liability on a bookseller without a knowledge requirement violates the First Amendment). Such principles take on added urgency in the online world, where "[i]t would be impossible for service providers to screen each of their millions of postings for possible problems." *Zeran*, 129 F.3d at 330-31. The amount of information communicated via interactive computer services is "staggering," and "[t]he specter of tort liability in an area of such prolific speech would have an obvious chilling effect." *Id*. Because of First Amendment considerations, some courts have applied constitutional protections even where statutory immunity was denied.[25] Similarly, courts have invalidated state efforts to restrict online classified ad sites under both the First Amendment and Section 230. *McKenna*, 881 F. Supp. 2d at 1275-84; *Hoffman*, 2013 WL 4502097, at *7-10; *Cooper*, 939 F. Supp. 2d at 828-40. These same principles apply here.[26]

---

[25]   *See*, *e.g.*, *e-ventures Worldwide, LLC v. Google, Inc*., 2017 WL 2210029, at *4 (M.D. Fla. Feb. 8, 2017) (even where Section 230 protection is not available "[t]he First Amendment protects these decisions, whether they are fair or unfair, or motivated by profit or altruism"). *See also La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 991-922 (S.D. Tex. 2017) ("online publishers have a First Amendment right to distribute others' speech and exercise editorial control on their platforms"); *Jian Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433, 438-39 (S.D.N.Y. 2014) (when online platforms "select and arrange others' materials, and add the all-important ordering that causes some materials to be displayed first and others last, they are engaging in fully protected First Amendment expression—'[t]he presentation of an edited compilation of speech generated by other persons.'").

[26]   For purposes of this case it is not necessary to decide how much latitude Congress may have to withdraw Section 230 immunity as a general proposition. In FOSTA, Congress adopted a selective, content-based exclusion from liability. Because of that, it is no answer to characterize Section 230 immunity as a "benefit" Congress can modify at will. The government may not deny a benefit to a person on a basis that infringes freedom of speech "even if he has no entitlement to that benefit." *Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc*., 570 U.S. 205, 214 (2013). *See Matal v. Tam*, 137 S. Ct. 1744, 1760-61 (2017) (federal law cannot be shielded from constitutional review by describing it as conferring a benefit).

F.      *Ex Post Facto* **Law**

Before FOSTA's passage DOJ warned Congress that the provision authorizing *ex post facto* enforcement "is unconstitutional."  U.S. DEPT. OF JUSTICE OFFICE OF LEGISLATIVE AFFAIRS, *Memorandum to Hon. Robert Goodlatte, Chairman, U.S. House of Representatives Committee of the Judiciary* (Feb. 27, 2018).  Congress adopted the provision unchanged, a fact the Government now declines even to acknowledge.  Instead, it notes that DOJ sent a letter to the Office of Management and Budget suggesting that "prosecutors can avoid any *ex post facto* problems by pursuing only newly prosecutable criminal conduct that takes place after the bill was enacted." Opp. 21.  In short, the Government's response is, "trust us."

Just such an argument was rejected in *Reno I*, 929 F. Supp. at 857 (Sloviter, J.) (asking to "trust the Department of Justice to limit the CDA's application in a reasonable fashion … would require a broad trust indeed from a generation of judges not far removed from the attacks on James Joyce's *Ulysses* as obscene").  The Supreme Court likewise has rejected such appeals to rely on prosecutorial discretion, observing that "[w]e would not uphold an unconstitutional statute merely because the Government promised to use it responsibly."  *Stevens*, 559 U.S. at 480 ("[T]he First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*.").  But even if DOJ could be held to its promise, FOSTA authorizes enforcement by local prosecutors as well as private litigants.  It offers Plaintiffs no protection at all if DOJ follows constitutional principles while others are set loose to penalize speech that occurred before the law was changed.

III.    **PLAINTIFFS' LIKELIHOOD OF PREVAILING ON THE MERITS MEANS THE REMAINING FACTORS FAVOR GRANT OF A PRELIMINARY INJUNCTION**

Regarding the remaining preliminary injunction factors, the Government wrongly argues Plaintiffs must meet a "high standard" to demonstrate irreparable harm, Opp. 26 (quoting *In re*

*Navy Chaplaincy*, 534 F.3d 756, 766 (D.C. Cir. 2008)), because, it claims, "[t]his is not a case where FOSTA, by its own terms, prohibits Plaintiffs' constitutionally-protected speech." *Id*. 27. But there is no heightened requirement for irreparable injury, particularly where First Amendment rights are involved. The Government's reliance on *Navy Chaplaincy* is misplaced because the citation it relies on comes from the *dissenting* opinion in that case, *id*. 26 (citing 534 F.3d at 766 (Rogers, J., dissenting)), and the underlying case to which the dissent cites, *see id*. (citing 534 F.3d at 766 (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)), was abrogated. *See Seeger v. DOD*, 306 F. Supp. 3d 265, 278 (D.D.C. 2018).

The Government denigrates Plaintiffs' reliance on *Elrod v. Burns*, 427 U.S. 347, 353 (1976) (quoted Mot. 18, 39), for the rule that loss of First Amendment freedoms, even for minimal periods, unquestionably constitutes irreparable harm. *See* Opp. 27. But as the D.C. Circuit has held in, *e.g.*, *Mills v. D.C.*, 571 F.3d 1304, 1312 (D.C. Cir. 2009), this rule from *Elrod* "has long been established." *See also Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) (citing same). In fact, *Elrod v. Burns* has been cited for this proposition in cases seeking injunctive relief from constitutional injury *hundreds* of times. And as discussed *supra* 3-7, the Government ignores the fact that Plaintiffs actually delayed speaking, refrained from speaking, or lost access to platforms for speech (as it does the similar reactions to FOSTA of non-parties to this case). *See also*, *e.g.*, Mot. 10-18, 39-42 (citing declarations).

The Government is similarly incorrect in suggesting the remaining factors, involving the balance of interests and the public interest, "merge" to favor denial of a preliminary injunction. Opp. 27. The case cited for this "merger" proposition, *Nken v. Holder*, 556 U.S. 418 (2009), *see* Opp. 27, did not involve any constitutional rights. In cases that *do* involve constitutional rights, conversely, such as here, if there is any "merger," it lies in the extent to which the remaining

24

preliminary injunction factors collapse once a likelihood of constitutional injury is shown.  *See*

Mot. 19, 39 (citing *Bays v. City of Fairborn*, 668 F.3d 814, 819 (6th Cir. 2012)).  *See also*

*Pursuing America's Greatness*, 831 F.3d at 511 (cited Opp. 27) ("In First Amendment cases, the

likelihood of success will often be the determinative factor in the preliminary injunction

analysis.") (internal quotation marks omitted); *cf. id.* (citing *Mills*, *Elrod*).[27]  Moreover, the

Government argues that anything reached by FOSTA could be prosecuted under existing law,

thus admitting there is no public interest downside to granting injunctive relief.  *See* Opp. 18-19.

In any event, "the public's interest in preserving its constitutional protections—and, indeed, the

Government's concomitant interest in not violating the constitutional rights of its citizens" must

be paramount.  *R.J. Reynolds Co. v. FDA*, 823 F. Supp. 2d 36, 52 (D.D.C. 2011), *aff'd*, 696 F.3d

1205 (D.C. Cir. 2012), *overruled on other grounds*, *American Meat Inst. v. USDA*, 760 F.3d 18

(D.C. Cir. 2014) (*en banc*).  *See also*, *e.g.*, *Déjà vu of Nashville, Inc. v. Metro. Gov't of Nashville

& Davidson Cty.*, 274 F.3d 377, 400 (6th Cir. 2001).

## CONCLUSION

For the reasons above, Plaintiffs respectfully request that this Court grant a preliminary

injunction against enforcement of FOSTA pending resolution of the constitutional challenges.

---

[27] The Opposition cites *Pursuing America's Greatness* to argue "the government's interest *is* the public interest."  Opp. 27 (quoting 831 F.3d at 511).  But as the D.C. Circuit held in that case, "there is always a strong public interest in the exercise of free speech rights otherwise abridged by an unconstitutional regulation."  *Pursuing America's Greatness*, 831 F.3d at 511.  In such cases, "the public's interest in protecting First Amendment rights and [the] ability [of movants] to exercise those rights outweigh any interest in the continued enforcement" of rules that are shown to be likely unconstitutional.  *Id.* at 512.

DATED:   July 17, 2018

                              Respectfully submitted,


                              _____/s/ Robert Corn-Revere_____
                              ROBERT CORN-REVERE
                              D.C. Bar No. 375415
                              RONALD G. LONDON
                              D.C. Bar No. 456284
                              **Davis Wright Tremaine LLP**
                              1919 Pennsylvania Ave. NW, Suite 800
                              Washington, D.C. 20006
                              Telephone: (202) 973-4200
                              Facsimile: (202) 973-4499
                              Email: bobcornrevere@dwt.com
                                     ronnielondon@dwt.com

                              LAWRENCE G. WALTERS
                              Florida Bar No.: 0776599
                              *Pro Hac Vice*
                              **Walters Law Group**
                              195 W. Pine Ave.
                              Longwood, FL 32750-4104
                              Telephone: (407) 975-9150
                              Facsimile: (408) 774-6151
                              Email: Larry@FirstAmendment.com
                                     Paralegal@FirstAmendment.com

                              AARON MACKEY
                              D.C. Bar No. 1017004
                              DAVID GREENE
                              (admitted in California)
                              *Pro Hac Vice*
                              CORYNNE MCSHERRY
                              (admitted in California)
                              **Electronic Frontier Foundation**
                              815 Eddy Street
                              San Francisco, CA 94109
                              (415) 436-9333
                              Email:  amackey@eff.org
                                     davidg@eff.org

26

DAPHNE KELLER
Cal. Bar No. 226614
**Stanford Law School Center
  for Internet and Society**
559 Nathan Abbott Way
Stanford, CA 94305-8610
(650) 723-1417
Email:  daphnek@law.stanford.edu

Attorneys for Plaintiffs

27