## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WOODHULL FREEDOM FOUNDATION, HUMAN RIGHTS WATCH, ERIC KOSZYK, JESSE MALEY, a/k/a ALEX ANDREWS, and THE INTERNET ARCHIVE, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:18-cv-1552-RJL |
| v. | ) ) ) | |
| THE UNITED STATES OF AMERICA and JEFFERSON B. SESSIONS, in his official capacity as ATTORNEY GENERAL OF THE UNITED STATES, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ............................................................................................. 1

STANDARD OF REVIEW ................................................................................ 1

ARGUMENT .................................................................................................... 3

I.    THE COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' PRE-ENFORCEMENT CHALLENGE TO FOSTA ........................................ 3

     A.    Plaintiffs May Bring a Pre-enforcement Challenge to FOSTA .............. 3

     B.    FOSTA Creates Multiple Pathways for First Amendment Injury .......... 6

     C.    The History of Regulation and Law Enforcement Actions Directed to Online Speech Provides a Credible Basis for Plaintiffs' Concerns About Liability........................................................................................ 13

         1.    State and Local Law Enforcement Actions ............... 14

         2.    Civil Litigation ............................................................ 18

     D.    Plaintiffs' Allegations Establish a Reasonable Fear of Liability and First Amendment Injury .............................................................................. 19

II.    PLAINTIFFS' ALLEGATIONS ON THE MERITS STATE CLAIMS ON WHICH RELIEF CAN BE GRANTED .................................................. 28

     A.    "Use" or "Operation" of "Interactive Computer Services" is Inherently Speech and Thus Protected by the First Amendment .......................... 29

     B.    FOSTA Regulates Protected Speech Because the First Amendment Protects Speech Even if it Relates to Illegal Activities........................ 31

     C.    Plaintiffs Have Adequately Stated Claims for Violations of Their First Amendment Rights ............................................................................ 35

         1.    FOSTA is Overbroad ............................................. 35

         2.    FOSTA Fails Strict Scrutiny................................... 37

         3.    FOSTA Is Hopelessly Vague ................................. 38

CONCLUSION.............................................................................................. 40

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*281 CARE Comm. v. Arneson*,
   638 F.3d 621 (8th Cir. 2011) ...............................................9

*281 CARE Comm. v. Arneson*,
   766 F.3d 774 (8th Cir. 2014) ...............................................9

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967).............................................................11

*ACLU v. Reno*,
   31 F. Supp. 2d 473 (E.D. Pa. 1999) ............................... *passim*

*ACLU v. Reno*,
   929 F. Supp. 824 (E.D. Pa. 1996) .........................................8

*Act Now to Stop War and End Racism Coalition v. District of Columbia*,
   589 F.3d 433 (D.C. Cir. 2009) ...........................................16

*Agency for Int'l Dev. v. Alliance for Open Society Int'l, Inc.*,
   570 U.S. 205 (2013).............................................................23

*Allco Fin. Ltd. v. Klee*,
   861 F.3d 82 (2d Cir. 2017).................................................10

*American Mach. & Metals, Inc. v. De Bothezat Impeller Co.*,
   166 F.2d 535 (2d Cir. 1948)................................................11

*Amusement Devices Ass'n v. Ohio*,
   443 F. Supp. 1040 (S.D. Ohio 1977) ..................................39

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009), *aff'd*, 791 F.3d 24 (D.C. Cir. 2015).................2, 28

*Asia Econ. Inst. v. Xcentric Ventures LLC*,
   2011 WL 2469822 (C.D. Cal. May 4, 2011) .........................26

*Backpage.com, LLC v. Cooper*,
   939 F. Supp. 2d 805 (M.D. Tenn. 2013)...................18, 30, 35

*Backpage.com LLC v. Dart*,
   807 F.3d 229 (7th Cir. 2015), *cert. denied*, 137 S. Ct. 46 (2017)...........17

*Backpage.com, LLC v. Hoffman*,
　2013 WL 4502097 (D.N.J. Aug. 20, 2013) ..............................................................18, 30, 35

*Backpage.com, LLC v. Lynch*,
　216 F. Supp. 3d 96 (D.D.C. 2016) ...........................................................................................8

*Backpage.com, LLC v. McKenna*,
　881 F. Supp. 2d 1262 (W.D. Wash. 2012)..........................................................18, 26, 30, 35

*Batzel v. Smith*,
　333 F.3d 1018 (9th Cir. 2003) ...............................................................................................30

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007)............................................................................................................2, 28

*Bell v. Keating*,
　697 F.3d 445 (7th Cir. 2012) ...................................................................................................4

*Bennett v. Google, Inc.*,
　882 F.3d 1163 (D.C. Cir. 2018)..............................................................................................26

*Bland v. Fessler*,
　88 F.3d 729 (9th Cir. 1996) ..............................................................................................10, 11

*Bookfriends, Inc. v. Taft*,
　223 F. Supp. 2d 932 (S.D. Ohio 2002) ..................................................................................21

*Brandenburg v. Ohio*,
　395 U.S. 444 (1969)................................................................................................................32

*Brown v. Entm't Merch. Ass'n*,
　564 U.S. 786 (2011)..............................................................................................29, 35, 37, 38

*California Pro-Life Council, Inc. v. Getman*,
　328 F.3d 1088 (9th Cir. 2003) .................................................................................................4

*Center for Democracy & Tech. v. Pappert*,
　337 F. Supp. 2d 606 (E.D. Pa. 2004) ...............................................................14, 27, 30, 32

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York*,
　447 U.S. 557 (1980)................................................................................................................34

*County of Santa Clara v. Trump*,
　250 F. Supp. 3d 497 (N.D. Cal. 2017) .....................................................................................4

*Craigslist, Inc. v. McMaster*,
　No. 2:09-cv-01308-CWH (D.S.C. 2010) ...............................................................................16

*Cubby, Inc. v. CompuServe, Inc.*,
  776 F. Supp. 135 (S.D.N.Y. 1991) ...................................................................30

*Dart v. Craigslist, Inc.*,
  665 F. Supp. 2d 961 (N.D. Ill. 2009) ...............................................................17

*De Jonge v. Oregon*,
  299 U.S. 353 (1937)...........................................................................................31

*Doe v. Backpage.com, LLC*,
  817 F.3d 12, 15, 20 (1st Cir. 2016), *cert. denied*, 137 S. Ct. 622 (2017) .........18, 19

*Doe v. Bolton*,
  410 U.S. 179 (1973)..............................................................................................4

*Doe v. Friendfinder Network, Inc.*,
  540 F. Supp. 2d 288 (D.N.H. 2008)...................................................................19

*Doe v. GTE Corp.*,
  347 F.3d 655 (7th Cir. 2003) .............................................................................12

*Doe v. MySpace, Inc.*,
  528 F.3d 413 (5th Cir. 2008) .............................................................................19

*Dyroff v. Ultimate Software Grp., Inc.*,
  2017 WL 5665670 (N.D. Cal. Nov. 26, 2017) ..................................................19

*EEOC v. St. Francis Xavier Parochial Sch.*,
  117 F.3d 621 (D.C. Cir. 1997)..............................................................................2

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,
  666 F.3d 1216 (9th Cir. 2012) ...........................................................................19

*Fields v. Twitter, Inc.*,
  881 F.3d 739 (9th Cir. 2018) .............................................................................19

*Florida League of Prof'l Lobbyists, Inc. v. Meggs*,
  87 F.3d 457 (11th Cir. 1996) .............................................................................11

*Force v. Facebook, Inc.*,
  304 F. Supp. 3d 315 (E.D.N.Y. 2018), *appeal docketed*, No. 18-397
  (2d Cir. Feb. 9, 2018)........................................................................................19

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992)...........................................................................................10

*Google, Inc. v. Hood*,
  822 F.3d 212 (5th Cir. 2016) .......................................................................18, 30

*Google, Inc. v. Hood*,
   96 F. Supp. 3d 584 (S.D. Miss. 2015)................................................................................18

*Holder v. Humanitarian Law Project*,
   561 U.S. 1 (2010)................................................................................................................39, 40

*Icon Health & Fitness, Inc. v. Consumer Affairs.com*,
   2017 WL 2728413 (D. Utah June 23, 2017)..........................................................................26

*Info. Handling Servs., Inc. v. Def. Automated Printing Servs.*,
   338 F.3d 1024 (D.C. Cir. 2003) ........................................................................................1, 6

*Irish Lesbian & Gay Org. v. Giuliani*,
   143 F.3d 638 (2d Cir. 1998)................................................................................................20

*Jerome Stevens Pharms., Inc. v. FDA*,
   402 F.3d 1249 (D.C. Cir. 2005) ..........................................................................................1

*Jian Zhang v. Baidu.com Inc.*,
   10 F. Supp. 3d 433 (S.D.N.Y. 2014)..................................................................................29

*Jones v. Dirty World Entm't Recordings LLC*,
   755 F.3d 398 (6th Cir. 2014) ..............................................................................................19

*Jones v. Kirchner*,
   835 F.3d 74 (D.C. Cir. 2016), *cert. denied*, 137 S. Ct. 1343 (2017) ........................................2

*Keener Oil & Gas Co. v. Consol. Gas Util. Corp.*,
   190 F.2d 985 (10th Cir. 1951) ............................................................................................11

*Kimzey v. Yelp!, Inc.*,
   836 F.3d 1263 (9th Cir. 2016) ............................................................................................26

*Klayman v. Zuckerberg*,
   753 F.3d 1354 (D.C. Cir. 2014) ..........................................................................................19

*Knight First Amendment Inst. at Columbia Univ. v. Trump*,
   302 F. Supp. 3d 541 (S.D.N.Y. 2018), *appeal docketed*, No. 18-1691
   (2d Cir. June 5, 2018) ....................................................................................................10, 29

*Kruska v. Perverted Justice Found., IncorporatedOrg*,
   2011 WL 1260224 (D. Ariz. Apr. 5, 2011) ..........................................................................19

*La'Tiejira v. Facebook, Inc.*,
   272 F. Supp. 3d 981 (S.D. Tex. 2017) ................................................................................29

*Langdon v. Google*,
   474 F. Supp. 2d 622 (D. Del. 2007)....................................................................................30

*Los Angeles Bar Ass'n v. Eu,*
    979 F.2d 697 (9th Cir. 1992) ............................................................10

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)..........................................................................10

*M.A. v. Village Voice Media Holdings, LLC,*
    809 F. Supp. 2d 1041 (E.D. Mo. 2011)...........................................18

*Majors v. Abell,*
    317 F.3d 719 (7th Cir. 2003) ............................................................4

*MCW, Inc. v. Badbusinessbureau.com, LLC,*
    2004 WL 833595 (N.D. Tex. Apr. 19, 2004) ......................................26

*Medimmune, Inc. v. Genentech, Inc.,*
    549 U.S. 118 (2007).........................................................................11

*NAACP v. Claiborne Hardware Co.,*
    458 U.S. 886 (1982).........................................................................31

*Nat'l Inst. of Family & Life Advocates v. Becerra,*
    138 S. Ct. 2361 (2018).....................................................................32

*National Org. for Marriage, Inc. v. Walsh,*
    714 F.3d 682 (2d Cir. 2013).......................................................10, 11

*Nemet Chevrolet, Ltd. v. Consumeraffiiars.com, Inc.,*
    591 F.3d 250 (4th Cir. 2009) ............................................................26

*New Hampshire Right to Life Political Action Comm. v. Gardner,*
    99 F.3d 8 (1st Cir. 1996)...................................................................3

*New.Net, Inc. v. Lavasoft,*
    356 F. Supp. 2d 1071 (C.D. Cal. 2003) .............................................30

*New York Times Co. v. Sullivan,*
    376 U.S. 254 (1964).....................................................................34, 35

*Ord v. District of Columbia,*
    587 F.3d 1136 (D.C. Cir. 2009) .........................................................16

*Pacific Gas & Elec. Co. v. Public Utils. Comm'n of Cal.,*
    475 U.S. 1 (1986)............................................................................27

*Packingham v. North Carolina,*
    137 S. Ct. 1730 (2017)....................................................................29

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Rights,*
    413 U.S. 376 (1973)......................................................................................34

*R.A.V. v. City of St. Paul,*
    505 U.S. 377 (1992).................................................................................33, 37

*Reed v. Town of Gilbert,*
    135 S. Ct. 2218 (2015)............................................................................32, 33

*Reno v. ACLU,*
    521 U.S. 844 (1997).................................................................................27, 29

*Roca Labs, Inc. v. Consumer Opinion Corp.,*
    140 F. Supp. 3d 1311 (M.D. Fla. 2015)....................................................26

*Sandvig v. Sessions,*
    --- F. Supp. 3d ---, 2018 WL 1568881 (D.D.C. 2018)....................5, 6, 16, 31

*Search King Inc., v. Google Tech., Inc.,*
    2003 WL 21464568 (W.D. Okla. May 27, 2003)......................................30

*Shaffer v. Defense Intel. Agency,*
    601 F. Supp. 2d 16 (D.D.C. 2009).............................................................2

*Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.,*
    502 U.S. 105 (1991).................................................................................8

*Smith v. California,*
    361 U.S. 147 (1959).................................................................................35

*Sorrell v. IMS Health, Inc.,*
    564 U.S. 552 (2011).................................................................................34

*Steffel v. Thompson,*
    415 U.S. 452 (1974).................................................................................3

*Susan B. Anthony List v. Driehaus,*
    134 S. Ct. 2334 (2014)......................................................................10, 27, 28

*United States v. Bennett,*
    1996 WL 477048 (9th Cir. 1996).........................................................12, 13

*United States v. Cassidy,*
    814 F. Supp. 2d 574 (D. Md. 2011)....................................................30

*United States v. Hurant,*
    No. CR 16-45 (E.D.N.Y.)......................................................................12, 13

*United States v. Lacey, et al.*,
    No. 18-CR-422 (D. Ariz.) ...................................................................12

*United States v. Omuro*,
    No. CR-14-CR-336 (N.D. Cal.) ....................................................12, 13

*United States v. Playboy Entm't Grp., Inc.*,
    529 U.S. 803 (2000)..............................................................14, 37, 38

*United States v. Reiner*,
    500 F.3d 10 (1st Cir. 2007) .............................................................12

*United States v. Seals*,
    2014 WL 3847916 (W.D. Ark. 2014)..............................................12

*United States v. Stevens*,
    559 U.S. 460 (2010)...................................................................28, 35

*United States v. Williams*,
    553 U.S. 285 (2008)...................................................................36, 38

*Vermont Right to Life Comm. v. Sorrell*,
    221 F.3d 376 (2d Cir. 2000)..........................................................4, 10

*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*,
    425 U.S. 748 (1976)........................................................................27

*Virginia v. American Booksellers Ass'n*,
    484 U.S. 383 (1988)......................................................................3, 4

*Watt v. Energy Action Educ. Found.*,
    454 U.S. 151 (1981).......................................................................21

*White Tail Park, Inc. v. Stroube*,
    413 F.3d 451 (4th Cir. 2005) ........................................................20

*Worldwide, LLC v. Google, Inc.*,
    2017 WL 2210029 (M.D. Fla. Feb. 8, 2017) ................................29

*Z St., Inc. v. Koskinen*,
    44 F. Supp. 3d 48 (D.D.C. 2014) ...................................................2

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) ........................................................29

**State Cases**

*Daniel v. Armslist, LLC*,
    913 N.W.2d 211 (Wis. Ct. App. 2018) ..........................................19

*Delfino v. Agilent Techs., Inc.*,
    145 Cal. App. 4th 790 (2006) .................................................................30

*Florida Abolitionist, Inc. v. Backpage.com, LLC*,
    No. 6:17-cv-00218-JA-TBS, Dkt. 86 (M.D. Fla. Apr. 30, 2018) ...........................19

*Hassell v. Bird*,
    420 P.3d 776 (Cal. 2018) .....................................................................26

*People v. Ferrer*,
    2016 WL 7237305 (Cal. Super. Ct. Dec. 9, 2016).........................................30

*People v. Ferrer*,
    No. 16FE024013, slip op. (Cal. Super. Ct. Aug. 23, 2017) ...............................30

**Constitutional Provisions**

U.S. Const. amend. I ....................................................................... *passim*

**Federal Statutes**

18 U.S.C.
    § 1591.......................................................................... *passim*
    § 1591(a) .......................................................................7, 20
    § 1591(a)(2) .......................................................................7
    § 1591(b)(3) .......................................................................7
    § 1591(c) .......................................................................7
    § 1591(e) .......................................................................34
    § 1591(e)(4) .......................................................7, 20, 33, 36
    § 1593(b)(1) .......................................................................7
    § 1593(b)(3) .......................................................................7
    § 1595.......................................................................7
    § 1952.......................................................................... *passim*
    § 1952(a)(3) .......................................................................12, 17
    § 1952(b).......................................................................11
    § 2252A(a)(3)(B) .......................................................................36
    § 2259(b)(3) .......................................................................7
    § 2327(b)(3) .......................................................................7
    § 2421A .......................................................................... *passim*
    § 2421A(a) .......................................................................19, 33, 36
    § 2421A(a)-(b).......................................................................6
    § 2421A(a)-(c).......................................................................25, 27
    § 2421A(b).......................................................................7, 20, 29
    § 2421A(b)(2).......................................................................25, 33, 36
    § 2421A(c)-(d).......................................................................7

47 U.S.C.
    § 230.................................................................................................................. *passim*
    § 230(e)(5)(A) ........................................................................................................7
    § 230(e)(5)(B) ........................................................................................................7
    § 230(e)(5)(C) ........................................................................................................7
    § 230(f).................................................................................................................29

Pub. L. No. 114-22 (Stop Advertising Victims of Exploitation Act of 2015,
    "SAVE Act") ..........................................................................................................8

**State Statutes**

Ala. Code § 13A-6-150, *et seq.*.......................................................................................9

Mass. Gen. L. ch. 265, § 50 ...........................................................................................9

Va. Code Ann. § 18.2-348 ............................................................................................23

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ............................................................1, 3, 28

Federal Rule of Civil Procedure 12(b)(6) ............................................................1, 2, 28

**Other Authorities**

About FOSTA, CRAIGSLIST, https://www.craigslist.org/about/FOSTA (last visited
    June 12, 2018)......................................................................................................20

Declan McCullagh, *N.Y. Attorney General Forces ISPs to Curb Usenet Access*,
    CNET (June 12, 2008), http://www.cnet.com/news/n-y-attorney-general-
    forces-isps-to-curb-usenet-access .......................................................................15

Eric Goldman, *Indianapolis Police Have Been "Blinded Lately Because They
    Shut Backpage Down,"* Tech. & Mktg. L. Blog, July 11, 2018,
    https://blog.ericgold_man.org/archives/2018/07/indianapolis-police-have-
    been-blinded-lately-because-they-shut-backpage-down.htm ..................................38

Eric Goldman, *'Worst of Both Worlds' FOSTA Signed Into Law, Completing
    Section 230's Evisceration*, Technology & Marketing Law Blog, April 11,
    2018, https://blog.ericgold_man.org/archives/2018/04/worst-of-both-worlds-
    fosta-signed-into-law-completing-section-230s-evisceration.htm...........................14

H.R. Rep. No. 115-572 .............................................................................................8, 25

http://blog.craigslist.org/2008/11/06/joint-statement-with-attorneys-general-
    ncmec .................................................................................................................15

https://sharedhope.org/2017/08/letter-support-stop-enabling-sex-traffickers-act-
    2017......................................................................................................................13

L.A. TIMES (Aug. 24, 2010), http://articles.latimes.com/2010/aug/24/business/la-
    fi-craigslist-20100824 .......................................................................................15

Lawrence G. Walters, *Shooting the Messenger: An Analysis of Theories of
    Criminal Liability Against Adult-Themed Online Service Providers*, 23 Stan.
    L. & Pol'y Rev. 171 (2012) ................................................................................14

Letter from Nat'l Ass'n of Attorneys General to Sens. Rockefeller and Thune and
    Reps. Upton and Waxman, July 23, 2013 (https://www.eff.org/files/cda-ag-
    letter.pdf ..............................................................................................................13

Mike Masnick, *Andrew Cuomo Threatens to Sue Comcast if It Doesn't Sign Up
    for His Plan to Pretend to Fight Child Porn*, Techdirt (July 22, 2008),
    https://www.techdirt.com/ar_ticles/20080721/1545501748.shtml ......................15

Plaintiffs Woodhull Freedom Foundation ("Woodhull"), Human Rights Watch ("HRW"), Eric Koszyk, Jesse Maley, a/k/a Alex Andrews ("Andrews"), and the Internet Archive ("the Archive"), hereby oppose the motion of the Defendants the Attorney General and United States to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (b)(6). The Motion to Dismiss should be denied because Plaintiffs have standing to bring this action, and their Complaint states multiple claims upon which relief can and should be granted.

## INTRODUCTION

The Government asked this Court to dismiss the case in a consolidated pleading opposing Plaintiffs' Motion for Preliminary Injunction and moving for dismissal. Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction and Motion to Dismiss Plaintiffs' Complaint, Dkt. 15 ("Mot."). Plaintiffs replied to the opposition, and added that they would oppose the Motion to Dismiss in due course, as necessary. *See* Plaintiffs' Reply to Opposition to Motion for Preliminary Injunction, Dkt. 17 at 1 n.1 ("Reply"). *See* LCvR 7(b). By this memorandum of points and authorities, Plaintiffs oppose the Motion to Dismiss, and in doing so incorporate the allegations in the Complaint, Dkt. 1, the arguments in the Motion for Preliminary Injunction, Dkt. 5, and in the corresponding Reply, Dkt. 17, and the factual averments in the Declarations accompanying the Motion for Preliminary Injunction. Dkts. 5-1 through 5-10.

## STANDARD OF REVIEW

Under Rule 12(b)(1), the Court "must assume [Plaintiffs] state[] a valid legal claim," must "accept the factual allegations in the complaint as true," and may consider matters outside the pleadings. *Info. Handling Servs., Inc. v. Def. Automated Printing Servs.,* 338 F.3d 1024, 1029 (D.C. Cir. 2003) (internal citations omitted); *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005); *see also* Mot. 4-5. To withstand a motion to dismiss, Plaintiffs "need only plead 'enough facts to state a claim to relief that is plausible on its face' and

to 'nudge[] [their] claims across the line from conceivable to plausible." *Shaffer v. Defense Intel. Agency*, 601 F. Supp. 2d 16, 22 (D.D.C. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Under Rule 12(b)(6), a complaint must simply contain sufficient facts, accepted as true, to state a claim that is "plausible on its face," which "is not akin to a 'probability requirement,'" but only requires "more than a sheer possibility" that the plaintiff can prevail. *Z St., Inc. v. Koskinen*, 44 F. Supp. 3d 48, 54 (D.D.C. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted), *aff'd*, 791 F.3d 24 (D.C. Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. But "[c]redibility determinations are not for the district court, especially at the motion to dismiss stage." *Jones v. Kirchner*, 835 F.3d 74, 80 (D.C. Cir. 2016), *cert. denied*, 137 S. Ct. 1343 (2017). A plaintiff can overcome a Rule 12(b)(6) motion "even where recovery is very remote," so long as the facts alleged "raise [the] right to relief above the speculative level," *Z St., Inc.*, 44 F.Supp.3d at 54 (quoting *Twombly*, 550 U.S. at 555-56) (internal quotation marks omitted), an assessment in which the Court may consider "'facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice.'" *Id*. at 54-55 (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)).

## ARGUMENT

## I. THE COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' PRE-ENFORCEMENT CHALLENGE TO FOSTA

Plaintiffs have standing to challenge FOSTA because the law proscribes online speech in ways that directly threaten Plaintiffs' expressive activities. The Government's Rule 12(b)(1) argument, predicated solely on lack of standing, asserts that Plaintiffs face no credible threat of enforcement, based on a claim that FOSTA does not proscribe any course of conduct in which they wish to engage. *See* Mot. 8-10. This argument disregards the full scope and contours of the Act, the facts it alleges regarding Plaintiffs, and the history of regulation and enforcement actions targeting online speech that makes clear why concerns about potential liability are credible. *See infra* § I.B-D. The issue before the Court is not simply whether FOSTA's prohibitions are "aimed directly at Plaintiffs," as DOJ posits, Mot. 8 (quoting *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 392 (1988)), or the likelihood of a U.S. attorney initiating a prosecution. The Court should "assume a credible threat of prosecution in the absence of compelling contrary evidence." *ACLU v. Reno*, 31 F. Supp. 2d 473, 480 (E.D. Pa. 1999) ("*Reno II*") (quoting *New Hampshire Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 15 (1st Cir. 1996)). This standard is "quite forgiving." *Id.* at 479-80.

### A. Plaintiffs May Bring a Pre-enforcement Challenge to FOSTA

It is well established that a credible threat of present or future criminal prosecution will confer standing. *See, e.g.*, *American Booksellers Ass'n*, 484 U.S. at 392-93 (noting Court was "unconcerned by the pre-enforcement nature of th[e] suit" and holding injury-in-fact was met, in part, because "plaintiffs have alleged an actual and well-founded fear that the law will be enforced against them"); *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("It is not necessary that [a party] first expose himself to actual arrest or prosecution to be entitled to challenge a statute

that he claims deters the exercise of his constitutional rights."); *Doe v. Bolton,* 410 U.S. 179, 188-89 (1973). The rationale underlying this rule is that credible threat of present or future prosecution is itself an injury that suffices to confer standing, even if there is no history of past enforcement. *Id.* at 188. This recognizes that a speaker who fears prosecution may engage in self-censorship, which is itself an injury. *E.g.*, *Bell v. Keating*, 697 F.3d 445, 453-54 (7th Cir. 2012).

Standing to bring a pre-enforcement challenge to a statute is adjudged according to the Plaintiffs' interpretation of the statute, not the interpretation of the Government. The Supreme Court has found injury-in-fact for plaintiffs "who, *if their interpretation of the statute is correct*, will have to take significant and costly compliance measures or risk criminal prosecution." *American Booksellers*, 484 U.S. at 392 (emphasis added). As the Second Circuit has explained, "while there may be other, perhaps even better [constructions of the disputed statute]," standing exists if a plaintiff's interpretation "is reasonable enough that [plaintiff] may legitimately fear [] it will face enforcement of the statute by the State." *Vermont Right to Life Comm. v. Sorrell*, 221 F.3d 376, 383 (2d Cir. 2000); *Reno II*, 31 F. Supp. 2d at 481 (relying on plaintiffs' interpretation of Child Online Protection Act, which court found "not unreasonable").[1] *See also California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 (9th Cir. 2003) (requiring only that plaintiff's intended speech "*arguably* falls within the statute") (emphasis added).

As a result, any ambiguity in a statute must be interpreted in favor of the Plaintiffs at this stage of proceedings for purposes of establishing standing. The Plaintiffs' interpretation should be credited unless it "clearly fails" to cover the Plaintiffs' conduct. *See Majors v. Abell*, 317

---

[1] *See also County of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 519 (N.D. Cal. 2017) ("Where it is not fully clear what conduct is proscribed by a statute, a well-founded fear of enforcement may be based in part on a plaintiff's reasonable interpretation of what conduct is proscribed.").

F.3d 719, 721 (7th Cir. 2003) ("A plaintiff who mounts a pre-enforcement challenge to a statute that he claims violates his freedom of speech need not show … authorities have threatened to prosecute him; the threat is latent in the existence of the statute.  Not if it clearly fails to cover his conduct, of course.  But if it arguably covers it, … there is standing.") (citations omitted).  In any event, the standing inquiry is not the place for this Court to make a final interpretation of FOSTA on the merits.  That task is for a later proceeding.  On a motion to dismiss, Plaintiffs' interpretation need only be plausible.

These principles were applied most recently in *Sandvig v. Sessions*, --- F. Supp. 3d ---, 2018 WL 1568881 (D.D.C. 2018), where the court held that researchers had standing to bring a pre-enforcement First Amendment challenge to the Computer Fraud and Abuse Act ("CFAA") to remove doubt about whether they might be prosecuted for violating private websites' terms of service.  The plaintiffs alleged that concern over possible legal liability impeded their research because the acts of scraping information from the websites, harmlessly misrepresenting their identities to gain access, and publishing the results violated terms of service and arguably ran afoul of the CFAA.  *Id*. at *1-2 ("It's a dangerous business, reading the fine print.").  DOJ challenged standing—arguing plaintiffs "cite no instances in which the government has enforced the challenged provision for harmless [ToS] violations," and claiming the Department had interpreted the law not to reach such circumstances (citing congressional testimony to bolster the point)—and it even submitted an affidavit from the Chief of the Computer Crime and Intellectual Property Section disavowing any likelihood the Department "would bring a CFAA prosecution based on such facts and *de minimis* harm."  *Id*. at *9-11 & n.8.  Nevertheless, the court held plaintiffs had standing, finding "the D.C. Circuit has interpreted the Supreme Court's pre-enforcement standing doctrine broadly in the First Amendment sphere," and holding that

"[u]nder D.C. Circuit precedent, 'at the motion to dismiss stage, a plaintiff's non-frivolous contention regarding the meaning of a statute must be taken as correct for purposes of standing.'" *Id*. at *6, *9 (quoting *Info. Handling Servs., Inc. v. Automated Printing Servs*., 338 F.3d 1024, 1030 (D.C. Cir. 2003)).

## B.       FOSTA Creates Multiple Pathways for First Amendment Injury

The Government's erroneous view of standing is summed up by its claim that "[b]efore FOSTA was enacted, websites could have been prosecuted … for those same or substantially similar crimes" under the Travel Act, 18 U.S.C. § 1952, Mot. 19, and its conclusion that Plaintiffs have no credible fear of prosecution because "none of [them] (nor anyone like them) has ever been prosecuted under Section 1952" despite the "substantial similarity between Section 1952 and 2421A."  Mot. 12.  Leaving aside the fact that the Travel Act was enacted more than three decades *before* the Internet emerged as a medium of public communication, this is wrong for two principal reasons:  First, FOSTA authorizes criminal and civil claims by more actors than just federal prosecutors, so the sources of potential liability are far more diffuse.  Second, the Travel Act is not directed toward speech, whereas FOSTA regulates nothing but speech, and uses far more expansive terms that do not depend on specific violations of state law.

FOSTA does more than enact a new federal law that empowers federal prosecutors to bring (slightly different) charges than they might previously have brought under the Travel Act. It creates at least seven different paths to liability for those who host or post information using an interactive computer service.  These include:

- Prosecution under 18 U.S.C. § 2421A of anyone who "owns, manages or operates an interactive computer service … with the intent to promote or facilitate the prostitution of another," including "aggravated violations" for "promot[ing] or facilitat[ing] prostitution of 5 or more persons," or with "reckless disregard" of conduct that "contribute[s] to sex trafficking."  *Id*. § 2421A(a)-(b).

- Prosecution under 18 U.S.C. § 1591 under FOSTA's newly relaxed *mens rea* standard that defines "participation in a venture" as "knowingly assisting, supporting, or *facilitating*" a violation of federal anti-trafficking law. *See* 18 U.S.C. § 1591(c) (citing *id.* § 1591(a) (incorporating at § (a)(2) term defined in new § 1591(e)(4)) (emphasis added).

- Prosecution under state law "if the conduct underlying the charge would constitute a violation of [18 U.S.C. § 1591]." 47 U.S.C. § 230(e)(5)(B) (FOSTA § 4).

- Prosecution under state law "if the conduct underlying the charge would constitute a violation of [18 U.S.C. § 2421A]." 47 U.S.C. § 230 (e)(5)(C) (FOSTA § 4).

- Civil claims in federal court for violation of 18 U.S.C. § 2421A(b) (FOSTA § 3).

- Civil claims under 18 U.S.C. § 1595 "if the conduct underlying the claim constitutes a violation of [18 U.S.C. § 1591]." 47 U.S.C. § 230(e)(5)(A) (FOSTA § 4).

- *Parens patriae* actions in federal court by state attorneys general for asserted violations of 18 U.S.C. § 1591 (FOSTA § 6).

In addition to multiplying the sources of potential liability for online speakers and intermediaries, FOSTA increases incentives to bring civil actions by providing attorney's fees and mandatory restitution (on top of damage awards) for "aggravated" violations of Section 2421A. 18 U.S.C. § 2421A(c)-(d) (FOSTA § 3).[2]  FOSTA also loosened the *mens rea* in pre-FOSTA Section 1591 to allow for easier prosecution.  As the legislative history explained, this was done because "prosecutors usually cannot demonstrate beyond a reasonable doubt that [] website operators knew that [ads] involved sex trafficking," and under the law before FOSTA amended

---

[2]  Such restitution requires award of "the full amount of the victim's losses," 18 U.S.C. § 1593(b)(1), (3), which includes the costs of any physical, psychiatric, or psychological care; physical and occupational therapy or rehabilitation; and transportation, temporary housing, and child care, as well as any lost income, other "costs incurred" (including attorney fees), or "other losses suffered by the victim as a proximate result of the offense." *Id.* § 2259(b)(3) (applicable through § 1591(b)(3)). *See also id.* § 2327(b)(3) (applicable through § 2421A(d)) (same).

it, "general knowledge that sex trafficking occurs on a website will not suffice" under the prior "knowledge element."  H.R. Rep. No. 115-572, pt. 1, at 5.[3]

Given FOSTA's structure and purpose, and in light of the enforcement history that led to its passage, it is not enough to assuage Plaintiffs' concerns for DOJ to suggest, as it does here, that it plans to enforce the law narrowly or responsibly.  Mot. 12-13.  Even if the U.S. Attorney's Manual had a section on how to interpret and enforce the new law (and it does not), it would not matter.  When Congress has enacted a law that imposes potential criminal or civil liability based on speech, "the First Amendment should not be interpreted to require us to entrust the protection it affords to the judgment of prosecutors."  *ACLU v. Reno*, 929 F. Supp. 824, 857 (E.D. Pa. 1996) (Sloviter, J.) ("*Reno I*"), *aff'd*, 521 U.S. 844 (1997).  "If a content-based law '*can* produce such an outcome'" under broad statutory terms, the court should find plaintiffs have standing even for scenarios the Government considers "hyperbolic."  *Id*. at 870 (Dalzell, J.) (quoting *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 123 (1991)).  *See id*. at 871 ("[W]e cannot ignore that the Act *could* reach these activities.") (emphasis added).[4]

---

[3]  The last revision to Section 1591 immediately preceding FOSTA, the Stop Advertising Victims of Exploitation Act of 2015, Pub. L. No. 114-22 ("SAVE Act"), added "advertising" to the types of conduct that can constitute a trafficking offense, which was the only aspect of the offense specifically tied to speech.  In dismissing a facial constitutional challenge to the SAVE Act due to lack of standing, *see* Mot. 13-14, the court held in relevant part that the Act was not subject to the claims advanced, because the amendments as written required specific knowledge when the prosecution was based on advertising, as opposed to other conduct that was subject to a "reckless disregard" standard.  *Backpage.com, LLC v. Lynch*, 216 F. Supp. 3d 96, 108-09 (D.D.C. 2016).  However, FOSTA was adopted to allow liability for "facilitating" trafficking via an interactive computer service, thus avoiding this specific requirement as to advertising. Consequently, DOJ is incorrect in arguing the scienter requirements throughout FOSTA require a knowing or "higher" *mens rea*.  Mot. 20-21.

[4]  Thus, in *Reno II*, the court rejected the same standing argument made here and denied the government's motion to dismiss a pre-enforcement challenge to the Child Online Protection Act ("COPA") despite the claim that plaintiffs' concerns were "wholly speculative" because they were "not 'engaged in the business' of distributing harmful to minors materials."  *Reno II*, 31 F. Supp. 2d at 480.  *See Reno I*, 929 F. Supp. at 872 (Dalzell, J.) ("[P]laintiffs' fear of prosecution

The "credible threat" under FOSTA is far more compelling than for a federal statute that bans certain types of speech (such as the CDA or COPA), because FOSTA exposes Plaintiffs to criminal or civil liability at the hand of countless civil litigants as well as state and local law enforcement authorities.  As DOJ puts it, FOSTA's "key innovation" is "to allow states to bring prosecutions for … sex trafficking … and intentional facilitation or promotion of illegal prostitution" that Section 230 previously precluded.  Mot. 19; *see also supra* note 3.  In this connection, state laws that parallel, *e.g.*, Section 1591, are not uncommon, and now become fair game for prosecuting online service providers under FOSTA.[5]

This is not a situation where the lead agency or official in charge of enforcing a law can announce a definitive interpretation to remove doubts about its scope or otherwise deny any intention to enforce it.  The extent to which FOSTA will be applied to restrict online speech simply is beyond DOJ's control.  State attorneys general and private civil litigants each will likely have their own definitions of "promote," "facilitate," "assist," "support" and "contribute to sex trafficking," and may not be as studied in the supposedly limited applications of the Travel Act as DOJ claims it intends.  Even the prospect of having to defend a meritless lawsuit brought by a state attorney general or private litigant creates a powerful disincentive to speak anywhere close to FOSTA's blurry lines.  The potential imposition of civil liability can be every bit as inhibiting as criminal penalties.  *281 CARE Comm. v. Arneson*, 638 F.3d 621, 630 (8th Cir. 2011) ("*Arneson I*"); *281 CARE Comm. v. Arneson*, 766 F.3d 774, 782 (8th Cir. 2014) ("*Arneson II*") (the "threat was only exacerbated by the procedure in place … where 'any person' could file

---

… is legitimate, even though they are not the pornographers Congress had in mind when it passed the CDA.").

[5]   *E.g.*, Mass. Gen. L. ch. 265, § 50; Ala. Code § 13A-6-150, *et seq.*

such a complaint") (quoting *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2345 (2014) ("*SBA List*")).[6]

When a statute provides for civil penalties and/or private rights of action, standing may also be established by demonstrating that the fear of such civil sanctions is chilling speech. In *Bland v. Fessler*, 88 F.3d 729, 736-37 & n.11 (9th Cir. 1996), the court found the plaintiff had standing to challenge a statute that allowed both civil fines and private enforcement. As the court explained, the law placed plaintiff "between the rock of foregoing" speech prohibited by the law "and the hard place of violating the law …. Had he chosen to violate the civil statute, he would have run a substantial risk of civil fines and private enforcement actions." *Id.*[7] The court

---

[6]   It is not necessary for the Court to enjoin state or local prosecutors (or civil litigants) for injunctive relief to provide redress necessary for standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-61 (1992). Plaintiffs do not seek to enjoin them from enforcing state laws. Rather, they seek a declaration that FOSTA is unconstitutional, and an injunction against its enforcement. This would prevent state attorneys general from targeting online computer services with enforcement of state criminal laws by enjoining the availability of *parens patriae* suits, and by restoring Section 230 immunity from state criminal enforcement. *See Knight First Amendment Inst. at Columbia Univ. v. Trump*, 302 F. Supp. 3d 541, 579 (S.D.N.Y. 2018) ("though … injunctive relief may be awarded" against some government officials, it is not necessary against all potentially affected officials where "declaratory relief is likely to achieve the same purpose" as it may be "assume[d] it is substantially likely that … officials would abide by an authoritative interpretation of a constitutional provision") (alterations added, existing alterations omitted), *appeal docketed*, No. 18-1691 (2d Cir. June 5, 2018). *See also id.* ("No government official, after all, possesses the discretion to act unconstitutionally."). A "substantial likelihood" of adherence to this Court's ruling suffices for standing purposes. *E.g.*, *Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 96 (2d Cir. 2017). *Cf. Los Angeles Bar Ass'n v. Eu*, 979 F.2d 697, 701 (9th Cir. 1992) ("Were this court to issue the requested declaration, we must assume that it is substantially likely that the [] legislature, although its members are not all parties to this action, would abide by our authoritative determination.") (citing *Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992) ("we may assume it is substantially likely … executive … officials would abide by an [] interpretation of th[is] … Court, even though they would not be directly bound")).

[7]   *See also Vermont Right to Life Comm.*, 221 F.3d at 382 (finding plaintiffs had standing because fear of civil penalties can be as inhibiting of speech as threat of criminal prosecution); *National Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689-90 (2d Cir. 2013) ("The fear of civil penalties can be as inhibiting of speech as can trepidation in the face of threatened criminal prosecution."). In *Walsh*, the court found standing even though the state denied the plaintiff was

found standing for the plaintiff, who alleged he could not afford to comply with the law, even though the state had never enforced the statute against anyone.  *Id.* at 737.[8]

The Supreme Court has recognized that federal courts have long found a "case or controversy" and accepted jurisdiction in cases in which "plaintiff's self-avoidance of imminent injury is coerced by threatened enforcement action of *a private party* rather than the government." *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 130 (2007) (citing, *e.g.*, *Keener Oil & Gas Co. v. Consol. Gas Util. Corp.*, 190 F.2d 985, 989 (10th Cir. 1951); *American Mach. & Metals, Inc. v. De Bothezat Impeller Co.*, 166 F.2d 535 (2d Cir. 1948)).  The Supreme Court and lower courts have similarly found pre-enforcement challenges to laws with civil sanctions to be ripe for adjudication.  *See Abbott Labs. v. Gardner*, 387 U.S. 136, 152-53 (1967) (holding action ripe before prosecution occurred where appellants faced choice between complying with possibly void regulation and risking "serious" civil penalties); *Florida League of Prof'l Lobbyists, Inc. v. Meggs*, 87 F.3d 457, 459 (11th Cir. 1996) (finding ripeness where threat of civil sanctions chills First Amendment activity).

Not only does FOSTA authorize a broader array of actors to threaten Plaintiffs with criminal or civil liability, the breadth of its prohibitions is far more expansive as well.  The Government compares FOSTA to the Travel Act, but this preexisting law prohibits only conduct, not speech, and applies only to "offenses in violation of the laws of the State in which they are committed or of the United States."[9]  The Government attempts some misdirection by suggesting

---

subject to the challenged law, because plaintiff faced a "credible threat" that it would be enforced against the organization.  714 F.3d at 689-90.

[8]   The court found standing even though it also acknowledged that a ruling against the State might not bar private litigants from filing actions against the plaintiff.  *Bland*, 88 F.3d at 738.

[9]   18 U.S.C. § 1952(b) (defining "unlawful activity" as a violation of specific state laws). This requirement is underscored by the Travel Act cases the Government cites, as is the fact that

that the defendants in the Travel Act cases it cites were engaged in speech because they placed ads for prostitution activities, but such actions were included only as one aspect of running the illegal enterprise.[10]   The Government's references to more recent Travel Act prosecutions involving websites are not to the contrary.[11]

In contrast with the Travel Act, FOSTA's offense of "promoting" or "facilitating" prostitution requires no predicate state offense.   Section 2421A does not define what it means to "promote" or "facilitate" prostitution, or to "contribute to sex trafficking," or even what constitutes "prostitution."   FOSTA is also much broader substantively than the Travel Act, which employs but one of the vague terms in FOSTA—"promote."[12]   The Travel Act also does not use

---

the law applies to physical conduct.   *E.g.*, *United States v. Bennett*, 1996 WL 477048, at *5 (9th Cir. 1996) (noting jury was instructed on Washington law as to the offenses of engaging in  prostitution, patronizing a prostitute, or promoting or advancing prostitution) (cited Mot. 11).   In each case, the types of actions found to violate the Travel Act amounted to running or managing a prostitution enterprise while using an instrumentality of interstate commerce.   *E.g.*, *United States v. Reiner*, 500 F.3d 10, 13 (1st Cir. 2007) (defendant made all personnel decisions and handled business's financial aspects) (cited Mot. 11); *United States v. Seals*, 2014 WL 3847916, at *9 (W.D. Ark. 2014) (defendant hired prostitutes and handled business's finances) (cited Mot. 11).

[10]   Mot. 11 (citing *Reiner*, 500 F.3d at 13; *Seals*, 2014 WL 3847916, at *9).   In *Reiner*, for example, the defendant "ran advertisements in Xtreme Magazine, an adult periodical, and in the adult section of two alternative newspapers, the Portland Phoenix and the Boston Phoenix," 500 F.3d at 13, but there is no suggestion the Travel Act could have been applied to the publications themselves.   *See Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003) ("Even entities that know the information's content do not become liable for the sponsor's deeds.   Does a newspaper that carries an advertisement for 'escort services' or 'massage parlors' aid and abet … prostitution, if it turns out that some (or many) of the advertisers make money from that activity?").

[11]   *See* Mot. 11-12.   The Government's references to *United States v. Omuro*, No. CR-14-CR-336 (N.D. Cal.), and *United States v. Hurant*, No. CR 16-45 (E.D.N.Y.), are to plea agreements, not decided cases, and DOJ offers no detail about the extent to which defendants in those cases may have been involved in management of prostitution enterprises.   The Government also cites the ongoing prosecution in *United States v. Lacey, et al.*, No. 18-CR-422 (D. Ariz.), Mot. 12, but the purpose of this reference is unclear, as that case has not yet resulted in a ruling.

[12]   18 U.S.C. § 1952(a)(3).   The Travel Act uses the term "facilitate" but does so only as integrally connected to promotion, *i.e.*, to "facilitate [] promotion."   *Id.*

the accumulation of other verbs, like "assist," "support," or "contribute to," which manifest FOSTA's broader scope.   This expansive reach of FOSTA reinforces the credible fear of potential prosecution or other liability.

### C.   The History of Regulation and Law Enforcement Actions Directed to Online Speech Provides a Credible Basis for Plaintiffs' Concerns About Liability

The Government's claim that there is no credible fear of prosecution because "none of the Plaintiffs (nor anyone like them) has ever been prosecuted under Section 1952," Mot. 12, ignores the history of Internet regulation and the series of events that led to FOSTA's adoption.[13] For nearly a decade, law enforcement officials at the state and local level attempted various ways to impose criminal and civil liability on Internet intermediaries for hosting speech related to sex, and when they were unsuccessful, lobbied Congress to remove immunities provided by Section 230.   *E.g.*, Letter from Nat'l Ass'n of Attorneys General to Sens. Rockefeller and Thune and Reps. Upton and Waxman, July 23, 2013 (https://www.eff.org/files/cda-ag-letter.pdf).   Civil litigants who had been actively involved in suing online platforms also sought to modify the law to make imposing liability easier.[14]   FOSTA was the result, and the end product was even

---

[13]   The Government's argument seems incongruous as it is juxtaposed with DOJ's citation of plea agreements in *Omuro* and *Hurant*, cases where it accused websites of violating the Travel Act by hosting ads for prostitutes.   Mot. 11-12.   Although Plaintiffs have not alleged fear of prosecution because of advertising, FOSTA does not require advertising as a predicate act, but only the "promotion" or "facilitation" of prostitution, with those terms defined (according to DOJ) as "any act that would cause the unlawful activity to be accomplished *or to assist in the unlawful activity in any way*."   Mot. 11 (quoting *Bennett*, 1996 WL 477048, at *5) (emphasis added).   That is far broader than "advertising."   To the extent the Government claims hosting a website that allows users "to submit, search, and read reviews of the services offered by particular prostitutes," without more, makes out a Travel Act violation, Mot. 11 (citing *Omuro*), it only underscores why parties like Plaintiffs reasonably fear prosecution under FOSTA's expanded authority given the information and services they provide to sex workers.

[14]   *See*, *e.g.*, https://sharedhope.org/2017/08/letter-support-stop-enabling-sex-traffickers-act-2017.

broader than the changes originally contemplated.[15]   In light of this background, Plaintiffs'

concerns about potential liability are well-founded.

### 1.    State and Local Law Enforcement Actions

Since the early days of Internet regulation, law enforcement officials have taken the posi-

tion that they could simply demand that online service providers take down or delete information

alleged to be "illegal," and then point to their demands as "proof" that the intermediaries "know-

ingly" hosted the information.[16]   In 2002, Pennsylvania adopted a law requiring service

providers to block access to websites alleged to display child pornography, based on "informal

notices" from the Attorney General warning of the presence of such content.   *Center for*

*Democracy & Tech. v. Pappert*, 337 F. Supp. 2d 606 (E.D. Pa. 2004).   The theory behind the law

was the notices provided the requisite "knowledge" that the law was being violated.   *Id.* at 619

¶¶ 53-55, 660.   The court invalidated the law even though, on its face, it sought to restrict speech

that could be "completely banned from the Internet," because "action taken by private actors to

comply with the Act has blocked a significant amount of speech protected by the First Amend-

ment."   *Id.* at 649-50 (citing *United States v. Playboy Entm't Grp., Inc*., 529 U.S. 803 (2000)).[17]

---

[15]   Eric Goldman, *'Worst of Both Worlds' FOSTA Signed Into Law, Completing Section 230's Evisceration*, Technology & Marketing Law Blog, April 11, 2018, https://blog.ericgoldman.org/archives/2018/04/worst-of-both-worlds-fosta-signed-into-law-completing-section-230s-evisceration.htm.

[16]   This was the model in one of the first reported criminal investigations of an interactive computer service, where law enforcement, along with several users, notified the Internet service provider BuffNET that an online newsgroup it hosted was using its service to exchange child pornography.   When the service provider failed to immediately delete the newsgroup, charges were filed against BuffNET, leading to a guilty plea.   *See* Lawrence G. Walters, *Shooting the Messenger: An Analysis of Theories of Criminal Liability Against Adult-Themed Online Service Providers*, 23 Stan. L. & Pol'y Rev. 171, 174-75 (2012).

[17]   In invalidating the statute, the court also held that the mere prospect that a user of an online service could deliver such a notice established a "credible threat" of enforcement as to confer standing on the provider to challenge the law.   *Pappert*, 337 F. Supp. 2d at 648.

Despite rulings that such actions to restrict online speech violate the First Amendment, government actors at various levels have continued to use both formal and informal means to target and block speech transmitted by online intermediaries.  In 2008, New York's then-Attorney General Andrew Cuomo targeted Verizon, Sprint, Time Warner, Comcast and other ISPs and cable operators with a series of investigations and threats to bring charges of fraud and deceptive business practices unless they agreed to block newsgroups on the popular Usenet service that were alleged to contain child abuse images.[18]   Though the Attorney General purported to identify child pornography in only 88 specific newsgroups, Sprint decided to block all groups in the "alt.*" subgroup, and Time Warner Cable stopped offering access to Usenet entirely.  Comcast, which initially resisted the blocking campaign, finally acceded after the Attorney General threatened the cable company with imminent and brand-damaging litigation.[19]

For the past decade, similar threats and legal actions have been a constant feature of state and local law enforcement efforts to restrict online speech they allege may be linked to prostitution or trafficking.  In 2008, 42 state AGs issued a joint statement seeking to limit the "erotic services" section of Craigslist.  *See*, *e.g.*, http://blog.craigslist.org/2008/11/06/joint-statement-with-attorneys-general-ncmec.  Although Craigslist took voluntary measures in response, seventeen of the AGs continued to demand that Craigslist remove its adult services section entirely.  Eric Gershon, *State attorneys general ask Craigslist to drop adult services*, L.A. TIMES (Aug. 24, 2010), http://articles.latimes.com/2010/aug/24/business/la-fi-craigslist-20100824.

---

[18]   Declan McCullagh, *N.Y. Attorney General Forces ISPs to Curb Usenet Access*, CNET (June 12, 2008), http://www.cnet.com/news/n-y-attorney-general-forces-isps-to-curb-usenet-access.

[19]   Mike Masnick, *Andrew Cuomo Threatens to Sue Comcast if It Doesn't Sign Up for His Plan to Pretend to Fight Child Porn*, Techdirt (July 22, 2008), https://www.techdirt.com/articles/20080721/1545501748.shtml.

South Carolina Attorney General Henry McMaster took the lead in these efforts, and threatened Craigslist with "criminal investigation and potential prosecution" for aiding and abetting prostitution if it did not remove its "erotic services" section as well as any "graphic pornographic material." Craigslist responded by ceasing to accept any new postings in its erotic services subcategory throughout the United States, but also filed a pre-enforcement challenge to McMaster's threatened action.[20] McMaster originally claimed he could prosecute Craigslist under a "generalized knowledge" theory, whereby the website's continuation of services after being notified of their "illegal" nature could be taken as "ratification" of the content. However, the AG subsequently disavowed this theory, and announced he could prosecute Craigslist only if he could prove it "knew a particular advertisement was related to prostitution." Following this disclaimer, the court dismissed the case for lack of standing. Although that holding is inapplicable here,[21] the actions of state attorneys general illustrate why online intermediaries err on the side of over-censoring speech.

---

[20] *Craigslist, Inc. v. McMaster*, No. 2:09-cv-01308-CWH (D.S.C. 2010). The erotic services category included ads for "legal escort services, massage workers, exotic dancers, erotic phone lines and other services whose ads often contain adult content."

[21] As an unpublished district court opinion from another jurisdiction, *Craigslist, Inc. v. McMaster* is not binding here. But even if it were, it is inapposite. In *McMaster*, the attorney general effectively retracted his threat, a circumstance that does not apply under FOSTA, where potential liability may come from multiple levels of government, as well as private litigants. Moreover, the "generalized theory of liability" that McMaster disavowed is the *mens rea* standard FOSTA adopted. More importantly, the court in *McMaster*, relying on *Ord v. District of Columbia*, 587 F.3d 1136, 1140 (D.C. Cir. 2009), applied the wrong standard for evaluating standing for pre-enforcement challenges in the First Amendment context. More recent cases in this jurisdiction hold the "imminence" standard in non-First Amendment cases does not apply when free speech is at issue. *Sandvig*, 2018 WL 1568881, at *12. *See also id.* at *6 ("the courts' willingness to permit pre-enforcement review is 'at its peak' when claims are rooted in the First Amendment") (citation omitted). *See also Act Now to Stop War and End Racism Coalition v. District of Columbia*, 589 F.3d 433, 435-36 (D.C. Cir. 2009) (distinguishing *Ord* in the First Amendment context).

A similar action was brought by the Sheriff of Cook County, Illinois, Thomas J. Dart, who filed suit to force Craigslist to eliminate its adult category, claiming it violated criminal laws against prostitution.  Specifically, Dart asserted that by providing a platform for third-party speech, Craigslist "makes it easier for prostitutes, pimps, and patrons to conduct business," and that this violated the Travel Act prohibition against using a facility in interstate commerce with "intent to 'promote' or 'facilitate the promotion of … unlawful activity,' including 'prostitution offenses in violation of the laws of the State in which they are committed.'"  *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 963 (N.D. Ill. 2009) (quoting 18 U.S.C. § 1952(a)(3)).  This time, however, the outcome was different—the court dismissed the case, holding it was barred by CDA Section 230 immunity.  *Id.* at 967-69.[22]

In 2014, Mississippi Attorney General Jim Hood threatened to prosecute Google and served extensive document subpoenas after demanding that it "take down entire websites that possibly contain illegal or dangerous content and, in his opinion, facilitate illegal activity," including prescription or illicit drug sales, credit card leaks, fraudulent identification documents, copyright infringement, and human trafficking.  Hood's subpoena included very broad requests that would require massive document production, seeking, for example, "all documents concerning any actions considered, taken, or not taken to remove videos … that appear to be promoting, offering for sale, disseminating, engaging in or facilitating Dangerous or Illegal Content/Con-

---

[22]  In 2015, Sheriff Dart "embarked on a campaign intended to crush Backpage[.com]'s adult section" by demanding that firms such as Visa and MasterCard prohibit the use of their credit cards to purchase any ads on Backpage.com.  The U.S. Court of Appeals for the Seventh Circuit issued a preliminary injunction against Dart in November 2015 after finding his actions violated the First Amendment.  *Backpage.com LLC v. Dart*, 807 F.3d 229 (7th Cir. 2015), *cert. denied*, 137 S. Ct. 46 (2017).  The court held the use of "coercive state power to stifle protected speech violates a plaintiff's First Amendment rights, regardless of whether the threatened punishment comes in the form of the use (or misuse) of the defendant's direct regulatory or decisionmaking authority … or in some less-direct form."  *Id.* at 230-31.

duct."  Google challenged Hood's subpoena, and the court found the investigation violated the First Amendment because it involved "threats of legal action and an unduly burdensome subpoena."  *Google, Inc. v. Hood*, 96 F. Supp. 3d 584, 598 (S.D. Miss. 2015).  On appeal, the Fifth Circuit agreed the subpoena raised an important First Amendment issue, but reversed on ripeness grounds, finding that no steps had been taken to enforce the subpoena.  *Google, Inc. v. Hood*, 822 F.3d 212, 220, 228 (5th Cir. 2016).  Hood later withdrew the subpoena.

States also adopted legislation aimed at prohibiting online "escort" advertising.  In 2012, legislatures in Washington State, New Jersey, and Tennessee passed laws banning ads for "commercial sex acts," but federal courts enjoined each one as a violation of the First Amendment and preempted by Section 230.  The courts rejected arguments that the laws prohibited only ads for illegal transactions.  *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262 (W.D. Wash. 2012); *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805 (M.D. Tenn. 2013); *Backpage.com, LLC v. Hoffman*, 2013 WL 4502097 (D.N.J. Aug. 20, 2013).  The courts allowed pre-enforcement challenges even though none of the plaintiffs expressed any intention to carry ads for illegal sexual transactions.  *E.g.*, *McKenna*, 881 F. Supp. 2d at 1270-71; *Cooper*, 939 F. Supp. 2d at 818-20.

## 2.    Civil Litigation

The background of civil litigation in this area also supports the conclusion that changes adopted by FOSTA create a credible threat of liability for Plaintiffs.  Private litigants have both brought suit for violations of Section 1591 before FOSTA's enactment, including against websites hosting third-party content,[23] and been quick to attempt to capitalize on the newly expanded

---

[23] *E.g.*, *Doe v. Backpage.com, LLC*, 817 F.3d 12, 15, 20 (1st Cir. 2016), *cert. denied*, 137 S. Ct. 622 (2017); *M.A. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1045, 1056 (E.D. Mo. 2011).

liability post-enactment as well,[24] including in suits by interest groups targeting websites to which they object.[25]   Nor is there reason to believe potential plaintiffs will be shy in trying to leverage Section 2421A's civil action for harm from the "promotion" or "facilitation" of unde-fined "prostitution" offenses as a means of targeting disfavored speech.   Use of civil litigation against interactive computer services to punish third-party speech asserted to have caused harm, to deny disfavored speakers a platform, to seek to effect social change, or to simply target deep pockets, is commonplace.[26]   Section 230 generally had barred liability in such cases, *see supra* note 26; *but see Armslist*, 913 N.W.2d 211.   However, FOSTA now renders Section 230 protec-tion unavailable for civil suits based on the amendments and enactments effected by FOSTA.

### D.     Plaintiffs' Allegations Establish a Reasonable Fear of Liability and First Amendment Injury

In light of this background, Plaintiffs have alleged sufficient factual bases showing a credible fear of First Amendment injury.   FOSTA reaches anyone who owns, manages, or operates an interactive computer service so as to "promote" or "facilitate" the prostitution of another, 18 U.S.C. § 2421A(a), as well as anyone who knowingly "assist[s], support[s], or

---

[24]   *E.g.*, *Doe No. 1 v. Backpage.com, LLC*, No. 1:17-cv-11069-LTS, Dkt. 64 (D. Mass. Apr. 12, 2018) (First Amended Complaint filed post-FOSTA after claims alleged by two of three defendants were dismissed under Section 230).

[25]   *E.g.*, *Florida Abolitionist, Inc. v. Backpage.com, LLC*, No. 6:17-cv-00218-JA-TBS, Dkt. 86, ¶¶ 4, 41, 174-81 (M.D. Fla. Apr. 30, 2018) (seeking, *inter alia*, retroactive application of removal of Section 230 immunity by FOSTA).

[26]   *Fields v. Twitter, Inc.*, 881 F.3d 739 (9th Cir. 2018); *Daniel v. Armslist, LLC*, 913 N.W.2d 211 (Wis. Ct. App. 2018); *Force v. Facebook, Inc.*, 304 F. Supp. 3d 315 (E.D.N.Y. 2018), *appeal docketed*, No. 18-397 (2d Cir. Feb. 9, 2018); *Dyroff v. Ultimate Software Grp., Inc.*, 2017 WL 5665670 (N.D. Cal. Nov. 26, 2017); *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398 (6th Cir. 2014); *Klayman v. Zuckerberg*, 753 F.3d 1354 (D.C. Cir. 2014); *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 666 F.3d 1216 (9th Cir. 2012); *Kruska v. Perverted Justice Found., IncorporatedOrg*, 2011 WL 1260224 (D. Ariz. Apr. 5, 2011); *Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008); *Doe v. Friendfinder Network, Inc.*, 540 F. Supp. 2d 288 (D.N.H. 2008).

facilitat[es]" commercial sex acts constituting trafficking, *id*. § 1591(a), (e)(4), and imposes heightened liability for "reckless disregard" of whether one's conduct "contribut[es] to sex trafficking." *Id*. § 2421A(b). The Government acknowledges these operative terms are undefined (and unrestricted) in the Act, and that their "sweep is vast." Mot. 16, 23.

**Eric Koszyk**: Mr. Koszyk had his speech curtailed and was thus injured when Craigslist eliminated its Therapeutic Services section in direct response to FOSTA, and prevented ads previously posted there from migrating to its Skilled Services section. Compl. ¶¶ 56, 96-98. This deprived Mr. Koszyk of his primary platform for advertising his licensed massage services. *Id*.; Decl. of Eric Koszyk, Dkt. 5-4 ("Koszyk Decl."), ¶¶ 21-24. These harms flow directly from Craigslist's prior experience being targeted by state attorneys general and local law enforcement under pre-FOSTA law as outlined above, and reflects credible fear of similar attention under FOSTA. *See id*. ¶ 55. Indeed, Craigslist expressly stated it could not "take such risk without jeopardizing [its] other services," and that it had to over-censor its service to avoid potential liability under FOSTA.[27]

That Koszyk's actions "do not fall within those proscribed by the Act," is irrelevant. Mot. 10. He was injured as a result of FOSTA's impact on Craigslist even though he himself is not a potential target of prosecution. This loss of access to his intended audience due to the effects of FOSTA constitutes First Amendment injury sufficient to confer standing. *E.g.*, *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 461 (4th Cir. 2005).[28] In this respect, the harm Mr.

---

[27] Compl. ¶ 55; Decl. of Kate D'Adamo, Dkt. 5-1 ("D'Adamo Decl."), ¶ 10. *See* About FOSTA, CRAIGSLIST, https://www.craigslist.org/about/FOSTA (last visited June 12, 2018). Users now receive "404 Errors" if they try to access URLs where Craigslist's personal formerly appeared. D'Adamo Decl., ¶ 10.

[28] Standing is established on these facts even if other venues or opportunities to reach the audience may be found. *Stroube*, 413 F.3d at 461 (citing *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 649 (2d Cir. 1998)).

Koszyk experienced and alleges in the Complaint is representative of the broad class of ordinary speakers harmed by FOSTA, through the reaction of various outlets for online speech to the law's enactment.  *See* Compl. ¶¶ 57-60, 75; D'Adamo Decl. ¶¶ 11, 13.

That injury can be redressed by the Court voiding FOSTA, which would staunch Craigslist's credible fear of prosecution and allow it to follow through on its stated intent to re-open the platform to Mr. Koszyk's ads.  *See* Compl. ¶ 101; D'Adamo Decl. ¶ 10.  This direct, tangible harm already has been experienced and is ongoing due to FOSTA.  It does not depend on any future action by prosecutors or civil litigants, and it is sufficient to give Mr. Koszyk standing.  This by itself confers subject matter jurisdiction on the Court, defeats DOJ's motion, and requires to Court to address the merits of the Complaint.[29]

**Woodhull Freedom Foundation:**  Woodhull likewise has already curtailed pursuit of its mission through use of the Internet in the wake of FOSTA.  Because of a legitimate concern that its advocacy and support of sex workers could be targeted as "promoting" or "facilitating" prostitution, Woodhull censored information on its website that could assist sex workers negatively impacted by the law.  Compl. ¶¶ 64-65; Decl. of Ricci Levy, Dkt. 5-2 ("Levy Decl."), ¶¶ 31-32.  Woodhull also was inhibited from posting other resources for sex workers on its site, from voicing on its blog and in social media opposition to FOSTA's enforcement against marginalized sex workers, and from allowing third parties to post similar material on Woodhull's *Sex and Politics* blog.  Compl. ¶¶ 83-84; Levy Decl. ¶ 28.  Additionally, for Woodhull's annual signature event, a multi-day Sexual Freedom Summit ("Summit"), scheduled this year for August 2-5 in Alexandria, Virginia, *see* Compl. ¶¶ 66, 71; Levy Decl. ¶ 16, FOSTA deterred it

---

[29] In a facial challenge with multiple parties, only one plaintiff need demonstrate standing. Once a plaintiff has done so, the District Court need not consider whether the others also have standing. *See, e.g.*, *Watt v. Energy Action Educ. Found.*, 454 U.S. 151, 160 (1981); *Bookfriends, Inc. v. Taft*, 223 F. Supp. 2d 932, 939 n.6 (S.D. Ohio 2002).

from fully promoting the portions dedicated to sex workers.  Compl. ¶¶ 72-74, 77-79; Levy Decl. ¶¶ 32-36.  After concerns about FOSTA led Desiree Alliance to cancel its July 2019 conference in which it planned to address human, labor, and civil rights for sex workers, Woodhull reluctantly declined an offer to incorporate some of its workshops into the Summit.  Woodhull explained it could not take the risk of presenting the information given the uncertainty created by FOSTA.  Compl. ¶ 82; Levy Decl. ¶ 40.

Woodhull's fear is credible given the broad, vague, and undefined prohibitions contained in FOSTA and Woodhull's intention to make sex work safer and thus easier.  Compl. ¶¶ 67, 84, Levy Decl. ¶¶ 17, 42.  Workshops at the Summit have included information and advice for sex workers that goes beyond advocacy for "harm reductions, disability, age, health and personal safety."  Mot. 9 (quoting Compl. ¶¶ 66-67).  For example, past workshops have included advice on client screening for sex workers, human rights to engage in prostitution, and efforts to legitimize the sex work industry.  Compl. ¶¶ 68-69; Levy Decl. ¶¶ 19-20.[30]  And Woodhull intends to disseminate Summit content online, including portions where sex workers identify themselves as such and may provide contact information, through services such as a Facebook Live feed and live tweets on Twitter.  Compl. ¶¶ 80-81.

By giving specific sex workers this online platform, Woodhull could well be seen by some as "facilitating or promoting the prostitution of another person."  Unlike the Travel Act, FOSTA does not require a violation of specific state law to support a prosecution or civil claim under Section 2421A.  *See supra* 11.  Rather, Section 2421A prohibits "promotion" or "facili-

---

[30]   The 2018 Summit will include workshops that provide information on "better practices for sex workers," how to engage in supportive relationships with sex workers, how to balance sex work with personal time, how to safely write online profiles, and how to reduce the risk of prosecution when seeking aid from the police by calling 911.  Dkt. 11, pp.5-7.  Woodhull publishes contact information for sex workers on its own website, and promotes this information on various third party social media platforms.  Compl. ¶ 78; Levy Decl. ¶¶ 23-24.

tation" of the "prostitution" of another person, without defining what constitutes "prostitution" for these purposes. Nor does this provision require that a specific individual's prostitution be promoted, rather than that of a "person" in the abstract.[31]  As the Government pointed out, all that "promotion" of prostitution requires is "caus[ing it] to be accomplished or [] assist[ed] … in any way."  Mot. 11 (alteration added, prior alteration omitted).  Woodhull's online presence advocating for sex workers and providing information that makes sex work easier, and the extent to which content at the Summit which is placed online does the same, could easily be targeted as "assisting in any way" the prostitution of sex workers Woodhull seeks to serve.

Such concerns are entirely plausible given the significant number of Government actions that have been taken to silence advocacy on behalf of sex workers.  *See, e.g.*, *Agency for Int'l Dev. v. Alliance for Open Society Int'l, Inc.*, 570 U.S. 205 (2013) (construing statute supported by congressional pronouncement "that 'it should be the policy of the United States to eradicate' prostitution and 'other sexual victimization'") (quoting statutory findings).  FOSTA simply provides the Government and private advocates with another tool to pursue these policy objectives.

**Human Rights Watch:**  FOSTA similarly could be reasonably interpreted to apply to HRW's human rights advocacy because HRW, like Woodhull, seeks to make sex work safer and thus easier by, among other things, advocating for sex workers' rights and safety, and by documenting abuses against them in the U.S. and internationally.  Compl. ¶¶ 86, 88, 91; Decl. of Dinah PoKempner, Dkt. 5-3 ("PoKempner Decl."), ¶ 5.  HRW also advocates that sex work be decriminalized.  *Id.*  Further, and even more critical for present purposes, HRW makes it easier

---

[31]  Even if violation of a specific state statute was required, Virginia's statutory prohibition on "Aiding Prostitution or Illicit Sexual Intercourse" makes it unlawful for any person to "give any information or direction to any person with intent to enable such person to commit an act of prostitution."  Va. Code Ann. § 18.2-348.  This prohibition is broad enough to potentially reach the type of harm-reduction activities facilitated by Woodhull.

for sex workers to avoid detection by law enforcement by forewarning them of methods police use to discover and shut down sex work, including searches of women for condoms as evidence of prostitution.  *Id.*  HRW conducts these efforts through reports, press releases, videos, podcasts and other online documents on its website and social media accounts.  *Id.*  All of this, like Woodhull's efforts, could be characterized as "facilitating" prostitution of sex workers by prosecutors or civil litigants inclined to press the point.  Moreover, as HRW relies heavily on third parties to share its reporting and advocacy through online social media, any inhibition of platforms or websites that host, publish, or allow users to disseminate HRW's reports and advocacy based on concerns over FOSTA (as with Craigslist's termination of service that Mr. Koszyk relied upon) directly affects HRW's ability to engage in protected speech.  Compl. ¶ 92; PoKempner Decl. ¶¶ 8-9.

**Alex Andrews:**  Ms. Andrews alleges both credible fear of penalties from operating the Rate That Rescue website as a platform for third parties to share information about organizations that provide services sex workers use, Compl. ¶¶ 106-111; Decl. of Jesse Maley, Dkt. 5-5 ("Maley Decl."), ¶¶ 12, 23, and First Amendment injury that has already occurred when she put a hold on acquisition of an in-development reporting application due to FOSTA.  Compl. ¶¶ 117-119; Maley Decl. ¶¶ 32-39.  Andrews intends both the website and the app will make sex work safer and easier, and thus faces the same concerns as Woodhull or HRW.  The very fact that Rate That Rescue was established by sex workers and advocates for them to improve their lives, health, safety, and wellbeing creates existential doubts given the speech that FOSTA criminalizes.  Compl. ¶ 115; Maley Decl. ¶¶ 27-31.

Not only do organizations listed on Rate That Rescue provide mundane services to sex workers, Compl. ¶ 109; Maley Decl. ¶ 21, making the work easier, evaluations of "rescue

services" that move sex workers out of trafficking into consensual sex work, rather than out of sex work altogether, *see* Compl. ¶ 109; Maley Decl. ¶ 16, also could be viewed as "facilitating" sex work.  This raises real concerns that Andrews could be seen as recklessly disregarding the risk that, by making sex work easier, she "contribut[ed] to sex trafficking."  *See* 18 U.S.C. § 2421A(b)(2); *compare* Compl. ¶¶ 112, 130 ("Congress believes that prostitution and sex trafficking are inextricably linked") (quoting H.R. Rep. No. 115-572, pt. 1, at 6).  Likewise, the in-development app that Andrews decided not to purchase sought to serve the same end by reducing dangers sex workers face, by allowing users to report violence, harassment, and other harmful behavior, to create a database of reports other sex workers can query.  Compl. ¶¶ 117-118; Maley Decl. ¶ 33.  This affects both the platform's First Amendment rights, and those of its users.

Ms. Andrews faces especial risk from FOSTA to the extent Rate That Rescue allows users to post reviews—positive or negative—about various "rescue" organizations, *see* Compl. ¶¶ 106, 108, 114, because organizations dissatisfied with a review posted by a Rate That Rescue user could well want recourse from the site itself.  As noted, providing a service that makes sex work easier could readily be targeted as violating the prohibition on "promoting" or "facilitating" the prostitution of another under Section 2421A, and Section 2421A(c) authorizes civil claims for "any person" "injured by" such a violation.  A disgruntled service reviewed at Rate That Rescue could allege the site is an interactive computer service that promotes or facilitates prostitution of 5 or more persons (or acts in reckless disregard of contributing to trafficking), and in doing so "injured" the reviewed service—on such theories as trade libel, interference with contractual relations or business opportunities, or similar torts—entitling the poorly reviewed service to recovery.  Cases of plaintiffs alleging harm by interactive computer services that allow

customers/users to review businesses are prevalent in Section 230 jurisprudence.[32]   While Section 230 almost uniformly provides immunity, *see supra* note 32 (citing cases), FOSTA's retrenchment of Section 230 immunity in conjunction with amending Section 1591 and enacting Section 2421A limits the protection it provides.

**Internet Archive:**  Although the Archive does not intend to promote sex trafficking or prostitution, it intentionally stores and displays a vast amount of both historical website data and third-party content that it has "no practical ability to evaluate the legality of."  Decl. of Brewster Kahle, Dkt. 5-6 ("Kahle Decl."), ¶ 14; Compl. ¶¶ 122-124.  Accordingly, it is entirely possible (likely, even) that as it "crawls" online content, some fraction that it preserves could be alleged to violate Sections 1591 or 2421A.  The Archive also hosts material that third parties upload. Given this activity, the Archive has alleged reasonable fear of prosecution under FOSTA, and otherwise alleges facts sufficient to establish its standing.

The Archive was a plaintiff in *Backpage.com v. McKenna*, where it was explicitly found to have standing for a facial challenge to the state law at issue, based on a credible threat it would be invoked against it, notwithstanding State claims that the Archive could not "'knowingly' publish, disseminate, or display illegal content" under the enactment.  881 F. Supp. 2d at 1270. The same should hold true here, despite DOJ claims that the Archive "does not allege an intention to engage in a course of conduct proscribed by" FOSTA.  Mot. 10.  Even if the Archive did not fear potential prosecution, it would have standing based on FOSTA's dampening of

---

[32]   *See, e.g., Hassell v. Bird*, 420 P.3d 776 (Cal. 2018); *Bennett v. Google, Inc.*, 882 F.3d 1163 (D.C. Cir. 2018); *Icon Health & Fitness, Inc. v. Consumer Affairs.com*, 2017 WL 2728413 (D. Utah June 23, 2017); *Kimzey v. Yelp!, Inc.*, 836 F.3d 1263 (9th Cir. 2016); *Roca Labs, Inc. v. Consumer Opinion Corp.*, 140 F. Supp. 3d 1311 (M.D. Fla. 2015); *Asia Econ. Inst. v. Xcentric Ventures LLC*, 2011 WL 2469822 (C.D. Cal. May 4, 2011); *Nemet Chevrolet, Ltd. v. Consumeraffiairs.com, Inc.*, 591 F.3d 250 (4th Cir. 2009); *MCW, Inc. v. Badbusiness-bureau.com, LLC*, 2004 WL 833595 (N.D. Tex. Apr. 19, 2004).

Internet speech that affects the Archive's mission of preserving access to online information for the general public, *see Reno II*, 31 F. Supp. 2d at 480-81 n.2, based on First Amendment protection of the right to "receive information and ideas." *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 757 (1976); *Pacific Gas & Elec. Co. v. Public Utils. Comm'n of Cal.*, 475 U.S. 1, 7 (1986). That aside, given FOSTA's ambiguity, it is unclear if the Archive will be required to have specific knowledge that the content it hosts somehow "supports or assists sex trafficking or promotes or facilitates prostitution."

Even were specific knowledge required, the Archive is vulnerable to prosecution or civil liability under FOSTA to the extent a Government actor or putative private litigant could purport to put it on notice that some content it hosts "promotes" or "facilitates" prostitution, or contributes to sex trafficking, *see* 18 U.S.C. § 2421A(a)-(c), then invoke Section 2421A or Section 1591 if the Archive fails to remove the content. This was the approach New York State followed in the BuffNET case and South Carolina followed in clamping down on Craigslist. *See supra* 14 n.16. *See also Pappert*, 337 F. Supp. 2d at 648 (mere prospect that user of an online service could deliver such a notice established a "credible threat" of enforcement as to confer standing).

In *Reno*, 521 U.S. 844, the Supreme Court expressly noted this kind of "heckler's veto" creates First Amendment problems (and thus, implicitly, injury for standing). *Id.* at 880. In that case, the Court rejected as "untenable" the Government's "assertion that [a] knowledge requirement somehow protects [] communications," when "[e]ven [its] strongest reading" nonetheless "would confer broad powers of censorship … upon any opponent of [] speech who might simply log on and inform" a service provider that certain speech falls with a challenged statute. *Id.* Later, in *SBA List*, 134 S. Ct. 2334 (cited Mot. 7-9, 25), one factor that strongly supported the Court's finding of standing was that Ohio's false statement law allowed "any person" with

knowledge of the purported violation to file a complaint.  *Id.* at 2345.  FOSTA is even more threatening in this regard because anyone may target online speech by purporting to notify a hosting service (like Plaintiff Internet Archive) that a post facilitates prostitution or trafficking.

\* \* \* \*

All told, the allegations and affidavits in this case fully support standing, by showing a credible threat of prosecution or liability, *in addition to* extant self-censorship by the Plaintiffs. And while that more than suffices to establish subject matter jurisdiction and defeat DOJ's motion to dismiss under Rule 12(b)(1), in a case like this, involving a pre-enforcement challenge to a law that regulates speech, the relevant standard is that the Court should "assume a credible threat of prosecution in the absence of compelling contrary evidence," *see supra* 3 (quoting *Reno II*, 31 F. Supp. 2d at 480), of which the Government has produced none.  When First Amendment rights are at issue, the Court should "not uphold an unconstitutional statute merely because the Government promised to use it responsibly."  *United States v. Stevens*, 559 U.S. 460, 480 (2010) ("[T]he First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige.*").

## II.  PLAINTIFFS' ALLEGATIONS ON THE MERITS STATE CLAIMS ON WHICH RELIEF CAN BE GRANTED

The facts set forth above easily meet the standard to survive a motion to dismiss under Rule 12(b)(6) that a plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678, *supra* 2.  The only question is whether those facts relate to valid legal claims.  The Government insists they do not based on two theories:  (1) that managing an "interactive computer service," such as a website, is not "speech" protected by the First Amendment; and (2) that if FOSTA regulates any speech, it only regulates speech the First Amendment does not protect.  Neither is correct.

A.      "Use" or "Operation" of "Interactive Computer Services" is Inherently
        Speech and Thus Protected by the First Amendment

FOSTA is inherently and inescapably a direct regulation of speech and thus subject to

First Amendment scrutiny.  Newly created Section 2421A applies only to one who "owns,

manages, or operates an interactive computer service, as such term is defined in … 47 U.S.C.

230(f)."  18 U.S.C. § 2421A(a), (b).  And FOSTA further amends 47 U.S.C. § 230, which, as

explained by Congress, uses the same language.  *See* FOSTA § 2.

In an unbroken chain of authority since the popular adoption of online services, courts

across the country have held that the use, maintenance, operation, and management of social

media platforms, websites, and other "interactive computer services" is speech protected by the

First Amendment.  *See, e.g.*, *Reno v. ACLU*, 521 U.S. at 867-68 (striking down on First

Amendment grounds law restricting interactive computer services from transmitting indecent

content to minors); *Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017) (striking down

on First Amendment grounds a ban on use of social media); *Brown v. Entm't Merch. Ass'n*, 564

U.S. 786, 799 (2011) (striking down on First Amendment grounds law restricting creation and

sale of certain video games); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330-31 (4th Cir. 1997)

(explaining that tort liability for online hosting of third-party communications was a speech

regulation that had an "obvious chilling effect"); *Knight First Amendment Inst.*, 302 F. Supp. 3d

at 575 (holding governmental operation of social media account subject to First Amendment

restrictions); *e-ventures Worldwide, LLC v. Google, Inc*., 2017 WL 2210029, at *4 (M.D. Fla.

Feb. 8, 2017) ("The First Amendment protects [online publishing] decisions, whether they are

fair or unfair, or motivated by profit or altruism."); *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d

981, 991-92 (S.D. Tex. 2017) ("online publishers have a First Amendment right to distribute

others' speech and exercise editorial control on their platforms"); *Jian Zhang v. Baidu.com Inc.*,

10 F. Supp. 3d 433, 438-39 (S.D.N.Y. 2014) (holding that when online platforms "select and arrange others' materials, and add the all-important ordering that causes some materials to be displayed first and others last, they are engaging in fully protected First Amendment expression—'[t]he presentation of an edited compilation of speech generated by other persons"); *United States v. Cassidy*, 814 F. Supp. 2d 574, 582 (D. Md. 2011) (applying First Amendment scrutiny to law criminalizing use of interactive computer service to harass); *Langdon v. Google*, 474 F. Supp. 2d 622, 629-30 (D. Del. 2007) (holding search engine's decisions about what ads to place on its platform are speech protected by the First Amendment); *Pappert*, 337 F. Supp. 2d at 652 (striking down statute requiring Internet service providers to block child pornography websites as unconstitutional speech restriction); *Search King Inc., v. Google Tech., Inc.*, 2003 WL 21464568, at *4-5 (W.D. Okla. May 27, 2003) (holding search engine's website rankings to be speech protected by First Amendment); *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1071, 1081-82 (C.D. Cal. 2003) (holding automated software that detected and removed adware was protected by First Amendment); *Cubby, Inc. v. CompuServe, Inc.*, 776 F. Supp. 135 (S.D.N.Y. 1991) (applying First Amendment and common law protections to online platform).[33]

---

[33]   With respect to Section 230 particularly, numerous courts have acknowledged a First Amendment predicate to the law.  *See, e.g.*, *Google v. Hood*, 822 F.3d at 220 ("First Amendment values … drive the CDA,"); *Batzel v. Smith*, 333 F.3d 1018, 1027-29 (9th Cir. 2003) (Section 230 was added to Exon's original bill "to further First Amendment and e-commerce interests on the Internet while also promoting the protection of minors"); *Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 790, 802-03 (2006) (Section 230 was intended to "avoid the chilling effect upon Internet free speech" that would arise from imposing liability on intermediaries); *People v. Ferrer*, 2016 WL 7237305, at *3 (Cal. Super. Ct. Dec. 9, 2016) ("*Ferrer I*") ("the relevant question in this case is whether, and to what extent, Defendants' activities entitle them to protection of their First Amendment rights through the immunity provision of the CDA"); *People v. Ferrer*, No. 16FE024013, slip op. 11 (Cal. Super. Ct. Aug. 23, 2017) ("*Ferrer II*") ("[T]he protections afforded by the First Amendment were the motivating factors behind … the CDA."). Courts have invalidated state efforts to restrict online classified ad sites under *both* the First Amendment and Section 230.  *McKenna*, 881 F. Supp. 2d at 1275-84; *Hoffman*, 2013 WL 4502097, at *7-10; *Cooper*, 939 F. Supp. 2d at 828-40.

Most recently, in this Court, Judge Bates wrote at length on "the First Amendment status of the Internet" and made clear that regulating this medium inherently has First Amendment implications.  He expressly rejected DOJ's argument that enforcing the CFAA against plaintiffs did not raise a First Amendment issue, observing that the Internet "is a 'dynamic, multifaceted category of communication' that 'includes not only traditional print and news services, but also audio, video, and still images, as well as interactive, real-time dialogue.'"  *Sandvig*, 2018 WL 1568881, at \*4 (quoting *Reno*, 521 U.S. 870).  He added, "[w]ith this special status comes special First Amendment protection."  *Id*.  DOJ cites no contrary authority—in fact, cites no authority *at all* for its assertion that Plaintiffs fail to allege First Amendment harms.  FOSTA, which specifically targets online modes of communication, must be subject to First Amendment scrutiny.

### B.    FOSTA Regulates Protected Speech Because the First Amendment Protects Speech Even if it Relates to Illegal Activities

The Government's central argument that Congress can proscribe any speech that promotes or facilitates an illegal act because that speech is never protected by the First Amendment is contrary to decades of well-established precedent.  Mot. 14-15, 18.  The Supreme Court has long held the First Amendment prohibits outlawing all speech related to or adjacent to illegal activity, even when some applications may properly proscribe unprotected speech.  *De Jonge v. Oregon*, 299 U.S. 353 (1937).  In *De Jonge*, an Oregon anti-syndicalism statute was struck down as unconstitutional because it went beyond criminalizing proscribable incitement "to effect revolutionary changes in government," to also reach peaceful political activity, such as planning and attending a meeting of the Communist Party.  *Id.* at 362-63.

The First Amendment also prohibits imposing liability on individuals because their speech is adjacent to or occurring at the same time or in the same context as unprotected activity

that may give rise to liability. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 928-29 (1982) (holding First Amendment does not permit state to impose civil liability on constitutionally protected activity without distinguishing between advocacy for acts that may be attenuated from illegal activity on the one hand, and conduct of the illegal activity on the other). In *Brandenburg v. Ohio*, 395 U.S. 444 (1969), the Court's ruling striking down Ohio's anti-syndicalism law made clear that abstract advocacy of illegal conduct is protected speech. A speaker is liable for inciting illegal activity only if the speech is "directed to inciting or producing imminent lawless action and is likely to incite or produce such action," and any statute that is not cabined within those limitations is facially unconstitutional. *Id.* at 447. The Ohio law was unconstitutionally overbroad on its face because it did not cabin its prohibitions within that limited framework. *Id.* at 448-49.[34] *See Pappert*, 337 F. Supp. 2d at 649-50 (statute regulating online speech violates the First Amendment under overbreadth doctrine even though it is directed at prohibiting only "child pornography, which can be completely banned from the Internet").

The Government's argument that FOSTA is not subject to strict scrutiny must be rejected for similar reasons. Mot. 19. Despite the Government's unelaborated contention that "the various provisions of FOSTA are a far cry from the content-based signage restrictions at issue in *Reed v. Town of Gilbert*, 135 S.Ct. 2218, 2227 (2015), or the posted notice requirement in *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S.Ct. 2361, 2371 (2018)," the statute easily satisfies the definitions of "content-based" laws set forth in *Reed*: "those that target speech based on its communicative content," 135 S. Ct. at 2226; those that apply "to particular speech

---

[34] The Ohio Law improperly punished "persons who 'advocate or teach the duty, necessity, or propriety' of violence 'as a means of accomplishing industrial or political reform'; or who publish or circulate or display any book or paper containing such advocacy; or who 'justify' the commission of violent acts 'with intent to exemplify, spread or advocate the propriety of the doctrines of criminal syndicalism'; or who 'voluntarily assemble' with a group formed 'to teach or advocate the doctrines of criminal syndicalism.'" *Brandenburg*, 395 U.S. at 448.

because of the topic discussed or the idea or message expressed," *id.* at 2227; and "laws that cannot be justified without reference to the content of the regulated speech." *Id.* (citation and internal quotation marks omitted).

The Government's contention that the law is not content-based because it regulates speech "only with respect to illegal activity" is wrong. As explained above, the law penalizes far more speech than "illegal activity." Mot. 20. But even if FOSTA were a restriction on only a subset of unprotected speech, it must still survive strict scrutiny. As the Supreme Court held in *R.A.V. v. City of St. Paul*, 505 U.S. 377, 384 (1992), "Our cases surely do not establish the proposition that the First Amendment imposes no obstacle whatsoever to regulation of particular instances of such proscribable expression, so that the government 'may regulate [them] freely.'" *Id.* at 385. "Such a simplistic, all-or-nothing-at-all-approach to First Amendment protection is at odds with common sense and with our jurisprudence as well." *Id. See also id.* at 387-88 (holding First Amendment imposes a "'content discrimination' limitation upon a State's prohibition of proscribable speech").

More generally, the Government continues to hold to the erroneous belief that FOSTA only restricts online advertising of sex work, which the Government contends is not protected by the First Amendment. This reading of the law contradicts both the plain language of FOSTA and decades of First Amendment law.

First, FOSTA clearly covers more speech than advertising: it criminalizes any speech that assists, facilitates, or supports sex trafficking, 18 U.S.C. § 1591(e)(4), or promotes or facilitates prostitution, 18 U.S.C. § 2421A(a), with enhancements for conduct that "contributes to sex trafficking," 18 U.S.C. § 2421A(b)(2). Nor did FOSTA disturb the separate provisions for advertising that already existed in Section 1591. Prior to FOSTA, Section 1591, using the

33

language "except where the act constituting the violation of paragraph (1) is advertising," had separate *mens rea* standards for advertising and for other conduct that was not advertising but otherwise constituted "participation in a venture" of sex trafficking. FOSTA amended only the definition of "participation in a venture," and left the advertising provisions untouched.[35] Section 2421A, in comparison, cannot be read as limited to advertising—the word does not appear in the section at all—as Congress instead chose to criminalize much broader categories of speech and conduct by using inclusive terms such as "facilitate," promote" and "contribute to."

Second, the Government incorrectly asserts that because "sex work is, by definition, a commercial activity," there can be no non-commercial speech related to it. Mot. 19. But speech that is itself non-commercial does not lose its unqualified First Amendment protection simply because it is related to a commercial transaction. "Commercial speech" is limited to "expression related solely to the economic interests of the speaker and its audience," that is, "speech proposing a commercial transaction." *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557, 561, 562 (1980). Restrictions on speech by non-commercial actors directed at commercial actors (and for the latter's commercial benefit) do not regulate commercial speech. *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 566-67 (2011). Moreover, speech that is itself traded in commerce, such as newspapers and books, is not commercial speech, even though it is a commercial activity. *See Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Rights*, 413 U.S. 376, 384 (1973) ("[S]peech is not rendered commercial by the mere fact that it relates to an advertisement."); *New York Times Co. v.*

---

[35] As a result, advertising, which the Government claims is the chief evil FOSTA seeks to address, is actually treated more favorably under the law—liability must be based on specific knowledge that an ad is for a coerced or minor participant, whereas liability for otherwise participating in a sex trafficking venture (that is, assisting, facilitating, or supporting it) requires an undetermined *mens rea*, but no more than a reckless disregard. 18 U.S.C. § 1591(e).

*Sullivan*, 376 U.S. 254, 266 (1964) ("That the Times was paid for publishing the advertisement is as immaterial in this connection as is the fact that newspapers and books are sold."); *Smith v. California*, 361 U.S. 147 (1959).[36]

But even if the Government were correct, and FOSTA could be read to apply only to online advertising, it would not free the Government from First Amendment scrutiny.  Three states adopted statutes to prohibit the knowing publication, display, or dissemination of ads for commercial sex acts that include depictions of minors, and in each case, courts enjoined enforcement in pre-enforcement challenges and held the laws facially invalid.  *McKenna*, 881 F. Supp. 2d 1262; *Cooper*, 939 F. Supp. 2d 805; *Hoffman*, 2013 WL 4502097.  The laws were struck down on several First Amendment bases, but of pertinence here, the courts held they were overbroad because, like FOSTA, the laws "encompasse[d] more than offers to engage in illegal transactions" and "pertain[ed] to both commercial and non-commercial speech."  *McKenna*, 881 F. Supp. 2d at 1280-81.  *Accord Cooper*, 939 F. Supp. 2d at 831-32; *Hoffman*, 2013 WL 4502097, at *8-10.

### C.      Plaintiffs Have Adequately Stated Claims for Violations of Their First Amendment Rights

As set forth in the Complaint, Plaintiffs' First Amendment rights have been violated because FOSTA is unconstitutionally overbroad, fails strict scrutiny, and is vague.

### 1.      FOSTA is Overbroad

Plaintiffs have clearly stated a claim that FOSTA is overbroad, indicating the specific language of the statute that broadly and inclusively criminalizes protected speech.  FOSTA

---

[36] Laws that criminalize such speech are analyzed as content-based restrictions on non-commercial speech.  *See Brown*, 564 U.S. at 790-91 (striking down law banning sale of violent video games); *Stevens*, 559 U.S. 460 (striking down law banning commercial creation and sale of videos depicting animal cruelty).  *See also N.Y. Times*, 376 U.S. at 266 (applying First Amendment to defamation claims derived from contents of advertisement).

reaches beyond solicitation of prostitution to potentially criminalize any online speech intended to make sex work safer and easier, that is, to "facilitate" the prostitution of another person, or "promote" the prostitution of another person by publicly identifying a person as a sex worker and providing that person's contact information online. *See generally* 18 U.S.C. § 2421A. The Government, for its part, concedes that FOSTA's "sweep" is "vast." Mot. 16.

The Government's reliance on *United States v. Williams*, 553 U.S. 285 (2008), only supports the sufficiency of Plaintiffs' Complaint. In *Williams*, the Court read the multiple verbs in 18 U.S.C. § 2252A(a)(3)(B)—advertises, promotes, presents, distributes, or solicits—as prohibiting "offers to provide and requests to obtain child pornography." *Id.* at 293. It reasoned that three of the operative verbs—advertises, distributes, and solicits—have well-defined meaning and clearly prohibited transactions of child pornography that would not be protected by the First Amendment. *Id.* at 294. The Court recognized the statute's two other verbs—promotes and presents—"are susceptible to multiple and wide-ranging meanings" but found that their inclusion with other terms narrowed their reach to include only unprotected speech. *Id.*

FOSTA, by contrast, contains no such limiting language. The operative verbs in Section 2421A(a)—"promotes" and "facilitates"—are, as the Court found in *Williams*, susceptible to "multiple and wide-ranging meanings." Unlike the statute at issue in *Williams*, however, they are not linked to other well-defined verbs that might cabin them to only proscribe unprotected speech. *Williams*, 553 U.S. at 294; *see* Mot. 19-22. The Government admits these terms broadly apply to merely require some conduct that "cause[s prostitution] to be accomplished or assisted in any way." Mot. 11. Section 1591(e)(4)'s operative verbs—assisting, supporting, and facilitat-ing—also are not presented in a context that narrows their meanings to avoid broad application

to speech protected by the First Amendment. Section 2421A(b)(2)'s "contribute to sex trafficking" is likewise not defined or cabined in at all.

### 2.   FOSTA Fails Strict Scrutiny

Plaintiffs also adequately plead that FOSTA fails First Amendment strict scrutiny.  Once pled, it becomes the Government's burden to prove the challenged law survives strict scrutiny. *See Playboy Entm't Grp.*, 529 U.S. at 818 ("When First Amendment compliance is the point to be proved, the risk of nonpersuasion … must rest with the Government, not with the citizen."). "The State must specifically identify an 'actual problem' in need of solving, *Playboy*, 529 U.S. at 822-23, and the curtailment of free speech must be actually necessary to the solution, *see R.A.V.*, *supra*, at 395.  That is a demanding standard."  *Brown*, 564 U.S. at 799.  Yet the Government does not seriously attempt to fulfill its burden to show FOSTA actually serves a compelling governmental interest and is narrowly tailored to achieve that interest.

First, the Government does not show that FOSTA directly advances an asserted interest. *See Brown*, 564 U.S. at 799.  Instead, it merely asserts that "[c]ontrary to Plaintiffs' allegations, FOSTA advances an important government interest," Mot. 19, without saying what that specific interest is, or responding to Plaintiffs' expert declarations stating that FOSTA will not serve the objectives of law enforcement and instead will be counterproductive.[37]  Overlooking these declarations—not to mention its burden of proof—DOJ incorrectly claims Plaintiffs only "cite to a single article written prior to the passage of FOSTA."  Mot. 17.  The Government's reference

---

[37]   *See* Decl. of Alexandra Frell Levy, Dkt. 5-8 ("Dr. Levy Decl."), ¶ 7 ("If FOSTA succeeds in shutting down high-traffic, high-visibility websites, it will suppress a key means of detecting and reporting sex trafficking, thus decreasing trafficking victims' chances of being recovered."); Decl. of Dr. Kimberly Mehlman-Orozco, Dkt. 5-9 ("Mehlman-Orozco Decl."), ¶¶ 21-31 ("There is absolutely no rigorous quantitative data to suggest that FOSTA has had or will have any significant impact in reducing the prevalence of sex trafficking," and "FOSTA has made the already clandestine crime of sex trafficking even more hidden from law enforcement.").

to a study indicating that "almost 85% of federal sex trafficking prosecutions in FY 2016 and 2017 involved online advertising," Mot. 18, says nothing about the need for FOSTA, or its efficacy.[38] *Compare Brown*, 564 U.S. at 799 (rejecting Government's reliance on numerous studies offered to prove existence of problem in need of solving).  In any event, reportage in the wake of FOSTA likewise illustrates its counter-productive effect.   *See* Eric Goldman, *Indianapolis Police Have Been "Blinded Lately Because They Shut Backpage Down,"* Tech. & Mktg. L. Blog, July 11, 2018, https://blog.ericgoldman.org/archives/2018/07/indianapolis-police-have-been-blinded-lately-because-they-shut-backpage-down.htm.

Second, FOSTA is not narrowly tailored:  it is both overinclusive and not the least-restrictive means of addressing the Government's poorly articulated interest.  The Government proves this point when it states that, "before FOSTA was enacted, websites could have been prosecuted in federal court for those same or substantially similar crimes."  Mot. 19.  This is analogous to the situation in *Playboy*, where the Supreme Court, applying strict scrutiny, struck down a provision of the Telecommunications Act that was substantially duplicative (and more restrictive) of another provision directed at the same problem, because the Government had failed to prove the necessity of the more restrictive provision.  529 U.S. at 817-27.

### 3.    FOSTA Is Hopelessly Vague

Plaintiffs also sufficiently plead a claim that FOSTA's vague terms violate the First Amendment.  Specifically, the undefined terms "promote," facilitate," "assist," "support," and "contribute to sex trafficking" "fail[] to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory

---

[38]  If anything, this statistic undercuts the Government.  In suggesting it is already bringing prosecutions against "advertising," DOJ indicated—at best—that FOSTA was unnecessary.  And it entirely undermines the need for legislation with FOSTA's more expansive terms.

enforcement." *Williams*, 553 U.S. at 304 (cited Mot. 14-15, 17, 20).[39]   The adequacy of this pleading is perhaps most easily demonstrated by comparing the Government's own mistaken belief that FOSTA applies only to online advertising and no other speech, against the vast censorial effects FOSTA is having on Internet platforms in general, and sex work advocacy in particular.  *See generally* D'Adamo Decl.; Decl. of Dr. Alexandra Lutnick, Dkt. 5-7.  Although the Government asserts the likelihood that anyone would not understand what these words means is "remote," Mot. 25, the factual record before this Court shows actual considerable confusion. *See* Pls. Mot. for Prelim. Inj. 10-17, 39-42.

Most tellingly, the Government never explains what it thinks the statutory terms mean in the context of FOSTA, but instead simply asserts summarily that they do not apply to Plaintiffs' speech.  Mot. 10-25.  The closest the Government gets to defining any term is to assert that "promote" broadly means to "to do any act that would cause the unlawful activity to be accomplished or to assist in the unlawful activity in any way" and that it is bound by a specific intent requirement rather than mere causation.  Mot. 12-13.  But an intent requirement cannot not cure a vague law, because it begs the question:  intent to do what?  *See Amusement Devices Ass'n v. Ohio*, 443 F. Supp. 1040, 1051 (S.D. Ohio 1977) ("[T]he Supreme Court has never to our knowledge held that the imposition of a scienter element upon a statute necessarily renders the statute's prohibitions sufficiently precise to withstand a vagueness challenge."). The Government makes no attempt to explain how the terms "facilitate," "assist," "support," or "contribute to sex trafficking" are to be defined or applied in the context of FOSTA.

*None* of the circumstances present in *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), which the Government cites, apply to FOSTA.  Mot. 24.  The law at issue there was not

---

[39]   The Government's assertion that Plaintiffs' vagueness challenge is confined to the terms "facilitate" and "promote" is incorrect.  *See* Mot. 24.

focused just on speech, it applied only to "material support" for groups that had been specifically designated as terrorist organizations by the Government, it had been expressly narrowed by Congress to exclude medical and religious materials, and it had been subject to a narrowing construction of its key terms. *Humanitarian Law Project*, 561 U.S. at 35-36. In contrast, FOSTA was expressly adopted to broaden the existing law's reach, and in particular to do so in ways that specifically target speech.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Government's Motion to Dismiss the Complaint in this action.

DATED:   July 26, 2018

Respectfully submitted,


    /s/ Robert Corn-Revere          
ROBERT CORN-REVERE
D.C. Bar No. 375415
RONALD G. LONDON
D.C. Bar No. 456284
**Davis Wright Tremaine LLP**
1919 Pennsylvania Ave. NW, Suite 800
Washington, D.C. 20006
Telephone: (202) 973-4200
Facsimile: (202) 973-4499
Email: bobcornrevere@dwt.com
     ronnielondon@dwt.com


LAWRENCE G. WALTERS
Florida Bar No.: 0776599
*Pro Hac Vice*
**Walters Law Group**
195 W. Pine Ave.
Longwood, FL 32750-4104
Telephone: (407) 975-9150
Facsimile: (408) 774-6151
Email: Larry@FirstAmendment.com
     Paralegal@FirstAmendment.com

AARON MACKEY
D.C. Bar No. 1017004
DAVID GREENE
(admitted in California)
*Pro Hac Vice*
CORYNNE MCSHERRY
(admitted in California)
**Electronic Frontier Foundation**
815 Eddy Street
San Francisco, CA 94109
(415) 436-9333
Email:  amackey@eff.org
            davidg@eff.org

DAPHNE KELLER
Cal. Bar No. 226614
**Stanford Law School Center
  for Internet and Society**
559 Nathan Abbott Way
Stanford, CA 94305-8610
(650) 723-1417
Email:  daphnek@law.stanford.edu

Attorneys for Plaintiffs