**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| WOODHULL FREEDOM FOUNDATION, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil Action No. 18-01552 (RJL) |
| UNITED STATES OF AMERICA and JEFFERSON B. SESSIONS, in his official capacity as ATTORNEY GENERAL OF THE UNITED STATES, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND
SUPPLEMENTAL MOTION HEARING BRIEF**

Defendants, by and through undersigned counsel, respectfully submit the following combined Reply in support of Defendants' Motion to Dismiss and, in accordance with the Court's July 19 and August 3, 2018, Minute Orders, supplemental motion hearing brief.

Plaintiffs fail to establish that they have standing to bring this pre-enforcement challenge to the Allow States and Victims to Fight Online Sex Trafficking Act of 2017 ("FOSTA" or "Act"). Further, even if Plaintiffs could clear the standing hurdle, their Complaint fails to state claims upon which relief can be granted.

**ARGUMENT**

**I.      Plaintiffs Have Not Established Standing to Bring This Action.**

Plaintiffs attempt to mount a wholesale facial attack on FOSTA. However, Plaintiffs fail to establish their standing to do so. As explained in Defendants' opening memorandum, FOSTA consists of three separate statutory enactments or amendments. First, FOSTA section 3 added 18 U.S.C. § 2421A, a new federal criminal prohibition that mirrors an existing law, 18 U.S.C. § 1952,

but is specifically focused on prostitution. Second, FOSTA section 4 amended 47 U.S.C. § 230 by adding subsection (e)(5)(A), which removes the immunity that section 230 previously had provided from federal civil actions brought by individuals who are victims of the sex trafficking crimes set forth in 18 U.S.C. § 1591 against those who commit such crimes (and in conjunction with FOSTA section 6, also allows states acting as *parens patriae* to bring federal civil actions against those who commit such crimes). Third, FOSTA section 4 also amended 47 U.S.C. § 230 by adding subsections (e)(5)(B) and (C), which removes the immunity that section 230 previously had provided from state court prosecutions under state sex trafficking laws. FOSTA section 5 also added to 18 U.S.C. § 1591(e) a definition of "participation in a venture," a phrase that already appeared in 18 U.S.C. § 1591(b).

In opposing dismissal, Plaintiffs attempt to lump these different aspects of FOSTA together, alleging "at least seven different paths" by which they might face liability, allegedly in violation of the First Amendment (as if the number of challenged provisions raises their odds of being injured sufficiently to support standing). Pls.' Opp. at 6. However, in order to establish standing, Plaintiffs must show injury in fact, causation, and redressability for each specific claim or form of relief set forth in the Complaint. *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 53 n.2 (2006); *see also Del. Dep't of Nat. Res. & Envtl. Control v. EPA*, 785 F.3d 1, 10 (D.C. Cir. 2015), *as amended* (July 21, 2015) (A plaintiff "'must demonstrate standing for each claim he seeks to press.'") (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). As discussed below, they have failed to do so.

A.   **Plaintiffs Do Not Face a Credible Threat of Prosecution Under 18 U.S.C. § 2421A**

1.   **The Court May Consider the Plain Language of the Statute When Determining Whether It Prohibits Plaintiffs' Conduct**

In order to establish standing to assert a pre-enforcement challenge to 18 U.S.C. § 2421A, a criminal statute, Plaintiffs must "'allege[] an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there [must] exist[] a credible threat of prosecution thereunder.'" *Backpage.com, LLC v. Lynch*, 216 F. Supp. 3d 96, 102 (D.D.C. 2016) (quoting *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014)). But, as explained in Defendants' opening brief, none of the Plaintiffs has identified an intended course of conduct that is proscribed by section 2421A. Moreover, the plain language of section 2421A makes clear that it does not prohibit conduct protected by the First Amendment.

Plaintiffs' argument that the Court must accept Plaintiffs' interpretation of section 2421A for purposes of determining Plaintiffs' standing is flawed and not supported by the applicable case law. As this Court has noted, "plaintiffs' reading of the statute to cover their conduct does not control" because "the Court does not accept plaintiffs' legal conclusions as true for purposes of a motion to dismiss." *Sandvig v. Sessions*, __ F. Supp. 3d __, Civ. A. No. 16-1368 (JDB), 2018 WL 1568881, *12 (D.D.C. Mar. 30, 2018) (citing *Doe v. Rumsfeld*, 683 F.3d 390, 391 (D.C. Cir. 2012)).[1]

The Court in *Sandvig* also recognized that a court need not accept a "frivolous" interpretation of a statute. *See id.* When determining if a plaintiff has standing, the Court can, and should, consider whether a statute's meaning is plainly contrary to a plaintiff's interpretation.

---

[1] Contrary to Plaintiffs' arguments, Pl. Opp. at 5, this case is different from *Sandvig* because in *Sandvig* the Government did not meaningfully contest that the plaintiffs' intended conduct generally fell within the scope of the challenged statute's prohibition. *See Sandvig*, 2018 WL 1568881 at *9 (noting the Government disputed that conclusion "in only one instance").

Otherwise, the requirement that a plaintiff establish that its intended conduct is "proscribed by [the challenged] statute," *Susan B. Anthony List*, 134 S. Ct. at 2342, would be meaningless. Thus, in *Backpage.com*, the Court held that the plaintiff lacked standing because its stated intention to host "legal third party advertisements" on its website was "not arguably proscribed by" 18 U.S.C. § 1591, which only prohibited knowingly hosting advertisements for illegal sex trafficking. *Backpage.com, LLC*, 216 F. Supp. 3d at 103-04 (internal quotation omitted). Similarly here, as explained in Defendant's opening brief, *see* Dfts.' Mem. (ECF No. 15) at 9-13, and in further detail below, none of Plaintiffs' intended conduct, as they have described it, is arguably proscribed by section 2421A.[2]

Plaintiffs also cite the Supreme Court's statement in *Virginia v. American Booksellers Association, Inc.*, 484 U.S. 383, 392 (1988), that the plaintiffs there had identified a cognizable injury because, "if their interpretation of the statute is correct, [they] will have to take significant and costly compliance measures or risk criminal prosecution." Pls.' Opp. at 4. However, *Virginia* involved a statute that imposed affirmative duties on booksellers, requiring that they create an "adults only" section, keep certain materials inaccessible, or bar juveniles from the store. *See Virginia*, 484 U.S at 389. In analyzing the statute, the Court cited *Craig v. Boren,* 429 U.S. 190, 194 (1976), which similarly involved a statute imposing "legal duties" that would cause a "direct economic injury." *See Virginia*, 484 U.S. at 392. In that situation, the plaintiffs would sustain a

---

[2] Two Second Circuit cases cited by Plaintiffs, Pl. Opp. at 10-11 n.7, are not to the contrary. In those cases the court did not simply accept the plaintiff's asserted understanding of the challenged statute; rather, the court examined the statute at issue and determined that the plaintiff had plausibly alleged it was subject to an enforcement action by the defendant. *See Vt. Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 382–83 (2d Cir. 2000) (concluding plaintiff's intended conduct was covered under "literal" interpretation of challenged statute); *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 690 (2d Cir. 2013) (concluding plaintiff plausibly qualified as "political committee" covered by plain text of challenged statute).

concrete injury, beyond a mere "chill" on speech, based on their statutory interpretation. Here, on the other hand, section 2421A imposes no such affirmative duties. Moreover, the plain language of the statute does not cover Plaintiffs' intended conduct. Rather, Plaintiffs' assertions with respect to section 2421A amount to nothing but a self-inflicted chill based on their misinterpretation of the statute.

### 2.      The Plain Language of Section 2421A Does Not Prohibit Plaintiffs' Activities

As previously explained, *see* Dfts.' Mem. at 2, in order to violate either section 2421A(a) or (b), someone would have to "own[], manage[], or operate[] an interactive computer service," or conspire or attempt to do so, "with the intent to promote or facilitate the prostitution of another person." 18 U.S.C. § 2421A(a), (b). Moreover, only those with the intent to engage in conduct that is already illegal can be convicted because anyone who intends to promote or facilitate prostitution in a jurisdiction where the intended act of promotion or facilitation is legal would be able to invoke the affirmative defense set forth in section 2421A(e).

The language of section 2421A cannot plausibly be read to criminalize any of the intended conduct that Plaintiffs have identified because none of the Plaintiffs alleges an intent to promote or facilitate the prostitution of another person; nor does any Plaintiff allege that its intended conduct is illegal in the jurisdiction where it would occur. Plaintiff Woodhull Freedom Foundation ("Woodhull") alleges that it "uses its website to advocate for the right to sexual freedom," including "the right to engage in consensual sexual activity" even where payment is involved. Compl. ¶ 62. Woodhull does not allege that it has advocated with the intent to promote or facilitate

acts of prostitution. Nor has it identified any jurisdiction where the advocacy that it describes is illegal.[3]

Plaintiff Human Rights Watch ("HRW") alleges that it publishes "hundreds of reports, press releases, videos, podcasts and other online documents on its website and social media accounts" and that some of those materials "include research and advocacy on behalf of the rights of sex workers," including advocacy favoring decriminalization of sex work. Compl. ¶ 88. HRW does not allege that its publications target acts of prostitution. Nor has it identified any jurisdiction where the publication of such materials is illegal.

Plaintiff Eric Koszyk alleges that he owns a personal massage business and has posted online classified ads on Craigslist but that, following FOSTA's enactment, Craigslist shut down the section of its platform that focused on Therapeutic Services and blocked his attempts to post ads. Compl. ¶¶ 93-101. Koszyk does not allege that Craigslist intended to promote or facilitate acts of prostitution when it previously allowed him to post his ads. Nor does he allege that he intends to promote or facilitate acts of prostitution when publishing the ads. Koszyk also has not identified

---

[3] Plaintiffs' Motion for Preliminary Injunction cited Woodhull's annual Sexual Freedom Summit, scheduled to take place in Virginia on August 2-5, 2018, as the primary basis for the requested emergency relief. The Court already indicated that it was not prepared to rule on Plaintiffs' Motion prior to the Summit, and its scheduled dates have now passed. It appears from its website that Woodhull's ninth-annual Sexual Freedom Summit was held in Alexandria, VA, as planned and included several live-streamed workshops, with titles such as "Criminalization of Sex Work is a Human Rights Violation and a Labor Rights Concern," "FOSTA! How Congress Broke the Internet," and "Sexual Freedom in the Age of Trump." https://www.sexualfreedomsummit.org/. In any event, however, Woodhull failed to identify any intended conduct in connection with the Summit that was prohibited by section 2421A. Woodhull does not assert that the activities of organizing, scheduling, and planning the Summit; exchanging emails regarding the Summit; promoting workshops scheduled to take place at the Summit, including Sex as Work Track workshops focused on employment and safety issues for sex workers; publishing information about workshop presenters; or streaming its "Sex as Work" Track are illegal in Virginia. *See* Compl. ¶¶ 66-81. Woodhull also does not assert that, by promoting its Sex as Work Track workshops or publishing biographies and contact information for sex workers participating in those workshops, it intends to promote or facilitate those sex workers' acts of prostitution. *See id.* ¶ 74.

any jurisdiction where posting personal massage advertisements, much less allowing a third party to do so, is illegal.

Plaintiff Jesse Maley a/k/a Alex Andrews alleges that she and organizations she has founded operate a website "dedicated to advocating for sex workers' health, safety and human rights," a "support line" that "connects sex workers with national and local resources," and a website that shares information about and provides ratings of purported rescue organizations, the latter of which has also been used to provide sex workers' reviews of other products or services that they use, such as Twitter, Wix, or PayPal. Compl. ¶¶ 102-110. Maley does not allege that she targeted acts of prostitution in the course of operating those platforms. Nor has she identified any jurisdiction where the publication or transmission of the content that she describes is illegal.

Plaintiff The Internet Archive (the "Archive") alleges that it automatically archives "about 80 million web pages per day" that are authored by third parties, that others also add around 20,000 items per day to its collection, and that its collection contains over 330 billion web pages, as well as over 17 million texts, 5 million audio files, and 4 million video files. Compl. ¶¶ 122-23. The Archive also asserts that it "has no practical ability to evaluate the legality of any significant portion of the third-party content that it archives." *Id.* ¶ 124. The Archive does not allege that it has ever intended its archive to promote or facilitate acts of prostitution. Nor has it identified any jurisdiction where such archiving of online content is illegal. [4]

---

[4] The Archive cannot credibly fear criminal or civil liability because it has no specific knowledge about the content of any of the material it obtains, much less about websites that advertise sex trafficking or are intended to facilitate prostitution. Compl. ¶¶ 122-124. This underscores the important work done by the *mens rea* element. For example, through its work, the Archive necessarily captures websites containing child pornography, which is categorically illegal. *Ferber v. New York*, 458 U.S. 747 (1982); *see also* https://www.cybertip.ca/app/en/projects-arachnid (last visited on August 6, 2018, indicating that in a six week period Project Arachnid detected 5.1 million unique web pages containing child pornography). The Archive cannot be prosecuted for receiving, possessing, or distributing child pornography for the same reason it

Plaintiffs nevertheless insist that they are at risk of being prosecuted under section 2421A because the words "promote" and "facilitate" are not expressly defined in the statute and thus cover their intended activities. Pls.' Opp. at 12. However, when viewed within the statute as a whole, those terms clearly refer to illegal conduct that is connected to acts of prostitution. For one thing, the phrase "the prostitution of another person" indicates that section 2421A is not focused on prostitution in general or as an abstract concept; rather, the intent must relate to the prostitution of another person. For another, the affirmative defense set forth in section 2421A(e) indicates that only acts of promoting or facilitating prostitution that are already illegal in the jurisdiction where they occur could conceivably be covered.[5] Thus, even if the activities that Plaintiffs identify— such as mere advocacy on behalf of decriminalization or the provision of information about safety or resources—could be viewed in some abstract sense as promoting or facilitating the general concept or existence of prostitution, the language of section 2421A plainly does not encompass

---

cannot be criminally or civilly liable under FOSTA: it has no knowledge about any individual webpage nor criminal intent.

[5] Plaintiffs therefore are entirely wrong in suggesting that the prohibitions set forth in FOSTA's section 2421A are "far more expansive" than those set forth in the Travel Act, 18 U.S.C. § 1952. *See* Pls.' Opp. at 11. To the contrary, the two laws are directly parallel when it comes to their prohibition on using the Internet with the intent to promote or facilitate illegal prostitution. The Travel Act prohibits the use of "any facility in interstate or foreign commerce" (such as the Internet) with the intent to "promote, manage, establish, carry on, or facilitate the promotion, management, establishing, or carrying on, of any unlawful activity," including "prostitution offenses in violation of the laws of the State in which they are committed or of the United States." 18 U.S.C. § 1952(a)(3), (b)(1). Section 2421 similarly prohibits certain types of Internet use (confined to owning, managing, or operating an interactive computer service) with the intent to promote or facilitate the prostitution of another person, and only promotion or facilitation that is illegal in the jurisdiction where it occurs is covered. *See* 18 U.S.C. § 2421A(a), (b), (e). Contrary to Plaintiffs, *see* Pls.' Opp. at 27, there is no meaningful distinction between facilitating prostitution, as prohibited by section 2421A, and facilitating the carrying on of prostitution in section 1952. Further, section 2421A is more narrowly drawn even than the Travel Act because the latter requires only that prostitution generally be illegal in the relevant jurisdiction, but the former also mandates that the specific acts of promotion or facilitation of prostitution be illegal in order to avoid the affirmative defense of section 2421A(e).

such a broad reading. Plaintiffs cannot credibly claim a threat of prosecution when the affirmative defense in section 2421A(e) would so obviously apply.

### 3. The Conduct Prohibited Under Section 2421A Is Not Protected by the First Amendment

For the same reason, any course of conduct proscribed by section 2421A would not be "arguably affected with a constitutional interest." *Susan B. Anthony List*, 134 S. Ct. at 2342. Plaintiffs rely on the notion that owning, managing, or operating an interactive computer service is inherently speech-related and thus automatically implicates the First Amendment. Pls.' Opp. at 29. However, the Supreme Court has already recognized that speech (including noncommercial speech) that "is intended to induce or commence illegal activities" is not entitled to First Amendment protection. *United States v. Williams*, 553 U.S. 285, 297 (2008); *see also Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 388-89 (1973) ("We have no doubt that a newspaper constitutionally could be forbidden to publish a want ad proposing a sale of narcotics or soliciting prostitutes."). The Court in *Williams* thus upheld a criminal prohibition on knowingly "advertis[ing], promot[ing], present[ing], distribut[ing], or solicit[ing]" child pornography. *Williams*, 553 U.S. at 289-90. Applying that holding here, the acts of promoting or facilitating the prostitution of another person that are at issue in section 2421A do not qualify as speech protected by the First Amendment. Instead, the only intended acts that could trigger section 2421A are those that are already illegal; the affirmative defense set forth in subsection (e) clearly indicates that Congress did not intend the provision to cover any otherwise-legal conduct. *See* 18 U.S.C. § 2421A(e).[6]

---

[6] Indeed, the affirmative defense incorporated into section 2421A serves as a fail-safe guarantee that section 2421A could not be used to convict someone based on First Amendment-protected activity. Because the intended acts of promotion or facilitation of the prostitution of another person must already be illegal under the laws of the relevant jurisdiction, any First Amendment claims with respect to such prohibitions could be addressed to those underlying laws, in the first

Plaintiffs try to distinguish *Williams* by again invoking the notion that the terms "promotion" and "facilitation" in FOSTA are "susceptible to 'multiple and wide-ranging meanings.'" Pls.' Opp. at 36. But in doing so they ignore the Court's instruction in *Williams* that a term used in a statute cannot be read in isolation. *Williams*, 553 U.S. at 294. In addition to the rule specifically applied in *Williams*, whereby a term in a list is understood in relation to the other terms in the list, another well-established rule requires that a statute's plain meaning be understood not only by the specific language used but also in light of "the specific context in which that language is used, and the broader context of the statute as a whole." *Nat'l Veterans Legal Servs. Program v. United States*, 291 F. Supp. 3d 123, 138-39 (D.D.C. 2018) (quoting *United States v. Wilson*, 290 F.3d 347, 352-53 (D.C. Cir. 2002)). And here, as discussed above, the terms "promote" and "facilitate" in section 2421A must be understood in light of the entire phrase "to promote or facilitate the prostitution of another person," indicating that an act of prostitution must be involved. They must also be understood in the context of the statute as a whole, including the affirmative defense set forth in subsection (e), which makes clear that the statute covers only acts of promotion or facilitation that are already illegal—and therefore does not cover the more abstract sense of the terms that Plaintiffs attempt to invoke.

This is not a situation like that in *United States v. Stevens*, 559 U.S. 460 (2010), where the Supreme Court refused to credit the Executive Branch's stated intention to interpret a criminal statute in a particular way. *See id.* at 480 (declining to "uphold an unconstitutional statute merely because the Government promised to use it responsibly"). The statute at issue in *Stevens*, 18 U.S.C. § 48, at the time prohibited the creation, sale, or possession of "a depiction of animal cruelty with

---

instance. If such a law were held to violate the First Amendment, the First Amendment-protected activities covered by that law would no longer be illegal in the relevant jurisdiction, and the affirmative defense of subsection (e) would apply.

the intention of placing that depiction in interstate or foreign commerce for commercial gain."

*Stevens*, 559 U.S. at 467.[7] The Court first held that the statute implicated the First Amendment

because depictions of animal cruelty did not fall within an established category of unprotected

speech. *Id.* at 471. The Court then held that that the statute was facially invalid under the First

Amendment's overbreadth doctrine because the plain language of the statute "nowhere require[d]

that the depicted conduct be cruel," and it could therefore be applied to a broad array of activity in

which animals were killed. *Id*. at 474. Moreover, the statute's requirement that the conduct be

illegal was not sufficient to save it because there are "myriad federal and state laws concerning the

proper treatment of animals, but many of them are not designed to guard against animal cruelty,"

such as hunting and licensing requirements. *Id*. at 475. The Court thus observed that, under the

plain language of the statute, a depiction of "the humane slaughter of a stolen cow" could be subject

to prosecution. *See id.*

The situation here is different because Defendants are not relying on prosecutorial

discretion. Rather, Defendants have pointed out that Plaintiffs' intended conduct simply is not

covered by the plain language of section 2421A. In other words, the Government's argument is

not that the Government *would* not prosecute Plaintiffs, it is that the Government *cannot* because

the statute on its plain terms does not reach the conduct described by the Plaintiffs. *See* Dfts.'

Mem. at 13. In addition, whereas the Court in *Stevens* recognized that the depictions at issue there

were entitled to First Amendment protection, here in order to be subject to prosecution under

---

[7] Plaintiffs misleadingly described the Respondent in *Stevens* as "someone who did documentaries about training pit bulls and wrote treatises on training pit bulls." P.I. Hrg. Trans. at 16. The actual decision, however, notes that that the Respondent "ran a business, 'Dogs of Velvet and Steel,' and an associated Web site, through which he sold videos of pit bulls engaging in dogfights and attacking other animals," and that these videos included "gruesome" scenes. *Stevens*, 559 U.S. at 466. Unlike this case, therefore, the Respondent's conduct was clearly covered by the statute at issue.

section 2421A, a website operator or owner would have to intend to engage in conduct that, under *Williams*, is categorically excluded from First Amendment protection—conduct that is intended to illegally promote or facilitate an illegal act of prostitution.

Plaintiffs thus have not alleged an intention to engage in a course of conduct that is prohibited by section 2421A, and no conduct that is prohibited by section 2421A is arguably affected with a constitutional interest. Accordingly, Plaintiffs face no credible threat of prosecution under section 2421A, and they therefore lack standing to pursue their pre-enforcement claims against it.[8]

**B.**   **Plaintiffs Have Note Established Their Standing to Challenge 47 U.S.C. § 230(e)(5)(A) or 47 U.S.C. § 230(e)(5)(B) and (C) Because the Possibility that Third Parties Might Sue Them Based on a Misinterpretation of Those Provisions is Speculative and Not Fairly Traceable to Any Action of Defendants**

Apart from the criminal prohibition in section 2421A, Plaintiffs also seek to challenge the provisions of FOSTA that remove certain aspects of the statutory immunity that Congress had previously granted to interactive computer services in 47 U.S.C. § 230.[9] *Cf. Bennett v. Google, LLC,* 882 F.3d 1163, 1165-66 (D.C. Cir. 2018). Because these provisions remove immunity with

---

[8] With respect to who would prosecute offenses under section 2421A, the cases would be handled by the U.S. Attorney's Offices ("USAO"), potentially in partnership with one of two headquarters units at the U.S. Department of Justice ("DOJ"). The Child Exploitation and Obscenity Section ("CEOS") is part of the Criminal Division and serves as DOJ's subject matter expert on child sexual exploitation. The Human Trafficking Prosecution Unit ("HTPU") sits in DOJ's Civil Rights Division in its role as the subject matter expert on labor trafficking and adult sex trafficking. Both CEOS and HTPU partner with USAOs as needed and appropriate on the prosecution of cases within their expertise. CEOS partnered with the USAO in *United States v. Omuro*, Crim. No. 14-336 (N.D. Cal.) (involving myredbook.com), and is working with two USAOs in *United States v. Lacey*, Crim. No. 18-422 (D. Ariz.) (involving backpage.com). The training CEOS has provided on FOSTA has focused on those two prosecutions. DOJ has not issued formal written guidance to federal prosecutors on the implementation of FOSTA.

[9] These challenges also encompass FOSTA's amendment of 18 U.S.C. §§ 1591 and 1595 as well as its inclusion of a civil recovery provision in section 2421A(c).

respect to private and state civil actions and state criminal actions, rather than setting forth federal criminal prohibitions enforceable by Defendants, Plaintiffs' claims against Defendants with respect to those provisions is one step removed from a typical "pre-enforcement" challenge, which is brought against the authority that has the power to enforce the provision.  Plaintiffs' standing to challenge those provisions thus is best analyzed under the framework of *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398 (2013), which requires that a plaintiff identify "certainly impending" injuries, fairly traceable to the challenged provisions and redressable by this Court, in order to seek prospective relief. *Id.* at 409.[10] As the Court recognized, "allegations of *possible* future injury are not sufficient." *Id.* Moreover, a future injury that requires a "highly attenuated chain of possibilities" cannot be deemed "certainly impending," nor would such an injury be "fairly traceable" to the challenged statute. *Id.* at 410; *see also Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) ("The causal connection between the injury and the conduct complained of must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." (internal quotation omitted)).

Plaintiffs here have not identified a certainly impending injury that will be caused by the U.S. Department of Justice and that is fairly traceable to FOSTA's section 230 amendments. Indeed, Plaintiffs acknowledge that "[t]he extent to which FOSTA will be applied" by state attorneys general and private civil litigants "simply is beyond DOJ's control." Pls.' Opp. at 9. [11]

---

[10] To the extent Plaintiffs' challenges to these provisions are analyzed under the same pre-enforcement framework addressed above with respect to section 2421A, they lack standing for the same reasons set forth above. Under either framework, Plaintiffs' asserted injury is purely speculative and relies on a misinterpretation of the applicable law. However, applying the *Clapper* framework usefully highlights Plaintiffs' failure to satisfy the causation prong of standing.

[11] In a similar vein, a body of case law cited by Plaintiffs has no bearing here. Pls.' Opp. at 10-11. Those cases were brought against defendants who could actually bring the legal action being challenged. *See, e.g., Bland v. Fessler*, 88 F.3d 729, 738 (9th Cir. 1996) (acknowledging that

At the same time, Plaintiffs are incorrect in asserting that their own activities, as described in the Complaint, are likely to be targeted by individuals or state or local prosecutors because of FOSTA. Again, they misinterpret the statutory provisions at issue. Under section 230(e)(5)(A), any conduct subject to a civil action under 18 U.S.C. § 1595 must be illegal under 18 U.S.C. § 1591, and specifically, must involve the knowing advertisement of sex trafficking. Similarly, under sections 230(e)(5)(B) and (C), any conduct subject to a state criminal prosecution either must be illegal under 18 U.S.C. § 1591, or it must be illegal under 18 U.S.C. § 2421A and "promotion or facilitation of prostitution must be illegal in the jurisdiction where the defendant's promotion or facilitation of prostitution was targeted." 47 U.S.C. § 230(e)(5)(B)-(C). Thus, FOSTA removes statutory immunity only with respect to prostitution- or sex-trafficking-related conduct that is already illegal under both state and federal law.[12] As already discussed above, Plaintiffs' activities do not fall in this category.

---

private parties would remain able to sue plaintiff if plaintiff prevailed in suit against state attorney general, but concluding that the attorney general "has far and away the greatest resources, both economic and political," to enforce the civil statute at issue against the plaintiff); *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 130 (2007) (allowing patent licensee to seek a declaratory judgment against the defendant licensor to prevent the licensor from bringing a breach of contract claim against the licensee); *Abbott Labs. v. Gardner*, 387 U.S. 136, 152–53 (1967) (allowing drug companies to sue federal agencies based on potential for agencies to enforce regulations against the drug companies); *Fla. League of Prof'l Lobbyists, Inc. v. Meggs*, 87 F.3d 457, 459 (11th Cir. 1996) (allowing lobbyist organization to sue state attorney based on potential for state attorney's enforcement of state disclosure requirements for lobbyists). These cases suggest, at most, that Plaintiffs may be able to establish standing if they similarly brought claims against those, such as state attorney generals, who they claim can now bring civil actions against them, provided that their conduct was covered under the terms of the relevant laws. However, these provide no support for Plaintiffs' effort to sue the federal Government based on Congress's removal of certain aspects of section 230 immunity.

[12] Plaintiffs misquote Congress when they suggest that FOSTA "loosened" the applicable *mens rea* requirement in 18 U.S.C. § 1591. Pls.' Opp. at 7. Contrary to Plaintiffs' characterization, the House Report they cite does not say anything about "loosening" the mens rea element. Rather, it explains why Congress removed section 230 immunity for offenses involving *prostitution* as well as *sex trafficking* (which requires proof that a commercial sex act was caused by force, fraud, or coercion or involved a minor. *See* 18 U.S.C. § 1591), and carved out such offenses, already

Plaintiffs' primary argument in opposition to this point is that states or individuals might not agree with Defendants' interpretation of FOSTA and might therefore invoke FOSTA to bring civil or criminal actions against Plaintiffs regardless. However, Plaintiffs' assertions in this regard are mere speculation that do not identify a certainly impending injury. *Cf. Elec. Privacy Info. Ctr. v. FAA*, 892 F.3d 1249, 1254–55 (D.C. Cir. 2018) (injury that depends on a "highly attenuated [] chain of possibilities" is "too speculative to support standing").[13] As explained above, the proper

---

prohibited by 18 U.S.C. § 1952, in a separate federal criminal statute, section 2421A. As Congress said, "online advertisements rarely, if ever, indicate that sex trafficking is involved. The advertisements neither directly nor implicitly state that force, fraud, or coercion was used against the victim, nor do they say that the person depicted being prostituted is actually under the age of 18. Because these indicia of knowledge of criminality are typically lacking in the advertisements, federal prosecutors usually cannot demonstrate beyond a reasonable doubt that the website operators knew that the advertisements involved *sex trafficking*. Further, general knowledge that sex trafficking occurs on a website will not suffice as the knowledge element must be proven as to a specific victim. A new statute that instead targets promotion and facilitation of *prostitution* is far more useful to prosecutors." H.R. Rep. No. 115-572, pt. 1, at 5 (Feb. 20, 2018) (emphasis added). It is beyond dispute that section 2421A as created by FOSTA requires proof of intent, and it is beyond dispute that intent is a higher level of *mens rea* than knowledge. *United States v. Bailey*, 444 U.S. 394, 403-408 (1980). Plaintiffs' claim to the contrary has no merit.

[13] Plaintiffs' attempt to compare civil actions brought by private parties to the "heckler's veto" mentioned by the Supreme Court in *Reno v. ACLU*, 521 U.S. 844, 880 (1997), Pls.' Opp. at 29, should be disregarded. The Court in *Reno* held that certain provisions of the Communications Decency Act of 1996 ("CDA")—which prohibited the knowing transmission of "indecent" or "patently offensive" material to minors over the Internet—violated the First Amendment under a strict scrutiny analysis because less restrictive means of protecting minors from harmful Internet content were available. *Id.* at 879. The Court used the term "heckler's veto" in dicta when addressing a specific factual situation not present here. *See id.* at 880. The *Reno* court noted that most internet forums are open to everyone, so that if one participant in a public discussion claimed to be under the age of 18, then the adults could no longer share indecent material with each other in that forum. *Id.* In contrast, here Plaintiffs worry that they will face liability if any one person claims their website contains illegal content, thus triggering their "knowledge." But unlike the situation in *Reno*, where someone could essentially create the requisite knowledge single-handedly (and thus rendered the website operator helpless against a claim should it proceed with the discussion), here an individual bringing a lawsuit would have to prove an actual violation in order to prevail. Any speech properly subject to such a suit would necessarily involve criminal conduct, which has no First Amendment protections. A speculative possibility of frivolous lawsuits cannot create standing to challenge FOSTA's substantive provisions nor its amendments to the CDA, which merely removes federal immunity from such actions.

scope of section 2421A is based on the plain language of the statute. Similarly, Plaintiffs have not established any likelihood that their conduct could be seen as violating 18 U.S.C. § 1591, which prohibits knowingly engaging in conduct, including advertising, related to the sex trafficking of a person.[14]

Moreover, to the extent Plaintiffs speculate that private or state actions might be brought against them regardless of the plain meaning of the relevant FOSTA or other federal criminal provisions, any injury caused by such "rogue" lawsuits would not be fairly traceable to FOSTA but would instead be "the result of the independent action of [a] third party not before the court.'" *Cierco v. Mnuchin*, 857 F.3d 407, 415 (D.C. Cir. 2017) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Plaintiffs' theory essentially relies on the notion that because Congress lifted section 230 immunity for certain types of actions, where an interactive computer service has engaged in conduct that violates section 2421A or section 1591, states or private litigants are more likely to assert claims against them even though their conduct violates neither statute. However, where, as here, the "asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, much more is needed" to demonstrate standing. *Lujan*, 504 U.S. at 562; *see also Chesapeake Climate Action Network v. Exp.-Imp. Bank*, 78 F. Supp. 3d 208, 216 (D.D.C. 2015) ("[I]n those cases where plaintiff was not the subject of government action or inaction, and where the harm to the plaintiff  comes  instead  from  the

---

[14] Plaintiff Koszyk's asserted injury is even more attenuated than those of the other Plaintiffs because it depends on the independent actions not only of states and private parties but also of Craigslist. Koszyk's theory of injury appears to be that Craigslist has prevented him from posting massage service advertisements, allegedly because of FOSTA. However, nothing in FOSTA could conceivably be interpreted to prohibit websites from allowing third parties to post advertisements for massage services. Any self-inflicted chill that Craigslist has imposed on itself is not fairly traceable to FOSTA, and Koszyk's asserted injury appears to be caused by Craigslist, not by FOSTA.

agency's regulation of an independent third party not before the court,  standing is ordinarily substantially more difficult to establish." (citation omitted)). Plaintiffs have not met this threshold. To the contrary, Plaintiffs' litany of state efforts to combat certain online activity, Pls.' Opp. at 14-18, only makes clear that such matters, including any First Amendment issues, can be and are appropriately resolved through litigation with the states themselves.[15]  In any event the Court cannot assume that any actions brought by states or private litigants will violate the First Amendment, particularly in light of the plain meanings of sections 2421A and 1591 explained above. Nor have Plaintiffs plausibly alleged that any such actions will be brought against them. Plaintiffs therefore have not established a certainly impending injury fairly traceable to the FOSTA provisions that remove section 230 immunity, and their challenges to those provisions should also be dismissed for lack of standing.

## II.      The Complaint Fails to State a Claim Upon Which Relief Can Be Granted.

The First Amendment and vagueness claims set forth in Plaintiffs' Complaint are all premised on a construction of the various FOSTA provisions that is contradicted by their plain language as addressed above and in Defendants' opening brief. Because Plaintiffs' interpretation of FOSTA is incorrect, they also fail to state a claim upon which relief can be granted. Plaintiffs' opposition brief fails to overcome this fatal defect.

As explained above, none of FOSTA's provisions extends to speech protected by the First Amendment. Section 2421A prohibits owning, managing, or operating an interactive computer

---

[15] By seeking to challenge FOSTA as the cause of their asserted First Amendment injuries, Plaintiffs essentially assert that the section 230 immunity that FOSTA removed is itself required under the First Amendment. That is wrong, first of all, because the conduct for which immunity was removed is not protected by the First Amendment. But even if it were, the First Amendment confers no right to federal immunity from allegedly unconstitutional state and private actions. Rather, the Fourteenth Amendment allows private parties to enforce the First Amendment against states directly.  If a state were to bring an action against Plaintiffs based on the activities that they have described in their Complaint, they could assert their First Amendment claims directly against the state.

service with the intent to promote or facilitate the prostitution of another person. 18 U.S.C. § 2421A(a), (b). The only acts of promoting or facilitating that are covered by this language are acts that are already illegal. *See* 18 U.S.C. § 2421A(e). Similarly, any conduct that could be the subject of a suit brought by a state or private party either must be illegal under 18 U.S.C. § 1591, or it must be illegal under 18 U.S.C. § 2421A and "promotion or facilitation of prostitution must be illegal in the jurisdiction where the defendant's promotion or facilitation of prostitution was targeted." 47 U.S.C. § 230(e)(5). And the Supreme Court has recognized that speech "intended to induce or commence illegal activities" is not entitled to First Amendment protection. *Williams*, 553 U.S. at 297; *see also Pittsburgh Press Co.*, 413 U.S. at 388-89.

Plaintiffs argue that speech "related to or adjacent to illegal activity" can be protected in some circumstances. Pls.' Opp. at 31.  However, those circumstances do not apply here because, to the extent speech or expressive conduct is involved, it would be intended to illegally promote or facilitate prostitution. The statutes at issue here thus are distinguishable from others discussed by Plaintiffs, in *De Jonge v. Oregon*, 299 U.S. 353 (1937) (where the Supreme Court reversed the defendant's conviction under a statute prohibiting "criminal syndicalism" for presiding at and conducting a lawful public meeting), or in *Stevens* (that did encompass protected speech within their prohibitions).

This is also not a situation like that discussed in *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992), where the Government has prohibited otherwise-unprotected speech based on its viewpoint. *See id.* at 389. Invalidating a statute that prohibited cross-burning that "arouses anger, alarm or resentment in others," the Court in *R.A.V.* explained that "[w]hen the basis for the content discrimination consists entirely of the very reason the entire class of speech at issue is proscribable, no significant danger of idea or viewpoint discrimination exists." *Id.* at 388. Thus, child

pornography can be prohibited without implicating the First Amendment because the fact that the image contains child pornography is what removes it from First Amendment protection. Here, similarly, the fact that a website owner intends to promote or facilitate the prostitution of another person is the very reason its conduct is not protected. The same is true for advertising a person, knowing that the person is a minor or will be subject to force, fraud, or coercion and will be caused to engage in a commercial sex act. *See* 18 U.S.C. § 1591(a); *Backpage.com, LLC*, 216 F. Supp. 3d at 104 ("even if Backpage.com did start hosting advertisements of sex trafficking, it could not contend that its speech would be arguably affected with a constitutional interest" (internal quotation and alterations omitted)). The conditional protection that the Court in *R.A.V.* discussed, which only applies to the extent necessary to ensure the absence of viewpoint discrimination, thus is not implicated here.[16] As set forth below, none of the causes of action set forth in Plaintiffs' Complaint sets forth a plausible claim.

### A.   Facial Overbreadth

Count I of the Complaint reads as a facial overbreadth challenge to FOSTA, with particular emphasis on the terms "promote" and "facilitate" as used in section 2421A. Compl. ¶¶ 126-34.

In a typical facial challenge, plaintiffs must show "'that no set of circumstances exists under which [FOSTA] would be valid,' . . . or that the statute lacks any 'plainly legitimate sweep.'" *Stevens*, 559 U.S. at 472. First Amendment cases allow for "'a second type of facial challenge,' whereby a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Id*. at 473 (citation

---

[16] Plaintiffs are incorrect in suggesting that a court must apply strict scrutiny to determine whether a regulation implicating otherwise-unprotected speech engages in prohibited viewpoint discrimination. *See* Pls.' Opp. at 33. The Court explained in *R.A.V.* that this prohibition "applies differently in the context of proscribable speech than in the area of fully protected speech." *R.A.V.*, 505 U.S. at 387. Where, as here, it is clear no viewpoint discrimination is involved, there is no basis to subject a statute to further First Amendment scrutiny. *See id.*

omitted). Here, Plaintiffs have failed to state a valid overbreadth claim regardless of which standard is applied.

FOSTA on its face does not regulate speech. Rather, as set forth above, by its terms section 2421A targets owning, managing, or operating an interactive computer service, or conspiring or attempting to do so, with the intent to promote or facilitate illegal prostitution. "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003).

As noted above, and in contrast to Plaintiffs' statements at the July 19, 2018, motion hearing (*see, e.g.*, P.I. Hrg. Trans. at 34: "There's no connection to an actual crime."), FOSTA is quite plainly limited to illegal prostitution, as it only authorizes charges "in a criminal prosecution brought under State law if the conduct underlying the charge would constitute a violation of section 2421A of title 18, United States Code, *and promotion or facilitation of prostitution is illegal in the jurisdiction where the defendant's promotion or facilitation of prostitution was targeted*." Section 4(a) (emphasis added). Moreover, conviction under section 2421A is precluded if "the promotion or facilitation of prostitution is legal in the jurisdiction where the promotion or facilitation was targeted." 18 U.S.C. 2421A(e).

Targeting activities that promote or facilitate illegal prostitution of another person is a legitimate government goal. To be overbroad, a statute's unconstitutional scope (if there is any) must be "substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292. Here, Plaintiffs have not alleged any legal activities to which the statute might plausibly be applied. Even if they had, Plaintiffs have not shown that potentially unconstitutional applications of FOSTA are substantial relative to its legitimate ones.

As such, Plaintiffs' overbreadth challenge should be dismissed. *See Sandvig*, 2018 WL 1568881, at *17.

**B.     Strict Scrutiny**

Count II alleges that "FOSTA as a whole targets online speech," Compl. ¶ 136, and, as a "content-based restriction of speech," *id.* ¶ 141, it fails strict scrutiny.

Strict scrutiny does not apply when the challenged law on its face does not regulate speech based on its content. *Cf. Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015) (where the law at issue was a restriction on posting signs that set forth different restrictions based on the message conveyed). Here, the challenged law on its face does not regulate speech at all, so there is no question of a content-based or viewpoint-based restriction. *See, e.g., Act Now to Stop War & End Racism Coal. & Muslim Am. Soc'y Freedom Found. v. Dist. of Columbia,* 846 F.3d 391, 403–04 (D.C. Cir.), *cert. denied sub nom. Muslim Am. Soc'y Freedom Found. v. Dist. of Columbia,* 138 S. Ct. 334 (2017) (noting the fact that it was necessary to look at sign to see if it was "event-related" did not make a sign posting regulation content-based).

The law at issue here, 18 U.S.C. § 2421A, regulates conduct (*i.e.,* owning, managing, or operating an interactive computer service with the intent to promote or facilitate the prostitution of another person), not speech. While speech-related activity such as advertising might be involved in assessing a potential violator's "intent to promote or facilitate," the intent, not the content, of such activity would be determinative.

**C.     Vagueness**

Count III alleges that FOSTA is unconstitutionally vague. In order to assert a facial vagueness challenge, a plaintiff must "demonstrate that the [challenged] law is impermissibly

vague in all of its applications." *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 497 (1982). Plaintiffs fail to meet this heavy burden.

Section 2421A does not extend to online speech that somehow makes sex work easier or safer. In fact, on its face, section 2421A does not prohibit communication or speech, and it certainly does not prohibit communication or speech by individuals or organizations that is not intended to encourage or facilitate an act of prostitution. Rather, it prohibits owning, managing, or operating an interactive computer service, or conspiring or attempting to do so, "with the intent to promote or facilitate the prostitution of another person."

Further, as previously noted, the terms "promote" and "facilitate" are not vague when viewed in context. They expressly refer to conduct tied to an act of prostitution. And these same terms are already used to describe the necessary *mens rea* for violations of section 1952(a) (prohibiting using any facility in interstate commerce "with intent to . . . otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity," where "unlawful activity" expressly includes illegal acts of prostitution). Courts have understood that "promote" and "facilitate" in section 1952 means to do something "that would cause the unlawful activity to be accomplished or that [would] assist[] in the unlawful activity in any way"—in other words, they refer to providing assistance to a specific legal act. *United States v. Bennett*, 95 F.3d 1158 (9th Cir. 1996); *see also* Aid and Abet, Black's Law Dictionary (10th ed. 2014) (defining "aid and abet" as "to assist or facilitate the commission of a crime, or to promote its accomplishment"); *cf. Rosemond v. United States*, 572 U.S. 65, 134 S. Ct. 1240, 1245 (2014) (an accomplice is liable as a principal when he gives "assistance or encouragement . . . with the intent thereby to promote or facilitate commission of the crime") (citing 2 W. LaFave, Substantive Criminal Law § 13.2, p. 337 (2003)). In sum, "[t]he likelihood

that anyone would not understand any of those common words seems quite remote." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

Moreover, this Circuit recognizes that a "scienter requirement may mitigate a law's vagueness especially with respect to the adequacy of notice to the complainant that his conduct is proscribed,'" *Nat'l Ass'n of Mfrs. v. Taylor*, 582 F.3d 1, 27-28 (D.C. Cir. 2009) (quoting *Village of Hoffman Estates,* 455 U.S. at 499), and that "the Supreme Court has found a 'knowing' requirement sufficient to ameliorate vagueness concerns," *id.* (citing *Hill*, 530 U.S. at 732). *See also Little Arm Inc. v. Adams*, 13 F. Supp. 3d 914, 924 (S.D. Ind. 2014) (explaining that a scienter requirement that "envisage[s] not only a knowing what is done but a knowing that what is done is unlawful, or, at least, so 'wrong' that it is probably unlawful" may mitigate a law's vagueness).

Lastly, Plaintiffs rely on alleged responses of third parties to FOSTA's enactment, but third parties' voluntary decisions were not required by FOSTA and are not fairly traceable to FOSTA. The possibility that third parties have misinterpreted the law does not mean the law is vague when the plain reading of the statute does not support their interpretation.

### D.    Removal of Statutory Immunity

Count IV alleges a first amendment violation based on FOSTA's removal of statutory immunity via amendments to 47 U.S.C. § 230.

As noted in Defendants' motion, the Communications Decency Act is a policy choice made by Congress to provide more protection than that offered in the First Amendment. *Klayman v. Zuckerberg*, 753 F.3d 1354, 1355-56 (D.C. Cir. 2014) ("Congress . . . made it the 'policy of the United States' to 'promote the continued development of the internet'") (quoting 47 U.S.C. § 230(b)); *cf. Nixon v. United States*, 938 F.2d 239, 255 (acknowledging that "the courts may well be barred from second-guessing Congress' fact-finding and policy judgments within the zones of

discretion assigned it by the Constitution"). Just as "Congress sets the policy in the statutes it enacts," *Center for Biological Diversity v. EPA*, 722 F.3d 401, 413 (D.C. Cir. 2013), so may it also amend that policy as it sees fit, within constitutional bounds.

### E.    Scienter Standard

Count V alleges a defective scienter standard with respect to 18 U.S.C. § 1591 and 18 U.S.C. § 2421A(b)(2). Compl. ¶¶ 165-67. Plaintiffs' attempts to create a constitutional issue with respect to the scienter standards fail because their interpretation of the statutory provisions at issue is unreasonable and not supported by the plan meaning of the terms.

With respect to section 1591, FOSTA simply defined a term in the statute ("participation in a venture") but changed nothing about section 1591's underlying *mens rea* (and the definition added by FOSTA includes an express *mens rea* element: "*knowingly* assisting, supporting, or facilitating[.]" (emphasis added). Both before and after the passage of FOSTA a violation of section 1591 requires specific knowledge of sex trafficking.

Moreover, section 2421A(b)(2) does not "further dispense[] with scienter." Compl. ¶ 167. This provision applies only to the penalty for an aggravated offense under section 2421A and the civil remedy in section 2421A, allowing sex trafficking victims to seek a civil recovery for such reckless conduct. In order to even be relevant, the Government must still establish the underlying liability, which requires specific intent to promote or facilitate the prostitution of another person.

### F.    *Ex Post Facto* Provisions

Count VI alleges that section 4(b) of FOSTA violates the Constitution's prohibition against *ex post facto* laws.

As noted in the motion to dismiss, Plaintiffs lack standing because they cannot demonstrate injury-in-fact with respect to Count VI. Dfts.' Motion at 21. Nowhere in Plaintiffs' opposition do they attempt to address this issue, and the Court may treat it as conceded.

Furthermore, it is not the case, as the Complaint alleges, that DOJ conceded there were constitutional issues. Compl. ¶ 174. In March 2018, DOJ expressed its support for the law because state prosecutors could avoid the *ex post facto* problem by not bringing suit for conduct occurring for the date of enactment. ECF No. 15-1. State prosecutors, of course, are not parties to this lawsuit (nor are potential civil litigants). section 4(b) of FOSTA, by its plain terms, only applies to changes to section 230(e), which was amended to permit civil claims under section 1595 in certain circumstances and state and local prosecutions for crimes that would constitute a violation of 18 U.S.C. §§ 1591 or 2421A, in certain prescribed circumstances. Simply put, the *ex post facto* provision does not apply to the federal defendants and should be dismissed.

## CONCLUSION

For the reasons set forth above and in Defendants' Motion to Dismiss, the Court should dismiss this action with prejudice.

Dated:  August 6, 2018

Respectfully submitted,

JESSIE K. LIU, D.C. Bar #472845
United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By:    */s/ Jason T. Cohen*
JASON T. COHEN, ME Bar #004465
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C. 20530
Phone: (202) 252-2523
Fax: (202) 252-2599
Email: jason.cohen@usdoj.gov

25