**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WOODHULL FREEDOM FOUNDATION, HUMAN RIGHTS WATCH, ERIC KOSZYK, JESSE MALEY, a/k/a ALEX ANDREWS, and THE INTERNET ARCHIVE,<br><br>    Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA and JEFFERSON B. SESSIONS, in his official capacity as ATTORNEY GENERAL OF THE UNITED STATES,<br><br>    Defendants. | Case No. 1:18-cv-1552-RJL |

**SUPPLEMENTAL BRIEF IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

The Government fundamentally misapplies the First Amendment in this case because it misapprehends how FOSTA regulates speech. *See* Tr. 21:13-19 ("Section 2421A … speaks about owning and managing or operating an interactive computer service … [s]o it's not directed at speech at all"); 29:23-24 ("this is not a statute directed at speech itself"); 30:4-6 ("[Section 2421A] is directed at the management, operation, ownership of an interactive website. It's not speech itself."); 30:15-16 ("the terms of the statute itself are not directed at speech"). Contrary to the Government's mistaken assumption, the only activity of an interactive computer service is *communication*, and FOSTA's amendments to Section 230 provide that the operator of such a service "*shall* be treated as the publisher or speaker of … information provided by another" on topics specified by the law. If FOSTA had been enacted pre-Internet and imposed penalties on anyone who "owns, manages, or operates [a printing press] or conspires or attempts to do so, with the intent to promote or facilitate the prostitution of another person," no one would doubt it was a regulation of the press and subject to strict First Amendment limits. The same standard applies to operation of an "interactive computer service," as the case law uniformly holds. *See* Opp. to MTD, Dkt. 19 at 29-31 (collecting cases); PI Mot., Dkt. 5 at 2-5, 33-37; PI Reply, Dkt. 17 at 21-22. This basic misunderstanding undermines the Government's overall defense of FOSTA, including its analyses of whether the law reaches Plaintiffs' activities, whether there is a realistic threat of prosecution or civil liability, and how those risks affect the Plaintiffs.

**1. FOSTA Is Broad Enough to Reach Plaintiffs' Activities**

a. The Government is wrong not just about the nature of FOSTA but its scope as well when it asserts that "the conduct [Plaintiffs] say [] they're going to undertake would not be a violation of the statute." Tr. 20:9-11. Unlike the Travel Act, Section 2421A does not require

violation of state prostitution laws as a predicate act.[1]  Yet even if FOSTA did require intent to "promote" or "facilitate" violation of a specific law, liability for aiding and abetting such a violation could attach to "all assistance rendered by words, acts, encouragement, support, or presence," even if that aid "relates to only one (or some) of a crime's phases or elements." *Rosemond v. United States*, 134 S. Ct. 1240, 1246-47 (2014) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 178 (1993)).[2]  The federal aiding and abetting statute, 18 U.S.C. § 2, reaches any person who, among other things, "counsels" another in the commission of a crime.  *Id.* at 1245-46.  "All that is necessary is to show some affirmative participation which at least encourages the principal offender to commit the offense."  Congressional Research Service, *Sex Trafficking: An Overview of Federal Criminal Law*, June 25, 2015, at 11 (quoting *United States v. Ali*, 718 F.3d 929, 936 (D.C. Cir. 2013) ("*CRS Report*").

FOSTA's broad reach is not limited by the principles articulated in *McDonnell v. United States*, 136 S. Ct. 2355 (2016).  *See* Tr. 37:13-23.  In *McDonnell*, the Supreme Court narrowly defined the term "official act" in the federal bribery statute, 18 U.S.C. § 201, so as not to handicap the everyday business of government.  136 S. Ct. at 2369-72.  But such reasoning cannot narrow FOSTA, which does not define the underlying offense ("prostitution of another person") as the violation of a specific law.  Yet even if the principle in *McDonnell* applied and required a tighter definition of "prostitution" (such as importing the Travel Act's requirement of violation of a state law), FOSTA would still criminalize online speech that merely "promotes" or

---

[1] *Compare* 18 U.S.C. § 1952(b) (defining "unlawful activity" as a violation of specific state laws), with 18 U.S.C. § 2421A (prohibiting owning, managing or operating "an interactive computer service … with the intent to promote or facilitate the prostitution of another").

[2] DOJ cites *Rosemond*, Tr. 31:5-11, but it does not support the Government's argument because that case dealt with charges under a law that required proof of intent to violate two separate elements of a specific underlying statute, unlike Section 2421A.  *See* 134 S. Ct. at 1245.

"facilitates" the offense. The Government posits that this language should be interpreted in line with *United States v. Bennett*, 1996 WL 477048 (9th Cir. 1996), which would apply FOSTA to "any act that would cause the unlawful activity to be accomplished or to assist in the unlawful activity in any way." *Id*. at *5. *See* Tr. 30:19-31:4; Mot. to Dismiss, Dkt. 15 at 11 (quoting *Bennett*, 1996 WL 477048, at *5). In this regard, Plaintiffs have alleged sufficient facts showing that their speech in support of sex workers falls within FOSTA's capacious terms.[3]

b. The Government's claim that the law would not reach Plaintiffs' activities because of strict *mens rea* requirements is also wrong. *E.g*., Tr. 26:6-8. Even under an intent standard (as in Section 2421A), Plaintiffs Woodhull, HRW, and Andrews all use and operate interactive computer services with the intent to advocate for, and to provide assistance to sex workers— including those involved in prostitution. That suffices to support a prosecution under *Bennett*. In particular, those who advocate decriminalization have reason for concern, as such advocacy may be considered evidence of intent to facilitate a violation of the law. *See* Eugene Volokh, *Crime-Facilitating Speech*, 57 STAN. L. REV. 1095, 1187-90 (March 2005) ("an intent test will tend to deter ideological advocacy, and not just intentionally crime-facilitating speech").

Additionally, the anti-trafficking provision of Section 1591 does not require intent to promote trafficking, but only "knowing" participation "in a venture" in "reckless disregard" that

---

[3] *See* Opp. to MTD, Dkt. 19 at 21-26 (describing various forms of advice and support for sex workers); PI Reply, Dkt. 17 at 3-5 (describing activities of Woodhull, HRW and Andrews, and how they have been chilled); PI Mot., Dkt. 5 at 12-15 & Declarations (same). Woodhull's annual Sexual Freedom Summit, now in its ninth year, hosted some 400 attendees including human rights activists, sexuality educators and researchers, professionals from the legal and medical fields, authors, leaders of the sexual freedom movement, and organizational partners, and included an instructional series of workshops for sex workers. *See* https://www.woodhullfoundation.org/our-work/sexual-freedom-summit; https://www.guidestar.org/profile/11-3681116.

trafficking may have occurred.  18 U.S.C. § 1591(a).  This liability sweeps broadly.  The term "knowingly" means only that an act was performed voluntarily and intentionally, and only requires proof of the facts that constitute the offense, not knowledge of the lawfulness of the action.  *Bryan v. United States*, 524 U.S. 186, 193 (1998).  Section 1591(a)(2) prohibits benefitting financially from a venture "or … receiving *anything of value*," which may include "intangibles."  *CRS Report* at 8.  *See United States v. Marmolejo*, 89 F.3d 1185, 1191-93 (5th Cir. 1996) (collecting cases interpreting criminal laws to show that "anything of value" includes "intangibles," including "information"); *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1281 (W.D. Wash. 2012) ("the undefined term 'something of value' means anything that can be traded on a free market").[4]  Previously, Section 1591 defined "venture" as "any group of two or more individuals associated in fact, whether or not a legal entity," but FOSTA changed the definition of participating in a venture to encompass "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)."  FOSTA § 5.

The Government errs in suggesting Section 1591 employs a higher *mens rea* standard, pointing to *Backpage.com, LLC v. Lynch*, 216 F. Supp. 3d 96 (D.D.C. 2016).  *See* Tr. 24:17-25:11.[5]  That holding interpreted the law *before* FOSTA.  Congress amended Section 1591 to broaden "participation in a venture" to undo the *mens rea* standard articulated in *Lynch*.  It also adopted the "aggravated" offense of Section 2421A(b).  The House Report on FOSTA explained

---

[4] Woodhull, HRW, and Andrews all receive information from sex workers that they utilize through interactive computer systems to provide online materials to advocate on behalf of sex workers and to provide information and online tools to assist with harm reduction, personal safety, strategies for use of emergency services, avoidance of legal jeopardy, and other issues.

[5] The district court decision in *Lynch* was not appealed because the plaintiff in that case achieved its objective:  judicial clarification that an ambiguous *mens rea* provision relating to "advertising" required proof of specific knowledge of specific ads.  But that clarification is why FOSTA expressly adopted a laxer standard for all other "participation."

4

the reason for these changes: proving specific knowledge was too difficult, so Congress had to adopt a new statute that "targets promotion and facilitation of prostitution" based on the premise that "[p]rostitution and sex trafficking are inextricably linked." H.R. Rep. No. 115-572 at 5. The Government confirmed this point (albeit inadvertently) when it described the "signing statement" as "the best guidance as to what [DOJ] sees as the law and how it interprets it." Tr. 27:21-28:4. That statement explains that FOSTA was adopted because, under prior law, prosecutors were "limited by the high evidentiary standard needed to bring federal criminal charges."[6] No more.

These changes create a particular threat of liability for online platforms that host third-party speech. The Government claims organizations like Plaintiff Internet Archive need not worry about prosecution because there is no possibility of proving *mens rea*. Tr. 31:23-32:16. But under the reckless disregard standard FOSTA applies to both Section 1591(a) and Section 2421A(b), and even under an intent standard, online platforms have no clear way to avoid liability without monitoring and over-censoring users' posts.[7] Platforms that lack the resources to monitor user-generated content, such as those represented by Plaintiffs here, face enormous risks if they continue to operate. This burden led the Supreme Court to find standing for book stores in *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 392 (1988) (having to take "significant and costly compliance measures or risk criminal prosecution"). *See also McKenna*,

---

[6] *See* Letter from Prim F. Escalona to Mick Mulvaney, Director, Office of Management and Budget, Dkt. 15-1 (explaining that FOSTA "provides for an aggravated felony if the defendant recklessly disregards that the crime contributed to sex trafficking as prohibited by 18 U.S.C. § 1591(a)," and that Section 1591's definition of "participation in a venture" was amended to "ensure federal liability" and "is not intended to be limiting").

[7] H.R. Rep. No. 115-572 at 9 (unlawful intent will not be present "where the material appears despite the operator's good faith efforts to moderate, remove, or restrict such material from appearing on or through the facility"). Civil liability creates even greater pressure to actively police users' speech, as a defendant may be liable under a reckless disregard standard if it does not "seek out the facts that would be reasonable and prudent under the circumstances." *CRS Report* at 6.

881 F. Supp. 2d at 1270 (Internet Archive has standing to challenge anti-trafficking law). Law enforcement officials have used such liability risks as a *de facto* "notice and takedown" regime for online intermediaries. *See* Opp. to MTD, Dkt. 19 at 14-18 (collecting cases). Plaintiffs Woodhull, HRW, Internet Archive, and Andrews face these risks from hosting third-party content. Separately, Plaintiff Eric Koszyk has standing because FOSTA's resulting over-censorship deprived him of an advertising platform.

    c. Contrary to the Government's claim at oral argument, U.S. attorneys are not the only ones empowered to pursue charges under FOSTA. Tr. 22:8-9. FOSTA permits state and local prosecutors to bring charges under state laws that mirror Sections 2421A and 1591 and removes Section 230 immunity that previously would have barred them.[8] All 50 states have laws that correspond to Section 1591. *See CRS Report* at 1 n.1 (listing state statutes). Almost all states ban prostitution as well through various laws. In particular, Virginia prohibits "aiding" prostitution by various means, including "giv[ing] any information or direction to any person with intent to enable such person to commit an act of prostitution." Va. Code § 18.2-348.[9] This kind of state "facilitating prostitution" claim is what Cook County Sheriff Thomas Dart leveled against Craigslist in 2009, *see Dart v. Craigslist*, 665 F. Supp. 2d 961, 961 (N.D. Ill. 2009), and "human trafficking" was among the grounds on which Mississippi Attorney General James Hood pursued Google in 2014. *See Google v. Hood*, 822 F.3d 212, 218-19, 227 (5th Cir. 2016). *See*

---

[8] DOJ admitted this point later in the argument. Tr. 28:9-15. State Attorneys General also are empowered to bring civil *parens patriae* actions pursuant to 18 U.S.C. § 1595. FOSTA § 6. Importantly, FOSTA purports to impose liability for conduct occurring even before the law was signed. FOSTA § 4(b).

[9] The Court asked about the potential for prosecution in the Eastern District of Virginia where Woodhull's Sexual Freedom Summit is physically located. Because Section 2421A applies to the operation of an online service, Woodhull faces potential prosecution in any district within which Woodhull's online content from the Summit is available.

6

Opp. to MTD, Dkt. 19 at 6-13 (describing multiple pathways for potential liability under FOSTA).

### 2. Plaintiffs Face a Credible Threat Under FOSTA

The Government's subtle shift from arguing it *could not* prosecute Plaintiffs under FOSTA, to claiming it *would not* do so, does not change the analysis. DOJ's promise that it has "no intent of prosecuting anyone from Woodhull [] for their summit," Tr. 23:17-19, is gratifying, but legally meaningless. First, it is not the standard for determining standing. *Sandvig v. Sessions*, --- F. Supp. 3d ---, 2018 WL 1568881, at *6, *9 (D.D.C. Mar. 30, 2018). *See* Opp. to MTD, Dkt. 19 at 3-6. Second, it says nothing about threats posed by possible actions by state and local prosecutors and private litigants. *See id*. at 6-12.

The Government's analogizing to needle-exchange programs to assert that Plaintiffs' advocacy and harm reduction speech will never be subject to prosecution undermines its argument. The Government stated that Plaintiffs faced no reasonable fear of prosecution for their advocacy, even if they facilitated the prostitution of another person, because no one "in their right mind" would "prosecut[e] a health-services group for handing out needles to heroin users and argu[e] that that was somehow promoting heroin use." Tr. at 23:20-24:1. But the DOJ provides no criminal law exemption for harm reduction efforts. In December, the U.S. Attorney for the District of Vermont announced that "safe injection facilities," although motivated by a desire to save lives, "would encourage and normalize heroin use" and "would violate federal law."[10] DOJ has issued similar threats in other jurisdictions.[11] Likewise, local prosecutors have

---

[10] Statement of the U.S. Attorney's Office Concerning Proposed Injection Sites, United States Attorney's Office, District of Vermont (Dec. 13, 2017) (https://www.justice.gov/usao-vt/pr/statement-us-attorney-s-office-concerning-proposed-injection-sites).

[11] *See*, *e.g*., Dominic Holden, *The Trump Administration Says Proposed Heroin Injection Sites Could Face "Legal Action*,*"* BUZZFEED NEWS, Feb. 14, 2018 (https://www.buzz-

7


convicted needle exchange providers on the theory that distributing clean needles promotes or facilitates illegal drug use.[12]  Plaintiff HRW has documented the legal risks faced by health workers providing needle exchange programs to combat HIV.[13]

Plaintiffs Woodhull, HRW and Andrews thus reasonably fear prosecution based on their efforts to assist sex workers.  Police and prosecutors often view efforts to increase sex worker safety as facilitating prostitution.  For example, HRW has documented how police departments in New York City, Washington, D.C., Los Angeles, and San Francisco treat condom possession as evidence of prostitution, and have threatened or harassed outreach workers seeking to prevent HIV infection by distributing condoms to sex workers.[14]  Plaintiffs' credible fear of prosecution is also based on the Government's official opposition to advocacy that would legitimize sex work, including its efforts to muzzle organizations committed to reducing the spread of diseases such as HIV/AIDS.  *See Agency for Int'l Dev. v. Alliance for Open Soc'y, Inc.*, 133 S. Ct. 2321 (2013).  Congress followed a similar path in passing FOSTA, stating in its findings that, sex

---

feednews.com/article/dominicholden/the-trump-administration-says-proposed-heroin-injection); Matier & Ross, *Plan for Safe Injection Site Gets Dose of Reality Over Federal Drug Laws*, SAN FRAN. CHRON., July 16, 2018 (https://www.sfchronicle.com/bayarea/matier-ross/article/Federal-drug-laws-could-stand-in-the-way-of-safe-13074350.php).

[12] *State v. Sorge*, 591 A.2d 1382 (N.J. Super. 1991) (finding needle-exchange providers, "albeit for the highest motives, were engaged in *facilitating* illegal drug use") (emphasis added); *see also State v. McCague*, 714 A.2d 937 (N.J. Super. App. Div. 1998) (convicting needle exchange provider for violating drug paraphernalia law); *Commonwealth v. Leno*, 616 N.E.2d 453 (Mass. 1993) (same).

[13] HRW, *Injecting Reason:  Human Rights and HIV Prevention for Injection Drug Users California:  A Case Study*, Ch. V-VI (Sept. 2003) (https://www.hrw.org/reports/2003/usa0903/7.htm#_Toc49918389).

[14] HRW, *Sex Workers at Risk: Condoms as Evidence of Prostitution in Four US Cities* (July 19, 2012) (https://www.hrw.org/report/2012/07/19/sex-workers-risk/condoms-evidence-prostitution-four-us-cities).

work and sex trafficking are "inextricably linked," suggesting that advocacy on behalf of sex workers is one and the same as advocacy on behalf of sex trafficking.  Compl. ¶¶ 112, 130.

The recent history of Internet litigation supports these concerns.  Law enforcement officials have repeatedly threatened online intermediaries with prosecution, and civil litigants have long sought to impose liability on them based on content they find objectionable.  *See* Opp. to MTD, Dkt. 19 at 13-19.  In various cases, law enforcement authorities have used their own allegations regarding the presence of illegal material on platforms as a proxy for "knowledge" by the service providers, and have leveraged such allegations to accomplish off-the-books censorship.  *See id*. at 14-18.  Under these circumstances, FOSTA's passage understandably had widespread chilling effects.  Compl. ¶¶ 52-125.

### 3. Sources of Possible Legal Action Under FOSTA

Argument on the Motion frequently turned to who may be likely to enforce FOSTA against Plaintiffs.  Tr. 9:10-21, 11:5-25, 16:17-17:2, 22:3-5, 23:13-15, 38:22-39:3.  But in pre-enforcement First Amendment challenges, the issue is not whether officials *will* apply the law to a plaintiff's speech, it is whether they *could* do so, regardless of the likelihood of that occurring.  If a content-based law "can" impose liability under its broad terms, courts find standing even for scenarios the Government deems "hyperbolic."  *See* PI Reply, Dkt. 17 at 11 & n.15; Opp. to MTD, Dkt. 19 at 8 & n.4 (each quoting *ACLU v. Reno*, 929 F. Supp. 824, 870-72 (E.D. Pa. 1996) (Dalzell, J.), *aff'd*, 521 U.S. 844 (1997)).  Here, FOSTA creates multiple avenues to impose liability for federal and state prosecutors, and private litigants as well.  In this regard, the history of enforcement actions against online speakers and intermediaries, including actions targeting speech relating to prostitution or alleging "trafficking," strongly indicates Plaintiffs have reason to be concerned.  *See* Opp. to MTD, Dkt. 19 at 13-19.

Federal prosecutors may charge directly under Section 2421A, which provides new offenses with which to pursue interactive computer services. They may prosecute under Section 1591 as well, which was amended by FOSTA to expand its reach to include "participation in a venture" based on "reckless disregard" of activities that may "promote" trafficking. *See* Opp. to MTD, Dkt. 19 at 6-7 (quoting 18 U.S.C. § 1591(a), (c), (e)(4), § 2421A(a)-(b)). While state attorneys general or local prosecutors admittedly cannot bring "prosecutions" directly under FOSTA, the Act empowers them to enforce corresponding state laws. By amending Section 230 to eliminate federal immunity for such charges, FOSTA § 4 (adding 47 U.S.C. § 230(e)(5)(B)-(C)), FOSTA now allows state prosecutions that were formerly preempted.[15] Additionally, FOSTA allows state AGs to bring *parens patriae* actions on behalf of state residents anytime an AG has "reason to believe that [their] interest … has been or is threated or adversely affected by any person who violates Section 1591." FOSTA § 6(a) (adding 18 U.S.C. § 1591(d)). Private litigants also can "enforce" FOSTA because it removes Section 230 immunity for suits brought under Section 1595, which authorizes civil actions for damages and attorney fees for violations of Section 1591. *See* FOSTA § 4 (enacting 47 U.S.C. § 230(e)(5)(A)).

**CONCLUSION**

Questions at the hearing focused predominantly on three issues: Can FOSTA be interpreted to reach Plaintiffs' activities, do Plaintiffs face a credible threat of prosecution, and are Plaintiffs likely to be adversely affected by the law? The answer to each of these is an unequivocal "yes." This Court should hold that Plaintiffs have standing and issue the requested preliminary injunctive relief.

---

[15] *See* Opp. to MTD, Dkt. 19 at 9, 19. *See also People v. Ferrer*, 2016 WL 7237305 (Cal. Super. Ct. Dec. 9, 2016); *People v. Ferrer*, No. 16FE024013 (Cal. Super. Ct. Aug. 23, 2017) (each dismissing state charges against website operators on Section 230 and First Amendment grounds); *Dart v. Craigslist*, 665 F. Supp. 2d at 961.

DATED:  August 6, 2018

                                      Respectfully submitted,


                                        /s/ Robert Corn-Revere
ROBERT CORN-REVERE
D.C. Bar No. 375415
RONALD G. LONDON
D.C. Bar No. 456284
**Davis Wright Tremaine LLP**
1919 Pennsylvania Ave. NW, Suite 800
Washington, D.C. 20006
Telephone: (202) 973-4200
Facsimile: (202) 973-4499
Email: bobcornrevere@dwt.com
       ronnielondon@dwt.com


LAWRENCE G. WALTERS
Florida Bar No.: 0776599
*Pro Hac Vice*
**Walters Law Group**
195 W. Pine Ave.
Longwood, FL 32750-4104
Telephone: (407) 975-9150
Facsimile: (408) 774-6151
Email: Larry@FirstAmendment.com
       Paralegal@FirstAmendment.com


AARON MACKEY
D.C. Bar No. 1017004
DAVID GREENE
(admitted in California)
*Pro Hac Vice*
CORYNNE MCSHERRY
(admitted in California)
**Electronic Frontier Foundation**
815 Eddy Street
San Francisco, CA 94109
(415) 436-9333
Email:  amackey@eff.org
       davidg@eff.org

11

DAPHNE KELLER
Cal. Bar No. 226614
**Stanford Law School Center
 for Internet and Society**
559 Nathan Abbott Way
Stanford, CA 94305-8610
(650) 723-1417
Email:  daphnek@law.stanford.edu

Attorneys for Plaintiffs

12