IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

```
WOODHULL FREEDOM FOUNDATION,        )
ET AL.,                             )
                                    )
          Plaintiffs,               )     CV No. 18-1552
                                    )
       vs.                          )     Washington, D.C.
                                    )     July 19, 2018
UNITED STATES OF AMERICA, ET AL.,   )     4:00 p.m.
                                    )
          Defendants.               )
                                    )
_____     )
```

TRANSCRIPT OF MOTION FOR PRELIMINARY INJUNCTION HEARING
BEFORE THE HONORABLE RICHARD J. LEON
UNITED STATES SENIOR DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:            Robert Corn-Revere
                               DAVIS WRIGHT TREMAINE LLP
                               1919 Pennsylvania Avenue, NW
                               Suite 800
                               Washington, D.C. 20006
                               (202) 973-4225
                               bobcornrevere@dwt.com


For the Defendants:            Jason T. Cohen
                               U.S. ATTORNEY'S OFFICE
                               Civil Division
                               555 Fourth Street, NW
                               Washington, D.C. 20530
                               (202) 252-2523
                               jason.cohen@usdoj.gov

APPEARANCES CONTINUED

Court Reporter:                    William P. Zaremba
                                   Registered Merit Reporter
                                   Certified Realtime Reporter
                                   Official Court Reporter
                                   U.S. Courthouse
                                   333 Constitution Avenue, NW
                                   Room 6511
                                   Washington, D.C. 20001
                                   (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

```
 1                    P R O C E E D I N G S

 2          DEPUTY CLERK:  All rise.  The United States

 3   District Court for the District of Columbia is now in

 4   session, the Honorable Richard J. Leon presiding.  God save

 5   the United States and this Honorable Court.  Please be

 6   seated and come to order.

 7          Your Honor, this afternoon we have Civil Action

 8   No. 18-1552, Woodhull Freedom Foundation, et al., versus the

 9   United States of America, et al.

10          Will counsel please approach the lectern, identify

11   yourselves for the record, and name the party or parties

12   that you represent, please.

13          MR. COHEN:  Good afternoon, Your Honor.

14   Jason Cohen on behalf of the defendants.

15          With me at counsel table is Alexander Gelber from

16   the Child Exploitation and Obscenity Section as agency

17   counsel.  Thank you.

18          THE COURT:  Welcome.

19          MR. CORN-REVERE:  Robert Corn-Revere, Davis,

20   Wright, Tremaine for the plaintiffs.

21          I'll let other counsel introduce themselves as

22   well.

23          MR. GREENE:  David Greene, Electronic Frontier

24   Foundation.

25          THE COURT:  Welcome.
```

1          MR. LONDON:  Ronnie London, Davis, Wright,

2  Tremaine.

3          THE COURT:  Welcome.

4          MR. LONDON:  Lawrence G. Walters, Walters Law

5  Group.

6          THE COURT:  All right, Counsel.  We're here for a

7  PI argument.  The moving party can have 15 minutes, five for

8  rebuttal.  Opposing party has 20 minutes.

9          It's your case.

10          MR. CORN-REVERE:  Good afternoon, Judge Leon, and

11  if it may please the Court.

12          I think the papers are fairly self-explanatory and

13  raise a number of First Amendment issues, but I think I'll

14  focus on, first, just ones that are necessary to resolve the

15  case:

16          Injunctions --

17          THE COURT:  Resolve the case or to resolve the PI?

18          MR. CORN-REVERE:  I'm sorry, Your Honor.  To

19  resolve the motion before you.

20          An injunction should be granted if at least one of

21  the plaintiffs has standing and we are likely to succeed on

22  any of the substantive claims.

23          And so let me just identify a couple of the

24  top-line issues and then we can talk about some of the

25  others.

1          In terms of standing, I think each of the

2    plaintiffs have demonstrated that they have a reasonable

3    concern about prosecution under this new law.

4          THE COURT:  You represent all the plaintiffs?

5          MR. CORN-REVERE:  Yes, Your Honor.

6          THE COURT:  You represent them all?

7          MR. CORN-REVERE:  Yes.

8          THE COURT:  Okay.

9          MR. CORN-REVERE:  Along with co-counsel Electronic

10   Frontier Foundation.

11         THE COURT:  Along with who?

12         MR. CORN-REVERE:  Electronic Frontier Foundation.

13         THE COURT:  Okay.

14         MR. CORN-REVERE:  Let me just mention first,

15   Jesse Male, also known in the complaint as Alex Andrews.

16   She submitted a declaration.

17         And one of the things that she discusses is an

18   online presence she has called "Rate That Rescue" that

19   provides assistance to sex workers by providing information

20   about bad dates and so on.  This allows third parties to

21   submit information to the Website that warns other sex

22   workers about dangerous situations and is designed to

23   protect -- provide information that will help keep women

24   safe.

25         If you think about the areas in which there has

1    been substantial litigation under Section 230 of the

2    Communications Decency Act, where it's provided immunity,

3    one of the top areas -- there are dozens of cases involving

4    rating sites, the very kind of third-party speech that

5    people often object to and feel they're injured by, and it's

6    resulted in a substantial amount of litigation.

7            It's not difficult to imagine that rescue

8    organizations that don't like the ratings they get will file

9    suit under the new provisions of FOSTA that remove immunity

10   under Section 230.

11           As a matter of fact, there was just a decision on

12   one of these rating sites three weeks ago, decided by the

13   California Supreme Court in *Hassell versus Bird*.  This is

14   precisely the kind of risk that the plaintiffs are going to

15   face and have faced already under FOSTA.

16           We also indicate in the declaration of Ricci Levy

17   from Woodhull Freedom Foundation that they provide workshops

18   for sex workers, again, to provide safety information, to

19   advocate on their behalf.  And that is a sort of thing --

20   they are concerned that that would be considered by some to

21   be promotion or facilitation of prostitution, in violation

22   of the law.

23           THE COURT:  What's that got to do with this event

24   that you're hosting in August?

25           MR. CORN-REVERE:  That is the very kind of

```
 1    workshop that they are hosting at the August summit,

 2    beginning August 2nd through the 5th.

 3              They have an online presence.  They've been trying

 4    to promote the summit and have been hampered in doing so

 5    because of concern over prosecution under FOSTA.

 6              And each --

 7              THE COURT:  Why is it called a summit?

 8              MR. CORN-REVERE:  Why do they call it a summit?

 9    I don't know the answer to that, Your Honor.  But that is

10    the name that they have chosen.

11              And it's an annual event.  It has presence --

12              THE COURT:  This is the first time they've done

13    it?

14              MR. CORN-REVERE:  I'm sorry?

15              THE COURT:  Is this the first time they have done

16    it?

17              MR. CORN-REVERE:  No, it's not.

18              But it's the first time --

19              THE COURT:  They do it every year?

20              MR. CORN-REVERE:  They do it every year.

21              THE COURT:  So this has been in the planning for

22    over a year?

23              MR. CORN-REVERE:  Yes.

24              And the planning for this year, as indicated in

25    the complaint, began earlier in the year and became hampered
```

1    once they became aware of the passage of FOSTA.

2            They have lost one --

3            THE COURT:  When was FOSTA passed?

4            MR. CORN-REVERE:  I'm sorry, Your Honor?

5            THE COURT:  When was FOSTA passed?

6            MR. CORN-REVERE:  It was passed at the end of

7    March, it was signed into law in April.

8            And we've seen an immediate impact of the passage

9    of the law ever since.

10           Immediately upon its passage by the Senate,

11   Craigslist announced it was closing down its entire personal

12   section, including the strictly platonic section.  It closed

13   its ability to post in therapeutic services, which affected

14   our plaintiff, Eric Koszyk.

15           And we have seen, as indicated in the declaration

16   of Kate D'Adamo, widespread effects across the Web, I would

17   say unprecedented censorial effects.

18           THE COURT:  How many people come to this summit?

19           MR. CORN-REVERE:  Probably 100.

20           THE COURT:  How many organizations do they

21   represent, if any?

22           MR. CORN-REVERE:  There are people from different

23   organizations.  I'm not certain how many organizations also

24   participate.

25           One organization that is a separate organization

1    called the DesireeAlliance, also has an annual conference

2    that it hosts for sex workers.  They're more strictly

3    focused on that area.  That was scheduled for July, and that

4    conference was canceled out of concern because of FOSTA.

5            There was a consideration of whether or not some

6    of those workshop sessions could be picked up in the

7    Woodhull Freedom Foundation sessions, but those plans were

8    scuttled because they couldn't take the risk under this new

9    law.

10           I think each of these concerns provides sufficient

11   grounds for the plaintiffs to have standing, and as a

12   consequence, it has to be analyzed under the

13   First Amendment.

14           Now, we provide a number of different reasons why

15   we think that it's unconstitutional, but let me focus on

16   just one, because I think it's sort of an easy one that the

17   Justice Department has provided for us in their opposition,

18   and that is the strict scrutiny argument.

19           The Justice Department says that FOSTA is nothing

20   new; that this is something that could have been prosecuted

21   under the Travel Act.  And as they have put it at page 19 of

22   their brief, before FOSTA was enacted, Websites could have

23   been prosecuted for those same or substantially similar

24   crimes under the Travel Act.

25           Now, they say that the key innovation of the law

1   was simply that it changes who can bring suit.

2           Now, we disagree with their characterization of

3   the Travel Act, and I'll get into that in a little bit.

4           But even if you accepted everything that they say

5   about it, this is the reason why the Court should find there

6   is substantial likelihood of success, because the law cannot

7   satisfy strict scrutiny.  It is a content-based change in

8   the law because -- and so it has to --

9           THE COURT:  Who do you think is going to prosecute

10  him?

11          MR. CORN-REVERE:  I'm sorry?

12          THE COURT:  Who do you think is going to prosecute

13  the people attending this conference -- or summit?  Excuse

14  me.

15          MR. CORN-REVERE:  Basically, anyone who wants to.

16          THE COURT:  Whoa, whoa, whoa, whoa.  That's too

17  clever by half.

18          MR. CORN-REVERE:  Okay.  Let me just --

19          THE COURT:  The U.S. Attorney in the Eastern

20  District of Virginia?  Let's start there.

21          MR. CORN-REVERE:  If --

22          THE COURT:  You're talking about a federal

23  offense, right?

24          You're alleging that they're at risk of being

25  prosecuted under a federal law, right?

1           MR. CORN-REVERE:  Under a federal law.

2           But the law also authorizes state attorney

3    generals to bring suit.

4           It also authorizes --

5           THE COURT:  To bring suit?  That's not

6    prosecution.

7           MR. CORN-REVERE:  I'll try and be more precise

8    with my language, Your Honor.

9           THE COURT:  Good.  That'll help.

10          MR. CORN-REVERE:  It authorizes state attorney

11   generals and local prosecutor to prosecute.

12          It allows civil litigants to bring suit.

13          THE COURT:  Well, what's --

14          MR. CORN-REVERE:  If you look --

15          THE COURT:  Whoa, whoa.  Slow down.

16          What Virginia statute are you concerned about

17   these people being prosecuted, state statute?

18          MR. CORN-REVERE:  But the prosecution would not be

19   under a state statute.  It would be under authorization

20   under FOSTA, which --

21          THE COURT:  Then there's no way the state

22   attorney general can bring a prosecution under a federal

23   statute.  That's just not -- that is not happening.

24   You know that.  You know better than that.

25          How about Main Justice?

1          MR. CORN-REVERE:  I think we should ask them.

2          THE COURT:  You've read their brief.

3          MR. CORN-REVERE:  I have read their brief.

4          THE COURT:  They say that there's no basis to

5   believe that anyone is going to be prosecuted.

6          MR. CORN-REVERE:  I know.

7          It's the same argument they made under the

8   Communications Decency Act when they said that allowing --

9   or creating a federal crime for indecency.  It was fanciful

10  to consider that the U.S. Attorney would go after anyone for

11  posting online.

12          And the examples that were given at the time

13  included the Carnegie library, saying they were concerned

14  about putting their card catalog online, because it would

15  contain language that might run afoul of the statute.

16          The rape organization that was trying to advocate

17  against prison rape was worried that allowing inmates to

18  post their stories online would run afoul of the law.

19          In all of those cases, the Federal Government

20  assured people:  You do not have to worry about anyone

21  prosecuting you because we will not interpret the law in

22  that way.

23          In the case of --

24          THE COURT:  And they were prosecuted?

25          MR. CORN-REVERE:  No, they were not prosecuted,

1   but the Court ruled that they had sufficient standing

2   because of their concern over the possibility of being

3   prosecuted.

4         THE COURT:  I'm asking you a different question.

5         Do you have any examples of situations analogous

6   to this where people were prosecuted?

7         MR. CORN-REVERE:  What I do have is a history of

8   advocacy against online postings in the anti-trafficking

9   community threatening litigation that led to state laws

10  being adopted, trying to prohibit online classified ads

11  services.

12        THE COURT:  But, you know, sir, you're here --

13  Mr. Revere, you're here seeking extraordinary relief prior

14  to an event that's supposed to take place in a matter of a

15  few weeks.

16        Indeed, you're the one who chose to file it as

17  late as you did, June 28th I think was the date that it was

18  filed, off the top of my head.

19        MR. CORN-REVERE:  That is the date, Your Honor.

20        THE COURT:  June 28th.

21        Under our rules, as you well know, a hearing isn't

22  necessary to be scheduled for 20 days, within 20 days.

23        You don't possibly think you're going to get an

24  opinion out of this Court in the next ten days?

25        That's not even theoretically possible on matters

1    of novel issues, novel statutes.

2            There's no way that can be done.  You could have

3    filed this back in April or May.

4            You planned this conference a year in advance.

5            MR. CORN-REVERE:  We may have planned the

6    conference a year in advance, but the law didn't exist until

7    the end of March.

8            THE COURT:  You knew the law was going through the

9    system, was percolating through the system.  Your people

10   follow all those things, right?

11           Don't tell me your clients were caught by

12   surprise.

13           MR. CORN-REVERE:  Their people were involved in

14   the legislative discussions.

15           THE COURT:  Of course they were.  They knew it was

16   coming.  They knew how it was heading through the

17   legislative process.

18           You had plenty of time to get your briefs ready

19   way back in the spring.  You didn't.  You filed it in late

20   June.

21           You can't come into this court and expect you're

22   going to get an opinion in two weeks.  That's not even

23   realistic.

24           MR. CORN-REVERE:  Well, Your Honor --

25           THE COURT:  Jumping the line.  That's what you're

```
 1   doing.  You're jumping the line.
 2          MR. CORN-REVERE:  That wasn't our intent,
 3   Your Honor.
 4          THE COURT:  Well, it's obvious that that's what
 5   you're doing.
 6          MR. CORN-REVERE:  We put together the arguments
 7   and the plaintiffs that were --
 8          THE COURT:  You're putting it together at your
 9   pace and convenience.
10          MR. CORN-REVERE:  As quickly as we could,
11   Your Honor.
12          THE COURT:  What else have you got?  You've got
13   three minutes left in your time.
14          MR. CORN-REVERE:  Okay.
15          All I can say is that for similar kinds of
16   concerns, when you have broad regulation of Internet speech,
17   courts have been willing to consider how a law might be
18   enforced.
19          This was exactly the situation, not so much in the
20   online world but in looking at the breadth of legislation,
21   in United States versus Stevens, when you had a law against
22   crush videos.
23          And you even had a signing statement in that case,
24   where the President said this would never be enforced
25   against general websites that are against anyone but bizarre
```

```
1    aficionados of fetish videos; nevertheless, the United
2    States government brought prosecution against someone who
3    did documentaries about training pit bulls and wrote
4    treatises on training pit bulls.  That case went to the
5    Supreme Court.
6              And because --
7              THE COURT:  The prosecutions here, though, would
8    have to be for very specific conduct that promoted sexually
9    illegal conduct, right?
10             MR. CORN-REVERE:  Except the law is written so
11   that anything that promotes or facilitates prostitution, and
12   not a specific crime, which is what distinguishes it from
13   the Travel Act, can be subject to prosecution.
14             And this is an area where there has been
15   significant advocacy, both by government entities and by
16   private citizens.
17             THE COURT:  Give me an example of a case in the
18   Eastern District of Virginia where this event is supposed to
19   take place, where they've interpreted the law in the way
20   that you suggest?
21             MR. CORN-REVERE:  I can't give you a case that is
22   that specific.
23             THE COURT:  There is no such a case.
24             How about Main Justice has prosecuted in another
25   jurisdiction where they've issued A -- where they've brought
```

```
 1    a prosecution, interpreting the law as broadly as you

 2    suggest they will, are going to do in this case?

 3               MR. CORN-REVERE:  This law?

 4               I mean, again, this law is brand new.

 5               THE COURT:  It doesn't have to be this law.

 6               Take another statutory situation where they've

 7    interpreted "promote and facilitate" as broadly as you

 8    suggested.

 9               MR. CORN-REVERE:  In the Western District of

10    Pennsylvania.

11               THE COURT:  You just told me a second ago no one's

12    prosecuted.

13               Has anyone prosecuted?

14               MR. CORN-REVERE:  Not --

15               THE COURT:  Criminal prosecution.

16               MR. CORN-REVERE:  No.

17               I was mentioning a different law, because I was --

18    I mentioned this is a pre-enforcement challenge.  We don't

19    have anyone who has yet been prosecuted.

20               But that is not a legal requirement for granting

21    injunctive relief, where you have an overbroad statute that

22    regulates speech.

23               Where you have that, if you have a credible threat

24    that the law could be interpreted in this way, then that's

25    grounds for granting injunctive relief.
```

1           And as I was mentioning, the Western District of

2    Pennsylvania, involving the *Stevens* case, again, involving

3    the issue of crush videos, the first prosecution brought by

4    the Justice Department was in a situation that was expressly

5    disavowed by the Presidential signing statement for that

6    law.

7           Here, you have an area that has been actively

8    subject of litigation, and, more recently, prosecutions

9    involving sex trafficking and postings that are said to

10   contribute to sex trafficking, for the past ten years.

11          And so that's the reason why you have had

12   widespread chilling effect across the Internet with the

13   passage of this law, because people look at what's happened

14   with this kind of advocacy nationwide, both by state

15   attorneys general, by prosecutors, and by private litigants

16   that have essentially driven this content from the Web.

17          And so it doesn't relate just to this.  You look

18   at the breadth of the statute that was being created.

19          And here, you have the operative precisions of --

20          THE COURT:  Has any prosecution been brought under

21   this statute yet?

22          MR. CORN-REVERE:  Not under this statute yet.

23          It has been added to some civil complaints,

24   including the Florida Abortionist versus Backpage case down

25   in Florida, where it was added as one of the civil counts.

1           THE COURT:  Has the Justice Department issued any

2  update to its U.S. Attorney manual or its prosecution manual

3  at Main Justice regarding prosecution under this statute?

4           MR. CORN-REVERE:  Not that I'm aware of.

5           But it's the very situation that Judge Sloviter

6  addressed in *Reno versus ACLU*, in which she said that the

7  Justice Department has assured us they'll apply the law

8  responsibly.  But in the First Amendment context, that's not

9  good enough.

10           This case is even more challenging, because here,

11  it doesn't matter whether the Justice Department promises to

12  show restraint, because this allows state attorneys general

13  and local prosecutors to prosecute, and it allows civil

14  litigant to bring challenges, civil cases, for basically

15  whatever they can dream up that might violate this -- the

16  provisions of this statute.

17           And as I mentioned, for the factual allegations --

18           THE COURT:  You've got four minutes left on your

19  rebuttal time.  Do you want to keep using it or not?

20           MR. CORN-REVERE:  Thank you for the update on the

21  time.  I'll reserve the rest of my time for rebuttal.

22           THE COURT:  You're welcome.

23           MR. COHEN:  Good afternoon, Your Honor.

24           THE COURT:  Do you want to start with the

25  Pittsburgh case that he's so concerned about?

```
1              MR. COHEN:  Your Honor, that's --

2              THE COURT:  Are you familiar with it even?

3              MR. COHEN:  I'm not familiar with the crush case.

4              THE COURT:  All right.  Well, then let's focus on

5  your argument.

6              Why isn't there standing here, in your view?

7              MR. COHEN:  Your Honor, plaintiffs don't face a

8  credible threat of prosecution in this case.

9              But the allegations they've -- the conduct they

10 say that they're going to undertake would not be a violation

11 of the statute.  Short and plain, that's the conduct that --

12             THE COURT:  The conduct they say they're going to

13 undertake at this summit, right, is basically a bunch of

14 people sitting around chatting with one another, right?

15             MR. COHEN:  It sounded like -- they have a website

16 up.  It sounds -- it's still operative as far as -- and last

17 I checked just a day or two ago, it lists a number of

18 speakers, different topics.

19             And, yeah, that's the most I know about what

20 they're going to do.

21             THE COURT:  It says they're going to have

22 workshops devoted to issues affecting sex workers such as --

23 this is a quote:  "Such as harm reductions, disability, age,

24 health, and personal safety."

25             Right?  That's what they say they're going to be
```

1  doing.

2          MR. COHEN:  Yeah.

3          THE COURT:  How does that constitute promote and

4  facilitate prostitution and illegal sex trafficking?

5          MR. COHEN:  It doesn't, Your Honor.  I think

6  that's part of our point.

7          That's -- I think we want -- the point I wanted to

8  make was that plaintiffs keep pulling out certain words that

9  just promote and facilitate all by himself.

10          But I think cases like *Williams* from the

11  Supreme Court, I think make the point that you have to look

12  at the whole statute, the whole -- the phrase as a whole.

13          And in this case, looking at Section 2421A, which

14  is the criminal statute that we're talking about, it speaks

15  about owning and managing or operating an interactive

16  computer service, with the intent to promote or facilitate

17  the prostitution of another person.

18          So it's not directed at speech at all, unlike

19  plaintiff counsel's allegations.  It's directed at the

20  owning, managing or operating of an interactive computer

21  website or service.

22          And the promotion or facilitation goes to the

23  intent.  It's part of the evidence that the government would

24  have to present, presumably, if they did prosecute someone,

25  to show that they had this intent to promote or facilitate

1   the prostitution of another person of a specific

2   prostitution act.

3           THE COURT:  In theory, Counsel, who would be

4   bringing that prosecution in the federal system?  Would it

5   not be a U.S. Attorney's Office?

6           MR. COHEN:  The only defendants in this case are,

7   of course, the federal defendants.

8           And, yes, if this Section 2421A was going to be

9   prosecuted, it would be by the U.S. Attorney's Office.

10          THE COURT:  Is there a unit anymore in Main

11  Justice's criminal division that brings sex trafficking

12  cases, to your knowledge?

13          MR. COHEN:  I believe the Child Sexual

14  Exploitation and Obscenity Section is the one who handles

15  that.  And Ms. Gelber is here from that section, because

16  they're primarily responsible for the sex trafficking

17  statute.

18          THE COURT:  So they would prosecute it potentially

19  also or --

20          MR. COHEN:  Yes.

21          And I think one of the points -- they prosecute

22  crimes.

23          They have previously -- it's been around for,

24  since at least the 19 -- early 1970s, was Section 1952,

25  which kind of -- which was kind of more of a general-purpose

1    statute for interstate -- or actions that promoted or

2    facilitated the promotion of certain crimes, one of those

3    being illegal prostitution.

4           So what this statute did was essentially pull out

5    that specific crime of the promotion and facilitation of

6    prostitution and make it a separate crime.

7           THE COURT:  Right.

8           MR. COHEN:  It's not something that couldn't --

9    really couldn't have been prosecuted before by the Federal

10   Government, and it would have been handled by that section

11   before, and I think this new crime would be handled by the

12   same section.

13          THE COURT:  So they'd have to be the ones who

14   brought an Indictment and then got the burden of proving the

15   case in the Federal Court?

16          MR. COHEN:  Yes.

17          And they certainly have no intent of prosecuting

18   anyone from Woodhull Sexual Freedom Foundation for their

19   summit, which --

20          We've talked about analogies.  It would be

21   somewhat similar to prosecuting a health-services group for

22   handing out needles to heroin users and arguing that that

23   was somehow promoting heroin use or facilitating the use of

24   heroin.  I mean, no one would do that in their right mind.

25   It's just -- it's not a realistic possibility here of

1    prosecution.

2                THE COURT:  Yeah.

3                So in the absence of that being a realistic

4    possibility, how do they get standing?

5                MR. COHEN:  We don't believe there is standing in

6    this case, Your Honor, and that's why we moved as well to

7    dismiss.

8                And I realize that it's with short notice.

9                And, of course, you know, we didn't have a lot of

10   time.

11               THE COURT:  Well, the whole thing is short notice.

12   That's a separate issue.

13               MR. COHEN:  Yeah.

14               So we --

15               THE COURT:  And that's the plaintiff's doing.

16   That's not your doing.

17               MR. COHEN:  We think this case is very similar to

18   the *Backpage.com* case from 2016 before Judge Walton, where

19   he dismissed for lack of standing.  In fact, I believe it

20   was the same plaintiff attorney who tried that case.

21               And I think there, you had *Backpage.com* saying

22   they were worried that they could be prosecuted.

23               THE COURT:  Was that a PI case?

24               MR. COHEN:  It was not a PI.  It was on a motion

25   to dismiss.

1          THE COURT:  Okay.

2          MR. COHEN:  And I think in a very similar factual

3    pattern there, you had the plaintiff saying they were going

4    to undertake an activity, but it probably -- they didn't

5    know if it violated the statute.

6          There was no realistic possibility of prosecution,

7    and the Court dismissed.

8          THE COURT:  Was it appealed?

9          MR. COHEN:  I don't think it's up on appeal,

10   so I think it's -- I don't believe -- there's no Circuit

11   Court decision, that I know of.

12         THE COURT:  Yeah.

13         MR. COHEN:  And, you know, we also emphasized in

14   our papers -- and I'll just reiterate it here -- that FOSTA,

15   the statute, is directed towards -- and it only applies to

16   illegal prostitution and sex trafficking.  It's not, as

17   plaintiff says, anything that promotes or facilitates

18   prostitution or sex trafficking.  It's specifically directed

19   to an illegal act, this prostitution or sex trafficking of

20   another person.  So it has to be directed to a specific act.

21         And even the -- that's shown as well when you look

22   at the statute in the aggravated section of the statute,

23   Part B, where it talks about it's only aggravated if it's

24   directed towards the prostitution of five or more people or

25   someone who knows that it's -- that involves actual sex

1     trafficking of an individual.

2              THE COURT:  What about this rating organization he

3     raised?  How is their conduct, as you understand it, in any

4     way related to promoting and facilitating illegal sex

5     trafficking or prostitution?  It's a rating company.

6              MR. COHEN:  I don't see how there could possibly

7     be a mens rea of promoting or -- with the intent to promote

8     or facilitate prostitution or sex trafficking.

9              It seems to me that the intent there -- and

10    they've made that quite clear in their mission statement and

11    what they have stated in the papers here -- is to just

12    protect the health and safety of these people who are --

13    happen to be working in some kind of sex work.

14             But they're not trying to promote the actual sex

15    work or have the intent to facilitate the prostitution of

16    another person.  So I would have a hard time imagining how

17    they could possibly be prosecuted, Your Honor.

18             THE COURT:  I hear you.

19             What else have you got?

20             MR. COHEN:  You asked, Your Honor, about training.

21    My understanding is that -- or -- well, you asked about

22    whether the U.S. Attorney's manual had been updated.

23             THE COURT:  Yeah.

24             If they're going to go out and prosecute these

25    kind of cases, at least in theory, usually, as a preliminary

1    step, there's some kind of guidance provided by Main Justice

2    from the criminal division.

3            Like you, I'm straining to imagine the situation

4    where they're using this type of conduct that the plaintiffs

5    are saying they're going to participate in as a basis to

6    constitute promotion and facilitation of prostitution.

7            So there would have to be some guidance, because

8    you don't want -- the Justice Department, as a general

9    proposition -- and I speak to this issue as an alum -- they

10   don't want people out prosecuting cases they're going to be

11   losing, because that's going to have a terrible impact on

12   the credibility of the statutory framework that they're

13   using for these prosecutions.  So they come up with some

14   guidance, give us some guidance.

15           Has any such guidance been created, to your

16   knowledge?

17           MR. COHEN:  My understanding is, no, there has

18   been some training in how the statute works and what it says

19   and how it applies, but there's not been updates to the U.S.

20   Attorney's manual.

21           I think that there's -- you know, I would refer

22   the Court to that signing statement, or the statement to

23   the -- that the Department of Justice issued to the

24   White House just before the signing, where they kind of

25   explained their understanding of the law and endorsed the

1    signing of it to the White House.  That probably provides

2    some guidance on -- probably the best guidance as to what

3    the Department of Justice sees as the law and how it

4    interprets it.

5              I do want to reiterate that I also, with respect

6    to standing -- I don't know if it was clear in the papers,

7    but there are a couple -- several provisions in the

8    statute -- the statute does several things.

9              And, for example, the change to Section 230,

10   I believe it is, that changes the ability of these states to

11   bring a prosecution, that's just to -- that's just to bring

12   prosecutions that are under state laws that are basically

13   this mirror or have the same effect as Section 2421A and the

14   sex trafficking statute.  But those, of course -- you know,

15   those parties aren't before the Court.

16             So as -- again, I think there's a standing problem

17   there with respect to that, and that's -- the only

18   plaintiffs made -- said that there was an ex post facto

19   problem in the way the statute is written, but, of course,

20   that only applies to that change in the CDA, which applies

21   to cases that could be brought by the state pros- -- or

22   local prosecutors.

23             Only the Federal Government's here.  There's no

24   way -- the Federal Government can't prosecute someone for

25   actions that happened before this was enacted; in other

```
1    words, that doesn't apply to them.  So there's no way to --
2    there's no standing there with respect to that part of the
3    statute.
4         THE COURT:  This Court can't issue injunctive
5    relief against state authorities that are pursuing statutes
6    that the state has already enacted through its legislature.
7         MR. COHEN:  I agree, Your Honor.
8         And I think a similar problem occurs with respect
9    to these civil remedies that the plaintiffs have complained
10   about that are introduced.  Those, of course, can only be
11   brought by victims of sex trafficking, and obviously,
12   they're not before the Court either in terms of injunctive
13   relief and standing.
14        THE COURT:  All right.
15        Assuming for the sake of discussion that they got
16   over the standing hurdle, as high a hurdle as it is, how
17   do you see their chances of winning on the merits,
18   likelihood of success on the merits?
19        MR. COHEN:  We don't believe that they have any
20   likelihood of success on the merits, Your Honor.
21        I think, obviously, the main argument the
22   plaintiffs have made is over-breadth.  They've argued that.
23        But as I said before, this is not a statute
24   directed at speech itself.
25        It's not -- there are statutes -- as the
```

1    plaintiffs brought up as an example, you know, something

2    that talks about a prohibition against indecent speech or

3    something, sure, that's directed at speech.

4              This is directed at the management, operation,

5    ownership of an interactive website.  It's not speech

6    itself.

7              The way the promotion and facilitation of

8    prostitution of another person comes into effect is with

9    respect to the intent of the management of the website.

10             So its speech might be -- there might be speech

11   involved in that, in trying to determine their intent,

12   similar to maybe a statute that prohibits certain kinds of

13   picketing in certain places or something.

14             And sure, there's speech involved in what they

15   want to hold up on their signs.  But the terms of the

16   statute itself are not directed at speech.  So I think it's

17   a high hurdle for them to get over because of that problem,

18   to start with.

19             And I think we've also reiterated the fact that

20   the term, these words "promote and facilitate," they're not

21   something new, they're not pulled out of thin air by

22   Congress or the government here.  They're terms that are

23   commonly used.

24             I said, they're basically -- they've been in use

25   in Section 1952 since the '70s and have not been found to be

1    unconstitutional.  And there's case law interpreting that.

2    And we cited to one of the cases, I believe, from 1996, the

3    *Bennett* case, which basically, it describes exactly what

4    those terms mean.

5          And I would also point the Court to -- even

6    looking recently in the U.S. Supreme Court, the *Rosemond*

7    *versus U.S.*, 572 U.S. 65, the Court favorably cites LaFave

8    substantive criminal law Section 13.2, which defines

9    "accomplice" as someone who's liable as a principal when he

10   gives assistance or encouragement with the intent thereby to

11   promote or facilitate commission of the crime.

12         So these are just common terms that are commonly

13   understood in the criminal law and common law and provide

14   plenty of notice and -- to the common person who could be a

15   victim of -- or could be prosecuted under the statute.

16         THE COURT:  How about the irreparable harm

17   requirement, how are they going to establish that?

18         MR. COHEN:  Well, they'd have to show a likelihood

19   of prosecution, Your Honor.  And I think that, as I said,

20   there's no one that's going to prosecute them in this case,

21   whether that's Woodhull, under the summit, or any other

22   plaintiffs that are part of the case.

23         I mean, we've -- there's the Internet archive, the

24   one who's just archiving material.  And my understanding is

25   that they have claimed that they don't know what -- they

```
 1   just pulled information off the Web, make it available to

 2   others.  They don't know what -- there's such a huge volume

 3   of information that they don't have the -- it's impossible

 4   for them to review it.

 5           So, of course, there's no mens rea there.  I mean,

 6   there would be no way to prosecute them for having the

 7   intent to promote or facilitate the prostitution of another

 8   person.

 9           Just as, I'm sure -- and this they know, that

10   there's -- all this -- since they're pulling so much

11   information off the Internet, that, of course, it's going to

12   include other probably obscene material or child pornography

13   material.  And they're not worried about prosecution for

14   those things either because there's no mens rea; there's no

15   way for the government to prove that.  So just as there's no

16   way for them to prove these crimes.

17           THE COURT:  Well, this Court has a little

18   experience with the difficulty of proving in a federal

19   courtroom interstate transmission of obscene material.

20           It's not a joke, sir.

21           MR. CORN-REVERE:  Sorry.

22           THE COURT:  The government tried in U.S. versus

23   Stagliano and got nowhere.  The Court had to throw the case

24   out at Rule 29.  It was the first-ever prosecution in this

25   District of interstate transmission of obscene material.
```

1          So bringing these kind of cases or cases of like
2    this are not simple and not done lightly.
3          MR. COHEN:  Oh, no one wants to -- yeah.
4          THE COURT:  And have to be done very carefully
5    because of the potential consequences -- difficulty of proof
6    and potential consequences to the chilling effect that's
7    been alluded to and hasn't been quite established yet here.
8          MR. COHEN:  Understood, Your Honor.
9          THE COURT:  Do you have anything else?  You've got
10   about a minute.  You can rest on your papers.
11         MR. COHEN:  No, Your Honor, there's nothing else.
12   I'm happy to answer any questions the Court has, though.
13         THE COURT:  Well, look, cases like this, normally
14   I give -- by which I mean novel cases -- I usually give the
15   parties an opportunity to take a look at the transcript, and
16   if they want to supplement their pleadings, they can have
17   ten pages to do it.
18         You might want to check out this Pittsburgh case
19   that's been alluded to here that you're not familiar with.
20         And you might want to talk to your co-counsel over
21   there about what, if any, guidance has been created just to
22   verify that.
23         But you write it any way you want to write it, if
24   you want to do it.  I'm not requiring you to write a
25   supplement, but if you want to, after reviewing the

1    transcript, go ahead.

2             MR. COHEN:  I appreciate the opportunity.

3    Thank you, Your Honor.

4             THE COURT:  Thank you.

5             Mr. Revere, you've got four minutes.

6             MR. CORN-REVERE:  I want to start with the points

7    that Mr. Cohen made about the Travel Act, saying that it is

8    very similar and uses commonly understood words.

9             This is where the Travel Act differs from FOSTA.

10   FOSTA focuses only on speech.

11            The Travel Act focuses on facilities of interstate

12   commerce that are found to violate state crimes.

13            And for here, the specific section is Section

14   1952B that specifically defines unlawful activity.

15            In this case, prostitution offenses in violation

16   of laws of the state in which they are committed or of the

17   United States.

18            Here, FOSTA simply prohibits the operation of a

19   website, with the intent to promote or facilitate the

20   prostitution of another person, shall be fined under this

21   title.

22            There's no connection to an actual crime.  It is

23   simply the amorphous prohibition of promotion or

24   facilitation of prostitution as a concept, and that's the

25   difference between the two.

1          The Travel Act focuses on physical actions that

2     facilitate crime.  FOSTA focuses only on speech, because

3     it's dealing with operating a website that uses speech that

4     the government would interpret promotes or facilitates a

5     prostitution.

6          Mr. Cohen says that those words are commonly

7     understood, and they are in the Travel Act cases.  In fact,

8     if you look at the cases they cite in their brief,

9     *United States versus Bennett*, it says that to facilitate

10     means to do any act that would cause the unlawful activity

11     to be accomplished in a way, or to insist in the lawful

12     attempt in any way.

13          Which may be a commonly understood term in normal

14     criminal law when you've already got a crime established

15     under state law and then you look at whether or not a

16     federal use of interstate commerce, facility of interstate

17     commerce assisted in that.

18          But here we're talking about speech that is

19     considered to promote or facilitate crime, and that's why

20     the plaintiffs in this case are concerned, because a lot of

21     their activities, while they are not criminal in nature

22     themselves, are made to assist people who operate in the

23     area.

24          THE COURT:  Give me an example of where they're

25     promoting prostitution.

1          MR. CORN-REVERE:  They are -- well --

2          THE COURT:  Promoting.

3          MR. CORN-REVERE:  They are facilitated.

4          THE COURT:  No.

5          Promote.  Let's start with promoting.

6          MR. CORN-REVERE:  Okay.  Well, they're advocating

7     for the legalization of prostitution, both Human Rights

8     Watch and other organizations do as well.

9          They also take a number of steps to --

10         THE COURT:  Has that ever been prostitution

11    advocacy?

12         MR. CORN-REVERE:  No.  This law didn't exist

13    before.

14         And under the Travel Act, you had to violate --

15         THE COURT:  Hold on.  I'm not saying under this

16    law.  This law is brand new; it's only a few months old.

17         MR. CORN-REVERE:  That's right.

18         THE COURT:  I'm talking about in any state at any

19    time or under any other provision of the federal law,

20    advocacy for the legalization of prostitution.

21         MR. CORN-REVERE:  Well, there are --

22         THE COURT:  That's prime.

23         MR. CORN-REVERE:  There are three states that

24    adapted laws to prohibit websites that carried classified

25    ads.  We mentioned those cases in our papers; *Backpage.com*

1    *versus McKenna*, *versus Hoffman*, and *versus Cooper*.  Those

2    three cases are all cited.

3              And, as a matter of fact, they talk about having a

4    more amorphous definition of what is promotion of

5    prostitution in those cases and how -- why that was

6    considered to be constitutionally defective.  It was

7    considered to be both vague and overly broad.

8              Now, Mr. Cohen talks about how you don't have to

9    worry about that because you don't have the scienter.

10             And in one of those cases -- actually, in two of

11   those cases, the Internet archive was a plaintiff and was

12   found to have standing because --

13             THE COURT:  Are you familiar with the

14   Supreme Court's recent decisions on prosecution under the

15   fraud statute as it applied to Governor McDonnell, in

16   particular?

17             MR. CORN-REVERE:  I'm not familiar with it, no,

18   Your Honor.

19             THE COURT:  Yeah.

20             You might want to look at those cases sometime.

21             The Supreme Court takes a dim view on this kind of

22   amorphous language as it relates to federal criminal

23   prosecution.

24             MR. CORN-REVERE:  Well, but it's also -- we take a

25   dim view of this law, because it was specifically designed

1    to create a more amorphous standard.

2         Mr. Cohen mentions *Backpage versus Lynch* and said

3    that that case was dismissed.  And, in fact, it was, because

4    the Court did find, under the law as it previously existed,

5    had an adequate standard that required specific knowledge.

6         But if you look at page 5 of the House report,

7    which we cite, that talks about the changes in language in

8    FOSTA.  They were designed expressly to eliminate that

9    specific knowledge requirement.

10        THE COURT:  You've got a minute.

11        MR. CORN-REVERE:  Okay.

12        And so, again, the statutory changes in FOSTA were

13   the ones that directly addressed the scienter standard.  It

14   runs afoul of having a constitutionally sufficient standard

15   for scienter, as we pointed out in our papers.

16        You had asked earlier what about the rating

17   organization?  And this goes to the other point about this.

18   Whether or not the U.S. Attorney is going to prosecute,

19   whether or not state AGs are going to prosecute, and we

20   think that we've presented evidence showing that they have

21   been --

22        THE COURT:  Under what state statute?

23        They're not going to prosecute under federal

24   statutes.  They don't have the authority to.

25        What state statute do you have in mind in

```
1    Virginia?
2              Do you have a state statute that the
3    Attorney General of Virginia can prosecute under?
4              MR. CORN-REVERE:  They could prosecute under a
5    state statute if they are promoting prostitution.
6              Again --
7              THE COURT:  Does it exist?
8              MR. CORN-REVERE:  I mentioned three in Washington
9    State, Tennessee, and in New Jersey, where states sought to
10   prohibit websites that, in their view, promoted online
11   trafficking.  And because they were written with the kind of
12   language used in FOSTA, District Courts in all three cases
13   struck those statutes down, and FOSTA was adopted to
14   specifically authorize those kind of cases to go forward.
15             And more importantly, the civil claims, where
16   plaintiffs are already beginning to make use of FOSTA -- you
17   had asked Mr. Cohen what is the relevance of having a rating
18   organization, and that was the declaration saying that
19   having advocates on behalf of sex workers rate rescue
20   organizations and have third-party postings that criticized
21   those service organizations are precisely the kinds of
22   things that are -- that have been the target of cases that,
23   before FOSTA, were immunized --
24             THE COURT:  How does that constitute promoting
25   prostitution and sex trafficking?
```

1          MR. CORN-REVERE:  Because they're advocating on

2   behalf of -- sex workers advocating on behalf of people who

3   are in the business, who are then critical of the

4   organizations that are engaged in those issues.

5          Again, one of the more active areas of litigation

6   in cases that have been previously immunized, under

7   Section 230, are rating sites.

8          THE COURT:  Speaking of cites, do you have any

9   cites for that Pittsburgh case you kept talking about?

10          MR. CORN-REVERE:  That was the *United States*

11   *versus Stevens*.

12          THE COURT:  All right.  And that cite's in your

13   pleadings?

14          MR. CORN-REVERE:  The Supreme Court case is -- we

15   don't cite to the Trial Court decision below, but we do cite

16   several times to *United States versus Stevens*.

17          THE COURT:  Okay.  And is that the case that you

18   referred to Judge Sloviter's remarks?  Did she write it?

19          MR. CORN-REVERE:  No.  That -- I'm sorry.  That

20   was Reno versus the -- I'm sorry, *ACLU versus Reno* [sic],

21   which then led to the 1997 Supreme Court decision.

22          But at the District Court, and it was a

23   three-judge District Court, that granted -- well, first

24   found standing and then granted injunctive relief.

25          Judge Sloviter talked about, she can't just trust

1    the government to say, trust us.

2              It was also in the same holding of Judge Lowell

3    Reed in the follow-up legislation, after the CDA, COPA, in

4    *ACLU versus Reno II* [sic].

5              THE COURT:  Okay.  You can have a week to

6    supplement your pleadings, both sides can, a week from the

7    date you get the transcript.  Obviously, you can't review a

8    transcript until it's done.

9              So when my very abled court reporter has completed

10   the transcript, you can have one week from that date to

11   supplement your pleadings.  If you want to.  I mean, after

12   you've reviewed it, my experience has been that invariably

13   you review a transcript and you say, I wish I said this,

14   that, or the other thing in response to something that the

15   opposing counsel said or the Court said, so I want to give

16   you a chance to do that.  This is obviously a novel case, a

17   novel statute.

18             As I said previously, it's not even conceivable to

19   give you a PI opinion.  As you know, we have to issue an

20   opinion, a publishable opinion.  We don't just whip them

21   off, especially on novel issues and novel cases and novel

22   statutes.

23             So there's no chance you're going to get a PI

24   opinion out of this Court, none, by that date.  It's not

25   possible.

1          MR. CORN-REVERE:  No.  I appreciate that, Your

2    Honor.

3          THE COURT:  Today is the 20th; next Friday is the

4    27th -- I mean, if you got the transcript tomorrow, which

5    you probably won't; it takes time to do a transcript.  Next

6    Friday is the 27th.

7          There's no way it can be done that fast.  And

8    believe me, you're talking to a Court that knows how to do

9    things fast.  See e.g., *U.S. versus AT&T*, 175-page opinion

10   in six weeks.

11         So you've got to be realistic here.  You can't

12   come into this courthouse on June 28th and think you're

13   going to have an opinion by August 2nd.  That's just not --

14   that can't be done.

15         MR. CORN-REVERE:  I understand.

16         THE COURT:  So you can supplement your pleadings;

17   I'll get you an opinion as fast as I can get it.  I can't

18   tell you when.  It won't be by August 2nd, I can tell you

19   that for certain.

20         And thanks for your efforts, Counsel.  Have a good

21   day.

22         MR. CORN-REVERE:  Thank you.

23         DEPUTY CLERK:  All rise.  This Honorable Court

24   will stand in recess until the return of court.

25         (Proceedings concluded at 5:01 p.m.)

C E R T I F I C A T E

         I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.


Date: July 22, 2018_____    /S/__William P. Zaremba_____

                              William P. Zaremba, RMR, CRR