APPEAL,CLOSED,TYPE−D

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:18−cv−01552−RJL</u>

WOODHULL FREEDOM FOUNDATION et al v. UNITED
STATES OF AMERICA et al
Assigned to: Judge Richard J. Leon
Cause: 42:1983 Civil Rights Act

Date Filed: 06/28/2018
Date Terminated: 09/24/2018
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**WOODHULL FREEDOM
FOUNDATION**

represented by **Robert Corn−Revere**
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, N.W.
Suite 800
Washington, DC 20006
(202) 973−4225
Fax: (202) 973−4499
Email: bobcornrevere@dwt.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ronald G. London**
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, N.W.
Suite 800
Washington, DC 20006
(202) 973−4235
Fax: (202) 973−4499
Email: ronnielondon@dwt.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Allen Greene**
ELECTRONIC FRONTIER
FOUNDATION
815 Eddy Street
San Francisco, CA 94109
(415) 436−9333
Fax: (415) 436−9993
Email: davidg@eff.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lawrence G. Walters**
WALTERS LAW GROUP
195 W. Pine Avenue
Longwood, FL 32750
(407) 975−9150

1

Fax: (407) 774−6151
Email: larry@firstamendment.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**HUMAN RIGHTS WATCH**                   represented by   **Robert Corn−Revere**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Ronald G. London**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **David Allen Greene**
                                                          (See above for address)
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Lawrence G. Walters**
                                                          (See above for address)
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

**Plaintiff**

**ERIC KOSZYK**                          represented by   **Robert Corn−Revere**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Ronald G. London**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **David Allen Greene**
                                                          (See above for address)
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Lawrence G. Walters**
                                                          (See above for address)
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

**Plaintiff**

**JESSE MALEY**                          represented by   **Robert Corn−Revere**
*also known as*                                           (See above for address)
ALEX ANDREWS                                              *LEAD ATTORNEY*

2

*ATTORNEY TO BE NOTICED*

**Ronald G. London**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Allen Greene**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lawrence G. Walters**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**INTERNET ARCHIVE**                      represented by   **Robert Corn−Revere**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ronald G. London**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Allen Greene**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lawrence G. Walters**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**UNITED STATES OF AMERICA**              represented by   **Jason Todd Cohen**
U.S. ATTORNEY'S OFFICE FOR THE
DISTRICT OF COLUMBIA
555 Fourth Street, NW
Washington, DC 20530
(202) 252−2523
Fax: (202) 252−2599
Email: jason.cohen@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**JEFFERSON B. SESSIONS**                    represented by   **Jason Todd Cohen**
*in his official capacity as Attorney*                         (See above for address)
*General of the United States*                                *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 06/28/2018 | 1 | | COMPLAINT for *Declaratory and Injunctive Relief* against JEFFERSON B. SESSIONS, UNITED STATES OF AMERICA ( Filing fee $ 400 receipt number 0090−5562787) filed by WOODHULL FREEDOM FOUNDATION, JESSE MALEY, ERIC KOSZYK, HUMAN RIGHTS WATCH, THE INTERNET ARCHIVE. (Attachments: # 1 Civil Cover Sheet, # 2 Summons, # 3 Summons)(Corn−Revere, Robert) (Attachment 1 replaced on 6/29/2018) (zmd). (Entered: 06/28/2018) |
| 06/28/2018 | 2 | | Corporate Disclosure Statement by HUMAN RIGHTS WATCH, ERIC KOSZYK, JESSE MALEY, THE INTERNET ARCHIVE, WOODHULL FREEDOM FOUNDATION. (Corn−Revere, Robert) (Entered: 06/28/2018) |
| 06/28/2018 | 3 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Lawrence G. Walters, :Firm− Walters Law Group, :Address− 195 W. Pine Avenue, Longwood, Florida. Phone No. − (407) 975−9150. Filing fee $ 100, receipt number 0090−5562939. Fee Status: Fee Paid. by HUMAN RIGHTS WATCH, ERIC KOSZYK, JESSE MALEY, THE INTERNET ARCHIVE, WOODHULL FREEDOM FOUNDATION (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(Corn−Revere, Robert) (Entered: 06/28/2018) |
| 06/28/2018 | 4 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− David Greene, :Firm− ELECTRONIC FRONTIER FOUNDATION, :Address− 815 Eddy Street, San Francisco, California 94109. Phone No. − (415) 436−9993. Fax No. − (415) 436−9993 Filing fee $ 100, receipt number 0090−5562959. Fee Status: Fee Paid. by HUMAN RIGHTS WATCH, ERIC KOSZYK, JESSE MALEY, THE INTERNET ARCHIVE, WOODHULL FREEDOM FOUNDATION (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(Corn−Revere, Robert) (Entered: 06/28/2018) |
| 06/28/2018 | 5 | | MOTION for Preliminary Injunction by HUMAN RIGHTS WATCH, ERIC KOSZYK, JESSE MALEY, THE INTERNET ARCHIVE, WOODHULL FREEDOM FOUNDATION (Attachments: # 1 Declaration of K. D'Adamo, # 2 Declaration of R. Levy, # 3 Declaration of D. Pokempner, # 4 Declaration of E. Koszyk, # 5 Declaration of J. Maley, # 6 Declaration of B. Kahle, # 7 Declaration of A. Lutnick, # 8 Declaration of A. Levy, # 9 Declaration of K. Mehlman−Orozco, # 10 Text of Proposed Order)(Corn−Revere, Robert) (Entered: 06/28/2018) |
| 06/28/2018 | 6 | | MOTION to Exclude Plaintiffs from Local Rule 7(m) re 5 MOTION for Preliminary Injunction by HUMAN RIGHTS WATCH, ERIC KOSZYK, JESSE MALEY, THE INTERNET ARCHIVE, WOODHULL FREEDOM FOUNDATION (Attachments: # 1 Text of Proposed Order)(Corn−Revere, Robert) (Entered: 06/28/2018) |

| 06/28/2018 | | | Case Assigned to Judge Richard J. Leon. (zmd) (Entered: 06/29/2018) |
|---|---|---|---|
| 06/29/2018 | 7 | | SUMMONS (2) Issued as to JEFFERSON B. SESSIONS, UNITED STATES OF AMERICA, U.S. Attorney (Attachments: # 1 Notice and Consent) (zmd) (Entered: 06/29/2018) |
| 06/29/2018 | 8 | | CERTIFICATE OF SERVICE by HUMAN RIGHTS WATCH, ERIC KOSZYK, JESSE MALEY, THE INTERNET ARCHIVE, WOODHULL FREEDOM FOUNDATION re 6 MOTION to Exclude Plaintiffs from Local Rule 7(m) re 5 MOTION for Preliminary Injunction , 4 MOTION for Leave to Appear Pro Hac Vice :Attorney Name− David Greene, :Firm− ELECTRONIC FRONTIER FOUNDATION, :Address− 815 Eddy Street, San Francisco, California 94109. Phone No. − (415) 436−9993. Fax No. − (415) 436−9993 Filing fee &, 5 MOTION for Preliminary Injunction , 3 MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Lawrence G. Walters, :Firm− Walters Law Group, :Address− 195 W. Pine Avenue, Longwood, Florida. Phone No. − (407) 975−9150. Filing fee $ 100, receipt number 0090−5562939., 2 Corporate Disclosure Statement . (Corn−Revere, Robert) (Entered: 06/29/2018) |
| 06/29/2018 | 9 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 6/29/18. (Corn−Revere, Robert) (Entered: 06/29/2018) |
| 06/29/2018 | 10 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 6/29/2018. Answer due for ALL FEDERAL DEFENDANTS by 8/28/2018. (Corn−Revere, Robert) (Entered: 06/29/2018) |
| 07/02/2018 | 11 | | NOTICE *of filing of Exh. 1 to R. Levy Decl. [Dkt. 5−2]* by HUMAN RIGHTS WATCH, ERIC KOSZYK, JESSE MALEY, THE INTERNET ARCHIVE, WOODHULL FREEDOM FOUNDATION re 5 MOTION for Preliminary Injunction (Attachments: # 1 Exhibit to R. Levy Decl. in Support of Motion for Preliminary Injunction)(Corn−Revere, Robert) (Entered: 07/02/2018) |
| 07/02/2018 | 12 | | NOTICE of Appearance by Jason Todd Cohen on behalf of All Defendants (Cohen, Jason) (Entered: 07/02/2018) |
| 07/02/2018 | 13 | | NOTICE of Appearance by Ronald G. London on behalf of All Plaintiffs (London, Ronald) (Entered: 07/02/2018) |
| 07/05/2018 | | | MINUTE ORDER: Upon consideration of 3 Motion for Leave to Appear Pro Hac Vice, it is hereby ORDERED that Lawrence G. Walters is allowed to appear pro hac vice for Plaintiffs in this case. SO ORDERED. Signed by Judge Richard J. Leon on 7/5/2018. (lcrjl2) (Entered: 7/5/2018) (Entered: 07/05/2018) |
| 07/05/2018 | | | MINUTE ORDER: Upon consideration of 4 Motion for Leave to Appear Pro Hac Vice, it is hereby ORDERED that David Greene is allowed to appear pro hac vice for Plaintiffs in this case. SO ORDERED. Signed by Judge Richard J. Leon on 7/5/2018. (lcrjl2) (Entered: 07/05/2018) (Entered: 07/05/2018) |
| 07/05/2018 | | | MINUTE ORDER. Upon consideration of 5 Motion for Preliminary Injunction, it is hereby ORDERED that Defendants shall file their Opposition to 5 the Motion by 6:00pm on July 10, 2018, and that Plaintiffs shall file their Reply in support of 5 the Motion by 6:00pm on July 17, 2018. It is further ORDERED that a hearing on the 5 Motion for Preliminary Injunction is scheduled for July |

| | | | |
|---|---|---|---|
| | | | 19, 2018 at 4:00pm before Judge Richard J. Leon in Courtroom 18. SO ORDERED. Signed by Judge Richard J. Leon on 7/5/2018. (lcrjl2, ) (Entered: 07/05/2018) |
| 07/05/2018 | 14 | | First MOTION for Extension of Time to File Response/Reply as to 5 MOTION for Preliminary Injunction by JEFFERSON B. SESSIONS, UNITED STATES OF AMERICA (Attachments: # 1 Text of Proposed Order)(Cohen, Jason) (Entered: 07/05/2018) |
| 07/05/2018 | | | Set/Reset Deadlines/Hearings: Defendants Opposition to the Motion for 5 Preliminary Injunction is due by 6:00 PM on 7/10/2018; Plaintiffs Reply is due by 6:00 PM on 7/17/2018; a Hearing on the Motion for Preliminary Injunction is scheduled for 7/19/2018 at 4:00 PM before Judge Richard J. Leon in Courtroom 18. (jth) (Entered: 07/08/2018) |
| 07/10/2018 | | | MINUTE ORDER. Upon consideration of 14 Defendants' First Motion for Extension of Time to File Opposition to Plaintiffs' Motion for Preliminary Injunction 5 , and for good cause shown, it is hereby ORDERED that Defendants shall file their Opposition to 5 the Motion for Preliminary Injunction by 6:00pm on July 12, 2018, and that Plaintiffs shall file their Reply in support of 5 the Motion by 6:00pm on July 17, 2018. It is further ORDERED that a hearing on the 5 Motion for Preliminary Injunction is scheduled for July 19, 2018 at 4:00pm before Judge Richard J. Leon in Courtroom 18. SO ORDERED. Signed by Judge Richard J. Leon on 7/10/2018. (lcrjl2, ) (Entered: 07/10/2018) |
| 07/12/2018 | 15 | | Memorandum in opposition to re 5 MOTION for Preliminary Injunction *and Motion to Dismiss Plaintiffs' Complaint* filed by JEFFERSON B. SESSIONS, UNITED STATES OF AMERICA. (Attachments: # 1 Exhibit Mar. 23, 2018, Letter to OMB from DOJ, # 2 Text of Proposed Order)(Cohen, Jason) (Entered: 07/12/2018) |
| 07/12/2018 | 16 | | MOTION to Dismiss *(Duplicate filing of ECF No. 15)* by JEFFERSON B. SESSIONS, UNITED STATES OF AMERICA (Attachments: # 1 Exhibit Mar. 23, 2018, Letter to OMB from DOJ, # 2 Text of Proposed Order)(Cohen, Jason) (Entered: 07/12/2018) |
| 07/17/2018 | 17 | | REPLY to opposition to motion re 5 MOTION for Preliminary Injunction filed by HUMAN RIGHTS WATCH, INTERNET ARCHIVE, ERIC KOSZYK, JESSE MALEY, WOODHULL FREEDOM FOUNDATION. (Corn−Revere, Robert) (Entered: 07/17/2018) |
| 07/19/2018 | | | Minute Entry for Proceedings held before Judge Richard J. Leon: Motion Hearing held on 7/19/2018 re: Plaintiffs' 5 Motion for Preliminary Injunction. Plaintiffs' 5 Motion was Heard and Taken Under Advisement. The parties may file supplemental pleadings within ten (10) days of their receipt of the transcript. (Court Reporter: William P. Zaremba) (jth) (Entered: 07/19/2018) |
| 07/20/2018 | 18 | | STANDING ORDER. Signed by Judge Richard J. Leon on 7/20/2018. (lcrjl2, ) (Entered: 07/20/2018) |
| 07/26/2018 | 19 | | RESPONSE re 16 MOTION to Dismiss *(Duplicate filing of ECF No. 15)* filed by HUMAN RIGHTS WATCH, INTERNET ARCHIVE, ERIC KOSZYK, JESSE MALEY, WOODHULL FREEDOM FOUNDATION. (Corn−Revere, Robert) (Entered: 07/26/2018) |

| 08/02/2018 | 20 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 16 MOTION to Dismiss *(Duplicate filing of ECF No. 15)* by JEFFERSON B. SESSIONS, UNITED STATES OF AMERICA (Attachments: # 1 Text of Proposed Order)(Cohen, Jason) (Entered: 08/02/2018) |
|---|---|---|---|
| 08/03/2018 | | | MINUTE ORDER: Upon consideration of 20 Defendants' Unopposed Motion for Extension of Time to File Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss, it is hereby ORDERED that 20 the Motion is GRANTED. It is further ORDERED that the deadline for Defendants to file their Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss is extended to August 6, 2018. Signed by Judge Richard J. Leon on 8/3/2018. (lcrjl2, ) (Entered: 08/03/2018) |
| 08/06/2018 | 21 | | REPLY to opposition to motion re 16 MOTION to Dismiss *(Duplicate filing of ECF No. 15)* filed by JEFFERSON B. SESSIONS, UNITED STATES OF AMERICA. (Cohen, Jason) (Entered: 08/06/2018) |
| 08/06/2018 | 22 | | SUPPLEMENTAL MEMORANDUM to re 5 MOTION for Preliminary Injunction filed by HUMAN RIGHTS WATCH, INTERNET ARCHIVE, ERIC KOSZYK, JESSE MALEY, WOODHULL FREEDOM FOUNDATION. (Corn−Revere, Robert) (Entered: 08/06/2018) |
| 08/13/2018 | 23 | | TRANSCRIPT OF MOTION FOR PRELIMINARY INJUNCTION HEARING PROCEEDINGS before Judge Richard J. Leon held on July 19, 2018; Page Numbers: 1−43. Date of Issuance: August 13, 2018. Court Reporter/Transcriber: William Zaremba; Telephone number: (202) 354−3249. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public termi nal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, PDF or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/3/2018. Redacted Transcript Deadline set for 9/13/2018. Release of Transcript Restriction set for 11/11/2018.(wz) (Entered: 08/13/2018) |
| 08/14/2018 | 24 | | Consent MOTION for Extension of Time to *Confer and to File Joint Meet and Confer Statement* by JEFFERSON B. SESSIONS, UNITED STATES OF AMERICA (Attachments: # 1 Text of Proposed Order)(Cohen, Jason) (Entered: 08/14/2018) |
| 09/24/2018 | 25 | 13 | MEMORANDUM OPINION. Signed by Judge Richard J. Leon on 9/24/2018. (jth) (Entered: 09/24/2018) |
| 09/24/2018 | 26 | 12 | |

| | | | |
|---|---|---|---|
| | | | ORDER. For the reasons stated in the accompanying Memorandum Opinion, defendants' <u>16</u> Motion to Dismiss is GRANTED, and plaintiffs' <u>5</u> Motion for Preliminary Injunction is DENIED as moot. SO ORDERED. Signed by Judge Richard J. Leon on 9/24/2018. (jth) (Entered: 09/24/2018) |
| 10/09/2018 | <u>27</u> | 9 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to <u>26</u> Order on Motion for Preliminary Injunction,, Order on Motion to Dismiss, by HUMAN RIGHTS WATCH, INTERNET ARCHIVE, ERIC KOSZYK, JESSE MALEY, WOODHULL FREEDOM FOUNDATION. Filing fee $ 505, receipt number 0090−5728095. Fee Status: Fee Paid. Parties have been notified. (Corn−Revere, Robert) (Entered: 10/09/2018) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WOODHULL FREEDOM FOUNDATION,  )
HUMAN RIGHTS WATCH, ERIC KOSZYK,  )
JESSE MALEY, a/k/a ALEX ANDREWS, and  )
THE INTERNET ARCHIVE,  )
                                   )     Case No. 1:18-cv-1552-RJL
        Plaintiffs,  )
                                   )
       V.  )     **NOTICE OF APPEAL**
                                   )
THE UNITED STATES OF AMERICA and  )     Action Filed: June 28, 2018
JEFFERSON B. SESSIONS, in his official  )
capacity as ATTORNEY GENERAL OF THE  )
UNITED STATES,  )
                                   )
        Defendants.  )

## NOTICE OF APPEAL

Notice is hereby given that all plaintiffs in the above-captioned action, Woodhull Freedom Foundation, Human Rights Watch, Eric Koszyk, Jesse Maley, a/k/a Alex Andrews, and The Internet Archive, hereby appeal to the United States Court of Appeals for the District of Columbia Circuit from the order of September 24, 2018, Dkt. No. 26, denying plaintiffs' Motion for Preliminary Injunction, and granting defendants' Motion to Dismiss, Dkt. No. 16. against said plaintiffs.

Dated: October 9, 2018                Respectfully submitted,

                               /s/ *Robert Corn-Revere*
                               ROBERT CORN-REVERE (D.C. Bar No. 456284)
                               RONALD G. LONDON (D.C. Bar No. 456284)
                               **DAVIS WRIGHT TREMAINE LLP**
                               1919 Pennsylvania Ave. NW, Suite 800
                               Washington, D.C. 2006
                               Tel. (202) 973-4200
                               bobcornrevere@dwt.com
                               ronnielondon@dwt.com

DAVID GREENE (admitted *pro hac vice*)
AARON MACKEY (D.C. Bar No. 1017004)
CORYNNE MCSHERRY (admitted in California)
**ELECTRONIC FRONTIER FOUNDATION**
815 Eddy Street
San Francisco, CA 94109
Tel. (415) 436-9333
davidg@eff.org
amackey@eff.org

LAWRENCE G. WALTERS
(Florida Bar No. 0776599)
**WALTERS LAW GROUP**
195 W. Pine Ave.
Longwood, FL 32750-4104
Tel. (407) 975-9150
Larry@FirstAmendment.com
Paralegal@FirstAmendment.com

DAPHNE KELLER
Cal. Bar No. 226614
**STANFORD LAW SCHOOL CENTER
FOR INTERNET AND SOCIETY**
559 Nathan Abbott Way
Stanford, CA 94305-8610
Tel. (650) 723-1417
daphnek@law.stanford.edu

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed with the Clerk of the Court for the District of Columbia and served on all counsel of record via the CM/ECF system on October 9, 2018.

/s/ *Robert Corn-Revere*
Robert Corn-Revere

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Woodhull Freedom Foundation, *et al.*,    )
    )
    Plaintiffs,    )
    )
    v.    )    Civil Case No. 18-cv-01552 (RJL)
    )
United States of America, *et al.*,    )
    )
    Defendants.    )
    )
    )

**FILED**

SEP 2 4 2018

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## ORDER

September ____24th____, 2018 [Dkt. ## 5, 16]

**THIS CASE** comes before the Court upon plaintiffs' Motion for Preliminary Injunction [Dkt. # 5] and defendants' Motion to Dismiss [Dkt. #16].

**UPON CONSIDERATION** of the motions, the pertinent portions of the record, and being otherwise fully advised on the matter, it is hereby

**ORDERED** that, for the reasons stated in the accompanying Memorandum Opinion, defendants' Motion to Dismiss [Dkt. # 16] is **GRANTED**, and plaintiffs' Motion for Preliminary Injunction [Dkt. # 5] is **DENIED** as moot.

**SO ORDERED.**

RICHARD J. LEON
United States District Judge

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Woodhull Freedom Foundation, *et al.*,      )
                                             )
                 Plaintiffs,                 )
                                             )
         v.                                  )   Civil Case No. 18-cv-01552 (RJL)
                                             )
United States of America, *et al.*,          )
                                             )
                 Defendants.                 )   **FILED**
                                             )
                                             )   SEP 24 2018
                                             )

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION

September _____24th_____, 2018 [Dkt. ## 5, 16]

On June 28, 2018, plaintiffs filed their complaint challenging the constitutionality of the Allow States and Victims to Fight Online Sex Trafficking Act of 2017, Pub. L. No. 115-164, 132 Stat. 1253 (2018) ("FOSTA" or "the Act"). *See* Compl. ¶ 1 [Dkt. # 1]. The same day, plaintiffs filed a motion for preliminary injunction, asking this Court to enjoin the enforcement of the Act pending the resolution of this litigation. *See* Motion for Preliminary Injunction 1 ("Mot. for Prelim. Inj.") [Dkt. # 5]. Plaintiffs, "advocacy and human rights organizations, two individuals and the leading archival collection of Internet content," raise a bevy of claims. *Id.* at 2. They assert that FOSTA violates the First and Fifth Amendments to the U.S. Constitution, as well as the Ex Post Facto clause of Article I, Section 9. *See* Compl. ¶¶ 126-74. From plaintiffs' perspective, FOSTA offends the Constitution in a variety of ways: it is overbroad, vague, impermissibly targets speech based on viewpoint and content, pares back immunity from certain state law claims, erodes

the scienter requirement, and wrongly criminalizes conduct that was lawful at the time committed. *See id.* Defendants, United States and Attorney General Jefferson B. Sessions (hereinafter "defendants" or "the Government"), disagree. They argue that plaintiffs lack standing to challenge the Act's constitutionality and that, in all respects, FOSTA passes constitutional muster on the merits. For the reasons discussed below, I agree with the defendants and will **DENY** plaintiffs' Motion for Preliminary Injunction [Dkt. # 5], and **GRANT** defendants' Motion to Dismiss ("Mot. to Dismiss") [Dkt. #16].

## I.     Statutory Scheme

The Allow States and Victims to Fight Online Sex Trafficking Act of 2017, Pub. L. No. 115-164, 132 Stat. 1253 (2018) ("FOSTA" or "the Act") passed the House of Representatives and the Senate on February 27, 2018 and March 21, 2018, respectively. President Donald J. Trump signed the bill into law on April 11, 2018, and FOSTA took immediate effect. 132 Stat. 1253, § 4(b).

FOSTA adds one section to the U.S. Code, and amends three others. The Act implements the "sense of Congress" that the Communications Decency Act of 1996, codified in 47 U.S.C. § 230, "was never intended to provide legal protection to websites that unlawfully promote and facilitate prostitution and websites that facilitate traffickers in advertising the sale of unlawful sex acts with sex trafficking victims." 132 Stat. 1253, § 2(1). Indeed, "websites that promote and facilitate prostitution have been reckless in allowing the sale of sex trafficking victims and have done nothing to prevent the trafficking of children and victims of force, fraud, and coercion." *Id.* § 2(2). For this reason, the Act

continues, "clarification of [Section 230] is warranted" in order to ensure that that section does not shield "such websites" from appropriate liability. *Id.* § 2(3).

Section 2421A is the centerpiece of FOSTA and this case. There, the Act creates a federal criminal offense for owning, managing, or operating "an interactive computer service . . . with the intent to promote or facilitate the prostitution of another person," or attempting or conspiring to do so. 18 U.S.C. § 2421A(a). This offense is punishable by fine or up to ten years' imprisonment. *Id.* A defendant facing this charge may avail himself of an affirmative defense, namely that "the promotion or facilitation of prostitution is legal in the jurisdiction where the promotion or facilitation was targeted." *Id.* § 2421A(e). The burden for establishing the affirmative defense lies with the defendant, who must establish this fact by a preponderance of the evidence. *Id.*

Section 2421A further provides for an "aggravated" version of the same offense, punishable by fine or up to twenty-five years' in prison. *See id.* § 2421A(b). The aggravated offense layers additional elements on top of the Section 2421A(a) base offense. Thus, Section 2421A(b) imposes criminal liability on anyone who owns, manages, or operates an interactive computer service with the intent to promote or facilitate the prostitution of another person *and* either (1) "promotes or facilitates the prostitution of five or more persons," *see id.* § 2421A(b)(i), or (2) "acts in reckless disregard of the fact that such conduct contributed to sex trafficking[] in violation of 18 U.S.C. § 1591(a)," *see id.* § 2421A(b)(ii). Section 1591(a), a preexisting provision of the criminal law, prohibits sex

trafficking. *See id.* § 1591(a).[1]  Under Section 2421A(c), victims of violations of Section 2421A(b) may bring civil suits in federal court to "recover damages and reasonable attorneys fees." *Id.* § 2421A(c).  FOSTA also directs the court to order restitution for any violation of subsection (b)(2).

Next, FOSTA amends 47 U.S.C. § 230, the "safe harbor" of the Communications Decency Act of 1996 ("CDA").  Section 230 has two key functions.  First, it immunizes interactive computer services from criminal and civil liability for content created by third parties. *See* 47 U.S.C. § 230(c)(1) (providing that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider"); *id.* § 230(e)(3) (preempting conflicting state and local law); *see also Bennett v. Google, LLC*, 882 F.3d 1163, 1165 (D.C. Cir. 2018) ("The intent of the [Communications Decency Act] is thus to promote rather than chill internet speech."); *see also Jones v. Dirty World Entertainment Recordings LLC*, 755 F.3d 398, 406-07 (6th Cir. 2014) ("Section 230 marks a departure from the common-law rule that allocates liability to publishers or distributors of tortious material written or prepared by others.").  At the same time, however, Section 230 "encourage[s] service providers to self-regulate the dissemination of offensive material over their services." *Bennett*, 882 F.3d at 1165 (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997)).  With

---

[1] Because sex trafficking of minors and sex trafficking "by force, fraud, or coercion" are unlawful in the United States, *see* 18 U.S.C. § 1591, the fact that prostitution is legal in the jurisdiction where the promotion or facilitation is targeted is not an affirmative defense as to subsection (b)(2). *See id.* § 2421A(e).

these two grants of immunity, Section 230 "incentivize[s] companies to neither restrict content nor bury their heads in the sand in order to avoid liability." *Id.*

FOSTA clarifies the scope of Section 230's preemptive effect. The Act states that "nothing in" Section 230(c)(1) – the provision immunizing providers of interactive computer services from liability for the speech of third parties – "shall be construed to impair or limit" three categories of civil claims and criminal prosecutions. *Id.* § 230(e)(5). First, FOSTA makes clear that Section 230 does not preclude civil claims by victims against perpetrators and persons who "receiv[ed] anything of value from participation in a [sex trafficking] venture" under 18 U.S.C. § 1595 if such participation was "knowing" as defined in 18 U.S.C. § 1591. *Id.* § 230(e)(5)(A). Second, Section 230 does not foreclose state criminal prosecution if the conduct underlying the charge would have violated 18 U.S.C. § 1591. *Id.* § 230(e)(5)(B). And third, Section 230 does not preclude state criminal prosecution if the conduct would constitute a violation of 18 U.S.C. § 2421A, the newly-created FOSTA criminal offense. *Id.* § 230(e)(5)(C). These amendments to Section 230 "shall apply regardless of whether the conduct alleged occurred, or is alleged to have occurred, before, on, or after such date of enactment."[2] 132 Stat. 1253, § 4(b).

---

[2] As FOSTA worked its way through the legislative process, the Department of Justice wrote to Rep. Bob Goodlatte, one of the Act's sponsors. *See* 164 Cong. Rec. H1297 (daily ed. Feb. 27, 2018). The letter began by raising some prudential concerns about the necessity of FOSTA and its effectiveness as a law enforcement tool. After making these policy-based complaints, the DOJ expressed concern that the retroactive application of FOSTA's amendment of Section 230 ran afoul of the Ex Post Facto Clause of the U.S. Constitution. In particular, the DOJ wrote, "insofar as [FOSTA] would 'impose[] a punishment for an act which was not punishable at the time it was committed' or 'impose[] additional punishment to that then prescribed,'" it would offend the Ex Post Facto clause. *Id.* (quoting *Cummings v. Missouri*, 4 Wall. 277, 325-26 (1867)).

Next, FOSTA adds a definition to 18 U.S.C. § 1591, the provision of the code that prohibits sex trafficking. There, FOSTA clarifies that the term "participation in a venture" means "knowingly assisting, supporting, or facilitating" sex trafficking. *Id.* § 1591(e)(4). The term "participation in a venture" appears elsewhere in the same section, but had previously been undefined. *See id.* § 1591(a)(2) (criminalizing the knowing "participation in a venture" to cause sex trafficking of an adult by "force, fraud, or coercion" or of a minor).

Fourth, and finally, FOSTA amends Section 1595 of the same title to authorize state attorneys general to bring civil actions *in parens patriae* on behalf of residents of the state who have been "threatened or adversely affected by any person who violates" 18 U.S.C. § 1591. *See* 18 U.S.C. § 1595(d). In layman's terms, Section 1595 allows state attorneys general to step into the shoes of victims and bring civil suits on their behalf. *Id.*

## II.    Parties

The Woodhull Freedom Foundation ("Woodhull") is an advocacy and lobbying organization focused on "affirming and protecting the fundamental human right to sexual freedom." Declaration of Ricci Levy in Support of Motion for Preliminary Injunction ("R. Levy Decl.") ¶ 3 [Dkt. # 5-2]. It provides "support for the health, safety, and protection of sex workers, which include adult film performers, live webcam models, sexual wellness instructors, exotic dancers, escorts, and prostitutes." *Id.* ¶ 5. Woodhull "strongly opposes sex trafficking or sexual assault in any form, while advocating for the right to engage in consensual sexual activity." *Id.* The organization maintains a website, *id.* ¶ 8, blog, *id.* ¶ 9, and social media accounts, *id.* ¶ 12.

6

Woodhull's "signature event" is the annual Sexual Freedom Summit, held in the Washington, D.C. area. *See id.* ¶¶ 16-26. The Summit "brings together hundreds of educators, therapists, legal and medical professionals," *id.* ¶ 16, and features "workshops devoted to issues impacting sex workers, such as harm reductions, disability, age, health, and personal safety," *id.* ¶ 17. The most recent Summit took place while this litigation was pending, from August 2-5, 2018 in Alexandria, Virginia.[3] As part of the Summit, Woodhull represented that it intended to use social media, such as Facebook Live and Twitter, to reach individuals unable to attend in person. *Id.* ¶ 24. Livestreamed events included titles such as "Criminalization of Sex Work is a Human Rights Violation and a Labor Rights Concern," "FOSTA! How Congress Broke the Internet," and "Sexual Freedom in the Age of Trump." *See* https://www.sexualfreedomsummit.org/. Woodhull's President, Ricci Levy, represents that the organization has "a well founded fear" of prosecution under FOSTA based on "its efforts to promote information about sex workers on the Internet." Levy Decl. ¶¶ 37-38.[4]

The second named plaintiff, Human Rights Watch ("HRW"), monitors potential violations of human rights around the world. Declaration of Dinah PoKempner

---

[3] As discussed below, plaintiffs requested a ruling from this Court on the motion for preliminary injunction prior to the Summit. Nevertheless, the Summit took place and, so far as the Court is aware, no prosecutions or civil suits have ensued against Woodhull for its sponsorship of the Summit.

[4] Woodhull's President, Ricci Levy, avers that the organization has taken precautionary steps to avoid FOSTA liability. These prophylactic steps included refraining from publishing articles on the Woodhull website concerning FOSTA and its effect on sex workers. Levy Decl. ¶ 28. Those planned articles and blog posts would have advocated against the enforcement of FOSTA, and "educated [sex workers] about their rights, risks, and options under the new legal environment." *Id.* In addition, Woodhull initially decided to self-censor the promotion of workshops related to sex workers at the Summit, although it eventually reversed this position and advertised for those events on its website and by way of social media. *Id.* ¶¶ 32-33, 36.

("PoKempner Decl.") ¶¶ 2-3 [Dkt. # 5-3]. As part of this mission, HRW does research and advocacy on behalf of sex workers, including in favor of decriminalization. *Id.* ¶¶ 2-5. HRW's body of work includes reporting on such issues as "police searches of women for condoms as evidence of prostitution" in the United States. *Id.* ¶ 5. Nevertheless, like Woodhull, HRW is fiercely opposed to "[f]orced prostitution and trafficking." *Id.* ¶ 7. And, like Woodhull, HRW details its "concern[]" about potential FOSTA liability "[d]espite the[] clear distinctions in [its] policy" between advocacy for decriminalization of consensual prostitution and opposition to forced prostitution and sex trafficking. *Id.* ¶ 8.[5]

Plaintiffs also include two individuals. The first, Eric Koszyk, is a licensed massage therapist in Portland, Oregon, and the sole proprietor of Soothing Spirit Massage, a massage parlor that he has run for over a decade. *See* Declaration of Eric Koszyk (Koszyk Decl.) ¶¶ 1-2, 5 [Dkt. # 5-4]. He uses Craiglist ads to attract over 90% of his customers, and finds Craigslist to be the "easiest and best way to reach clients" for his massage business. *Id.* ¶¶ 6, 9. Koszyk placed his ads in the "Therapeutic Services" section of Craigslist, and specified that he was "a man providing massage therapy" and that his "services were professional and therapeutic." *Id.* ¶ 7. Following passage of the Act, Craigslist has taken down Koszyk's ads, and has refused to allow him to post new ads. *Id.*

---

[5] HRW also reports that "it is concerned that social media platforms and websites that host, disseminate, or allow users to spread [its] reports and advocacy materials" may be affected by Section 2421A. PoKempner Decl. ¶ 9.

¶¶ 22-23. As a result, Koszyk represents that he "no longer [has] a place on the website to advertise [his] services as a licensed massage therapist." *Id.* ¶ 23.[6]

Jesse Maley is a self-described advocate for "sex workers' health, safety, and human rights." Declaration of Jesse Maley (Maley Decl.) ¶ 1 [Dkt. # 5-5]. In her professional life, Maley goes by the name "Alex Andrews." *Id.* ¶ 2.[7] Maley co-founded and continues to manage a website entitled ratethatrescue.org ("Rate That Rescue"), a "sex worker-led, public, free community effort" intended to educate sex workers about organizations used by sex workers. *Id.* ¶ 13. The term "Rescue" refers to so-called rescue organizations, which seek to "assist or rescue sex workers." *Id.* ¶ 14. Some rescue organizations, at least in Maley's view, do more harm than good by failing to distinguish between consensual and coerced sex work and "treat[ing] all sex workers as victims." *Id.* ¶ 16.

With this in mind, Maley co-founded Rate That Rescue in order to inform and educate sex workers about the nature and mission of various rescue organizations. Since its founding in 2015, the website has expanded to provide information on all manner of organizations "unrelated to . . . sex work," but nevertheless relied on by sex workers. *Id.* ¶ 17. Those include organizations that address substance abuse, health care, and child care.

---

[6] Koszyk states in his declaration that "other licensed and certified massage therapists experienced similar problems with their advertisements on Craiglist." Koszyk Decl. ¶ 26.

[7] In addition to her work for Rate That Rescue, Maley is the treasurer and a member of the board of directors of the Sex Workers Outreach Project USA ("SWOP USA"), the founder of the Orlando chapter of SWOP, and the founder of "SWOP Behind Bars." *Id.* ¶¶ 3, 7-8. SWOP USA is a "national social justice network" that advocates for the decriminalization of sex work; it operates a national hotline and has local chapters. *Id.* ¶¶ 3-6. SWOP Behind Bars has a more narrow focus, offering support to incarcerated sex workers by way of a support line, an electronic newsletter, and a re-entry guide for those leaving prison. *Id.* ¶¶ 8-10. Although SWOP is not a party to this case, Maley represents that SWOP has chosen not to purchase a mobile application out of concern for liability under FOSTA. *Id.* ¶¶ 32-39.

*Id.* ¶¶ 17, 22. Listings of organizations specify basic information – a brief description of the organization, contact information, the type of service offered – and include ratings on a 1 to 5 scale by users, as well as comments by those users. *Id.* ¶¶ 21-22.

Rate That Rescue relies on ratings and reviews added by unpaid, volunteer third parties. *See id.* ¶ 25. It does so on the thinking that sex workers who have received services from organizations will be in the best position to rate their effectiveness. *Id.* ¶ 18. Users, acting by name or anonymously, can create listings for particular organizations and post reviews on existing listings. *Id.* ¶ 19. Rate That Rescue also allows the rated organizations to modify existing listings, and respond to users' comments. *Id.* ¶ 20.[8] In her declaration, Maley relays that, with FOSTA on the books, she is "extremely worried that Rate That Rescue is potentially criminally liable for the speech of [its] users." *Id.* ¶ 26. Maley's declaration discusses this concern at length, reciting various legal theories under which Rate That Rescue could be liable under FOSTA. *See id.* ¶¶ 24-31.

The Internet Archive ("the Archive") is an organization that archives internet webpages. Declaration of Brewster Kahle (Kahle Decl.) ¶¶ 4-7 [Dkt. # 5-6]. The Archive's mission is to preserve digital materials in order to prevent them from "disappearing into the past." *Id.* ¶ 4. It has a function that "crawl[s]" across webpages, mapping and storing those pages in order to preserve them for future use. *Id.* ¶ 7. The Archive collects and stores 80 million pages per day, and includes 330 billion web pages from 1996 to the

---

[8] Maley's declaration records a 1993 conviction for "aggravated promotion of prostitution in violation of Texas law," based on her operation of an escort service in San Antonio. *Id.* ¶ 11. The court imposed ten years' probation; that probation period was terminated in 2001. *Id.* Maley represents that she "no longer operate[s] the escort service," and has not since her conviction. *Id.*

present. *Id.* ¶¶ 7-8. It therefore comes as no surprise that "[t]he vast majority of the material in the Internet Archive's collection is authored by third parties." *Id.* ¶ 4. In addition, third parties can make their own contributions to this site, supplementing the Archive's collection by uploading stored webpages from the past. *Id.* ¶ 13. The general public uploads roughly 20,000 items per day to the Archive. *Id.* Although the Archive does "at times" remove content, it has "no practical ability to evaluate the legality of any significant portion of the third-party content that it archives and makes available." *Id.* ¶ 14. The Archive's founder, Brewster Kahle, avers that he is "afraid" that FOSTA will result in criminal or civil liability for the Archive. *Id.* ¶ 21.

### III.   Procedural History

Plaintiffs filed this complaint on June 28, 2018. *See* Compl. 1 [Dkt. # 1]. The same day, they moved for a preliminary injunction pursuant to Fed. R. Civ. P. 65(a). *See* Mot. for Prelim. Inj. 1 [Dkt. # 5]. This Court set a hearing on July 19, 2018 for oral argument on the Motion. *See* 7/5/2018 Min. Order. Prior to oral argument, the Court twice extended briefing deadlines to afford the parties more time to develop their arguments. *See* 7/5/2018 Min. Order; 7/10/2018 Min. Order. On July 12, 2018, defendants filed their Opposition to Plaintiffs' Motion for Preliminary Injunction [Dkt. # 15] and Motion to Dismiss ("Mot. to Dismiss") [Dkt. # 16], and, on July 17, 2018, plaintiffs filed a Reply in support of their Motion for Preliminary Injunction ("Pls.' Reply") [Dkt. # 17] and, on July 29, 2018, an Opposition to defendants' Motion to Dismiss [Dkt. # 19].

At the hearing, plaintiffs requested a ruling on their motion for preliminary injunction *prior* to Woodhull's Sexual Freedom Summit, scheduled for August 2-5, 2018.

I advised the parties that, due to plaintiffs' decision to wait to challenge FOSTA until months after its passage, as well as the novelty of the issues presented in plaintiffs' complaint, this Court would not be in a position to rule and issue a lengthy opinion within the two weeks remaining prior to the Summit. 7/19/2018 Hr'g Tr. 13:25-15:9 [Dkt. # 23]. Nevertheless, I pledged to issue an opinion as soon as practicable, and gave the parties the opportunity to supplement their briefing within seven days of the publication of the hearing transcript. *Id.* 41:5-8, 42:16-19. The briefing was finalized on August 6, 2018. *See* Defs.' Reply in Support of Motion to Dismiss and Supp. Mot. Hearing Br. [Dkt. # 21]; Supp. Br. in Support of Pls.' Mot. for Prelim. Inj. [Dkt. # 22].

## IV.    Standard of Review

Plaintiffs ask this Court to issue a preliminary injunction blocking the enforcement of FOSTA. The test for this "extraordinary remedy" is well known. *Pursuing America's Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 505 (D.C. Cir. 2016) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). In order to receive a preliminary injunction, plaintiffs must make a "clear showing" that four factors, taken together, warrant relief. *Id.* These factors are "[1] likely success on the merits, [2] likely irreparable harm in the absence of preliminary relief, [3] a balance of the equities in [their] favor, and [4] accord with the public interest." *Id.* (citing *Winter*, 555 U.S. at 20); *see also Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291-92 (D.C. Cir. 2009).

Defendants, for their part, assert that the case should be dismissed for want of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). In particular, defendants assert that plaintiffs have failed to satisfy the requirements of Article III standing to sue. It is, of

course, black-letter law that the jurisdictional requirements of Article III must be present before this Court may proceed to the merits. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94-95 (1998). Indeed, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Plaintiffs bear the burden of establishing, by preponderance of the evidence, that this Court has subject-matter jurisdiction over their claims. *See Spokeo Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016). At the pleading stage, this means that plaintiffs must "clearly . . . allege facts demonstrating" each element of Article III standing. *Id.* (quoting *Warth v. Seldin,* 422 U.S. 490, 518 (1975)). When reviewing a Rule 12(b)(1) motion to dismiss on jurisdictional grounds, "the Court must accept as true all of the factual allegations contained in the complaint." *U.S. ex rel. Digital Healthcare, Inc. v. Affiliated Computer Servs.,* 778 F. Supp. 2d 37, 43 (D.D.C. 2011). That said, I need not "accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." *Rann v. Chao,* 154 F. Supp. 2d 61, 64 (D.D.C. 2001).

Defendants also move for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), on the grounds that plaintiffs have failed to state a claim upon which relief can be granted. As with the Rule 12(b)(1) motion, for purposes of Rule 12(b)(6), this Court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged" without crediting unsupported inferences from those factual allegations, or legal conclusions couched as facts. *See Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp.,* 642 F.3d

1137, 1139 (D.C. Cir. 2011) (citation and quotation marks omitted); *Rann*, 154 F. Supp. 2d at 64.[9]

## V.    Discussion

Article III limits the jurisdiction of the federal courts to the adjudication of "Cases" and "Controversies" — that is, "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." *Steel Co.*, 523 U.S. at 95. "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). Standing "'serves to prevent the judicial process from being used to usurp the powers of the political branches,' and confines the federal courts to a properly judicial role." *Spokeo*, 136 S. Ct. at 1547 (quoting *Clapper*, 568 U.S. at 408).[10] Given these separation of powers concerns, the Supreme Court has emphasized that the "standing inquiry has been especially rigorous when reaching the merits of the dispute would force us to decide whether an action taken by one of the other two branches of the

---

[9] Some cases suggest a discrepancy in the standard of review between Rule 12(b)(1) and Rule 12(b)(6) motions, with the former requiring more searching scrutiny on the part of the Court than the latter. *See, e.g.*, *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001) ("[P]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."). Because plaintiffs fail adequately to allege Article III standing to sue, I need not determine what daylight, if any, exists between the 12(b)(1) and 12(b)(6) standards.

[10] Article III standing also helps to ensure that the plaintiff maintains "a 'personal stake in the outcome of the controversy.'" *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quoting *Warth*, 422 U.S. at 498). For this reason, in order to show standing, plaintiffs must "'allege[] such a personal stake in the outcome of the controversy' as to warrant [their] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [their] behalf." *Warth*, 422 U.S. at 498-99 (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

Federal Government was unconstitutional." *Clapper*, 568 U.S. at 408 (quoting *Raines*, 521 U.S. at 819-20).

The "irreducible constitutional minimum" of Article III standing contains three elements. *Spokeo*, 136 S. Ct. at 1547 (quoting *Lujan*, 504 U.S. at 560). The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Id.* (citing *Lujan*, 504 U.S. at 560–61).[11] Of these elements, the "[f]irst and foremost" is the injury in fact requirement. *Id.* (quoting *Steel Co.*, 523 U.S. at 103).

As the Supreme Court has explained, in order to establish injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). Imminence, the element most relevant here, "is concededly a somewhat elastic concept." *Clapper*, 568 U.S. at 409 (quoting *Lujan*, 504 U.S. at 565 n.2). Nevertheless, imminence "cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes – that the injury is *certainly* impending." *Id.* (quoting *Lujan*, 504 U.S. at 565 n.2) (emphasis in original). Thus, mere allegations of "*possible* future injury"

---

[11] There is some confusion as to whether the Court may fold the Article III standing inquiry, in the context of a preliminary injunction, into its assessment of the likelihood of success on the merits. *See, e.g., Kingman Park Civic Ass'n v. Gray*, 956 F. Supp. 2d 230, 241 (D.D.C. 2013) (analyzing standing as part of the "likelihood of success on the merits" prong to the preliminary injunction test). Article III standing, however, is a component of subject-matter jurisdiction; as such, it does not go to the merits, but to the very authority this Court has to entertain the case before it. *See Steel Co.*, 523 U.S. at 89-90. For this reason, I will address the question of Article III standing to sue before considering the four-factor preliminary injunction test.

cannot suffice for purposes of the injury in fact requirement. *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 1990)) (allegations in original); *see also Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014) ("[W]e have permitted pre-enforcement review under circumstances that render the threatened enforcement sufficiently imminent.").

The concept of imminence has been particularly important in the context of pre-enforcement challenges. The Supreme Court has held that "[a] plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). A credible threat of prosecution exists when the challenged law "is aimed directly at plaintiffs, who, if their interpretation of the statute is correct, will have to take significant and costly compliance measures or risk criminal prosecution." *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392 (1988). Thus, fear of prosecution cannot be "imaginary or wholly speculative," *Babbitt*, 442 U.S. at 302, and "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm," *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972).

Our Circuit Court has stated that the question whether "a threat of prosecution adequate to satisfy the requirements of justiciability [exists] in any particular preenforcement challenge is a factual and case-specific one." *Navegar, Inc. v. United States*, 103 F.3d 994, 999 (D.C. Cir. 1997). As such, I must look to the "full panoply of circumstances relevant to the plaintiffs' claim of an imminent threat of prosecution." *Id.* Those factors "may include the history of enforcement of the challenged statute to like

16

facts [and] any threats of enforcement." *Johnson v. Dist. of Colum.*, 71 F. Supp. 3d 155, 160 (D.D.C. 2014); *see also Seegars v. Gonzales*, 396 F.3d 1248, 1252 (D.C. Cir. 2005) (summarizing analysis of pre-enforcement standing); *Blum v. Holder*, 744 F.3d 790, 798 (1st Cir.), *cert. denied*, 135 S. Ct. 477 (2014) (applying *Clapper* to First Amendment claim).[12]

Plaintiffs assert that they face a credible threat of prosecution under FOSTA. Reply at 2. They claim that the statute's broad sweep places them in criminal and civil jeopardy for their educational and advocacy efforts concerning "sex work." *See id.* The mere threat of prosecution, plaintiffs maintain, itself works an injury by chilling their speech. *See id.* at 2-3. The Government, for its part, contends that plaintiffs' conduct, as described in the declarations accompanying plaintiffs' Motion for Preliminary Injunction, would *not* fall within FOSTA's ambit. As such, it contends that plaintiffs lack standing to challenge the Act's constitutionality, because, without a credible threat of prosecution, they have suffered no cognizable injury. For the following reasons, I agree with the Government.

Plaintiffs have the burden of establishing that their conduct is arguably "proscribed by [the challenged] statute," *Susan B. Anthony List*, 134 S. Ct. at 2342. As such, I must compare the terms of FOSTA with plaintiffs' actual and proposed conduct in order to ascertain whether plaintiffs have adequately alleged standing. Although plaintiffs'

---

[12] To be sure, I "cannot construe a criminal statute on the assumption that the Government will 'use it responsibly.'" *McDonnell v. United States*, 136 S. Ct. 2355, 2372-73 (2016) (quoting *United States v. Stevens*, 559 U.S. 460, 480 (2010)). As explained below, however, the Government presents a strong textual case, along with a persuasive body of evidence concerning prosecution under an analogous statute, in support of its reading of FOSTA. Those sources are the basis for this Court's holding – not the representations of the Government as to its intended exercise of prosecutorial discretion.

17

declarations each contain pre-packaged assertions as to the legality of their proposed conduct, those legal conclusions are not binding on this Court. *See Doe v. Rumsfeld*, 683 F.3d 390, 391 (D.C. Cir. 2012). Therefore, the following is a plaintiff-by-plaintiff review of the alleged conduct and claimed bases for prosecution.

### A. Woodhull Freedom Foundation

What is it that plaintiffs plan to do ? Woodhull's Motion for Preliminary Injunction cited its annual Sexual Freedom Summit, scheduled to take place in Virginia from August 2-5, as the primary basis for standing. That event has now taken place. The Summit, the Court is told, featured workshops on topics such as "Sex and Disability: Shifting the Focus to Disabled Sex Workers" and "Capitalism is not Consensual: Sex Workers and the Shaky Foundations of Consent." Levy Decl. ¶ 22. As part of the summit, Woodhull used social media, such as Facebook Live and Twitter, to reach individuals unable to attend in person. *Id.* ¶¶ 24-26. Livestreamed events included titles such as "Criminalization of Sex Work is a Human Rights Violation and a Labor Rights Concern," "FOSTA! How Congress Broke the Internet," and "Sexual Freedom in the Age of Trump." https://www.sexualfreedomsummit.org/.

Woodhull does not assert that, by livestreaming or promoting its workshops, or publishing biographies and contact information of sex workers, it intends to facilitate acts of prostitution by those sex workers. Compl. ¶¶ 74, 80-81. Nevertheless, Woodhull believes that federal, state, or local authorities could wield "the broad, vague, and undefined prohibitions contained in FOSTA" against it for having sponsored the Sexual Freedom Summit. Reply at 3. That is so because, under Woodhull's reading of the statute,

18

FOSTA does not "suggest discernable limits for what might constitute promotion or facilitation of prostitution or trafficking." Mot. for Prelim. Inj. at 20.

Woodhull is particularly concerned with Section 2421A's use of the terms "promoting" and "facilitating." *See, e.g.*, 7/19/2018 Hr'g 6:16-22 (stating that Woodhull "provide[s] workshops for sex workers, again, to provide safety information, to advocate on their behalf. . . . [T]hey are concerned that that would be considered by some to be promotion or facilitation of prostitution, in violation of the law."); *see also id.* 7:3-5 (complaining that Woodhull has been "hampered in promoting" the Summit due to FOSTA). FOSTA does not define those terms, and plaintiffs believe that they could sweep broadly – so broadly, in fact, that they could place any activity that arguably "make[s] prostitution easier" within the sweep of the statute. Mot. for Prelim. Inj. at 21. Indeed, plaintiffs assert that Section 2421A can be construed to criminalize any conduct that "make[s] prostitution easier" or more likely. *Id.*

Unfortunately for Woodhull, plaintiffs marshal precious little authority in support of this construction. First, plaintiffs cite one case from the Northern District of Illinois and two Seventh Circuit opinions. They do so in support of the proposition that merely providing a platform for speech of someone who might commit illegal acts "does not satisfy the ordinary understanding of culpable assistance to a wrongdoer." *Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003); *see also In re Aimster Copyright Litig.*, 334 F.3d 643, 651 (7th Cir. 2003); *Dart v. Craigslist*, 665 F. Supp. 2d 961, 967 (N.D. Ill. 2009). That line of cases, however, only reaffirms the Government's position ! That is so because those opinions reaffirm that, for platforms said to promote or facilitate particular illegal

19

acts, the law imposes a heightened *mens rea* requirement. *See GTE Corp.*, 347 F.3d at 659 (stating that the activity of the internet service provider "does not satisfy the ordinary understanding of culpable assistance to a wrongdoer, which requires a *desire* to promote the wrongful venture's success" (emphasis added)). Indeed, Section 2421A contains just such a heightened *mens rea* requirement, demanding that the Government prove *intent* – rather than knowledge, or even recklessness – to promote or facilitate. 18 U.S.C. § 2421A(a).[13]

Then, in a footnote, plaintiffs cite the Oxford English Dictionary's definition of "promote" as "to advance or actively support," *see* Oxford English Dictionary (3d ed. 2007), and Black's Law Dictionary's definition of "to facilitate" as "to make the occurrence of (something) less difficult," *see* Black's Law Dictionary (10th ed. 2014). *See* Mot. for Prelim. Inj. at 24 n.9. Those definitions, however, do not shed light on Section 2421A as a whole. Instead, they strip "promote" and "facilitate" from the rest of Section 2421A(a), ignoring both the *mens rea* requirement and the language "prostitution of another person," which denotes specific unlawful acts. Plaintiffs' preferred method of statutory interpretation turns a blind eye to "the specific context in which that language is used, and the broader context of the statute as a whole." *Nat'l Veterans Legal Servs. Program v. United States*, 291 F. Supp. 3d 123, 138-39 (D.D.C. 2018) (quoting *United States v. Wilson*, 290 F.3d 347, 352-53 (D.C. Cir. 2002)).

---

[13] Plaintiffs attempt to make much of the fact that Section 2421A(b)'s aggravated offense punishes conduct based on a scienter of recklessness. But the subsection (b) aggravated offense requires *both* intent as to the promotion or facilitation of particular acts of prostitution, *as well as* recklessness with respect to whether that conduct constitutes sex trafficking as defined in 18 U.S.C. § 1591. Thus, it cannot be said that the aggravated offense punishes conduct solely on the basis of a *mens rea* of recklessness.

Woodhull's construction of Section 2421A is flawed for additional reasons. First, Section 2421A mirrors an existing federal criminal law, the "Travel Act," 18 U.S.C. § 1952. The history of enforcement of the Travel Act gives a sense both of the meaning of the plain text of Section 2421A, and of the likelihood of enforcement for specific conduct. The Travel Act bars the use of "any facility in interstate or foreign commerce" (such as the Internet) with the intent to "promote, manage, establish, carry on, or facilitate the promotion, management, establishing, or carrying on, of any unlawful activity," including "prostitution offenses in violation of the laws of the State in which they are committed or of the United States." 18 U.S.C. § 1952(a)(3), (b).

Woodhull does not present the Court with *any* example of prosecution under the Travel Act that tracks its own theory of FOSTA's vast sweep. In *United States v. Bennett*, the Ninth Circuit affirmed the district court's jury instruction, in a prosecution under the Travel Act, that "'to promote' or 'facilitate the promotion of' any illegal activity means to do an act that would cause the activity to be accomplished or to assist in the activity." 95 F.3d 1158 (9th Cir. 1996). This definition, with language like "cause the activity to be accomplished," or "assist in the activity," reflects the close causal connection required for prosecution under the Travel Act. Not surprisingly, recent prosecutions reflect the close connection between "promoting" and "facilitating" and the underlying, particular criminal act. *See, e.g.*, *United States v. Reiner*, 500 F.3d 10, 12-19 (1st Cir. 2007); *United States v. Seals*, 5:10–CR–50127 (TLB), 2014 WL 3847916, at *7-8 (W.D. Ark. Aug. 5, 2014).

To be sure, plaintiffs attempt to distinguish Section 2421A from the Travel Act. They maintain that the Travel Act, unlike Section 2421A, proscribes specific acts of

21

prostitution as defined in state law. Those state law violations are thus a predicate to a Travel Act offense. By contrast, plaintiffs say, FOSTA criminalizes "anything that promotes or facilitates prostitution, and not a specific crime." 7/19/2018 Hr'g Tr. 16:10-13. This is particularly problematic because prostitution "is an area where there has been significant advocacy, both by government entities and by private citizens." *Id.* at 16:14-16. As plaintiffs see it, that advocacy places them in FOSTA's crosshairs.

In pressing this argument, however, plaintiffs ignore key textual indications that make clear that FOSTA targets specific acts of illegal prostitution – not the abstract topic of prostitution or sex work. *See United States v. Williams*, 553 U.S. 285, 294 (2008); *cf. South Carolina v. Catawba Indian Tribe, Inc.*, 476 U.S. 498, 510 n.22 (1986) ("It is an elementary canon of construction that a statute should be interpreted so as not to render one part inoperative." (citation omitted)). First, the text of Section 2421A criminalizes the conduct of owning, operating, or managing an interactive computer service with the intent to promote or facilitate "the *prostitution of another person*." 18 U.S.C. § 2421A(a) (emphasis added). The reference to "the prostitution of another person" is plainly calculated to ensnare only specific unlawful acts with respect to a particular individual, not the broad subject-matter of prostitution. This reading of Section 2421A(a) is confirmed by Section 2421A(e), which states that the fact that prostitution is legal "in the jurisdiction where the promotion or facilitation was targeted" is an affirmative defense. *Id.* § 2421A(e). By making reference to the laws of specific "jurisdiction[s]," Section 2421A(e)'s affirmative defense tethers subsection (a)'s prohibition on acts intended to promote or facilitate "the prostitution of another person" to specific crimes much in the way that the

22

Travel Act does. Put differently, the Government may prosecute under Section 2421A only for acts that are otherwise illegal under existing federal or state law.

Plaintiffs also insist that, by virtue of the language "own, manage, or operate an interactive computer service," Section 2421A impermissibly targets speech. I disagree. It is black-letter law that speech that "is intended to induce or commence illegal activities" is *not* protected by the First Amendment. *Williams*, 553 U.S. at 297; *see also Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 388-89 (1973) ("We have no doubt that a newspaper constitutionally could be forbidden to publish a want ad proposing a sale of narcotics or soliciting prostitutes."). As the Supreme Court has explained, "offers to give or requests to receive what it is unlawful to possess have no social value" and thus are not entitled to the protections of the First Amendment. *Id.* Indeed, the statute upheld against an over-breadth challenge in *Williams* – which imposed a criminal penalty for knowingly "advertis[ing], promot[ing], present[ing], distribut[ing], or solicit[ing]" child pornography – bears resemblance to FOSTA's prohibition on "promot[ing]" or "facilitate[ing]" unlawful prostitution. 553 U.S. at 289-90.

And that is to say nothing of Section 2421A's *mens rea* requirement, which only further narrows that provision's scope. Section 2421A will require the Government to show not simply that the defendant was aware of a potential result of the criminal offense, but instead that the defendant intended to "explicitly further[]" a specified unlawful act. *See United States v. Brown*, 186 F.3d 661, 670 (5th Cir. 1999). Woodhull's Sexual Freedom Summit shares, at most, a "weak . . . nexus" with illegal prostitution, and does not approach the high bar required under Section 2421A's *mens rea* standard. *Id.* All told,

23

Woodhull has failed to meet its burden in persuading the Court that it faces any credible threat of prosecution. Nor has it identified any other cognizable injury in fact necessary for standing to pursue this case.[14]

## B. Human Rights Watch

The second plaintiff, Human Rights Watch, shares similar concerns to those of Woodhull. HRW advocates for sex worker rights and safety across the globe, and documents "abuses against sex workers in the United States, Lebanon, and South Africa." PoKempner Decl. ¶ 5. In addition, HRW has reported on "police searches of women for condoms as evidence of prostitution in four U.S. cities." *Id.* This advocacy and reporting, HRW asserts, make sex work "safer and thus easier." Reply at 5. For instance, HRW's reporting on policing methods "forewarn sex workers about methods police use to discover and shut down sex work, thus making it easier for sex workers to avoid detection by law enforcement." *Id.* But, again, the record contains no indication that HRW, through its advocacy and educational work, intends to promote or facilitate specific acts of prostitution in violation of state or federal law. Without that *mens rea*, there is no credible threat of prosecution, and thus no standing to bring this pre-enforcement challenge.

## C. Jesse Maley *a/k/a* Alex Andrews

Next, Jesse Maley, *a/k/a* Alex Andrews, the creator and operator of ratethatrescue.org ("Rate That Rescue"), fears prosecution for her efforts to use that

---

[14] In arguing that Section 2421A sweeps broadly, plaintiffs lean on statements made in legislative history. But it is beyond dispute that legislative history is useful *only* when the text itself is ambiguous. In this case, my "inquiry ceases" because "the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Sebelius v. Cloer*, 569 U.S. 369, 380 (2013) (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002)).

website to "make sex work safer and thus easier." *Id.* at 4-5 & n.5. As I noted earlier, Rate That Rescue aggregates reviews and ratings by third parties. Those third parties provide, as counsel explained at oral argument, "information about bad dates" and "dangerous situations" in order to "keep women safe." 7/19/2018 Hr'g 5:17-24. In addition, Maley states that Rate That Rescue maintains a forum for information on organizations that, although not directly related to sex work as such, provide services used by sex workers, such as "housing, childcare, counseling, [and] education." Maley Decl. ¶ 22.

Under Maley's reasoning, because providing housing or childcare services to sex workers "make[s] sex work easier," Rate That Rescue could be said to promote or facilitate prostitution. Reply at 4-5. For this reason, Maley fears that FOSTA's amendments to Section 230 – which clarify that immunity does not extend to conduct made unlawful by Section 2421A – could expose her to prosecution for the speech of third parties on Rate That Rescue. *See id.* As a precaution, Maley has "put on hold her acquisition of an in-development reporting application" for mobile devices, although she continues to maintain the website itself. *Id.* at 4. Her concerns, however, are unwarranted.

Put simply, Maley has failed to show that FOSTA's Section 230 amendments expose her to a credible threat of prosecution. That is so because Maley, on the current record, lacks the *mens rea* to violate any of the provisions specified in Section 230(e)(5). As I noted earlier, FOSTA amends Section 230 by adding Section 230(e)(5), which clarifies that Section 230(b) does *not* preclude liability under certain provisions of the U.S. Code. Section 230(e) mentions three provisions in particular: state law prosecutions for conduct banned by the newly-created Section 2421A; state law prosecutions for conduct

25

banned by 18 U.S.C. § 1591, which forbids the sex trafficking of adults by "force, fraud, or coercion" and of minors categorically; and 18 U.S.C. § 1595, which supplies a civil remedy for victims of the criminal conduct described in Section 1591.

In managing Rate That Rescue, Maley cannot possibly be said to act "with the intent to promote or facilitate the prostitution of another person" in violation of Section 2421A. Maley's declaration concedes as much, repeatedly expressing concern that law enforcement *could* determine that "the user-generated content on Rate That Rescue promotes or facilitates prostitution," *id.* ¶ 29; *see also id.* ¶ 30. But those formulations lack the critical *mens rea* element of the Section 2421A offense. Indeed, Maley herself does not even assert that law enforcement could credibly contend that, in managing Rate That Rescue, she acts "with the intent to promote or facilitate" the prostitution of another person. 18 U.S.C. § 2421A(a). Of course, the mere promotion or facilitation of prostitution is not enough: Maley must *intend* that her conduct produce the specific result. *Id.* Maley, not surprisingly, does not represent that she has any such intent in managing Rate That Rescue, and the record before this Court presents no basis for inferring that *mens rea*. *Cf. id.* ¶ 18 (explaining Rate That Rescue's goal of helping "sex workers get information about . . . organizations based on the experiences of other sex workers"), ¶¶ 19-24 (summarizing Rate That Rescue posting and editing process), ¶ 25 (stating that Rate That Rescue has "no revenue," "is run by volunteers," and is "unable to actively or comprehensively review, edit, or moderate user-generated content").

Nor do Sections 1591 and 1595 furnish a basis for holding Maley criminally or civilly liable, at least based on the record before this Court. The record is barren of *any*

26

evidence suggesting that Rate That Rescue has ever hosted content assisting the sex trafficking of minors, such that Andrews could be liable for "knowingly" participating in a venture that "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, or solicits by any means a person . . . knowing . . . [1] that means of force . . . will be used to cause the person to engage in a commercial sex act, or [2] that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act." 18 U.S.C. § 1591; *see id.* § 1595 (providing civil cause of action for victims of conduct unlawful pursuant to 18 U.S.C. § 1591).

### D. Eric Koszyk

Next, Eric Koszyk, a licensed therapist, maintains that he has standing to sue because Craigslist eliminated its Therapeutic Services section "as a direct response to FOSTA." Reply at 6. Koszyk represents that he cannot operate his business without Craigslist. That injury traces to FOSTA's enactment, and can be redressed by a ruling invalidating the Act and "leading" Craiglist to re-open its Therapeutic Services webpage. Reply at 6-7; Compl. ¶ 101; D'Amato Decl. ¶ 10.

Unfortunately for Koszyk, he cannot establish redressability under the relevant precedents. That is so because Koszyk has not established that a victory "will likely alleviate the particularized injury alleged." *West v. Lynch*, 845 F.3d 1228, 1235 (D.C. Cir. 2017). It is well established that a plaintiff lacks standing when the "redress for its injury depends entirely on the occurrence of some other, future event made no more likely by its victory in court." *Teton Historic Aviation Found. v. U.S. Dep't of Defense*, 785 F.3d 719, 726 (D.C. Cir. 2015). When, as here, a third party "can exercise 'broad and legitimate

discretion the courts cannot presume either to control or to predict,' a court is generally unable to redress the alleged injury and, accordingly, standing is found wanting." *Nyambal v. Mnuchin*, 245 F. Supp. 3d 217, 224 (D.D.C. 2017) (citation omitted); *see also Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42-43 (1976).

### E. The Internet Archive

Finally, the Internet Archive "intentionally stores and displays a vast amount of both historical website data and third-party content that it has no 'practical ability to evaluate the legality of.'" Reply at 6 (quoting Kahle Decl. ¶ 14). Although the Internet Archive represents that it does not intend to promote sex trafficking or prostitution, it believes that the Section 230 amendments – and the ambiguity of their scope – may expose it to liability. Once again, however, there are no facts in the record supporting an inference of the *mens rea* standard necessary to peel back Section 230's protections. The Internet Archive's practice of sweeping up vast amounts of content from the web for indefinite storage, Kahle Decl. ¶ 7-8, and its attested practical inability to review the legality of that third-party content, *id.* ¶ 14, mean that that entity simply cannot meet the stringent *mens rea* standard required for liability under Sections 2421A, 1591, or 1595.

## CONCLUSION

Thus, for all the above reasons, plaintiffs have each failed to adequately allege standing. As such, this Court lacks subject matter jurisdiction over their claims, Fed. R. Civ. P. 12(h)(3), and must **GRANT** defendants' Motion to Dismiss [Dkt. # 16] and **DENY** as moot plaintiffs' Motion for Preliminary Injunction [Dkt. # 5]. A separate order consistent with this opinion will be issued this day.

RICHARD J. LEON
United States District Judge