IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WOODHULL FREEDOM FOUNDATION,<br>HUMAN RIGHTS WATCH, ERIC KOSZYK,<br>JESSE MALEY, a/k/a ALEX ANDREWS, and<br>THE INTERNET ARCHIVE,<br><br>    Plaintiffs,<br><br>  v.<br><br>THE UNITED STATES OF AMERICA<br>and WILLIAM P. BARR, in his official<br>capacity as ATTORNEY GENERAL<br>OF THE UNITED STATES,<br><br>    Defendants. | )<br>)<br>)<br>)<br>) Case No. 1:18-cv-1552<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

Plaintiffs, Woodhull Freedom Foundation, Human Rights Watch, Eric Koszyk, Jesse Maley a/k/a Alex Andrews, and The Internet Archive, file this Statement of Undisputed Material Facts pursuant to Fed. R. Civ. P. 56(c) and Local Rule 7(h).

1. In reaction to the Allow States and Victims to Fight Online Sex Trafficking Act of 2017, Pub. L. No. 115-164, 132 Stat. 1253 (2018) ("FOSTA"), online service providers that enabled interpersonal communication by users – including many lacking a connection to sexual material – removed content, eliminated entire sections of websites, or were shuttered altogether. Declaration of Kate D'Adamo ("D'Adamo Decl.") ¶¶ 9-13 (attached as Ex. A); Declaration of Dr. Jessica P. Ashooh ("Ashooh Decl.") ¶¶ 2-3, 5-7 (attached as Ex. B); About FOSTA, CRAIGSLIST, https://www.craigslist.org/about/FOSTA.

2. Experts have observed there is no rigorous quantitative data to suggest FOSTA has had or will have a significant impact in reducing the prevalence of sex trafficking, nor any criminological theory to support the hypothesis that FOSTA will have a significant impact in

reducing the prevalence of sex trafficking. Declaration of Dr. Kimberly Mehlman-Orozco in Supp. of Mot. for Prelim. Inj. ("Mehlman-Orozco PI Decl.") (ECF No. 5-9) ¶¶ 21, 23.

3. Experts and observers have reported that FOSTA has had an adverse effect on online services relevant to sex workers, on the ability of sex workers who relied upon them to stay safe and to share information, and on harm-reduction tactics in which sex workers previously engaged. D'Adamo Decl. ¶¶ 17-19; Ashooh Decl. ¶¶ 6-7; Declaration of Dr. Alexandra Lutnick ("Lutnick Decl.") ¶¶ 11-13, 15 (attached as Ex. C); Declaration of Alexandra Frell Levy Yelderman ("Yelderman Decl.") ¶ 7 (attached as Ex. D); "The Loss of Sex Work Friendly Resources," https://hackinghustling.org/online-platforms-sex-worker-discrimination.

4. A study by an organization that provides housing to those who need it, including individuals described as victims of sex trafficking, reported that FOSTA led to an increase in violence against sex workers and made it more difficult for law enforcement to pursue trafficking. D'Adamo Decl. ¶ 23; *Research Brief After FOSTA-SESTA*, The Samaritan Women's Institute for Shelter Care (2018) at 4-6, https://thesamaritanwomen.org/wp-content/uploads/2020/02/After-SESTA-FOSTA.pdf.

5. Experts and other observers have noted FOSTA's detrimental impact on the ability of law enforcement to pursue sex trafficking crimes. Mehlman-Orozco PI Decl. ¶¶ 16, 24-25, 28, 31; D'Adamo Decl. ¶ 24; Yelderman Decl. ¶ 6; Lutnick Decl. ¶¶ 16-19.

6. The Plaintiffs in this case who operate online platforms or services depend upon immunity provided by 18 U.SC. § 230 to host third-party content. Declaration of Jesse Maley ("Maley Decl.") ¶¶ 25-26 (attached as Ex. E); Declaration of Ricci Levy in Support of Mot. for Prelim. Inj. ("Levy PI Decl.") (ECF No. 5-2) ¶ 43; Declaration of Brewster Kahle ¶ 15 (attached as Ex. F).

7. The Plaintiffs have had their speech chilled and/or have self-censored as a direct result of FOSTA's enactment. Maley Decl. ¶¶ 32-34, 37-38, 40, 43-48; Declaration of Ricci Levy in Supp. of Mot. for Summ. J. ("Levy SJ Decl.") ¶¶ 16, 21-23, 27 (attached as Ex. G); Levy PI Decl. ¶¶ 32-34.

8. Plaintiffs who had used online platforms that hosted Plaintiffs' content lost the ability in the wake of FOSTA to use those platforms, either in full, Declaration of Eric Koszyk ("Koszyk Decl.") ¶¶ 1-2, 7-9, 11-13, 20 (attached as Ex. H), or in part. Levy SJ Decl. ¶¶ 10-15, 17, 21, 24 & Ex. 1.

9. Plaintiffs who lost access to online platforms in the wake of FOSTA have been unable to find adequate substitutes, Koszyk Decl. ¶ 24, as were other users of those platforms. *Id.*; Levy PI Decl. ¶ 29.

10. Plaintiff Eric Koszyk, owner and sole proprietor of Soothing Spirit Massage and a licensed massage therapist since 2006, used Craigslist prior to the enactment of FOSTA as the primary way of finding massage clients. Koszyk Decl. ¶¶ 1, 7, 8.

11. On Friday, April 6, 2018, in the wake of Congress' passage of FOSTA, Koszyk learned Craigslist had removed his most recent ad for Soothing Spirit and had shut down its Therapeutic Services section. *Id*. ¶ 20.

12. Since FOSTA's enactment, Koszyk has been unable to advertise his therapeutic massage business on Craigslist, and thus has been prevented from reaching the same audience of potential customers as prior to the law's passage. *Id*. ¶ 2.

13. Koszyk has not learned of any other website that would allow him to post similar ads and to reach a similar sized audience as he did using Craigslist. Nor has Koszyk been able to use any combination of multiple advertising websites to reach potential customers. *Id*. ¶ 24.

14. It is Koszyk's understanding that Craigslist publicly committed to reinstate the sections it removed as a result of FOSTA if the law changes, and if it does so as to therapeutic services, Koszyk intends to immediately resume posting on Craigslist. *Id.* ¶ 3.

15. Plaintiff Jesse Maley, who in working as a community organizer and advocate for sex workers—including as co-founder, director, employee, or volunteer for organizations that directly service sex workers and advocate on broader issues impacting them—identifies herself as Alex Andrews, is a member of the board of directors of the Sex Workers Outreach Project USA ("SWOP USA"), a national social justice network dedicated to the fundamental human rights of people involved in the sex trade and their communities. Maley Decl. ¶¶ 2-3.

16. Maley helped create Rate That Rescue (www.ratethatrescue.org), an online resource for sex workers to learn more about organizations that provide services to them, operating as a sex worker-led, public, free website that seeks to help share information about both the organizations they can rely on, and those they should avoid, including through posts by third parties and organizations. *Id.* ¶¶ 13-19. The site has expanded to include reviews of all types of services that sex workers and the broader public use, including Twitter, Wix, and PayPal. *Id.* ¶ 24. The site generates no revenue, is run by volunteers, and is unable to actively or comprehensively review, edit, or moderate user-generated content. *Id.* ¶ 26.

17. Maley helped lead SWOP USA efforts to purchase an in-development mobile app and website dedicated to increasing sex worker safety, whose features would include allowing sex workers to report violence, harassment, and other harmful behavior against them via the app; maintaining a database of the reports that other sex workers could query; and sending notifications to others near the location of the sex worker who reported the incident. *Id.* ¶¶ 34-

36. More than two years after FOSTA's passage, SWOP USA did not purchase the app due to the change in law, and has no plans to develop any similar service in the future. *Id.* ¶¶ 37, 42.

18. Maley's work has encompassed in-person, direct service to sex workers, including communicating health and safety information and directing them to services in their community. Though it would be easier to convey this information timely and accurately if Maley could engage in more digital outreach to her constituency, especially during the public health crisis as a result of the novel Coronavirus (which only heightens needs for this type of information), Maley has refrained from creating any tool or online service to provide that outreach due to concerns about FOSTA. *Id.* ¶¶ 43-48.

19. Woodhull Freedom Foundation ("Woodhull") uses various online technologies to conduct business and organize events, such as Google Docs, Formidable form generator, and online databases and cloud storage, as well as social media like Facebook, Twitter, Instagram, Hootsuite (for post-scheduling) and Bitly (for link-shortening) to promote the organization and its events. Woodhull also uses online ticketing to register attendees for events, a mobile event app called YAPP, and Youtube.com to store and publish workshop presenter videos, which include information about presenters. Levy PI Decl. ¶¶ 10-15.

20. Woodhull's signature event, a multi-day Sexual Freedom Summit ("Summit") held annually in Washington, DC that engages educators, therapists, legal and medical professionals, and advocacy leaders to strategize, share information, and work collaboratively to protect the rights to information, health, and pleasure, has come to include a "sex worker" track involving workshops devoted to issues impacting sex workers, including but not limited to harm reduction, disability, age, health, and personal safety. *Id.* ¶¶ 7, 16-20, 22.

21. Woodhull promotes the Summit on its own website, and promotes most, if not all, of the workshops on social media like Facebook, Instagram, and Twitter, with posts that link to presenters' workshops and biographies. *Id.* ¶¶ 23-24. On FOSTA's passage, Woodhull ceased online promotion of the 2018 Summit's sex work track, blocked all information associated with its workshops from the Summit website, and restrained publication of workshop titles, biographies and contact information, restoring the material only after joining a legal challenge to FOSTA. *Id*. ¶¶ 32-34.

22. Woodhull currently uses Facebook to livestream video of Summit programs, Facebook and YouTube to archive the videos, and Zoom or Streamyard to connect panel participants via videoconference. In 2020, due to the COVID-19 pandemic, Woodhull has had to present the Summit and its workshops exclusively online. Levy SJ Decl. ¶ 9. Woodhull found promoting the Summit on platforms such as Facebook and YouTube difficult due to content moderation policies imposed on them since FOSTA's enactment. *Id*. ¶¶ 10-11, 17. Attempts to advertise the 2020 Summit repeatedly have been rejected by Facebook, even though Woodhull had posted similar Facebook ads for sexually-oriented Summit programs which were not rejected prior to passage of FOSTA. Woodhull expects Facebook will likewise reject similar future attempts by Woodhull to promote the Summit, potentially risking permanent termination of its account and loss of over 7,800 followers. *Id*. ¶¶ 13-15 & Ex. 1. As a result, Woodhull has censored its Facebook ads which has hampered its ability to promote the Summit. *Id*. ¶ 16.

23. Similarly, fearing termination of its YouTube channel with over 11 years' worth of archived videos, Woodhull has chosen not to "livestream" its Summit programs on YouTube in 2020 due to the platform's broad post-FOSTA restrictions. Specifically, Woodhull concluded

that livestreaming its content would call more attention to the archived materials and potentially risk termination of its channel by YouTube. *Id*. ¶ 21.

24. Woodhull has postponed or abandoned Summit programs in 2020 relating to human sexuality, sex work, and/or prostitution due to concerns over removal of the material or termination of its accounts by Facebook, YouTube, Zoom, and/or Streamyard. *Id*. ¶ 22.

25. Though Woodhull originally intended to develop and launch its own online video sharing platform to conduct its virtual Summit in 2020, after evaluation of the legal risks—and in particular FOSTA's broad prohibitions on operating a computer service that could be alleged to promote or facilitate prostitution, the various civil claims brought against online platforms under FOSTA, and the pending criminal prosecution against cityxguide.com based on alleged violation of 18 U.S.C. § 2421A as added by FOSTA—Woodhull's Board of Directors voted not to proceed due to fears of criminal prosecution or civil liability under FOSTA. *Id*. ¶¶ 23-24.

26. The Internet Archive seeks to prevent Internet and other "born-digital" material from disappearing by offering permanent access for researchers, historians, scholars, people with disabilities, and the general public to historical collections that exist in digital format, consisting of texts, audio, moving images, and software, as well as archived web pages. Kahle Decl. ¶¶ 4-5. In doing so, it collects and displays web materials on behalf of the Library of Congress, the National Archives, most state archives and libraries, and universities and other countries. *Id*. ¶ 6.

27. The Internet Archive regularly gathers "snapshots"—accessible copies—of content on the World Wide Web through "crawling" and indexing processes, currently crawling and archiving more than 80 million web pages per day. *Id*. ¶ 7. It also scans and digitizes over one thousand books a day on behalf of libraries, museums, and authors, *id*. ¶ 10, and the general public uploads over 2,000 items per day. *Id*. ¶ 13.

28.     The Internet Archive currently maintains over 330 billion web pages archived from 1996 to (nearly) the present from web sites around the world, including archives of third-party content posted to web sites like craigslist.org.  The vast majority of the material in the Internet Archive's collection is authored by third parties.  *Id*. ¶¶ 4, 8.  It circulates over 17 million texts, 5 million audio items, and 4 million video items that are downloaded by tens of millions of users each month.  *Id*. ¶ 12.  Currently, the Internet Archive has over 1.4 million unique users per day across all of its services and adds over 100,000 registered users per month.  *Id*. ¶ 11.

29.     While the Internet Archive does at times remove content, it has no practical ability to evaluate the legality of any significant portion of the third-party content it archives and makes available.  *Id*. ¶ 14.

30.     Human Rights Watch, Inc. ("HRW"), a 501(c)(3) tax-exempt organization that monitors human rights conditions worldwide and advocates for cessation and remediation of violations, including as pertain to rights of sex workers, has since 2013 urged decriminalization of sex work.  Declaration of Dinah PoKempner ¶ 2 (attached as Ex. I).  Each year, HRW produces and publishes many hundreds of reports, press releases, videos, podcasts and other online documents on its website and social media accounts, including research and advocacy on behalf of the rights of sex workers and the decriminalization of sex work, and relies heavily on individuals spreading its reporting and advocacy through social media platforms and websites that host, disseminate, or allow users to post HRW's reports and advocacy materials.  *Id*. ¶¶ 5, 9.

DATED:  August 31, 2020

Respectfully submitted,

_____/s/ Robert Corn-Revere_____
ROBERT CORN-REVERE
D.C. Bar No. 375415
RONALD G. LONDON
D.C. Bar No. 456284
**Davis Wright Tremaine LLP**
1301 K Street, NW, Suite 500 East
Washington, D.C. 20005
Telephone: (202) 973-4200
Facsimile: (202) 973-4499
Email: bobcornrevere@dwt.com
          ronnielondon@dwt.com

LAWRENCE G. WALTERS
Florida Bar No.: 0776599
*Pro Hac Vice*
**Walters Law Group**
195 W. Pine Ave.
Longwood, FL 32750-4104
Telephone: (407) 975-9150
Facsimile: (408) 774-6151
Email: Larry@FirstAmendment.com
          Paralegal@FirstAmendment.com

AARON MACKEY
D.C. Bar No. 1017004
DAVID GREENE
(admitted in California)
*Pro Hac Vice*
CORYNNE MCSHERRY
(admitted in California)
**Electronic Frontier Foundation**
815 Eddy Street
San Francisco, CA 94109
(415) 436-9333
Email:  amackey@eff.org
          davidg@eff.org

DAPHNE KELLER
Cal. Bar No. 226614
**Stanford Cyber Law Center**
616 Jane Stanford Way #E016
Stanford, CA 94305
(650) 725-0325
Email:  daphnek@stanford.edu

Attorneys for Plaintiffs