# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

WOODHULL FREEDOM )
FOUNDATION, HUMAN RIGHTS )
WATCH, ERIC KOSZYK, )
JESSE MALEY a/k/a ALEX )
ANDREWS, and THE INTERNET )
ARCHIVE, )
                         )
                         )
         Plaintiffs, )
                         )    Case No. 18-cv-01552 (RJL)
       v. )
                         )
UNITED STATES OF AMERICA )
and JEFFERSON B. SESSIONS, )
in his Official Capacity as )
ATTORNEY GENERAL OF )
THE UNITED STATES, )
                         )
         Defendants. )
_____)

**DECLARATION OF ALEXANDRA YELDERMAN**

       Pursuant to 28 U.S.C. § 1746, I, ALEXANDRA YELDERMAN, hereby declare as

follows:

       1.      I am a visiting assistant professor at Notre Dame Law School and serve as special

counsel to the Human Trafficking Legal Center. Prior to my academic appointment, I was a

senior staff attorney at the Human Trafficking Legal Center, where I worked for nearly a decade.

I give this declaration in my personal capacity and not on behalf of any organization.

       2.      I created and taught Notre Dame Law School's course on human trafficking. My

course included substantial coverage of intermediary liability for sex trafficking offenses. I have

also taught guest courses and delivered lectures on topics related to human trafficking,

intermediary liability, and black markets at universities across the United States and in Europe.

After filing a declaration in this case in 2018, I changed my legal name to Alexandra Frell Levy Yelderman.

3.      My article entitled "The Virtues of Unvirtuous Spaces," published in 2017 in the Wake Forest Law Review, analyzes the sex trafficking-related repercussions of holding platforms accountable for third-party content.  It concludes that allowing online platforms to host content related to sex work without fear of liability fosters efforts to apprehend traffickers and recover victims. *See The Virtues of Unvirtuous Spaces*, 50 WAKE FOREST L. REV. 403 (2017), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2994114. A true and correct copy is attached as Exhibit 1.

4.      I have given interviews on issues related to the Allow Victims to Fight Online Sex Trafficking Act ("FOSTA") to National Public Radio's Marketplace and Vox's Today Explained, and I contribute regularly to the Technology & Marketing Law Blog on the topic of FOSTA's implications for anti-trafficking advocacy. My work on this subject has been covered by Reason, Bloomberg Law, and Ars Technica, among other publications.

5.      There is no good evidence that the internet has caused an increase in child sex trafficking or that it has put more minors at risk of being victimized. FOSTA's proponents frequently point to a recent rise in reports of suspected commercial sexual exploitation of minors as evidence that platforms are responsible for an "explosion in sex trafficking." Shared Hope, "White Paper: Online Facilitation of Domestic Minor Sex Trafficking" (August 2014), http://sharedhope.org/wp-content/uploads/2014/09/Online-Faciliator-White-Paper-August-2014.pdf (noting that "[t]echnology, including classifieds websites, is widely viewed as responsible for the explosion in sex trafficking in the United States"). But all that these studies show is a correlation between the proliferation of the internet and *reports* of sex trafficking. The

argument that the internet has caused an increase in child sex trafficking is flawed insofar as it conflates the frequency with which sex trafficking is *reported* with the frequency with which it *happens*. Indeed, it ignores the critical possibility that the rise in reports is due to the fact that platforms make it easier to notice and alert law enforcement to trafficking. (And besides the lack of evidence that the internet is *causing* a rise in sex trafficking, there is some reason to doubt that sex trafficking has increased *at all*. *See Backpage.com, LLC v. Dart*, 807 F.3d 229 (7th Cir. 2015) (No. 15-3047) (discussing evidence that trafficking may have declined in the early 2000s).)

6. Victims who are trafficked on high-visibility websites stand a greater chance of being recovered than those trafficked in less-obvious venues. Indeed, they are regularly discovered by family members, good Samaritans, and non-profit organizations. *See, e.g.* Caitlin Randle, *Brother takes action after girl, 14, is advertised online for sex, officers say*, Sun Sentinel (Aug 11, 2017), http://www.sun-sentinel.com/local/broward/deerfield-beach/fl-sb-deerfield-man-teen-sex-arrest-20170810-story.html (describing how a runaway teenager was recovered when her brother "used [her] ad's listed phone number to take the action that led to the [trafficker's] arrest"); Nicholas Kristof, Opinion, *Making Life Harder for Pimps*, N.Y. Times (Aug. 6, 2015), https://www.nytimes.com/2015/08/06/opinion/nicholas-kristof-making-life-harder-for-pimps.html (describing how a journalist "pulled out [his] laptop, opened up Backpage and quickly found seminude advertisements for [a teenage runaway]," leading to her recovery). True and correct copies are attached as Exhibits 2 and 3, respectively. Law enforcement officials have likewise noted that high-visibility websites provide significant advantages to police. *See e.g.* Jordan Fischer, *Running Blind: IMPD arrests first suspected pimp in 7 months*, WRTV Indianapolis (July 3, 2018) https://www.wrtv.com/longform/running-blind-impd-arrests-first-

suspected-pimp-in-7-months (describing police officers' reactions to the shuttering of Backpage.com, which predated FOSTA but achieved a similar outcome). A true and correct copy is attached as Exhibit 4. Insofar as FOSTA has succeeded in shutting down high-traffic, high-visibility websites, it has moved trafficking victims into the shadows, thus decreasing their chances of being recovered.

7.      FOSTA potentially curtails anti-trafficking initiatives. Many websites and resources aimed at reducing trafficking follow a *harm reduction* model. Harm reduction measures are generally designed to mitigate or treat acute dangers without regard to broader systemic impacts. (A common example is needle exchanges for intravenous drug users, which reduce the chances of disease transmission but potentially increase access to drugs.) But the intent to make prostitution safer (in order to reduce exploitation and trafficking) is not readily distinguishable from the intent to facilitate prostitution (punishable under FOSTA by up to 10 years in prison). FOSTA has thus likely undermined online resources and websites that take a harm reduction approach to fighting human trafficking by empowering sex workers. (For a partial list of websites that have shut down, limited their reach, or otherwise changed their terms in the aftermath of FOSTA, *see* "The Loss of Sex Work Friendly Resources," https://hackinghustling.org/online-platforms-sex-worker-discrimination/.)

8.      FOSTA makes it riskier for websites to flag and report suspicious posts to law enforcement, compromising yet another mechanism for reaching victims. Before FOSTA was passed, websites' content moderators regularly collaborated with law enforcement and the National Center for Missing and Exploited Children (NCMEC) to find problematic content and recover possible minor victims. *See, e.g.* Tom Jackman, *Under attack, Backpage.com has its supporters as anti-trafficking tool. But many differ*, The Washington Post (July 18, 2017),

4

https://www.washingtonpost.com/news/true-crime/wp/2017/07/18/under-attack-backpage-com-has-its-supporters-as-anti-trafficking-tool-but-many-differ/?utm_term=.da55f3bb7235. A true and correct copy of the article is attached as Exhibit 5. But FOSTA's expansive definition of venture participation under 18 U.S.C. § 1591(e)(4), paired with the possibility of civil liability for third-party content it creates under 47 U.S.C. § 230(e)(5)(A) and state criminal actions under 47 U.S.C. § 230(e)(5)(B), exposes website operators to potentially severe consequences for continuing to operate if they express concerns about trafficking – or, indeed, if they take measures to *fight* trafficking. Read in conjunction with 18 U.S.C. § 1591(a)(2), this new provision theoretically imposes a potential life sentence for anyone who knowingly benefits from knowingly supporting an entity that knowingly advertises a minor's sexual services. *See* 18 U.S.C. § 1591(b)(1). Liability may exist without regard to website operators' specific knowledge of trafficking. *See* 18 U.S.C. § 1591(e)(4).

9.      To be sure, classified advertising websites may not be doing enough. NCMEC's strong denunciation of Backpage's handling of problematic material may have been instrumental in getting FOSTA passed. *See* Statement to the United States House of Representatives by Yiota G. Souras, "Latest Developments in Combating Online Sex Trafficking" (Nov 30, 2017), https://docs.house.gov/meetings/IF/IF16/20171130/106657/HHRG-115-IF16-Wstate-SourasY-20171130-U20.pdf. But one might question the wisdom of punishing intermediaries for not doing *enough* by passing a law that threatens them with criminal and civil liability if they do *anything*.

/

/

/

10.     I declare under penalty of perjury of the laws of the State of Indiana and the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 28th day of August 2020 at South Bend, Indiana.

_____
Alexandra Yelderman