# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WOODHULL FREEDOM
      FOUNDATION, *et al.*,

             *Plaintiffs*,

    v.

UNITED STATES OF AMERICA, *et al.*,

             *Defendants*.

Case No. 1:18-cv-1552-RJL

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION .................................................................................................... 1

BACKGROUND ..................................................................................................... 3

      I.        STATUTORY BACKGROUND .......................................................... 3

             A.      Pre-FOSTA Legislation and Other Developments ..................... 3

             B.      FOSTA's Provisions ................................................................... 6

      II.      PROCEDURAL HISTORY ............................................................... 9

             A.      Initial District Court Proceedings ............................................. 9

             B.      The Court's Opinion of September 24, 2018 ........................... 11

             C.      The Court of Appeals' Decision ............................................. 13

STANDARD OF REVIEW ..................................................................................... 15

ARGUMENT ....................................................................................................... 15

      I.        PLAINTIFFS' OVERBREADTH CLAIM (COUNT I) FAILS AS A MATTER OF LAW ................................................................................... 15

      II.      PLAINTIFFS' STRICT SCRUTINY CLAIM (COUNT II) FAILS AS A MATTER OF LAW ............................................................................... 22

      III.    PLAINTIFFS' VAGUENESS CLAIM (COUNT III) FAILS AS A MATTER OF LAW ................................................................................... 27

      IV.    PLAINTIFFS' "SELECTIVE REMOVAL OF IMMUNITY" CLAIM (COUNT IV) FAILS AS A MATTER OF LAW ................................................. 32

      V.      PLAINTIFFS' "DEFECTIVE SCIENTER" CLAIM (COUNT V) FAILS AS A MATTER OF LAW ............................................................................... 34

      VI.    PLAINTIFFS' EX POST FACTO CLAIM (COUNT VI) FAILS AS A MATTER OF LAW ................................................................................... 36

CONCLUSION .................................................................................................... 37

## TABLE OF AUTHORITIES

**Cases**

*A.B. v. Marriott Int'l, Inc.*, No. 19-5770, 2020 WL 1939678 (E.D. Pa. Apr. 22, 2020) ............ 31

*ACLU v. Alvarez*, 679 F.3d 583 (7th Cir. 2012) ........................................................ 24

*Aiello v. City of Wilmington*, 623 F.2d 845 (3d Cir. 1980) ........................................ 16

*ANSWER Coal. v. Basham*, 845 F.3d 1199 (D.C. Cir. 2017) ................................. 23, 25

*Ashcroft v. ACLU*, 535 U.S. 564 (2002) ..................................................................... 16

*Bd. of Trs. v. Fox*, 492 U.S. 469 (1989) .................................................................... 16

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973) ...................................................... 15, 16

*Carmell v. Texas*, 529 U.S. 513 (2000) ..................................................................... 36

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557 (1980) ................... 19, 28

*City Council v. Taxpayers for Vincent*, 466 U.S. 789 (1984) ................................. 16, 17

*Cole v. Fulwood*, 879 F. Supp. 2d 60 (D.D.C. 2012) ................................................. 36

*Ctr. for Biological Diversity v. EPA*, 722 F.3d 401 (D.C. Cir. 2013) ......................... 32

*Daniel v. Fulwood*, 766 F.3d 57 (D.C. Cir. 2014) ..................................................... 36

*Democracy Partners v. Project Veritas Action Fund*,
    No. 17-1047, 2020 WL 1536217 (D.D.C. Mar. 31, 2020) ............................... 24

*Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12 (1st Cir. 2016) ................................... 6

*Doe v. GTE Corp.*, 347 F.3d 655 (7th Cir. 2003) ................................................ 11, 21

*Elonis v. United States*, 135 S. Ct. 2001 (2015) ....................................................... 35

*Fletcher v. Reilly*, 433 F.3d 867 (D.C. Cir. 2006) ................................................... 36

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ................................................. 29

*Green v. U.S. Dep't of Justice*, 392 F. Supp. 3d 68 (D.D.C. 2019) ................... 15, 25, 26

*Hastings v. Judicial Conf.*, 829 F.2d 91 (D.C. Cir. 1987) ......................................... 17

*Hill v. Colorado*, 530 U.S. 703 (2000) ........................................................................... 24, 30, 32

*Hodge v. Talkin*, 799 F.3d 1145 (D.C. Cir. 2015) ...................................................... 28

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) ........................................... 29

*Huon v. Denton*, 841 F.3d 733 (7th Cir. 2016).............................................................. 3

*Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015) ............................................ 28

*Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398 (6th Cir. 2014) ......................... 3, 30

*Klayman v. Zuckerberg*, 753 F.3d 1354 (D.C. Cir. 2014) ........................................... 32

*L.A. Police Dep't v. United Reporting Pub. Corp.*, 528 U.S. 32 (1999) ..................................... 15

*Lynce v. Mathis*, 519 U.S. 433 (1997) .......................................................................... 36

*M.A. ex rel. P.K. v. Village Voice Media Holdings, LLC*,
    809 F. Supp. 2d 1041 (E.D. Mo. 2011) ................................................................. 6

*M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019) ..................... 31

*Mahoney v. Dist. of Columbia*, 662 F. Supp. 2d 74 (D.D.C. 2009),
    *aff'd sub nom. Mahoney v. Doe*, 642 F.3d 1112 (D.C. Cir. 2011) .................................. 17

*Mishkin v. New York*, 383 U.S. 502 (1966) ................................................................. 34

*Nat'l Ass'n of Mfrs. v. Taylor*, 582 F.3d 1, 27-28 (D.C. Cir. 2009) ..................................... 28, 31

*New York v. Ferber*, 458 U.S. 747 (1982) .................................................................... 20

*Nixon v. United States*, 938 F.2d 239 (D.C. Cir. 1991) ............................................... 32

*N.Y. State Club Ass'n., Inc. v. City of New York*, 487 U.S. 1 (1988) ................................... 16

*Packingham v. North Carolina*, 137 S. Ct. 1730 (2017) .............................................. 19

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376 (1973) ........... 19

*Pro-Football, Inc. v. Harjo*, 284 F. Supp. 2d 96 (D.D.C. 2003) ................................... 15

*Reed v. Town of Gilbert*, 576 U.S. 155, 135 S. Ct. 2218 (2015) ........................................... 22, 25

*Reno v. ACLU*, 521 U.S. 844 (1997) ........................................................................... 19

*Robinson v. Dist. of Columbia*, 234 F. Supp. 3d 14 (D.D.C. 2017) .............................................. 32

*Rosemond v. United States*, 572 U.S. 65, 134 S. Ct. 1240 (2014) ......................................... 21, 30

*Sec'y of State v. Joseph H. Munson Co.*, 467 U.S. 947 (1984) ..................................................... 16

*Smith v. California*, 361 U.S. 147 (1959) .............................................................................. 34, 35

*United States v. Alvaran-Velez*, 914 F.3d 665 (D.C. Cir. 2019) ................................................. 36

*United States v. Bennett*, 95 F.3d 1158 (9th Cir. 1996) (unpublished) .................................. 12, 30

*United States v. Bronstein*, 151 F. Supp. 3d 31 (D.D.C. 2015) ....................................... 27, 28, 29

*United States v. Brown*, 186 F.3d 661 (5th Cir. 1999) .......................................................... 11, 21

*United States v. Halloran*, 821 F.3d 321 (2d Cir. 2016) ............................................................ 20

*United States v. O'Brien*, 391 U.S. 367 (1968) ......................................................................... 26

*United States v. Scanio*, 705 F. Supp. 768 (W.D.N.Y. 1988) ..................................................... 28

*United States v. Stevens*, 559 U.S. 460 (2010) .......................................................................... 18

*\*United States v. Williams*, 553 U.S. 285 (2008) ................................................................ *passim*

*Vill. of Hoffman Estates v. Flipside*, 455 U.S. 489 (1982) ................................................... 28, 29

*\*Virginia v. Hicks*, 539 U.S. 113 (2003) ................................................................. 16, 17, 18, 20

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ............................................................ 25, 28

*\*Woodhull Freedom Found. v. United States* ("*Woodhull I*"),
    334 F. Supp. 3d 185 (D.D.C. 2018).............................................................................. *passim*

*\*Woodhull Freedom Found. v. United States* ("*Woodhull II*"),
    948 F.3d 363 (D.C. Cir. 2020) ................................................................................... *passim*

*Wright v. New Jersey*, 469 U.S. 1146 (1985) ............................................................................ 28

*Zeran v. America Online, Inc.*, 129 F.3d 327 (4th Cir. 1997) ...................................................... 3

## Statutes

Travel Act, Pub. L. No. 87-228, 75 Stat. 498 (1961)
(codified as amended at 18 U.S.C. § 1952) ........................................................... 4

Communications Decency Act, Title V of the Telecommunications Act of 1996,
Pub. L. No. 104-104, 110 Stat. 56 ("CDA") ................................................. 1, 3

Trafficking Victims Protection Act ("TVPA"), Pub. L. No. 106-386, 114 Stat. 1464 (2000)
(codified as amended at 18 U.S.C. § 1591) .................................................. 4

Trafficking Victims Protection Reauthorization Act of 2003,
Pub. L. No. 108-193, 117 Stat. 2875 ............................................................ 4

Allow States and Victims to Fight Online Sex Trafficking Act of 2017 ("FOSTA"),
Pub. L. No. 115-164, 132 Stat. 1253 (2018) ........................................... *passim*

18 U.S.C. § 2 ............................................................................................................... 5

18 U.S.C. § 875 ......................................................................................................... 35

18 U.S.C. § 1591 ............................................................................................. *passim*

18 U.S.C. § 1595 ............................................................................................. *passim*

18 U.S.C. § 1952 ............................................................................................. *passim*

18 U.S.C. § 2421A ........................................................................................... *passim*

47 U.S.C. § 230 ............................................................................................... *passim*

## Legislative Materials

H.R. Rep. No. 105-572(I) (2019) .............................................................................. 5

U.S. Senate, Permanent Subcomm. on Investigations, *Backpage.com's Knowing Facilitation
of Online Sex Trafficking* ("Senate Investigation Report"),
*available at* https://go.usa.gov/xmgPW ............................................................. 5

164 Cong. Rec. H1277-03 (daily ed. Feb. 27, 2018) ................................................ 5

164 Cong. Rec. H1290-02 (daily ed. Feb. 27, 2018) ............................................ 5, 9

164 Cong. Rec. S1852 (daily ed. Mar. 21, 2018) ................................................... 22

## INTRODUCTION

Plaintiffs bring pre-enforcement facial challenges to the Allow States and Victims to Fight Online Sex Trafficking Act of 2017 ("FOSTA"), Pub. L. No. 115-164, 132 Stat. 1253 (2018), alleging that the law violates the First and Fifth Amendments and the Ex Post Facto Clause. It does not. Congress enacted FOSTA in the face of documented evidence that the illegal sale of children and coerced adults for sex has proliferated online, and indications that some websites knowingly and intentionally facilitate such illegal conduct. Significantly, FOSTA does not criminalize any conduct that was not already prohibited under existing federal law. Sex trafficking was already illegal, as was the use of the facilities of interstate commerce (such as the Internet) to promote or facilitate the illegal conduct of others. The purpose of FOSTA is to ensure that States and sex trafficking victims can apply State criminal laws and federally-created civil rights of action to combat illegal prostitution and sex trafficking that takes place on the Internet, despite a liability shield for websites that Congress previously established in § 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(1) .

Plaintiffs fail to show that FOSTA is substantially overbroad in violation of the First Amendment. This Court, in its prior opinion in this case, *Woodhull Freedom Found. v. United States* ("*Woodhull I*"), 334 F. Supp. 3d 185 (D.D.C. 2018), and Judge Katsas in his Court of Appeals concurrence, *Woodhull Freedom Found. v. United States* ("*Woodhull II*"), 948 F.3d 363, 374 (D.C. Cir. 2020) (Katsas, J., concurring in part and concurring in the judgment), have already correctly interpreted the terms of FOSTA as excluding the mere advocacy or educational activities in which most of the Plaintiffs claim to be engaged. And even Plaintiffs acknowledge that nothing in FOSTA's plain terms prohibits massage therapy advertisements. Rather, the only conduct covered by FOSTA is illegal prostitution and sex trafficking, and the intentional or knowing

promotion or facilitation thereof.

Nor is FOSTA a content-based restriction of speech. On its face, FOSTA prohibits illegal conduct, not speech, and any speech that might be implicated in the course of transactions involving illegal prostitution of another person or sex trafficking on the Internet is entitled to no First Amendment protection.

Plaintiffs' additional First Amendment-related claims also fail. Plaintiffs are simply wrong in suggesting that the various FOSTA provisions lack a scienter requirement. To the contrary, they ensure that any conduct by a website owner, operator, or manager deemed to violate the new 18 U.S.C. § 2421A(a) must be *intended* to promote or facilitate an illegal act of prostitution, while an aggravated violation requires the additional element that the website owner, operator, or manager knew or should have known that the conduct deemed to violate § 2421A(a) contributed to sex trafficking of a child or of an adult by force, fraud, or coercion. And websites deemed to violate 18 U.S.C. § 1591(a)(2) because they received a financial benefit from sex trafficking must have knowingly participated in a sex trafficking venture. Plaintiffs also fail to identify a cognizable challenge based on the notion that FOSTA selectively removed § 230's liability shield for crimes related to sex trafficking. To the contrary, Congress was entitled to reassess its policy choices in light of the proliferation of online sex trafficking since the CDA's enactment.

Plaintiffs also fail to establish that FOSTA is unconstitutionally vague. Rather, FOSTA's terms are easily understood in the context of the criminal statutes in which they appear. Finally, Plaintiffs' attempt to invalidate FOSTA on its face pursuant to the Ex Post Facto Clause should fail. Such challenges are properly brought only in an as-applied context, and any ex post facto problem here could only arise if a State, in its discretion, attempts to apply FOSTA's provisions retroactively. Plaintiffs establish no likelihood that any State will do so.

Plaintiffs' claims therefore should be rejected, and summary judgment should be granted in favor of Defendants.

## BACKGROUND

### I.    STATUTORY BACKGROUND

#### A.    Pre-FOSTA Legislation and Other Developments

Congress originally enacted 47 U.S.C. § 230 in 1996 as part of Title V of the Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56, known as the CDA. In that provision, Congress made a policy decision to "shield[] interactive computer service providers from being treated 'as the publisher or speaker' of any content that is posted by users of the site." *Woodhull II*, 948 F.3d at 367 (quoting 47 U.S.C. § 230(c)(1)); *cf. Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 407-08 (6th Cir. 2014) (recognizing this policy choice "departed from the common-law rule that" a publisher or distributor "of tortious material written or prepared by others" could be held liable for that material); *Zeran v. America Online, Inc*., 129 F.3d 327, 330–31 (4th Cir. 1997) ("Congress made a policy choice . . . not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries."). Through this provision, Congress sought to strike a balance between "promoting a free and open internet," *Woodhull II*, 948 F.3d at 367; *cf. Jones*, 755 F.3d at 407, and protecting minors from harmful content by encouraging websites to engage in "voluntary self-policing of the third party content made available through [their] service," *id.* at 408.

From the beginning, Congress made clear that the § 230 shield did not apply to the extent the website itself was the "information content provider," by being "responsible, in whole or in part, for the creation or development of information provided" through its service. 47 U.S.C. § 230(f)(3); *see Jones*, 755 F.3d at 408; *see also Huon v. Denton*, 841 F.3d 733, 742 (7th Cir. 2016)

("A company can, [despite § 230], be liable for creating and posting, inducing another to post, or otherwise actively participating in the posting of a defamatory statement in a forum that that company maintains."). Congress also specified, from the beginning, that this shield would have no impact on the enforcement of federal criminal laws, including those relating to obscenity or the sexual exploitation of children. 47 U.S.C. § 230(e)(1). However, the § 230 shield served to bar States and local governments from enforcing any law—including a State or local criminal law—"that is inconsistent" with § 230. *Id.* § 230(e)(3).

Separately, Congress has also enacted legislation to combat the growing scourge of sex trafficking. First enacted in 1961, the Travel Act, Pub. L. No. 87-228, 75 Stat. 498 (codified as amended at 18 U.S.C. § 1952), addresses the promotion or facilitation of sex trafficking by prohibiting the use of "any facility in interstate or foreign commerce, with intent to . . . promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity." 18 U.S.C. § 1952(a)(3). In 2000, Congress enacted the Trafficking Victims Protection Act ("TVPA"), Pub. L. No. 106-386, 114 Stat. 1464 (2000) (codified as amended at 18 U.S.C. § 1591), which prohibits sex trafficking of children or sex trafficking of adults by means of force, fraud, or coercion. 18 U.S.C. § 1591(a). In 2003, as part of the Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108-193, 117 Stat. 2875, Congress added a provision that authorized victims of sex trafficking to file civil suits against their "perpetrator" or anyone else who "knowingly benefits, financially or by receiving anything of value from participation" in sex trafficking. 18 U.S.C. § 1595(a).

Since those laws were enacted, there has been an exponential growth in the use of online marketplaces for the illegal sex trafficking of children and adults. The National Center for Missing and Exploited Children ("NCMEC") identified an 846% increase in suspected sex trafficking from

2010 to 2015, which the NCMEC found to be "directly correlated to the increased use of the Internet to sell children for sex."[1] The "criminal industry" of sex trafficking globally generates "$99 billion a year—with a considerable portion of that money being generated through online advertising and solicitation."[2] More than 80% of federal sex trafficking prosecutions between 2015 and 2020 involved online advertising.[3] An investigation by the Senate Permanent Subcommittee on Investigations into the anonymous marketplace website Backpage.com ("Backpage")—a site that "reportedly net more than 80% of all revenue from online commercial sex advertising in the United States"—found that Backpage had taken intentional measures to help sex traffickers avoid detection when posting advertisements online for commercial sex. *See* Senate Investigation Report, at 23–41.[4]

Because § 230 has no impact on the enforcement of federal criminal laws, the federal

---

[1] *See* U.S. Senate, Permanent Subcomm. on Investigations, *Backpage.com's Knowing Facilitation of Online Sex Trafficking* ("Senate Investigation Report"), *available at* https://go.usa.gov/xmgPW; *see also* U.S. Dep't of Justice, *The National Strategy for Child Exploitation Prevention and Interdiction*, 4, 10, 76 (Apr. 2016), *available at* https://go.usa.gov/xmgPA (stating that the Internet "has become a thriving marketplace for selling children for sex" and "[w]ebsites like Backpage.com have emerged as a primary vehicle for the advertisement of children to engage in prostitution."); H.R. Rep. No. 115-572(I) at 3 (2018) (explaining that websites, "including online classified sites like Backpage.com, Eros, Massage Troll, and cityxguide, have . . . become one of the primary channels of sex trafficking").

[2] 164 Cong. Rec. H1292 (daily ed. Feb. 27, 2018) (statement of Rep. Jackson Lee); International Labor Office, *Profits and Poverty: The Economics of Forced Labor* 27 (2014), *available at* https://www.ilo.org/wcmsp5/groups/public/---ed_norm/---declaration/documents/publication/wcms_243391.pdf ("The total annual profits made from forced sexual exploitation are estimated at US$99 billion worldwide," with the highest annual profits per victim in Developed Economies (US$80,000), "due to the high average price of sexual encounters.").

[3] *See* Human Trafficking Institute, *2019 Federal Human Trafficking Report*, at 28, *available at* https://www.traffickinginstitute.org/federal-human-trafficking-report-2019/.

[4] *See also* 164 Cong. Rec. H1278 (statement of Rep. Slaughter); H.R. Rep. 115-571(1), at 3-4; Indictment [ECF 3], *United States v. Lacey*, No. 2:18-cr-422 (D. Ariz. filed Mar. 28, 2018) (describing extensive criminal conduct by Backpage officers and employees).

government has always been and remains able to prosecute sex trafficking crimes, pursuant to § 1591(a) and the Travel Act, when they occur online, including against website publishers that use their websites with the intent to promote or facilitate sex trafficking. For example, the federal government indicted the website operator of MyRedbook.com under the Travel Act and 18 U.S.C. § 2 (aiding and abetting), among other charges, for the alleged promotion and facilitation of sex trafficking. *See* Indictment [ECF 1] (filed June 24, 2014) & Sentencing Memorandum [ECF 70] (filed May 14, 2015), *United States v. Omuro*, No. 3:14-cr-00336 (N.D. Cal.).

However, courts held that § 230 barred individuals from invoking the § 1595(a) right of action against website publishers of classified advertisements even where the publishers were alleged to structure their websites "to camouflage advertisements for sex traffickers." *Woodhull II*, 948 F.3d at 367. For example, in *Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12 (1st Cir. 2016), the First Circuit affirmed the dismissal, pursuant to § 230(c)(1), of a private suit against Backpage. *See Doe No. 1*, 817 F.3d at 15; *see also M.A. ex rel. P.K. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1053 (E.D. Mo. 2011) (similarly holding individual's § 1595 claim against Backpage was barred by § 230). The court in *Doe No. 1* explained that, if Congress deemed the evils targeted by § 1595 to "outweigh" the values underlying § 230, and to justify civil suits by victims of sex trafficking against internet publishers such as Backpage that "tailor[] [their] website[s] to make sex trafficking easier," "the remedy is through legislation" to amend § 230. *Doe No. 1*, 817 F.3d at 29.

### B.    FOSTA's Provisions

Congress decided to do just that. In FOSTA, enacted on April 11, 2018, Congress amended § 230, and made other statutory changes, so as not to impede State and private efforts to combat sex trafficking. FOSTA sets forth the "Sense of Congress" that "websites that promote and

facilitate prostitution have been reckless in allowing the sale of sex trafficking victims," and that § 230 "was never intended to provide legal protection to websites that unlawfully promote and facilitate . . . traffickers in advertising the sale of  unlawful sex acts with sex trafficking victims." *See* Pub. L. No. 115-164, § 2.

In regard to the private right of action in § 1595, FOSTA amended § 230 by adding a subsection stating that § 230 should not be interpreted to shield "any claim in a civil action brought under [18 U.S.C. §] 1595 . . . if the conduct underlying the claim constitutions a violation of [18 U.S.C. §] 1591."  FOSTA § 4(a) (codified at 47 U.S.C. § 230(e)(5)(A)). FOSTA also enacted an additional remedy for victims of sex trafficking. *Id.* § 3 (codified at 18 U.S.C. § 2421A(c)).

FOSTA also amended § 1595 to allow a State attorney general to bring a civil action "as parens patriae" against those who violate § 1591 and thereby threaten or adversely affect the State's residents. FOSTA § 6(a) (codified at 18 U.S.C. § 1595(d)). "In layman's terms," § 1595(d) "allows state attorneys general to step into the shoes of victims and bring civil suits on their behalf." *Woodhull I*, 334 F. Supp. 3d at 192. Such actions are also excepted from the § 230(c)(1) bar pursuant to § 230(e)(5)(A).

In regard to State criminal prosecutions, FOSTA added another provision to § 230 stating that § 230 should not be construed to shield third parties from "any charge in a criminal prosecution brought under State law if the conduct underlying the charge would constitute a violation of [18 U.S.C. §] 1591." FOSTA § 4(a) (codified at 47 U.S.C. § 230(e)(5)(B)).

FOSTA also made two changes to federal criminal law. First, FOSTA enacted 18 U.S.C. § 2421A, which prohibits "own[ing], manag[ing], or operat[ing] an interactive computer service . . . with the intent to promote or facilitate the prostitution of another person." FOSTA § 3(a) (codified at 18 U.S.C. § 2421A(a)). The new law provides for an enhanced penalty when the

offender "promotes or facilitates the prostitution of 5 or more persons" or "acts in reckless disregard of the fact that such conduct contributed to sex trafficking, in violation of 1591(a)." *Id.* (codified at 18 U.S.C. § 2421A(b)). The law also provides an affirmative defense "where the defendant proves, by a preponderance of the evidence, that the promotion or facilitation of prostitution is legal in the jurisdiction where [it] was targeted." 18 U.S.C. § 2421A(e).

Section 2421A does not extend the scope of conduct prohibited by federal law because the conduct it identifies is already encompassed within the Travel Act, which broadly covers a range of criminal activity. *See* 18 U.S.C. § 1952(a). The Travel Act's prohibition on promoting, managing, establishing, carrying on, or facilitating "any unlawful activity," *id.*, includes unlawful prostitution of another person or sex trafficking. However, § 230, as amended by FOSTA, cross-references the new § 2421A in order to clearly articulate that States with their own criminal laws prohibiting the promotion or facilitation of prostitution may enforce those laws against website owners, managers, or operators. FOSTA § 4(a) (codified at 47 U.S.C. § 230(e)(5)(C)).

Second, FOSTA amended § 1591 by defining the term "participation in a venture" to mean "knowingly assisting, supporting or facilitating a violation of [18 U.S.C. § 1591](a)(1)." FOSTA § 5 (codified at 18 U.S.C. § 1591(e)(4)).

In a Note added to § 230, FOSTA identifies the effective date of FOSTA's amendments to § 230 as the date of FOSTA's enactment, and indicates that those amendments "shall apply regardless of whether the conduct alleged occurred, or is alleged to have occurred, before, on, or after such date of enactment." FOSTA § 4(b). In a February 27, 2018 letter submitted to the House Committee on the Judiciary, the Department of Justice indicated that this provision raised a serious constitutional concern, insofar as it would allow punishment to be imposed for acts not punishable at the time they were committed. *See* U.S. Dep't of Justice Office of Legislative Affairs, Letter to

8

Hon. Robert Goodlatte, Chairman, U.S. House of Representatives Comm. of the Judiciary (Feb. 27, 2018) ("Feb. 27, 2018 Letter"), 164 Cong. Rec. H1297. However, the Department later indicated, in a March 23, 2018 letter submitted to the Office of Management and Budget, that it supported FOSTA's passage and that State prosecutors could avoid any *ex post facto* concern by "pursuing only newly prosecutable criminal conduct that takes place after the bill is enacted." *See* U.S. Dep't of Justice Office of Legislative Affairs, Letter to Hon. Mick Mulvaney, Director, Office of Management and Budget (Mar. 23, 2018) ("March 23, 2018 Letter") [ECF 15-1], at 2.

Plaintiffs' challenges here focus on 18 U.S.C. § 2421A (added by FOSTA § 3); 47 U.S.C. § 230(e)(5) and the § 230 Note (the "§ 230 Amendments") (added by FOSTA § 4); and § 1591(e)(4) (the "§ 1591 Amendment") (added by FOSTA § 5).

## II.   PROCEDURAL HISTORY

### A.   Initial District Court Proceedings

Plaintiffs—consisting of three organizations and two individuals—filed suit on June 28, 2018, seeking declaratory and injunctive relief on the grounds that the various provisions of FOSTA are unconstitutional under the First and Fifth Amendments.. Compl. [ECF 1] ¶ 1. Woodhull Freedom Foundation ("Woodhull") asserts that it works to "affirm[] and protect[] the fundamental human right to sexual freedom." *Id.* ¶ 15. Human Rights Watch ("HRW") asserts that it "advocate[s] for the decriminalization of sex work, and for respect for the human rights of sex workers around the world." *Id.* ¶ 16. Eric Koszyk ("Koszyk") asserts that he is a licensed massage therapist who, since the passage of FOSTA, has been blocked by Craigslist from posting online classified advertisements regarding his personal massage business. *Id.* ¶ 17. Alex Andrews ("Andrews") asserts that she operates a website, Rate That Rescue, which allows sex workers to share information. *Id.* ¶ 18. The Internet Archive ("the Archive") asserts that it collects and

displays on its website web materials from other sources. *Id.* ¶ 19.

The Complaint sets forth six separate claims, each challenging multiple FOSTA provisions. Count I alleges that "[e]ach of FOSTA's operative provisions"—which it identifies as FOSTA §§ 3, 4, and 5—is unconstitutionally overbroad under the First Amendment. Compl. ¶¶ 129-32. Count II alleges that each of those provisions imposes a content-based restriction of speech that fails strict scrutiny. *Id.* ¶¶ 136-40. Count III alleges that certain terms in each of the three FOSTA provisions are unconstitutionally vague in violation of the First and Fifth Amendment. *Id.* ¶¶ 149, 152-54. Count IV alleges that FOSTA § 4 (setting forth the § 230 Amendments), constitutes a "selective" removal of immunity from State prosecutions and individual and State civil actions in violation of the First Amendment. Compl. ¶ 160. Count V alleges that FOSTA §§ 3 and 5 each lacks a scienter requirement in violation of the First Amendment. Compl. ¶¶ 165-67. Count VI alleges that FOSTA § 4(b) violates the Ex Post Facto Clause and the Fifth Amendment. Compl. ¶¶ 169, 173-74.

Although Plaintiffs' Complaint purports to challenge FOSTA "on its face and as applied to Plaintiffs," none of Plaintiffs' claims are identified as as-applied claims, nor have Plaintiffs sought to prosecute as-applied challenges in any proceedings to date.[5] Rather, Plaintiffs have most recently characterized their claims as "pre-enforcement facial constitutional challenges." Pl. Request for Scheduling Conference [ECF 31], at 1.

Plaintiffs filed a motion for a preliminary injunction judgment on June 28, 2018. [ECF 5.] Defendants opposed the preliminary injunction and moved to dismiss. [ECF 15.] In addition to refuting Plaintiffs' claims on the merits, Defendants argued that Plaintiffs lacked standing because

---

[5] The only references in the Complaint to an "as-applied" claim occur in the first paragraph and the Requested Relief. Compl. ¶ 1 & p.51.

their alleged conduct is not credibly subject to prosecution under any of the prohibitions set forth in FOSTA. *Id.* at 9-15. On September 24, 2018, the Court granted Defendants' motion to dismiss for lack of standing and denied Plaintiffs' motion for preliminary injunction as moot. *Woodhull I*, 334 F. Supp. 3d at 203-04.

**B.     The Court's Opinion of September 24, 2018**

In its September 24, 2018 Memorandum Opinion, the Court rejected Plaintiffs' urged construction of § 2421A as "criminaliz[ing] any conduct that makes prostitution easier or more likely." *Woodhull I*, 334 F. Supp. 3d at 199 (internal quotation and alteration marks omitted). The Court pointed out that, consistent with cases cited by Plaintiffs, § 2421A "contains . . . a heightened *mens rea* requirement, demanding that the Government prove *intent*—rather than knowledge or even recklessness—to promote or facilitate." *Id.* (citing *Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003)). As the Court explained, this mens rea requires the Government to show "not simply that the defendant was aware of a potential result of the criminal offense, but instead that the defendant intended to 'explicitly further[]' a specified unlawful act." *Id.* at 201 (quoting *United States v. Brown*, 186 F.3d 661, 670 (5th Cir. 1999)). The Court also rejected Plaintiffs' reliance on dictionary definitions of "promote" and "facilitate," pointing out that "[t]hose definitions . . . do not shed light on Section 2421A as a whole" because they ignore "both the *mens rea* requirement and the language 'prostitution of another person,' which denotes specific unlawful acts." *Id.* at 199 (criticizing Plaintiffs' interpretation as "turn[ing] a blind eye to the specific context in which [statutory] language is used, and the broader context of the statute as a whole") (internal quotation omitted)).

The Court identified the phrase "prostitution of another person" in § 2421A as a "key textual indication[] that make[s] clear that FOSTA targets specific acts of illegal prostitution—not

the abstract topic of prostitution or sex work." *Woodhull I*, 334 F. Supp. 3d at 200. As the Court explained, the phrase "is plainly calculated to ensnare only specific unlawful acts with respect to a particular individual, not the broad subject-matter of prostitution." *Id.* The Court identified the existence of an affirmative defense where prostitution is legal "in the jurisdiction where the promotion or facilitation was targeted" as another key indicator, "tether[ing]" § 2421A(a)'s prohibition "to specific crimes much in the way that the Travel Act does." *Id.* In other words, the existence of the affirmative defense means that "the Government may prosecute under Section 2421A" only where the intent is to promote or facilitate "acts that are otherwise illegal under existing federal or state law." *Id.*

The Court found further support for its interpretation in the Travel Act, which § 2421A "mirrors" and which therefore "gives a sense both of the meaning of the plain text of Section 2421A, and of the likelihood of enforcement for specific conduct." *Woodhull I*, 334 F. Supp. 3d at 199-200. Significantly, Plaintiffs failed to identify "any example of prosecution under the Travel Act that track[ed]" Plaintiffs' proposed interpretation of § 2421A. *Id.* at 200. To the contrary, the Court cited jury instructions that the Ninth Circuit had approved for Travel Act prosecutions, explaining that the terms "promote" and "facilitate" referred to acts "that would cause the activity to be accomplished or to assist in the activity," reflecting "the close causal connection required for prosecution." *Id.* (citing *United States v. Bennett*, 95 F.3d 1158 (9th Cir. 1996)).

The Court also concluded that any speech implicated by "own[ing], manag[ing], or operat[ing] an interactive computer service" in violation of § 2421A would not be speech protected by the First Amendment because any such speech would be "'intended to induce or commence illegal activities.'" *Woodhull I*, 334 F. Supp. 3d at 201 (quoting *Williams*, 553 U.S. at 297).

The Court concluded that, in light of this statutory interpretation, four of the five Plaintiffs

failed to allege a credible threat of prosecution because their asserted conduct was unlikely to satisfy the applicable mens rea, either for § 2421A or State law actions addressed by § 230(e)(5). *Woodhull I*, 334 F. Supp. 3d at 201-03.  In particular, neither Woodhull, HRW, Andrews, nor the Archive asserted an intent to "promote or facilitate specific acts of prostitution in violation of state or federal law," so as to fall within the ambit of § 2421A or a parallel State criminal law. *See id.* And neither Andrews nor the Archive asserted conduct suggesting they could be prosecuted for "'knowingly' participating in a venture that 'recruits, entices, harbors transports, provides, obtains, advertises, maintains, or solicits by any means a person . . . knowing" that the person will be used for sex trafficking. *Id.* at 203. The Court also held that Koszyk failed to establish the redressability prong of standing with respect to his asserted injury, which stemmed from Craigslist's decision to eliminate the Therapeutic Services section from its website. *Id.*

### C.    The Court of Appeals' Decision

Plaintiffs appealed, and the Court of Appeals reversed the Court's dismissal, concluding that Andrews and Koszyk had established Article III standing. *Woodhull II*, 948 F.3d at 371. The majority did not reach a conclusion regarding the interpretation of FOSTA's provisions. Rather, it indicated that, even under the Government's proposed interpretation, Andrews' intended conduct was "'arguably proscribed' by FOSTA"—and was thus sufficient for purposes of alleging standing—because the website that Andrews operates "allows sex workers to share information about online payment processors like PayPal." *Id.* at 372-73 (explaining that it "need not read FOSTA to encompass advocacy or educational activities to hold that Andrews has standing"). The majority concluded that this conduct "might trigger an enforcement action." *Id.* at 373. The majority also held that Koszyk's asserted injury was redressable because a favorable decision would create "a significant increase in the likelihood" that Craigslist would restore its Therapeutic

13

Services section. *Id.* at 374 (internal quotation omitted).

Judge Katsas, concurring in part and concurring in the judgment, agreed that Andrews and Koszyk had plausibly alleged Article III standing. *Id.* at 374-75 (Katsas, J., concurring). However, Judge Katsas explained that, rather than leaving FOSTA's interpretation open, as the majority did, he would "reject the plaintiffs' proposed construction" outright because it "ignores or overreads all the key statutory terms." *Id.* at 375. Judge Katsas recognized the language "the prostitution of another person" in § 2421A as referring to a "widely criminalized act," not "prostitution as an abstract legal or policy matter." *See id.* In interpreting the terms "promote" and "facilitate," Judge Katsas pointed to their criminal law context, in which those terms have specific meanings, and concluded that "FOSTA's requirement of action with an 'intent to promote or facilitate' prostitution" must reference "the background law of aiding and abetting" because it "track[s] almost verbatim the canonical formulation for th[at] offense." *Id.* Thus, in Judge Katsas' reading, § 2421A requires the Government to prove that a defendant have "the specific intent to pander or otherwise abet the exchange of sex for money—not simply to advocate for, educate, or provide general assistance to persons who prostitute." *Id.* Under this construction, FOSTA "does not arguably cover" the asserted conduct of Woodhull, HRW, or the Archive, nor Andrews' website "insofar as it provides information about 'support and rescue' organizations." *Id.* However, Judge Katsas agreed with the majority that postings on Andrews' website that provide information about PayPal and other "online payment processors" "might support an inference that Andrews has the requisite intent to 'promote or facilitate the prostitution' of someone besides herself." *Id.* at 376.

The Court of Appeals thus reversed this Court's order dismissing the complaint for lack of subject-matter jurisdiction and remanded for further proceedings.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment." *Pro-Football, Inc. v. Harjo*, 284 F. Supp. 2d 96, 112 (D.D.C. 2003). Rather, the dispute must concern a question of fact that is material, meaning that it is "capable of affecting the substantive outcome of the litigation." *Id.* The dispute must also be genuine, meaning that it is "supported by sufficiently admissible evidence such that a reasonable trier-of-fact could find for the nonmoving party." *Id.*

**ARGUMENT**

## I.   PLAINTIFFS' OVERBREADTH CLAIM (COUNT I) FAILS AS A MATTER OF LAW

Plaintiffs first allege that "[e]ach of FOSTA's operative provisions" is facially invalid under the First Amendment's overbreadth doctrine. The overbreadth doctrine provides a narrow exception to "traditional rules of standing" by allowing a plaintiff to bring a facial First Amendment challenge to a regulation of "spoken words" or patently "expressive or communicative conduct" based on its chilling effect on others. *Broadrick v. Oklahoma*, 413 U.S. 601, 612-13 (1973). However, declaring a statute unconstitutional on overbreadth grounds is "'strong medicine' [that should be] employed . . . with hesitation, and then 'only as a last resort.'" *L.A. Police Dep't v. United Reporting Pub. Corp.*, 528 U.S. 32, 39 (1999) (citations omitted); *cf. Green v. U.S. Dep't of Justice*, 392 F. Supp. 3d 68, 88 (D.D.C. 2019) (dismissing plaintiffs' overbreadth claim because they " 'failed to identify any significant difference'" between their overbreadth and as-applied claims and had not alleged that the statute would "have any different

15

impact on third parties' interests in free speech than it has on' their own" (quoting *City Council v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984)).

Such caution is warranted because, when a statute is deemed facially invalid, even otherwise legitimate applications of the statute are "totally forbidden"—leaving the harms originally identified by Congress to continue unabated. *Broadrick*, 413 U.S. at 613; *see United States v. Williams*, 553 U.S. 285, 292 (2008) (recognizing the "obvious harmful effects" of "invalidating a law that in some of its applications is perfectly constitutional—particularly a law directed at conduct so antisocial that it has been made criminal"); *Aiello v. City of Wilmington*, 623 F.2d 845, 855 (3d Cir. 1980) ("[F]acial invalidation is not a finely honed scalpel in the hands of a judicial surgeon but a broad-blade instrument, which must be applied with restraint.").

The Supreme Court has therefore "vigorously enforced the requirement that a statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292 (citing *Bd. of Trs. v. Fox*, 492 U.S. 469, 485 (1989); *Broadrick*, 413 U.S. at 615). Striking down a law is inappropriate when there is a "core of easily identifiable" conduct that the statute can constitutionally regulate. *Sec'y of State v. Joseph H. Munson Co.*, 467 U.S. 947, 964-67 (1984).

Plaintiffs "bear[] the burden of demonstrating, 'from the text of [the law] and from actual fact,' that substantial overbreadth exists." *Virginia v. Hicks*, 539 U.S. 113, 122 (2003) (quoting *N.Y. State Club Ass'n., Inc. v. City of New York*, 487 U.S. 1, 14 (1988)); *see also Ashcroft v. ACLU*, 535 U.S. 564, 584 (2002) (rejecting plaintiffs' overbreadth challenge because they failed to show that statute's overbreadth was "'not only . . . real, but substantial as well'" (quoting *Broadrick*, 413 U.S. at 615)). Moreover, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be

facially challenged on overbreadth grounds." *Taxpayers for Vincent*, 466 U.S. at 801.

The Supreme Court has directed that the "first step" in assessing an overbreadth challenge is "to construe the challenged statute." *Williams*, 553 U.S. at 293. In *Williams*, the Court determined that the statute at issue there prohibited offers and solicitations of child pornography— a category of material that is illegal and entitled to no First Amendment protection. *See id.* (observing that the statute's "definition of the material or purported material that may not be pandered or solicited precisely tracks" the category of "child pornography" that the Court had previously held fell outside First Amendment protection). *Id.* The Court concluded that, because receipt of child pornography is an "illegal transaction," offers or solicitations of such material were also "categorically excluded from the First Amendment." *Id.* at 298-99. Far from being unconstitutionally overbroad, the statute at issue thus did not implicate the First Amendment at all. *Id.*

The Supreme Court has also questioned whether a facial overbreadth challenge could ever succeed "against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)," even if some applications of the law may implicate protected speech. *Hicks*, 539 U.S. at 124 (indicating that such challenges will succeed "[r]arely, if ever"); *accord Mahoney v. Dist. of Columbia*, 662 F. Supp. 2d 74, 86 n.5 (D.D.C. 2009), *aff'd sub nom. Mahoney v. Doe*, 642 F.3d 1112 (D.C. Cir. 2011). In *Hicks*, the Court held that a city housing authority's trespass policy was not unconstitutionally overbroad because, on its face, the policy was not directed at First Amendment-protected activity at all, even though in some instances, a person violating the policy might have sought to enter the property for speech-related (leafletting) purposes. *Hicks*, 539 U.S. at 124; *see also Hastings v. Judicial Conf.*, 829 F.2d 91, 106–07 (D.C. Cir. 1987) (rejecting overbreadth

challenge to judicial misconduct statute because statute was "directed against serious judicial transgressions, not against protected speech").

In contrast to those cases, the Court in *Stevens* struck down as facially overbroad a statute that referenced "depictions of animal cruelty" on its face—thus bringing the First Amendment squarely into play. *See United States v. Stevens*, 559 U.S. 460, 464-65 (2010). The Court held that such depictions were not categorically excluded from First Amendment protection, *id.* at 472, and that the statute covered many types of depictions where the underlying conduct was not categorically illegal and was in some cases widespread—such as hunting and livestock slaughter, *id.* at 476-77. The Court struck down the statue as unconstitutionally overbroad because the statute's prohibition of protected speech was apparent on its face and was of "alarming breadth." *Id*. at 474.

The situation here is far afield from *Stevens* and instead resembles those in *Williams* and *Hicks*. Like the latter two cases, FOSTA's provisions are not, on their face, directed to First Amendment-protected activity. None of these provisions, by their plain terms, prohibit, regulate, or reference categories of protected speech or expressive activity. The § 230 Amendments simply clarify that § 230 should not be construed to shield certain conduct that is illegal under other laws from State prosecution or State and individual civil actions. *See* 47 U.S.C. § 230(e)(5). The § 1591 Amendment adds a definition of "participation in a venture," but the definition does not reference expressive activity. *See* 18 U.S.C. § 1591(e)(4). And although § 1591 itself refers to "advertising," the advertising that it prohibits is advertising a person knowing that the person is a child or subject to force, fraud, or coercion and will be caused to engage in a commercial sex act, *see id.* § 1591(a)—which under *Williams* and other cases qualifies as an offer of an illegal transaction outside the scope of the First Amendment. *See Williams*, 553 U.S. at 297 ("offers to engage in

illegal transactions are categorically excluded from First Amendment protection"); *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 561-62 (1980) (commercial speech "related to illegal activity" is not protected by the First Amendment); *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 388-89 (1973) ("We have no doubt that a newspaper constitutionally could be forbidden to publish a want ad proposing a sale of narcotics or soliciting prostitutes."). Finally, § 2421A does not, on its face, identify any category of protected speech. Rather, it prohibits certain conduct when done "with the intent to promote or facilitate the prostitution of another person." 18 U.S.C. § 2421A(a).

Plaintiffs appear to base their contention that FOSTA on its face implicates protected speech on the fact that FOSTA's stated sense of Congress references websites, *see* FOSTA § 2, and the provision that it added, § 2421A, also refers to those who "own[], manage[], or operate[] an interactive computer service," FOSTA § 3. In prior proceedings in this case, they sought to rely on discussions of the Internet in cases such as *Reno v. ACLU*, 521 U.S. 844, 867-68 (1997), and *Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017). However, these cases concluded that the First Amendment was implicated based on the relevant statute's *description of the regulated content*. *ACLU* addressed provisions in the CDA that sought to criminalize the transmission of, not only obscene, but also "indecent" or "patently offensive" speech to children. *ACLU*, 521 U.S. at 871-74. The Court held that, in light of those terms, the statute on its face prohibited protected speech and was unconstitutionally vague. *Id.* at 874. Similarly, in *Packingham*, the Court addressed a statute that prohibited registered sex offenders from accessing any social networking website where the offenders knew children could join or maintain webpages. *Packingham*, 137 S. Ct. at 1733. The Court held that the law was not narrowly tailored because it broadly curtailed offenders' access to the Internet altogether. *Id.* at 1737-38.

None of these cases held that a mere reference to the Internet or to ownership or operation of a website would suffice for a statute to be deemed, on its face, to regulate protected speech. Not everything that happens on or through the Internet is protected by the First Amendment, and there are clearly entire categories of material on the Internet that are entitled to no First Amendment protection at all—such as child pornography, *New York v. Ferber*, 458 U.S. 747, 764 (1982), or solicitations to engage in illegal activity, *Williams*, 553 U.S. at 297. A statute that prohibits the transmission of child pornography "on the Internet" no more implicates the First Amendment than does a statute that prohibits the distribution of child pornography through other means. Indeed, statutes may prohibit certain conduct on the Internet without referencing it specifically. For example, the term "facility" in the Travel Act, § 1952(a), includes the Internet[6], and the "unlawful activity" referenced in § 1952(a)(3) includes illegal prostitution and sex trafficking, but the Travel Act has never been deemed a regulation of protected speech. Here, despite FOSTA's references to the Internet, its provisions do not on their face regulate protected speech.

Moreover, the Court of Appeals' holding that some protected speech "might" be prohibited by § 2421A, *Woodhull II*, 948 F.3d at 373, in no way suggests that it or any other FOSTA provision should be deemed facially overbroad. At most, that holding suggests that the situation here resembles that in *Hicks*, in that certain applications of § 2421A might involve protected activity even though such activity is not expressly referenced in the statutory text. Plaintiffs have not shown that this is the "[r]are[]" case where such a law should be deemed facially overbroad. *Cf. Hicks*, 539 U.S. at 124.

Indeed, the fulsome statutory analysis that this Court has already conducted leads to the

---

[6] *E.g., United States v. Halloran*, 821 F.3d 321, 342 (2d Cir. 2016) (explaining that, under the "Travel Act, the government was required to prove that [the defendant] traveled interstate or used a facility in interstate commerce (e.g., the telephone or the internet)").

conclusion that the vast majority of applications of FOSTA will not implicate the First Amendment at all. *See Woodhull I*, 334 F. Supp. 3d at 199-201. Nothing in the Court of Appeals' opinion requires this Court to change its reading of FOSTA's provisions, and Judge Katsas' concurrence agreed with the Court that Plaintiffs' proposed broad construction of FOSTA "ignores or overreads all the key statutory terms." *Woodhull II*, 948 F.3d at 375 (Katsas, J., concurring). The majority focused on the statement in *Williams* that terms such as "promote," and here, "facilitate," "[w]hen taken in isolation, . . . are susceptible of multiple and wide-ranging meanings." *Woodhull II*, 948 F.3d at 372 (quoting *Williams*, 553 U.S. at 294). But as Judge Katsas and this Court have already recognized, FOSTA's provisions do not occur "in isolation"; rather, they occur within a criminal statute against a backdrop of well-established law on the crime of "aiding and abetting." *Id.* at 375 (Katsas, J., concurring); *see Woodhull I*, 334 F. Supp. 3d at 199-200. Indeed, as Judge Katsas explained, "FOSTA's requirement of action with an 'intent to promote or facilitate' prostitution" "track[s] almost verbatim the canonical formulation for the offense of aiding and abetting." *See id.* (citing *Rosemond v. United States*, 572 U.S. 65, 74 (2014)).

And as this Court recognized, § 2421A "contains . . . a heightened mens rea requirement, demanding that the Government prove intent—rather than knowledge or even recklessness—to promote or facilitate." *Woodhull I*, 334 F. Supp. 3d at 199 (citing *GTE Corp.*, 347 F.3d at 659). The Government must therefore show "that the defendant intended to 'explicitly further[]' a specified unlawful act." *Id.* at 201 (quoting *Brown*, 186 F.3d at 670). This means that "FOSTA does require that the defendant own, manage, or operate a website with the specific intent to pander or otherwise abet the exchange of sex for money—not simply to advocate for, educate, or provide general assistance to persons who prostitute." *Woodhull II*, 948 F.3d at 375 (Katsas, J., concurring). As Senator Blumenthal (a primary sponsor of the legislation that became FOSTA) explained in

urging the bill's passage, FOSTA "was not designed to target websites that spread harm reduction information, and the language of the bill makes that clear." 164 Cong. Rec. S1852 (daily ed. Mar. 21, 2018).

The use of these same terms in the Travel Act, which covers the same conduct prohibited by § 2421A, is also significant. *See* 18 U.S.C. § 1952(a)(3) (prohibiting the use of 'any facility in interstate or foreign commerce"—which, again, includes the Internet—with the intent to "promote . . . or facilitate the promotion . . . of any unlawful activity"). As this Court observed, Plaintiffs have not provided "*any* example of prosecution under the Travel Act that tracks its own theory of FOSTA's vast sweep." *Woodhull I*, 334 F. Supp. 3d at 199. The vast majority, if not all, applications of FOSTA would thus involve intentional efforts to promote or facilitate specific illegal acts, and those applications do not implicate the First Amendment. *See Williams*, 553 U.S. at 298-99; *Woodhull I*, 334 F. Supp. 3d at 201. Plaintiffs thus cannot meet their burden to show that FOSTA is substantially overbroad, and the Court therefore should grant judgment as a matter of law in Defendants' favor on Count I.

## II.    PLAINTIFFS' STRICT SCRUTINY CLAIM (COUNT II) FAILS AS A MATTER OF LAW

For similar reasons, Plaintiffs' claim that FOSTA's provisions are content-based restrictions of speech that fail strict scrutiny should also be rejected. "Government regulation of speech is content based"—and thus subject to strict scrutiny—"if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 135 S. Ct. 2218, 2227 (2015). The first step in determining whether a regulation is content based is to determine whether it is "a regulation of speech" that 'on its face' draws distinctions based on the message a speaker conveys." *Id.* In *Reed*, the Court held that a sign policy was content based because it expressly distinguished between categories of speech on outdoor

22

signs based on their message. *See id.* at 2224-25, 2227. There, ideological messages, political messages, and directional messages were all separately addressed in the Sign Code. *See id.*

FOSTA's provisions, on the other hand, do not, on their face, regulate speech at all, for all the reasons already discussed in Part I, *supra*. None of the provisions at issue reference speech, much less any particular message. *Cf. ANSWER Coal. v. Basham*, 845 F.3d 1199, 1209 (D.C. Cir. 2017) (concluding that a regulation providing for Inaugural celebration bleachers permits on Freedom Plaza was "clearly content neutral, because it makes no reference at all to speech, let alone the content of speech," and  "only indirectly regulates where demonstrations may occur"). Plaintiffs' theory seems to be that crimes of owning, managing, or operating an interactive computer service with the intent to promoting or facilitating an act of illegal prostitution or sex trafficking are regulations of speech because people committing those crimes will inevitably either use speech themselves, or enable others' speech, in furtherance of their criminal acts. However, FOSTA identifies no specific message as one that would demonstrate the requisite intent (to promote or facilitate a specific act of illegal prostitution or sex trafficking), nor does it suggest that any such message—or speech in any form—is the sole way that such an intent could manifest. In other words, there is no necessary correlation between a specific message, or speech in general, and the crimes that FOSTA identifies. Moreover, Plaintiffs' theory, if accepted, would extend to many crimes, especially those involving aiding and abetting or conspiracy. Humans use speech to communicate with each other, even when they are communicating about illegal activities. However, no court has ever held that that fact transforms every crime involving aiding and abetting or conspiracy, or every crime in which people use language in any way, into a regulation of speech—much less one that is content-based.

Although communications in a particular case may serve as evidence of a website owner's

intent, that is far from a basis to deem the statute a content-based regulation of speech itself. Rather, the situation here is similar to that in *Democracy Partners v. Project Veritas Action Fund*, No. 17-1047, 2020 WL 1536217 (D.D.C. Mar. 31, 2020), where the court rejected an argument that a wiretapping statute was content-based because one aspect of the law would require analysis of the content of oral communications "to determine whether [the] communication contains confidential information." *Id.* at *18. As the court explained, "[a] law is not considered 'content based' simply because a court must 'look at the content of an oral or written statement in order to determine whether a rule of law applies.'" *Id.* (quoting *ACLU v. Alvarez*, 679 F.3d 583, 603 (7th Cir. 2012) (quoting *Hill v. Colorado*, 530 U.S. 703, 721 (2000))). Particularly where a law requires a specific intent, "[i]t is common in the law to examine the content of a communication to determine the speaker's purpose." *Hill*, 530 U.S. at 721. The Supreme Court in *Hill* thus held that a law requiring consent in order to approach within eight feet of another person outside a clinic "for the purpose . . . of engaging in oral protest, education, or counseling" was not content based simply because the content of a communication could reveal the speaker's purpose, and thus whether the restriction applied. *Id.* As in *Democracy Partners* and *Hill*, any speech relevant to a prosecution here would only be used to determine whether a website owner intended to promote or facilitate an illegal act. Moreover, to the extent the speech at issue constitutes an offer or solicitation of an illegal transaction, it would not be protected in the first place. *Williams*, 553 U.S. at 297.

Rather than speech, FOSTA's provisions prohibit conduct—specifically, acting with the intent to promote or facilitate acts of illegal prostitution, as well as doing so with reckless disregard that "such conduct" contributed to sex trafficking. 18 U.S.C. § 2421A(a)-(b).[7] At most, the crimes

---

[7] Because the other provisions of FOSTA merely add definitions or rights of action with respect to previously-existing crimes or causes of action, or lift § 230 immunity for conduct already illegal under other laws, they cannot even properly be described as prohibiting any conduct that was not

and civil causes of action that are described may have an incidental impact on speech. *Cf. ANSWER*, 845 F.3d at 1209. But because FOSTA on its face does not regulate speech, the Court may consider that the law's justification is unrelated to speech. *See Reed*, 135 S. Ct. at 2228-29 (explaining that *Ward v. Rock Against Racism*, 491 U.S. 781 (1989), applies to facially content-neutral regulations). When such a regulation "'serves purposes unrelated to the content of expression,'" it "'is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.'" *ANSWER*, 845 F.3d at 1210 (quoting *Ward*, 491 U.S. at 791); *see also Green*, 392 F. Supp. 3d at 91 (prohibition on circumventing technological access controls on copyrighted works was content neutral despite incidental impact on speech). Here, Congress enacted FOSTA in furtherance of its goal to combat illegal prostitution and sex trafficking, and in particular to clarify that § 230 should not shield websites from prosecution or liability that they would otherwise face under preexisting laws. FOSTA § 2. In particular, since the Travel Act already prohibits the use of websites with the intent to facilitate or promote illegal activity, Congress included § 2421A in FOSTA primarily to serve as a cross-reference for § 230(e)(5)(C), which clarifies that *State* laws prohibiting the same conduct can be applied to websites without regard to § 230(c)(1). FOSTA's provisions therefore do serve purposes unrelated to the content of expression.

FOSTA's provisions therefore are not content-based and need not satisfy strict scrutiny. Plaintiffs do not allege that FOSTA's provisions fail any lesser form of First Amendment scrutiny. Moreover, no facial First Amendment analysis of FOSTA's provisions is appropriate where none of these provisions necessarily regulate speech at all, and where Plaintiffs have not pursued any

_____

already prohibited. Similarly, § 2421A does not prohibit anything not already prohibited by the Travel Act. Regardless, none of FOSTA's provisions on their face reference or regulate speech.

as-applied challenge. The Court therefore should grant judgment to Defendants solely on the ground that FOSTA's provisions are not content-based. However, even if the Court were to analyze FOSTA's provisions under intermediate scrutiny, on the theory that some applications of FOSTA may implicate protected speech, it should uphold FOSTA's provisions.

A content neutral regulation of speech comports with the First Amendment if (1) "the restriction serves a substantial governmental interest"; (2) "the interest served is unrelated to the suppression of free expression"; and (3) "the restriction does not burden substantially more speech than is necessary to further the government's legitimate interest." *Green*, 392 F. Supp. 3d at 91; *cf. United States v. O'Brien*, 391 U.S. 367, 376 (1968) ("[W]hen 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms.").

All three prongs of this test are satisfied here. FOSTA serves substantial—indeed, compelling—governmental interests. It serves the government's interest in combatting illegal prostitution and sex trafficking online and the role of "bad-actor" websites in connection with such crimes. It also serves the government's interest in allowing sex trafficking victims and States to vindicate their own interests, using existing laws, against those who engage in this criminal conduct. FOSTA § 2. These interests are unrelated to the suppression of any expression protected by the First Amendment.

Moreover, any incidental restriction on protected speech is no greater than necessary to further the government's legitimate interests. By removing the § 230 liability bar for the crimes and civil actions that FOSTA describes and references, FOSTA furthers the government's compelling interest by allowing State and private suits that courts had previously held were barred.

As discussed above, this Court and Judge Katsas have already properly construed FOSTA's provisions and correctly concluded that nothing in FOSTA prohibits the broad categories of speech that convey advocacy and information but do not intentionally aid specific illegal acts. *Woodhull I*, 334 F. Supp. 3d at 201-03; *Woodhull II*, 948 F.3d at 375 (Katsas, J., concurring). Even the speech that the Court of Appeals suggested may be implicated by Andrews' website—regarding the use of PayPal—would only be implicated if Andrews had the requisite intent to promote or facilitate specific illegal acts of prostitution. To the extent that she or other website owners or operators do have such an intent, their conduct would already be illegal under the Travel Act, which, like § 2421A, prohibits the use of websites with the intent to promote or facilitate the promotion of illegal prostitution. *See* 18 U.S.C. § 1952(a)(3). The conduct for which the § 230 Amendments allow civil actions or State criminal prosecutions similarly must already be illegal under existing law. *See* 47 U.S.C. § 230(e)(5)(A)-(C). By any measure, § 2421A and the § 230 Amendments qualify as narrowly tailored because the only speech they implicate is that which is intentionally or knowingly promotes or facilitates criminal activity and is already incidentally burdened by pre-existing law. The Court therefore should grant judgment as a matter of law in Defendants' favor on Count II.

## III. PLAINTIFFS' VAGUENESS CLAIM (COUNT III) FAILS AS A MATTER OF LAW

Plaintiffs' claim that certain terms in FOSTA are unconstitutionally vague also fails. "Vagueness doctrine is an outgrowth of the Due Process Clause of the Fifth Amendment, not the First Amendment." *United States v. Bronstein*, 151 F. Supp. 3d 31, 37 (D.D.C. 2015) (citing *Williams*, 553 U.S. at 304). "A criminal law is unconstitutionally vague if it is written so imprecisely 'that it fails to give ordinary people fair notice of the conduct it prohibits,' or is 'so standardless that it invites arbitrary enforcement' by police, prosecutors, and juries." *Id.* (quoting

*Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015)); *see also Hodge v. Talkin*, 799 F.3d 1145, 1171-72 (D.C. Cir. 2015). These concerns "are heightened in the First Amendment context." *Bronstein*, 2015 WL 9412106, at *3. Here, of course, as explained above, heightened scrutiny is not warranted because any activities that could lead to prosecution under §§ 1591 or 2421A relate to illegal transactions involving prostitution or sex trafficking. Even to the extent they involve speech, such activities are afforded no First Amendment protection. *Williams*, 553 U.S. at 297; *Cent. Hudson Gas & Elec. Corp.*, 447 U.S.at 561-62.

Moreover, even if Plaintiff's vagueness challenge implicated First Amendment interests, "'perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.'" *Bronstein*, 151 F. Supp. 3d at 37 (quoting *Ward*, 491 U.S. at 794). While "'[c]lose cases can be imagined under virtually any statute,'" it is "a 'mistake' to 'belie[ve] that the mere fact that close cases can be envisioned renders a statute vague.'" *Hodge*, 799 F.3d at 1173 (quoting *Williams*, 553 U.S. at 305-06). Where, as here, plaintiffs raise a facial vagueness challenge, they must show that the challenged law is "vague in all its applications." *Id.* (internal quotation omitted).

In addition, courts, including this Circuit, have recognized that a scienter requirement "mitigate[s]" any vagueness in other terms of the statute by helping to ensure that a defendant had adequate notice and by preventing arbitrary enforcement. *Nat'l Ass'n of Mfrs. v. Taylor*, 582 F.3d 1, 27-28 (D.C. Cir. 2009) (citing *Vill. of Hoffman Estates v. Flipside*, 455 U.S. 489, 499 (1982)); *see also United States v. Scanio*, 705 F. Supp. 768, 775 (W.D.N.Y. 1988) (scienter "'help[s] to ensure that the defendant had adequate notice and by guarding against capricious enforcement through the requirement that he actually have intended the conduct which the statute seeks to guard against'" (quoting *Wright v. New Jersey*, 469 U.S. 1146, 1151 & n.5 (1985) (Brennan, J.,

dissenting from dismissal of appeal for want of substantial federal question) (citing *Vill. of Hoffman Estates*, 455 U.S. at 499; *Grayned v. City of Rockford*, 408 U.S. 104, 111, 114 (1972)).

Plaintiffs' Complaint alleges that three provisions are unconstitutionally vague: (1) the terms "promote" and "facilitate" in § 2421A(a), Compl. ¶ 149; (2) the phrase "contribute to sex trafficking" in § 2421A(b)(2), Compl. ¶ 149; and (3) the definition added to § 1591 of "participation in a venture" to mean "assisting, supporting, or facilitating," Compl. ¶ 154. However, these terms, in the overall context of the statutes in which they appear, are easily understood and bear no resemblance to words and phrases—like "in a manner annoying to persons walking by"—that courts have found result in facial vagueness because of their "fundamental subjectivity." *See Bronstein*, 151 F. Supp. 3d at 38; *see also Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010) (identifying terms "annoying," "indecent," "vagrants" as terms that the Supreme Court has held vague because they require "untethered, subjective judgments").

First, in regard to the terms "promote" and "facilitate," the prior statutory analysis conducted by this Court and Judge Katsas, discussed above, suffices to dispense with the notion that these terms are vague. As explained, these terms do not occur in § 2421A(b)(2) in a vacuum. Rather, they occur in the context of a criminal statute requiring a mens rea of "intent"; where the phrase "prostitution of another person," together with an affirmative defense in jurisdictions where the charged act was not illegal, denotes a specific act of illegal prostitution; and where the terms are commonly understood as synonyms for aiding and abetting. *Woodhull I*, 334 F. Supp. 3d at 200-01; *Woodhull II*, 948 F.3d at 375 (Katsas, J., concurring).

Moreover, similar wording and use of the terms promote and facilitate have been present in the Travel Act and money laundering statutes for decades, and those terms have never been held unconstitutionally vague in those contexts. To the contrary, courts have understood that the terms

"promote" and "facilitate" in the Travel Act reference conduct "that would cause the unlawful activity to be accomplished or that [would] assist[] in the unlawful activity in any way"—in other words, conduct that provides assistance to a specific legal act. *Bennett*, 95 F.3d 1158, at *4 (9th Cir. 1996) (unpublished) (upholding jury instruction on meaning of terms "to promote" or "facilitate the promotion of" in the Travel Act); *see also* Aid and Abet, Black's Law Dictionary (10th ed. 2014) (defining "aid and abet" as "to assist or facilitate the commission of a crime, or to promote its accomplishment"); *cf. Rosemond*, 572 U.S. at 71 (an accomplice is liable as a principal when he gives "assistance or encouragement . . . with the intent thereby to promote or facilitate commission of the crime") (citing 2 W. LaFave, Substantive Criminal Law § 13.2, p. 337 (2003)). Thus, "[t]he likelihood that anyone would not understand any of those common words seems quite remote." *Hill*, 530 U.S. at 732.

Second, the phrase "contribute to sex trafficking" in § 2421A(b)(2) is similarly clear in context. For one thing, the imposition of an aggravated penalty based on § 2421A(b)(2) presupposes that the defendant meets the elements of the crime described in § 2421A(a); the defendant thus must have been proven to act with the intent to promote or facilitate a specific act of illegal prostitution. *See* 18 U.S.C. § 2421A(b). In addition, the cross-reference to § 1591(a) means that an act of sex trafficking of a child, or of an adult by means of force, fraud, or coercion, must have occurred or been attempted. Moreover, the word "contribute" is commonly understood, both in and outside the legal context, as denoting a causal connection, as in "contributory negligence," or "contributory infringement." *See, e.g.*, *Jones*, 755 F.3d at 413–14 (adopting "material contribution test to determine whether a website operator is 'responsible, in whole or in part, for the creation of development of [allegedly tortious] information" pursuant to 47 U.S.C. § 230(f)(3)); *see also* Merriam-Webster online (defining "contribute" as "to play a significant part

in bringing about an end or result"). The aggravated crime identified in § 2421A(b)(2) thus means that the defendant must have acted with reckless disregard of the fact that his conduct (which under § 2421A(a) must have been with the intent to promoting or facilitating a specific illegal act of prostitution) helped to cause or bring about an act of sex trafficking of a child or of an adult by force, fraud, or coercion. Nothing in this description supports a conclusion that it is unconstitutionally vague.

Third, the phrase "participation in a venture," which appears in § 1591(a)(2) and in § 1595(a), has been understood and applied by courts and has never been deemed unconstitutionally vague. *E.g.*, *A.B. v. Marriott Int'l, Inc.*, No. 19-5770, 2020 WL 1939678, at *17-18 (E.D. Pa. Apr. 22, 2020) (finding sufficient allegations that hotel defendants benefitted financially from participation in a sex trafficking venture based on numerous indications hotel rooms were being used for sex trafficking); *M.A. v. Wyndham Hotels & Resorts, Inc*., 425 F. Supp. 3d 959, 967 (S.D. Ohio 2019) (finding sufficient allegations that hotel defendants "engag[ed] in acts and omissions that were intended to support, facilitate, harbor, and otherwise further the trafficker's sale and victimization of [an individual] for commercial sexual exploitation"). The fact that FOSTA added a definition of the phrase in § 1591(e)(4) does not change that conclusion. Rather, courts have recognized that the significance of that definition is to affirm a "knowingly" scienter requirement on criminal prosecutions pursuant to § 1591(a)(2). *E.g., A.B*., 2020 WL 1939678, at *10 (contrasting the "knowingly" mens rea identified in the definition in § 1591(e)(40 with the "knew or should have known" mens rea identified in the civil remedy provision in § 1595(a)). The definition does not otherwise change the meaning of "participation in a venture."

Moreover, any possible vagueness here is mitigated by the applicable scienter requirements in the relevant provisions. *See Nat'l Ass'n of Mfrs*., 582 F.3d at 27-28. In particular, "the Supreme

Court has found a 'knowing' requirement sufficient to ameliorate vagueness concerns." *Id.* at 27-28 (citing *Hill*, 530 U.S. at 732); *see also Robinson v. Dist. of Columbia*, 234 F. Supp. 3d 14, 24 (D.D.C. 2017) (inferred *mens rea* of knowledge sufficed to mitigate any vagueness in law prohibiting carrying open containers of alcohol). The relevant provisions here all have a scienter requirement of knowledge or intent. *See* 18 U.S.C. § 2421A(a), (b) (requiring "intent to promote or facilitate the prostitution of another person"); *id.* § 2421A(b)(2) (requiring "intent to promote or facilitate the prostitution of another person" *and* "reckless disregard of the fact that such conduct contributed to sex trafficking"); 18 U.S.C. § 1591(e)(4) (requiring "knowingly" assisting, supporting, or facilitating a violation of § 1591(a)).

The Court therefore should grant judgment as a matter of law in Defendants' favor on Count III.

## IV. PLAINTIFFS' "SELECTIVE REMOVAL OF IMMUNITY" CLAIM (COUNT IV) FAILS AS A MATTER OF LAW

In Count IV, Plaintiffs challenge Congress's alleged "selective removal" for crimes of sex trafficking from the immunity that § 230(c)(1) granted to interactive computer services against State or third party suits. No court has ever held that the First Amendment confers a right to federal statutory immunity against State or private suits. Rather Congress's enactment of § 230 represented a policy choice to "'promote the continued development of the internet.'" *Klayman v. Zuckerberg*, 753 F.3d 1354, 1355-56 (D.C. Cir. 2014) (quoting 47 U.S.C. § 230(b)).

But just as "Congress sets the policy in the statutes it enacts," *Ctr. for Biological Diversity v. EPA*, 722 F.3d 401, 413 (D.C. Cir. 2013), so may it also amend that policy as it sees fit, within constitutional bounds. *Cf. Nixon v. United States*, 938 F.2d 239, 255 (D.C. Cir. 1991) (acknowledging that "the courts may well be barred from second-guessing Congress' fact-finding and policy judgments within the zones of discretion assigned it by the Constitution"). As explained

above, FOSTA's enactment followed judicial holdings that had applied § 230(c)(1) to shield websites' alleged knowing or intentional facilitation of illegal prostitution and sex trafficking. Because those courts' interpretations did not comport with Congress's intent in enacting § 230 in the first place, Congress enacted FOSTA to ensure that § 230(c)(1) does not shield such conduct—already subject to federal prosecution under the Travel Act and § 1591—from State criminal prosecution or from State and private suits under statutory civil rights of action. It is well within Congress's prerogative to amend a statute, in response to judicial holdings, in order to reflect its view of how potentially conflicting policies (encouraging the growth of the Internet vs. combatting sex trafficking) should be harmonized.

The Complaint asserts that, by stating that such conduct is not shielded by § 230(c)(1), while leaving the immunity provided by § 230(c)(2) intact, FOSTA encourages websites to remove more content than necessary. Compl. ¶ 163. However, those allegations appear to assume that certain terms in FOSTA are unconstitutionally vague—a separate claim that should be rejected for the reasons explained in Part III, *supra*. The Complaint identifies no recognizable First Amendment doctrine that is violated by Congress's amendment of § 230, nor does it identify any cognizable First Amendment violation. Indeed, Plaintiffs concede that the decisions they allege third party websites made to disallow certain content are not required by FOSTA, but are instead the result of the websites' market-based assessments of the relative costs and benefits of maintaining certain content on their sites. Compl. ¶ 163. The First Amendment provides no conceivable right to individuals against the Government with respect to such private corporate decisions. Accordingly, the Court should grant judgment as a matter of law in Defendants' favor on Count IV.

## V.   PLAINTIFFS' "DEFECTIVE SCIENTER" CLAIM (COUNT V) FAILS AS A MATTER OF LAW

Plaintiffs next allege that FOSTA §§ 3 and 5 violate the First Amendment because, as construed by Plaintiffs, these provisions lack a scienter requirement. The Supreme Court has held that some form of scienter is required in connection with obscenity convictions in order "to avoid the hazard of self-censorship of constitutionally protected material and to compensate for the ambiguities inherent in the definition of obscenity." *Mishkin v. New York*, 383 U.S. 502, 511 (1966). Thus, in *Smith v. California*, 361 U.S. 147 (1959), the Court held that a bookseller could not be convicted of selling an obscene book based on strict liability. *Id.* at 153-54. However, the Court has not identified any particular scienter requirement for crimes involving distribution of obscenity. *See id.* ("We need not and most definitely do not pass today on what sort of mental element is requisite to a constitutionally permissible prosecution").

Contrary to Plaintiffs' assertions, FOSTA § 3 (§ 2421A) and FOSTA § 5 (the § 1591 Amendment) do contain scienter requirements. Any prosecution under § 2421A(a) or (b) requires the Government to prove the defendant had the intent to promote or facilitate a specific illegal act of prostitution. 18 U.S.C. § 2421A(a), (b). An aggregated offense pursuant to § 2421A(b)(2) imposes an additional scienter requirement; thus, in addition to the intent that is already required, the Government must prove the defendant acted in "reckless disregard" of the fact that the charged conduct contributed to sex trafficking of a child or of an adult by force, fraud, or coercion, in violation of § 1591. 18 U.S.C. § 2421A(b)(2).

FOSTA's § 1591 Amendment defined a term in the statute ("participation in a venture") but changed nothing about § 1591's underlying mens rea. Both before and after the passage of FOSTA, a prosecution under § 1591(a) requires the government to prove specific knowledge of sex trafficking. Moreover, the definition added by FOSTA includes an express mens rea element:

"*knowingly* assisting, supporting, or facilitating." 18 U.S.C. § 1591(e)(4) (emphasis added).

These scienter requirements conform to the Supreme Court's holdings on the issue. *See Elonis v. United States*, 135 S. Ct. 2001, 2015-16 (2015) (Alito, J., dissenting) (recognizing that the majority did not decide whether "knowledge" or "recklessness" was the appropriate scienter requirement for a conviction pursuant to 18 U.S.C. § 875(c), based on making threats on social media, and contending that a recklessness mens rea would not violate the First Amendment, particularly given that such threats are not protected speech).

Moreover, the Court has held that, where a federal statute does not identify a scienter requirement, one will be inferred where necessary. *Id.* at 2010 ("When interpreting federal criminal statutes that are silent on the required mental state, we read into the statute only that mens rea which is necessary to separate wrongful conduct from otherwise innocent conduct." (internal quotation omitted)). Thus, in *Elonis*, the Court overturned the conviction pursuant to 18 U.S.C. § 875(c) where the trial court had not imposed any scienter. *Elonis*, 135 S. Ct. at 2012. However, the Court did not strike down the statute. *See id. Elonis* thus makes clear that an allegedly deficient scienter requirement is not a valid basis for overturning a federal statute on its face. Rather, to the extent a statute fails to impose the necessary scienter, a court may infer it in the course of individual criminal proceedings. *See id.* at 2010. The Court should reject Count V on that basis alone.

In addition, the Court should reject Count V because FOSTA does not address mere written content, whether obscenity or threats. Rather, as discussed above, FOSTA on its face does not regulate speech. Instead, it is directed at conduct that promotes or facilitates illegal prostitution and sex trafficking. Plaintiffs' prior briefing cited no case that has applied *Smith* or *Elonis* to a similar context. For all of these reasons, the Court should grant judgment as a matter of law in Defendants' favor on Count V.

## VI.  PLAINTIFFS' EX POST FACTO CLAIM (COUNT VI) FAILS AS A MATTER OF LAW

In Count VI, Plaintiffs seek to invalidate FOSTA on its face on the ground that FOSTA § 4(b), which purports to allow for retroactive application of the § 230 Amendments, violates the Ex Post Facto Clause, U.S. Const. art. I, § 9, cl. 3. A "'law that changes the punishment, and inflicts a greater punishment[] than the law annexed to the crime[] when committed,' is an ex post facto law." *United States v. Alvaran-Velez*, 914 F.3d 665, 668 (D.C. Cir. 2019); *cf. Cole v. Fulwood*, 879 F. Supp. 2d 60, 63 (D.D.C. 2012) ("The Ex Post Facto Clause of the United States Constitution prohibits retroactive increases in punishment for a crime after its commission.").

Plaintiffs' claim does not present a basis for facially invalidating FOSTA. Courts have considered whether a particular sentence or other condition, as applied to an individual criminal defendant or parolee, presents an ex post facto violation. *E.g.*, *Carmell v. Texas*, 529 U.S. 513, 516 (2000) (considering criminal defendant's ex post facto challenge to application of amended State law to him on direct appeal from his conviction); *Lynce v. Mathis*, 519 U.S. 433, 436 (1997) (considering habeas ex post facto claim of individual who had been returned to prison after his provisional early release credits had been revoked under new State law); *Alvaran-Velez*, 914 F.3d at 666-67 (considering criminal defendant's claim that application of new sentencing guideline to him was an ex post facto violation); *Daniel v. Fulwood*, 766 F.3d 57, 60 (D.C. Cir. 2014) (considering class action claims of ex post facto violations where the proposed class consisted of currently incarcerated inmates who had already had parole hearings under guidelines that had been revised since the date of their offenses); *Fletcher v. Reilly*, 433 F.3d 867, 869 (D.C. Cir. 2006) (considering habeas claim that U.S. Parole Commissions' "retroactive application of . . . new federal regulations during his reparole hearing . . . violated the Ex Post Facto Clause"). However, no court has ruled, in a pre-enforcement challenge, that a law is facially invalid on ex post facto

36

grounds. This is because, when evaluating an ex post facto claim, "[t]he controlling inquiry is one of practical effect," rather than the facial terms of a statute or guideline. *Id.* at 879. As a practical matter, any potential ex post facto violation can only be assessed on a case-by-case basis after the prosecution or civil action has commenced.

Here, as the Department of Justice noted in its letter to the Office of Management and Budget, State prosecutors can avoid any potential ex post facto problem when bringing claims pursuant to § 1595 or pursuant to State laws identified in § 230(e)(5)(B) or (C) by pursuing only newly prosecutable criminal conduct that takes place after FOSTA's enactment. *See* March 23, 2018 Letter, at 1-2. Moreover, Plaintiffs fail to identify any attempt by a State prosecutor to bring charges under any of those laws that could be deemed retroactive, nor, given the Department's public position, can they demonstrate a substantial risk that any such charges will be brought in the future. In addition, Plaintiffs have not identified any risk that any such laws might be retroactively applied to *them*. The Court therefore should grant judgment as a matter of law in Defendants' favor on Count VI.

## CONCLUSION

For the foregoing reasons, summary judgment should be entered in favor of Defendants.

Dated:  August 31, 2020                    Respectfully submitted,

                                           ETHAN P. DAVIS
                                           Acting Assistant Attorney General

                                           BRIGHAM J. BOWEN
                                           Assistant Director, Federal Programs Branch

                                           */s/ Kathryn L. Wyer*___
                                           KATHRYN L. WYER
                                           Federal Programs Branch
                                           U.S. Department of Justice, Civil Division
                                           1100 L Street, N.W., Room 12014
                                           Washington, DC  20005

37

Tel. (202) 616-8475 / Fax (202) 616-8470
kathryn.wyer@usdoj.gov
*Attorneys for Defendants*