IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WOODHULL FREEDOM FOUNDATION, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES OF AMERICA, *et al.*, <br><br> *Defendants*. | Case No. 1:18-cv-1552-RJL |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

Pursuant to Local Civil Rule 7(h)(1) of the Rules of the United States District Court for the District of Columbia, defendants the United States of America and William P. Barr, in his official capacity as Attorney General of the United States, (collectively, "Defendants") hereby submit the following statement of material facts as to which Defendants contend there is no genuine issue in connection with their motion for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure.

**FOSTA's enactment**

1. Congress enacted, and the President signed into law, the Allow States and Victims to Fight Online Sex Trafficking Act of 2017 ("FOSTA"), Pub. L. No. 115-164, 132 Stat. 1253, on April 11, 2018.

**Prior Legislation**

2. Before FOSTA, Congress established federal criminal laws that prohibited sex trafficking and related conduct. The Travel Act, enacted in 1961, prohibits the use of "any facility in interstate or foreign commerce, with intent to . . . promote, manage, establish, carry on, or

facilitate the promotion, management, establishment, or carrying on, of any unlawful activity," including unlawful prostitution and sex trafficking. 18 U.S.C. § 1952(a)(3). The Trafficking Victims Protection Act ("TVPA"), originally enacted in 2000, prohibits sex trafficking of children or sex trafficking of adults by means of force, fraud, or coercion. 18 U.S.C. § 1591(a).

3. The Travel Act and TVPA encompass criminal conduct that occurs online. *See, e.g.*, *United States v. Halloran*, 821 F.3d 321, 342 (2d Cir. 2016) (explaining that, under the "Travel Act, the government was required to prove that [the defendant] traveled interstate or used a facility in interstate commerce (e.g., the telephone or the internet)").

4. The federal government has never attempted to prosecute a website owner, operator, or manager under these laws on the ground that a website hosted content that advocated for or disseminated information and resources to sex workers, or advertised legitimate massage therapy services.

5. Congress also established a civil right of action for sex trafficking victims. The provision, enacted in 2003, authorizes victims of sex trafficking to file civil suits against their "perpetrator" or anyone else who "knowingly benefits, financially or by receiving anything of value from participation" in sex trafficking. 18 U.S.C. § 1595(a).

**Proliferation of Online Sex Trafficking**

6. Since those laws were enacted, there has been a substantial increase in illegal online transactions involving sex trafficking of children and adults. Between 2010 and 2015, there was an 846% increase in suspected sex trafficking, which was "directly correlated to the increased use of the Internet to sell children for sex." *See* U.S. Senate, Permanent Subcomm. on Investigations, *Backpage.com's Knowing Facilitation of Online Sex Trafficking*, at 4 (citing November 19, 2015 testimony of Yiota G. Souras, Senior Vice President & General Counsel, National Center for

Missing & Exploited Children ("NCMEC")), *available at* https://go.usa.gov/xmgPW ("Senate Investigation Report"); *see also* U.S. Dep't of Justice, *The National Strategy for Child Exploitation Prevention and Interdiction*, at 4, 10, 68, 76-77 (Apr. 2016) (stating that the Internet "has become a thriving marketplace for selling children for sex" and "[w]ebsites like Backpage.com have emerged as a primary vehicle for the advertisement of children to engage in prostitution."), *available at* https://go.usa.gov/xmgPA; H.R. Rep. No. 115-572(I), at 3 (2018) (explaining that websites, "including online classified sites like Backpage.com, Eros, Massage Troll, and cityxguide, have . . . become one of the primary channels of sex trafficking"); 164 Cong. Rec. H1292 (daily ed. Feb. 27, 2018) (statement of Rep. Jackson Lee) ("local law enforcement in Seattle, Washington have identified more than 130 websites where mostly women and children are bought and sold for sex").

7.   The "criminal industry" of sex trafficking globally generates "$99 billion a year—with a considerable portion of that money being generated through online advertising and solicitation." *Id.*; *cf.* International Labor Office, *Profits and Poverty: The Economics of Forced Labor* 27 (2014), *available at* https://www.ilo.org/wcmsp5/groups/public/---ed_norm/---declaration/documents/publication/wcms_243391.pdf ("The total annual profits made from forced sexual exploitation are estimated at US$99 billion worldwide," with the highest annual profits per victim in Developed Economies (US$80,000), "due to the high average price of sexual encounters."). Moreover, according to the Human Trafficking Institute, over 80% of federal sex trafficking prosecutions between 2015 and 2020 involved online advertising. *See* Human Trafficking Institute, *2019 Federal Human Trafficking Report*, at 28, *available at* https://www.traffickinginstitute.org/federal-human-trafficking-report-2019/.

**Application of § 230 To Shield Alleged Bad Actor Websites From Suit**

8. The website Backpage.com ("Backpage")—a site that "reportedly net more than 80% of all revenue from online commercial sex advertising in the United States"—was found to take intentional measures to help sex traffickers avoid detection when posting advertisements online for commercial sex, and to be aware that its site facilitated child sex trafficking. *See* Senate Investigation Report, at 5-6, 17-41; 164 Cong. Rec. H1278 (statement of Rep. Slaughter); H.R. Rep. 115-571(1), at 3-4; *see also* Indictment [ECF 3], *United States v. Lacey*, No. 2:18-cr-422 (D. Ariz. filed Mar. 28, 2018) (describing extensive criminal conduct by Backpage officers and employees).

9. Prior to FOSTA's enactment, State and local efforts to prosecute websites such as Backpage for intentionally or knowingly facilitating sex trafficking crimes, and individual attempts to invoke the right of action in 18 U.S.C. § 1595, were frustrated by 47 U.S.C. § 230(c)(1), a provision that Congress had originally established in 1996, as part of Title V of the Telecommunications Act of 1996, Pub. L. 104-104, 110 Stat. 56, known as the Communications Decency Act ("CDA"). Section 230(c)(1) acts as a liability shield for websites, providing that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Citing this provision, a number of courts granted injunctions barring State criminal action or dismissed cases brought by State and local prosecutors and by individuals against websites based on their alleged role in sex trafficking crimes. *Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 15 (1st Cir. 2016); *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1275 (W.D. Wash. 2012); *M.A. ex rel. P.K. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1053 (E.D. Mo. 2011) *Backpage.com, LLC v. Hoffman*, No. 13-cv-3952, 2013 WL 4502097, at *6-7 (D. N.J. Aug. 20,

2013); *Backpage.com, LLC v. Cooper*, No. 3:12-cv-654, 2013 WL 1249063, at *1 (M.D. Tenn. Mar. 27, 2013).

10. Section 230(c)(1) has never applied to federal criminal prosecutions. 47 U.S.C. § 230(e)(1) ("Nothing in this section shall be construed to impair the enforcement of . . . any . . . Federal criminal statute."). Thus, the federal government has always been and remains able to prosecute sex trafficking crimes, pursuant to § 1591(a) and the Travel Act, when they occur online, including against website publishers that use their websites with the intent to promote or facilitate sex trafficking. For example, the federal government indicted the website operator of MyRedbook.com under the Travel Act and 18 U.S.C. § 2 (aiding and abetting), among other charges, for the alleged promotion and facilitation of sex trafficking. *See* Indictment [ECF 1] (filed June 24, 2014) & Sentencing Memorandum [ECF 70] (filed May 14, 2015), *United States v. Omuro*, No. 3:14-cr-00336 (N.D. Cal.); *see also* Indictment, *Lacey*, *supra*.

11. However, the vast majority of crimes are prosecuted at the State and local level. 164 Cong. Rec. S1854 (statement of Sen. McCaskill) (stating that "upwards of 90 percent of the crime that is prosecuted in this country is done by local prosecutors").

**FOSTA Reflects Congress's Policy Judgment that Its Compelling Interest in Combatting Sex Trafficking Outweighs the Interests Protected by the Original § 230**

12. Congress has a compelling interest in combatting illegal prostitution and sex trafficking online and the role of "bad-actor" websites in connection with such crimes. FOSTA represents Congress's policy decision that those compelling interests outweigh any interest in shielding such websites from State criminal liability or federal civil rights of action when those websites act illegally in connection with sex trafficking. *See Doe No. 1*, 817 F.3d at 29 (explaining that Congress could amend § 230 if it deemed the evils targeted by § 1595 to "outweigh" the values underlying § 230, and to justify civil suits by victims of sex trafficking against internet publishers

such as Backpage that "tailor[] [their] website[s] to make sex trafficking easier"); H.R. Rep. No. 115-572(1), at 3-6 (Feb. 20, 2018) (FOSTA "is designed to combat online sex trafficking by providing new tools to law enforcement through a new federal criminal statute and by making it easier for states to prosecute criminal actor websites"); 164 Cong. Rec. H1277-03, H1277-78 (daily ed. Feb. 27, 2018) (statement of Rep. Collins) (when enacting § 230, Congress "never intended to shield websites that profit by creating a marketplace for sexual slavery, like Backpage.com, from facing the legal consequences of their criminal enterprises"); *id.* at H1278 (statement of Rep. Slaughter) (explaining that "courts weren't able to help [sex trafficking] victims, instead encouraging them to pursue legislative changes, and that brings us here today"); *id.* (statement of Rep. Wagner) ("Congress never intended to create a system that allows businesses to commit crimes online that they could not commit offline."); 164 Cong. Rec. H1291 (statement of Rep. Jackson Lee) (citing "letter to Congress from the National Association of Attorneys General" indicating that federal courts' interpretations of § 230 have "left victims and State and local law enforcement agencies and prosecutors, who regularly confront the cruel realities of sex trafficking, feeling powerless against online ad services and websites that facilitate or allow sex trafficking"); 164 Cong. Rec. S1852 (daily ed. Mar. 21, 2018) (statement of Sen. Blumenthal) (purpose of FOSTA is to "give survivors their day in court" and to clarify that § 230 "was never intended to give websites a free pass to aid and abet sex trafficking" or "immunize completely those websites so they could knowingly facilitate sex trafficking"); 164 Cong. Rec. S1853 (statement of Sen. Heitkamp) (explaining CDA should not "protect[] [websites] from prosecution or protect[] them from civil penalty if they were complicit and, in fact, abetted [sex trafficking] crimes"). FOSTA § 2 (stating the "sense of Congress" that § 230 "was never intended to provide legal protection to websites that unlawfully promote and facilitate prostitution and websites that

6

facilitate traffickers in advertising the sale of unlawful sex acts with sex trafficking victims" and that "websites that promote and facilitate prostitution have been reckless in allowing the sale of sex trafficking victims and have done nothing to prevent the trafficking of children and victims of force, fraud, and coercion"); Attorney General's Annual Report to Congress on U.S. Government Activities to Combat Trafficking in Persons, at vii (FY 2018) (describing FOSTA as "allow[ing] state criminal actions against websites and technology platforms for their intentional facilitation of sex trafficking or prostitution, as well as federal civil suits against such entities for conduct related to sex trafficking"), *available at* https://www.justice.gov/humantrafficking/attorney-generals-trafficking-persons-report.

13. Criminal laws targeting the online illegal prostitution of another person also serve the government's compelling interest in combatting sex trafficking. "[O]nline advertisements rarely, if ever, indicate that sex trafficking is involved. The advertisements neither directly nor implicitly state that force, fraud, or coercion was used against the victim, nor do they say that the person depicted being prostituted is actually under the age of 18. Because these indicia of knowledge of criminality are typically lacking in the advertisements, federal prosecutors usually cannot demonstrate beyond a reasonable doubt that the website operators knew that the advertisements involved sex trafficking. Further, general knowledge that sex trafficking occurs on a website will not suffice as the knowledge element must be proven as to a specific victim. A new statute that instead targets promotion and facilitation of prostitution is far more useful to prosecutors." H.R. Rep. No. 115-572, pt. 1, at 5 (Feb. 20, 2018).

**FOSTA's Provisions**

14. FOSTA amended three existing statutes and enacted a fourth.

15. FOSTA added subsection (e)(5) to 47 U.S.C. § 230, which states:

(5) NO EFFECT ON SEX TRAFFICKING LAW.—Nothing in this section (other than subsection (c)(2)(A)) shall
be construed to impair or limit—
    (A) any claim in a civil action brought under section 1595 of title 18, United States Code, if the conduct underlying the claim constitutes a violation of section 1591 of that title;
    (B) any charge in a criminal prosecution brought under State law if the conduct underlying the charge would constitute a violation of section 1591 of title 18, United States Code; or
    (C) any charge in a criminal prosecution brought under State law if the conduct underlying the charge would constitute a violation of section 2421A of title 18, United States Code, and promotion or facilitation of prostitution is illegal in the jurisdiction where the defendant's promotion or facilitation of prostitution was targeted.

47 U.S.C. § 230(e)(5) (added by FOSTA § 4(a)).

16.    FOSTA also added a Note to § 230, stating:

(b) EFFECTIVE DATE.—The amendments made by this section shall take effect on the date of the enactment of this Act, and the amendment made by subsection (a) shall apply regardless of whether the conduct alleged occurred, or is alleged to have occurred, before, on, or after such date of enactment.

47 U.S.C. § 230 Note(b) (added by FOSTA § 4(b).

17.    In a March 23, 2018 letter submitted to the Office of Management and Budget, the Department of Justice indicated that it supported FOSTA's passage and that State prosecutors could avoid any *ex post facto* concern, in connection with the amendments to § 230, by "pursuing only newly prosecutable criminal conduct that takes place after the bill is enacted." *See* U.S. Dep't of Justice Office of Legislative Affairs, Letter to Hon. Mick Mulvaney, Director, Office of Management and Budget (Mar. 23, 2018) ("March 23, 2018 Letter") [ECF 15-1], at 2.

18.    FOSTA added subsection (d) to 18 U.S.C. § 1595:

(d) In any case in which the attorney general of a State has reason to believe that an interest of the residents of that State has been or is threatened or adversely affected by any person who violates section 1591, the attorney general of the State, as parens patriae, may bring a civil action against such person on behalf of the residents of the State in an appropriate district court of the United States to obtain appropriate relief.

8

18 U.S.C. § 1595(d) (added by FOSTA § 6(a)).

19. FOSTA enacted 18 U.S.C. § 2421A:

**(a) In general.**--Whoever, using a facility or means of interstate or foreign commerce or in or affecting interstate or foreign commerce, owns, manages, or operates an interactive computer service (as such term is defined in defined in section 230(f) the Communications Act of 1934 (47 U.S.C. 230(f))), or conspires or attempts to do so, with the intent to promote or facilitate the prostitution of another person shall be fined under this title, imprisoned for not more than 10 years, or both.
**(b) Aggravated violation.**--Whoever, using a facility or means of interstate or foreign commerce or in or affecting interstate or foreign commerce, owns, manages, or operates an interactive computer service (as such term is defined in defined in section 230(f) the Communications Act of 1934 (47 U.S.C. 230(f))), or conspires or attempts to do so, with the intent to promote or facilitate the prostitution of another person and--
   **(1)** promotes or facilitates the prostitution of 5 or more persons; or
   **(2)** acts in reckless disregard of the fact that such conduct contributed to sex trafficking, in violation of 1591(a),
shall be fined under this title, imprisoned for not more than 25 years, or both.
**(c) Civil recovery.**--Any person injured by reason of a violation of section 2421A(b) may recover damages and reasonable attorneys' fees in an action before any appropriate United States district court.
**(d) Mandatory restitution.**--Notwithstanding sections 3663 or 3663A 3 and in addition to any other civil or criminal penalties authorized by law, the court shall order restitution for any violation of subsection (b)(2). The scope and nature of such restitution shall be consistent with section 2327(b).
**(e) Affirmative defense.**--It shall be an affirmative defense to a charge of violating subsection (a), or subsection (b)(1) where the defendant proves, by a preponderance of the evidence, that the promotion or facilitation of prostitution is legal in the jurisdiction where the promotion or facilitation was targeted.

18 U.S.C. § 2421A (added by FOSTA § 3(a)).

20. The conducted prohibited by 18 U.S.C. § 2421A was already prohibited by the Travel Act, 18 U.S.C. § 1952.

21. FOSTA added a definition of "participation in a venture" to 18 U.S.C. § 1591, defining the phrase as "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)." 18 U.S.C. § 1591(e)(4) (added by FOSTA § 5).

22.     FOSTA "was not designed to target websites that spread harm reduction information"—information about how individuals involved in the "commercial sex trade can avoid violence, prevent HIV, and access community and support services." 164 Cong. Rec. S1852 (daily ed. Mar. 21, 2018) (statement of Sen. Blumenthal). Since FOSTA's enactment, its provisions have not been used by the federal government, States, or individuals to bring suit against websites on the ground that the websites hosted content that advocated for or disseminated information and resources to sex workers, or advertised legitimate massage therapy services.

Dated:   August 31, 2020                     Respectfully submitted,

                                             ETHAN P. DAVIS
                                             Acting Assistant Attorney General

                                             BRIGHAM J. BOWEN
                                             Assistant Director, Federal Programs Branch

                                             */s/ Kathryn L. Wyer*___
                                             KATHRYN L. WYER
                                             Federal Programs Branch
                                             U.S. Department of Justice, Civil Division
                                             1100 L Street, N.W., Room 12014
                                             Washington, DC   20005
                                             Tel. (202) 616-8475 / Fax (202) 616-8470
                                             kathryn.wyer@usdoj.gov
                                             *Attorneys for Defendants*