**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WOODHULL FREEDOM
    FOUNDATION, *et al.*,

                    *Plaintiffs*,

        v.

UNITED STATES OF AMERICA, *et al.*,

                    *Defendants*.

Case No. 1:18-cv-1552-RJL

**<u>DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. iv

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................. 3

    I.       STATUTORY BACKGROUND ........................................................... 3

           A.      Pre-FOSTA Legislation and Other Developments .................... 3

           B.      FOSTA's Provisions ................................................................ 6

    II.      PROCEDURAL HISTORY ................................................................ 9

           A.      Initial District Court Proceedings ............................................ 9

           B.      The Court's Opinion of September 24, 2018 .......................... 10

           C.      The Court of Appeals' Decision ............................................. 12

ARGUMENT ..................................................................................................... 14

    I.       FOSTA TARGETS THE ILLEGAL SALE OF CHILDREN AND ADULTS
           FOR SEX, NOT PROTECTED ONLINE SPEECH ............................. 14

           A.      FOSTA on  Its Face Does Not Target Online Speech, and Any Speech
                    Implicated by Its Provisions Is Not Protected by the First Amendment .. 14

           B.      Plaintiffs Wrongly Equate Website Operators Who Knowingly
                    Participate in Sex Trafficking With Innocent Vendors Asked To
                    Censor Others' Speech ........................................................... 18

    II.      PLAINTIFFS' VAGUENESS CLAIM FAILS AS A MATTER OF LAW ....... 22

    III.    PLAINTIFFS' OVERBREADTH CLAIM FAILS AS A MATTER OF LAW... 29

    IV.    PLAINTIFFS' "DEFECTIVE SCIENTER" CLAIM FAILS AS A MATTER
           OF LAW ........................................................................................ 36

    V.      PLAINTIFFS' STRICT SCRUTINY CLAIM FAILS AS A MATTER OF
           LAW ............................................................................................. 39

    VI.    PLAINTIFFS' EX POST FACTO CLAIM FAILS AS A MATTER OF LAW . 42

VII.    IN THE ALTERNATIVE, THE COURT SHOULD STAY
        PROCEEDINGS PURSUANT TO RULE 56(f) ................................................. 44

CONCLUSION ........................................................................................................................ 45

## **TABLE OF AUTHORITIES**

**Cases**

*Amusement Devices Ass'n v. State of Ohio*, 443 F. Supp. 1040 (S.D. Ohio 1977)  .............. 26, 27

*ANSWER Coal. v. Basham*, 845 F.3d 1199 (D.C. Cir. 2017)  ................................ 40, 41

*Ashcroft v. ACLU*, 535 U.S. 564 (2002)  ............................................................ 30, 35

*Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805 (M.D. Tenn. 2013)  ................................. 36

*Backpage.com, LLC v. Dart*, 807 F.3d 229 (7th Cir. 2015)  ......................................... 36

*\*Backpage.com, LLC v. Lynch*, 216 F. Supp. 3d 96 (D.D.C. 2016)  ................... 16, 17, 23, 36, 39

*Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262 (W.D. Wash. 2012)  ........................... 36

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963)  .................................................. 19

*Blitz v. Donovan*, 740 F.2d 1241 (D.C. Cir. 1984)  ................................................. 33

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973)  ........................................................ 29

*Carmell v. Texas*, 529 U.S. 513 (2000)  ............................................................. 42

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557 (1980)  ......................... 23

*City Council v. Taxpayers for Vincent*, 466 U.S. 789 (1984)  ....................................... 30

*Cole v. Fulwood*, 879 F. Supp. 2d 60 (D.D.C. 2012)  ................................................ 42

*Ctr. for Democracy & Tech. v. Pappert*, 337 F. Supp. 2d 606 (E.D. Pa. 2004)  ........ 18, 19, 20, 22

*Cubby, Inc. v. CompuServe, Inc.*, 776 F. Supp. 135 (S.D.N.Y. 1991)  ................................ 19

*Daniel v. Fulwood*, 766 F.3d 57 (D.C. Cir. 2014)  ................................................... 42

*Denver Area Educ. Telecommc'ns Consortium, Inc. v. FCC* , 518 U.S. 727 (1996)  ...... 18, 19, 20

*Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12 (1st Cir. 2016)  ...................................... 6

*Doe v. GTE Corp.*, 347 F.3d 655 (7th Cir. 2003)  ............................................... 10, 34

*Elonis v. United States*, 135 S. Ct. 2001 (2015)  ................................................. 37, 39

*Flanders v. United States*, No. 11-cr-20557, 2017 WL 11405057 (S.D. Fla. June 13, 2017)
   report and rec. adopted as modified, No. 1:16-cv-20296, 2017 WL 11405056
   (S.D. Fla. Dec. 4, 2017). .................................................................................................... 16

*Fletcher v. Reilly*, 433 F.3d 867 (D.C. Cir. 2006) ....................................................... 43

*Giboney v. Empire Storage & Ice Co*., 336 U.S. 490 (1949) .................................. 21, 31

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ....................................................... 24

*Green v. U.S. Dep't of Justice*, 392 F. Supp. 3d 68 (D.D.C. 2019) ............................ 41

*Hastings v. Judicial Conf*., 829 F.2d 91 (D.C. Cir. 1987) ......................................... 31

*Hill v. Colorado*, 530 U.S. 703 (2000) ................................................................. 25, 26

*Hodge v. Talkin*, 799 F.3d 1145 (D.C. Cir. 2015) ....................................................... 23

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) .......................................... 24

*Huon v. Denton*, 841 F.3d 733 (7th Cir. 2016) ............................................................. 3

*Jeffries v. Barr*, 965 F.3d 843 (D.C. Cir. 2020) ......................................................... 44

*Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015) ........................................... 23

*Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398 (6th Cir. 2014) ........................ 3, 28

*L.A. Police Dep't v. United Reporting Pub. Corp*., 528 U.S. 32 (1999) ...................... 29

*Lynce v. Mathis*, 519 U.S. 433 (1997) ........................................................................ 42

*M.A. ex rel. P.K. v. Village Voice Media Holdings, LLC*,
   809 F. Supp. 2d 1041 (E.D. Mo. 2011) ................................................................... 6

*Mahoney v. Dist. of Columbia*, 662 F. Supp. 2d 74 (D.D.C. 2009),
   *aff'd sub nom. Mahoney v. Doe*, 642 F.3d 1112 (D.C. Cir. 2011) .................................. 31

*Midwest Video Corp. v. FCC*, 571 F.2d 1025 (8th Cir. 1978) .................................... 19

*Nat'l Ass'n of Mfrs. v. Taylor*, 582 F.3d 1, 27-28 (D.C. Cir. 2009) ...................... 23, 26

*Nat'l Fair Hous. All. v. Travelers Indem. Co*., 261 F. Supp. 3d 20 (D.D.C. 2017) .................... 36

*New York v. Ferber*, 458 U.S. 747 (1982) .................................................................. 32

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ................................................................ 19

*Noble v. Weinstein*, 335 F. Supp. 3d 504 (S.D.N.Y. 2018) ......................................................... 22

*N.Y. State Club Ass'n., Inc. v. City of New York*, 487 U.S. 1 (1988) ........................................... 30

*Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881 (2019) ....................................... 28

*Peugh v. United States*, 569 U.S. 530 (2013) ............................................................................. 43

*Reed v. Town of Gilbert*, 576 U.S. 155, 135 S. Ct. 2218 (2015) ...................................... 39-40, 41

*Reno v. ACLU*, 521 U.S. 844 (1997) ............................................................................................ 28

*Robinson v. Dist. of Columbia*, 234 F. Supp. 3d 14 (D.D.C. 2017) ............................................. 26

*Rosemond v. United States*, 572 U.S. 65 (2014) ............................................................. 25, 34, 37

*Sec'y of State v. Joseph H. Munson Co.*, 467 U.S. 947 (1984) .................................................... 30

*\*Smith v. California*, 361 U.S. 147 (1959) ........................................................ 2, 18-19, 20, 21

*Stogner v. California*, 539 U.S. 607 (2003) ................................................................................. 43

*Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180 (1997) ................................................................ 41

*United States v. Alcius*, 952 F.3d 83 (2d Cir. 2020),
    *cert. denied*, No. 19-8592 (U.S. Oct. 5, 2020) ..................................................................... 4

*United States v. Alvaran-Velez*, 914 F.3d 665 (D.C. Cir. 2019) .................................................. 42

*United States v. Bennett*, 95 F.3d 1158 (9th Cir. 1996) (unpublished) .................................. 11, 25

*United States v. Biancofiori*, No. 16-cr-30601, 2018 WL 372172 (N.D. Ill. Jan. 11, 2018) ....... 16

*United States v. Bronstein*, 151 F. Supp. 3d 31 (D.D.C. 2015) ...................................... 22, 23, 24

*United States v. Brown*, 186 F.3d 661 (5th Cir. 1999) ........................................................ 10, 34

*United States v. Dellinger*, 472 F.2d 340 (7th Cir. 1972) ........................................................... 31

*United States v. Estrada-Tepal*, 57 F. Supp. 3d 164 (E.D.N.Y. 2014) ....................................... 16

*United States v. Marcus*, 487 F. Supp. 2d 289 (E.D.N.Y. 2007),
    *vacated on other grounds*, 538 F.3d 97 (2d Cir. 2008) ................................................... 16

*United States v. Miselis*, 972 F.3d 518 (4th Cir. 2020) .................................................. 27, 31, 37

*United States v. Scanio*, 705 F. Supp. 768 (W.D.N.Y. 1988) ..................................... 23

*United States v. Thompson*, 896 F.3d 155 (2d Cir. 2018),
    *cert. denied*, 139 S. Ct. 2715 (2019) ............................................................. 16

*\*United States v. Williams*, 553 U.S. 285 (2008) ........12, 16, 22-23, 27, 29-30, 31, 32, 33, 34, 36

*United States v. Williams*, 258 F. Supp. 3d 633 (D. Md. 2017) ................................... 4

*Vill. of Hoffman Estates v. Flipside*, 455 U.S. 489 (1982) .................................... 23, 24

*\*Virginia v. Hicks*, 539 U.S. 113 (2003) ........................................................... 30, 32, 33

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ........................................... 23, 41

*Wash. Legal Clinic v. Barry*, 107 F.3d 32 (D.C. Cir. 1997) ........................................ 36

*\*Woodhull Freedom Found. v. United States* ("*Woodhull I*"),
    334 F. Supp. 3d 185 (D.D.C. 2018).....................................2, 7, 10-12, 24, 32, 34, 35, 36

*\*Woodhull Freedom Found. v. United States* ("*Woodhull II*"),
    948 F.3d 363 (D.C. Cir. 2020) ...................................2, 3, 6, 12-14, 18, 25, 32, 34, 35, 38

*Wright v. New Jersey*, 469 U.S. 1146 (1985) .............................................................. 24

## <u>Statutes</u>

Travel Act, Pub. L. No. 87-228, 75 Stat. 498 (1961)
    (codified as amended at 18 U.S.C. § 1952) ........................................................... 4

Communications Decency Act, Title V of the Telecommunications Act of 1996,
    Pub. L. No. 104-104, 110 Stat. 56 ("CDA") ................................................... 1, 3

Trafficking Victims Protection Act ("TVPA"), Pub. L. No. 106-386, 114 Stat. 1464 (2000)
    (codified as amended at 18 U.S.C. § 1591) ...................................................... 4

Trafficking Victims Protection Reauthorization Act of 2003,
    Pub. L. No. 108-193, 117 Stat. 2875 .................................................................. 4

Allow States and Victims to Fight Online Sex Trafficking Act of 2017 ("FOSTA"),
    Pub. L. No. 115-164, 132 Stat. 1253 (2018) ..........................................*passim*

18 U.S.C. § 2 ................................................................................................. 6, 37

18 U.S.C. § 875 ............................................................................................. 37, 39

18 U.S.C. § 1591 ............................................................................................. *passim*

18 U.S.C. § 1595 ............................................................................................. *passim*

18 U.S.C. § 1952 ............................................................................................. *passim*

18 U.S.C. § 2252A ............................................................................................. 27

18 U.S.C. § 2421A ............................................................................................. *passim*

22 U.S.C. § 7101 ............................................................................................. 16

47 U.S.C. § 230 ............................................................................................. *passim*

## **Legislative Materials**

H.R. Rep. No. 115-572(I) (2018) ............................................................................................. 5, 38

U.S. Senate, Permanent Subcomm. on Investigations, *Backpage.com's Knowing Facilitation
    of Online Sex Trafficking* ("Senate Investigation Report"),
    *available at* https://go.usa.gov/xmgPW ............................................................................................. 5

164 Cong. Rec. H1277-03 (daily ed. Feb. 27, 2018) ............................................................................................. 5

164 Cong. Rec. H1290-02 (daily ed. Feb. 27, 2018) ............................................................................................. 5, 8

164 Cong. Rec. S1852 (daily ed. Mar. 21, 2018) ............................................................................................. 35

## INTRODUCTION

Congress enacted the Allow States and Victims to Fight Online Sex Trafficking Act of 2017 ("FOSTA"), Pub. L. No. 115-164, 132 Stat. 1253 (2018), in the face of documented evidence that the illegal sale of children and coerced adults for sex has proliferated online, and indications that some websites knowingly and intentionally facilitate such illegal conduct. Significantly, FOSTA does not make more conduct illegal. Sex trafficking was already a crime under existing federal law, as was the use of the Internet to promote or facilitate the illegal conduct of others. FOSTA addresses only who may use available legal tools to combat illegal prostitution and sex trafficking that takes place on the Internet. It ensures that States can apply State criminal laws that mirror federal provisions, and that sex trafficking victims can pursue a federally-created civil right of action, despite a liability shield for websites that Congress previously established in § 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(1).

Plaintiffs fail to show, as a matter of law, that FOSTA is facially invalid. Their pre-enforcement claims under the First and Fifth Amendments and the Ex Post Facto Clause should be rejected. Plaintiffs' vagueness and First Amendment claims ignore that none of FOSTA's provisions, on their face, regulate online speech. The only conduct covered by FOSTA is illegal prostitution and sex trafficking, and the intentional or knowing promotion or facilitation thereof. Moreover, the new 18 U.S.C. § 2421A(a) requires proof that the owner, manager, or operator of an Internet platform intended to promote or facilitate an illegal act of prostitution, while an aggravated violation requires the additional element that the platform knew or should have known that the conduct deemed to violate § 2421A(a) contributed to sex trafficking of a child or of an adult by force, fraud, or coercion. And individuals or companies deemed to violate 18 U.S.C. § 1591(a)(2) must have knowingly participated in a sex trafficking venture.

Plaintiffs rely heavily on *Smith v. California*, 361 U.S. 147 (1959), where booksellers faced strict liability for offering books containing obscenity and thus self-censored beyond what the law required. But FOSTA places no similar demands on those who run Internet platforms. Not only does FOSTA require intent or knowledge, but these scienter requirements relate to illegal commercial sex transactions, not the form of a particular online advertisement. Indeed, the fact that illegal prostitution and trafficking ads—which themselves are not protected by the First Amendment—are often disguised as protected speech makes it less likely, not more, that the ads alone could lead to liability. No one who runs an Internet platform can reasonably claim a need to block entire categories of protected speech simply to avoid knowing or intentional participation in the sale of children and coerced adults for sex.

To the extent the First Amendment is implicated at all, Plaintiffs fail to establish that FOSTA's terms are unconstitutionally vague, substantially overbroad, or lack the requisite scienter. FOSTA's terms are easily understood in the context of the criminal statutes in which they appear and require proof of intentional or knowing participation in illegal conduct. This Court, in its prior opinion in this case, *Woodhull Freedom Found. v. United States* ("*Woodhull I*"), 334 F. Supp. 3d 185 (D.D.C. 2018), and Judge Katsas in his Court of Appeals concurrence, *Woodhull Freedom Found. v. United States* ("*Woodhull II*"), 948 F.3d 363, 374 (D.C. Cir. 2020) (Katsas, J., concurring in part and concurring in the judgment), have correctly interpreted FOSTA as excluding the mere advocacy or educational activities in which most of the Plaintiffs claim to be engaged. And even Plaintiffs do not suggest FOSTA's terms prohibit massage therapy advertisements.

Nor is FOSTA a content-based restriction of speech. On its face, FOSTA prohibits illegal conduct, not speech, and its purpose is to allow States and individuals to combat illegal prostitution and sex trafficking even when those transactions occur, in part, online. Any incidental impact on

protected speech does not subject FOSTA to strict scrutiny.

Finally, Plaintiffs' attempt to invalidate FOSTA on its face pursuant to the Ex Post Facto Clause should fail. Such challenges are properly brought only in an as-applied context, and any ex post facto problem here could only arise if a State, in its discretion, attempts to apply FOSTA's provisions retroactively. Plaintiffs establish no likelihood that any State will do so. Plaintiffs' motion for summary judgment should be denied.

## **BACKGROUND**

### I.   STATUTORY BACKGROUND

#### A.   **Pre-FOSTA Legislation and Other Developments**

Congress originally enacted 47 U.S.C. § 230 in 1996 as part of Title V of the Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56, known as the CDA. In that provision, Congress made a policy decision to "shield[] interactive computer service providers from being treated 'as the publisher or speaker' of any content that is posted by users of the site." *Woodhull II*, 948 F.3d at 367 (quoting 47 U.S.C. § 230(c)(1)); *cf. Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 407-08 (6th Cir. 2014) (recognizing this policy choice "departed from the common-law rule that" a publisher or distributor "of tortious material written or prepared by others" could be held liable for that material).

From the beginning, Congress made clear that the § 230 shield did not apply to the extent the website itself was the "information content provider," by being "responsible, in whole or in part, for the creation or development of information provided" through its service. 47 U.S.C. § 230(f)(3); *see Jones*, 755 F.3d at 408; *see also Huon v. Denton*, 841 F.3d 733, 742 (7th Cir. 2016) ("A company can, [despite § 230], be liable for creating and posting, inducing another to post, or otherwise actively participating in the posting of a defamatory statement in a forum that that

company maintains."). Congress also specified, from the beginning, that this shield would have no impact on the enforcement of federal criminal laws, including those relating to obscenity or the sexual exploitation of children. 47 U.S.C. § 230(e)(1). However, the § 230 shield served to bar States and local governments from enforcing any law—including a State or local criminal law— "that is inconsistent" with § 230. *Id.* § 230(e)(3).

Separately, Congress has also enacted legislation that addresses sex trafficking. The Travel Act addresses the promotion or facilitation of sex trafficking by prohibiting the use of "any facility in interstate or foreign commerce, with intent to . . . promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity." 18 U.S.C. § 1952(a)(3).[1] In 2000, Congress enacted the Trafficking Victims Protection Act ("TVPA"), Pub. L. No. 106-386, 114 Stat. 1464 (2000) (codified as amended at 18 U.S.C. § 1591), which prohibits sex trafficking of children or sex trafficking of adults by means of force, fraud, or coercion. 18 U.S.C. § 1591(a). In 2003, as part of the Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108-193, 117 Stat. 2875, Congress added a provision that authorized victims of sex trafficking to file civil suits against their "perpetrator" or anyone else who "knowingly benefits, financially or by receiving anything of value from participation" in sex trafficking. 18 U.S.C. § 1595(a).

Since those laws were enacted, there has been an exponential growth in the use of online marketplaces for the illegal sex trafficking of children and adults. The National Center for Missing

---

[1] From the time of its enactment in 1961, the Travel Act has defined "unlawful activity" to include "prostitution offenses in violation of the laws of the State in which they are committed or of the United States." Pub. L. No. 87-228, 75 Stat. 498, 499 (1961) (codified as amended at 18 U.S.C. § 1952(b)(i)(1)). These offenses have come to include sex trafficking. *E.g.*, *United States v. Alcius*, 952 F.3d 83, 86 (2d Cir. 2020), *cert. denied*, No. 19-8592 (U.S. Oct. 5, 2020); *United States v. Williams*, 258 F. Supp. 3d 633, 635 (D. Md. 2017).

and Exploited Children ("NCMEC") identified an 846% increase in suspected sex trafficking from 2010 to 2015, which the NCMEC found to be "directly correlated to the increased use of the Internet to sell children for sex."[2] The "criminal industry" of sex trafficking globally generates "$99 billion a year—with a considerable portion of that money being generated through online advertising and solicitation."[3] More than 80% of federal sex trafficking prosecutions between 2015 and 2020 involved online advertising.[4] An investigation by a Senate subcommittee into the anonymous marketplace website Backpage.com ("Backpage")—a site that "reportedly net more than 80% of all revenue from online commercial sex advertising in the United States"—found that Backpage had taken intentional measures to help sex traffickers avoid detection when posting advertisements online for commercial sex. *See* Senate Investigation Report, at 23–41.[5]

Because § 230 has no impact on the enforcement of federal criminal laws, the federal government has always been and remains able to prosecute sex trafficking crimes, pursuant to

---

[2] *See* U.S. Senate, Permanent Subcomm. on Investigations, *Backpage.com's Knowing Facilitation of Online Sex Trafficking* ("Senate Investigation Report"), https://go.usa.gov/xmgPW; *see also* U.S. Dep't of Justice, *The National Strategy for Child Exploitation Prevention and Interdiction*, 4, 10, 76 (Apr. 2016), https://go.usa.gov/xmgPA (the Internet "has become a thriving marketplace for selling children for sex" and "[w]ebsites like Backpage.com have emerged as a primary vehicle for the advertisement of children to engage in prostitution."); H.R. Rep. No. 115-572(I) at 3 (2018) (websites, "including online classified sites like Backpage.com, Eros, Massage Troll, and cityxguide, have . . . become one of the primary channels of sex trafficking").

[3] 164 Cong. Rec. H1292 (daily ed. Feb. 27, 2018) (statement of Rep. Jackson Lee); International Labor Office, *Profits and Poverty: The Economics of Forced Labor* 27 (2014), *available at* https://www.ilo.org/wcmsp5/groups/public/---ed_norm/---declaration/documents/publication/wcms_243391.pdf ("The total annual profits made from forced sexual exploitation are estimated at US$99 billion worldwide," with the highest annual profits per victim in Developed Economies (US$80,000), "due to the high average price of sexual encounters.").

[4] *See* Human Trafficking Institute, *2019 Federal Human Trafficking Report*, at 28, *available at* https://www.traffickinginstitute.org/federal-human-trafficking-report-2019/.

[5] *See also* 164 Cong. Rec. H1278 (statement of Rep. Slaughter); H.R. Rep. 115-572(1), at 3-4; Indictment [ECF 3], *United States v. Lacey*, No. 2:18-cr-422 (D. Ariz. filed Mar. 28, 2018) (describing extensive criminal conduct by Backpage officers and employees).

5

§ 1591(a) and the Travel Act, when they occur online, including against website publishers that use their websites with the intent to promote or facilitate sex trafficking. For example, the federal government convicted the website operator of MyRedbook.com under the Travel Act and 18 U.S.C. § 2 (aiding and abetting), among other charges, for the promotion and facilitation of sex trafficking. *See* Indictment [ECF 1] (filed June 24, 2014) & Sentencing Memorandum [ECF 70] (filed May 14, 2015), *United States v. Omuro*, No. 3:14-cr-00336 (N.D. Cal.).

However, courts held that § 230 barred individuals from invoking the § 1595(a) civil right of action against website publishers of classified advertisements even where the publishers were alleged to structure their websites "to camouflage advertisements for sex traffickers." *Woodhull II*, 948 F.3d at 367. For example, in *Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12 (1st Cir. 2016), the First Circuit affirmed the dismissal, pursuant to § 230(c)(1), of a private suit against Backpage. *See Doe No. 1*, 817 F.3d at 15; *see also M.A. ex rel. P.K. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1053 (E.D. Mo. 2011) (similarly holding individual's § 1595 claim against Backpage was barred by § 230). The court in *Doe No. 1* explained that, if Congress deemed the evils targeted by § 1595 to "outweigh" the values underlying § 230, and to justify civil suits by victims of sex trafficking against internet publishers such as Backpage that "tailor[] [their] website[s] to make sex trafficking easier," "the remedy is through legislation" to amend § 230. *Doe No. 1*, 817 F.3d at 29.

**B.     FOSTA's Provisions**

Congress decided to do just that. In FOSTA, enacted on April 11, 2018, Congress amended § 230, and made other statutory changes, so as not to impede State and private efforts to combat sex trafficking. FOSTA sets forth the "Sense of Congress" that "websites that promote and facilitate prostitution have been reckless in allowing the sale of sex trafficking victims," and that

§ 230 "was never intended to provide legal protection to websites that unlawfully promote and facilitate . . . traffickers in advertising the sale of unlawful sex acts with sex trafficking victims." *See* Pub. L. No. 115-164, § 2.

In regard to the private right of action in § 1595, FOSTA amended § 230 by adding a subsection stating that § 230 should not be interpreted to shield "any claim in a civil action brought under [18 U.S.C. §] 1595 . . . if the conduct underlying the claim constitutes a violation of [18 U.S.C. §] 1591." FOSTA § 4(a) (codified at 47 U.S.C. § 230(e)(5)(A)). FOSTA also enacted an additional remedy for victims of sex trafficking. *Id.* § 3 (codified at 18 U.S.C. § 2421A(c)).

FOSTA also amended § 1595 to allow a State attorney general to bring a civil action "as parens patriae" against those who violate § 1591 and thereby threaten or adversely affect the State's residents. FOSTA § 6(a) (codified at 18 U.S.C. § 1595(d)). "In layman's terms," § 1595(d) "allows state attorneys general to step into the shoes of victims and bring civil suits on their behalf." *Woodhull I*, 334 F. Supp. 3d at 192. Such actions are also excepted from the § 230(c)(1) bar pursuant to § 230(e)(5)(A).

In regard to State criminal prosecutions, FOSTA added another provision to § 230 stating that § 230 should not be construed to shield third parties from "any charge in a criminal prosecution brought under State law if the conduct underlying the charge would constitute a violation of [18 U.S.C. §] 1591." FOSTA § 4(a) (codified at 47 U.S.C. § 230(e)(5)(B)).

FOSTA also made two changes to federal criminal law. First, FOSTA enacted 18 U.S.C. § 2421A, which prohibits "own[ing], manag[ing], or operat[ing] an interactive computer service . . . with the intent to promote or facilitate the prostitution of another person." FOSTA § 3(a) (codified at 18 U.S.C. § 2421A(a)). The new law provides for an enhanced penalty when the offender "promotes or facilitates the prostitution of 5 or more persons" or "acts in reckless

disregard of the fact that such conduct contributed to sex trafficking, in violation of 1591(a)." *Id.* (codified at 18 U.S.C. § 2421A(b)). The law also provides an affirmative defense "where the defendant proves, by a preponderance of the evidence, that the promotion or facilitation of prostitution is legal in the jurisdiction where [it] was targeted." 18 U.S.C. § 2421A(e).

Section 2421A does not extend the scope of conduct prohibited by federal law because the conduct it identifies is already encompassed within the Travel Act. *See* 18 U.S.C. § 1952(a). The Travel Act's prohibition on promoting, managing, establishing, carrying on, or facilitating "any unlawful activity," *id.*, includes prostitution offenses such as unlawful prostitution of another person or sex trafficking. *See id.* § 1952(b)(i)(1). However, § 230, as amended by FOSTA, cross-references the new § 2421A in order to clearly articulate that States with their own criminal laws prohibiting the promotion or facilitation of prostitution may enforce those laws against website owners, managers, or operators. FOSTA § 4(a) (codified at 47 U.S.C. § 230(e)(5)(C)).

Second, FOSTA amended § 1591 by defining the term "participation in a venture" to mean "knowingly assisting, supporting or facilitating a violation of [18 U.S.C. § 1591](a)(1)." FOSTA § 5 (codified at 18 U.S.C. § 1591(e)(4)).

In a Note added to § 230, FOSTA identifies the effective date of FOSTA's amendments to § 230 as the date of FOSTA's enactment, and indicates that those amendments "shall apply regardless of whether the conduct alleged occurred, or is alleged to have occurred, before, on, or after such date of enactment." FOSTA § 4(b). In a February 27, 2018 letter submitted to the House Committee on the Judiciary, the Department of Justice indicated that this provision raised a serious constitutional concern, insofar as it would allow punishment to be imposed for acts not punishable at the time they were committed. *See* U.S. Dep't of Justice Office of Legislative Affairs, Letter to Hon. Robert Goodlatte, Chairman, U.S. House of Representatives Comm. of the Judiciary (Feb.

27, 2018) ("Feb. 27, 2018 Letter"), 164 Cong. Rec. H1297. However, the Department later indicated, in a March 23, 2018 letter submitted to the Office of Management and Budget, that it supported FOSTA's passage and that State prosecutors could avoid any *ex post facto* concern by "pursuing only newly prosecutable criminal conduct that takes place after the bill is enacted." *See* U.S. Dep't of Justice Office of Legislative Affairs, Letter to Hon. Mick Mulvaney, Director, Office of Management and Budget (Mar. 23, 2018) ("March 23, 2018 Letter") [ECF 15-1], at 2.

Plaintiffs' challenges here focus on 18 U.S.C. § 2421A (added by FOSTA § 3); 47 U.S.C. § 230(e)(5) and the § 230 Note (the "§ 230 Amendments") (added by FOSTA § 4); and § 1591(e)(4) (the "§ 1591 Amendment") (added by FOSTA § 5).

## II.   PROCEDURAL HISTORY

### A.   Initial District Court Proceedings

Plaintiffs—consisting of three organizations and two individuals—filed suit on June 28, 2018, seeking declaratory and injunctive relief on the grounds that the various provisions of FOSTA are unconstitutional. Compl. [ECF 1] ¶ 1. Woodhull Freedom Foundation ("Woodhull") asserts that it works to "affirm[] and protect[] the fundamental human right to sexual freedom." *Id.* ¶ 15. Human Rights Watch ("HRW") asserts that it "advocate[s] for the decriminalization of sex work, and for respect for the human rights of sex workers around the world." *Id.* ¶ 16. Eric Koszyk ("Koszyk") asserts that he is a licensed massage therapist who, since the passage of FOSTA, has been blocked by Craigslist from posting online classified advertisements regarding his personal massage business. *Id.* ¶ 17. Alex Andrews ("Andrews") asserts that she operates a website, Rate That Rescue, which allows sex workers to share information. *Id.* ¶ 18. The Internet Archive ("the Archive") asserts that it collects and displays on its website materials from other sources. *Id.* ¶ 19.

Plaintiffs' Complaint asserted that FOSTA's provisions violate the First and Fifth

Amendment and the Ex Post Facto Clause. Plaintiffs filed a motion for a preliminary injunction on June 28, 2018. [ECF 5.] Defendants opposed the preliminary injunction and moved to dismiss. [ECF 15.] In addition to refuting Plaintiffs' claims on the merits, Defendants argued that Plaintiffs lacked standing because their alleged conduct is not credibly subject to prosecution under any of the prohibitions set forth in FOSTA. *Id.* at 9-15. On September 24, 2018, the Court granted Defendants' motion to dismiss for lack of standing and denied Plaintiffs' motion for preliminary injunction as moot. *Woodhull I*, 334 F. Supp. 3d at 203-04.

### B.   The Court's Opinion of September 24, 2018

In its September 24, 2018 Memorandum Opinion, the Court rejected Plaintiffs' urged construction of § 2421A as "criminaliz[ing] any conduct that makes prostitution easier or more likely." *Woodhull I*, 334 F. Supp. 3d at 199 (internal quotation and alteration marks omitted). The Court pointed out that, consistent with cases cited by Plaintiffs, § 2421A "contains . . . a heightened *mens rea* requirement, demanding that the Government prove *intent*—rather than knowledge or even recklessness—to promote or facilitate." *Id.* (citing *Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003)). As the Court explained, this *mens rea* requires the Government to show "not simply that the defendant was aware of a potential result of the criminal offense, but instead that the defendant intended to 'explicitly further[]' a specified unlawful act." *Id.* at 201 (quoting *United States v. Brown*, 186 F.3d 661, 670 (5th Cir. 1999)). The Court also rejected Plaintiffs' reliance on dictionary definitions of "promote" and "facilitate," pointing out that "[t]hose definitions . . . do not shed light on Section 2421A as a whole" because they ignore "both the *mens rea* requirement and the language 'prostitution of another person,' which denotes specific unlawful acts." *Id.* at 199 (Plaintiffs' interpretation "turns a blind eye to the specific context in which [statutory] language is used, and the broader context of the statute as a whole") (internal quotation omitted)).

10

The Court identified the phrase "prostitution of another person" in § 2421A as a "key textual indication[] that make[s] clear that FOSTA targets specific acts of illegal prostitution—not the abstract topic of prostitution or sex work." *Woodhull I*, 334 F. Supp. 3d at 200. As the Court explained, the phrase "is plainly calculated to ensnare only specific unlawful acts with respect to a particular individual, not the broad subject-matter of prostitution." *Id.* The Court identified the existence of an affirmative defense where prostitution is legal "in the jurisdiction where the promotion or facilitation was targeted" as another key indicator, "tether[ing]" § 2421A(a)'s prohibition "to specific crimes much in the way that the Travel Act does." *Id.* In other words, the existence of the affirmative defense means that "the Government may prosecute under Section 2421A" only where the intent is to promote or facilitate "acts that are otherwise illegal under existing federal or state law." *Id.*

The Court found further support for its interpretation in the Travel Act, which § 2421A "mirrors" and which therefore "gives a sense both of the meaning of the plain text of Section 2421A, and of the likelihood of enforcement for specific conduct." *Woodhull I*, 334 F. Supp. 3d at 199-200. Significantly, Plaintiffs failed to identify "any example of prosecution under the Travel Act that track[ed]" Plaintiffs' proposed interpretation of § 2421A. *Id.* at 200. To the contrary, the Court cited jury instructions that the Ninth Circuit had approved for Travel Act prosecutions, explaining that the terms "promote" and "facilitate" referred to acts "that would cause the activity to be accomplished or to assist in the activity," reflecting "the close causal connection required for prosecution." *Id.* (citing *United States v. Bennett*, 95 F.3d 1158 (9th Cir. 1996)).

The Court also concluded that any speech implicated by "own[ing], manag[ing], or operat[ing] an interactive computer service" in violation of § 2421A would be "'intended to induce or commence illegal activities'" and thus would not be protected by the First Amendment.

11

*Woodhull I*, 334 F. Supp. 3d at 201 (quoting *United States v. Williams*, 553 U.S. 285, 297 (2008)).

The Court held that, in light of this statutory interpretation, four of the five Plaintiffs failed to allege a credible threat of prosecution because their asserted conduct was unlikely to satisfy the applicable mens rea, either for § 2421A or State law actions addressed by § 230(e)(5). *Woodhull I*, 334 F. Supp. 3d at 201-03. In particular, neither Woodhull, HRW, Andrews, nor the Archive asserted an intent to "promote or facilitate specific acts of prostitution in violation of state or federal law," so as to fall within the ambit of § 2421A or a parallel State criminal law. *See id.* And neither Andrews nor the Archive asserted conduct suggesting they could be prosecuted for "'knowingly' participating in a venture that 'recruits, entices, harbors transports, provides, obtains, advertises, maintains, or solicits by any means a person . . . knowing" that the person will be used for sex trafficking. *Id.* at 203. The Court also held that Koszyk failed to establish the redressability prong of standing with respect to his asserted injury, which stemmed from Craigslist's decision to eliminate the Therapeutic Services section from its website. *Id.*

### C.     The Court of Appeals' Decision

Plaintiffs appealed, and the Court of Appeals reversed the Court's dismissal, holding that Andrews and Koszyk had established Article III standing. *Woodhull II*, 948 F.3d at 371. The majority did not reach a conclusion regarding the interpretation of FOSTA's provisions. Rather, it indicated that, even under the Government's proposed interpretation, Andrews' intended conduct was "'arguably proscribed' by FOSTA"—and was thus sufficient for purposes of alleging standing—because the website that Andrews operates "allows sex workers to share information about online payment processors like PayPal." *Id.* at 372-73 (explaining that it "need not read FOSTA to encompass advocacy or educational activities to hold that Andrews has standing"). The majority concluded that this conduct "might trigger an enforcement action." *Id.* at 373. The

12

majority also held that Koszyk's asserted injury was redressable because a favorable decision would create "a significant increase in the likelihood" that Craigslist would restore its Therapeutic Services section. *Id.* at 374 (internal quotation omitted).

Judge Katsas, concurring in part and concurring in the judgment, agreed that Andrews and Koszyk had plausibly alleged Article III standing. *Id.* at 374-75 (Katsas, J., concurring). However, Judge Katsas explained that, rather than leaving FOSTA's interpretation open, as the majority did, he would "reject the plaintiffs' proposed construction" outright because it "ignores or overreads all the key statutory terms." *Id.* at 375. Judge Katsas recognized the language "the prostitution of another person" in § 2421A as referring to a "widely criminalized act," not "prostitution as an abstract legal or policy matter." *See id.* In interpreting the terms "promote" and "facilitate," Judge Katsas pointed to their criminal law context, in which those terms have specific meanings, and concluded that "FOSTA's requirement of action with an 'intent to promote or facilitate' prostitution" must reference "the background law of aiding and abetting" because it "track[s] almost verbatim the canonical formulation for th[at] offense." *Id.* Thus, in Judge Katsas' reading, § 2421A requires the Government to prove that a defendant have "the specific intent to pander or otherwise abet the exchange of sex for money—not simply to advocate for, educate, or provide general assistance to persons who prostitute." *Id.* Under this construction, FOSTA "does not arguably cover" the asserted conduct of Woodhull, HRW, or the Archive, nor Andrews' website "insofar as it provides information about 'support and rescue' organizations." *Id.* However, Judge Katsas agreed with the majority that postings on Andrews' website that provide information about PayPal and other "online payment processors" "might support an inference that Andrews has the requisite intent to 'promote or facilitate the prostitution' of someone besides herself." *Id.* at 376.

The Court of Appeals thus reversed this Court's order dismissing the complaint for lack of

subject-matter jurisdiction and remanded for further proceedings. When conferring regarding further proceedings, the parties agreed that Plaintiffs' facial challenges presented only legal issues that could be resolved through cross-motions for summary judgment, without discovery. Thus, no discovery has taken place, and Defendants were not apprised of Plaintiffs' intent to introduce fact and expert witness testimony prior to Plaintiffs' filing.

## **ARGUMENT**

In order to prevail in their summary judgment motion, Plaintiffs must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Although Plaintiffs seek to rely on declarations and other documents attached to their motion, the "facts" that they seek to draw from this purported evidence are immaterial and do not establish the facial invalidity of FOSTA's provisions as a matter of law. Thus, although Defendants have not had the opportunity to cross-examine Plaintiffs' witnesses, test the qualifications of Plaintiffs' putative experts, or provide rebuttal experts in order to challenge Plaintiffs' factual assertions, the Court may deny Plaintiffs' motion, and grant judgment in favor of Defendants, without resolving any factual disputes.

## I.   FOSTA TARGETS THE ILLEGAL SALE OF CHILDREN AND ADULTS FOR SEX, NOT PROTECTED ONLINE SPEECH

### A.   FOSTA on Its Face Does Not Target Online Speech, and Any Speech Implicated by Its Provisions Is Not Protected by the First Amendment

Plaintiffs' First Amendment claims rely on numerous fallacies, as their filing makes clear. For one thing, in urging that FOSTA implicates the First Amendment, Plaintiffs insert the term "speech" in FOSTA's provisions even though no reference to speech appears in the statute. Plaintiffs thus conflate the conduct of owners, managers, and operators of Internet platforms— which FOSTA targets—with the online content that they host, which is not FOSTA's focus. For

example, Plaintiffs suggest that § 2421A applies to online "speech" that "could be construed to 'promote,' 'assist' or 'facilitate' sex work," Pl. Mem. at 1, and sets forth "broad and ambiguous speech prohibitions," Pl. Mem. at 11.[6]

Despite Plaintiffs' characterizations, none of FOSTA's provisions, on their face, regulate online speech. Section 2421A, by its plain terms, addresses the conduct involved in "own[ing], manag[ing], or operat[ing] an interactive computer service . . . with the intent to promote or facilitate the prostitution of another person." 18 U.S.C. § 2421A(a). Its language does not reference the content of websites or online communications, or any message transmitted through such media. Thus, although § 2421A could apply to a website owner, manager, or operator who intentionally posts content on his own website to promote or facilitate an illegal act of prostitution, the provision also reaches a website owner who hosts the content and communications of others if the *owner's conduct* demonstrates the requisite intent. The focus of the statute is not online speech—particularly online speech posted by third parties—but actions by individuals who run websites to intentionally promote or facilitate the efforts of others to sell children or coerced adults for sex.

To the extent 18 U.S.C. § 1591 targets speech, it already did so before FOSTA. Section 1591(a), which FOSTA did not change, already prohibited advertising children or adults subject to force, fraud, or coercion for commercial sex. 18 U.S.C. § 1591(a)(1). That prohibition has never been held to violate the First Amendment. To the contrary, "there is no doubt" that the advertisements at issue in § 1591(a)(1) are unprotected solicitations of illegal activity.

---

[6] *See also id.* at 14 (construing § 2421A as "impos[ing] criminal penalties based entirely on speaking or publishing online with 'intent' to 'promote' or 'facilitate' the prohibited offenses"); *id.* at 16 (hypothesizing that "any online communication that might be considered encouraging to sex workers, or that provides services or seeks to minimize harm" to sex workers "could be swept up in prosecutions or civil claims"); *id*. at 17 (suggesting that § 2421A criminalizes "speech" that "'facilitates' prostitution"); *id.* at 19 (suggesting that "anything on any online platform . . . that can be said to 'promote' or 'facilitate' prostitution or trafficking" could be prosecuted under § 2421A).

*Backpage.com, LLC v. Lynch*, 216 F. Supp. 3d 96, 103 (D.D.C. 2016) (holding that the "advertisements of illegal sex trafficking of a minor or a victim of force, fraud, or coercion" prohibited by § 1591(a) "are not afforded First Amendment protection") (citing *Williams*, 553 U.S. at 297 ("Offers to engage in illegal transactions are categorically excluded from First Amendment protection.")); *see also United States v. Thompson*, 896 F.3d 155, 165 (2d Cir. 2018) (rejecting First Amendment challenge to § 1591(a) because, even assuming the provision applied to "'documentary filmmakers who buy meals for the minors they follow' or 'journalists and social scientists who compensate trafficked minors for interviews,'" those activities are not protected by the First Amendment right of expressive association), *cert. denied*, 139 S. Ct. 2715 (2019); *United States v. Biancofiori*, No. 16-cr-30601, 2018 WL 372172, at *5 (N.D. Ill. Jan. 11, 2018) (rejecting challenge to § 1591 based on asserted right to intimate association because any "legal conduct that would fall under the statute is insubstantial compared to the legitimate scope of the statute designed to eliminate the 'largest manifestation of slavery today'" (quoting 22 U.S.C. § 7101)); *United States v. Estrada-Tepal*, 57 F. Supp. 3d 164, 168 (E.D.N.Y. 2014) (similar); *United States v. Marcus*, 487 F. Supp. 2d 289, 304 (E.D.N.Y. 2007) (rejecting challenge to § 1591 focused on the term "commercial sex act" because "the requirement that [the sex act] be a product of force, fraud or coercion precludes the potential broad sweep about which the defendant expresses concern"), *vacated on other grounds*, 538 F.3d 97 (2d Cir. 2008); *Flanders v. United States*, No. 11-cr-20557, 2017 WL 11405057, at *7 (S.D. Fla. June 13, 2017) (rejecting overbreadth challenge to § 1591 because the provision "criminalizes the use of force, fraud or coercion to cause a person to engage in a commercial sex act . . . ; it does not criminalize consensual adult pornography"), *report and rec. adopted as modified*, No. 1:16-cv-20296, 2017 WL 11405056 (S.D. Fla. Dec. 4, 2017).

Further, § 1591(a)(2)'s prohibition on benefitting from participation in a sex trafficking

venture, which also pre-dates FOSTA, does not reference speech at all—whether protected or not. Indeed, since an online advertiser would already be liable under § 1591(a)(1), the prohibition in § 1591(a)(2) clearly targets conduct other than advertising online. A website, among others, could "participat[e]" in such a venture without posting its own advertisement. But liability under § 1591(a)(2), as under § 2421A, requires sufficient proof of scienter. Indeed, prior to FOSTA, a court held that Backpage lacked standing to bring a pre-enforcement challenge to § 1591(a)(2) where it asserted an intent to benefit financially from hosting the advertisements of others but denied any intent to knowingly host advertisements of illegal sex trafficking. *Backpage.com, LLC*, 216 F. Supp. 3d at 109. FOSTA merely added a definition of "participation in a venture" in § 1591(e)(4) that reinforced this "knowingly" scienter requirement and specified that the knowledge must pertain to a violation of § 1591(a)(1). Nothing about this definition on its face targets online speech.

To be sure, officers and employees of Backpage were later prosecuted, but the conduct described in their indictment—which provided a significant model of what Congress intended to prohibit through FOSTA—shows that Backpage employees were not simply held vicariously liable based on the content of third parties' online advertisements. Indictment [ECF 3], *United States v. Lacey*, No. 2:18-cr-422 (D. Ariz. filed Mar. 28, 2018) (describing extensive criminal conduct by Backpage officers and employees). Rather, the indictment described not only editing others' advertisements to make them less obvious solicitations for sex with children, but also adopting policies to artificially limit automatic warnings when customers used search terms indicating they were looking for child prostitutes, and instructing moderators not to send alerts of potential child exploitation to NCMEC, as well as laundering payments in order to disguise the fact that they were the proceeds of illegal activity. *Id.* ¶¶ 12-14; *see also* Equality Now, Amicus

17

Br., *Woodhull II*, at 8-9 (D.C. Cir. filed Apr. 22, 2019) (listing additional actions taken by Backpage including "removing phone numbers, email addresses, IP addresses, and metadata from sex ads to frustrate the pursuit of sex traffickers by law enforcement," "deliberately removing advertisements posted by anti-trafficking groups and law enforcement agencies seeking to aid sex trafficking victims," and "allowing traffickers to pay for ads with prepaid credit cards and cryptocurrencies to evade law enforcement"). Such examples do not encompass the entire range of conduct that prosecutors might cite to prove that a website acted "with the intent to promote or facilitate the prostitution of another person" in violation of § 2421A, or benefitted financially from "knowingly assisting, supporting, or facilitating" sex trafficking in violation of § 1591(a)(2), (e)(4), but they do illustrate that the conduct at issue may have little, if anything, to do with online speech, and that, to the extent online speech is implicated at all, it is speech that falls outside First Amendment protection. Plaintiffs' attempts throughout their brief to rewrite FOSTA's statutory language do nothing to advance their First Amendment claims.

### B. Plaintiffs Wrongly Equate Website Operators Who Knowingly Participate in Sex Trafficking With Innocent Vendors Asked To Censor Others' Speech

Plaintiffs also argue that the First Amendment is implicated because, in their view, FOSTA is analogous to the laws at issue in *Smith v. California*, 361 U.S. 147 (1959); *Denver Area Educ. Telecommc'ns Consortium, Inc. v. FCC*, 518 U.S. 727, 753, 760 (1996); and *Ctr. for Democracy & Tech. v. Pappert*, 337 F. Supp. 2d 606, 649-50 (E.D. Pa. 2004). However, all three of these cases addressed laws that sought to commandeer vendors who otherwise had *no* involvement in criminal activity—such as booksellers, cable companies, or internet service providers—in an effort to censor content produced by others. The state law at issue in *Smith* made booksellers strictly liable for having obscene books on their shelves, thus "impos[ing] a strict or absolute criminal *responsibility* on [the bookseller] *not* to have obscene books in his shop." *Smith*, 361 U.S. at 149-

50 (emphasis added). The Court struck down the law, reasoning that it amounted to "self-censorship, compelled by the State," because booksellers would be willing to sell only books they had verified were not obscene. *Id.* at 153-54. Because a bookseller could personally review only a limited number of books, the availability of non-obscene books would be limited as well. *See id.*

The law at issue in *Denver Area* imposed obligations on certain types of cable channels to segregate and block "patently offensive" (but First Amendment-protected) programming. *Denver Area*, 518 U.S. at 760. The Court struck down this provision because other types of channels were subject to less restrictive measures. *See id.* And the state law in *Ctr. for Democracy* required internet service providers ("ISPs") to block access to certain URLs identified by law enforcement as containing child pornography. *Ctr. for Democracy & Tech.*, 337 F. Supp. 2d at 649-50. The court in that case held the law was not overbroad, but failed either intermediate or strict scrutiny because, in order to comply with the law, ISPs reasonably used technology that incidentally blocked a large amount of protected speech. *See id.* At the same time, these efforts failed to effectively eliminate child pornography because it could easily migrate to other URLs. *See id.*[7]

The common thread among these cases—which is lacking here—is that the government

---

[7] Plaintiffs cite a number of other cases as addressing similar concerns, but those cases are also inapposite. In *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 68-70 (1963), the Court struck down as an unconstitutional prior restraint a state commission's practice of notifying paperback distributors that certain books were "objectionable" because it effectively coerced distributors to remove books from the marketplace without a judicial process to determine whether they in fact qualified as obscene or not. *See also Midwest Video Corp. v. FCC*, 571 F.2d 1025, 1056 (8th Cir. 1978) (requiring cable operators to operate a public forum while excluding obscene or indecent speech presented prior restraint similar to *Bantam Books*). In *New York Times Co. v. Sullivan*, 376 U.S. 254, 288 (1964), the Court held that a public figure bringing a libel charge under state law had to prove "actual malice"—requiring knowledge or recklessness with respect to the falsity of an alleged libelous statement—and that a newspaper could not be deemed to exhibit actual malice by failing to check the accuracy of an editorial advertisement against news stories in its own files. *See also Cubby, Inc. v. CompuServe, Inc.*, 776 F. Supp. 135, 139-40 (S.D.N.Y. 1991) (requiring computer service to have knowledge or reason to know of users' libelous content in order to be liable under state law). No possible prior restraint or liability for libel is at issue here.

indisputably sought to target a particular category of speech, whether it was protected speech or not, but did so indirectly by placing responsibility on the vendor or service provider to exclude or restrict the material at issue. The vendor or service provider's effort to carry out this responsibility then led to restrictions on content that had not been targeted by the law itself.

FOSTA is not like those laws. None of FOSTA's provisions place any responsibility on Internet platforms to censor content published by their users. Indeed, unlike the laws at issue in *Smith*, *Denver Area*, and *Ctr. for Democracy*, FOSTA does not target published content, nor does it impose liability—strict or otherwise—on websites for hosting certain content. The content of online speech is not the issue in FOSTA because the crimes that FOSTA targets are independent of the content of an advertisement or depiction. The crimes at issue in FOSTA—illegal prostitution, in § 2421A; and sex trafficking of minors and adults by force, fraud, or coercion, in § 1591—are not in any sense forms of speech or expressive conduct. A stark illustration of this distinction is that two online advertisements may look the same, but one may relate to the illegal sale of a minor for commercial sex while the other may not relate to criminal conduct at all. In FOSTA, only the former could even be potentially relevant to show an Internet platform's knowledge or intent, but unlike in *Smith*, the very fact that the two advertisements are identical makes it *more* difficult for a prosecutor to use the former as proof. In such a case, far more than the advertisement would likely be required to demonstrate intent or knowledge.

Thus, FOSTA's aim is not to commandeer innocent Internet platforms in an effort to make objectionable *content* unavailable online. FOSTA targets criminal *conduct* by owners, managers, and operators of websites who intentionally or knowingly further underlying criminal acts involving the sale of adults and minors for commercial sex. And even though, as with many human activities, participation in those crimes might involve speaking, that by itself does not implicate

the First Amendment. *See Giboney v. Empire Storage & Ice Co*., 336 U.S. 490, 502 (1949) ("[I]t has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed").

Ultimately, Plaintiffs' analogy to cases like *Smith* falls flat because it ignores the connection between FOSTA's scienter requirements and the *transactions* involved in the underlying crimes of prostitution and sex trafficking. Rather than a law requiring booksellers to censor their books, a better parallel here is a law that prohibits bookstores from renting out meeting rooms with the intent to facilitate illegal drug sales. Such a law would not implicate the First Amendment, even if the distributors posted written signs saying "buy drugs here" on the meeting room doors, or even if they disguised their true activity by posting a sign saying "candy." The fact that bookstores contain books does not imbue everything that happens in bookstores with a First Amendment interest. Similarly, the fact that the Internet contains content protected by the First Amendment does not mean that all laws targeting criminal activity that occurs in part on the Internet implicate the First Amendment.

Although Plaintiffs submit declarations that purport to provide evidence of FOSTA's impacts on online content, they fail to establish that Internet platforms that allegedly chose to remove particular sections or forums after FOSTA's enactment were compelled to do so to avoid liability under FOSTA. Plaintiffs rely on testimony from Koszyk and others stating that, after FOSTA's passage, Craigslist removed its Therapeutic Services section, thus preventing massage therapists like Koszyk from using that platform to advertise their services. *See* Pl. Mem. at 33. They also cite Google's decision to "forbid publishing 'sexually explicit or pornographic images or videos,'" and Reddit's decision to remove certain subreddits. *Id.* at 5. But unlike *Smith*, where

the Court reasoned that a bookseller faced with the prospect of strict liability would have no choice but to limit his inventory to books he had personally reviewed; or *Ctr. for Democracy*, where the ISPs established that they had reasonably used certain filtering technologies to comply with the law at issue, but that those technologies inevitably resulted in "overblocking" a "significant number of sites," *Ctr. of Democracy*, 337 F. Supp. 2d at 651, Plaintiffs have not established that the reactions by Craigslist, Google, or Reddit were reasonably necessary to avoid liability under FOSTA. Nor is any such conclusion plausible. To the contrary, all that is required for an Internet platform to avoid liability under FOSTA is to refrain from engaging in conduct intended to promote or facilitate illegal prostitution, or from knowingly participating in a sex trafficking venture involving minors or coerced adults. *E.g., Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) ("some participation in the sex trafficking act itself must be shown" in order to prove a violation of § 1591(a)(2)). Plaintiffs' theory would allow Internet platforms to manufacture a First Amendment interest where there was none by unnecessarily removing categories of content on their sites.

Because FOSTA neither regulates protected speech on its face, nor imposes responsibilities on Internet platforms that reasonably require them to limit protected speech, its provisions do not implicate the First Amendment. Plaintiffs' First Amendment claims, and their assertion of a heightened standard for their vagueness claim, should be rejected on that basis alone.

## II.   PLAINTIFFS' VAGUENESS CLAIM FAILS AS A MATTER OF LAW

Plaintiffs first argue that certain terms in FOSTA are unconstitutionally vague. "Vagueness doctrine is an outgrowth of the Due Process Clause of the Fifth Amendment, not the First Amendment." *United States v. Bronstein*, 151 F. Supp. 3d 31, 37 (D.D.C. 2015) (citing *Williams*, 553 U.S. at 304). "A criminal law is unconstitutionally vague if it is written so imprecisely 'that it

fails to give ordinary people fair notice of the conduct it prohibits,' or is 'so standardless that it invites arbitrary enforcement' by police, prosecutors, and juries." *Id.* (quoting *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015)); *see also Hodge v. Talkin*, 799 F.3d 1145, 1171-72 (D.C. Cir. 2015). These concerns "are heightened in the First Amendment context." *Bronstein*, 2015 WL 9412106, at *3. But heightened scrutiny is not warranted here because any activities that could lead to prosecution under §§ 1591 or 2421A relate to illegal transactions involving prostitution or sex trafficking. *See supra*, Part I. Even if they involve speech, such activities are afforded no First Amendment protection. *Williams*, 553 U.S. at 297; *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 561-62 (1980); *Backpage.com, LLC*, 216 F. Supp. 3d at 103.

In any event, "'perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.'" *Bronstein*, 151 F. Supp. 3d at 37 (quoting *Ward v. Rock Against* Racism, 491 U.S. 781, 794 (1989)). While "'[c]lose cases can be imagined under virtually any statute,'" it is "a 'mistake' to 'belie[ve] that the mere fact that close cases can be envisioned renders a statute vague.'" *Hodge*, 799 F.3d at 1173 (quoting *Williams*, 553 U.S. at 305-06). Where, as here, plaintiffs raise a facial vagueness challenge, they must show that the challenged law is "vague in all its applications." *Id.* (internal quotation omitted).

In addition, courts, including this Circuit, have recognized that a scienter requirement "mitigate[s]" any vagueness in other terms of the statute by helping to ensure that a defendant had adequate notice and by preventing arbitrary enforcement. *Nat'l Ass'n of Mfrs. v. Taylor*, 582 F.3d 1, 27-28 (D.C. Cir. 2009) (citing *Vill. of Hoffman Estates v. Flipside*, 455 U.S. 489, 499 (1982)); *see also United States v. Scanio*, 705 F. Supp. 768, 775 (W.D.N.Y. 1988) (scienter "'help[s] to ensure that the defendant had adequate notice and by guarding against capricious enforcement through the requirement that he actually have intended the conduct which the statute seeks to guard

23

against'" (quoting *Wright v. New Jersey*, 469 U.S. 1146, 1151 & n.5 (1985) (Brennan, J., dissenting from dismissal of appeal for want of substantial federal question) (citing *Vill. of Hoffman Estates*, 455 U.S. at 499; *Grayned v. City of Rockford*, 408 U.S. 104, 111, 114 (1972)).

Plaintiffs allege that three provisions are unconstitutionally vague: (1) the terms "promote" and "facilitate" in § 2421A(a); (2) the phrase "contribute to sex trafficking" in § 2421A(b)(2); and (3) the definition added to § 1591 of "participation in a venture" to mean "assisting, supporting, or facilitating a violation of" § 1591(a). Pl. Mem. at 14-15. However, these terms, in the overall context of the statutes in which they appear, are easily understood and bear no resemblance to words and phrases—like "in a manner annoying to persons walking by"—that courts have found result in facial vagueness because of their "fundamental subjectivity." *See Bronstein*, 151 F. Supp. 3d at 38; *see also Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010) (identifying terms "annoying," "indecent," "vagrants" as terms that the Supreme Court has held vague because they require "untethered, subjective judgments").[8]

Plaintiffs focus primarily on the terms "promote" and "facilitate" in § 2421A(a). But prior statutory analyses by this Court and Judge Katsas suffice to dispense with the notion that these terms are vague. These terms do not appear in § 2421A(b)(2) in a vacuum. Rather, they occur in the context of a criminal statute requiring a *mens rea* of "intent"; where the phrases "prostitution of another person" and "prostitution of 5 or more persons," together with an affirmative defense in jurisdictions where the charged act was not illegal, denotes a specific act of illegal prostitution; and where the terms are commonly understood as synonyms for aiding and abetting. *Woodhull I*,

---

[8] Plaintiffs' vagueness claims largely duplicate their claims that certain terms in FOSTA are overbroad. Plaintiffs do not suggest that any terms they purport to challenge as "vague" fail to give fair notice of what FOSTA prohibits or introduce subjectivity into enforcement decisions. Instead, they argue, incorrectly, that these terms lead to the overbroad criminalization of protected speech.

334 F. Supp. 3d at 200-01; *Woodhull II*, 948 F.3d at 375 (Katsas, J., concurring).

Plaintiffs identify no case where a court has held that the terms "promote" or "facilitate" are unconstitutionally vague. Indeed, similar wording and use of the terms promote and facilitate have been present in the Travel Act and money laundering statutes for decades, and those terms have never been held unconstitutionally vague in those contexts. To the contrary, courts have understood that the terms "promote" and "facilitate" in the Travel Act reference conduct "that would cause the unlawful activity to be accomplished or that [would] assist[] in the unlawful activity in any way"—in other words, conduct that provides assistance to a specific legal act. *Bennett*, 95 F.3d 1158, at *4 (upholding jury instruction on meaning of terms "to promote" or "facilitate the promotion of" in the Travel Act); *see also* Aid and Abet, Black's Law Dictionary (10th ed. 2014) (defining "aid and abet" as "to assist or facilitate the commission of a crime, or to promote its accomplishment"); *cf. Rosemond v. United States*, 572 U.S. 65, 71 (2014) (an accomplice is liable as a principal when he gives "assistance or encouragement . . . with the intent thereby to promote or facilitate commission of the crime") (citing 2 W. LaFave, Substantive Criminal Law § 13.2, p. 337 (2003)).[9] Thus, "[t]he likelihood that anyone would not understand any of those common words seems quite remote." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

While Plaintiffs devote little analysis to the phrases "contribute to sex trafficking" in § 2421A(b)(2) or "participation in a venture," in § 1591(a)(2) and in § 1595(a), those terms are similarly clear in context, as explained in Defendants' Motion. Def. S.M. Mem. [ECF 35] at 30-31. Moreover, any possible vagueness here is mitigated by the applicable scienter requirements in

---

[9] Plaintiffs attempt to distinguish § 2421A from the Travel Act on the basis that in FOSTA "'promote' and 'facilitate' are used in the disjunctive," Pl. Mem. at 21, meaning that they are separated by "or" rather than "and." But, the terms "promote" and "facilitate" in the Travel Act are also in the disjunctive. *See* 18 U.S.C. § 1952(a)(3) (prohibiting using Internet to "promote . . . or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity").

the relevant provisions. *See Nat'l Ass'n of Mfrs.*, 582 F.3d at 27-28. In particular, "the Supreme Court has found a 'knowing' requirement sufficient to ameliorate vagueness concerns." *Id.* at 27-28 (citing *Hill*, 530 U.S. at 732); *see also Robinson v. Dist. of Columbia*, 234 F. Supp. 3d 14, 24 (D.D.C. 2017) (inferred *mens rea* of knowledge sufficed to mitigate any vagueness in law prohibiting carrying open containers of alcohol). The relevant provisions here all have a scienter requirement of knowledge or intent. *See* 18 U.S.C. § 2421A(a), (b) (requiring "intent to promote or facilitate the prostitution of another person"); *id.* § 2421A(b)(2) (requiring "intent to promote or facilitate the prostitution of another person" *and* "reckless disregard of the fact that such conduct contributed to sex trafficking"); 18 U.S.C. § 1591(e)(4) (requiring "knowingly" assisting, supporting, or facilitating a violation of § 1591(a)).

Although Plaintiffs cite *Amusement Devices Ass'n v. State of Ohio*, 443 F. Supp. 1040 (S.D. Ohio 1977), for the notion that a scienter requirement does not "necessarily" obviate vagueness, Pl. Mem. at 14 n.8, the statute considered in that case was significantly different from any FOSTA provision. The court in *Amusement Devices* emphasized that the offense at issue there merely required a "purpose to . . . facilitate any of [a criminal syndicate's] activities"—including activities that "are not in and of themselves illegal," such as "reporting income for federal tax purposes." *Amusement Devices Ass'n*, 443 F. Supp. at 1051. Here, in contrast, the "intent" must be to promote or facilitate an act of illegal prostitution. 18 U.S.C. § 2421A(a), (b), (e). The same is true for the "reckless disregard," required in § 2421A(b) (on top of the intent required in § 2421A(a)), of the fact that conduct contributed to illegal sex trafficking, or the "participation in a venture" in § 1591(a)(2), which requires "assisting, supporting, or facilitating" illegal sex trafficking pursuant to § 1591(a)(1). It is also telling that, although the statute in *Amusement Devices*, like § 2421A, used the term "facilitate" in its scienter requirement, the court did not

26

suggest that that term made the provision in any way *vague*. Rather, the court concluded that the scienter requirement used "exceptionally *broad* language," based on the fact that any assistance to any aspect of a syndicate's activities—including legal activities—would be included in the statute's plain terms. *Amusement Devices Ass'n*, 443 F. Supp. at 1051 (emphasis added). Again, § 2421A does not have that problem because here the intent relates solely to illegal conduct.

Plaintiffs also cite the analysis of the Anti-Riot Act in *United States v. Miselis*, 972 F.3d 518, 536–37 (4th Cir. 2020). Pl. Mem. at 15 n.9. However, that analysis actually explains why FOSTA's provisions are neither vague nor overbroad. Addressing a provision criminalizing conduct done "with the intent to organize, promote, [or] encourage" a riot, the court in *Miselis* did not conduct a vagueness analysis of the terms "promote" and "encourage," but concluded those terms were overbroad. *Miselis*, 972 F.3d at 537. The court reasoned that, in the context of riots— which by their nature could not occur until after a sufficient number of people had been convinced to participate—the terms did not have the same "distinctly 'transactional connotation'" as they did in *Williams*. *Id*.; *cf. Williams*, 553 U.S. at 300 (the term "promotes" in 18 U.S.C. § 2252A(a)(3)(B) "refers to the recommendation of a particular piece of purported child pornography with the intent of initiating a transfer").

But here, as in *Williams*, the terms "promote" and "facilitate" *do* relate to specific transactions in the form of specific acts of "the prostitution of another person." *See* 18 U.S.C. § 2421A(a). The fact that this phrase references specific acts of prostitution is clear not only from its plain language but also from the affirmative defense, which applies where "the promotion or facilitation of prostitution is legal." *See id.* § 2421A(e). Because only specific acts of prostitution— rather than prostitution as a concept—could ever be illegal, only promotion or facilitation of such acts could satisfy the scienter requirement of § 2421A(a). In addition, the distinction between "the

27

prostitution of another person" in § 2421A(a) and "the  prostitution of 5 or more persons" in § 2421A(b) would be meaningless if "the prostitution of another person" referred to an abstract concept rather than a specific act of prostitution. *See Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1890 (2019) (recognizing as "'cardinal principle' of interpretation that courts 'must give effect, if possible, to every clause and word of a statute'").

Plaintiffs otherwise rely on the notion that FOSTA's State and private remedies in 18 U.S.C. § 1595 and lifting of immunity through the § 230 Amendments allow for a "heckler's veto" as described in *Reno v. ACLU*, 521 U.S. 844, 880 (1997). *See* Pl. Mem. at 17. But Plaintiffs entirely mischaracterize the Supreme Court's discussion of this issue. Contrary to their descriptions, *id.* at 9, 17, *Reno* did not address how Internet platforms respond to complaints of offensive or indecent speech on their websites, nor did it use the phrase "heckler's veto" to describe judicial assessments of a purportedly vague statutory term. Rather, what the Court found problematic in *Reno* was the prospect of an individual logging into a chat room or other forum and announcing the presence of a minor—thus automatically triggering the bar on transmission of indecent content to minors that was at issue in that case, with little prospect of correction, by a court or otherwise, where such announcements are untruthful. *See Reno*, 521 U.S. at 880.

And while the Sixth Circuit has described § 230 as protecting against a "heckler's veto" in the defamation context, the court there focused solely on websites performing "a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content." *See Jones*, 755 F.3d at 407.[10] Under FOSTA's § 230 Amendments, only where a website owner takes action intended to promote or facilitate specific acts of illegal prostitution could he be

---

[10] As the court in *Jones* pointed out, § 230 has never provided immunity where a website owner, manager, or operator creates and posts online content itself. *See id.* (citing § 230(f)(3)).

prosecuted under a State law modeled on § 2421A, and only where the additional elements of an aggravated violation are met could a victim of illegal sex trafficking recover damages under § 2421A(c). Similarly, any State prosecution under a law modeled on § 1591, and any federal civil action under § 1595, would have to prove that the defendant knowingly participated in an act of sex trafficking. Plaintiffs merely speculate that State courts would allow a broader range of criminal charges than allowed under the federal statutory language. And to the extent they suggest States or individuals might simply *threaten* to bring claims against websites that the statutory language would not support, they cite no authority suggesting that such baseless threats could render statutory language vague on its face. The Court therefore should reject Plaintiffs' vagueness challenges and instead should grant judgment as a matter of law in Defendants' favor on this issue.

## III.   PLAINTIFFS' OVERBREADTH CLAIM FAILS AS A MATTER OF LAW

Plaintiffs next argue that FOSTA's provisions are facially unconstitutional under the First Amendment's overbreadth doctrine. Pl. Mem. at 18. The overbreadth doctrine provides a narrow exception to "traditional rules of standing" by allowing a plaintiff to bring a facial First Amendment challenge to a regulation of "spoken words" or patently "expressive or communicative conduct" based on its chilling effect on others. *Broadrick v. Oklahoma*, 413 U.S. 601, 612-13 (1973). However, declaring a statute unconstitutional on overbreadth grounds is "'strong medicine' [that should be] employed . . . with hesitation, and then 'only as a last resort.'" *L.A. Police Dep't v. United Reporting Pub. Corp.*, 528 U.S. 32, 39 (1999) (citations omitted). Such caution is warranted because, when a statute is deemed facially invalid, even otherwise legitimate applications of the statute are "totally forbidden"—leaving the harms originally identified by Congress to continue unabated. *Broadrick*, 413 U.S. at 613; *see Williams*, 553 U.S. at 292 (recognizing the "obvious harmful effects" of "invalidating a law that in some of its applications

29

is perfectly constitutional—particularly a law directed at conduct so antisocial that it has been made criminal"). The Supreme Court has therefore "vigorously enforced the requirement that a statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Id.* Striking down a law is inappropriate when there is a "core of easily identifiable" conduct that the statute can constitutionally regulate. *Sec'y of State v. Joseph H. Munson Co*., 467 U.S. 947, 964-67 (1984).

Plaintiffs "bear[] the burden of demonstrating, 'from the text of [the law] and from actual fact,' that substantial overbreadth exists." *Virginia v. Hicks*, 539 U.S. 113, 122 (2003) (quoting *N.Y. State Club Ass'n., Inc. v. City of New York*, 487 U.S. 1, 14 (1988)); *see also Ashcroft v. ACLU*, 535 U.S. 564, 584 (2002) (rejecting plaintiffs' overbreadth challenge because they failed to show that statute's overbreadth was "'not only . . . real, but substantial as well'"). Moreover, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *City Council v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984).

The Supreme Court has directed that the "first step" in assessing an overbreadth challenge is "to construe the challenged statute," *Williams*, 553 U.S. at 293, and that is where Plaintiffs' overbreadth arguments fail. Plaintiffs again mischaracterize FOSTA as "target[ing] online speech." Pl. Mem. at 18. But as discussed above, FOSTA's provisions, on their face, do not target speech at all, focusing instead on conduct intended to promote or facilitate illegal prostitution or knowing participation in the sex trafficking of minors or adults by force, fraud, or coercion. Even if some applications of FOSTA may implicate protected speech, that possibility does not justify holding FOSTA's provisions facially invalid. See *Hicks*, 539 U.S. at 124 (indicating that where a law "is not specifically addressed to speech or to conduct necessarily associated with speech (such

as picketing or demonstrating)," a facial overbreadth claim "[r]arely, if ever," succeed); *accord Mahoney v. Dist. of Columbia*, 662 F. Supp. 2d 74, 86 n.5 (D.D.C. 2009), *aff'd sub nom. Mahoney v. Doe*, 642 F.3d 1112 (D.C. Cir. 2011); *see also Hastings v. Judicial Conf.*, 829 F.2d 91, 106–07 (D.C. Cir. 1987) (rejecting overbreadth challenge to judicial misconduct statute because statute was "directed against serious judicial transgressions, not against protected speech").

Plaintiffs again seek to rely on the holding in *Miselis* that parts of the Anti-Riot Act were facially overbroad, Pl. Mem. at 19, but again this case does not help them. The court in *Miselis* held that, in the context of the Anti-Riot Act, the terms "promote" and "encourage" implicated speech. *Miselis*, 972 F.3d at 536. However the court reached that conclusion in reliance on an earlier Seventh Circuit decision, which explained in greater detail that rioting, "in history and by nature, almost invariably occurs as an expression of political, social, or economic reactions, if not ideas." *United States v. Dellinger*, 472 F.2d 340, 359 (7th Cir. 1972). Clearly, the same cannot be said for the sale of children or adults for sex. The court in *Dellinger* further recognized that "a riot may well erupt out of an originally peaceful demonstration which many participants intended to maintain as such." *Id.* Again, this stands in contrast to illegal prostitution and sex trafficking. The court in *Dellinger* also concluded that promoting or encouraging a riot would most likely occur "by expression," in some form, and pointed out that the charges against the defendants in that case "were based wholly on the making of speeches." *See id.* In the context of FOSTA, on the other hand, an Internet platform is not at all likely to manifest an intent to promote or facilitate illegal prostitution by making a speech, or by engaging in any form of online expression of its own. Rather, as described above, the conduct that would fall within the terms of § 2421A(a) would more likely involve actions, transactions, or communications not protected by the First Amendment at all. *Williams*, 553 U.S. at 297; *Giboney*, 336 U.S. at 502; Equality Now, Amicus Br., at 8-9.

31

Plaintiffs suggest that FOSTA "[r]egulat[es] the Internet" and thus "inherently has First Amendment implications," Pl. Mem. at 13 n.6, but they lack support for such a broad rule. They cite no case holding that a statute's mere reference to the Internet or to ownership or operation of a website would suffice for a statute to be deemed, on its face, to regulate protected speech. Not everything that happens on or through the Internet is protected by the First Amendment, and there are clearly entire categories of material on the Internet that are entitled to no First Amendment protection at all—such as child pornography, *New York v. Ferber*, 458 U.S. 747, 764 (1982), or solicitations to engage in illegal activity, *Williams*, 553 U.S. at 297. A statute that prohibits the transmission of child pornography "on the Internet" no more implicates the First Amendment than does a statute that prohibits the distribution of child pornography through other means.

Indeed, the Travel Act, which was in place before FOSTA's enactment, prohibits certain conduct on the Internet without referencing it specifically. The term "facility" in the Travel Act, § 1952(a), includes the Internet, and the "unlawful activity" referenced in § 1952(a)(3) includes illegal prostitution and sex trafficking, but the Travel Act has never been deemed a regulation of protected speech. Here, as this Court recognized in *Woodhull I*, Congress intended § 2421A to "mirror" the prohibitions in the Travel Act. *Woodhull I*, 334 F. Supp. 3d at 199. Congress enacted § 2421A, with its more limited application to owning, managing, or operating a website, because it sought to use § 2421A as a cross-reference for the § 230 Amendments' lifting of immunity for violations of similar state laws. However, § 2421A is no more a regulation of speech than is the Travel Act. The Court of Appeals' holding that some protected speech "might" be prohibited by § 2421A, *Woodhull II*, 948 F.3d at 373, is not to the contrary. At most, that holding suggests that the situation here resembles that in *Hicks*, in that certain applications of § 2421A might involve protected activity even though such activity is not expressly referenced in the statutory text.

32

Plaintiffs have not shown that this is the "[r]are[]" case where such a law should be deemed facially overbroad. *Cf. Hicks*, 539 U.S. at 124.

Aside from the fact that § 2421A on its face does not regulate protected speech at all, Plaintiffs fail to show that any overbreadth is "substantial, . . . relative to the statute's plainly legitimate sweep," *Williams*, 553 U.S. at 292. Plaintiffs argue that websites containing health-related information or safety tips to sex workers, or identifying someone as a sex worker "in anything other than a negative light," could fall under § 2421A, Pl. Mem. at 19-20, but their view cannot be squared with the statutory language. As discussed *supra*, Part II, and *infra*, Part IV, § 2421A requires an intent to promote or facilitate a specific act of prostitution, not simply an intent to provide advocacy or harm-reduction information. Given the statutory references to "of another person" in § 2421(a)(1) and "of 5 or more persons" in § 2421(a)(2), and the affirmative defense in § 2421A(e), the statute at least allows, if not requires, such a  narrow reading and, even if deemed ambiguous, can and should be so construed in order to avoid a question regarding the statute's constitutional validity. *Blitz v. Donovan*, 740 F.2d 1241, 1244 (D.C. Cir. 1984).

Plaintiffs do not base their broad interpretation on the statutory language referencing owning, managing, or operating an interactive computer service, which is the only conduct § 2421A addresses, but simply reference online content posted by Internet users. Pl. Mem. at 19-20. Of course, the mere fact that such content exists does not show that it falls within the ambit of conduct prohibited by § 2421A. Plaintiffs not only fail to show how this content relates to ownership, management, or operation of a website, but also fail to show that such content would promote or facilitate a specific illegal act of prostitution. Moreover, even though the Court of Appeals' preliminary assessment was that § 2421A might apply to a website owner who "allows sex workers to share information about online payment processors like PayPal," Plaintiffs fail to

show that that application, with respect to technical instructions that, in some instances, may be an inherent part of a particular act of prostitution, would violate the First Amendment, nor that any overbreadth on that ground would be substantial relative to the majority of legitimate applications.

Indeed, the fulsome statutory analysis that this Court has already conducted leads to the conclusion that the vast majority of applications of FOSTA will not implicate the First Amendment at all. *See Woodhull I*, 334 F. Supp. 3d at 199-201. Nothing in the Court of Appeals' opinion requires this Court to change its reading of FOSTA's provisions, and Judge Katsas' concurrence agreed with the Court that Plaintiffs' proposed broad construction of FOSTA "ignores or overreads all the key statutory terms." *Woodhull II*, 948 F.3d at 375 (Katsas, J., concurring). The majority focused on the statement in *Williams* that terms such as "promote," and here, "facilitate," "[w]hen taken in isolation, . . . are susceptible of multiple and wide-ranging meanings." *Woodhull II*, 948 F.3d at 372 (quoting *Williams*, 553 U.S. at 294). But as Judge Katsas and this Court have already recognized, FOSTA's provisions do not occur "in isolation"; rather, they occur within a criminal statute against a backdrop of well-established law on the crime of "aiding and abetting." *Id.* at 375 (Katsas, J., concurring); *see Woodhull I*, 334 F. Supp. 3d at 199-200. Indeed, as Judge Katsas explained, "FOSTA's requirement of action with an 'intent to promote or facilitate' prostitution" "track[s] almost verbatim the canonical formulation for the offense of aiding and abetting." *See id.* (citing *Rosemond*, 572 U.S. at 74).

And as this Court recognized, § 2421A "contains . . . a heightened mens rea requirement, demanding that the Government prove intent—rather than knowledge or even recklessness—to promote or facilitate." *Woodhull I*, 334 F. Supp. 3d at 199 (citing *GTE Corp.*, 347 F.3d at 659). The Government must show "that the defendant intended to 'explicitly further[]' a specified unlawful act." *Id.* at 201 (quoting *Brown*, 186 F.3d at 670). This means that "FOSTA does require

34

that the defendant own, manage, or operate a website with the specific intent to pander or otherwise abet the exchange of sex for money—not simply to advocate for, educate, or provide general assistance to persons who prostitute." *Woodhull II*, 948 F.3d at 375 (Katsas, J., concurring). As Senator Blumenthal (a primary sponsor of the legislation that became FOSTA) explained in urging the bill's passage, FOSTA "was not designed to target websites that spread harm reduction information, and the language of the bill makes that clear." 164 Cong. Rec. S1852 (daily ed. Mar. 21, 2018).

The use of these same terms in the Travel Act, which covers the same conduct prohibited by § 2421A, is also significant. *See* 18 U.S.C. § 1952(a)(3) (prohibiting the use of 'any facility in interstate or foreign commerce"—which, again, includes the Internet—with the intent to "promote . . . or facilitate the promotion . . . of any unlawful activity"). As this Court observed, Plaintiffs have not provided "*any* example of prosecution under the Travel Act that tracks its own theory of FOSTA's vast sweep." *Woodhull I*, 334 F. Supp. 3d at 199. This fact is no less significant simply because, as Plaintiffs argue, the Travel Act applies not only to conduct by Internet intermediaries, but also to conduct by anyone else in interstate commerce. Nor can Plaintiffs meaningfully distinguish the Travel Act because it requires an "intent to violate specific laws," Pl. Mem. at 20. Section 2421A similarly applies only to specific acts of prostitution that are illegal in the jurisdiction where they occur. Although § 2421A identifies this requirement as an affirmative defense, it is the type of affirmative defense that a prosecutor would take into account at the outset, rather than one that, as in *Ashcroft*, cited by Plaintiffs, would impose significant burdens on a defendant to prove. *See id.* at 255-56 (describing affirmative defense that would require the defendant to prove that visual depictions were produced using only adults and had never been distributed in a manner "conveying the impression that they depicted real children"). The vast

35

majority, if not all, applications of § 2421A would thus involve intentional efforts to promote or facilitate specific illegal acts, and those applications do not implicate the First Amendment. *See Williams*, 553 U.S. at 298-99; *Woodhull I*, 334 F. Supp. 3d at 201.

In a last-ditch effort to show overbreadth, Plaintiffs suggest that the § 230 Amendments could "revitalize" state laws that were previously struck down under both § 230 and the First Amendment, in cases such as *Backpage.com, LLC v. Dart*, 807 F.3d 229 (7th Cir. 2015); *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262 (W.D. Wash. 2012); and *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805 (M.D. Tenn. 2013). Pl. Mem. at 21-22. But those laws were quite different from § 2421A or § 1591, so the § 230 Amendments—which allow State prosecutions under State laws that mirror FOSTA—would not apply. *See Backpage.com LLC*, 216 F. Supp. 3d at 105 (recognizing that the state actions and laws involved in these three cases were significantly different from any of FOSTA's provisions, not least because they, unlike FOSTA, covered First Amendment-protected speech). Moreover, the § 230 Amendments cannot change prior holdings that these laws were unconstitutional. The Court therefore should deny judgment to Plaintiffs on their overbreadth claim, and instead grant judgment in favor of Defendants.[11]

## IV.   PLAINTIFFS' "DEFECTIVE SCIENTER" CLAIM FAILS AS A MATTER OF LAW

Plaintiffs next argue that the *mens rea* requirements in 18 U.S.C. § 2421A and 18 U.S.C.

---

[11] Other than their speculation regarding previously-invalidated state laws and a cursory reference in a footnote, Pl. Mem. at 20 n.14, Plaintiffs do not press their overbreadth challenge with respect to any FOSTA provision other than § 2421A, and they therefore are not entitled to judgment on those claims. *Wash. Legal Clinic v. Barry*, 107 F.3d 32, 39 (D.C. Cir. 1997) (declining to resolve issue raised in "cursory fashion"); *Nat'l Fair Hous. All. v. Travelers Indem. Co*., 261 F. Supp. 3d 20, 34 n.4 (D.D.C. 2017) ("Undeveloped arguments are waived because it is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel." (internal quotation omitted)).

§ 1591(a)(2), (e)(4) are "facially deficient" under the First Amendment. Pl. Mem. at 22, 24. As an initial matter, an allegedly deficient scienter requirement is not a valid basis for overturning a federal statute on its face. Rather, to the extent a statute fails to impose the necessary scienter, a court may infer it in the course of individual criminal proceedings. *See Elonis v. United States*, 135 S. Ct. 2001, 2012 (2015) (overturning a conviction pursuant to 18 U.S.C. § 875(c) where the trial court had not imposed any scienter but declining to strike down the statute). The Court should reject Plaintiffs' scienter challenge on that basis alone. Moreover, Plaintiffs' scienter argument rests entirely on their flawed underlying contention that FOSTA's provisions facially qualify as speech regulations; it thus fails at the outset for the reasons explained *supra*, Part I.

Even aside from these defects, Plaintiffs again mischaracterize the recent *Miselis* decision—this time asserting that the court in that case set forth the governing scienter requirement here. Pl. Mem. at 23. But the court in *Miselis* did not issue a holding addressing First Amendment scienter requirements. Instead it discussed its interpretation of the Anti-Riot Act's scienter element as an initial step in its overbreadth analysis, concluding that Congress structured the Act as an "attempt offense," requiring specific intent and an overt act. *Miselis*, 972 F.3d at 534-35.

To the extent the Court might undertake a similar analysis here, it should recognize, as already suggested above, that § 2421A, like the Travel Act, is structured as an aiding and abetting offense, which also requires specific intent. Any prosecution under § 2421A(a) or (b) requires the Government to prove the defendant had the intent to promote or facilitate a specific illegal act of prostitution. 18 U.S.C. § 2421A(a), (b). The requisite scienter is akin to that required for aiding and abetting under 18 U.S.C. § 2. *Cf. Rosemond*, 572 U.S. at 71; 2 W. LaFave, Substantive Criminal Law § 13.2, p. 337 (2003). Plaintiffs' argument to the contrary relies on the Court of Appeals' reference to the terms "promote" and "facilitate," *see* Pl. Mem. at 24, but Plaintiffs

disingenuously ignore that the Court of Appeals addressed those terms "in isolation." *Woodhull II*, 948 F.3d at 372, not in their statutory context. As discussed above, the context of § 2421A(a) makes clear that the terms "promote" and "facilitate" here refer to specific acts of prostitution of another person. *See supra*, Part II.

Plaintiffs also entirely ignore the fact that an aggregated offense pursuant to § 2421A(b)(2) continues to require proof of the intent that is *already* required for the base offense in § 2421A(a), and is expressly repeated in § 2421(b). 18 U.S.C. § 2421A(a), (b). On top of that requirement, § 2421A(b)(2) imposes an additional scienter requirement, that the Government prove the defendant acted in "reckless disregard" of the fact that the charged conduct contributed to sex trafficking of a child or of an adult by force, fraud, or coercion, in violation of § 1591. 18 U.S.C. § 2421A(b)(2).

FOSTA's § 1591 Amendment defined a term in § 1591(a)(2) ("participation in a venture") but changed nothing about § 1591's underlying *mens rea*. Both before and after the passage of FOSTA, a prosecution under § 1591(a)(2) requires the government to prove knowledge of sex trafficking. Plaintiffs posit that FOSTA's addition of a definition of "participation in a venture" in § 1591(e)(4) somehow lowered the *mens rea* required for a prosecution under § 1591(a)(2), but they are incorrect. Indeed, they make no attempt to analyze the statutory language (dismissing it as "convoluted") and instead simply cite H.R. Rep. No. 115-572(I), at 5, which—contrary to Plaintiffs' description, Pl. Mem. at 25—was discussing § 2421A, not § 1591(e)(4).

Under the plain language of § 1591(a), the defendant must "knowingly" violate § 1591(a)(1) or (2). Where the defendant is charged under § 1591(a)(2) with benefitting, financially or otherwise, from participating in a sex trafficking venture, the definition of "participation in a venture" added by FOSTA expressly ties the requisite knowledge to an illegal

act under § 1591(a)(1): "knowingly assisting, supporting, or facilitating a violation of [§] 1591(a)(1)." 18 U.S.C. § 1591(e)(4). Under either § 1591(a)(1) or (2), the government must *also* prove that the defendant either knew or (where the underlying violation of § 1591(a)(1) does not involve advertising) acted in reckless disregard of the fact that the person who was subjected to the § 1591(a)(1) violation is a minor or subject to force, fraud, or coercion and would "be caused to engage in a commercial sex act." *Id.* § 1591(a). Plaintiffs cite no support for their assertion that a different mens rea is required, particular when none of these actions on their face—including advertising, *Backpage.com, LLC*, 216 F. Supp. 3d at 103—implicate the First Amendment. *See Elonis*, 135 S. Ct. at 2015-16 (Alito, J., dissenting) (recognizing that the majority did not decide whether "knowledge" or "recklessness" was the appropriate scienter requirement for a conviction pursuant to 18 U.S.C. § 875(c), based on making threats on social media). The Court therefore should reject Plaintiffs' motion for judgment on this issue and instead grant judgment in Defendants' favor.

## V.   PLAINTIFFS' STRICT SCRUTINY CLAIM FAILS AS A MATTER OF LAW

Plaintiffs' argument that FOSTA's provisions are content-based restrictions of speech that fail strict scrutiny should also be rejected. "Government regulation of speech is content based"— and thus subject to strict scrutiny—"if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 135 S. Ct. 2218, 2227 (2015). The first step in determining whether a regulation is content based is to determine whether it is "a regulation of speech" that 'on its face' draws distinctions based on the message a speaker conveys." *Id.* In *Reed*, the Court held that a sign policy was content based because it expressly distinguished between categories of speech on outdoor signs based on their message. *See id.* at 2224-25, 2227. There, ideological messages, political messages, and directional

messages were all separately addressed in the Sign Code. *See id.*

FOSTA's provisions, on the other hand, do not, on their face, regulate speech at all, for all the reasons already discussed in Part I, *supra*. None of the provisions at issue reference speech, much less any particular message. *Cf. ANSWER Coal. v. Basham*, 845 F.3d 1199, 1209 (D.C. Cir. 2017) (concluding that a regulation providing for Inaugural celebration bleachers permits on Freedom Plaza was "clearly content neutral, because it makes no reference at all to speech, let alone the content of speech," and  "only indirectly regulates where demonstrations may occur").

Instead of acknowledging the plain language of FOSTA's provisions, Plaintiffs continue in their fallacy that FOSTA "criminalizes . . . speech," and they add that it "targets speech based on its 'message' and 'function.'" Pl. Mem. at 27. They also simply claim, with no statutory analysis at all, that FOSTA's "sweep includes speech such as harm-reduction education aimed at sex workers, and advocacy intended to bring about decriminalization of sex work." *Id.* But such information and advocacy would not evidence an intent to promote or facilitate a specific act of illegal prostitution and thus would not be a crime under § 2421A. Again, no reference to speech appears in § 2421A, and FOSTA did not change the term "advertising" in § 1591(a)(1), which refers to offers of illegal commercial sex with minors and coerced adults that are not protected by the First Amendment.

Rather than speech, FOSTA's provisions prohibit conduct—specifically, acting with the intent to promote or facilitate acts of illegal prostitution, as well as doing so with reckless disregard that "such conduct" contributed to sex trafficking. 18 U.S.C. § 2421A(a)-(b).[12] At most, the crimes

---

[12] Because the other provisions of FOSTA merely add definitions or rights of action with respect to previously-existing crimes or causes of action, or lift § 230 immunity for conduct already illegal under other laws, they cannot even properly be described as prohibiting any conduct that was not already prohibited. Similarly, § 2421A does not prohibit anything not already prohibited by the Travel Act. Regardless, none of FOSTA's provisions on their face reference or regulate speech.

and civil causes of action that are described may have an incidental impact on speech. *Cf. ANSWER*, 845 F.3d at 1209. But because FOSTA on its face does not regulate speech, the Court may consider that the law's justification is unrelated to speech. *See Reed*, 135 S. Ct. at 2228-29 (explaining that *Ward* applies to facially content-neutral regulations). When such a regulation "'serves purposes unrelated to the content of expression,'" it "'is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.'" *ANSWER*, 845 F.3d at 1210 (quoting *Ward*, 491 U.S. at 791); *see also Green v. U.S. Dep't of Justice*, 392 F. Supp. 3d 68, 91 (D.D.C. 2019)  (prohibition on circumventing technological access controls on copyrighted works was content neutral despite incidental impact on speech). Here, Congress enacted FOSTA in furtherance of its goal to combat illegal prostitution and sex trafficking, and in particular to clarify that § 230 should not shield websites from prosecution or liability that they would otherwise face under preexisting laws. FOSTA § 2. In particular, since the Travel Act already prohibits the use of websites with the intent to facilitate or promote illegal activity, Congress included § 2421A in FOSTA primarily to serve as a cross-reference for § 230(e)(5)(C), which clarifies that *State* laws prohibiting the same conduct can be applied to websites without regard to § 230(c)(1). FOSTA's provisions therefore do serve purposes unrelated to the content of expression.

FOSTA's provisions therefore are not content-based and need not satisfy strict scrutiny. Plaintiffs did not claim in their Complaint, and do not argue in the alternative, that FOSTA's provisions fail any lesser form of First Amendment scrutiny, nor have they pursued any as-applied challenge. The Court therefore should deny Plaintiffs' motion for judgment, and grant judgment to Defendants, solely on the ground that FOSTA's provisions are not content-based.[13]

---

[13] As discussed in the alternative in Defendants' summary judgment, motion, Def. S.J. Mem. at 26-27, FOSTA satisfies intermediate scrutiny. *Cf. Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 189 (1997) ("content-neutral statute" will be upheld "if it advances important governmental

## VI.   PLAINTIFFS' EX POST FACTO CLAIM FAILS AS A MATTER OF LAW

Finally, Plaintiffs argue that FOSTA § 4(b), which purports to allow for retroactive application of the § 230 Amendments, violates the Ex Post Facto Clause, U.S. Const. art. I, § 9, cl. 3, insofar as it retroactively lifts immunity for criminal prosecutions under State law. Pl. Mem. at 31 (citing 47 U.S.C. § 230(e)(5)(B), (C)). A "'law that changes the punishment, and inflicts a greater punishment[] than the law annexed to the crime[] when committed,' is an ex post facto law." *United States v. Alvaran-Velez*, 914 F.3d 665, 668 (D.C. Cir. 2019); *cf. Cole v. Fulwood*, 879 F. Supp. 2d 60, 63 (D.D.C. 2012) ("The Ex Post Facto Clause of the United States Constitution prohibits retroactive increases in punishment for a crime after its commission.").

Plaintiffs' claim does not present a basis for facially invalidating FOSTA. Courts have considered whether a particular sentence or other condition, as applied to an individual criminal defendant or parolee, presents an ex post facto violation. *E.g.*, *Carmell v. Texas*, 529 U.S. 513, 516 (2000) (considering criminal defendant's ex post facto challenge to application of amended State law to him on direct appeal from his conviction); *Lynce v. Mathis*, 519 U.S. 433, 436 (1997) (considering habeas ex post facto claim of individual who had been returned to prison after his provisional early release credits had been revoked under new State law); *Alvaran-Velez*, 914 F.3d at 666-67 (considering criminal defendant's claim that application of new sentencing guideline to him was an ex post facto violation); *Daniel v. Fulwood*, 766 F.3d 57, 60 (D.C. Cir. 2014) (considering class action claims of ex post facto violations where the proposed class consisted of

---

interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests"). Should the Court conclude that FOSTA's provisions, on their face, present content-based restrictions of protected speech to which strict scrutiny applies, Defendants request that the Court stay summary judgment proceedings pursuant to Rule 56(d), as described *infra*, Part VII.

currently incarcerated inmates who had already had parole hearings under guidelines that had been revised since the date of their offenses); *Fletcher v. Reilly*, 433 F.3d 867, 869 (D.C. Cir. 2006) (considering habeas claim that U.S. Parole Commissions' "retroactive application of . . . new federal regulations during his reparole hearing . . . violated the Ex Post Facto Clause").

However, no court has ruled, in a pre-enforcement challenge, that a law is facially invalid on ex post facto grounds. That includes the only two cases Plaintiffs cite as finding ex post facto violations. *See Peugh v. United States*, 569 U.S. 530, 550 (2013) (defendant's sentence violated Ex Post Facto Clause because it was based on Sentencing Gudelines in effect at time of sentence); *Stogner v. California*, 539 U.S. 607, 632 (2003) ("The statute before us is unfairly retroactive as applied to [the defendant]."). This is because, when evaluating an ex post facto claim, "[t]he controlling inquiry is one of practical effect," rather than the facial terms of a statute or guideline. *Id.* at 879. As a practical matter, any potential ex post facto violation can only be assessed on a case-by-case basis after the prosecution or civil action has commenced.

Here, as the Department of Justice noted in its letter to the Office of Management and Budget, State prosecutors can avoid any potential ex post facto problem when bringing claims pursuant to State criminal laws identified in § 230(e)(5)(B) or (C) by pursuing only newly prosecutable criminal conduct that takes place after FOSTA's enactment. *See* March 23, 2018 Letter, at 1-2. Moreover, Plaintiffs fail to identify any attempt by a State prosecutor to bring charges under any of those laws that could be deemed retroactive, nor, given the Department's public position, can they demonstrate a substantial risk that any such charges will be brought in the future. In addition, Plaintiffs have not identified any risk that any such laws might be retroactively applied to *them*. The Court therefore should deny judgment to Plaintiffs on this issue

and instead grant judgment as a matter of law in favor of Defendants.[14]

## VII.   IN THE ALTERNATIVE, THE COURT SHOULD STAY PROCEEDINGS PURSUANT TO RULE 56(f)

When the parties conferred after remand from the Court of Appeals, they agreed that Plaintiffs' facial constitutional challenges presented only legal issues that could be resolved through cross-motions for summary judgment without discovery. Thus, no discovery has occurred in this case. Despite that understanding, however, Plaintiffs have attached to their motion nine declarations, including four from non-parties, at least two of which appear to be intended as expert testimony. *See* Declaration of Kate D'Adamo [ECF 34-3]; Declaration of Dr. Jessica P. Ashoosh [ECF 34-5]; Declaration of Dr. Alexandara Lutnick [ECF 34-6]; Declaration of Alexandra Yelderman [ECF 34-8]. Plaintiffs also rely on an additional putative expert's declaration that was attached to their preliminary injunction motions. *See* Declaration of Dr. Kimberly Mehlman-Orozco [ECF 5-9]. Defendants continue to believe that the facts and testimony Plaintiffs attempt to introduce are immaterial to resolution of the case and that the Court can grant summary judgment in Defendants' favor as a matter of law, based on the proper interpretation of FOSTA's provisions and governing law. However, if the Court disagrees, Defendants request that the Court stay summary judgment proceedings pursuant to Fed. R. Civ. P. 56(d) so that Defendants may have an opportunity to conduct discovery and develop the record with respect to any disputed issues that the Court deems material.

Where material facts are in dispute, summary judgment "usually is premature unless all parties have had a full opportunity to conduct discovery." *Jeffries v. Barr*, 965 F.3d 843, 855 (D.C.

---

[14]Plaintiffs have not moved for summary judgment with respect to Count IV of their Complaint. Defendants' motion for summary judgment with respect to that claim should be granted for the reasons set forth in Defendants' memorandum in support of that motion.

Cir. 2020) (internal quotation omitted). "Rule 56(d) provides an avenue for relief for nonmovants who can show, by affidavit or declaration, that 'for specified reasons' they 'cannot present facts essential to justify' their opposition to summary judgment." *Id.* (quoting Fed. R. Civ. P. 56(d)). Pursuant to Rule 56(d), a court may defer consideration of a pending summary judgment motion, deny the motion, allow time to take discovery, or issue "any other appropriate order." *Id.* A party seeking relief under this provision must "(1) outline the particular facts the party defending against summary judgment intends to discovery and describe why those facts are necessary to the litigation; (2) explain why the party could not produce those facts in opposition to the pending summary-judgment motion; and (3) show that the information is in fact discoverable." *Id.* (internal quotation and alterations omitted). Should the Court determine that FOSTA's provisions are subject to strict scrutiny, or be inclined on any other basis to consider Plaintiffs' submitted evidence material to any issue to be resolved in this case, Defendants request a stay so that Defendants can conduct written discovery, depose Plaintiffs and Plaintiffs' fact and expert witnesses, and find one or more rebuttal experts in order to counter the evidence that Plaintiffs have submitted. Defendants address the Rule 56(d) requirements more fully in the Declaration of Kathryn Wyer, attached hereto.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for summary judgment should be denied.

Dated: October 9, 2020

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch

*/s/ Kathryn L. Wyer*
KATHRYN L. WYER

45

Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, N.W., Room 12014
Washington, DC  20005
Tel. (202) 616-8475 / Fax (202) 616-8470
kathryn.wyer@usdoj.gov
*Attorneys for Defendants*