**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WOODHULL FREEDOM FOUNDATION,　)
HUMAN RIGHTS WATCH, ERIC KOSZYK,　)
JESSE MALEY, a/k/a ALEX ANDREWS, and　)
THE INTERNET ARCHIVE,　)
　)　Case No. 1:18-cv-1552
　　　　　　Plaintiffs,　)
　)
　　　v.　)
　)
THE UNITED STATES OF AMERICA　)
and WILLIAM P. BARR, in his official　)
capacity as ATTORNEY GENERAL　)
OF THE UNITED STATES,　)
　)
　　　　　　Defendants.　)

**PLAINTIFFS' OPPOSITION TO**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................... ii

INTRODUCTION .................................................................................................... 1

ARGUMENT ........................................................................................................... 2

I.   FOSTA TARGETS ONLINE SPEECH FOR CRIMINAL PENALTIES AND
     CIVIL LIABILITY .......................................................................................... 2

     A.  Regulating Online Platforms Inherently Regulates Speech ......................... 2

     B.  Determining Whether FOSTA Regulates Only "Unprotected Speech" Requires
         Rigorous Constitutional Scrutiny ............................................................. 5

II.  FOSTA DOES NOT TARGET ONLY UNPROTECTED SPEECH OR
     CULPABLE CRIMINAL CONDUCT .............................................................. 7

     A.  FOSTA is Overbroad on its Face ............................................................. 8

         1.  The Government Fundamentally Misapplies the Overbreadth Doctrine,
             Especially as it Applies to Regulation of Online Speech ..................... 9

         2.  FOSTA's Actual Language Manifests its Overbreadth ....................... 11

         3.  The Case Law on Which Defendants Rely is Inapposite..................... 15

         4.  FOSTA's Overbreadth is Not Cured by *Mens Rea* Requirements ...... 18

     B.  FOSTA is Unconstitutionally Vague......................................................... 20

     C.  FOSTA Lacks Adequate Scienter Requirements ...................................... 22

III. FOSTA FAILS STRICT SCRUTINY ............................................................. 28

     A.  FOSTA is a Content-Based Regulation of Speech.................................... 29

     B.  FOSTA Does Not Satisfy Strict Scrutiny ................................................. 32

     C.  FOSTA Would Fail Even Intermediate Scrutiny ...................................... 33

IV.  FOSTA'S SELECTIVE REMOVAL OF IMMUNITY FOR INTERMEDIARIES
     VIOLATES THE FIRST AMENDMENT ....................................................... 35

V.   FOSTA VIOLATES THE *EX POST FACTO* CLAUSE................................. 38

CONCLUSION....................................................................................................... 41

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abuelhawa v. United States*,
556 U.S. 816 (2009) ......................................................................................16, 17, 18, 19

*ACLU v. Mukasey*,
534 F.3d 181 (3d Cir. 2008) .........................................................................................10, 11

*Anderson v. City of Hermosa Beach*,
621 F.3d 1051 (9th Cir. 2010) ............................................................................................4

*ANSWER Coal. v. Basham*,
845 F.3d 1199 (D.C. Cir. 2017) .......................................................................................30

*Armstrong v. Navient Sols., LLC*,
292 F. Supp. 3d 464 (D.D.C. 2018) .................................................................................19

*Ashcroft v. ACLU*,
535 U.S. 564 (2002) .........................................................................................................11

*Ashcroft v. ACLU*,
542 U.S. 656 (2004) ....................................................................................................11, 32

*Backpage.com, LLC v. Cooper*,
939 F. Supp. 2d 805 (M.D. Tenn. 2013) .....................................................................10, 33

*Backpage.com, LLC v. Hoffman*,
2013 WL 4502097 (D.N.J. Aug. 20, 2013) ......................................................................10

*Backpage.com, LLC v. Lynch*,
216 F. Supp. 3d 96 (D.D.C. 2016) ......................................................................19, 26, 33

*Backpage.com, LLC v. McKenna*,
881 F. Supp. 2d 1262 (W.D. Wash. 2012) ...................................................................10, 26

*Baggett v. Bullitt*,
377 U.S. 360 (1964) .....................................................................................................22, 23

*Bantam Books, Inc. v. Sullivan*,
372 U.S. 58 (1963) ...........................................................................................................36

*Barr v. Am. Ass'n of Political Consultants*,
140 S. Ct. 2355 (2020) ..............................................................................................28, 30, 32

*Bartnicki v. Vopper*,
  532 U.S. 514 (2001)......................................................................................3, 5

*Brandenburg v. Ohio*,
  395 U.S. 444 (1969)........................................................................................15

*Broadrick v. Oklahoma*,
  413 U.S. 601 (1973)..........................................................................................9

*Brown v. Entm't Merchs. Ass'n*,
  564 U.S. 786 (2011)......................................................................................3, 32

*Bryan v. United States*,
  524 U.S. 186 (1998)........................................................................................25

*Carmell v. Texas*,
  529 U.S. 513 .............................................................................................38, 40

*Center for Democracy & Technology v. Pappert*,
  337 F. Supp. 2d 606 (E.D. Pa. 2004) .......................................................33, 34, 36

*Citizens United v. FEC*,
  558 U.S. 310 (2010)..........................................................................................3

*City Council v. Taxpayers for Vincent*,
  466 U.S. 789 (1984)..........................................................................................9

*City of Chi. v. Morales*,
  527 U.S. 41 (1999)..........................................................................................21

*City of Los Angeles v. Patel*,
  576 U.S. 409 (2015)........................................................................................39

*Corley v. United States*,
  556 U.S. 303 (2009)...................................................................................9, 12, 24

*Cramp v. Bd. of Pub. Instruction*,
  368 U.S. 278 (1961)........................................................................................22

*Daniel v. Fulwood*,
  766 F.3d 57 (D.C. Cir. 2014) .........................................................................38

*Democracy Partners v. Project Veritas Action Fund*,
  453 F. Supp. 3d 261 (D.D.C. 2020)...............................................................31

*Denver Area Educ. Telecomms. Consortium v. FCC*,
  518 U.S. 727 (1996)........................................................................................36

*Doe v. Kik Interactive, Inc.*,
--- F. Supp. 3d ----, 2020 WL 5156641 (S.D. Fla. Aug. 31, 2020) ................................... 26, 27

*Elonis v. United States*,
135 S. Ct. 2001 (2015) ........................................................................ 8, 23, 27, 28

*FCC v. League of Women Voters of Cal.*,
489 U.S. 364 (1984) ................................................................................... 31

*Fletcher v. Reilly*,
433 F.3d 867 (D.C. Cir. 2006) ....................................................................... 38

*Freedom Watch, Inc. v. Google Inc.*,
816 F. App'x 497 (D.C. Cir. 2020) .................................................................... 37

*Giboney v. Empire Storage & Ice Co.*,
336 U.S. 490 (1949) .................................................................................. 7, 19

*Grayned v. City of Rockford*,
408 U.S. 104 (1972) .................................................................................... 21

*Green v. DOJ*,
392 F. Supp. 3d 68 (D.D.C. 2019) ...................................................................... 9

*Hibbs v. Winn*,
542 U.S. 88 (2004) ..................................................................................... 9

*Hill v. Colorado*,
530 U.S. 703 (2000) ................................................................................ 30, 31

*Holder v. Humanitarian Law Project*,
561 U.S. 1 (2010) ................................................................................... 20, 29

*Iancu v. Brunetti*,
139 S. Ct. 2294 (2019) ................................................................................. 10

*IMDb.com v. Becerra*,
962 F.3d 1111 (9th Cir. 2020) .......................................................................... 6

*J.B. v. G6 Hosp., LLC*,
2020 WL 4901196 (N.D. Cal. Aug. 20, 2020) ...................................................... 19, 27

*Jian Zhang v. Baidu.com Inc.*,
10 F. Supp. 3d 433 (S.D.N.Y. 2014) .................................................................... 4

*Kingsley Int'l Pictures Corp. v. Regents of Univ. of N.Y.*,
360 U.S. 684 (1959) .................................................................................... 33

*La'Tiejira v. Facebook, Inc.*,
    272 F. Supp. 3d 981 (S.D. Tex. 2017) ...................................................................4

*Langdon v. Google, Inc.*,
    474 F. Supp. 2d 622 (D. Del. 2007).......................................................................4

*Lomax v. Ortiz-Marquez*,
    140 S. Ct. 1721 (2020).............................................................................. *passim*

*M.L. v. craigslist Inc.*,
    2020 WL 5494903 (W.D. Wash. Sept. 11, 2020)...........................................26, 27

*McCullen v. Coakley*,
    573 U.S. 464 (2014).........................................................................26, 31, 34

*Midwest Video v. FCC*,
    571 F.2d 1025 (8th Cir. 1978) .........................................................................36

*Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*,
    460 U.S. 575 (1983).............................................................................................3

*Mishkin v. New York*,
    383 U.S. 502 (1966)...........................................................................................23

*NAACP v. Button*,
    371 U.S. 415 (1963)...........................................................................................20

*National Inst. of Family & Life Advocates v. Becerra*,
    138 S. Ct. 2361 (2018).................................................................................33, 34

*Near v. Minnesota*,
    283 U.S. 697 (1931).............................................................................................3

*Packingham v. North Carolina*,
    137 S. Ct. 1730 (2017).......................................................................4, 5, 10, 11

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*,
    413 U.S. 376 (1973).............................................................................................6

*Planned Parenthood Ass'n of Hidalgo Cty. Texas, Inc. v. Suehs*,
    692 F.3d 343 (5th Cir. 2012) ............................................................................17

*Prager Univ. v. Google LLC*,
    951 F.3d 991 (9th Cir. 2020) ............................................................................37

*PSINet, Inc. v. Chapman*,
    362 F.3d 227 (4th Cir. 2004) ............................................................................10

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015)............................................................................................28, 29, 30

*Reno v. ACLU*,
   929 F. Supp. 824 (E.D. Pa. 1996), *aff'd*, 521 U.S. 844 (1997)...................................... *passim*

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
   515 U.S. 819 (1995).............................................................................................................29

*S.J. v. Choice Hotels Int'l, Inc.*
   --- F. Supp. 3d ----, 2020 WL 4059569 (E.D.N.Y. July 20, 2020) .........................................27

*S.Y. v. Naples Hotel Co.*,
   --- F. Supp. 3d ----, 2020 WL 4504976 (M.D. Fla. Aug. 5, 2020) ........................................27

*Sandvig v. Barr*,
   451 F. Supp. 3d 73 (D.D.C. 2020), *appeal filed*, No. 20-5153
   (D.C. Cir. May 28, 2020) .......................................................................................................7

*Sandvig v. Sessions*,
   315 F. Supp. 3d 1 (D.D.C. 2018) ......................................................................................4, 20

*Santamaria v. District of Columbia*,
   875 F. Supp. 2d 12 (D.D.C. 2012) ........................................................................................28

*Schneider v. Town of Irvington*,
   308 U.S. 147 (1939)..............................................................................................................35

*Sec'y of State v. Joseph H. Munson Co.*,
   467 U.S. 947 (1984)..............................................................................................................10

*Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*,
   502 U.S. 105 (1991)..............................................................................................................29

*Smith v. California*,
   361 U.S. 147 (1959)...................................................................................................23, 36, 37

*Sorrell v. IMS Health, Inc.*,
   564 U.S. 552 (2011)..........................................................................................................3, 35

*Stogner v. California*,
   539 U.S. 607 (2003)........................................................................................................38, 40

*Telescope Media Group v. Lucero*,
   936 F.3d 740 (8th Cir. 2019) .................................................................................................3

*True the Vote, Inc. v. IRS*,
   831 F.3d 551 (D.C. Cir. 2016) .............................................................................................29

*Turner Broad. Sys., Inc. v. FCC*,
  512 U.S. 622 (1994)................................................................................................29

*U.S. WeChat Users Alliance v. Trump*,
  2020 WL 5592848 (N.D. Cal. 2020), *appeal filed*, No. 20-16908
  (9th Cir. Oct. 2, 2020)..............................................................................................4

*United States v. Alvaran-Velez*,
  914 F.3d 665 (D.C. Cir. 2019)................................................................................38

*United States v. Alvarez*,
  567 U.S. 709 (2012)...........................................................................................6, 32

*United States v. Daniels*,
  915 F.3d 148 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 1264 (2020).......................17

*United States v. Desposito*,
  704 F.3d 221 (2d Cir. 2013).....................................................................................17

*United States v. Marmolejo*,
  89 F.3d 1185 (5th Cir. 1996) ...................................................................................25

*United States v. Miselis*,
  972 F.3d 518 (4th Cir. 2020) ..........................................................................*passim*

*United States v. Owens*,
  641 F. App'x 949 (11th Cir. 2016) ..........................................................................17

*United States v. Playboy Entm't Grp., Inc.*,
  529 U.S. 803 (2000)..............................................................................28, 29, 32, 33

*United States v. Reiner*,
  500 F.3d 10 (1st Cir. 2007)......................................................................................14

*United States v. Seals*,
  2014 WL 3847916 (W.D. Ark. Aug. 5, 2014).........................................................14

*United States v. Stevens*,
  559 U.S. 460 (2010)......................................................................................*passim*

*United States v. Ulbricht*,
  31 F. Supp. 3d 540 (S.D.N.Y. 2014)........................................................................14

*United States v. Williams*,
  553 U.S. 285 (2008).......................................................................................*passim*

*United States v. X-Citement Video, Inc.*,
  513 U.S. 64 (1994)...................................................................................................23

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*,
    478 F.3d 413 (1st Cir. 2007)....................................................35

*Video Software Dealers Ass'n v. Webster*,
    968 F.2d 684 (8th Cir. 1992) ...............................................8, 23

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
    455 U.S. 489 (1982)................................................................20

*Virginia v. Hicks*,
    539 U.S. 113 (2003)........................................................9, 15, 16

*Vt. Right to Life Comm., Inc. v. Sorrell*,
    221 F.3d 376 (2d Cir. 2000).....................................................40

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989)...........................................................30, 34

*Weaver v. Graham*,
    450 U.S. 24 (1981).................................................................38

*Wollschlaeger v. Governor, Fla.*,
    848 F.3d 1293 (11th Cir. 2017) ...............................................20

*Woodhull Freedom Found. v. United States*,
    334 F. Supp. 3d 185 (D.D.C. 2018), *rev'd on other grounds*,
    948 F.3d 363 (D.C. Cir. 2020) ........................................ *passim*

*Worldwide, LLC v. Google, Inc.*,
    2017 WL 2210029 (M.D. Fla. Feb. 8, 2017) ...........................37

## Constitutional Provisions

U.S. Const. amend. I ................................................... *passim*

U.S. Const. amend. II...........................................................39

U.S. Const. amend. IV .........................................................39

U.S. Const. amend. V............................................................7

U.S. Const. amend. XIV .......................................................39

## Federal Statutes

7 U.S.C. § 13c .....................................................................18

12 U.S.C. § 1786(k) .............................................................18

12 U.S.C. § 1786(m) .................................................................................................18

12 U.S.C. § 1847 .......................................................................................................18

15 U.S.C. § 78t .........................................................................................................18

15 U.S.C. § 80b-9(f) .................................................................................................18

18 U.S.C. § 2(d) ........................................................................................................31

18 U.S.C § 1591 ................................................................................................. *passim*

18 U.S.C. § 1595 .........................................................................................27, 33, 41

18 U.S.C. § 1952 ............................................................................................... *passim*

18 U.S.C. § 2421A ............................................................................................ *passim*

18 U.S.C. § 2422 .......................................................................................................13

18 U.S.C. § 2423(d) ..................................................................................................13

18 U.S.C § 2511 ........................................................................................................31

21 U.S.C. § 841(h) ....................................................................................................18

26 U.S.C. § 7206 .......................................................................................................18

47 U.S.C. § 230 ................................................................................................. *passim*

47 U.S.C. § 230(e)(5) ................................................................................................33

**Regulations**

47 C.F.R. § 230(e)(5)(A) ..........................................................................................27

**Other Authorities**

2A N. Singer, Statutes & Statutory Construction, § 46.06 (rev. 6th ed. 2000)................................9

BLACK'S LAW DICTIONARY 627 (8th ed. 2004) ..........................................................17

*Brief of the States of Texas, et al.*,
   2019 WL 1773389 (D.C. Cir. Apr. 22, 2019).......................................................41

Cong. Res. Serv., *Sex Trafficking: An Overview of Federal Criminal Law*,
   June 25, 2015 ...............................................................................................19, 25

THE FEDERALIST No. 84 (Alexander Hamilton) (Clinton Rossiter ed., 1961)................................40

H.R. Rep. No. 115-572, pt. 1 ........................................................................................19, 20, 26, 33

*United States v. Ulbricht*,
    No. 13-mj-02328 (S.D.N.Y.) ..................................................................................................14

## INTRODUCTION

FOSTA's plain terms reveal Congress's intent:  to rid the Internet of disfavored expression through a combination of:  (1) criminal prohibitions of speech on a particular subject; (2) multiplying the number of governmental agencies empowered to bring enforcement actions; and (3) increasing avenues for imposing civil liability by attacking an online speech protection, 47 U.S.C. § 230.  The government's repeated explanation that Congress adopted FOSTA to stop "bad actor" advertising websites only demonstrates that this law, which is not limited to advertising, lacks the narrow tailoring the First Amendment requires and cannot survive any level of scrutiny. FOSTA extends far beyond advertising and prohibits a broad range of speech about "the prostitution of another person," and otherwise introduces vagueness and uncertainty to existing law.  At the same time, the government's admission that FOSTA was intended to address advertising puts the lie to its attempt to frame FOSTA as a restriction of "conduct," not speech.

The constitutional deficiencies of this multi-pronged blunderbuss approach are obvious. FOSTA reversed prior governmental policy, grounded in the First Amendment, that recognized the need to ensure online intermediaries were not silenced by the moderator's dilemma.  FOSTA's overly broad and undefined terms, coupled with confusing and indefinite scienter requirements and selective withdrawal of statutory immunity, were expressly designed to chill speech.  And it worked:  FOSTA's passage triggered far-reaching censorship across the Internet.  The Court should deny Defendants' motion for summary judgment.

## ARGUMENT[1]

### I.   FOSTA TARGETS ONLINE SPEECH FOR CRIMINAL PENALTIES AND CIVIL LIABILITY

The government's misinterpretation of FOSTA's key terms, its claim that strict First Amendment scrutiny does not apply, and its erroneous conclusions regarding scienter *all* flow from its flawed premise that "[n]one of [FOSTA's] provisions, by their plain terms, prohibit, regulate, or reference categories of protected speech or expressive activity."  Gov't Mot. 18.  This premise is built on two separate but equally erroneous claims:  (1) that FOSTA does not regulate speech at all, so no First Amendment review is necessary, and (2) FOSTA regulates only speech that is unprotected by the First Amendment.  The government's first claim is unsupported either by logic or case law.  Its second begs the question presented by this case and substitutes conclusion for argument.  As the D.C. Circuit reasoned, and in light of the plain terms of the statute, Defendants' premise must be rejected

### A.  Regulating Online Platforms Inherently Regulates Speech

The government claims that "no facial First Amendment analysis of FOSTA's provisions is appropriate where none of [its] provisions necessarily regulate speech at all."  Gov't Mot. 25. *See also id.* 2, 21, 22, 23, 24, 35.  In fact, FOSTA *exclusively* targets speech.  Among other things, it prohibits "own[ing], manag[ing], or operat[ing] an interactive computer service … with the intent to promote or facilitate the prostitution of another person."  18 U.S.C. § 2421A.  This prohibition targets speech every bit as much as would a law penalizing one who "owns, manages, or operates [a printing press] … with the intent to promote or facilitate the prostitution of another."

---

[1]  To the extent a response to Defendants' recitation of FOSTA's statutory background and the procedural history of this case is required, it may be found in Plaintiffs' summary judgment motion, and accompanying statement of material facts, which they incorporate here by reference.

As the Eighth Circuit explained in *Telescope Media Group v. Lucero*, 936 F.3d 740, 752 (8th Cir. 2019), the government cannot avoid the First Amendment simply by recasting essential speech processes as "conduct."  Otherwise, it could claim "publishing a newspaper is conduct because it depends on the mechanical operation of a printing press."  *Id*.  Consequently, courts have long been alert to the fact that "[l]aws enacted to control or suppress speech may operate at different points in the speech process."  *Citizens United v. FEC*, 558 U.S. 310, 336 (2010).

It is well established that "the creation and dissemination of information are speech within the meaning of the First Amendment."  *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 570 (2011).  If "the acts of 'disclosing' and 'publishing' information do not constitute speech, it is hard to imagine what does fall within that category, as distinct from the category of expressive conduct."  *Bartnicki v. Vopper*, 532 U.S. 514, 526-27 (2001) (regulating the disclosure of information is "a regulation of pure speech … not a regulation of conduct") (citation omitted); *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 792 n.1 (2011) ("Whether government regulation applies to creating, distributing, or consuming speech makes no difference.").

From the beginning of First Amendment jurisprudence, it has been understood that laws that target a particular medium regulate speech, regardless of how those regulations may be characterized.  *See*, *e.g*., *Near v. Minnesota*, 283 U.S. 697, 720 (1931) ("Characterizing the publication as a business, and the business as a nuisance, does not permit an invasion of the constitutional immunity against restraint.").  This is true even for measures that do not overtly call out "speech" *per se*.  *E.g*., *Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 582 (1983) (tax on ink and paper "burdens rights protected by the First Amendment").  This is because "[s]peech is not conduct just because the government says it is."  *Telescope Media Grp.*, 936 F.3d at 752.  "The process of expression through a medium has never been thought so distinct

from the expression itself that we could disaggregate Picasso from his brushes and canvas, or that we could value Beethoven without the benefit of strings and woodwinds." *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1061-62 (9th Cir. 2010).  Because of this, courts "have not drawn a hard line between the essays John Peter Zenger published and the act of setting the type." *Id.*

It has been equally obvious from the beginning of Internet regulation that laws targeting this medium inherently present serious First Amendment concerns, whether or not the regulations specifically mention speech.  *Reno v. ACLU*, 521 U.S. 844 (1997); *see Sandvig v. Sessions*, 315 F. Supp. 3d 1, 12-13 (D.D.C. 2018) (applying First Amendment analysis to unauthorized access prohibitions in Computer Fraud and Abuse Act).  Courts have uniformly recognized that "online publishers have a First Amendment right to distribute others' speech and exercise editorial control on their platforms." *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 991-92 (S.D. Tex. 2017).[2] Accordingly, the Northern District of California recently had no difficulty in concluding that a ban on "transactions" involving a social media platform directly regulated speech.  *U.S. WeChat Users Alliance v. Trump*, 2020 WL 5592848, at *10 (N.D. Cal. 2020) (restrictions on "transactions" "effectively eliminate[s] the plaintiffs' key platform for communication, slow[s] or eliminate[s] discourse, and are the equivalent of censorship of speech or a prior restraint on it"), *appeal filed*, No. 20-16908 (9th Cir. Oct. 2, 2020).

The government's attempt to explain away First Amendment cases involving the Internet is not just unavailing, it contradicts their own effort to distinguish "speech" from "conduct."  The Defendants' claim that in *Reno* and *Packingham v. North Carolina*, 137 S. Ct. 1730 (2017), "the

---

[2]   *See also Jian Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433, 438-39 (S.D.N.Y. 2014) (online platforms "are engaging in fully protected First Amendment expression—'[t]he presentation of an edited compilation of speech generated by other persons") (citation omitted); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 629-30 (D. Del. 2007) (First Amendment protects decisions by inter-mediaries).

First Amendment was implicated based on the relevant statute's *description of the regulated content*" mischaracterizes those decisions.  Gov't Mot. 19 (emphasis original).  While *Reno* was an obvious content-based speech regulation, the law at issue in *Packingham* made no reference to content at all.  The North Carolina law prohibited registered sex offenders from "access[ing] a commercial social networking Web site where the sex offender knows that the site permits minor children to become members or to create or maintain personal Web pages."  137 S. Ct. at 1733.  Despite the law's ostensible focus on the *conduct* of accessing social media, the Court struck it down as an overbroad speech regulation.  *Id*. at 1737-38.

Under well-established law, FOSTA directly regulates speech and is subject to facial First Amendment review.  There is no support for the government's load-bearing premise that regulation of a medium of communication is not a regulation of speech.

### B.  Determining Whether FOSTA Regulates Only "Unprotected Speech" Requires Rigorous Constitutional Scrutiny

The second pillar of the government's erroneous premise, that FOSTA does not regulate "categories of protected speech" and only prohibits "an offer or solicitation of an illegal transaction," Gov't Mot. 18, 24, is equally wrong.  It is not enough for the government to assert it is seeking to prevent only criminal or tortious activity and the statute's prohibitions extend no further.  The statute must be subjected to strict review to determine whether the assertion is true.  *E.g*., *United States v. Miselis*, 972 F.3d 518 (4th Cir. 2020) (holding statutory terms "promote" and "encourage" in Anti-Riot Act facially invalid because they reach protected speech and are not susceptible to narrowing interpretation); *Bartnicki*, 532 U.S. at 526-27 (holding First Amendment bars Wiretap Act claim for publishing content of illegal wiretap because "the naked prohibition against disclosures is fairly characterized as a regulation of pure speech").  The question to be decided is not—as Defendants misstate it—whether "everything that happens on or through the

Internet is protected by the First Amendment." Gov't Mot. 20. It is whether FOSTA's terms satisfy the necessary constitutional review.

In this regard, Defendants' very framing of the question gets things backwards. They assert FOSTA does not regulate "categories of protected speech," Gov't Mot. 18, but under the First Amendment, all speech is presumptively protected. It is only "well-defined and narrowly limited" categories that are *unprotected*. *United States v. Stevens*, 559 U.S. 460, 468-69 (2010) (citation omitted); *United States v. Alvarez*, 567 U.S. 709, 717 (2012). It is the government's burden to show how its speech regulations do not extend beyond these narrow categories, and conclusory assertions are not enough.

FOSTA clearly adopts prohibitions well *beyond* the recognized categories of unprotected speech. Defendants cite cases such as *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 388-89 (1973), for the proposition that advertising an illegal transaction is an unprotected category of speech, Gov't Mot. 18-19, but as the D.C. Circuit held, "FOSTA's text does not limit its scope to 'bad actor websites,' or even to classified advertising." *Woodhull Freedom Found. v. United States*, 948 F.3d 363, 373 (D.C. Cir. 2020). Cases like *Pittsburgh Press* "implicate[] only those instances when the state restricts speech *that itself proposes an illegal transaction*." *IMDb.com v. Becerra*, 962 F.3d 1111, 1123 (9th Cir. 2020) (emphasis added). But FOSTA's criminal prohibitions reach far beyond transactional speech to encompass any expression that "facilitates" or "promotes" the prostitution of another person.

Though they never say as much directly, Defendants appear to claim the terms "facilitate" and "promote" fall within the category of unprotected speech that is "integral to criminal conduct." But no case law supports such a claim, and Defendants cite none. As Plaintiffs explained in their opening brief, to satisfy constitutional rules governing this category, the government must show

the targeted speech is for the "sole immediate purpose" of furthering a specific crime. *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498-502 (1949).  This means the government must prove both that (1) a defendant had knowledge of specific content that is integrally related to a particular crime *and* (2) specifically intended to bring about the illegal result.  *Miselis*, 972 F.3d at 535 ("the government must at a minimum prove … the defendant acted with specific intent to engage in unprotected speech or conduct").  Pl. Mot. 23.  Thus, the question here is whether FOSTA's prohibition of operating a website so as to "promote" or "facilitate" the prostitution of another person (along with the other attributes of the law that expand the pool of enforcers and heighten penalties) restricts *only* speech integral to crime that directly "aids and abets" criminal activity.

As D.C. Circuit foreshadowed—in holding the terms "promote" and "facilitate," as used in FOSTA, "are 'susceptible of multiple and wide-ranging meanings,'" and are not "limited by a string of adjacent verbs (such as advertises, distributes, or solicits) that would convey a 'transactional connotation' that might narrow the statute's reach"—the answer is no.  *Woodhull Freedom Found.*, 948 F.3d at 372.[3]  As explained in the ensuing sections, the D.C. Circuit's analysis was correct, and FOSTA reaches a substantial amount of protected speech.

## II.     FOSTA DOES NOT TARGET ONLY UNPROTECTED SPEECH OR CULPABLE CRIMINAL CONDUCT

The broad and imprecise terms in FOSTA that reach far beyond unprotected categories of speech also render it both overbroad and vague in violation of the First and Fifth Amendments.  These deficiencies in the statute's text are exacerbated by confusing and conflicting *mens rea* standards that also—and separately—fail to satisfy the constitutional prerequisite of proper

---

[3] Although the court decided only the standing issue, it "engaged in considerable statutory construction before deciding that plaintiffs did, in fact, have standing." *Sandvig v. Barr*, 451 F. Supp. 3d 73, 84 (D.D.C. 2020), *appeal filed*, No. 20-5153 (D.C. Cir. May 28, 2020).

knowledge requirements.  *E.g.*, *Video Software Dealers Ass'n v. Webster*, 968 F.2d 684, 690 (8th Cir. 1992) ("*VSDA*"); *Elonis v. United States*, 135 S. Ct. 2001, 2009 (2015).  Each of these is an independent basis to invalidate FOSTA.

### A.  FOSTA is Overbroad on its Face

FOSTA's plain terms restrict a substantial amount of protected speech in relation to its legitimate sweep because it bans anything online that can be said to "promote" or "facilitate" prostitution, including sites that support sex workers with health- or safety-related information, or that advocate decriminalization, or even simply enable interpersonal or intimate connections.  *See*, *e.g.*, Pl. Mot. 18-19 (quoting and citing *Stevens*, 559 U.S. at 473; *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002); *Reno*, 521 U.S. at 863); Plaintiffs' Statement of Undisputed Material Facts ("SMF"), Ex. E ¶¶ 8-9, 30-31).  In suggesting this is not so, Defendants unwittingly doom their own argument.

First, FOSTA extends to speech far beyond anything Defendants cite as problematic, which is the quintessence of overbreadth.  Defendants claim FOSTA's purpose is to allow prosecution of so-called "bad-actor" websites, Gov't Mot. 26, identified primarily as those hosting classified ads, *see id*. 5 ("More than 80% of federal sex trafficking prosecutions between 2015 and 2020 involved online advertising."), with Backpage.com cited as the biggest source of the problem.  *Id*. (claiming Backpage "reportedly net more than 80% of all revenue from online commercial sex ad[s] in the United States").  But the law is not tailored to reach just this speech.  As the D.C. Circuit observed, "FOSTA's text does not limit its scope to 'bad actor websites,' or even to classified advertising." *Woodhull Freedom Found.*, 948 F.3d at 372.

Second, Defendants erroneously claim that "FOSTA does not criminalize any conduct that was not already prohibited under existing federal law," Gov't Mot. 1, such as 18 U.S.C. § 1591(a) and the Travel Act, which the government used in the prosecution to force Backpage to cease

operating.  Gov't Mot. 1, 5-6, 20, 24-27 & n.7, 31.  But as explained in Plaintiffs' opening motion, FOSTA does not use the language of the Travel Act.  It borrows only certain terms such as "promote" and "facilitate" that are "susceptible of … wide-ranging meanings" that reach protected speech, but omits the Travel Act's limiting terms that denote direct participation in crime. *Woodhull Freedom Found.*, 948 F.3d at 372; Pl. Mot. 14-16, 19-21; *see also infra* 12-15.  Additionally, changes to CDA § 230 and 18 U.S.C § 1591 further expand FOSTA's scope.[4]  Any principled reading of the statute's plain language cannot help but conclude it is unconstitutionally overbroad.

### 1. The Government Fundamentally Misapplies the Overbreadth Doctrine, Especially as it Applies to Regulation of Online Speech

A law "may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'"  *Stevens*, 559 U.S. at 473.  *See Free* Speech *Coal.*, 535 U.S. at 244 (a law is "unconstitutional on its face if it prohibits a substantial amount of protected expression").  Rather than addressing the standard for overbreadth as to merits, the Government argues a different doctrine:  overbreadth as to standing.[5] *See Virginia v. Hicks*, 539 U.S. 113, 120 (2003) (explaining difference between overbreadth as to

---

[4]  In fact, Defendants' claim that FOSTA does not criminalize anything already prohibited by § 1591 makes meaningless FOSTA's addition of § 1591(e)(4), in contravention of basic principles of statutory construction.  *See*, *e.g.*, *Corley v. United States*, 556 U.S. 303, 314 (2009) ("one of the most basic interpretive canons [is] that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant") (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (quoting 2A N. Singer, Statutes & Statutory Construction, § 46.06, pp.181-86 (rev. 6th ed. 2000))) (internal quotation marks and original brackets omitted)

[5]  The Defendants' effort to dispute FOSTA's overbreadth falters in substantial part because they frame the issue almost entirely as an offshoot of the standing inquiry, which already has been decided here.  *See generally Woodhull Freedom Found.*, 948 F.3d 363.  Discussion of overbreadth as, *e.g.*, an "exception to 'traditional rules of standing,'" or in terms of "chilling effect on others" not before the court or "third parties' interests," is beside the point.  *See* Gov't Mot. 15-16 (citing and quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612-13 (1973); *Green v. DOJ*, 392 F. Supp. 3d 68, 88 (D.D.C. 2019) (quoting *City Council v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984)).

standing and on the merits).  In a facial challenge, third-party standing only becomes an issue if the plaintiff does not prevail on the merits of its facial challenge as to his own speech.  *Sec'y of State v. Joseph H. Munson Co*., 467 U.S. 947, 959 (1984).  Here, however, Plaintiffs show FOSTA is facially unconstitutional based on the merits of their own claims.

Turning to those merits:  FOSTA is facially overbroad because its prohibitions are not limited to the "core of easily identifiable" conduct that Defendants identify as the law's intended target.  *Id*. at 964-67; *see supra* § I.A.  *See also infra* §§ II.A.2, II.B.  As such, FOSTA contains the same flaws that have led courts to reject other attempts to regulate the Internet.  It is what doomed both the Child Pornography Prevention Act ("CPPA"), *see Free Speech Coal.*, 535 U.S. at 255-58, and the North Carolina law that restricted registered sex offenders' access to online social networking services.  *Packingham*, 137 S. Ct. at 1736-38.  Overbreadth likewise barred efforts by various states to shut down Backpage.com with laws that purported to criminalize "directly or indirectly" publishing ads for "commercial sex" that involved "explicit or implicit" offers of sex for "something of value."  *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1280-83 (W.D. Wash. 2012); *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805, 831-33 (M.D. Tenn. 2013); *Backpage.com, LLC v. Hoffman*, 2013 WL 4502097, at \*9-10 (D.N.J. Aug. 20, 2013).  In each of those cases—which also rejected claims that the laws regulated only unprotected speech—courts held that indeterminate statutory terms were overbroad because they could be applied to prohibit "substantial activity unrelated to sex trafficking" and speech involving "vast swaths of legal, consensual … activity."  *See Cooper*, 939 F. Supp. 2d at 832; *McKenna*, 881 F. Supp. 2d at 1281.[6]

---

[6]  *See also Iancu v. Brunetti*, 139 S. Ct. 2294, 2302 (2019); *Stevens*, 559 U.S. at 482; *Free Speech Coal.*, 535 U.S. at 256, 258; *Reno*, 521 U.S. at 878; *ACLU v. Mukasey*, 534 F.3d 181 (3d Cir. 2008); *PSINet, Inc. v. Chapman*, 362 F.3d 227, 239 (4th Cir. 2004).

Faced with this precedent, Defendants cite but a single overbreadth case that involved online speech, *Ashcroft v. ACLU*, 535 U.S. 564 (2002) (cited Gov't Mot. 16), and then misstate its holding.  Contrary to Defendants' argument, the Supreme Court in *Ashcroft v. ACLU* did not "reject" an overbreadth challenge to the Child Online Protection Act ("COPA") because plaintiffs failed to show its overbreadth was not only real but substantial.  Gov't Mot. 16 (citing 535 U.S. at 584).  The Supreme Court held only that the Third Circuit's reliance on "community standards" (in applying the obscenity test) did not, alone, establish overbreadth, 535 U.S. at 584-85, a point the Court later in the case characterized as a "narrow issue" in weighing COPA's overall constitutionality.  *Ashcroft v. ACLU*, 542 U.S. 656, 664 (2004).  When it did undertake that broader analysis after remand, the Court affirmed the Third Circuit's grant of a preliminary injunction on grounds that COPA was, *inter alia*, overbroad, *see id.* at 664, and upon reaching the merits, the Third Circuit held the law facially overbroad.  *ACLU v. Mukasey*, 534 F.3d 181.

## 2.  FOSTA's Actual Language Manifests its Overbreadth

Rather than analyzing the actual language of FOSTA, the government offers the usual boilerplate defenses that overbreadth is "strong medicine" to be "applied with restraint," Gov't Mot. 15-16, while ignoring that the doctrine has commonly been applied to invalidate laws that use expansive terms to regulate online speech.  *E.g.*, *Packingham*, 137 S. Ct. at 1736-38; *Ashcroft v. ACLU*, 542 U.S. at 664.  Once it focuses on FOSTA's actual language, the government defends the law by claiming it "use[s] … these same terms ["promoting" and "facilitating" as] in the Travel Act.  But that assertion is incorrect; FOSTA and the Travel Act employ markedly different terms.

The relevant Travel Act provision prohibits the use of "any facility … with [the] intent to … promote, manage, establish, carry on, or facilitate the promotion, management, or carrying on, of any unlawful activity[.]"  18 U.S.C. § 1952(a)(3).  FOSTA's § 2421A(a) makes it a crime to "promote or facilitate the prostitution of another person."  FOSTA lacks the Travel Act's list of

11

constraining verbs ("promote, *manage*, *establish*, *carry on*, or facilitate"), and as a result does not simply reach "conduct" that is "the same" as that which the Travel Act bars. This conspicuous omission of operative verbs is significant: without the narrowing language contained in the Travel Act, FOSTA targets speech. As a result, this Court cannot interpret FOSTA as if the Travel Act's limiting verbs were included despite Congress's omission of them. *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1725 (2020) ("[T]his Court may not narrow a provision's reach by inserting words Congress chose to omit."); *Corley*, 556 U.S. at 31.

Standing alone as they do in § 2421A (and with similar terms in § 1591(e)(4)), "promote" and "facilitate" are unmoored from limiting language tied to same terms in the Travel Act. Thus, the terms as used in §2421A and § 1591(e)(4) encompass speech and are not "transactional," as they do not require conduct that is in some way participatory in the offense. *United States v. Williams*, 553 U.S. 285, 294 (2008). As the D.C. Circuit observed, FOSTA does not define what it means to "promote" or "facilitate" prostitution which, "considered in isolation, are susceptible of multiple and wide-ranging meanings" that are not "limited by a string of adjacent verbs (such as advertises, distributes, or solicits) that would convey a 'transactional connotation' that might narrow the statute's reach." *Woodhull Freedom Found*., 948 F.3d at 372 (citation and internal quotation marks omitted).

The omission of the same narrowing verbs found in the Travel Act is significant because the First Amendment requires such transactional language in order to connect the speech that the statute would make unlawful to constitutionally punishable crime, and thus bring the law into the categorical exception for "speech integral to criminal conduct." *See Williams*, 553 U.S. at 294-95. Only such required transactional words provide the necessary element of participation or direct engagement in the transaction. As the Supreme Court explained in *Williams*, they are necessary

to ensure "the statute penalizes speech that accompanies or seeks to induce" the criminal conduct, and to exclude the "multiple and wide-ranging meanings" that terms like "promote" can have when standing alone.  *Id.*

The presence of such transactional verbs helps narrow terms like "promote" by application of the "commonsense canon of *noscitur a sociis*—which counsels that a word is given more precise content by the neighboring words with which it is associated."  *Id*. at 294.  The child pornography pandering statute in *Williams*, for example, had two elements lacking in FOSTA:  (1) prohibition of a specifically defined category of unprotected speech (child pornography); and (2) the above-referenced limiting verbs confining the law to transactional participation.  *Id*. at 294-95.  The government implicitly (or unwittingly) recognizes that this link to "an 'illegal transaction'" in *Williams* prevented the statute from being unconstitutionally overbroad, Gov't Mot. 17, but misses the significance of the absence of such companion transactional verbs in FOSTA.

The omission of narrowing, transactional elements makes § 2421A unique among offenses in Chapter 117 of the Criminal Code governing Transportation for Illegal Sexual Activity and Related Crimes.  Section 2422(a), for example, allows punishment of anyone who "knowingly persuades, induces, entices, or coerces any individual to travel in interstate or foreign commerce … to engage in prostitution."  18 U.S.C. § 2422(a).  Its companion provision criminalizes "using the mail or any facility or means of interstate or foreign commerce" in a way that "knowingly per-suades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution."  *Id*. § 2422(b).  Similarly, under § 2423(d), it is unlawful if someone, "for the purpose of commercial advantage or private financial gain, arranges, induces, procures, or facilitates the travel of a person knowing that such a person is traveling in interstate commerce or foreign commerce with a motivating purpose of engaging in illicit sexual conduct."  *Id*. § 2423(d).

Thus, § 2421A stands alone among Chapter 117's provisions in targeting "promoting" or "facilitating" speech without being tied to participatory actions.  With FOSTA, Congress expressly sought to criminalize online interactive speech, with little regard to how wide a net it cast.

Such direct participation was essential to understanding the Travel Act cases involving telecommunication facilities that this Court has previously identified, as discussed in Plaintiffs' opening motion.[7]  *Reiner* involved a Travel Act conviction of a defendant who had made all personnel decisions and handled the business's financial aspects, conduct going well beyond, and arguably not even involving, any associated speech. 500 F.3d at 13. The same was true in *Seals*, where the defendant hired the prostitutes and handled the business's finances.  2014 WL 3847916, at *9.  Section 2421A requires no such direct participation (nor does § 1591(e)(4)).  Thus, while those Travel Act cases may illustrate what it means to "promote, manage, establish, carry on, or facilitate the promotion, management, establishing, or carrying on, of … unlawful activity" in violation of specified state laws (under 18 U.S.C. § 1952(a)), they say nothing about what it might mean to operate a website in a way that "promotes" or "facilitates" prostitution under FOSTA.[8]

Laws that use terms that (1) necessarily encompass expression; and (2) lack a clear nexus to unlawful conduct and/or clearly defined unprotected speech, are unconstitutional.  In *Miselis*,

---

[7]  Pl. Mot. 21 (citing *Woodhull Freedom Found. v. United States*, 334 F. Supp. 3d 185, 200 (D.D.C. 2018), *rev'd on other grounds*, 948 F.3d 363) (discussing *United States v. Reiner*, 500 F.3d 10 (1st Cir. 2007); *United States v. Seals*, 2014 WL 3847916 (W.D. Ark. Aug. 5, 2014)).

[8]  The same is true of, *e.g.*, *United States v. Ulbricht*, 31 F. Supp. 3d 540 (S.D.N.Y. 2014), involving prosecution of the creator of the Silk Road website.  In that case, in addition to Ulbricht's maintenance of a site that openly invited ads for unlawful activities (with categories like "Opioids," "Cannabis," and "Ecstasy"), and openly advertised the purchase and sale of thousands of kilograms of heroin and cocaine and "malicious software designed for computer hacking," Ulbricht *participated in each sale* by escrowing payments pending the completion of transactions, and collecting a commission of 8 to 15 percent from every sale.  *Id*. at 549-50; *United States v. Ulbricht*, No. 13-mj-02328 (S.D.N.Y.), Sealed Indictment, Dkt. 1, ¶¶ 8(a), 19(b)-(c), 21(d)-(h).

for example, the Fourth Circuit held the Anti-Riot Act's terms "promote" and "encourage" facially invalid because they reach protected speech and are unsusceptible to narrowing interpretation based on a connection between speech and lawlessness. 972 F.3d at 535-36.[9] The *Miselis* court explained that "[t]he verb 'promote' occupies a[n] overinclusive position on the continuum of relation between advocacy and action," as it has the effect of "subsuming an abundance of hypothetical efforts to persuade that aren't likely to produce" unlawful conduct the statute targets. 972 F.3d at 536. The Anti-Riot Act thus prohibited a substantial amount of "abstract advocacy" that the First Amendment fully protects. *Id.*; *see also id.* at 535, 537 (same holding regarding Act's inclusion of "encouraging" and "urging" the prohibited conduct targeted by the law).[10]

The same reasoning applies here. FOSTA is unconstitutionally overbroad because its prohibitions against "promoting" or "facilitating" prostitution by owning, managing, or operating an online service are not limited to unprotected speech or conduct. *See supra* § I; Pl. Mot. 15-16.

### 3. The Case Law on Which Defendants Rely is Inapposite

Defendants' argument finds no support in the case law they cite. *Virginia v. Hicks*, which Defendants cite to suggest the Supreme Court has "questioned" whether facial overbreadth challenges lie against laws not specifically addressed to speech or conduct necessarily associated with it, is inapposite. Gov't Mot. 17 (quoting and citing 539 U.S. at 124); *id.* 20. Hicks did not

---

[9] Specifically, the court held prohibitions on "encouraging" or "promoting" a riot and "urging" others to riot were unconstitutionally overbroad because they "sweep[] up a substantial amount of speech that retains the status of protected advocacy," as opposed to comprising "incitement" that has been defined as constitutionally unprotected. *Miselis*, 972 F.3d at 525-26, 530-39 (applying *Brandenburg v. Ohio*, 395 U.S. 444 (1969) (*per curiam*)).

[10] The only Anti-Riot Act provisions upheld were those specifically limited to speech that qualified as incitement under the precise definition in *Brandenburg* and its progeny, or that involved conduct amounting to participation in illegal activity, such as "organizing" a riot. *Miselis*, 972 F.3d at 537-38.

contend he was engaged in constitutionally protected speech, nor did he "challenge the validity of the trespass *statute* under which he was convicted," which was "unquestionably valid."  Rather, he challenged only the anti-trespassing policy of a local housing development that barred him from its privatized streets.  *See* 539 U.S. at 118 & n.2.

Defendants also rely heavily on the statutory analysis in Judge Katsas' concurring opinion in the prior appeal of this case, all but ignoring the opinion *of the Court*.  Gov't Mot. 1, 14, 20-21, 27, 29.[11]  Based solely on that concurrence, Defendants argue FOSTA should be read with the background law of aiding and abetting in mind, as opposed to the majority's holding that "facilitating" means "to make easier or less difficult."  Gov't Mot. 20-21 (citing *Woodhull Freedom Found.*, 948 F.3d at 375 (Katsas, J., concurring)).  But Judge Katsas' analysis rested on *Abuelhawa v. United States*, 556 U.S. 816 (2009), which simply applied the uncontroversial presumption that Courts should not interpret words in a statute in isolation, but should consider the larger statutory context and its history.  *See id.* at 821-23.  Doing so here supports the conclusion that FOSTA is unconstitutionally overbroad.  *See infra* 18-19.

In fact, *Abuelhawa* clearly cuts in Plaintiffs' favor.  The Court there considered aiding and abetting (and assisting) in a different context—deciding whether one could "facilitate" one's own crime.  It was in that context that the Court deployed a presumption, specifically, that Congress legislates with case law in mind.  In *Abuelhawa*, this meant looking to "the traditional judicial limitation on applying terms like 'aid,' 'abet,' and 'assist'" to conclude that, in enacting the Controlled Substances Act ("CSA"), Congress "had a comparable scope in mind when it used the term

---

[11]   Defendants also fall back on this Court's previous statutory analysis.  Gov't Mot. 20.  But that opinion did not reach the merits. *Woodhull Freedom Found.*, 334 F. Supp. 3d at 195 (noting "black-letter law that the jurisdictional requirements … must be present-before this Court may proceed to the merits").  And the D.C. Circuit disagreed with this Court's view of FOSTA on which dismissal for lack of standing rested.  *Woodhull Freedom Found.*, 948 F.3d at 371-74.

'facilitate,' a word with equivalent meaning."  556 U.S. at 819.  The application of this presumption made sense because the government's proffered interpretation (that one could facilitate one's own criminal action) would have overturned Congress's clear intention of making small drug purchases misdemeanors, rather than a felony like distribution.  *Abuelhawa*, 556 U.S. at 821-22.

But *Abuelhawa* did not require that "facilitate" be limited by the background law of "aiding and abetting."  Rather, the Court observed more broadly that Congress in that case had "legislated against a background usage of terms such as 'aid,' 'abet,' *and 'assist'* that points in the opposite direction" of the nonsensical interpretation the government offered.  *Id.* at 824 (emphasis added).  The Court did *not* distinguish "aiding and abetting" from other types of accomplice liability.  *See United States v. Daniels*, 915 F.3d 148, 166-67 (3d Cir. 2019) ("The *Abuelhawa* Court simply addressed a narrow question regarding the scope of the term 'facilitate' under § 843(b)."), *cert. denied*, 140 S. Ct. 1264 (2020).

In fact, the Court in *Abuelhawa* acknowledged the common definition of "facilitate" as "the act of making it easier for another person to commit a crime." 556 U.S. at 821 (quoting BLACK'S LAW DICTIONARY 627 (8th ed. 2004)).  As the D.C. Circuit indicated, that expansive definition also applies here, and helps show why FOSTA is overbroad.  *See*, *e.g.*, Pl. Mot. 15-16 (quoting, *inter alia*, *Woodhull Freedom Found.*, 948 F.3d at 372; *Abuelhawa*, 556 U.S. at 819).  And even post-*Abuelhawa*, courts continue to give "facilitate" a broad and inclusive meaning, including, simply, "to make easier."  *See United States v. Desposito*, 704 F.3d 221, 228 & n.8 (2d Cir. 2013); *United States v. Owens*, 641 F. App'x 949, 951 (11th Cir. 2016) (*per curiam*) (citation omitted).  *Cf. Planned Parenthood Ass'n of Hidalgo Cty. Texas, Inc. v. Suehs*, 692 F.3d 343, 347 (5th Cir. 2012) (regulators defined "promote" as to "[a]dvocate[ ] or popularize[ ] by, for example, advertising or publicity").

Thus, in this case, any lessons to be taken from *Abuelhawa* serve only to illustrate FOSTA's overbreadth. With FOSTA, Congress legislated against the background of the Travel Act, which uses "promote" and "facilitate" in conjunction with constraining verbs, *see supra* 11-13, and case law like *Williams* that held transactional language is necessary to focus laws criminalizing speech on participation in unlawful conduct and/or well-defined unprotected speech. *See supra* 12-13. The conscious decision to adopt broad speech-focused prohibitions while *omitting* limiting language must be given meaning. *See supra* 12. FOSTA's statutory context and history reflect that Congress acted specifically to target use of interactive computer services to *increase* the prospect of liability and penalties—the opposite of the situation in *Abuelhawa*. *See infra* 19, 25-26 & n.19. Thus, *Abuelhawa* makes clear that, here, rather than intending to resonate in the back-ground law of aiding and abetting, FOSTA's use of "promote" and "facilitate" and omission of limiting verbs extend the statute's reach. In doing so, it restricts a substantial amount of protected expression, rendering it unconstitutionally overbroad.[12]

### 4.  FOSTA's Overbreadth is Not Cured by *Mens Rea* Requirements

Defendants cannot save FOSTA by asserting that a "heightened *mens rea* requirement" narrows its focus. Gov't Mot. 21. That claim fails because it mischaracterizes FOSTA's *mens rea* and because a statute's *mens rea* cannot remedy substantive facial overbreadth. While the full

---

[12]  Moreover, it is clear Congress knows how to write an aiding and abetting law when it intends to do so, and how to write a purposefully broad and inclusive law when it wishes, as it did with FOSTA. Generally speaking, Congress uses many more verbs and gerunds to describe aiding and abetting liability, as various statutes attest. *See, e.g.*, 26 U.S.C. § 7206(2)-(3) (fraud and false statements under internal revenue laws); 21 U.S.C. § 841(h) (dispensing controlled substances online); 15 U.S.C. § 80b-9(f) (SEC regulation of investment companies and advisors); 15 U.S.C. § 78t (regulation of securities trading); 7 U.S.C. § 13c (regulation of commodity exchanges); 12 U.S.C. § 1847 (penalties for violating bank holding company regulations); 12 U.S.C. § 1786(k)(2)(K), (m) (regulation of insured credit unions). Significantly, *none* of these statutes use "facilitate" to describe or define aiding and abetting.

extent of FOSTA's *mens rea* failings are addressed *infra*, § II.C, for present purposes, it is enough to note, first, that FOSTA does not require violation of specific laws.  *Compare*, *e.g.*, 18 U.S.C. § 1952(b) ("unlawful activity" defined as violation of specific state or U.S. law).  Rather, FOSTA simply makes it unlawful "to promote or facilitate the prostitution of another" without incorporating or even referencing any state or federal law.  *Id.* § 2421A(a)-(b).  *See also supra* 12-14. Section 2421A thus lacks a specific knowledge element, and though it includes an "intent" requirement, it is not limited to speech integrally related to, or supportive of, criminal activity, which must be for the "sole immediate purpose" of furthering a specific crime.  *Giboney*, 336 U.S. at 498-502.  As shown above, under FOSTA's plain terms, any online speech that can be said to "promote" or "facilitate" prostitution or trafficking, even abstractly, creates a risk of prosecution and/or liability.  *See supra* 15; *see also* Pl. Mot. 19-20.

Courts presume that Congress enacts statutes with awareness of relevant judicial precedent, *Abuelhawa*, 556 U.S. at 819-20; *Armstrong v. Navient Sols., LLC*, 292 F. Supp. 3d 464, 471 (D.D.C. 2018), and here there is no doubt it enacted FOSTA to *diminish* the "heightened *mens rea* requirements" of § 1591, as recognized in *Backpage.com, LLC v. Lynch*, 216 F. Supp. 3d 96 (D.D.C. 2016).  Plaintiffs' summary judgment motion detailed how "Congress changed the law to reduce the required level of scienter for 'participation in a venture' that may include sex trafficking."  Pl. Mot. 25-26 (discussing 18 U.S.C. §§ 1591(a)(2), (e)), and *Lynch*).  As explained, the FOSTA House Report confirmed that the amended scienter sought to alleviate difficulties § 1591's prior "high evidentiary standard" presented in prosecuting (and civilly pursuing) alleged violations involving online speech.  *See id*. (citing H.R. Rep. No. 115-572, pt. 1, at 5, 9; Cong. Res. Serv., *Sex Trafficking: An Overview of Federal Criminal Law*, June 25, 2015, at 6 ("*CRS Report*"), and ECF 15-1); *see also*, *e.g.*, *J.B. v. G6 Hosp., LLC*, 2020 WL 4901196, at *6 (N.D. Cal. Aug. 20,

2020) (citing H.R. Rep. No. 115-572, pt. 1, at 3).  There is thus no basis to claim this lessening of the *mens rea* somehow obviates FOSTA's overbreadth.

Second, where the substantive conduct that a statute criminalizes encompasses fully protected expression, it does not matter if the *mens rea* is specific intent, knowledge, reckless disregard, or any other standard—the operative offense is still unconstitutionally overbroad:  the lack of clarity on when one "promotes" or "facilitates" prostitution undercuts having to do so "intentionally."  The recent decision in *Miselis* illustrates that even with a proper specific-intent *mens rea* (which is not present here, as shown *supra* 19, *infra* § II.C), a law can still be unconstitutionally overbroad.  972 F.3d at 535-40.

### B. FOSTA is Unconstitutionally Vague

"Because First Amendment freedoms need breathing space to survive, the government may regulate in the area only with narrow specificity."  *NAACP v. Button*, 371 U.S. 415, 433 (1963).  Given the First Amendment impacts of FOSTA, "a more stringent vagueness test should apply."  *Holder v. Humanitarian Law Project*, 561 U.S. 1, 19 (2010) (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982)).[13]  Similarly, content-based regulations on speech require "a more stringent vagueness test."  *Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1320 (11th Cir. 2017) (citing *Vill. of Hoffman Estates*, 455 U.S. at 499).  The boundless prohibitions on Internet communications associated with prostitution or sex trafficking in FOSTA fail that test.  First, Congress's choice to define FOSTA's prohibitions broadly and eschew terms that would limit the law to aiding, abetting, or directly participating in illegal transactions renders FOSTA unconstitutionally vague.  Second, Congress failed to define the operative

---

[13]  Defendants argue that heightened scrutiny is not necessary since FOSTA does not implicate protected speech.  Gov't Mot. 27-32.  But as discussed *supra* § I, FOSTA inherently targets online speech which enjoys First Amendment protection.  *See Sandvig*, 315 F. Supp. 3d at 12-13.

verbs in § 1591(e)(4)—assisting, supporting, facilitating.  Third, Congress failed to define the very conduct that cannot be promoted or facilitated, *i.e.*, "the prostitution of another person," and the vagueness is exacerbated by use of the term "contribute to sex trafficking" in § 2421A(b)(2).  The statute fails to provide any guidance establishing how direct or proximate the contribution must be before the speech is subject to enhanced penalties.

Under FOSTA, Defendants, state Attorneys General, and countless private claimants, are permitted to adopt their own interpretations of the scope of speech FOSTA prohibits.  Thus, FOSTA's terms inescapably "trap the innocent by failing to give fair warning," and delegate "basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application."  *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972); *see also City of Chi. v. Morales*, 527 U.S. 41, 71 (1999) ("There is no way to distinguish in the ordinance's terms between one application of unlimited police discretion and another. It is unconstitutional … because the policeman enjoys too much discretion in *every* case.") (Breyer, J., concurring in part and concurring in the judgment) (emphasis in original).

Defendants try to address vagueness by once again falling back on Judge Katsas' concurrence, and by trying to incorporate the law of aiding and abetting to confine FOSTA's prohibitions.  Gov't Mot. 29.  But this gambit fails for the same reasons as explained above.  *See supra* 16-18.  The broad speech prohibitions are neither defined nor cabined by surrounding verbs so as to clarify the law and narrow its focus.  *See Woodhull Freedom Found.*, 948 F.3d at 372. Defendants' argument that the Travel Act has not been held unconstitutionally vague, Gov't Mot.

29-30, ignores that the Travel Act employs different language, including a string of constraining verbs. *See supra* 11-13.[14]

Nor does the inclusion of a *mens rea* standard solve FOSTA's vagueness problem. Gov't Mot. 31-32. As with overbreadth, where a vague law's reach may extend to speech protected by the First Amendment, inclusion of a *mens rea* element does not cure vagueness. *E.g.*, *Baggett v. Bullitt*, 377 U.S. 360, 366-68 (1964) (the Constitution does not permit statutory language that can be interpreted "to require the forswearing of an undefined variety of 'guiltless knowing behavior.'"); *Cramp v. Bd. of Pub. Instruction*, 368 U.S. 278, 281 (1961). As discussed above, FOSTA was intended to *broaden* the scope of liability.[15] The complicated and contradictory *mens rea* standards in FOSTA expanded the the law instead of narrowing its prohibitions. Imposing criminal penalties for publishing online communication that makes prostitution easier (or less difficult) is not made more clear by requiring that such publication be "intentional." If a statute fails to provide fair warning of the prohibited conduct in the first instance, mandating that such indifinite acts be done intentionally is inconsequential from a vagueness standpoint.

### C. FOSTA Lacks Adequate Scienter Requirements

The government's analysis of FOSTA's defective scienter requirements is inconsistent with the statute's language, Congress's intent in broadening liability for online platforms, and

---

[14] As for the idea that "promote or facilitate" be interpreted similarly to "contributory negligence" (a tort theory), "contributory infringement" (an intellectual property theory), or "material contribution" (§ 230's test for determining if someone is an information content provider), Gov't Mot. 30, these are judicially created concepts involving different areas of law and do not limit the ambiguous aggravated offense language of § 2421A(b)(2).

[15] *See* Letter from Prim F. Escalona to Mick Mulvaney, Director, Office of Management and Budget, ECF 15-1 (explaining that FOSTA "provides for an aggravated felony if the defendant recklessly disregards that the crime contributed to sex trafficking as prohibited by 18 U.S.C. § 1591(a)," and that § 1591's definition of "participation in a venture" was amended to "ensure federal liability" and "is not intended to be limiting").

experience with the law thus far.[16]  First, Defendants erroneously suggest that the First Amendment

only requires "some form of scienter."  Gov't Mot. 34 (citing *Mishkin v. New York*, 383 U.S. 502,

511 (1966); *Smith v. California*, 361 U.S. 147 (1959)); *see also* Pl. Mot. 22-23 (citing same, and

additional cases).  But as later cases held, speech must be in some way be participatory (or as the

Supreme Court put it, "transactional") to satisfy criminal intent requirements.  *Williams*, 553 U.S.

at 294.

Defendants then wrongly argue that FOSTA is constitutional because it requires specific

intent—both knowledge and particularized intent to aid and abet a specified illegal act of

prostitution or trafficking.  Gov't Mot. 21.  This gets the law only half-right: where a law purports

to ban speech that furthers criminal acts *by others*, as with § 2421A's "promoting or facilitating"

offenses, the government must prove that a defendant both (1) had knowledge of specific content

that is integrally related to a particular crime *and* (2) specifically intended to bring about the illegal

result.  *Miselis*, 972 F.3d at 536-37.  But contrary to Defendants' contention, FOSTA contains no

such requirement, either in § 2421A or § 1591.

The scienter language in § 2421A violates the First Amendment because the prohibited

acts can include "guiltless knowing behavior."  *Baggett*, 377 U.S. at 366-68.  In § 2421A, "intent

---

[16]   FOSTA's scienter failings are outlined in Plaintiffs' summary judgment motion.  Here,
Defendants mischaracterize the scienter claim, suggesting it rests on FOSTA lacking *any* scienter
language at all, Gov't Mot. 34 ("Contrary to Plaintiffs' assertions, FOSTA['s provisions] do
contain scienter requirements."), when, rather, the claim is that those scienter requirements in the
statute are not sufficiently stringent to satisfy the First Amendment.  Further, to the extent that
Defendants seek judgment on the Complaint's scienter count based on their position that "FOSTA
on its face does not regulate speech," Gov't Mot. 35, that argument is negated by § I, *supra*.  That
also renders irrelevant the argument that "Plaintiffs' prior briefing cited no case that has applied
*Smith* or *Elonis* to a similar context" not involving speech.  Of course, *Smith*, *e.g.*, made clear, as
relevant in *this* context, that the First Amendment bars liability for distributing expressive
materials without proof of scienter.  361 U.S. at 153-54.  *See* Pl. Mot. 22-23 (citing *Smith*, *Mishkin*,
*Elonis*, *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994), and *VSDA*, 968 F.2d at
690).  *See also infra* 27-28 (analyzing Gov't Mot. 35 (purporting to apply *Elonis*)).

to promote or facilitate" prostitution is an inadequate standard because these terms are not "transactional," *i.e.*, they do not require conduct in some way participatory in the offense as is required to satisfy criminal intent requirements under the First Amendment. *Williams*, 553 U.S. at 294; *see also supra* 11-14. Section 2421A lacks any specific knowledge element, and although it includes "intent," it is not limited to speech integrally related to, or supportive of, criminal activity. As a consequence of the imprecision of "promote or facilitate" in § 2421A, it implicates protected speech, what the *Miselis* court called "abstract advocacy," 972 F.3d at 535; *see supra* 15, 19, and such expression "can't form the basis of an attempt to engage in unlawful speech." *Id.* *See also Woodhull Freedom Found.*, 948 F.3d at 372 (explaining that "promote" and "facilitate" are not linked to specific crime, and fail to necessarily identify criminality).

Defendants rely on an asserted "additional scienter requirement" for an aggravated offense under § 2421A(b) of requiring "act[ion] in 'reckless disregard' ... that the charged conduct contributed to sex trafficking," "*in addition to* the intent ... already required," Gov't Mot. 34 (emphasis added), but that provision cannot cure the initial scienter defect. All the ambiguities with the "intent already required" to "promote or facilitate" still apply. *See* 18 U.S.C. § 2421A(b) (aggravated violation requires "intent to promote or facilitate"). Far from adding anything, the "aggravated" offense further *dispenses* with scienter by imposing liability based on "reckless disregard" of "contributive" conduct, thus stripping away specific knowledge in favor of an even more amorphous standard. Defendants reading this as additive defies logic: if an offender must have the specific intent for establishing liability in the first place, reckless disregard becomes superfluous, contrary to "basic interpretive canons." *Corley*, 556 U.S. at 314 ("The fundamental problem with the Government's reading ... is that it renders [the law] nonsensical and superfluous.").

Equally without merit is Defendants' claim that FOSTA "changed nothing about § 1591's underlying mens rea" by defining "participation in a venture" to include "knowingly assisting, supporting, or facilitating a violation."[17]  Gov't Mot. 34.  As an initial matter, "assisting," "supporting" and "facilitating" suffer the same generality—and the same embrace of protected "abstract advocacy"—as "promote" and "facilitate" in § 2421A.  *See supra* 15, 19, 24.  This amendment to § 1591 thus added generalized terms that are not transactional.  *See supra* 12-13, 18, 23-24 (citing *Williams*, 553 U.S. at 294-95).  By this change FOSTA redefined "participation" to *expand* the crime to include "assisting, supporting or facilitating" a violation.  18 U.S.C. § 1591(e)(4).  Where § 1591 pre-FOSTA made it unlawful to benefit financially or receive anything of value "from participation in a venture" of sex trafficking, either of children or by force, fraud, or coercion, *id*. § 1591(a)(1)-(2), the law as revised no longer requires active involvement for liability to attach.

These scienter problems are compounded by the broad sweep of liability under § 1591(a)(2) for benefitting from participation in a venture under a "reckless disregard" standard. The net result is that § 1591 does not require intent to promote trafficking, but only "knowing" participation "in a venture" with "reckless disregard" trafficking occurred.  *Id*. § 1591(a). The term "knowingly" means only that an act was performed voluntarily and intentionally, and only requires proof of the facts that constitute the offense, not knowledge of the lawfulness of the action.  *Bryan v. United States*, 524 U.S. 186, 193 (1998).  Section 1591(a)(2) prohibits benefitting financially from a venture "or … receiving *anything of value*," which may include "intangibles."[18]  The

---

[17]   Previously, § 1591 defined "venture" as "any group of two or more individuals associated in fact, whether or not a legal entity."  But FOSTA's change to encompass "knowingly assisting, supporting, or facilitating" purposefully and intentionally expanded the ways in which the statute imposes liability.

[18]   *CRS Report* at 8.  *See United States v. Marmolejo*, 89 F.3d 1185, 1191-93 (5th Cir. 1996) (collecting cases interpreting criminal laws to show "anything of value" includes "intangibles,"

government's insistence that this "changed nothing" ignores the reality that the entire thrust of FOSTA was to make prosecutions and civil suits easier and to minimize the burden of proof.[19]

The "reckless disregard" standard of § 1591(a)(2) becomes confusing at best, and superfluous at worst.  The uncertainty wrought by FOSTA is evident in the cases that struggled to interpret it, with courts reaching conflicting interpretations.  As a recent decision noted, "[w]ithin the past year, district courts have grappled with whether a beneficiary liability defendant must have actual knowledge of the specific sex trafficking to be … liable." *M.L. v. craigslist Inc.*, 2020 WL 5494903, at *5-6 (W.D. Wash. Sept. 11, 2020) (citing cases).  Contrary to government claims here that FOSTA requires specific knowledge, some cases have held the negligence standard of "constructive knowledge of [the victim's] trafficking" suffices, leaving no need to allege a website "knew specifically of her trafficking or [her] specific identity." *Id*. at *6.

Another court similarly cited "confusion [that] arises from the phrase 'participation in a venture' in both § 1591 … and §  1595(a))." *Doe v. Kik Interactive, Inc.*, --- F. Supp. 3d ----, 2020 WL 5156641, at *6 (S.D. Fla. Aug. 31, 2020); *see also id*. at *6-7 (surveying cases).  Significantly,

---

including "information"); *McKenna*, 881 F. Supp. 2d at 1281 ("the undefined term 'something of value' means anything that can be traded on a free market").

[19]  As outlined in Plaintiffs' summary judgment motion and alluded to above, § 1591's prior knowledge requirement proved difficult because "federal prosecutors usually cannot demonstrate … that [a] website operators knew … ad[s] involved sex trafficking," especially since "online ad[s] rarely, if ever, indicate that sex trafficking is involved." Pl. Mot. 25 (quoting H.R. Rep. No. 115-572, pt. 1, at 5).  This specific knowledge requirement was what prevented Backpage.com from having injury-in-fact to obtain First Amendment review of the § 1591 amendment immediately preceding FOSTA's revisions, *see Lynch*, 216 F. Supp. 3d at 108-09, and it is precisely what the FOSTA amendments were designed address.  Of course, a desire to make prosecution of a crime easier does not alleviate the government's obligation to properly tailor a law as required by the First Amendment. *McCullen v. Coakley*, 573 U.S. 464, 495 (2014) ("To meet the requirement of narrow tailoring, the government must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier.").

the *Kik Interactive* court held knowing participation in the sex trafficking venture of a specific victim is required, *id*. at *6, contrary to the above-referenced allowance in *craigslist* for only constructive knowledge.  2020 WL 5494903, at *6; *accord J.B.*, 2020 WL 4901196, at *8, *10; *but see also S.J. v. Choice Hotels Int'l, Inc.* --- F. Supp. 3d ----, 2020 WL 4059569, at *5 (E.D.N.Y. July 20, 2020) (even under constructive knowledge standard, defendant must satisfy knowledge element "as to a *particular* sex trafficking venture").[20]  *Cf. S.Y. v. Naples Hotel Co.*, --- F. Supp. 3d ----, 2020 WL 4504976, at *2-3 (M.D. Fla. Aug. 5, 2020) (examining split on whether overt act is required to have "participated" under § 1595 or if constructive knowledge suffices).  These disparate opinions cast substantial doubt on the government's assertions that FOSTA's *mens rea* requirements are the cure for the statute's overly broad and vague reach.  *See supra* 18-20, 22.

Defendants cannot rely on *Elonis* to support their claim that the scienter requirements as revised by FOSTA "conform to the Supreme Court's holdings on the issue" and thus withstand First Amendment review.  Gov't Mot. 35.  First, Defendants once again rely solely on a concurring opinion to support their claim that, so long as "some form of scienter is required," *id.* 34, the *level* of scienter is not important.  *Id*. 35 (citing 135 S. Ct. at 2015-16 (Alito, J., concurring)).  Second, and more importantly, Defendants' claim that *Elonis* held that "an allegedly deficient scienter requirement is not a valid basis for overturning a federal statute on its face" *id*., is simply wrong.  The Court in *Elonis* had no occasion to—and did not—say any such thing.  *Elonis* was not a facial

---

[20]  The respective references to "participation in a venture" in Sections 1591 and 1595, the former newly defined by FOSTA, the latter undefined, could conceivably have different meanings in the context of civil liability.  *See* 18 U.S.C. §§ 1591(a)(2), (e), 1595(a).  Arguably, use of the same language in the same chapter of the same title ought to have the same meaning, *Lomax*, 140 S. Ct. at 1725, but in the context of interactive computer services, at least, the FOSTA-defined version in § 1591 gets incorporated.  This is because FOSTA's elimination of immunity for civil liability from § 1595 civil claims applies only if "the claim constitutes a violation of section 1591" pursuant to 47 C.F.R. § 230(e)(5)(A).  *See Kik Interactive*, 2020 WL 5156641, at *6-7.

challenge to a statute, but rather to denial of a motion to dismiss an indictment. Insofar as scienter analysis was required, the case examined only how courts may read scienter requirements into laws that lack them. *See* 135 S. Ct. at 2009-10. Nothing in the case suggested that, when asked to assess the facial constitutionality of a federal statute, the Court would "repair" defective scienter requirements. And the Court certainly did not sanction recklessness as an acceptable standard, *cf. id*. at 2011-12, though it did make clear that standards appropriate for civil liability—like negligence—are not appropriate in the criminal context, where at a minimum, "awareness of some wrongdoing" is required. *Id*. at 2011.

## III.   FOSTA FAILS STRICT SCRUTINY

Defendants make no attempt to satisfy their burden of showing that FOSTA satisfies strict First Amendment scrutiny because it imposes content-based restrictions on speech. *See Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2355, 2346 (2020) ("*AAPC*"); *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015); *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000). They thus concede FOSTA is unconstitutional under strict scrutiny. *See*, *e.g.*, *AAPC*, 140 S. Ct. at 2347 (government concedes inability to satisfy strict scrutiny); *Santamaria v. District of Columbia*, 875 F. Supp. 2d 12, 16 n.3 (D.D.C. 2012) (failure to address issue concedes it).

Instead, Defendants erroneously claim that strict scrutiny does not apply because, in their view, FOSTA does not regulate speech at all or, if it does, it is content-neutral. Gov't Mot. 22-27. The extent to which FOSTA targets online platforms and inherently regulates speech is addressed at § I, *supra*, and negates Defendants' claims that FOSTA restricts only conduct. And their claim to content-neutrality fails because, as Defendants note, "if a law applies to particular speech because of the topic discussed or the idea or message expressed," it is content-based and subject to strict scrutiny. Gov't Mot. 22 (quoting *Reed*, 576 U.S. at 163). This, of course, is the point Plaintiffs made in the first place.

### A. FOSTA is a Content-Based Regulation of Speech

In criminalizing particular subject matter—speech that "promote[s] or facilitate[s] the prostitution of another person," 18 U.S.C. § 2421A—FOSTA targets speech based on its "message" and "function." *Reed*, 576 U.S. at 163-64. *See also Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 116 (1991) (law restricting speech about crime was content-based). In fact, as § 2421A "focuses *only* on the content of the speech," it is "the essence of content-based regulation." *Playboy Entm't Grp.*, 529 U.S. at 811-12. Worse, by barring "promotion" of prostitution, it allows the government to discriminate based on viewpoint, an even more "blatant" and "egregious form of content discrimination." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995); *True the Vote, Inc. v. IRS*, 831 F.3d 551, 560 (D.C. Cir. 2016).

By targeting promotion or facilitation of prostitution via interactive computer service, the law's sweep includes such speech as harm-reduction education for sex workers, and advocacy seeking decriminalization, while speech *condemning* prostitution or favoring criminalization faces no prohibition. *See* Pl. Mot. 27 (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1, 7 (2010)). *See also Turner Broad. Sys., Inc. v. FCC,* 512 U.S. 622, 658 (1994) (explaining that strict scrutiny applies to regulations reflecting "aversion" to what "disfavored speakers" have to say). Defendants are simply incorrect in claiming that "FOSTA identifies no specific message," and that "none of [its] provisions … reference speech, much less any particular message." Gov't Br. 23.

Defendants' comparison to the Travel Act, *id*. 25, only illustrates FOSTA's content focus. The Travel Act is content-neutral law that may affect instrumentalities of communication only when such facilities are used as part of a course of conduct to commit specific crimes. *See generally* 18 U.S.C. § 1952. To the extent the Travel Act mentions speech at all, it is to clarify that the law does not apply to the arguably speech-related activity of "savings promotion raffles."

*Id*. § 1952(e).  FOSTA, by contrast, focuses entirely on interactive computer services that neces-sarily convey speech, and applies to speech of a particular subject matter:  that which "facilitates" or "promotes" prostitution.  *Id*. § 2421A.  Additionally, § 1591 specifically includes "advertising," which necessarily involves speech, *id*. § 1951(a)-(b).

Defendants attempt to avoid the obvious conclusion that FOSTA is content-based regu-lation of speech by misreading the case law.  First, they urge this Court to "consider that the law's justification is unrelated to speech."  Gov't Mot. 25 (relying on *Reed*).  But *Reed* held the opposite: that "benign motive" or "content-neutral justification" does not save a law from being content-based where, as here, its language singles out specific speech.  576 U.S. at 165.

Second, Defendants similarly misconstrue *Ward v. Rock Against Racism*, 491 U.S. 781 (1989), as having application here on grounds that "a regulation [that] serves purposes unrelated to the content of expression … is deemed neutral, even if it has an incidental effect on some speakers messages."  Gov't Mot. 25 (quoting *ANSWER Coal. v. Basham*, 845 F.3d 1199, 1210 (D.C. Cir. 2017) (quoting *Ward*, 481 U.S. at 791)) (internal quotation marks omitted, ellipses supplied).  *Ward* involved a restriction that, unlike FOSTA, was content-neutral both by its language *and* its justification.  However, if the requirement in *Ward* to use city-provided sound equipment and technicians, *see* 491 U.S. at 791-93, had applied based on genre of a performance (*e.g.*, only rock or rap), it would have been, like FOSTA, content-based.  *See AAPC*, 140 S. Ct. at 2346 ("[A] law banning the use of sound trucks for political speech—and only political speech—would be a content-based regulation, even if it imposed no limits on the political viewpoints that could be expressed.") (quoting *Reed*, 576 U.S. at 169).

Defendants' reliance on *Hill v. Colorado*, 530 U.S. 703 (2000), is also misplaced.  The statute in *Hill* was content-neutral because any inquiry as to affected speech would only be a

"cursory examination" of whether it fell into the regulated *categories*. *Id.* at 722. FOSTA requires

inquiry into both subject matter (whether, *e.g.* it involves prostitution) and perspective (whether,

*e.g.*, it "promotes" or "facilitates," as opposed to condemns or impedes). *See supra* 29.[21] As

explained in *McCullen*, 573 U.S. 464, a law is content based "if it require[s] 'enforcement

authorities' to 'examine the content of the message that is conveyed to determine whether' a

violation has occurred." *Id.* at 479 (quoting *FCC v. League of Women Voters of Cal.*, 489 U.S.

364, 383 (1984)).

Defendants' citation to *Democracy Partners v. Project Veritas Action Fund*, 453

F. Supp. 3d 261 (D.D.C. 2020), does not help their case either. Gov't Br. 24. That case involves

the Wiretap Act, which makes even less reference to content than the statute in *Hill*. *See* 18 U.S.C

§ 2511(1), (2)(c)-(d). While Defendants here (and in *Democracy Partners*) argued the Wiretap

Act can "require analysis of [] content … 'to determine whether [a] communication contains

confidential information," Gov't Mot. 24 (quoting 453 F. Supp. 3d 289), it was not the *Wiretap

Act* that required examination of any content or communication, or its tortious-purpose exception

to one-party consent, *see* 18 U.S.C. § 18 U.S.C. § 2(d), but rather the local law of *fiduciary duty*.

*See Democracy Partners*, 453 F. Supp. 286-87, 288-91.

Finally, any claim that FOSTA cannot be content-based because it "prohibit[s] conduct—

specifically, acting with the intent to promote or facilitate acts of illegal prostitution," Gov't Mot.

---

[21] The Court in *Hill* held the statute content-neutral because "[f]irst, … it is a regulation of
the places where some speech may occur," "[s]econd, it was not adopted because of disagreement
with the message," and "[t]hird, the State's interests [lied] in protecting access and privacy and,
… are unrelated to the content of … speech." 530 U.S. at 719-20 (internal quotation marks
omitted). *None* of those is true of FOSTA. It is not a time, place and manner regulation as in *Hill*,
but rather a ban on a specific type of speech, the government most definitely disagrees with favor-
ing (promoting/facilitating) prostitution in any way—in fact, it equates it with trafficking, *see* Pl.
Mot. 12, 29—and its interests lie directly with preventing the content from being communicated.

24, not only harks back to arguments dismantled in § I above, it would mean strict scrutiny can never apply to any law that purports to prohibit only "unprotected" speech.  That is obviously not the law.  *See supra* 28 (citing *Playboy Entm't Grp.*, 529 U.S. at 816; *AAPC*, 140 S. Ct. at 2347).  As Defendants admit, the "first step" in analyzing such laws is to analyze the breadth of speech regulated.  Gov't Mot. 17 (quoting *Williams*, 553 U.S. at 293).  It is *that* analysis which determines whether a statute is, in fact, limited to targeting what the statute and/or the government claim it targets.  *See*, *e.g.*, *Alvarez*, 567 U.S. at 722-23; *Stevens*, 559 U.S. at 474-77; *Free Speech Coal.*, 535 U.S. at 246-49; *Reno*, 521 U.S. at 871-72.  Foregoing that assessment and starting from an acceptance that a law reaches only unprotected speech turns the First Amendment analysis on its head.

### B.  FOSTA Does Not Satisfy Strict Scrutiny

The government's decision to punt on showing FOSTA cannot withstand strict scrutiny is unsurprising.  It is readily apparent the Defendants cannot prove the law is "narrowly tailored to promote a compelling Government interest" and that no "less restrictive alternative would serve [its] purpose," *Playboy Entm't Grp.*, 529 U.S. at 813; *Brown*, 564 U.S. at 799, such that it directly advances the asserted interest, *Reno*, 521 U.S. at 874, while limiting speech "no further than necessary to achieve th[a]t goal." *Ashcroft v. ACLU*, 542 U.S. at 666.  This burden cannot be met here because, as shown in Plaintiffs' summary judgment motion (at § II.B), even conceding a compelling interest in combating sex trafficking, FOSTA restricts substantially more speech than necessary.  *See Brown*, 564 U.S. at 805 (law is not narrowly tailored if either overinclusive or underinclusive).

Section 2421A reaches beyond sex trafficking to criminalize speech about consensual, adult sex work, and then includes speech that promotes sex workers' rights and safety and makes their jobs safer and easier.  This includes advocacy and education that arguably "facilitates"

prostitution, and the extent to which FOSTA equates speech about sex work with sex trafficking further illustrates lack of tailoring.  *See* Pl. Mot. 29.  Moreover, given the government's concession that FOSTA was enacted to target classified ad websites specifically, H.R. Rep. No. 115-572, pt. 1, at 3-6, it is overinclusive in applying to *every* online service, not just classified ad sites, and not just the "bad actor websites" among those.  *See* Pl. Mot. 29 (citing *Woodhull Freedom Found.*, 948 F.3d at 372; *Center for Democracy & Technology v. Pappert*, 337 F. Supp. 2d 606, 655 (E.D. Pa. 2004); *Cooper*, 939 F. Supp. 2d at 813).

There are also less speech-restrictive alternatives to FOSTA.  The government is "obligated" to "prove [such alternatives] will be ineffective to achieve its goals," *Playboy Entm't Grp.*, 529 U.S. at 816, but Defendants decline to make any such showing.  Less restrictive alternatives include enforcing existing law (subject to First Amendment limits and *mens rea* requirements meeting constitutional minima), such as 18 U.S.C. § 1591(a)(1), (a)(2), and the other laws that the Defendants claim (at Gov't Mot. 25) already cover unlawful conduct that FOSTA targets. *See* Pl. Mot. 29-30 (citing, *inter alia*, *Lynch*, 216 F. Supp. 3d at 108-09; *Playboy Entm't Grp.*, 529 U.S. at 816-26; *Free Speech Coal.*, 535 U.S. at 244-45; *Kingsley Int'l Pictures Corp. v. Regents of Univ. of N.Y.*, 360 U.S. 684, 689 (1959)).  By imposing additional prohibitions, heightened penalties for violations, and additional avenues of enforcement by state regulators and civil litigants, 18 U.S.C. § 1595(d); 47 U.S.C. § 230(e)(5), FOSTA is an exercise in regulatory overkill that the First Amendment prohibits, and that cannot survive strict judicial scrutiny.

### C.  FOSTA Would Fail Even Intermediate Scrutiny

FOSTA is unconstitutional even under Defendants' preferred intermediate scrutiny. *See* Gov't Mot. 26-27.  *Compare National Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2375 (2018) ("*NIFLA*") (finding law insufficiently tailored under intermediate scrutiny so as to not have to resolve whether strict scrutiny applied).  Intermediate scrutiny analysis, although

not as demanding as strict scrutiny, remains a rigorous test, still "demanding a close fit between ends and means." *McCullen*, 573 U.S. at 486. The law must directly advance important governmental interests and, like strict scrutiny, it must be "sufficiently drawn to achieve it." *NIFLA*, 138 S. Ct. at 2375. Also like strict scrutiny, intermediate scrutiny requires that the law not be significantly overinclusive, *McCullen*, 573 U.S. at 486 ("[T]he government still 'may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals.'") (quoting *Ward*, 491 U.S. at 799), nor "wildly underinclusive." *NIFLA*, 138 S. Ct. at 2375. And while strict scrutiny requires using the least restrictive means of achieving the government's interests, a law fails intermediate scrutiny when there are obvious less-restrictive alternatives available. *See id.* at 2376 (listing several alternatives); *McCullen*, 573 U.S. at 490-92 (finding a failure of intermediate scrutiny when the government had "too readily forgone options that could serve its interests just as well, without substantially burdening the kind of speech in which petitioners wish to engage").

As a result, just as in *Pappert*, where a law imposing liability on ISPs for online speech failed both strict and intermediate scrutiny, 337 F. Supp. 2d at 655, FOSTA fails intermediate scrutiny for the same reasons it fails strict scrutiny: substantial over-inclusiveness, *see supra* § II.A, and failure to employ less (even if not the "least") restrictive alternatives. *See supra* 33. The government justifies FOSTA as being needed to address the problem of online commercial advertising of sex trafficking, *see supra* 8 (citing Gov't Mot. 5, 26), yet it in no way limits its coverage to such speech, as prior legislation did (that was nevertheless invalidated as substantially overbroad). *See supra* 10. Instead, FOSTA includes much more than that, reaching any speech, that vaguely "promotes or facilitates the prostitution of another person," 18 U.S.C. § 2421A(a)-

34

(b), and it thereby substantially burdens the kind of speech in which Plaintiffs wish to engage—*none* of which is advertising for sex trafficking.  *See* Pl. Mot. 6-7, 33-35.

## IV.  FOSTA'S SELECTIVE REMOVAL OF IMMUNITY FOR INTERMEDIARIES VIOLATES THE FIRST AMENDMENT

Defendants broadly claim that FOSTA simply embodies a "policy choice" and that "[n]o court has ever held that the First Amendment confers a right to federal statutory immunity against State or private suits."  Gov't Mot. 32.  But this misses the point.  The Supreme Court has stressed that "[m]ere legislative preferences or beliefs respecting matters of public convenience" are "insufficient to justify such as diminishes the exercise of rights so vital to the maintenance of democratic institutions."  *Schneider v. Town of Irvington*, 308 U.S. 147, 161, 162 (1939).

With FOSTA, Congress wrote a law precisely designed to diminish the exercise of First Amendment rights.  It imposed the moderators' dilemma on platforms across the Internet not only by threatening liability for new and ill-defined offenses with vastly increased penalties but also by modifying § 230's immunity to heighten the *in terrorem* effect, and unleashing the threat of crushing civil liability.  The cumulative effect of these provisions—and the resulting chill on Internet speech—was the entire point of FOSTA.  *IMS Health, Inc.*, 564 U.S. at 565 ("the 'inevitable effect of a statute on its face may render it unconstitutional'").  FOSTA was designed to encourage intermediaries to self-censor on pain of being liable for their users' speech—the response by numerous interactive computer services to its passage was entirely predictable.  *E.g.*, SMF ¶¶ 1, 3, 6-9.

Courts have long recognized that online intermediaries are particularly vulnerable to threats of liability "given the volume of material communicated …, the difficulty of separating lawful from unlawful speech, and the relative lack of incentives to protect lawful speech."  *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 418-19 (1st Cir. 2007).  Forcing intermediaries to litigate to defend their First Amendment rights could itself undermine protected speech and

freedoms online, as risk-averse platforms would err on the side of removing the challenged user-generated speech rather than defend it.  Congress enacted § 230 to limit that threat, recognizing that Internet speech—including editorial freedom—would be stifled if online intermediaries faced the risk of civil or state criminal liability, including simply litigation risks, for speech posted by third parties.  In other words, CDA § 230 was designed to, and did, uphold preexisting First Amendment principles in the online context.

Here, by removing § 230 immunities after two decades, specifically authorizing new penalties, and creating new causes of action, Congress inevitably and predictably eroded the First Amendment protections upon which intermediaries have long relied.  In this context, Congress cannot dismantle a statutory implementation of First Amendment protections without constitutional consequences.  For example, if the federal government had adopted a law to preserve First Amendment values online by barring private claims against online indecency, Congress might later decide as a matter of "policy" to eliminate that statutory bar—but any such claims would still violate the First Amendment.

That is why FOSTA's provisions, including its selective modification of § 230, are unconstitutional.  Courts have held in a variety of contexts that using the threat of liability to intimidate private entities to self-censor can violate the First Amendment.  *See e.g.*, *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963); *Denver Area Educ. Telecomms. Consortium v. FCC*, 518 U.S. 727 (1996); *Midwest Video v. FCC*, 571 F.2d 1025, 1056 (8th Cir. 1978); *Pappert*, 337 F. Supp. 2d at 649-50.  In *Smith v California*, for example, the Supreme Court recognized that regulations that have the collateral effect of "inhibiting the freedom of expression by making the individual more reluctant to exercise it" are inconsistent with the Constitution.  There, an ordinance that imposed

strict liability on booksellers for obscene material would necessarily pressure them to over-censor

the books on their shelves.  As a result,

> [T]he bookseller's burden would become the public's burden, for by restricting
> him the public's access to reading matter would be restricted…. The book-
> seller's limitation in the amount of reading material with which he could
> familiarize himself, and his timidity in the face of his absolute criminal liability,
> thus would tend to restrict the public's access to forms of the printed word
> which the State could not constitutionally suppress directly.  The bookseller's
> self-censorship, compelled by the State, would be a censorship affecting the
> whole public, hardly less virulent for being privately administered.

361 U.S. at 153-54.

The concerns expressed in *Smith* are even more relevant for online intermediaries, and it

makes FOSTA's withdrawal of § 230 immunities in combination with heightened penalties

particularly pernicious.  Courts have consistently upheld protections for editorial freedom on

behalf of social media platforms, including recent decisions of the Ninth and D.C. Circuits.  *See*

*Prager Univ. v. Google LLC*, 951 F.3d 991, 996-97 (9th Cir. 2020) ("These are not antiquated

principles that have lost their vitality in the digital age."); *Freedom Watch, Inc. v. Google Inc.*, 816

F. App'x 497, 499-500 (D.C. Cir. 2020) (*per curiam*) (rejecting claim against YouTube for

allegedly suppressing conservative political views).  Even if Congress chooses to ignore these

constitutional principles as a matter of "policy," it does not make those First Amendment

protections disappear. *e-ventures Worldwide, LLC v. Google, Inc.*, 2017 WL 2210029, at *4 (M.D.

Fla. Feb. 8, 2017) (even if § 230 does not apply, the exercise of online editorial discretion is "the

same as decisions by a newspaper editor regarding which content to publish, which article belongs

on the front page, and which article is unworthy of publication").

Given the specific challenges inherent to online intermediaries (volume of speech and

difficulty of drawing easy lines), FOSTA amounts to the digital equivalent of the ordinance in

*Smith*:  a huge incentive for privately administered self-censorship affecting the whole public.  It

defies reason to insist, as the government does, that the widespread censorship that followed FOSTA's passage was "the result of the websites' market-based assessments of the relative costs and benefits of maintaining certain content on their sites," or mere "private corporate decisions." Gov't Mot. 33.   Given the vague and expansive prohibitions of the law, combined with the selective withdrawal of § 230 immunity, the chilling effect generated by FOSTA is the direct result of an unconstitutional law.   *See* SMF ¶¶ 1, 6-9, 11-14, 18, 22-25.

## V.   FOSTA VIOLATES THE *EX POST FACTO* CLAUSE

This Court can enjoin FOSTA as an *ex post facto* law—it need not wait for an actual prosecution.   FOSTA's effect, rather than the pre-enforcement nature of this case, determines its unconstitutionality under the *Ex Post Facto* Clause.   *See Carmell v. Texas*, 529 U.S. 513, 520 ("The critical question … is whether the law changes the legal consequences of acts completed before its effective date.") (quoting *Weaver v. Graham*, 450 U.S. 24, 31 (1981)).   FOSTA § 4(b) permits the DOJ to prosecute individuals under § 2421A for conduct that occurred prior to the law's enactment.   *Stogner v. California*, 539 U.S. 607, 615 (2003).   It also creates criminal liability for past conduct under state laws that mirror § 2421A, and increases punishment should defendants be convicted under state laws similar to § 1591(b).   Pl. Mot. 30-32.

Once again, the very cases upon which Defendants rely actually support Plaintiffs' claim. Gov't Mot. 36-37 (citing *United States v. Alvaran-Velez*, 914 F.3d 665, 668 (D.C. Cir. 2019); *Daniel v. Fulwood*, 766 F.3d 57, 60 (D.C. Cir. 2014); *Fletcher v. Reilly*, 433 F.3d 867, 869 (D.C. Cir. 2006)).   The D.C. Circuit has repeatedly held that claimants bringing *ex post facto* challenges can meet their burden to show the challenged law or regulation creates a significant risk of increased punishment in two ways:   (1) identifying "*facial* distinctions between the old and new" laws, guidelines, or regulations, or (2) showing the law's "practical effect" on the law on their punishment.   *Fletcher*, 433 F.3d at 877 (emphasis added).   *See Fulwood*, 766 F.3d at 62 (holding

"plaintiffs' strongest argument in support of their ex post facto claim" was identification of facial distinctions between sentencing guidelines issued in 1972 and 2000 that "create[d] a presumption of a long period of extended incarceration in their cases, while the 1972 Guidelines would not have done so").[22]

Plaintiffs satisfy this burden by identifying facial distinctions in FOSTA that either create new criminal liability or increase the potential punishment for conduct that occurred prior to the law's passage.  Pl. Mot. 30-32.  The Department of Justice identified these facial distinctions in warning Congress that FOSTA was an *ex post facto* law.  U.S. DEPT. OF JUSTICE OFFICE OF LEGIS-LATIVE AFFAIRS, Mem. to Hon. Robert Goodlatte, Chairman, U.S. House of Representatives Committee of the Judiciary (Feb. 27, 2018).

More generally, Defendants' argument conflicts with well-settled law that facial challenges to statutes based on constitutional claims "are not categorically barred or especially disfavored." *City of Los Angeles v. Patel*, 576 U.S. 409, 415 (2015).  The Supreme Court "has never held that [facial challenges] cannot be brought under any otherwise enforceable provision of the Constitution."  *Id*. (confirming that parties can bring facial challenges under the Fourth Amendment and collecting cases permitting facial challenges under the First Amendment, Second Amendment, Due Process Clause of the Fourteenth Amendment, and the Foreign Commerce Clause).

The government offers no authority—and Plaintiffs are unaware of any—that explicitly prohibits pre-enforcement challenges to *ex post facto* laws.  The limitation that Defendants posit is also illogical:  it would permit facial challenges based on other constitutional provisions, but not

---

[22]  Defendants misread *Fletcher*'s discussion of how parties can show a regulation's "practical effect" on them—the second avenue by which parties can demonstrate that they face a significant risk of greater punishment—to argue that **all** *ex post facto* violations "can only be assessed on a case-by-case basis after the prosecution or civil action has commenced."  Gov't Mot. 37.  None of the cases the government relies on support that broad proposition.

the *Ex Post Facto* Clauses, which the Founders "considered to be 'perhaps greater securities to liberty and republicanism than any [the Constitution] contains.'" *Carmell*, 529 U.S. at 521 (quoting THE FEDERALIST No. 84, at 511 (Alexander Hamilton) (Clinton Rossiter ed., 1961)).

It is clear, moreover, that the government seeks to invent procedural barriers to Plaintiffs' *ex post facto* claim because it cannot defend the merits of FOSTA's unconstitutional retroactivity. *Stogner*, 539 U.S. at 610 ("The Constitution's two *Ex Post Facto* Clauses prohibit the Federal Government and the States from *enacting* laws with … retroactive effects.") (emphasis added). Defendants admit FOSTA is an *ex post facto* law, but argue that DOJ, state, and local prosecutors "can avoid any ex post facto problem … by pursuing only newly prosecutable conduct that takes place after FOSTA's enactment." Gov't Mot. 37.

This "trust us" argument falls far short. Courts have repeatedly rejected government promises to not enforce otherwise unconstitutional laws, including in similar challenges to unconstitutional Internet-based speech restrictions. *See Reno v. ACLU*, 929 F. Supp. 824, 857 (E.D. Pa. 1996) (Sloviter, J.) (asking to "trust [DOJ] to limit the CDA's application in a reasonable fashion … would require a broad trust indeed from a generation of judges not far removed from the attacks on James Joyce's ULYSSES as obscene"), *aff'd*, 521 U.S. 844.  The Supreme Court likewise has rejected such appeals to prosecutorial discretion, observing that "[w]e would not uphold an unconstitutional statute merely because the Government promised to use it responsibly." *Stevens*, 559 U.S. at 480 ("[T]he First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*.").  The D.C. Circuit has recognized as much in this case: "there is nothing that prevents the [Department] from changing its mind." *Woodhull Freedom Found.*, 948 F.3d at 373 (quoting *Vt. Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 383 (2d Cir. 2000)).

Even if DOJ could be held to its promise to not enforce FOSTA retroactively, it has no legal authority to hold state and local prosecutors to any such assurance.  States already have shown an intention to implement FOSTA.  Pl. Mot. at 30-32 (describing how Texas in 2019 enacted a law modeled after § 2421A and how Mississippi and Nevada's trafficking statutes carry greater penalties than § 1591).  And state law enforcement officials have gone on record *in this case* as to their desire to use FOSTA to its fullest extent, rendering it unnecessary to show state prosecutors have brought charges under these laws.  *Brief of the States of Texas, et al.*, 2019 WL 1773389 at 9-10 (D.C. Cir. Apr. 22, 2019).

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendants' motion for summary judgment and instead declare FOSTA unconstitutional on the grounds set forth herein and enjoin enforcement of 18 U.S.C. § 2421A and the amendments to 18 U.S.C. §§ 1591 and 1595 and 47 U.S.C. § 230 that FOSTA enacted.

DATED:  October 9, 2020

Respectfully submitted,

_____/s/ Robert Corn-Revere_____
ROBERT CORN-REVERE
D.C. Bar No. 375415
RONALD G. LONDON
D.C. Bar No. 456284
**Davis Wright Tremaine LLP**
1301 K Street, NW, Suite 500 East
Washington, D.C. 20005
Telephone: (202) 973-4200
Facsimile: (202) 973-4499
Email: bobcornrevere@dwt.com
        ronnielondon@dwt.com

41

LAWRENCE G. WALTERS
Florida Bar No.: 0776599
*Pro Hac Vice*
**Walters Law Group**
195 W. Pine Ave.
Longwood, FL 32750-4104
Telephone: (407) 975-9150
Facsimile: (408) 774-6151
Email: Larry@FirstAmendment.com
      Paralegal@FirstAmendment.com

AARON MACKEY
D.C. Bar No. 1017004
DAVID GREENE
(admitted in California)
*Pro Hac Vice*
CORYNNE MCSHERRY
(admitted in California)
**Electronic Frontier Foundation**
815 Eddy Street
San Francisco, CA 94109
(415) 436-9333
Email:  amackey@eff.org
  davidg@eff.org

DAPHNE KELLER
Cal. Bar No. 226614
**Stanford Cyber Law Center**
616 Jane Stanford Way #E016
Stanford, CA 94305
(650) 725-0325
Email:  daphnek@stanford.edu

Attorneys for Plaintiffs