IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WOODHULL FREEDOM,
FOUNDATION, *et al.*,

        *Plaintiffs*,

v.

UNITED STATES OF AMERICA, *et al.*,

        *Defendants*.

Case No. 1:18-CV-1552-RJL

**PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT
OF MATERIAL FACTS NOT IN DISPUTE**

Pursuant to Local Civil Rule 7(h)(1) of the Rules of the United States District Court for the District of Columbia, Plaintiffs, Woodhull Freedom Foundation, Human Rights Watch, Eric Koszyk, Jesse Maley a/k/a Alex Andrews, and The Internet Archive, hereby respond to the statement of material facts as to which Defendants contend there is no genuine issue in connection with their motion for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure.

    **1.**    Congress enacted, and the President signed into law, the Allow States and Victims to Fight Online Sex Trafficking Act of 2017 ("FOSTA"), Pub. L. No. 115-164, 132 Stat. 1253, on April 11, 2018.

    Admitted.

    **2.**    Before FOSTA, Congress established federal criminal laws that prohibited sex trafficking and related conduct. The Travel Act, enacted in 1961, prohibits the use of "any facility in interstate or foreign commerce, with intent to . . . promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity," including unlawful prostitution and sex trafficking. 18 U.S.C. § 1952(a)(3). The Trafficking Victims Protection Act ("TVPA"), originally enacted in 2000,

**prohibits sex trafficking of children or sex trafficking of adults by means of force, fraud, or coercion. 18 U.S.C. § 1591(a).**

These partial quotations from other federal statutes represent characterizations of law, not fact, to which no response is required; to the extent a response is required, Plaintiffs admit.

**3.    The Travel Act and TVPA encompass criminal conduct that occurs online.** *See, e.g., United States v. Halloran*, **821 F.3d 321, 342 (2d Cir. 2016) (explaining that, under the "Travel Act, the government was required to prove that [the defendant] traveled interstate or used a facility in interstate commerce (e.g., the telephone or the internet)").**

This represents a characterization of law to which no response is required; to the extent a response is required, the referenced statutes and Second Circuit decision speak for themselves.

**4.    The federal government has never attempted to prosecute a website owner, operator, or manager under these laws on the ground that a website hosted content that advocated for or disseminated information and resources to sex workers, or advertised legitimate massage therapy services.**

Plaintiffs can neither admit nor dispute this statement, because the reference to "these laws" is vague, as is the statement the government "has never attempted to prosecute a website owner" under them.  Plaintiffs lack information necessary to either admit or dispute this statement, but note it is not material to disposition of the summary judgment motions.

**5.    Congress also established a civil right of action for sex trafficking victims.  The provision, enacted in 2003, authorizes victims of sex trafficking to file civil suits against their "perpetrator" or anyone else who "knowingly benefits, financially or by receiving anything of value from participation" in sex trafficking. 18 U.S.C. § 1595(a).**

These represent statements of law, not fact, to which no response is required; to the extent a response is required, Plaintiffs admit some provisions relating to trafficking were enacted in 2003.

**6.    Since those laws were enacted, there has been a substantial increase in illegal online transactions involving sex trafficking of children and adults.  Between 2010 and 2015, there was an 846% increase in suspected sex trafficking, which was "directly correlated to the increased use of the Internet to sell children for sex."**  *See* **U.S. Senate, Permanent Subcomm. on Investigations,** *Backpage.com's Knowing Facilitation of Online Sex Trafficking*, **at 4 (citing November 19, 2015 testimony of Yiota G. Souras, Senior Vice President & General Counsel, National Center for Missing & Exploited Children ("NCMEC")),** *available*

*at* https://go.usa.gov/xmgPW ("Senate Investigation Report"); *see also* **U.S. Dep't of Justice,** ***The National Strategy for Child Exploitation Prevention and Interdiction***, **at 4, 10, 68, 76-77 (Apr. 2016) (stating that the Internet "has become a thriving marketplace for selling children for sex" and "[w]ebsites like Backpage.com have emerged as a primary vehicle for the advertisement of children to engage in prostitution."),** *available at* **https://go.usa.gov/xmgPA; H.R. Rep. No. 115-572(I), at 3 (2018) (explaining that websites, "including online classified sites like Backpage.com, Eros, Massage Troll, and cityxguide, have . . . become one of the primary channels of sex trafficking"); 164 Cong. Rec. H1292 (daily ed. Feb. 27, 2018) (statement of Rep. Jackson Lee) ("local law enforcement in Seattle, Washington have identified more than 130 websites where mostly women and children are bought and sold for sex").**

Plaintiffs can neither admit nor dispute these statements on grounds that "those laws" is vague, that elements of the underlying substance of these statements are also vague, conclusory, and/or constitute hearsay. Plaintiffs lack information necessary to either admit or dispute their underlying substance. Plaintiffs also object that the purported "Senate Investigation Report" is not admissible as evidence.[1] To the extent a response is required, Plaintiffs admit the referenced documents include the quoted language, but Plaintiffs lack information necessary to admit or dispute the substance of the statements in those documents. Plaintiffs note that the statements are not material to disposition of the summary judgment motions.

**7.     The "criminal industry" of sex trafficking globally generates "$99 billion a year— with a considerable portion of that money being generated through online advertising and solicitation."** *Id.***;** *cf.* **International Labor Office,** *Profits and Poverty: The Economics of Forced Labor* **27 (2014),** *available at* **https://www.ilo.org/wcmsp5/groups/public/---ed norm/--- declaration/documents/publication/wcms_243391.pdf ("The total annual profits made from forced sexual exploitation are estimated at US$99 billion worldwide," with the highest annual profits per victim in Developed Economies (US$80,000), "due to the high average price of sexual encounters."). Moreover, according to the Human Trafficking Institute, over 80% of federal sex trafficking prosecutions between 2015 and 2020 involved online**

---

[1] *See*, *e.g.*, *Baker v. Firestone Tire & Rubber Co.*, 793 F.2d 1196, 1199 (11th Cir. 1986) (Congressional reports comprising "heated conclusions of a politically motivated hearing" should be excluded); *Pearce v. E.F. Hutton Grp., Inc.*, 653 F. Supp. 810, 813-16 (D.D.C. 1987) ("evidence … mostly comprised of the Subcommittee's subjective comments, criticisms, arguments, and evaluations" should be excluded); *Bright v. Firestone Tire & Rubber Co.*, 756 F.2d 19, 22-23 (6th Cir. 1984) (*per curiam*) (excluding House subcommittee report as inadmissible). *Cf. Pearce*, 653 F. Supp. at 814 ("Given the obviously political nature …, it is questionable whether any report by a committee or subcommittee of [Congress] could be admitted … against a private party.").

**advertising.** *See* **Human Trafficking Institute,** *2019 Federal Human Trafficking Report***, at 28,** *available at* **https://www.traffickinginstitute.org/federal-human-trafficking-report-2019/.**

Plaintiffs lack information necessary to either admit or dispute the underlying substance of these statements on grounds that these statements include vague and/or inaccessible citations, and that elements of the underlying substance of these statements are vague, conclusory, and/or constitute hearsay. To the extent a response is required, Plaintiffs admit the referenced documents (to the extent accessible) include statements defendants quote, but note the statements are not material to disposition of the summary judgment motions.

**8.    The website Backpage.com ("Backpage")—a site that "reportedly net more than 80% of all revenue from online commercial sex advertising in the United States"—was found to take intentional measures to help sex traffickers avoid detection when posting advertisements online for commercial sex, and to be aware that its site facilitated child sex trafficking.** *See* **Senate Investigation Report, at 5-6, 17-41; 164 Cong. Rec. H1278 (statement of Rep. Slaughter); H.R. Rep. 115-571(1), at 3-4;** *see also* **Indictment [ECF 3],** *United States v. Lacey***, No. 2:18-cr-422 (D. Ariz. filed Mar. 28, 2018) (describing extensive criminal conduct by Backpage officers and employees).**

Plaintiffs lack information necessary to either admit or dispute the underlying substance of these statements on grounds that elements of the underlying substance of these statements are vague, conclusory, represent unproven allegations, and/or constitute hearsay. Plaintiffs also object that the Senate Investigation Report is not admissible as evidence. *See supra* note 1 (citing cases). To the extent a response is required, Plaintiffs admit the referenced documents include the statements Defendants quote but note the statements are not material to disposition of the summary judgment motions.

**9.    Prior to FOSTA's enactment, State and local efforts to prosecute websites such as Backpage for intentionally or knowingly facilitating sex trafficking crimes, and individual attempts to invoke the right of action in 18 U.S.C. § 1595, were frustrated by 47 U.S.C. § 230(c)(1), a provision that Congress had originally established in 1996, as part of Title V of the Telecommunications Act of 1996, Pub. L. 104-104, 110 Stat. 56, known as the Communications Decency Act ("CDA"). Section 230(c)(1) acts as a liability shield for websites, providing that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Citing this provision, a number of courts granted**

**injunctions barring State criminal action or dismissed cases brought by State and local prosecutors and by individuals against websites based on their alleged role in sex trafficking crimes.** *Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 15 (1st Cir. 2016); *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1275 (W.D. Wash. 2012); *M.A. ex rel. P.K. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1053 (E.D. Mo. 2011) *Backpage.com, LLC v. Hoffman*, No. 13-cv-3952, 2013 WL 4502097, at *6-7 (D. N.J. Aug. 20, 2013); *Backpage.com, LLC v. Cooper*, No. 3:12-cv-654, 2013 WL 1249063, at *1 (M.D. Tenn. Mar. 27, 2013).

These partial quotations from another federal statute and references to various cases represent characterizations of law, not fact, to which no response is required. To the extent a response is called for, Plaintiffs acknowledge that 47 U.S.C. § 230(c)(1) is accurately quoted, was adopted as stated, and serves the purpose indicated. Defendants' characterization of cases (which speak for themselves) is inaccurate and incomplete. Plaintiffs acknowledge that the cited cases applied Section 230, but deny that any of the cases represent "State and local efforts to prosecute websites." In particular, *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262 (W.D. Wash. 2012); *Backpage.com, LLC v. Hoffman*, No. 13-cv-3952, 2013 WL 4502097 (D.N.J. Aug. 20, 2013); and *Backpage.com, LLC v. Cooper*, No. 3:12-cv-654, 2013 WL 1249063 (M.D. Tenn. Mar. 27, 2013) were not "efforts to prosecute websites," but involved pre-enforcement challenges where the courts each held that the laws seeking to target websites for "trafficking" violated the First Amendment because they were unconstitutionally vague, overbroad, and lacked necessary scienter. Plaintiffs note that these are not statements of fact material to disposition of the summary judgment motions.

**10.    Section 230(c)(1) has never applied to federal criminal prosecutions. 47 U.S.C. § 230(e)(1) ("Nothing in this section shall be construed to impair the enforcement of . . . any . . . Federal criminal statute."). Thus, the federal government has always been and remains able to prosecute sex trafficking crimes, pursuant to § 1591(a) and the Travel Act, when they occur online, including against website publishers that use their websites with the intent to promote or facilitate sex trafficking. For example, the federal government indicted the website operator of MyRedbook.com under the Travel Act and 18 U.S.C. § 2 (aiding and abetting), among other charges, for the alleged promotion and facilitation of sex trafficking. See Indictment [ECF 1] (filed June 24, 2014) & Sentencing Memorandum [ECF 70] (filed**

May 14, 2015), *United States v. Omuro*, No. 3:14-cr-00336 (N.D. Cal.); *see also* **Indictment,** *Lacey*, *supra*.

The first two sentences represent statements of law, not fact, to which no response is required. To the extent a response is required, Plaintiffs acknowledge the partial quotation from 47 U.S.C. § 230(e)(1) is materially accurate. As to the third sentence, Plaintiffs admit that the federal government brought the cited indictments.

**11.     However, the vast majority of crimes are prosecuted at the State and local level. 164 Cong. Rec. S1854 (statement of Sen. McCaskill) (stating that "upwards of 90 percent of the crime that is prosecuted in this country is done by local prosecutors").**

Plaintiffs lack information necessary to either admit or dispute this statement, and to that extent dispute, while noting the statement is not material to disposition of the summary judgment motions.

**12.     Congress has a compelling interest in combatting illegal prostitution and sex trafficking online and the role of "bad-actor" websites in connection with such crimes. FOSTA represents Congress's policy decision that those compelling interests outweigh any interest in shielding such websites from State criminal liability or federal civil rights of action when those websites act illegally in connection with sex trafficking.** *See Doe No. 1*, **817 F.3d at 29 (explaining that Congress could amend § 230 if it deemed the evils targeted by § 1595 to "outweigh" the values underlying § 230, and to justify civil suits by victims of sex trafficking against internet publishers such as Backpage that "tailor[] [their] website[s] to make sex trafficking easier"); H.R. Rep. No. 115-572(1), at 3-6 (Feb. 20, 2018) (FOSTA "is designed to combat online sex trafficking by providing new tools to law enforcement through a new federal criminal statute and by making it easier for states to prosecute criminal actor websites"); 164 Cong. Rec. H1277-03, H1277-78 (daily ed. Feb. 27, 2018) (statement of Rep. Collins) (when enacting § 230, Congress "never intended to shield websites that profit by creating a marketplace for sexual slavery, like Backpage.com, from facing the legal consequences of their criminal enterprises");** *id.* **at H1278 (statement of Rep. Slaughter) (explaining that "courts weren't able to help [sex trafficking] victims, instead encouraging them to pursue legislative changes, and that brings us here today");** *id.* **(statement of Rep. Wagner) ("Congress never intended to create a system that allows businesses to commit crimes online that they could not commit offline."); 164 Cong. Rec. H1291 (statement of Rep. Jackson Lee) (citing "letter to Congress from the National Association of Attorneys General" indicating that federal courts' interpretations of § 230 have "left victims and State and local law enforcement agencies and prosecutors, who regularly confront the cruel realities of sex trafficking, feeling powerless against online ad services and websites that facilitate or allow sex trafficking"); 164 Cong. Rec. S1852 (daily ed. Mar. 21, 2018) (statement of Sen. Blumenthal) (purpose of FOSTA is to "give survivors their day in court" and to clarify that § 230 "was never intended to give websites a free pass to aid and abet sex trafficking" or**

"immunize completely those websites so they could knowingly facilitate sex trafficking"); 164 Cong. Rec. S1853 (statement of Sen. Heitkamp) (explaining CDA should not "protect[] [websites] from prosecution or protect[] them from civil penalty if they were complicit and, in fact, abetted [sex trafficking] crimes"). FOSTA § 2 (stating the "sense of Congress" that § 230 "was never intended to provide legal protection to websites that unlawfully promote and facilitate prostitution and websites that facilitate traffickers in advertising the sale of unlawful sex acts with sex trafficking victims" and that "websites that promote and facilitate prostitution have been reckless in allowing the sale of sex trafficking victims and have done nothing to prevent the trafficking of children and victims of force, fraud, and coercion"); Attorney General's Annual Report to Congress on U.S. Government Activities to Combat Trafficking in Persons, at vii (FY 2018) (describing FOSTA as "allow[ing] state criminal actions against websites and technology platforms for their intentional facilitation of sex trafficking or prostitution, as well as federal civil suits against such entities for conduct related to sex trafficking"), *available at* https://www.justice.gov/humantrafficking/attorney-generals-trafficking-persons-report.

The cited statements are arguments based on legislative history and case law, not statements of fact to which a response is required. As to the first two sentences of this statement, Plaintiffs do not dispute there is a compelling governmental interest in combatting sex trafficking. Regarding particular statements, Plaintiffs acknowledge the court in *Doe No. 1. v. Backpage.com, LLC*, 817 F.3d 12, 29 (1st Cir. 2016), suggested that concerns about the CDA should be addressed legislatively not judicially, but dispute the partial characterization of the holding, which in any event is immaterial to the motions for summary judgment. As to the statement's recitation of FOSTA's legislative history and the Attorney General report, elements of the underlying substance quoted are vague, conclusory, and/or constitute hearsay, such that Plaintiffs lack information necessary to either admit or dispute their underlying substance. To the extent a response is required, Plaintiffs admit the referenced documents state what these statements purport them to state, but deny the substance of the statements in those documents while noting these statements of legislative history are not material to disposition of the summary judgment motions. *Cf. Zedner v. United States*, 547 U.S. 489, 511 (2006) (Scalia, J., concurring in the judgment) ("use of legislative history is illegitimate and ill advised in the interpretation of any statute"); *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1747 (2020) ("Arguments based on subsequent legislative

history … should not be taken seriously, not even in a footnote") (quoting *Sullivan* v. *Finkelstein*, 496 U. S. 617, 632 (1990) (Scalia, J., concurring)). Plaintiffs admit that the partially quoted language from FOSTA § 2 appears in the legislation, but note it is not material to disposition of the summary judgment motions.

**13. Criminal laws targeting the online illegal prostitution of another person also serve the government's compelling interest in combatting sex trafficking. "[O]nline advertisements rarely, if ever, indicate that sex trafficking is involved. The advertisements neither directly nor implicitly state that force, fraud, or coercion was used against the victim, nor do they say that the person depicted being prostituted is actually under the age of 18. Because these indicia of knowledge of criminality are typically lacking in the advertisements, federal prosecutors usually cannot demonstrate beyond a reasonable doubt that the website operators knew that the advertisements involved sex trafficking. Further, general knowledge that sex trafficking occurs on a website will not suffice as the knowledge element must be proven as to a specific victim. A new statute that instead targets promotion and facilitation of prostitution is far more useful to prosecutors." H.R. Rep. No. 115-572, pt. 1, at 5 (Feb. 20, 2018).**

The cited statements are arguments based on legislative history, not statements of fact to which a response is required. As to the statement's recitation of FOSTA's legislative history, elements of the underlying substance quoted are vague, conclusory, and/or constitute hearsay, such that Plaintiffs lack information necessary to either admit or dispute their underlying substance. To the extent a response is required, Plaintiffs admit the referenced document states what the statement purports it to state, but deny the substance of the statements while noting these statements of legislative history are not material to disposition of the summary judgment motions. *Cf. Zedner*, 547 U.S. at 511 (Scalia, J., concurring in the judgment); *Bostock*, 140 S. Ct. at 1747. Finally, Plaintiffs note the cited statements are an admission that FOSTA reduced the level of scienter required to prosecute online intermediaries.

**14.    FOSTA amended three existing statutes and enacted a fourth.**

This represents a statement of law, not fact, to which no response is required; to the extent a response is required, Plaintiffs admit.

**15.     FOSTA added subsection (e)(5) to 47 U.S.C. § 230 … [block-quote of statute and citation omitted]**

This represents a statement of law, not fact, to which no response is required; to the extent a response is required, Plaintiffs admit.

**16.     FOSTA also added a Note to § 230, stating … [block-quote of statute and citation omitted]**

This represents a statement of law, not fact, to which no response is required; to the extent a response is required, Plaintiffs admit.

**17.     In a March 23, 2018 letter submitted to the Office of Management and Budget, the Department of Justice indicated that it supported FOSTA's passage and that State prosecutors could avoid any *ex post facto* concern, in connection with the amendments to § 230, by "pursuing only newly prosecutable criminal conduct that takes place after the bill is enacted."** *See* **U.S. Dep't of Justice Office of Legislative Affairs, Letter to Hon. Mick Mulvaney, Director, Office of Management and Budget (Mar. 23, 2018) ("March 23, 2018 Letter") [ECF 15-1], at 2.**

Plaintiffs admit that the referenced letter was submitted to OMB, and that the content as described in the statement appears in the letter, while noting that it is either immaterial to the issues on summary judgment, or if material, Plaintiffs dispute that the letter ameliorates FOSTA's *ex post facto* failings.

**18.     FOSTA added subsection (d) to 18 U.S.C. § 1595 … [block-quote of statute and citation omitted]**

This represents a statement of law, not fact, to which no response is required; to the extent a response is required, Plaintiffs admit.

**19.     FOSTA enacted 18 U.S.C. § 2421A …. [block-quote of statute and citation omitted]**

This represents a statement of law, not fact, to which no response is required; to the extent a response is required, Plaintiffs admit.

**20.     The conducted prohibited by 18 U.S.C. § 2421A was already prohibited by the Travel Act, 18 U.S.C. § 1952.**

This represents a statement of law, not fact, to which no response is required; to the extent a response is required, Plaintiffs acknowledge that online platforms could be subject to prosecution under the Travel Act.  However, the statement is incomplete and inaccurate because 18 U.S.C. § 2421A applies to a broader range of activity than the Travel Act.

**21.     FOSTA added a definition of "participation in a venture" to 18 U.S.C. § 1591, defining the phrase as "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)." 18 U.S.C. § 1591(e)(4) (added by FOSTA § 5).**

This represents a statement of law, not fact, to which no response is required; to the extent a response is required, Plaintiffs admit the definition was added by FOSTA.  However, the statement is incomplete and inaccurate because it does not discuss how the change affects potential liability under 18 U.S.C. § 1591(a) (2).

**22.     FOSTA "was not designed to target websites that spread harm reduction information"—information about how individuals involved in the "commercial sex trade can avoid violence, prevent HIV, and access community and support services." 164 Cong. Rec. S1852 (daily ed. Mar. 21, 2018) (statement of Sen. Blumenthal). Since FOSTA's enactment, its provisions have not been used by the federal government, States, or individuals to bring suit against websites on the ground that the websites hosted content that advocated for or disseminated information and resources to sex workers, or advertised legitimate massage therapy services.**

The first sentence of this statement is a quotation of legislative history, not fact, such that no response is required; to the extent a response is required, Plaintiffs dispute, while noting such statements of legislative history are immaterial.  *Cf. Zedner*, 547 U.S. at 511 (Scalia, J., concurring in the judgment); *Bostock*, 140 S. Ct. at 1747.  The remainder of the statement is immaterial to the summary judgment motions, and no response is required.  *See also* response to No. 4, *supra*.

DATED:  October 9, 2020

                           Respectfully submitted,

                           <u>    /s/ Robert Corn-Revere           </u>
                           ROBERT CORN-REVERE
                           D.C. Bar No. 375415
                           RONALD G. LONDON
                           D.C. Bar No. 456284
                           **Davis Wright Tremaine LLP**
                           1301 K Street, NW, Suite 500 East
                           Washington, D.C. 20005
                           Telephone: (202) 973-4200
                           Facsimile: (202) 973-4499
                           Email: bobcornrevere@dwt.com
                           ronnielondon@dwt.com

                           LAWRENCE G. WALTERS
                           Florida Bar No.: 0776599
                           *Pro Hac Vice*
                           **Walters Law Group**
                           195 W. Pine Ave.
                           Longwood, FL 32750-4104
                           Telephone: (407) 975-9150
                           Facsimile: (408) 774-6151
                           Email: Larry@FirstAmendment.com
                           Paralegal@FirstAmendment.com

                           AARON MACKEY
                           D.C. Bar No. 1017004
                           DAVID GREENE
                           (admitted in California)
                           *Pro Hac Vice*
                           CORYNNE MCSHERRY
                           (admitted in California)
                           **Electronic Frontier Foundation**
                           815 Eddy Street
                           San Francisco, CA 94109
                           (415) 436-9333
                           Email:  amackey@eff.org
                           davidg@eff.org

DAPHNE KELLER
Cal. Bar No. 226614
**Stanford Cyber Law Center**
616 Jane Stanford Way #E016
Stanford, CA 94305
(650) 725-0325
Email:  daphnek@stanford.edu

Attorneys for Plaintiffs