## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WOODHULL FREEDOM FOUNDATION, | ) | |
| HUMAN RIGHTS WATCH, ERIC KOSZYK, | ) | |
| JESSE MALEY, a/k/a ALEX ANDREWS, and | ) | |
| THE INTERNET ARCHIVE, | ) | |
| | ) | Case No. 1:18-cv-1552 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA | ) | |
| and WILLIAM P. BARR, in his official | ) | |
| capacity as ATTORNEY GENERAL | ) | |
| OF THE UNITED STATES, | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY TO DEFENDANTS' OPPOSITION TO
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION .............................................................................................. 1

ARGUMENT ..................................................................................................... 2

I.    THE GOVERNMENT'S DEFENSE OF FOSTA IS BUILT ON THREE CORE
      FALLACIES ............................................................................................... 2

      A.   The Government Incorrectly Contends that FOSTA Does Not Regulate Speech ........ 2

      B.   The Government Incorrectly Assumes FOSTA's Constitutional Validity is
           Affirmed by the Validity of Other Laws ..................................................... 6

      C.   The Government Incorrectly Assumes that FOSTA's Scienter Provisions Cure
           Overbreadth and Vagueness ..................................................................... 9

II.   FOSTA VIOLATES THE FIRST AMENDMENT ........................................... 10

      A.   FOSTA is Facially Overbroad ................................................................. 10

      B.   FOSTA is Unconstitutionally Vague ......................................................... 13

      C.   FOSTA Lacks Adequate Scienter Requirements ........................................ 16

      D.   FOSTA Cannot Satisfy Strict Scrutiny ..................................................... 17

      E.   FOSTA Unconstitutionally Burdens Online Intermediaries ......................... 20

III.  PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT INVALIDATING
      FOSTA'S *EX POST FACTO* PROVISIONS .................................................. 22

IV.   THERE IS NO REASON TO STAY PROCEEDINGS OR TO APPLY RULE 56(d) ... 23

CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A.N.S.W.E.R. Coal. (Act Now to Stop War & End Racism) v. Basham*,
845 F.3d 1199 (D.C. Cir. 2017) ............................................................. 19

*Abuelhawa v. United States*,
556 U.S. 816 (2009) ........................................................................... 7, 15

*Ashcroft v. Free Speech Coal.*,
535 U.S. 234 (2002) ......................................................................... 10, 13

*Backpage.com, LLC v. Cooper*,
939 F. Supp. 2d 805 (M.D. Tenn. 2013) ........................................ 5, 6, 12

*Backpage.com, LLC v. Hoffman*,
2013 WL 4502097 (D.N.J. Aug. 20, 2013) .................................... 5, 6, 12

*Backpage.com, LLC v. Lynch*,
216 F. Supp. 3d 96 (D.D.C. 2016) ...................................................... 16

*Backpage.com, LLC v. McKenna*,
881 F. Supp. 2d 1262 (W.D. Wash. 2012) ..................................... 5, 6, 12

*Baggett v. Bullitt*,
377 U.S. 360 (1964) ............................................................................. 9

*Barr v. Am. Ass'n of Political Consultants*,
140 S. Ct. 2335 (2020) ....................................................................... 20

*Bartnicki v. Vopper*,
532 U.S. 514 (2001) ......................................................................... 4, 10

*Brandenburg v. Ohio*,
395 U.S. 444 (1969) ........................................................................... 11

*Carmell v. Texas*,
529 U.S. 513 (2000) ........................................................................... 22

*Center for Democracy & Technology v. Pappert*,
337 F. Supp. 2d 606 (E.D. Pa. 2004) ................................................ 17

*City of Chi. v. Morales*,
527 U.S. 41 (1999) ............................................................................. 16

*City of Los Angeles v. Patel*,
   576 U.S. 409 (2015).........................................................................................22

*Corley v. United States*,
   556 U.S. 303 (2009)....................................................................................7, 17

*Daniel v. Fulwood*,
   766 F.3d 57 (D.C. Cir. 2014) ......................................................................22

*Elonis v. United States*,
   135 S. Ct. 2001 (2015)..............................................................................16, 17

*Ezell v. City of Chi.*,
   651 F.3d 684 (7th Cir. 2011) ......................................................................24

*Flanders v. United States*,
   No. 11-cr-20557, 2017 WL 11405057 (S.D. Fla. June 13, 2017) ...........8

*Fletcher v. Reilly*,
   433 F.3d 867 (D.C. Cir. 2006) ....................................................................22

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972).......................................................................................16

*IMDB.com, Inc. v. Becerra*,
   257 F. Supp. 3d 1099 (N.D. Cal. 2017) ....................................................25

*Lomax v. Ortiz-Marquez*,
   140 S. Ct. 1721 (2020)...............................................................................7, 8

*Maydak v. United States*,
   630 F.3d 166 (D.C. Cir. 2010) ....................................................................24

*Mishkin v. New York*,
   383 U.S. 502 (1966).......................................................................................16

*NAACP v. Button*,
   371 U.S. 415 (1963).........................................................................................5

*National Ass'n of Mfrs. v. Taylor*,
   582 F.3d 1 (D.C. Cir. 2009) ........................................................................14

*Parker Drilling Mgmt. Servs., Ltd. v. Newton*,
   139 S. Ct. 1881 (2019)..................................................................................14

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015)...............................................................................4, 18, 19

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
  515 U.S. 819 (1995)..................................................................................................18

*Santamaria v. District of Columbia*,
  875 F. Supp. 2d 12 (D.D.C. 2012) ......................................................................20, 24

*Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*,
  502 U.S. 105 (1991)............................................................................................14, 18

*United States v. Biancofiori*,
  No. 16-cr-306-1, 2018 WL 372172 (N.D. Ill. Jan. 11, 2018) ...............................8, 9

*United States v. Bronstein*,
  849 F.3d 1101 (D.C. Cir. 2017) ...............................................................................8

*United States v. Dellinger*,
  472 F.2d 340 (7th Cir. 1972) ..........................................................................*passim*

*United States v. Estrada-Tepal*,
  57 F. Supp. 3d 164 (E.D.N.Y. 2014) .......................................................................8, 9

*United States v. Marcus*,
  487 F. Supp. 2d 289 (E.D.N.Y. 2007) .......................................................................8

*United States v. Miselis*,
  972 F.3d 518 (4th Cir. 2020) ...........................................................................3, 9, 11, 12

*United States v. Playboy Entm't Grp., Inc.*,
  529 U.S. 803 (2000).................................................................................................3, 20

*United States v. Scanio*,
  705 F. Supp. 768 (W.D.N.Y. 1988) ..........................................................................14

*United States v. Stevens*,
  559 U.S. 460 (2010).................................................................................................13

*United States v. Thompson*,
  896 F.3d 155 (2d Cir. 2018)...................................................................................8, 9

*United States v. Williams*,
  553 U.S. 285 (2008)...................................................................................7, 8, 10, 15

*Virginia v. Hicks*,
  539 U.S. 113 (2003)...............................................................................................8, 10

*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989)................................................................................................18

*Woodhull Freedom Found. v. United States*,
   948 F.3d 363 (D.C. Cir. 2020) ........................................................................... *passim*

**Constitutional Provisions**

U.S. Const. amend. I ............................................................................................. *passim*

U.S. Const. amend. V ..................................................................................................20

**Federal Statutes**

18 U.S.C § 1591 ................................................................................................... *passim*

18 U.S.C. § 1591(e)(4) ...............................................................................................11

18 U.S.C. § 1595 ...................................................................................................3, 25

18 U.S.C. § 1595(a) .....................................................................................................3

18 U.S.C. § 2101(a) (2) .............................................................................................11

18 U.S.C. § 2421A ............................................................................................... *passim*

18 U.S.C. § 2421A(a) .................................................................................................15

18 U.S.C. § 2421A(b) .................................................................................................15

47 U.S.C. § 230 ................................................................................................... *passim*

47 U.S.C. § 230(a) .......................................................................................................2

47 U.S.C. § 230(a)(3) ...................................................................................................4

47 U.S.C. § 230(b) .......................................................................................................2

47 U.S.C. § 230(c)(1) .................................................................................................19

47 U.S.C. § 230(f)(2) ...................................................................................................4

**Rules**

Federal Rules of Civil Procedure Rule 56(d) ..............................................................23

Federal Rules of Civil Procedure Rule 56(f) ...............................................................23

**Other Sources**

*United States v. Lacey*,
   No. 2:18-cr-00422-SMB (D. Ariz. 2019) ...............................................................22

## INTRODUCTION

The government's constitutional defense of FOSTA is nothing if not ironic.  On virtually every page of its summary judgment opposition, as with its own summary judgment motion, it insists that FOSTA does not regulate speech at all, even though the admitted sole purpose of the law is to impose new liabilities upon and strip away immunities from online publishers.  The very function of FOSTA's target, 47 U.S.C. § 230, is to provide immunity from the liability a publisher would otherwise bear for publishing third party speech.  The only reason to amend § 230, which the government concedes was the entire point of FOSTA, is thus to reimpose that liability on publishers.  That makes FOSTA a direct restriction on speech, and very much intentionally and openly so.  *See* Plaintiffs' Opp. to Defs. Mot. for Sum. J. ("Pl. Opp.") 2-6.

The Opposition to Plaintiffs' Motion for Summary Judgment ("Gov't Opp.") largely repeats arguments already refuted in Plaintiffs' Motion for Summary Judgment ("Pl. Mot.") and in their opposition to the government's summary judgment motion.[1]  All of the government's defenses of FOSTA cluster around three flawed premises:  that it does not regulate speech at all, that it is no more expansive than existing laws, and that its structural defects are cured by *mens rea* requirements.  Once these fallacies are revealed, the rest of Defendants' arguments collapse.  FOSTA uses expansive and undefined terms to regulate online speech, while including none of the transactional language of the Travel Act or the other laws the government cites.  This Court can grant summary judgment based on these unconstitutional statutory terms without the need for any discovery.

---

[1]  In fact, entire passages of the opposition repeat essentially verbatim portions of Defendants' opening motion.  *Compare* Gov't Opp. 22-25 *with* Gov't Mot. 27-30; Gov't Opp. 29-30, 34-35 *with* Gov't Mot. 15-17, 20-22; Gov't Opp. 39-40, 40-41 *with* Gov't Mot. 22, 24-25; *compare also* Gov't Opp. § VI *with* Gov't Mot. § VI.

# ARGUMENT

## I.   THE GOVERNMENT'S DEFENSE OF FOSTA IS BUILT ON THREE CORE FALLACIES

### A.   The Government Incorrectly Contends that FOSTA Does Not Regulate Speech

Plaintiffs have explained that the government's misinterpretation of FOSTA's key terms, its claim that strict First Amendment scrutiny does not apply, and its erroneous conclusions regarding scienter, *all* flow from its flawed premise that "[n]one of [FOSTA's] provisions, by their plain terms, prohibit, regulate, or reference categories of protected speech or expressive activity." Pl. Opp. 2 (quoting Gov't Mot. 18).  Now, in their opposition brief, Defendants go all in on this misbegotten strategy, cementing each of their arguments to this erroneous foundation.  Defendants repeat their false assumptions as a virtual mantra, asserting FOSTA does not regulate speech at all, Gov't Opp. 1, 2, 14, 15, 16, 20, 22, 27, 30, 31, 32, 33, 37, 39, 40, 41, or that it prohibits only unprotected speech.  *Id.* 2, 14, 18, 20, 21, 23, 27, 28-29, 30, 32.  Of course, a false premise is not made true through repetition.

These incessant assertions that FOSTA does not regulate expression because "no reference to speech appears in the statute," *e.g.*, *id*. 14, ignores that FOSTA's singular purpose is to regulate what can be communicated over a vital communications medium.  47 U.S.C. § 230(a), (b).  To answer the threshold question of whether a statute "relates to expression and is therefore governed by [the] first amendment," courts "look for that answer in reality and not solely in the words of the statute."  *United States v. Dellinger*, 472 F.2d 340, 358 (7th Cir. 1972) (cited Gov't Opp. 31).  In that connection, "if a statute in its impact has or can be expected substantially to involve expression, that must be sufficient, whether or not the words of the statute so provide."  *Id.*[2]  As

---

[2]   Defendants cite *Dellinger* in an effort to distinguish *United States v. Miselis*, 972 F.3d 518 (4th Cir. 2020), which held the terms "promote" and "encourage" in the Anti-Riot Act are facially

Plaintiffs have shown, FOSTA lies in the heartland of media regulations that require First Amendment review.  Pl. Opp. 2-7.

FOSTA necessarily and deliberately restricts speech, both by its plain language and by its conceded justification.  *E.g.*, Pl. Opp. § III.A (citing, *inter alia*, *Reed v. Town of Gilbert*, 576 U.S. 155, 163-64 (2015); *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 811-12 (2000); *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 116 (1991)).  Congress would not have targeted § 230, which immunizes online publishers from liability for third-party speech, unless it wanted to impose liability on publishers for third-party speech, and the only reasons to adopt § 2421A and amend §§ 1591 and 1595 were to expose more online publishers to liability and increase the range of prosecutors and civil litigants who can hold them liable.

The government *concedes* that the specific reason for enacting FOSTA's was to impose greater liability on "websites"—specifically "website publishers of classified ad[s]"—because "courts held that § 230 barred … invoking the § 1595(a) civil right of action against website publishers of classified ad[s] even where the[y] were alleged to structure their websites 'to camouflage ad[s] for sex traffickers.'"  Gov't Opp. 6.  As the government explains, the sense of Congress in passing FOSTA was that "websites that promote and facilitate prostitution have been reckless in allowing the sale of sex trafficking victims," and that § 230 "was never intended to provide legal protection to websites that unlawfully promote and facilitate … traffickers …."  *See* Pub. L. No. 115-164, § 2; Gov't Opp. 6-7.  FOSTA's terms, imposing liability for "own[ing], manag[ing], or

---

unconstitutional despite the absence of the word "speech" anywhere in the statute.  Gov't Opp. 31. But they ignore the overarching principle in *Dellinger* that requires examining the law's impact on expression rather than just the statutory language.  *Dellinger*, 472 F.2d at 358 ("Perhaps we can do no better than a generalization which equates first amendment 'speech' with conduct which makes an offer in the market place of ideas.").  *See also infra* 12.

operat[ing] an interactive computer service," in turn reflect the intent of the statute to expand liability for websites based on what websites do—publish information on the Internet.

The government's repeated assertion that FOSTA restricts only conduct thus plainly fails. Defendants have never identified *any* "conduct" besides publishing information on a website that either would be covered by FOSTA's language or was targeted by Congress.  In drafting FOSTA, Congress used the term "interactive computer service" in § 2421A and linked the term's definition to that found in § 230.[3]  Congress previously found that interactive computer services "offer a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity."  47 U.S.C. § 230(a)(3).  These services largely exist to publish, host, and distribute Internet users' speech:  core First Amendment activity.

Despite its repeated claims that FOSTA regulates "conduct" and not speech, the government never identifies any non-speech conduct.  Its sole attempt to do so describes the "conduct" FOSTA prohibits as "acting with the intent to promote or facilitate acts of illegal prostitution, as well as doing so with reckless disregard that 'such conduct' contributed to sex trafficking."  Gov't Opp. 40.  However, what the government calls conduct—an act of prostitution that might result from a website's publication of speech—is actually the purported "function" of that speech.  *See Reed*, 576 U.S. at 163.  This is pure speech, not conduct, for if  "the acts of 'disclosing' and 'publishing' information do not constitute speech, it is hard to imagine what does fall within that category, as distinct from the category of expressive conduct."  *Bartnicki v. Vopper*, 532 U.S. 514, 526-27 (2001) (citation omitted).  Moreover, FOSTA is not merely an incidental restriction on

---

[3]  "The term 'interactive computer service' means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions."  47 U.S.C. § 230(f)(2).

speech, which is the government's fallback position, because it applies to no other viewpoints, subject matters, or functions or purposes, or to any "conduct" besides publication.

The government's next claim, that FOSTA doesn't restrict any "protected speech," is also wrong. Pl. Opp. 5-7. As Plaintiffs explained, any claim that FOSTA does not restrict "categories of protected speech" gets things backwards and assumes Defendants' own conclusion. Pl. Opp. 6. Contrary to the government's approach, "one who challenges the application of a statute to conduct which amounts to expression does not have the burden of bringing his expression *within* the first amendment." *Dellinger*, 472 F.2d at 358. When the law restricts speech, the burden is on the government "to show that such expression is within one of those narrow areas which by their relation to action partake of the essential qualities of action rather than expression and therefore are carved away from the first amendment." *Id.* And where a law is capable of reaching protected speech, the government does not get the benefit of doubt. *NAACP v. Button*, 371 U.S. 415, 432 (1963) ("If the line drawn … between the permitted and prohibited activities … is an ambiguous one, we will not presume that the statute curtails constitutionally protected activity as little as possible."). As Plaintiffs have shown, FOSTA's plain terms cover wide swaths of protected speech. *See* Pl. Mot. 12-30; Pl. Opp. 7-33; *infra* 11-15.

The government inadvertently acknowledges its faulty assumption in trying to distinguish the decisions in *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262 (W.D. Wash. 2012), *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805 (M.D. Tenn. 2013), and *Backpage.com, LLC v. Hoffman*, 2013 WL 4502097 (D.N.J. Aug. 20, 2013). Defendants argue "the state laws involved in these three cases were significantly different from any of FOSTA's provisions, not least because they, unlike FOSTA, *covered First Amendment-protected speech*." Gov't Opp. 36 (emphasis added). This backhanded admission merely proves Plaintiffs' point: Even when the government

5

claims to regulate only conduct or "unprotected speech," First Amendment review is required to ensure the statutory terms are strictly limited to stay within constitutional bounds.

In retrospect, it is easy to see that the laws struck down in *McKenna*, *Cooper*, and *Hoffman* "covered First Amendment-protected speech," but each of those laws was defended vigorously using *the identical argument* Defendants make here.[4]  And in each case the courts rejected the efforts to avoid First Amendment scrutiny and held the laws were vague, overbroad, and lacked adequate *mens rea* requirements.  The problem in those cases (just as it is here) was that the statutory language at issue "encompasse[d] more than offers to engage in illegal transactions." *McKenna*, 881 F. Supp. 2d at 1280, 1282.[5]

### B.   The Government Incorrectly Assumes FOSTA's Constitutional Validity is Affirmed by the Validity of Other Laws

The second cornerstone of Defendants' position asserts FOSTA must be constitutional because other laws, like the Travel Act, the PROTECT Act, and the SAVE Act have not been

---

[4]  As the state pitched it, the Washington law struck down in *McKenna* "criminalize[d] the offense of advertising commercial sexual abuse of a minor," and the state argued "it only regulates unprotected speech."  881 F. Supp. 2d at 1265, 1280.  The Tennessee law invalidated in *Cooper* likewise sought to prohibit "advertising commercial sexual abuse of a minor," and the state argued the law "does not implicate First Amendment scrutiny because it criminalizes only offers to engage in illegal transactions."  939 F. Supp. 2d at 817, 833.  And the New Jersey law struck down in *Hoffman* also prohibited "advertising commercial sexual abuse of a minor," and, as elsewhere, the state claimed it "does not regulate speech protected by the First Amendment because it only prohibits the advertisement of an illegal transaction."  2013 WL 4502097, at *2, *8.

[5]  Defendants misconstrue Plaintiffs' arguments regarding these cases and claim those *particular* state laws will not be "revitalized" under FOSTA because "the § 230 Amendments cannot change prior holdings that these laws were unconstitutional."  Gov't Opp. 36.  That was never the point.  Plaintiffs were quite clear that apart from the specific flaws of those three laws, FOSTA is unconstitutional "for a more basic reason: 'FOSTA's text does not limit its scope to "bad-actor websites," or even classified advertising.'"  Pl. Mot. 22 (quoting *Woodhull Freedom Found*., 948 F.3d at 373).  What would be "revitalized" at the state level would be overall efforts "to restrict online intermediaries" using the same types of overbroad and vague prohibitions as FOSTA.  *Id*. 21, 31-32 (citing examples of state laws passed since FOSTA).

invalidated.  *See* Gov't Opp. 4, 8, 11, 15, 16-17, 25, 32, 35, 41.  To reach this conclusion, Defendants ask the Court to overlook major canons of interpretation, as well as the fact that FOSTA does not employ the same statutory terms as these other laws.  In particular, they ignore how laws must be interpreted to give effect to the language Congress used, *Corley v. United States*, 556 U.S. 303, 314 (2009), and avoid adding language Congress chose to omit.  *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1725 (2020).  Defendants' approach fails to apply the "commonsense canon of *noscitur a sociis*—which counsels that a word is given more precise content by the neighboring words with which it is associated," *United States v. Williams*, 553 U.S. 285, 294 (2008), and the presumption that courts must consider the larger statutory context and its history. *Abuelhawa v. United States*, 556 U.S. 816, 823-24 (2009).

Applying those canons, *i.e.*, considering FOSTA's overall purpose as well as the particular language Congress used (and declined to use) to achieve that purpose, reveals the law's funda-mental flaws.  Unlike in *Abuelhawa*, where the Court applied a narrowing interpretation of the word "facilitating" in the Controlled Substances Act because Congress was seeking to reduce culpability for drug possession offenses, 556 U.S. at 823-24, the opposite conclusion follows here, where it adopted FOSTA specifically to *increase* liability and *reduce* defenses for online speech. Defendants assert that FOSTA must be valid because it uses "similar wording" as the Travel Act, Gov't Opp. 25, but ignore the specifics:  FOSTA employed expansive and open-ended language of prohibition ("promote" or "facilitate") while leaving out all of the limiting verbs found in those other laws that connote participation or aiding and abetting.  It expressly omitted most verbs found

in the Travel Act ("promote, manage, establish, carry on, or facilitate") or in the PROTECT Act ("advertises, promotes, presents, distributes, or solicits").  *Williams*, 553 U.S. at 294-95.[6]

Given the differences in the respective laws, whether the Travel Act or the SAVE Act have been facially invalidated is irrelevant.[7]  Likewise, the argument that *previous* versions of § 1591 have "never been held to violate the First Amendment" has no bearing on *this* case.  Gov't Opp. 15-16.  None of the cases cited involving § 1591 addressed the new provisions challenged here— including FOSTA's new scienter requirement, its new liability for "assisting, supporting, or facilitating," or its expanded liability for interactive computer services.[8]  *See Marcus*, 487 F. Supp. 2d at 302 (rejecting reliance on case law interpreting a prior version of a statute, rather than the

---

[6]  The omission of narrowing, transactional elements also makes § 2421A unique among offenses in Chapter 117 of the Criminal Code governing Transportation for Illegal Sexual Activity and Related Crimes.  *See* Pl. Opp. 13-15.  If statutory language may be understood by "the company that it keeps," *United States v. Bronstein*, 849 F.3d 1101, 1108 (D.C. Cir. 2017), it also must be interpreted according to the company it excludes.  *Lomax*, 140 S. Ct. at 1725 ("[T]his Court may not narrow a provision's reach by inserting words Congress chose to omit.").

[7]  Obviously, either the Travel Act or the SAVE Act could be subject to as-applied challenges in an appropriate case, just as the Supreme Court in *Hicks* noted the trespass statute at issue there could be challenged if enforced against expressive activities.  *Virginia v. Hicks*, 539 U.S. 113, 124 (2003).  But unlike those statutes, FOSTA is subject to a facial First Amendment challenge because it is "specifically addressed to speech or to conduct necessarily associated with speech."  *Id*.

[8]  *See United States v. Thompson*, 896 F.3d 155, 161 n.5 (2d Cir. 2018) ("Because Thompson was charged with conduct occurring between early 2013 and early 2015, we refer only to the earlier version of the statute, in effect from December 2008 until May 2015."), *cert. denied*, 139 S. Ct. 2715 (2019); *United States v. Estrada-Tepal*, 57 F. Supp. 3d 164, 166 (E.D.N.Y. 2014) (prosecution for conduct occurring in 2013-14); *United States v. Biancofiori*, No. 16-cr-306-1, 2018 WL 372172, at *1 (N.D. Ill. Jan. 11, 2018) (prosecution for conduct occurring between 2007-2015); *United States v. Marcus*, 487 F. Supp. 2d 289, 304 (E.D.N.Y. 2007) (rejecting First Amendment challenge based on "commercial sex act" language); *Flanders v. United States*, No. 11-cr-20557, 2017 WL 11405057, at *7 (S.D. Fla. June 13, 2017) (same), *R. & R. adopted as modified*, No. 1:16-cv-20296, 2017 WL 11405056 (S.D. Fla. Dec. 4, 2017) (all cited Gov't Opp. 16).

statute as Congress later broadened to reach new defendants).[9]  Claims about the validity of other laws, or of earlier versions of § 1591, have no bearing on this case.

    **C.**    **The Government Incorrectly Assumes that FOSTA's Scienter Provisions Cure Overbreadth and Vagueness**

    The third false premise permeating the government's defense of FOSTA is its assumption that scienter provisions can cure a structurally defective statute.  *E.g.*, Gov't Opp. 23, 25, 26, 33, 34.  The errors in Defendants' scienter analysis already have been addressed, Pl. Opp. 22-27, and the few new points they make in opposition are covered below.  *See infra* 12-13, 16-17.  But the problem with their erroneous premise is more basic:  No scienter requirement can fix a statute that can reach fully protected expression, as FOSTA does.  The level of *mens rea* prescribed by the statute does not matter where the law can be applied to prohibit "guiltless knowing behavior." *Baggett v. Bullitt*, 377 U.S. 360, 366-68 (1964).  See Pl. Opp. 18-20.

    This is well illustrated by the Fourth Circuit's decision in *Miselis*, which held the statutory terms "promote" and "encourage" in the Anti-Riot Act are facially invalid despite the law's unambiguous specific intent requirement.  Notwithstanding the heightened *mens rea* element, the court identified the central question as "whether any of the purposes included in the statute's specific-intent element implicate protected advocacy," and "[i]f so, those purposes *can't form the basis of an attempt to engage in unlawful speech*."  972 F.3d at 535 (emphasis added).  The specific intent requirement did not narrow the Anti-Riot Act's broad statutory terms.

    The same problem plagues FOSTA:  a specific intent to "promote" or "facilitate" the "prostitution of another person" cannot satisfy First Amendment review any more than "promoting" or

---

    [9]  In addition to interpreting the wrong version of § 1591, Defendants' cases concern different First Amendment questions, based on claims the statute interfered with expressive and intimate associational rights.  *See Thompson*, 896 F.3d at 163-68; *Biancofiori*, 2018 WL 372172, at *2-5; *Estrada-Tepal*, 57 F. Supp. 3d at 168-69.  They are thus far afield from the matters at issue here.

9

"encouraging" a riot could.  The critical transactional element of participation in criminal activity is missing.  *See Bartnicki*, 532 U.S. at 529-30; *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253-54 (2002) ("The mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it."); *Williams*, 553 U.S. at 294 (criminality requires that speech be participatory or "transactional"); *Woodhull Freedom Found. v. United States*, 948 F.3d 363, 372 (D.C. Cir. 2020) (explaining that "promote" and "facilitate" in FOSTA are not linked to specific crime, and fail to necessarily identify criminality).  Even if the *mens rea* requirements of FOSTA were everything the government claims (and they are not), they would not cure the law's unconstitutional scope.

## II.     FOSTA VIOLATES THE FIRST AMENDMENT

### A.     FOSTA is Facially Overbroad

The three fallacies listed above fatally undermine Defendants' defense of FOSTA on overbreadth.  *See* Gov't Opp. 30-32 (FOSTA does not regulate speech); *id*. 32-33, 35 (FOSTA uses the same terms as the Travel Act); *id*. 32-34 (*mens rea* requirements limit FOSTA's scope).  These central assumptions underlying of the government's overbreadth argument have been refuted above, and previously.  *See supra* § I; Pl. Opp. §§ I-II & pp.8-15, 18-20; Pl. Mot. 19-21.  The few additional points Defendants make to embroider their arguments are no help.

The government, for example, tries to equate FOSTA with the policy in *Hicks*, suggesting that, like the housing authority's anti-trespassing rules, "certain applications" of FOSTA "might involve protected activity even though such activity is not expressly referenced in the statutory text."  Gov't Opp. 32-33 (citing 539 U.S. at 124).  But the trespassing policy in *Hicks* has more in common with the Travel Act than FOSTA.  Both laws potentially could be *applied* in ways that violate the First Amendment despite mostly targeting non-speech conduct.  *See Hicks*, 539 U.S. at 124 ("[a]pplications of the … policy that violate the First Amendment can still be remedied through as-applied litigation").  By contrast, FOSTA, on its plain terms, inherently targets speech

10

in *all* of its applications.  *See supra* 2-6.  Consequently, overbreadth analysis is essential to ensure the law does not reach constitutionally-protected speech.

As Plaintiffs explained, because FOSTA uses "promoting," "facilitating," "supporting," etc., in § 1591(e)(4) and § 2421A as stand-alone terms rather than in conjunction with other verbs that make them "transactional," and does not define them, they are open to a wide variety of meanings and applications that make them overbroad.  Pl. Opp. 10-15.[10]  This is what led the D.C. Circuit to observe that "promote" and "facilitate" in FOSTA "are susceptible of multiple and wide-ranging meanings" because they lack "a 'transactional connotation.'"  *Woodhull Freedom Found*., 948 F.3d at 372.  *See also Dellinger*, 472 F.2d at 362 (citing "the constitutionally essential relationship with action").

Defendants' overbreadth analysis fails to come to grips with *Miselis*, which held that the Anti-Riot Act's bans on "promoting," "encouraging" and "urging" others to riot are unconstitutionally overbroad.  972 F.3d at 525-26, 530-39 (applying *Brandenburg v. Ohio*, 395 U.S. 444 (1969) (*per curiam*)).  Defendants argue FOSTA is different insofar as "promote" and "facilitate" relate only to illegal transactions by being paired with intent to do so in connection with "prostitution of another person" and/or "a specific act of prostitution."  Gov't Opp. 31, 33; *see also id*. 32, 35.  This is nonsense.  The Anti-Riot Act's prohibitions on "promoting" or "encouraging" illegal behavior necessarily pertain to rioting by "other people," as the law also prohibits "participating in, or carry[ing] on" a riot.  18 U.S.C. § 2101(a) (2).  Its unconstitutionally overbroad terms would

---

[10]   The government claims that Plaintiffs have not "press[ed] their overbreadth challenge" as to, *e.g.*, § 1591, Gov't Opp. 36 n.11, but that is not the case.  *See* Pl. Mot. 20 n.14; Pl. Opp. 9 ("changes to CDA § 230 and 18 U.S.C § 1591 further expand FOSTA's scope"); *id*. 12 (FOSTA's terms are overbroad "[s]tanding alone as they do in § 2421A ([as] with similar terms in § 1591(e)(4))"); *id*. ("the terms … in §2421A and § 1591(e)(4) … are not 'transactional,' as they do not require conduct … participatory in the offense"); *id*. 14 ("Section 2421A requires no such direct participation (nor does § 1591(e)(4))").

not become suddenly constitutional if the law prohibited only "promoting" or "encouraging" the "rioting by another person" or of a "specific riot." *Participating* in a riot is unprotected; *encouraging* another person to riot is protected advocacy. *Miselis*, 972 F.3d at 525, 530, 535-36, 538, 541. For purposes of FOSTA, engaging in illegal prostitution may be unprotected; speech *about* sex work (as is speech "facilitating" sex work) is protected. *McKenna*, 881 F. Supp. 2d at 1281; *Cooper*, 939 F. Supp. 2d at 831-32; *Hoffman*, 2013 WL 4502097, at *9-10.

The government's attempt to distinguish *Miselis* by citing *Dellinger* falls flat. Gov't Opp. 31. The *Dellinger* court's observations "that 'a riot may well erupt out of an originally peaceful demonstration,'" and that charges in that case "'were based wholly on the making of speeches,'" hardly helps the government's case. *See* Gov't Opp. 31 (quoting *Dellinger*, 472 F.2d at 359). It is precisely why the court in *Miselis* held that the statutory language ("promote" or "encourage") "sweeps up a substantial amount of speech that retains the status of protected advocacy." *Miselis*, 972 F.3d at 525-26, 530-39. Ultimately, the government falls back on its "FOSTA does not regulate speech" argument, claiming that it regulates only "transactions," not "speeches." Gov't Opp. 31. This ignores the D.C. Circuit's holding that FOSTA's prohibitions are not "limited by a string of adjacent verbs (such as advertises, distributes, or solicits) that would convey a 'transactional connotation' that might narrow the statute's reach." *Woodhull Freedom Found.*, 948 F.3d at 372.

The government also continues to press its faulty *mens rea* argument, claiming that "an Internet platform is not at all likely to manifest an intent to promote of facilitate prostitution by making a speech, or by engaging in any form of online expression of its own." Gov't Opp. 31. The government's speculation here is unfounded. There are numerous ways an interactive computer service may intentionally make prostitution of another person far "easier or less difficult," such as, by hosting bad john lists, providing health and safety information, and advocating for sex

workers and for decriminalization.  An interactive computer service, such as the host of a webcast or website, might intentionally "promote" the prostitution of a specific other person by providing a platform for that person to speak about sex work generally (or their own sex work) while identifying themselves as a sex worker.  All of these are protected speech, like making a speech at a rally.[11]  *See* Pl. Mot. 27.  With its broad prohibitions and the absence of limiting transactional verbs, FOSTA's overbreadth is so substantial, that even with the intent requirement it may be invalidated for this reason alone.  *United States v. Stevens*, 559 U.S. 460, 473 (2010) (a law "may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep'") (citation omitted); *Free Speech Coal.*, 535 U.S. at 244 (a law is "unconstitutional on its face if it prohibits a substantial amount of protected expression").

### B.      FOSTA is Unconstitutionally Vague

The government's vagueness analysis likewise replows old ground, and what is newly sown bears no fruit.  The opposition's contribution on vagueness commences by repeating largely verbatim the opening papers, *compare* Gov't Opp. 22-25 *with* Gov't Mot. 27-30, and to that extent has already been addressed.  This includes continued heavy reliance on this Court's and Judge Katsas' interpretations of FOSTA with which the D.C. Circuit disagreed, *see* Gov't Opp. 24-25; *see also* Pl. Opp. 21-22, invocation of and comparison to the Travel Act, *see* Gov't Opp. 25; *compare supra* 6-9, and continuing to insist scienter requirements can "fix" vague operative terms.

---

[11]  Moreover, the government once again ignores FOSTA's central purpose by reading the law only to apply to "engaging in any form of online expression of its own."  Gov't Opp. 31.  As explained above, the sole reason to carve out an exception to § 230's immunity is to impose liability on an online publisher for publishing the speech of others.

*See* Gov't Opp. 23-34; *but see also supra* 9-10, 12-13.[12]   On the whole, Defendants' vagueness arguments assume FOSTA targets only "participatory acts" in criminal transactions (and that scienter requirements mitigate statutory vagueness), Gov't Opp. 23-29, but that has already been refuted given FOSTA's lack of transactional elements such as those cited in *Williams*.  *See supra* 7-8, 10-11; *see also* Pl. Opp. 12-14; Pl. Mot. 14-15 & n.9.

To address Defendants' few new arguments, they cite the "cardinal principle" that courts must give effect to every clause and word of a statute, Gov't Opp. 28 (citing *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1890 (2019)), but then fail to apply FOSTA's actual language.  As explained above, the Court can neither ignore a statute's terms nor read in terms it leaves out.  Defendants place great weight on the phrase "prostitution of another person," *id*. 27-28, but that changes nothing, including the extent to which FOSTA's unadorned use of "promote," "facilitate" and "support" render it unconstitutionally vague.[13]   *See supra* 7-8, 10-12.  Defendants claim FOSTA is "clear in context," Gov't Opp. 25, but overlook the *actual context* here, where Congress used expansive and undefined language of prohibition, omitted language of limitation or

---

[12]   On this point Defendants again cite *National Ass'n of Mfrs. v. Taylor*, 582 F.3d 1, 27-28 (D.C. Cir. 2009), and *United States v. Scanio*, 705 F. Supp. 768, 775 (W.D.N.Y. 1988).  Opp. 23-24.  However, the statute in *Taylor* required the prohibited criminal acts to be committed "knowingly and corruptly" which was held to be "a much stronger form of scienter" than the "intent" standard used in § 2421A.  *See* 582 F.3d at 27-28.  As FOSTA does not use such heightened scienter, *Taylor* is not instructive.  Similarly, the currency transaction structuring statute in *Scanio* required actions taken for purposes of evading specific federal reporting requirements, 705 F. Supp. at 777, which stands in stark contrast to FOSTA's prohibition on intentionally facilitating or promoting "prostitution," which is undefined in federal law, without defining the prohibited activity by reference to any state (or federal) statute.

[13]   It makes no difference that § 2421A is only one part of FOSTA and that other parts merely amended existing statutes for purposes of determining whether the statutory scheme as a whole is content-based.  In *Simon & Schuster*, New York's Son of Sam law enhanced the existing statutory scheme authorizing the state Crime Victims Board to collect funds to compensate victims of crime for their losses, yet was invalidated as a content-based speech restriction.  502 U.S. at 111.

that is transactional, and did so in a multi-pronged law designed to restrict speech.  *See* Pl. Opp. 8-9, 11-15, 18.  In short, there is nothing in FOSTA that makes clear what it means to "promote," "facilitate" or "support" prostitution or trafficking, through ownership, management, or operation of an online platform, or through participation in a venture that involves advertising, in a way that excludes speech that is favorable to sex work in "concept."  *See* Gov't Opp. 28 (erroneously claiming FOSTA cannot be read as "referring" to the prohibited conduct as "an abstract concept").

Defendants also claim that the D.C. Circuit addressed the terms "promote" and "facilitate" in "isolation" and "not in their statutory context," and by extension fault Plaintiffs for doing the same.  Gov't Opp. 37-38.  But Defendants ignore all of the analysis in *Williams* that statutory terms (and "promotes," in particular) gain transactional meaning through their surrounding verbs, and how their absence here means FOSTA lacks the participatory element necessary to render it constitutional.  As the D.C. Circuit has already found, FOSTA's terms do not "convey 'a transactional connotation.'"  *Woodhull Freedom Found.*, 948 F.3d at 372.  The court compared FOSTA to the pandering law in *Williams*, 553 U.S. at 294, which specifically identified "promotes" as one of the verbs that was *not* typically used to refer to "the proposed transfer of a product."[14]  *See supra* 7-8, 13-14.  *See also* Pl. Opp. 6-7, 12-14, 18, 23-25 (citing, *inter alia*, *Williams*, 553 U.S. at 294-95; *Woodhull Freedom Found.*, 948 F.3d at 372).  Defendants never grapple with *Williams*' requirement for the kinds of transactional verbs that FOSTA is missing, nor, beyond the criticism cited above, the majority's conclusion in *Woodhull* that "promote" and "facilitate" are "'susceptible of multiple and wide-ranging meanings,'"  *Woodhull Freedom Found.*, 948 F.3d at 372 (citation

---

[14]   The phrases "prostitution of another person," 18 U.S.C. § 2421A(a), and "prostitution of five or more persons," *id*. § 2421A(b), need not be read to refer to specific transactions.  Rather, the terms make clear the law does not apply to sex workers themselves, but to those who by their speech make sex work *of others* easier, as is consistent with common usage of the word "facilitate." *See Abuelhawa*, 556 U.S. at 820.

omitted).  Among other things, this means that FOSTA is vague for "failing to give fair warning" of what it prohibits.  *See* Pl. Opp. 21 (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972); *City of Chi. v. Morales*, 527 U.S. 41, 71 (1999)).

**C.      FOSTA Lacks Adequate Scienter Requirements**

Defendants incorrectly assume FOSTA's lower scienter requirements are not constitution-ally significant because, in their view, the statute does not regulate speech.  Gov't Opp. 36-39.  This premise has already been refuted.  *See supra* § I.A.  FOSTA creates new criminal and civil liability based on user-generated content that online intermediaries host, without requiring those services to have knowledge that their users' content is illegal *and* the specific intent to commit the illegal acts.  *See* Pl. Mot. 23; Pl. Opp. 23-24.  The First Amendment requires robust scienter standards "to avoid the hazard of self-censorship of constitutionally protected material," *Mishkin v. New York*, 383 U.S. 502, 511 (1966), but FOSTA does not contain these safeguards, for all of the reasons Plaintiffs previously explained.  Pl. Mot. 22-26; Pl. Opp. 22-28.  The government's argument ignores FOSTA's text and Congress' intent in passing it:  making it easier to prosecute online intermediaries even when they lack knowledge of illegal activity on their services, or the specific intent to further those illegal acts.  *See* Pl. Mot. 25 (describing how Congress's purpose was to make an end-run on § 1591's specific knowledge requirement as construed in *Back-page.com, LLC v. Lynch*, 216 F. Supp. 3d 96 (D.D.C. 2016)).

Defendants also argue that a statute's faulty scienter requirement cannot be grounds for facial invalidation under the First Amendment, and that FOSTA's *mens rea* are not deficient because the aggravated offenses' "reckless disregard" standards are cumulative.  Gov't Opp. 37, 38.  Plaintiffs have already fully addressed why these arguments are incorrect.  Pl. Mot. 22-26; Pl. Opp. 22-28.  To briefly recap, the government has invented its rule barring facial invalidation based on inadequate scienter—it is not required by the Supreme Court's *Elonis* decision, and the

*Elonis* concurrence that Defendants cite is not the law.  *See Elonis v. United States*, 135 S. Ct. 2001, 2009-10, 2015-16 (2015); *see also* Pl. Opp. 27-28.  Further, any claim that FOSTA's reckless disregard standard for aggravated offenses is merely additive is illogical:  If a "knowing and intentional" violation of the law is already required, the act will necessarily be done with "reckless disregard," as it is a lesser included fault standard than specific intent.  Under the government's reading, every violation of the law is also an aggravated violation, making the aggravated offense *mens rea* superfluous.  Pl. Opp. 24 (citing *Corley*, 556 U.S. at 314).

### D. FOSTA Cannot Satisfy Strict Scrutiny

As explained in Plaintiffs' opening and opposition papers, FOSTA fails strict scrutiny because it is not narrowly tailored to FOSTA's stated goal in allowing states to prosecute bad-actor classified ad websites, as its plain language sweeps far more broadly.[15]  The government once again does not attempt to justify FOSTA under strict scrutiny, arguing instead that strict scrutiny does not apply because FOSTA does not regulate speech at all, or if it does, is content-neutral and thus subject only to intermediate scrutiny.  Gov't Opp. 40.[16]

As Plaintiffs fully explained already, FOSTA is a restriction on speech.  *Supra* § I.A; *see* Pl. Opp. 2-7.  Turning to the second claim, FOSTA is a *content-based* restriction on speech under either standard set forth in *Reed v. Town of Gilbert*, *i.e.*, it "applies to particular speech because of

---

[15]  Pl. Opp. 6, 8, 33 (citing *Woodhull Freedom Found.*, 948 F.3d at 372-73, and Pl. Mot. 29) (citing same and *Center for Democracy & Technology v. Pappert*, 337 F. Supp. 2d 606, 655 (E.D. Pa. 2004); *Cooper*, 939 F. Supp. 2d at 813).

[16]  This Court must reject out of hand any argument that summary judgment proceedings should be stayed if it finds strict scrutiny applies.  Gov't Opp. 41-42 n.13.  Plaintiffs consistently have contended both that strict scrutiny applies and that FOSTA fails strict scrutiny; the government has had ample opportunity to argue against the latter, including three briefs here.  Plaintiffs' strict scrutiny claim is based solely on the undisputed facts in this case—FOSTA's plain language and Congress's expressed intent in enacting it.  *See also infra* 24-25.

the topic discussed or the idea or message expressed" and, even if it were facially content neutral, it "'cannot be justified without reference to the content of the regulated speech.'" *See Reed*, 576 U.S. at 163, 164 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). On its face, and through § 2421A in particular, FOSTA applies only to speech of a certain subject matter. It does not restrict all online speech, but only that which "promote[s] or facilitate[s] the prostitution of another person." 18 U.S.C. § 2421A. It targets speech based on both its "message" as well as its "function or purpose," *Reed*, 576 U.S. at 163, that is, to "promote or facilitate the prostitution of another person." And as set forth previously, FOSTA further discriminates based on viewpoint, criminalizing speech that "promotes" sex work while leaving speech that protests sex work untouched. *See*, *e.g.*, Pl. Opp. 29; Pl. Mot. 27 (each citing *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)). Defendants concede it is this function of websites that FOSTA targets. *See supra* 3.

Defendants are wrong to suggest that "promoting or facilitating the prostitution of another person" refers not to a category of speech but to a specific transaction. Gov't Opp. 24, 27-28. First, that distinction makes no difference for purposes of determining whether a restriction is content-based: a restriction on speech about one specific act of prostitution is still a restriction on specific content. In *Simon & Schuster*, the state law at issue requiring authors to pay into escrow proceeds from sales of their works about their own crimes, was deemed content-based even though it applied only to the proceeds of the sale of a specific book about a specific crime, not the subject of crime more broadly, or to non-transactional speech. 502 U.S. at 116. Second, FOSTA is not, in fact, as explained above, limited to speech about a specific transaction, or any transaction.

Nor can FOSTA be "justified without reference to the content of the regulated speech." *See Reed*, 576 U.S. at 164 (citation omitted). As discussed, Congress's justification for FOSTA

was to diminish the existing immunity that § 230 afforded publishers of classified ad sites that included sex trafficking.  Defendants concede as much in their opposition:  they cannot state the justification for FOSTA without referencing the goal of imposing publication liability on websites. In Defendants' own words:  "Congress enacted FOSTA in furtherance of its goal to combat illegal prostitution and sex trafficking, *and in particular to clarify that § 230 should not shield websites from prosecution or liability that they would otherwise face under preexisting laws*."  Gov't Opp. 41 (emphasis added).  That "liability they would otherwise face under existing law" is liability for publishing allegedly actionable speech of others.  47 U.S.C. § 230(c)(1).

FOSTA thus stands in sharp contrast to the speech restriction at issue in the government's chief authority, *A.N.S.W.E.R. Coal. (Act Now to Stop War & End Racism) v. Basham*, 845 F.3d 1199, 1204-05 (D.C. Cir. 2017), involving the permitting preference granted the Inaugural Committee for use of some spaces in Freedom Plaza every four years on Inauguration Day.  *See* Gov't Opp. 40-41.  That regulation did not limit the speech that could occur in the "ticketed bleachers viewing and access areas," nor did it authorize the Committee to limit any categories of speech in those areas.  845 F.3d at 1209.  It made no reference to the speech that could or could not occur in those areas:  "Nothing in the regulation would prohibit a ticketholder to the Inaugural Committee's bleacher area from publicly endorsing ANSWER's message."  *Id.*  Because the regulation itself is "agnostic as to whether the persons to be seated will even be supporters of, or chosen by, the incoming president, let alone whether they will express themselves in any particular way," *id.* at 1211, it was a classic content-neutral time and place limitation in a public forum.  *Id.* at 1213. FOSTA, conversely, regulates based on subject-matter and viewpoint, and is thus subject to strict

scrutiny, which Defendants concede it cannot satisfy by failing to make any attempt to carry their burden on that point.[17]

### E.    FOSTA Unconstitutionally Burdens Online Intermediaries

The combination of FOSTA's broad speech prohibitions and selective withdrawal of § 230 immunity, coupled with proliferation of potential enforcers, were expressly designed to chill online intermediaries, and the law has had its intended effect.  Pl. Mot. 4-7.  Although the government has played down these changes (and, in particular, modification of § 230) as a mere "policy choice" lacking constitutional ramifications, Plaintiffs have demonstrated why these changes provide an independent basis for enjoining FOSTA as a violation of the First and Fifth Amendments.  Pl. Mot. 7-12; Pl. Opp. 2-7, 35-38.   Defendants say little about this in their opposition, but the few arguments they make uniformly support declaring FOSTA unconstitutional.

Most tellingly, the government does not dispute the major premise of Plaintiffs' argument that "laws threatening to impose liability on those who provide a forum for the speech of others pose special threats to the rights of speakers and readers who depend on those services."  Pl. Mot. 7-10 (collecting cases).  Instead, it merely seeks to distance FOSTA from this body of controlling law by once again pretending FOSTA does not regulate speech, and by claiming it prohibits only criminal transactions.  Gov't Opp. 18-22.  The argument that FOSTA does not regulate speech is obviously wrong, as has been amply demonstrated, Pl. Mot. 10-12; Pl. Opp. 2-7; *supra* 2-4, and the argument that FOSTA regulates only criminal transactions has been thoroughly debunked.  Pl. Mot. 12-26; Pl. Opp. 8-28; *supra* 4-8, 11-12.

---

[17]   *See* Pl. Opp. 28 (citing *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2346-47 (2020); *Reed*, 576 U.S. at 163; *Playboy Entm't Grp.*, 529 U.S. at 816; *Santamaria v. District of Columbia*, 875 F. Supp. 2d 12, 16 n.3 (D.D.C. 2012)).  S*ee also id*. § III.B, Pl. Mot. 29-30 (each showing FOSTA cannot satisfy strict scrutiny).

This leaves only inadvertent admissions that undermine the government's defense of FOSTA.  For example, in seeking to distinguish Plaintiffs' authorities on First Amendment protections for intermediaries, Defendants observe that in all of those cases "the government indisputably sought to target a particular category of speech, whether it was protected speech or not, but did so indirectly by placing the responsibility on the vendor or service provider to exclude or restrict the material at issue.  The vendor or service provider's effort to carry out this responsibility then led to restrictions on content that had not been targeted by the law itself."  Gov't Opp. 19-20.  Far from helping the government's case, this statement illustrates Plaintiffs' point *precisely*.  Take out the erroneous (and unsupported) assertion that speech regulation is "lacking" in FOSTA, and this is a concise explanation of why imposing heightened liability risks on intermediaries operates as a heckler's veto and violates the First Amendment.

The government digs an even deeper hole in making clear that intermediaries will not be able to effectively screen out illegal posts that may appear on their platforms.  Defendants' intended point is obscure, but in trying to argue FOSTA does not regulate "speech," they wrote: "A stark illustration of this distinction is that two online advertisements may look the same, but one may relate to the illegal sale of a minor for commercial sex while the other may not relate to criminal conduct at all."  Gov't Opp. 20.  From this, the government argues that under FOSTA, "only the former could even be potentially relevant to show an Internet platform's knowledge or intent," but that, "the very fact that the two advertisements are identical makes it *more* difficult for the prosecutor to use the former as proof."  *Id*. (emphasis in original).  Whatever Defendants were trying to say here (and Plaintiffs are still trying to decipher their point), it illustrates perfectly why online intermediaries must over-censor in response to FOSTA.

What Defendants claim is "difficult" for prosecutors is a practically insurmountable burden for online platforms.  In this hypothetical, when identical postings are made on an online platform (one innocent, one not), the only thing standing between the intermediary and endless civil litigation and/or crushing criminal penalties is the defense that the operator lacked knowledge of the posting or the requisite intent.  But allegations of *mens rea* are easily made and hard to disprove, and in the government's prosecution of Backpage.com, it has argued questions of a defendant's intent *must* go to the jury.[18]  Under these circumstances, it is entirely rational for online platforms to err on the side of caution and remove any content that could risk drawing complaints.  Of course, that is exactly what happened after FOSTA was enacted.

## III.   PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT INVALIDATING FOSTA'S *EX POST FACTO* PROVISIONS

The *ex post facto* arguments in Defendants' opposition essentially repeat those in their motion, *compare* Gov't Opp. § VI *with* Gov't Mot. § VI (and as such are addressed by Plaintiff's opposition, *see* Pl. Opp. § V).  Apart from that, the government contends that two cases Plaintiffs cited did not involve pre-enforcement facial challenges to laws on *ex post facto* grounds.  Gov't Opp. 43.  However, as explained in Plaintiffs' opposition, D.C. Circuit precedent anticipates *ex post facto* challenges based on "facial distinctions between … old and new laws," and there is no authority suggesting that while laws that are unconstitutional for *other* reasons may be challenged facially, *ex post facto* violations require a different approach.[19]  Defendants' other claim, that

---

[18]   *See* United States' Response to Defendants' Motion to Dismiss Indictment, *United States v. Lacey*, No. 2:18-cr-00422-SMB (D. Ariz.) (Doc. 634) at 38 ("Whether a defendant had the requisite intent to commit the alleged crime 'is a question of fact which must be submitted to the jury.'") (citations omitted).

[19]   Pl. Opp. 38-39 (citing *Daniel v. Fulwood*, 766 F.3d 57, 62 (D.C. Cir. 2014); *Fletcher v. Reilly*, 433 F.3d 867, 877 (D.C. Cir. 2006)); *id.* 39-40 (citing *City of Los Angeles v. Patel*, 576 U.S. 409, 415 (2015); *Carmell v. Texas*, 529 U.S. 513, 521 (2000)).

Plaintiffs did not seek summary judgment on their *ex post facto* claim, Gov't Opp. 44 n.14, is just wrong.  *See* Pl. Mot. 38 (requesting that the Court "declare FOSTA unconstitutional on the grounds set forth herein," including the *ex post facto* grounds discussed at § III); Dkt. 34 (Plaintiffs' motion respectfully requesting the Court "to enter summary judgment in their favor on their claims that [FOSTA] is unconstitutional under … the Constitution's *Ex Post Facto* Clause;" noting that "FOSTA … is meant to have retroactive reach in both its criminal and civil applications;" and moving for summary judgment "request[ing] a declaratory ruling that FOSTA is unconstitutional and a permanent injunction against its enforcement and application").

## IV.   THERE IS NO REASON TO STAY PROCEEDINGS OR TO APPLY RULE 56(d)

There are no grounds for the Court to defer deciding the summary judgment motions based on Rule 56(d)[20] or any asserted need for discovery by Defendants.  *Contra* Gov't Opp. § VII.  To start, any suggestion that Defendants were blindsided by Plaintiffs' declarations submitted with the statement of material facts in support of their summary judgment motion is disingenuous.  The declarations in the main simply update those filed with the preliminary injunction motion and complaint that initiated this action.[21]  Although the declarations provide more current information, there can be no legitimate claim of surprise over the updated declarations.

---

[20]   The heading in Defendants' opposition of this issue refers to "Rule 56(f)," but that appears to be a scrivener's error.

[21]   *See* Dkts. 1, 5, 5-1–5-9.  *Compare* Dkt. 5-1 *with* Dkts. 34-3 & 34-4; Dkt. 5-2 *with* Dkts. 34-12 & 34-13; Dkt. 5-3 *with* Dkt. 34-15; Dkt. 4 *with* Dkt. 34-14; Dkt. 34-5 *with* Dkt. 34-10; Dkt. 5-6 *with* Dkt. 34-11; Dkt. 5-7 *with* Dkt. 34-6 & 34-7; and Dkt. 5-8 *with* Dkts. 34-8 & 34-9 (declarant legally changed name after submitting first declaration).  One declaration (Dkt. 5-9) was not updated but is referenced in its original form here (see Dkt. 34 at 2), while another (Dkt. 34-5) is a first-party attestation and update regarding matters noted in the third-party by earlier declarations (Dkts. 5-1 ¶ 11 & 5-2 ¶ 29), and thus involves the only "new" declarant.  *Cf.* Gov't Opp. 44 (acknowledging that declarations accompanied preliminary injunction motion).

In any event, Plaintiffs, like Defendants, "continue to believe" the Court "can grant summary judgment … as a matter of law" on the facial constitutional challenges to FOSTA "based on … interpretation of [its] provisions and governing law." Gov't Opp. 44. "In a facial constitutional challenge, individual application facts do not matter," nor do "plaintiff's personal situation," but rather "only the statute itself and the statement of basis and purpose that accompanied it[]" form the basis of decision. *Ezell v. City of Chi.*, 651 F.3d 684, 697-98 (7th Cir. 2011) (internal quotation marks and citation omitted). Conversely, Plaintiffs' declarations serve two purposes here: First, they establish Plaintiffs' standing, had Defendants opted to raise the issue again despite the D.C. Circuit's ruling. *But see*, *e.g.*, Gov't Opp. 12-13.[22] Second, they provide an evidentiary basis for injunctive and declaratory relief upon a determination that FOSTA is unconstitutional. *See*, *e.g.*, Pl. Mot. 32-33; 37-38 (citing cases). They are not needed—nor do they create any material fact questions—on the issue of facial constitutionality. *Cf.* Gov't Opp. 44 (agreeing that "facts and testimony" are "immaterial to resolution of" the substantive facial challenges).

There is accordingly no need for any stay of summary judgment proceedings, or discovery. As noted, Defendants have not challenged Plaintiffs' ongoing standing, *see supra* note 23, and both their summary judgment motion and opposition to Plaintiffs' cross-motion are silent on the propriety of injunctive and declaratory relief upon a finding by this Court that FOSTA is unconstitutional on its face, thus conceding such relief lies. *See*, *e.g.*, *Santamaria*, 875 F. Supp. 2d at 16 n.3 (failure to address issue concedes it). As the declarations speak to standing and form of relief, and those are not contested, there are no grounds for discovery into the declarations. That is true

---

[22]   Defendants ultimately did not re-raise standing issues, but Plaintiffs could not have known that at the time they moved (concurrently with Defendants) for summary judgment. In any event, standing must exist throughout the litigation, *see*, *e.g.*, *Maydak v. United States*, 630 F.3d 166, 175 (D.C. Cir. 2010), and the declarations speak to that need.

even if "the Court [may] conclude that FOSTA's provisions, on their face, present content-based restrictions of protected speech to which strict scrutiny applies," Gov't Opp. 41-42 n.13; *see also id*. 45, as that would rest on "FOSTA's provisions … on their face," not issues of fact.  *See supra* note 16.

The government has had its opportunity to show FOSTA satisfies strict scrutiny—in fact, it had the *burden* to do so— but made the case it has chosen to make, based on the language of the statute and its legislative history.  The government does not get to use discovery to try to make its case. The First Amendment bars the government from imposing speech restrictions then "simply go[ing] fishing for a justification by imposing obligations on the party seeking to defend its First Amendment rights."  *IMDB.com, Inc. v. Becerra*, 257 F. Supp. 3d 1099, 1102-03 (N.D. Cal. 2017) ("[T]he government has identified no factual question that would meaningfully affect the analysis of the constitutionality of the statute on its face."), *aff'd*, 962 F.3d 1111 (9th Cir. 2020).  The constitutional issue is ripe for decision.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their motion for summary judgment and declare FOSTA unconstitutional on the grounds set forth herein and enjoin enforcement of 18 U.S.C. § 2421A and the amendments to 18 U.S.C. §§ 1591 and 1595 and 47 U.S.C. § 230 that FOSTA enacted.

DATED:  October 26, 2020

Respectfully submitted,


_____/s/ Robert Corn-Revere_____
ROBERT CORN-REVERE
D.C. Bar No. 375415
RONALD G. LONDON
D.C. Bar No. 456284
**Davis Wright Tremaine LLP**
1301 K Street, NW, Suite 500 East
Washington, D.C. 20005
Telephone: (202) 973-4200
Facsimile: (202) 973-4499
Email: bobcornrevere@dwt.com
      ronnielondon@dwt.com


LAWRENCE G. WALTERS
Florida Bar No.: 0776599
*Pro Hac Vice*
**Walters Law Group**
195 W. Pine Ave.
Longwood, FL 32750-4104
Telephone: (407) 975-9150
Facsimile: (408) 774-6151
Email: Larry@FirstAmendment.com
      Paralegal@FirstAmendment.com


AARON MACKEY
D.C. Bar No. 1017004
DAVID GREENE
(admitted in California)
*Pro Hac Vice*
CORYNNE MCSHERRY
(admitted in California)
**Electronic Frontier Foundation**
815 Eddy Street
San Francisco, CA 94109
(415) 436-9333
Email:  amackey@eff.org
 davidg@eff.org

26

DAPHNE KELLER
Cal. Bar No. 226614
**Stanford Cyber Law Center**
616 Jane Stanford Way #E016
Stanford, CA 94305
(650) 725-0325
Email:  daphnek@stanford.edu

Attorneys for Plaintiffs