## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WOODHULL FREEDOM FOUNDATION, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES OF AMERICA, *et al.*, <br><br> *Defendants*. | Case No. 1:18-cv-1552-RJL |

## REPLY IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................... iv

INTRODUCTION .............................................................................................................. 1

ARGUMENT ..................................................................................................................... 2

     I.      FOSTA DOES NOT REGULATE PROTECTED SPEECH ............................... 2

          A.      Plaintiffs' Theory that All Prohibitions of Criminal Conduct on the
                 Internet Regulate Speech Is Incorrect ......................................................... 2

          B.      Plaintiffs Are Incorrect in Suggesting that Conduct Intended To Promote
                 or Facilitate an Act of Illegal Prostitution Is Necessarily Speech ............. 5

     II.      PLAINTIFFS FAIL TO SHOW FOSTA IS SUBSTANTIALLY
             OVERBROAD ......................................................................................... 7

     III.    PLAINTIFFS FAIL TO DEMONSTRATE THAT FOSTA'S TERMS ARE
             UNCONSTITUTIONALLY VAGUE.................................................... 13

     IV.    PLAINTIFFS FAIL TO SHOW THAT FOSTA'S SCIENTER
             REQUIREMENTS ARE "DEFECTIVE" ........................................... 14

     V.      PLAINTIFFS FAIL TO SHOW THAT  STRICT SCRUTINY APPLIES ........ 18

     VI.    PLAINTIFFS FAIL TO SUPPORT THEIR "SELECTIVE REMOVAL OF
             IMMUNITY" CLAIM............................................................................ 22

     VII.   PLAINTIFFS FAIL TO SUPPORT THE FACIAL INVALIDATION OF
             FOSTA ON EX POST FACTO GROUNDS ....................................... 24

CONCLUSION ............................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Cases**

*Abuelhawa v. United States,* 556 U.S. 816, 820 (2009) ................................................. 10

*ANSWER Coal. v. Basham*, 845 F.3d 1199 (D.C. Cir. 2017) ................................. 20, 21

*\*Backpage.com, LLC v. Lynch*, 216 F. Supp. 3d 96 (D.D.C. 2016) ........................ 5, 19

*Baggett v. Bullitt*, 377 U.S. 360 (1964) ....................................................................... 14

*Carmell v. Texas*, 529 U.S. 513 (2000) ....................................................................... 24

*City of Los Angeles, Calif. v. Patel*, 576 U.S. 409 (2015) .......................................... 24

*Cramp v. Bd. of Pub. Instruction*, 368 U.S. 278 (1961) .............................................. 14

*Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12 (1st Cir. 2016) ................................. 22

*Doe v. Kik Interactive, Inc.*, --- F. Supp. 3d ----, 2020 WL 5156641 (S.D. Fla. Aug. 31, 2020)  17

*Elonis v. United States*, 135 S. Ct. 2001 (2015) ......................................................... 18

*Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107 (N.D. Cal. 2020) .............. 22

*Freedom Watch, Inc. v. Google Inc.*, 816 F. App'x 497 (D.C. Cir. 2020) (per curiam) ............ 23

*Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949) ................................... 4, 20

*Hill v. Colorado*, 530 U.S. 703 (2000) ....................................................................... 14

*Jian Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433 (S.D.N.Y. 2014) ......................... 23

*La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981 (S.D. Tex. 2017) ............................ 3

*M.A. ex rel. P.K. v. Village Voice Media Holdings, LLC*,
    809 F. Supp. 2d 1041 (E.D. Mo. 2011) ................................................................. 22

*McCullen v. Coakley*, 573 U.S. 464 (2014) ................................................................... 4

*M.L. v. Craigslist Inc.*, 2020 WL 5494903 (W.D. Wash. Sept. 11, 2020) ................... 17

*Near v. Minnesota ex rel. Olson*, 283 U.S. 697 (1931) .................................................. 3

*Nicopure Labs, LLC v. Food & Drug Admin.*, 944 F.3d 267 (D.C. Cir. 2019) ............ 4

*Packingham v. North Carolina*, 137 S. Ct. 1730 (2017)  ................................................. 3

*Prager Univ. v. Google LLC*, 951 F.3d 991 (9th Cir. 2020) ....................................... 23

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015)  ......................................................... 20

*\*Rosemond v. United States*, 572 U.S. 65 (2014) ...................................... 8, 9, 11, 17

*Sandvig v. Sessions*, 315 F. Supp. 3d 1 (D.D.C. 2018),
   *appeal pending*, No. 20-5153 (D.C. Cir.)  ...................................................... 3, 21

*\*Smith v. California*, 361 U.S. 147 (1959)  .............................................................. 1, 23

*Song v. State*, No. 1766, 2020 WL 6130900 (Md. Ct. Spec. App. Oct. 19, 2020)  ...................... 8

*Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011)  ....................................................... 3

*Stogner v. California*, 539 U.S. 607 (2003) ............................................................ 24

*Telescope Media Group v. Lucero*, 936 F.3d 740 (8th Cir. 2019) .............................. 2-3

*Trudel v. SunTrust Bank*, 288 F. Supp. 3d 239 (D.D.C.),
   *aff'd*, 924 F.3d 1281 (D.C. Cir. 2019)  ......................................................... 21

*United States v. Bennett*, 95 F.3d 1158 (9th Cir. 1996) (unpublished) ....................... 12

*United States v. Caputo*, 201 F. Supp. 3d 65 (D.D.C. 2016) ..................................... 22

*United States v. Cordova*, 806 F.3d 1085 (D.C. Cir. 2015) ...................................... 10

*United States v. Hurant*, No. 16-cr-45, 2017 WL 3327581(E.D.N.Y. Aug. 1, 2017)  ............... 8

*United States v. Lacey*, 423 F. Supp. 3d 748 (D. Ariz. 2019) ................................ 6, 12

*United States v. Miselis*, 972 F.3d 518 (4th Cir. 2020) .............................. 11, 12, 15

*United States v. Perez*, 484 F.3d 735 (5th Cir. 2007) ......................................... 16

*United States v. Redman*, 887 F.3d 789 (7th Cir. 2018) ....................................... 16

*\*United States v. Williams*, 553 U.S. 285 (2008)  ....................... 5, 7, 9-10, 12, 15, 19

*United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994) .................................. 18

*U.S. WeChat Users Alliance v. Trump*,
   No. 20-5910, 2020 WL 5592848 (N.D. Cal. Sept. 19, 2020) ................................ 4-5

iv

*Virginia v. Hicks*, 539 U.S. 113 (2003) ....................................................................... 7

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ............................................... 20, 21

*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442 (2008) ............................. 24

*Weaver v. Graham*, 450 U.S. 24 (1981) .................................................................... 24

*Woodhull Freedom Found. v. United States* ("*Woodhull I*"),
   334 F. Supp. 3d 185 (D.D.C. 2018) .................................................................... 9

*Woodhull Freedom Found. v. United States* ("*Woodhull II*"),
   948 F.3d 363 (D.C. Cir. 2020) ....................................................... 9, 10, 11, 25

**Statutes**

Travel Act, Pub. L. No. 87-228, 75 Stat. 498 (1961)
   (codified as amended at 18 U.S.C. § 1952) ............................... 8, 11-12, 13, 20

Allow States and Victims to Fight Online Sex Trafficking Act of 2017 ("FOSTA"),
   Pub. L. No. 115-164, 132 Stat. 1253 (2018) ........................................... *passim*

18 U.S.C. § 2 ......................................................................................................... 13

18 U.S.C. § 1591 ............................................................................................ *passim*

18 U.S.C. § 1595 ............................................................................................ *passim*

18 U.S.C. § 1952 ............................................................................................ *passim*

18 U.S.C. § 2421A .......................................................................................... *passim*

47 U.S.C. § 230 .............................................................................................. *passim*

Md. Code Ann., Crim. Law § 11-304 ...................................................................... 8

N.Y. Penal Law § 230.25 ....................................................................................... 8

**Legislative Materials**

H.R. Rep. No. 115-572(I) (2018) ......................................................................... 14

**Other Authorities**

2 W. LaFave, Substantive Criminal Law § 13.2, p. 337 (2003) ................................... 8

## INTRODUCTION

Plaintiffs' pre-enforcement facial challenges to the Allow States and Victims to Fight Online Sex Trafficking Act of 2017 ("FOSTA"), Pub. L. No. 115-164, 132 Stat. 1253 (2018), fail as a matter of law. Plaintiffs fail to establish that FOSTA's provisions are substantially overbroad or content-based speech restrictions. Instead, their First Amendment claims rely on fallacies that fail to take account of FOSTA's terms or its target. First, despite Plaintiffs' concerted effort to conflate the two, the conduct involved in owning, managing, and operating an interactive computer service is usually not itself "online speech." Rather, a wide variety of business practices, including setting and following policies and standards and establishing payment mechanisms, are involved in such an endeavor. Second, unlike a printing press or bookstore, the Internet is not simply a passive repository of content but a place where illegal transactions—including the sale of children and adults for sex—can take place in real time. Only where the owner, manager, or operator of an Internet platform intends to promote or facilitate such an illegal transaction or knowingly participates in illegal sex trafficking do FOSTA's provisions apply. Thus, unlike the strict liability law at issue in *Smith v. California*, 361 U.S. 147 (1959), FOSTA does not seek to commandeer websites in an effort to censor the online speech of others. Rather, FOSTA targets the wrongful conduct of Internet platform owners, managers, and operators themselves when they intend to further or assist criminal conduct. These prohibitions do not implicate the First Amendment.

Nor are FOSTA's terms vague or lacking in scienter. Plaintiffs continue to highlight isolated statutory terms while ignoring their overall context, which makes clear that 18 U.S.C. § 2421A targets intentionally promoting or facilitating a specific act of selling another person for sex, while the definition of "participation in a venture" added to 8 U.S.C. § 1591 continues to require knowing participation in sex trafficking.

Finally, Plaintiffs fail to point to any successful pre-enforcement challenge to a law on ex post facto grounds, nor can such a challenge succeed when, even assuming retroactive applications would be invalid, any prospective applications will not violate the Ex Post Facto Clause. No law can conceivably violate the Ex Post Facto Clause in all its applications, as would be required to hold it facially invalid, and FOSTA is no exception. Judgment therefore should be granted to Defendants on all claims.

## ARGUMENT

## I.   FOSTA DOES NOT REGULATE PROTECTED SPEECH

### A.   Plaintiffs' Theory that All Prohibitions of Criminal Conduct on the Internet Regulate Speech Is Incorrect

As explained in Defendants' opening brief, FOSTA does not regulate speech, and any incidental impact on speech would relate to solicitations of illegal transactions, which are not protected under the First Amendment. Def. Mem. [ECF 35] at 18. FOSTA on its face contains no reference to speech. Plaintiffs effectively concede that none of FOSTA's terms identify acts of speech or expression, access to information, or any form of message. Instead, their theory is that FOSTA "targets speech" through the reference, in 18 U.S.C. § 2421A, to "own[ing], manag[ing], or operat[ing] an interactive computer service." Pl. Opp. [ECF 38] at 2.

Essentially, Plaintiffs argue that the mere fact that FOSTA references the Internet is, by itself, sufficient to implicate the First Amendment. But that premise is untenable. The conduct at issue here is the unlawful sale of children and coerced adults for sex, and the promotion or facilitation thereof. Try as they might, Plaintiffs cannot fit that conduct into any recognized category of First Amendment interests—whether the conduct occurs over the Internet or not. Neither the sale of another person for sex, nor any conduct that promotes or facilitates such a sale, is remotely equivalent to the creation of a wedding video, at issue in *Telescope Media Group v.*

*Lucero*, 936 F.3d 740, 752 (8th Cir. 2019), nor is it similar to the "sale, disclosure, and use of pharmacy records" at issue in *Sorrell v. IMS Health Inc*., 564 U.S. 552, 557 (2011). And FOSTA on its face neither imposes a *prior restraint* as in *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 702 (1931); restricts users' *access* to content as in *Sandvig v. Sessions*, 315 F. Supp. 3d 1, 12-13 (D.D.C. 2018), *appeal pending*, No. 20-5153 (D.C. Cir.), and *Packingham v. North Carolina*, 137 S. Ct. 1730, 1733 (2017); nor restricts online publishers' *editorial control* over the content appearing on their platforms, *see La'Tiejira v. Facebook, Inc*., 272 F. Supp. 3d 981, 991–92 (S.D. Tex. 2017). Plaintiffs' reliance on these and slew of other inapposite cases is misplaced.

Plaintiffs' theory ignores the transactional nature of the underlying criminal conduct at issue. Despite Plaintiffs' attempted printing-press analogy, the Internet—an online space where public and private entities and individuals create and control their own platforms and can use them for a vast array of purposes, whether to post content, engage in social interactions, conduct commercial transactions, play games, or allow others to do all of the above—is not equivalent to the press, which is an institution that serves a unique First Amendment-protected function, not simply a venue with multiple uses. Rather than a printing press, a better analogy to the Internet would be a series of auditoriums, where basketball games, bake sales, concerts, political debates, or any number of other activities might occur, including illegal activities that have nothing to do with speech or expression. The fact that some of those activities might implicate the First Amendment does not mean that any regulation of conduct in auditoriums is a regulation of speech.

FOSTA's prohibitions target the illegal sale of persons for sex. That it focuses on such transactions when they take place, in part, on the Internet reflects Congress's conclusion that those who commit sex trafficking offenses often use the Internet to do so, and that the owners, operators, and managers of Internet platforms should not be able to take advantage of the immunity conferred

by 47 U.S.C. § 230—which itself applies only to the Internet—when they intentionally facilitate sex trafficking crimes.[1] FOSTA's prohibitions no more regulate speech than do laws regulating the distribution of drugs. *See Nicopure Labs, LLC v. Food & Drug Admin.*, 944 F.3d 267, 291 (D.C. Cir. 2019) (holding distribution of free e-cigarette samples was non-expressive conduct, not speech). This conclusion is clear from the fact that FOSTA does not reference content, and the content of any speech or message does not determine whether a violation of 18 U.S.C. § 2421A has occurred. Instead, in FOSTA, as in a law prohibiting the facilitation of other illegal transactions, the underlying criminal conduct is the sex trafficking or prostitution, regardless of the words used to achieve it. Whether an individual on a street corner purporting to offer free candy could be prosecuted for illegal drug distribution depends entirely on whether that individual was in fact offering to sell illegal drugs, and did so with the requisite intent, and no one would claim that the First Amendment was implicated by the law that prohibited that conduct, on its face or as applied. *See Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949) ("[I]t has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed").

Nor does the recent decision in *U.S. WeChat Users Alliance v. Trump*, No. 20-5910, 2020 WL 5592848 (N.D. Cal. Sept. 19, 2020), help Plaintiffs' argument. The "transactions" at issue in *WeChat*, which Plaintiffs attempt to highlight, are not parallel to the sale of persons for sex; rather,

---

[1] The Court in *McCullen v. Coakley*, 573 U.S. 464, 482 (2014), recognized that a State legislature could reasonably  enact a law setting buffer zones outside abortion clinics, but not other buildings, to address "a problem that was, in its experience, limited to abortion clinics." Because *McCullen* addressed a law regulating access to public sidewalks, a quintessential public forum, the Court applied intermediate scrutiny. *Id.* at 477. Plaintiffs have not sought to rely on a public forum analysis, nor is the Internet a public forum, at least for purposes of regulating the conduct of Internet platform owners and operators. *See infra* Part V n.13.

they relate to the technological functioning of the WeChat application itself, including its online payment functions. *See id.* at *1. The court there concluded that the First Amendment was implicated, not due to the nature of the transactions at issue, but because the prohibition of those transactions would cause the application to shut down. *See id.* (because "consumers in the U.S. [would be unable to] download or update the WeChat app [or] use it to send or receive money," the app "likely will be useless"). The Court was persuaded that the First Amendment was implicated because the app was the "key platform for communication" for the Chinese-American and Chinese-speaking community in the United States. *See id.* at *10. In contrast, FOSTA does not threaten to shut down the Internet. It merely allows website owners, operators, and managers to be held responsible if the government is able to prove that they intentionally facilitated an act of illegal prostitution or sex trafficking.

### B.   Plaintiffs Are Incorrect in Suggesting that Conduct Intended To Promote or Facilitate an Act of Illegal Prostitution Is Necessarily Speech

The only reference in 18 U.S.C. §§ 1591, 1595, or 2421A to speech is the term "advertising" in § 1591(a)(1)—a provision that pre-dates FOSTA. Because the prohibited advertising at issue in § 1591(a)(1) involves the sale of children or adults subject to force, fraud, or coercion for sex, it is not entitled to First Amendment protection. *Backpage.com, LLC v. Lynch*, 216 F. Supp. 3d 96, 103 (D.D.C. 2016) (holding that the "advertisements of illegal sex trafficking of a minor or a victim of force, fraud, or coercion" prohibited by § 1591(a) "are not afforded First Amendment protection") (citing *United States v. Williams*, 553 U.S. 285, 297 (2008) ("Offers to engage in illegal transactions are categorically excluded from First Amendment protection.")).

Plaintiffs do not dispute this conclusion. Nowhere in their brief do they suggest that the advertising or other conduct relating to sex trafficking identified in § 1591(a)(1) qualifies as protected speech. Yet Plaintiffs nevertheless insist that the intentional promotion or facilitation of

an act of illegal prostitution might be afforded First Amendment protection, on the assumption that such conduct is tantamount to "speech." Pl. Opp. at 6. But this assumption cannot be squared with the complete absence from § 2421A of any reference to speech—even to unprotected speech such as the advertising at issue in § 1591(a)(1). Section 2421A nowhere mentions the content of websites or online communications, or any message transmitted through such media. Rather than such "online speech," Pl. Opp. at 2, its focus is the conduct of individuals who run websites to intentionally promote or facilitate the efforts of others to sell children or coerced adults for sex.

A sample of what such conduct might entail can be seen in the prosecutions of Backpage.com and its executives. (The company, and its CEO and Marketing Director, pleaded guilty.) The conduct described in their indictment—which provided a significant model of what Congress intended to prohibit through FOSTA—shows that the individuals who ran Backpage were not held vicariously liable for their passive posting of third parties' online advertisements. *United States v. Lacey*, 423 F. Supp. 3d 748, 753-56 (D. Ariz. 2019). Rather, the indictment's "lengthy summary" described conduct intended to further Backpage users' ability to sell children and others for sex, including not only editing users' advertisements to allow them to "evade detection" as solicitations for sex with children, *id.* at 755, but also adopting policies to artificially limit automatic warnings when customers used search terms indicating they wanted to buy children for sex, and instructing moderators not to send alerts of potential child exploitation to the National Center for Missing and Exploited Children, as well as laundering payments in order to disguise the fact that they were the proceeds of illegal activity. Indictment [*Lacey* ECF 3] ¶¶ 12-14, No. 2:18-cr-422 (D. Ariz. filed Mar. 28, 2018); *see also* Equality Now, Amicus Br., *Woodhull II*, at 8-9 (D.C. Cir. filed Apr. 22, 2019) (listing additional actions taken by Backpage including "removing phone numbers, email addresses, IP addresses, and metadata from sex ads to frustrate the pursuit

of sex traffickers by law enforcement," "deliberately removing advertisements posted by anti-trafficking groups and law enforcement agencies seeking to aid sex trafficking victims," and "allowing traffickers to pay for ads with prepaid credit cards and cryptocurrencies to evade law enforcement"). Such examples illustrate that the conduct at issue in a prosecution under FOSTA's provisions has nothing to do with protected speech at all, much less with online speech of those who run Internet platforms. Plaintiffs' attempt to rewrite FOSTA's statutory language does nothing to advance their First Amendment claims. Rather, FOSTA on its face does not implicate the First Amendment, and Plaintiffs' First Amendment claims should be rejected for that reason alone.

## II.     PLAINTIFFS FAIL TO SHOW FOSTA IS SUBSTANTIALLY OVERBROAD

Plaintiffs fail to meet their burden to show that each of the FOSTA provisions that they challenge is substantially overbroad in violation of the First Amendment.[2] Because, as discussed above, FOSTA's provisions on their face do not regulate speech at all, or at most implicate unprotected speech involved in the illegal advertising of persons for sex, Plaintiffs' overbreadth challenge fails at the outset. *Virginia v. Hicks*, 539 U.S. 113, 124 (2003) (laws "not specifically addressed to speech" will "[r]arely, if ever" be deemed overbroad); *Williams*, 553 U.S. at 298-99 (rejecting overbreadth challenge after concluding statute at issue addressed only illegal transactions excluded from First Amendment protection). The cases Plaintiffs cite as invalidating facial restrictions on online speech or access to online content, Pl. Opp. at 10, are inapposite.

Plaintiffs' overbreadth claim hinges on their assertion that § 2421A prohibits "any online

---

[2] Contrary to Plaintiffs' suggestion, there is no "different doctrine" called "overbreadth as to standing," Pl. Opp. at 9-10, nor have Defendants misstated the relevant standard for an overbreadth analysis. Def. Mem. at 16. Nor is it "beside the point" that the overbreadth doctrine provides an exception to traditional standing, Pl. Opp. at 9. Rather, that is one reason Plaintiffs bear the burden to demonstrate overbreadth, *Hicks*, 539 U.S. at 122, and that courts "vigorously enforce[]" the requirement that "overbreadth be *substantial*." *Williams*, 553 U.S. at 292.

speech that can be said to 'promote' or 'facilitate' prostitution or trafficking, even abstractly." Pl. Opp. at 19. Indeed, Plaintiffs' argument begins and ends with the notion that § 2421A on its face prohibits online speech. But Plaintiffs simply ignore the actual language and context of § 2421A, which defeats their overbreadth claim at the outset.

First, as discussed in detail *supra* Part I.B, § 2421A does not reference online speech; instead, it refers to conduct involved in owning, managing, or operating an Internet platform.

Second, § 2421A does not refer to promoting or facilitating "prostitution" or "trafficking" in the abstract. Instead, the objects of the verbs "to promote or facilitate"—"the prostitution of another person," 18 U.S.C. § 2421A(a), or "the prostitution of 5 or more persons," *id.* § 2421A(b)(1)—designate specific acts, with an affirmative defense where the promotion or facilitation of prostitution at issue is legal, *id.* § 2421A(e). Plaintiffs entirely ignore these statutory terms, which make clear that the requisite intent in § 2421A must relate to specific crimes.[3]

Third, § 2421A is akin to an aiding and abetting offense, as demonstrated both by its use of the terms "promote" and "facilitate" and by its inclusion of a specific intent requirement. *See* Aid and Abet, Black's Law Dictionary (10th ed. 2014) (defining "aid and abet" as "to assist or facilitate the commission of a crime, or to promote its accomplishment"); *Rosemond v. United States*, 572 U.S. 65, 71 (2014) (an accomplice is liable as a principal when he gives "assistance or encouragement . . . with the intent thereby to promote or facilitate commission of the crime") (citing 2 W. LaFave, Substantive Criminal Law § 13.2, p. 337 (2003)). Section 2421A, like aiding

---

[3] Significantly, State laws commonly identify "promotion" of prostitution as a crime. *E.g., Song v. State*, No. 1766, 2020 WL 6130900, at *6 (Md. Ct. Spec. App. Oct. 19, 2020) (defendant "had the intent to promote a prostitution-related crime as proscribed by [Md. Code Ann., Crim. Law] § 11-304(a)(1)"); *United States v. Hurant*, No. 16-cr-45, 2017 WL 3327581, at *1-2 (E.D.N.Y. Aug. 1, 2017) (defendant pled guilty to "promotion of prostitution" in violation of the Travel Act, 18 U.S.C. § 1952, and N.Y. Penal Law § 230.25).

and abetting offenses, necessarily relates to underlying conduct that is already illegal. *See Rosemond*, 572 U.S. at 76 ("[A] person aids and abets *a crime* when (in addition to taking the requisite act) he intends to facilitate that offense's commission." (emphasis added)). The affirmative defense in § 2421A(e), which Plaintiffs ignore, Pl. Opp. at 19, leaves no doubt that the only "prostitution of another person" at issue in § 2421A is illegal prostitution.

For their contrary interpretation, Plaintiffs rely on the Court of Appeals' majority opinion in *Woodhull Freedom Found. v. United States* ("*Woodhull II*"), 948 F.3d 363 (D.C. Cir. 2020). But the majority left open the question of how to interpret § 2421A. Rather than resolving that question, it indicated that it "need not" agree with Plaintiff's view that § 2421A "encompass[es] advocacy or educational activities" to hold that Andrews' intended conduct was "'arguably proscribed' by FOSTA"—and was thus sufficient for purposes of alleging standing. *Woodhull II*, 948 F.3d at 372-73 (pointing to the website that Andrews operates as "allow[ing] sex workers to share information about online payment processors like PayPal," which could facilitate a specific act of illegal prostitution); *id.* at 375 (Katsas, J., concurring) (majority "neither adopt[ed] [Plaintiffs' proposed] construction of FOSTA nor follow[ed] it to its logical conclusion that all five plaintiffs have standing," but identified that construction as "possible"). Plaintiffs therefore cannot rely on the Court of Appeals majority for their proposed interpretation.

Meanwhile, Judge Katsas' concurrence *did* reach a conclusion, agreeing with this Court that Plaintiffs' proposed broad construction of FOSTA "ignores or overreads all the key statutory terms." *Id.* (Katsas, J., concurring). Indeed, the fulsome statutory analysis that this Court previously conducted—and that the Court of Appeals majority did not reject—shows that the vast majority of applications of FOSTA will not implicate the First Amendment at all. *See Woodhull Freedom Found. v. United States* ("*Woodhull I*"), 334 F. Supp. 3d 185, 199-201 (D.D.C. 2018).

Both Plaintiffs and the *Woodhull II* majority quote *Williams*' statement that, "taken in isolation," the term "promotes" is "susceptible of multiple and wide-ranging meanings." *See Williams*, 553 U.S. at 294.[4] But statutory terms by their nature rarely appear "in isolation." In *Williams*, the statutory term "promote" appeared in a list including "solicits," "distributes," and "advertises," and the Court concluded from that context that the word had "a transactional connotation" and "is most sensibly read to mean the act of recommending purported child pornography to another person for his acquisition." *See id.*

Contrary to Plaintiffs' view, the analysis in *Williams* does not suggest the terms "promote" and "facilitate" are overbroad *unless* they appear alongside other "operative verbs" that "narrow" or "limit" their meaning. *See* Pl. Opp. at 12. Rather, *Williams* followed a broader principle of statutory interpretation—looking at "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *See United States v. Cordova*, 806 F.3d 1085, 1099 (D.C. Cir. 2015). In *Williams*, the list of verbs was only one of five statutory elements that informed the Court's interpretation, allowing it to conclude that the terms at issue only covered offers to engage in illegal transactions that were categorically excluded from First Amendment protection. *See Williams*, 553 U.S. at 294-97. The Court also took into account the provision's scienter requirement as well as other phrases within the provision. *See id.*

*Williams* therefore supports the prior analyses of this Court and Judge Katsas. As Judge

---

[4] Significantly the Court in *Williams* did *not* suggest that the term "facilitate" was similarly susceptible of multiple meanings in isolation. The term "facilitate" is commonly used to designate acts that aid specific crimes, and Plaintiffs cite no instance where a court held that term made such a law either substantially overbroad or unconstitutionally vague. To the contrary, *Abuelhawa v. United States,* 556 U.S. 816, 820 (2009), discussed at length by Plaintiffs, Pl. Opp. at 16-18, only illustrates—as Judge Katsas recognized—that the term "facilitate" is well understood in the criminal law context as a synonym of "aid" or "assist," and is not overbroad or vague. *See Woodhull II*, 948 F.3d at 375 (Katsas, J., concurring) (citing *Abuelhawa*, 556 U.S. at 821).

Katsas and this Court recognized, the terms "promote" and "facilitate" in § 2421A do not occur in isolation. Indeed, the very fact that those two verbs are used together in the scienter clauses of § 2421A(a) and (b), far from making § 2421A vague or overbroad, clearly demonstrates that § 2421A is essentially an "aiding and abetting" statute, with respect to specific illegal acts of prostitution or sex trafficking. As Judge Katsas explained, "FOSTA's requirement of action with an 'intent to promote or facilitate' prostitution" "track[s] almost verbatim the canonical formulation for the offense of aiding and abetting." *See Woodhull II*, 948 F.3d at 375 (Katsas, J., concurring) (citing *Rosemond*, 572 U.S. at 74).

That, among other things, distinguishes § 2421A from the Anti-Riot Act, which the Fourth Circuit construed as setting forth an "*attempt* offense"—an inchoate offense covering acts "which may be entirely innocent when considered alone." *United States v. Miselis*, 972 F.3d 518, 535 (4th Cir. 2020). It was in light of the specific context of a statute prohibiting the promotion or encouragement of rioting that the court in *Miselis* deemed the term "promote" overbroad. Contrasting the "object (grammatically speaking)" of "promote" in the statute at issue in *Williams* (child pornography) with that in the Anti-Riot Act (riot), the court concluded that because a riot "can't materialize until a sufficient number of people are persuaded to show up at a certain future time and place," and because the person promoting a riot cannot know whether that will ever happen, "[i]n this statutory context," the term "'promote' refers to abstract advocacy." *See id.* at 536-37. Here, the grammatical object (prostitution of another person) is not similarly inchoate but refers to the sale of another person for sex. Thus, in contrast to the Anti-Riot Act, § 2421A addresses conduct intended to promote or facilitate a specific crime as it is already taking place.

Plaintiffs criticize § 2421A because it lacks all the verbs included in the Travel Act, Pl. Opp. at 12, but this distinction has no bearing at all on the meaning of "promote" or "facilitate."

The Travel Act prohibits traveling or using facilities such as the Internet with intent to "promote, manage, establish, carry on, or facilitate the provision, management, establishment, or carrying on, of any unlawful activity." 18 U.S.C. § 1952(a)(3). While Plaintiffs make much of the Travel Act's inclusion of the terms "manage, establish, carry on," as well as "promote" or "facilitate the promotion" of, they fail to explain how the former terms serve to "limit" or "narrow" the meaning of "promote" or "facilitate." *See* Pl. Opp. at 12. Certainly, the terms "manage," "establish," and "carry on" are not synonyms of "promote" or "facilitate." Instead, the former terms apply to acts that carry out the unlawful activity while the terms "promote" and "facilitate" cover conduct that assists the unlawful activity. The Travel Act thus prohibits both committing a crime and furthering that crime. *See, e.g., United States v. Bennett*, 95 F.3d 1158, at *4 (9th Cir. 1996) (unpublished) (upholding jury instruction that terms "promote" or "facilitate the promotion" in the Travel Act referenced conduct "that would cause the unlawful activity to be accomplished or that [would] assist[] in the unlawful activity in any way"). The fact that §2421A *only* targets acts that promote or facilitate a crime, rather than the commission of the underlying crime itself, makes it *narrower* in scope than the Travel Act, not overbroad. *Cf. Lacey*, 423 F. Supp. 3d at 765 (rejecting Backpage executives' overbreadth challenge to Travel Act).

The only "significance of the absence of . . . companion transactional verbs in FOSTA," Pl. Opp. at 13, is that the conduct targeted by FOSTA is not the transaction itself, but furthering the transaction. Thus, while the term "promote" in § 2421A does not mean "to encourage" something that has not yet begun to occur, as in the Anti-Riot Act, *Miselis*, 972 F.3d at 537, it also does not mean what it meant in the statute at issue in *Williams*, 553 U.S. at 294 ("*recommending* purported child pornography to another person" (emphasis added)). Rather, the term "promote" in § 2421A resembles the term "facilitate," and both terms, when combined with the direct object

"prostitution of another person," prohibit owners, managers, and operators of websites from acting with intent to further the progress of, or aid in, a specific act of illegal prostitution or sex trafficking. In other words, website owners cannot intentionally assist in the commission of specific crimes.[5] The Court should grant judgment to Defendants on Plaintiffs' overbreadth claim.

## III.   PLAINTIFFS FAIL TO DEMONSTRATE THAT FOSTA'S TERMS ARE UNCONSTITUTIONALLY VAGUE

As discussed in Defendants' opening brief, the statutory terms that Plaintiffs challenge as vague are in no way similar to those previously held to introduce "fundamental subjectivity" into a statute, nor do they fail to provide sufficient notice of what is prohibited or sufficiently limit the scope of the statute's potential enforcement. Def. Mem. at 29-32. FOSTA's provisions give fair notice that website owners, managers, and operators may not take actions intended to assist others in carrying out a specific sale of a person for sex, and may not benefit from knowing participation in a sex trafficking venture. Whether or not the Court applies a "more stringent" vagueness test on the ground that FOSTA's terms implicate the First Amendment—and as discussed above, they do not—these terms do not qualify as vague.

Plaintiffs essentially concede that FOSTA's terms are not vague because their only argument to the contrary is that the particular terms they identify are not "define[d]." Pl. Mem. at 20-21. Plaintiffs cite no authority suggesting Congress must separately define every statutory term (including those found within another definition, such as § 1591(e)(4)), nor do they cite any case holding the terms at issue—"promote," "facilitate," "assisting," "supporting," "prostitution of

---

[5] Plaintiffs' suggestion that § 2421A "stands alone" in Chapter 117 as targeting promotion and facilitation, Pl. Opp. at 14, is of no consequence. As described in Defendants' opening brief, this provision was included in FOSTA primarily to serve as a model for the State laws referenced in 47 U.S.C. § 230(e)(5)(C). Similar conduct is covered elsewhere in the federal criminal code, including in 18 U.S.C. § 2 and the Travel Act.

another person," "contributed to sex trafficking"—were vague. To the contrary, all of these terms

can easily be understood within their statutory contexts. *See, e.g.*, *supra* Part II (addressing terms

"promote" and "facilitate"); Def. Mem. at 29-32.[6] Nor do Plaintiffs cite any support for the notion

that statutes setting forth private rights of action, or excluding certain State prosecutions from a

statutory liability shield, are subject to any heightened vagueness inquiry. Finally, Plaintiffs

misconstrue FOSTA's scienter requirements—entirely mischaracterizing a House Report that

focused on § 2421A, not § 1591(e)(4) as Plaintiffs claim, and that nowhere suggests § 1591(e)(4)

reduced the *mens rea* applicable to § 1591(a)(2).[7] Their attempt to discount the value of scienter

in mitigating any possible vagueness relies on two cases addressing vaguely-worded loyalty oaths,

Pl. Opp. at 22 (citing *Baggett v. Bullitt*, 377 U.S. 360, 366–67 (1964); *Cramp v. Bd. of Pub.*

*Instruction*, 368 U.S. 278, 281 (1961))—a far cry from the sex trafficking-related prohibitions at

issue here. Plaintiffs fail to address authority plainly stating that a "knowing" *mens rea* may be

"sufficient to ameliorate vagueness concerns." Def. Mem. at 31-32 (quoting *Hill v. Colorado*, 530

U.S. 703, 732 (2003)). The Court thus should grant judgment to Defendants on this claim.

## IV.   PLAINTIFFS FAIL TO SHOW THAT FOSTA'S SCIENTER REQUIREMENTS ARE "DEFECTIVE"

As discussed in Defendants' opening brief, FOSTA's scienter requirements are legally

---

[6] Plaintiffs fail to meaningfully contest Defendants' opening brief on these points, instead mischaracterizing Defendants' discussion of "contribute" as if it related to the terms "promote" and "facilitate" rather than "contributed to sex trafficking." Pl. Opp. at 22 n.14.

[7] In discussing the utility of "[a] new statute that . . . targets promotion and facilitation of prostitution," rather than "advertising" related to sex trafficking, the report clearly referenced § 2421A, not § 1591(e)(4). *See* H.R. Rep. No. 115-572(I), at 5, 8-9. Moreover, far from suggesting that the scienter requirement in § 1591 would be reduced, the report recognized that a conviction under either § 2421A(a) or (b) would require "deliberate" promotion or facilitation of prostitution of another person. *Id.* at 8-9. The report simply explains why Congress removed § 230 immunity for offenses involving *prostitution* as well as sex trafficking, since "online advertisements rarely, if ever, indicate that *sex trafficking* is involved." H.R. Rep. No. 115-572(I), at 5 (emphasis added).

sufficient. Def. Mem. at 34-35. Plaintiffs' arguments to the contrary are inapposite, first of all, because they assume that FOSTA's provisions regulate speech protected by the First Amendment—which they do not. *See supra* Part I. Moreover, Plaintiffs' blatant disregard of FOSTA's plain language and mis-citation of cases do nothing to bolster their claim.

Contrary to Plaintiffs' contention, § 2421A does not criminalize "guiltless knowing behavior," Pl. Opp. at 23 (again citing the Supreme Court's inapposite holding in *Baggett* regarding loyalty oaths). Plaintiffs recycle their previous flawed analysis of *Williams* and *Miselis* to argue that the terms "promote" and "facilitate" must, but do not, relate to specific transactions. Pl. Opp. at 23-24.[8] But as discussed *supra* Part II, § 2421A does require that the operator of an Internet platform intend to further a specific act of illegal prostitution.

Plaintiffs' further attack on § 2421A(b) is nothing short of nonsensical. Imposing a separate, additional scienter requirement for the additional conduct described as an aggravated offense in § 2421A(b)(2) cannot possibly "strip[] away" the scienter requirement applicable to the non-aggravated violation. *See* Pl. Opp. at 24. Despite Plaintiffs' distortion, § 2421A is plain. Section 2421A(a) requires an intent to promote or facilitate a single act of illegal prostitution. *See* 18 U.S.C. § 2421A(a). And § 2421A(b)(2) requires the same intent applicable to § 2421A(a)—relating to a single act of illegal prostitution of another person—*together with* a reckless disregard of the fact that the website owner's conduct contributed to illegal sex trafficking, as that crime is described in § 1591(a). *See* 18 U.S.C. § 2421A(a), (b). In this respect, the structure of § 2421A is

---

[8] In fact, neither *Williams* nor *Miselis* assessed the sufficiency of scienter requirements. To the extent either case addressed scienter, it was only to describe the statutory terms at issue. *See Williams*, 553 U.S. at 294 (interpreting, but not assessing adequacy of, scienter requirement); *Miselis*, 972 F.3d at 536-37 (failing to discuss scienter). Plaintiffs here merely attempt to repackage their earlier overbreadth arguments as scienter arguments, but in neither case do they accurately characterize *Williams* or *Miselis* or properly interpret FOSTA's provisions.

no different from a law criminalizing certain intentional conduct while imposing what amounts to a sentencing enhancement if the person acted with reckless disregard that his conduct contributed to a more serious offense, such as a crime of violence. *See, e.g.*, *United States v. Redman*, 887 F.3d 789, 792 (7th Cir. 2018) (upholding sentencing enhancement based on reckless disregard of risk of death or serious bodily injury); *United States v. Perez*, 484 F.3d 735, 745 (5th Cir. 2007) (recognizing sentencing enhancement could apply based on reckless disregard or intent).

Plaintiffs' attack on the definition added in § 1591(e)(4) also ignores the plain language of the statute. Both before and after the passage of FOSTA, a prosecution under § 1591(a)(2) requires the government to prove knowing participation in sex trafficking. *See* 18 U.S.C. §1591(a)(2) (prohibiting "knowingly . . ." benefitting "from participation in a [sex trafficking] venture").[9] Plaintiffs' repeated assertion that FOSTA's added definition of "participation in a venture" in § 1591(e)(4) somehow lowered the *mens rea* required for a § 1591(a)(2) prosecution is incorrect, principally because the definition *repeats* the "knowing" *mens rea* standard, and expressly ties the requisite knowledge to an illegal act under § 1591(a)(1): "*knowingly* assisting, supporting, or facilitating a violation of [§] 1591(a)(1)." 18 U.S.C. § 1591(e)(4) (emphasis added). Plaintiffs suggest that the new definition lessens the nature of involvement required under § 1591(a)(2), apparently on the theory that "assisting, supporting, or facilitating" would not normally qualify as "participation." Pl. Opp. at 25. Not only does this argument fail to address scienter, but it is also

---

[9]Plaintiffs make much of the "reckless disregard" standard that applies to a prosecution under either § 1591(a)(1) or (a)(2) where the underlying violation in (a)(1) is *not* advertising, and specifically relates to the use of a child or adult subjected to force, fraud, or coercion, *see* 18 U.S.C. § 1591(a). This standard pre-dates FOSTA and thus is not at issue in this case. In any event, where the operator of an Internet platform is accused of benefitting financially from sex trafficking advertisements on his website, Plaintiffs do not dispute that § 1591(a) requires specific *knowledge* of sex trafficking, nor do Plaintiffs show that the "reckless disregard" standard is problematic, particularly when the § 1591(a)(1) offense does not involve advertising.

wrong. The terms "assisting, supporting, or facilitating" here, when used in conjunction with a specific criminal violation, are (like "promote" and "facilitate" in § 2421A) similar to aiding and abetting language, which the Supreme Court has recognized as a form of participation in a crime. *See Rosemond*, 572 U.S. at 76-77.

Plaintiffs also suggest that recent cases have "struggled" to interpret § 1591(a)(2) with the new definition and have "reach[ed] conflicting interpretations." Pl. Opp. at 26. But they again egregiously mischaracterize the cases that they cite. Both *M.L. v. Craigslist Inc.*, 2020 WL 5494903 (W.D. Wash. Sept. 11, 2020), and *Doe v. Kik Interactive, Inc.*, --- F. Supp. 3d ----, 2020 WL 5156641 (S.D. Fla. Aug. 31, 2020), as well as the cases collected by each, were construing the requirements of 18 U.S.C. § 1595—a civil cause of action for human trafficking victims—not the criminal prohibition in § 1591(a)(2). Rather than being confused, the court in *M.L.*, citing unanimous prior decisions, held that it was "clear that this Court should apply a negligence, constructive knowledge standard" for the plaintiff's § 1595(a) claim. *M.L.*, 2020 WL 5494903, at *5. The court in *Doe*, on the other hand, concluded that because the § 1595(a) claim there was asserted against an interactive computer service, FOSTA's lifting of the § 230 shield for § 1595 civil actions where the underlying conduct "constitutes a violation of [§] 1591," 47 U.S.C. § 230(e)(5)(A), effectively imported the higher mens rea standard of § 1591 into § 1595. *Doe*, 2020 WL 5156641, at *7 (recognizing § 1591 "requires knowing and active participation in sex trafficking by the defendants"). Although that argument was apparently neither raised nor addressed in *M.L.*, and the two courts thus applied different *mens rea* standards for § 1595 claims, neither court expressed any confusion about the standard applicable to § 1591. Plaintiffs raise no argument with respect to the scienter requirement of § 1595, so the cases they cite are inapposite.

Plaintiffs' "defective scienter" claims therefore should be rejected because each of the

provisions they challenge has an appropriate *mens rea* requirement. Moreover, the undisputed power of courts to infer the necessary scienter in the course of an actual criminal proceeding strongly weighs against holding a statute facially invalid on this basis. *See Elonis v. United States*, 135 S. Ct. 2001, 2012 (2015); *see also United States v. X-Citement Video, Inc*., 513 U.S. 64, 78 (1994) (applying canon of constitutional avoidance in support of reading "knowingly" scienter requirement to apply to both statutory elements). Plaintiffs' argument that *Elonis* "did not [] say any such thing" ignores the logical implication of the Court's holding. If it is appropriate to infer the necessary scienter after an indictment, in order to avoid its invalidation, it is necessarily inappropriate to invalidate the law on its face before an indictment is even issued. The Court therefore should grant judgment on this claim in favor of Defendants.

## V.    PLAINTIFFS FAIL TO SHOW THAT STRICT SCRUTINY APPLIES

As discussed in Defendants' prior briefing, FOSTA does not regulate speech based on its content so as to require strict scrutiny, most fundamentally because it does not, on its face, regulate speech at all. Def. Mem. at 22-27. In particular, § 2421A does not "criminaliz[e] . . . *speech* that 'promote[s] or facilitate[s] the prostitution of another person," as Plaintiffs wrongly insist. Pl. Opp. at 29 (emphasis added).[10] By its plain terms, § 2421A prohibits "own[ing], manag[ing], or operat[ing] an interactive computer service"—which, no matter how often Plaintiffs misquote it, is not synonymous with "speaking"—"with the intent to promote or facilitate the prostitution of another person." 18 U.S.C. § 2421A(a). Speech is not mentioned in this provision, and the First Amendment is not implicated, for the reasons stated *supra* Part I.

In arguing to the contrary, Plaintiffs simply repeat their assertion that § 2421A does

---

[10] Plaintiffs abandon their strict scrutiny claims with respect to FOSTA's other provisions, and such claims should be rejected for the reasons set forth in Defendants' prior briefing.

regulate speech, and does so based on its content, but their argument is devoid of any supporting statutory analysis. Plaintiffs thus assert that "interactive computer services" "necessarily convey speech," Pl. Opp. at 30, but § 2421A applies to owning, managing, or operating those services, not *conveying* speech through them. As described *supra*, Part I.B., the conduct that might demonstrate an intent to promote or facilitate an act of illegal prostitution may well involve no online speech by the website owner, manager, or operator. Indictment [ECF 3], *United States v. Lacey*, No. 2:18-cr-422, ¶¶ 12-14; Equality Now, Amicus Br., *Woodhull II*, at 8-9. Plaintiffs also persist in their fallacious suggestion that § 2421A prohibits "speech such as harm-reduction education for sex workers, and advocacy seeking decriminalization." Pl. Opp. at 29. But as discussed *supra* Part II, this construction is foreclosed because the object, in a grammatical sense, of "promote or facilitate" in § 2421A is not "prostitution" in general, but the entire noun phrase, "the prostitution of another person." 18 U.S.C. § 2421A(a), (b). "Prostitution," in this sense, derives from the transitive verb, to "prostitute," meaning to "offer (someone) for sexual activity in exchange for payment."[11] In conjunction with the phrase "of another person," the word refers to a specific act of selling someone, not to the general practice or occupation of prostitution.

To the extent online speech is involved, it is the speech of those who perpetrate the illegal "prostitution of another person," not of the website owner who acts intending to promote or facilitate that illegal transaction. But § 2421A does not target the online speech of the person who illegally sells another person for sex.[12] Nor does it "target[] promotion or facilitation of prostitution

---

[11] Dictionary, Google.com (search: define 'to prostitute") (from Oxford Languages); *see also* OED.com (prostitute, *v.* = "to offer for sex").

[12] Rather, as discussed above, the pre-FOSTA provision § 1591(a)(1) targets such illegal "advertis[ements]." 18 U.S.C. § 1591(a)(1). That provision is not at issue here, and any such advertisements are not protected by the First Amendment. *Williams*, 553 U.S. at 297; *Backpage.com, LLC*, 216 F. Supp. 3d at 103.

*via* interactive computer service," as Plaintiffs claim. Pl. Opp. at 29 (emphasis added). Instead, it targets actions *by* the Internet platform owner himself, which would rarely, if ever, be manifested through the owner's online speech. The First Amendment is not implicated simply because criminal activity—including the furthering of criminal conduct by others—may involve speaking. *Giboney*. 336 U.S. at 502. Plaintiffs' description of hypothetical "speech" that "involves" prostitution or "promotes," as opposed to "condemns," the general practice of prostitution, Pl. Opp. at 31, is irrelevant because § 2421A on its face does not prohibit such speech.

Because § 2421A on its face does not regulate, or even reference, speech, it is necessarily facially content-neutral. *ANSWER Coal. v. Basham*, 845 F.3d 1199, 1209 (D.C. Cir. 2017) ("The regulation at issue here is . . . clearly content neutral because it makes no reference at all to speech, let alone the content of speech."). And it is content neutral not only on its face but also because it "'serves purposes unrelated to the content of expression,'" pursuant to the analysis described in *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). *See Reed v. Town of Gilbert*, 576 U.S. 155, 167 (2015) (explaining that *Ward* applies "if a statute is content neutral" on its face (internal quotation omitted)); *ANSWER*, 845 F.3d at 1210 (applying *Ward* in public forum case after determining regulation was facially content neutral). Here, Congress enacted FOSTA in furtherance of its goal to combat illegal prostitution and sex trafficking, and in particular to clarify that § 230 should not shield websites from prosecution or liability that they would otherwise face under preexisting laws. FOSTA § 2. In particular, since the Travel Act already prohibits the use of Internet platforms with the intent to promote or facilitate a wide range of "unlawful activity" (including prostitution and sex trafficking), 18 U.S.C. § 1952(b), Congress included § 2421A in FOSTA primarily to serve as an easy cross-reference for § 230(e)(5)(C), which clarifies that State laws prohibiting the same conduct can be applied to websites without regard to § 230(c)(1).

Section 2421A thus does serve purposes unrelated to the content of expression and accordingly qualifies as content neutral, "even if it has an incidental effect on some speakers or messages but not others.'" *ANSWER*, 845 F.3d at 1210 (quoting *Ward*, 491 U.S. at 791); *cf. Green v. U.S. Dep't of Justice*, 392 F. Supp. 3d 68, 91 (D.D.C. 2019) (prohibition on circumventing access controls on copyrighted works was content neutral despite incidental impact on speech). Because § 2421A qualifies as content neutral, the Court should grant judgment to Defendants on Plaintiffs' strict scrutiny claim. Plaintiffs' Complaint did not encompass any challenge at a lower level of scrutiny. *See Trudel v. SunTrust Bank*, 288 F. Supp. 3d 239, 250 (D.D.C.) ("It is well established that a party may not amend its complaint or broaden its claims through summary judgment briefing." (internal quotation omitted)), *aff'd*, 924 F.3d 1281 (D.C. Cir. 2019).

Moreover, Defendants have not, as Plaintiffs claim, conceded that FOSTA would fail strict scrutiny. Plaintiffs concede that combatting sex trafficking qualifies as a compelling interest. Pl. Opp. at 32. And their strict scrutiny challenge to § 2421A, as well as the new intermediate scrutiny arguments they advance for the first time in their opposition brief (and that this Court need not consider, *Trudel*, 288 F. Supp. 3d at 250), rely on the same mischaracterizations discussed *supra*. Because § 2421A does not prohibit advocacy and harm-reduction content untethered to specific acts of illegal prostitution, but instead criminalizes owning, managing, or operating an interactive computer service only where the owner, manager, or operator intends to promote or facilitate a specific act of prostitution, it does not implicate more speech than necessary.[13]

---

[13] Indeed, because the conduct of website owners, managers, and operators takes place within the sphere of their own private operations, not in a public forum, it is questionable whether even intermediate scrutiny would be necessary. *Cf. ANSWER*, 845 F.3d at 1208 (applying intermediate scrutiny to "a content-neutral public-forum regulation"). While the court in *Sandvig* held that parts of the Internet may operate as a public forum from the perspective of government regulation of Internet *users*, *Sandvig*, 315 F. Supp. 3d at 12-13 (addressing researchers' claim of right to access data on Internet), courts have consistently rejected the notion that website owners, managers, or

## VI.    PLAINTIFFS FAIL TO SUPPORT THEIR "SELECTIVE REMOVAL OF IMMUNITY" CLAIM

As discussed in Defendants' opening brief, Plaintiffs' attempt to invalidate 47 U.S.C. § 230(e)(5) on the basis that it "selective[ly]" removes immunity that § 230 had previously conferred is meritless. Def. Mem. at 32-33. Congress's decisions regarding how to wield its power to immunize interactive computer services from State criminal action and federal civil suit reflect its policy choices, which can change over time, particularly when the underlying circumstances change. Here, it is hardly surprising that Congress was troubled when courts applied the pre-FOSTA § 230 to bar criminal sex trafficking prosecutions by states, or sex trafficking victims' claims pursuant to 18 U.S.C. § 1595, when the defendant was an interactive computer service alleged to have knowingly or intentionally participated in the illegal prostitution or sex trafficking at issue. *See, e.g., Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 15 (1st Cir. 2016) (affirming dismissal pursuant to § 230 of civil suit against Backpage); *M.A. ex rel. P.K. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1053 (E.D. Mo. 2011) (same). And Congress acted within its prerogative when amending § 230 to accord with its intent that such conduct should not be immune from State criminal or federal civil claims.

Apparently recognizing the weakness of this claim, Plaintiffs did not seek summary judgment with respect to this issue. And in their opposition, Plaintiffs cite no case that has held a law invalid based on its removal of immunity that had previously been conferred by statute. Rather,

---

operators who "provid[e] services via the internet" are *themselves* "public fora for purposes of the First Amendment." *Fed. Agency of News LLC v. Facebook, Inc*., 432 F. Supp. 3d 1107, 1122 (N.D. Cal. 2020) (collecting cases rejecting notion that Internet platforms like Facebook, Yahoo!, Google, and YouTube are public fora). Under such an analysis, the Court would only need to consider whether § 2421A is "reasonable and content neutral" in order to uphold its facial validity under the First Amendment. *United States v. Caputo*, 201 F. Supp. 3d 65, 70 (D.D.C. 2016). As a content-neutral prohibition on action intended to promote or facilitate illegal prostitution or sex trafficking, the statute undoubtedly satisfies both requirements.

they rely on the notion that FOSTA "was designed to encourage intermediaries to self-censor on pain of being liable for their users' speech." Pl. Opp. at 35. But as discussed at length *supra,* Part I.B, FOSTA's provisions are far removed from the strict liability law at issue in *Smith*, where the Court recognized such a concern. The scienter requirements in §§ 2421A and 1591(a)(2) do not allow for an interactive computer service to be held liable based on unwitting conduct.

Moreover, Plaintiffs' citation of cases such as *Prager Univ. v. Google LLC*, 951 F.3d 991, 996-97 (9th Cir. 2020), and *Freedom Watch, Inc. v. Google Inc.*, 816 F. App'x 497, 499-500 (D.C. Cir. 2020) (per curiam), does not help them. To the contrary, those cases recognized that privately owned interactive computer services are not public fora required by the First Amendment to protect the access or speech of their users. *Prager Univ.*, 951 F.3d at 997-99 (concluding YouTube was neither a state actor nor a public forum even though it allowed others to access and post content on its platform, and that its content moderation decisions therefore were not subject to First Amendment scrutiny); *Freedom Watch, Inc.*, 816 F. App'x at 499 (same, with respect to Google, Facebook, Twitter, and Apple). The owners, managers, and operators of these services therefore may, and undoubtedly do, make decisions regarding how to structure their sites and what content to allow based on a multitude of business-related factors, of which liability risk under federal criminal law is only one. Indeed, courts have held that such decisions cannot be challenged by users because the platforms themselves have the First Amendment right to control the content of speech posted on their sites. *E.g.*, *Jian Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433, 441 (S.D.N.Y. 2014) (dismissing claims against Chinese search engine). None of these holdings suggest that FOSTA's § 230 Amendments are invalid. If anything, they are consistent with the limited scope of conduct for which FOSTA lifted the § 230 shield. Such conduct, proscribed in §§ 2421A or 1591, intends to promote or facilitate an act of illegal prostitution or sex trafficking, or involves

receipt of a benefit through knowing participation in a sex trafficking venture, and does not implicate the First Amendment. The Court should grant judgment to Defendants on this claim.

## VII.   PLAINTIFFS FAIL TO SUPPORT THE FACIAL INVALIDATION OF FOSTA ON EX POST FACTO GROUNDS

As discussed in Defendants' opening brief, any potential ex post facto issue arising from State prosecutions of conduct that occurred before FOSTA's enactment may be avoided if States simply refrain from initiating such prosecutions.  Def. Mem. at 37. Moreover, courts have never facially invalidated a law based on a pre-enforcement challenge alleging the mere possibility of future ex post facto violations as applied to others. Plaintiffs' opposition brief cites no such case. Rather, the cases they cite considered ex post facto claims in the context of actual convictions. *See, e.g.*, *Carmell v. Texas*, 529 U.S. 513, 520 (2000) ("What are at stake, then, are . . . four convictions . . . ."); *Weaver v. Graham*, 450 U.S. 24, 27 (1981) (considering habeas claim that "new statute as applied to [petitioner] was an ex post facto law"); *Stogner v. California*, 539 U.S. 607, 609 (2003) (considering whether defendant's indictment under new law was barred on ex post facto grounds).

Moreover, Plaintiffs quote *City of Los Angeles, Calif. v. Patel*, 576 U.S. 409, 415 (2015), for the principle that facial constitutional challenges "are not categorically barred or especially disfavored." Pl. Opp. at 39. But that case explains why no pre-enforcement ex post facto challenge could ever succeed, and thus why such challenges are only meaningful when raised as applied. As the Court explained, a facial challenge requires the plaintiff to establish "that a 'law is unconstitutional in all of its applications.'" *City of Los Angeles*, 576 U.S. at 418 (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)). But unlike the Fourth Amendment claim considered in *City of Los Angeles*, an ex post facto claim by its nature asserts that a law is unconstitutional only in certain applications—those based on conduct that occurred before the law's enactment. Thus, a law challenged on ex post facto grounds will always be

constitutional as applied to conduct that takes place after its enactment, whether or not the statute purports to permit retroactive application.

Finally, Plaintiffs quote the Court of Appeals' statement that "there is nothing that prevents the [Department] from changing its mind," but the Court of Appeals was not discussing State prosecutions under State laws that mirror §§ 2421A or 1591, nor was it discussing Plaintiffs' Ex Post Facto Clause claim; instead, it was addressing whether Andrews faced a threat of prosecution under § 2421A. *See Woodhull II*, 948 F.3d at 373. The Court of Appeals recognized there was *no* such threat with respect to retroactive prosecutions, given the Department's statement to OMB. *See id.* Thus, even under Plaintiffs' theory, the Court of Appeals clearly did not view the Department's statement to OMB as "nothing." There is no reason to believe that State prosecutors would ignore the Department's statement, and the Ex Post Facto Clause itself, by initiating cases newly allowed by FOSTA based on conduct that pre-dates its enactment. Indeed, Plaintiffs identify no such prosecution since FOSTA's enactment in April 2018. Such prosecutions only become more unlikely as time passes. Given that the vast majority, if not all, State prosecutions under laws similar to §§ 2421A or 1591 going forward will not present an ex post facto problem, as well as the fact that the prospect of retroactive prosecutions cannot possibly lead to any chilling effect even assuming protected speech were at issue (since the conduct on which such prosecutions would be based has already occurred), there is no reason to hold the § 230 Amendments facially invalid pursuant to the Ex Post Facto Clause. The Court should grant judgment on this claim in favor of Defendants.

## **CONCLUSION**

For the foregoing reasons, summary judgment should be entered in favor of Defendants.

Dated:  October 26, 2020                              Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch

*/s/ Kathryn L. Wyer*
KATHRYN L. WYER
Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, N.W., Room 12014
Washington, DC  20005
Tel. (202) 616-8475 / Fax (202) 616-8470
kathryn.wyer@usdoj.gov
*Attorneys for Defendants*

26